UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAIFULLAH KHAN, : | |
|    Plaintiff, : | cv __19-1966_____ |
| : | |
| v. : | |
| : | |
| YALE UNIVERSITY, : | |
| PETER SALOVEY, : | |
| JONATHON HALLOWAY, : | |
| MARVIN CHUN, JOE GORDON, : | |
| DAVID POST, MARK SOLOMON, : | |
| PAUL GENECIN, : | |
| STEPHANIE SPANGLER, : | |
| SARAH DEMERS, JANE DOE : | |
| CAROLE GOLDBERG, : | |
| UNKNOWN PERSONS, : | |
|    Defendants. : | DECEMBER 13, 2019 |

## MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME

      The Plaintiff, Mr. Khan, brings the instant action before the Court for an abuse of his rights under Title IX, broken promises that resulted in a heinous breach of contract against him, and fabricated allegations of false conduct against the Plaintiff. Notwithstanding the heinous falsities that the Jane Doe Defendant brought against Mr. Khan, Mr. Khan hereby moves the Court to grant him permission to litigate his pendent state law claims against Jane Doe using a pseudonym in place of her actual name because he holds out hope that he may move on with his life and complete his undergraduate degree at Yale University – either by permission of Yale University (also a defendant in the instant action) or by virtue of injunctive relief from the Court. In that hope and despite the many egregious wrongs committed against him, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual

Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

### Relevant Facts

On Halloween, 2015, Mr. Khan and Jane Doe had consensual sexual relations. *See* **Compl. at ¶¶ 39-43**. The next morning, Jane Doe belatedly decided that having consensual sexual relations with Mr. Khan was a bad decision so she concocted a story for her friends, claiming that she had been raped; however, she told the Yale University Health Center worker who provided her with contraception that she had engaged in consensual, unprotected sex. *Id.* **at ¶ 45**. With the advice and counsel of the Defendants in this action, Jane Doe filed a formal complaint against Mr. Khan with the Yale University police department, which immediately began investigating Mr. Khan for rape. *Id.* **at ¶¶ 46-48**. The State of Connecticut subsequently charged Mr. Khan with sexual assault in the first degree. *Id.* **at ¶ 48**.

During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e. After a two-week jury trial in early 2018, the jury quickly returned a verdict acquitting Mr. Khan of all charges against him. *Id.* **at ¶ 52**. Through the efforts of his defense counsel, Mr. Khan succeeded in having his UWC disciplinary hearing delayed until after his criminal trial. *Id.* **at ¶ 51**. Mr. Khan was subsequently readmitted to Yale University in the fall of 2018, but he was denied on-campus housing. *Id.* **at ¶ 57**. At this time, Yale University made no effort to move forward with his UWC disciplinary hearing, and Jane Doe had already graduated. *Id.* **at ¶¶ 57, 68**.

In November 2018, Yale University convened a UWC hearing on Jane Doe's complaint – the same one that had resulted in the criminal charges against Mr. Khan. *Id.* **at ¶¶ 74**. Jane Doe testified at that hearing, peddling the same concocted falsities that she had levelled against Mr. Khan in the criminal trial. *Id.* **at ¶¶ 74-81**. The only difference was that Mr. Khan could not cross-examine her or confront his accuser in any manner. *Id.* **at ¶ 77**. Yale university ultimately decided to expel Mr. Khan. *Id.* **at ¶ 80**.

On its website, Yale University publicizes a set of policies and procedures for UWC proceedings. The policies and procedures unequivocally pronounce "[t]he UWC and all members of the Yale community who are involved in a matter before the UWC are expected to maintain the confidentiality of its proceedings and the information obtained for those proceedings." See **Exhibit 1 – UWC Procedures, p. 3**. Yale University has elaborated on this provision through a formal policy statement made by its provost. *Id.* **at 3**.

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.

*See* **Exhibit 2 – Statement on Confidentiality of UWC Proceedings, p. 1**.

## ARGUMENT

Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. **Exhibit 1, p. 3.** However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale

University or an injunction from the Court, this provision would apply to him. Consequently, to preserve his interest in rejoining the Yale University community to complete his undergraduate education, Mr. Khan respectfully requests the Court to allow him to proceed in his defamation and tortious interference claims by naming Jane Doe under a pseudonym.

Fed. R. Civ. P. 10(1) mandates that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d. Cir. 2008).[1] However, courts have "carved out a limited number of exceptions to the general requirement of disclosure…." *Id.* at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). These exceptions have typically arisen in cases involving sensitive and intimate issues such as abortion decisions, e.g., *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), or cases involving minors, e.g., *Smith v. Edwards*, 175 F.3d 99 (2d. Cir. 1999).

In the *Sealed Plaintiff* case, the Second Circuit established ten non-exclusive factors, discussed in turn below, to determine whether the Court should grant a party's request to persuade under a pseudonym. *Id.* at 189-90. While these factors have traditionally been applied to parties seeking to protect their own identities by use of a pseudonym, these factors are also readily adaptable to a

---

[1] To the best of counsel's knowledge after research, this case is still sealed. Consequently, counsel has provided the Court with a copy of the Second Circuit's decision to save the Court any difficulty in locating it. *See* **Exhibit 3 –** ***Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d. Cir. 2008)**.

request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym.

The first factor weighs "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature.'" *Id.* at 190 (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The instant case involves matters of a highly sensitive and personal nature, both to Mr. Khan and Jane Doe. As stated above, Jane Doe accused Mr. Khan of raping her. "[A]llegations of sexual harassment and misconduct" raises issues and questions "that are of a highly sensitive and personal nature." *A.B. v. C.D.*, 2018 WL 1935999, at *2. Therefore, the first factor weighs in Mr. Khan's favor.

The second factor examines "whether identification poses a risk of retaliatory physical or mental harm to the… party (seeking to proceed anonymously] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190 (quoting *Zavaras*, 139 F.3d at 803). As stated above, Jane Doe was protected by Conn. Gen. Stat. § 54-86e, which prevented the publication of her name during Mr. Khan's criminal trial. Consequently, for the purposes of Mr. Khan's UWC process, his conduct of his criminal trial did not violate the UWC procedures. If Mr. Khan names Jane Doe in this action, he will suffer the risk of retaliatory physical or mental harm, namely, the loss of any chance to successfully negotiate his return to Yale University to complete his undergraduate studies and the jeopardization of his opportunity to obtain injunctive relief from the Court to allow him to complete his undergraduate studies. Therefore, Mr. Khan seeks to

respect the UWC confidentiality rules by seeking to proceed against Jane Doe pseudonymously. Thus, the second factor weighs in Mr. Khan's favor.

The third factor examines "whether identification presents other harms and the likely severity of those harms…, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Id.* at 190 (quoting *Zavaras*, 139 F.3d at 803). At first glance, the injury incurred by Mr. Khan has already occurred. However, Mr. Khan does face the significant likelihood of further antagonizing Yale University to the point of placing his chances of negotiating a return to Yale University to complete his undergraduate degree by naming Jane Doe in violation of the UWC hearing. Furthermore, if Mr. Khan does name Jane Doe, Yale University will undoubtedly use that fact against him to illustrate its version that Mr. Khan "breaks" Yale University polices in opposing Mr. Khan's request for injunctive relief. Consequently, the third factor weighs in favor of Mr. Khan.

Mr. Khan concedes that the fourth factor weighs against him in that he is not "particularly vulnerable to the possible harms of disclosure…, particularly in light of his age." *Id.* at 190.

The fifth factor weighs in favor of Mr. Khan: "whether the suit is challenging the actions of the government or that or private parties." *Id.* at 190. Normally, suits against private parties do not enjoy a stronger presumption of a need to protect a party's privacy because personal embarrassment is the only consideration for keeping them private. *A.B. v. C.D.*, 2018 WL 1935999, at *3. However, when a party sues the government and seeks to serve as "a significant check on abuse of

public power," "it is in the public interest that the price of access to the courts not be too high." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." *Id.* at 158 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The value of open proceedings disappears when there are no proceedings to be had." *Id.* at 158. The reasoning underlying this presumptive balancing factor is the power disparity between the government, the public at large, and potential plaintiffs. The same reasoning applies here. Yale University enjoys tremendous social power, and it can have a tremendous impact on a person's life as Mr. Khan can readily attest to. If Mr. Khan names Jane Doe, the potential for Yale to retaliate against him in negotiations about his potential readmission to Yale to complete his degree and to whip up public scorn against him would be similar to that of a government trying to accomplish the same goals against a plaintiff. Consequently, while Mr. Khan does not presumptively enjoy the benefit of this factor, he should be given its protections for the same reasons undergirding it.

The sixth and seventh factors also weigh in Mr. Khan's favor. The sixth factor weighs "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor examines "whether the [defendant]'s identity has thus far been kept confidential." *Id.* at 190. Jane Doe's identity has been kept confidential for more than three years now. Her

identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial. Yale University's UWC policies and procedures kept her identity confidential in Mr. Khan's UWC proceeding. If anyone has suffered prejudice in this concocted saga, it is Mr. Khan, who was publicly and privately pilloried on the basis of Jane Doe's false accusations without ever being allowed to name her as his accuser when defending himself. Every single proceeding that has involved Jane Doe and Mr. Khan to this point has kept Jane Doe's identity confidential to protect her from a similar public pillorying. Consequently, as Mr. Khan seeks to put his life back together by complying with rules that Jane Doe has gladly embraced to protect herself, it will not prejudice Jane Doe in the slightest to continue to protect her from public scrutiny. Therefore, both the sixth and seventh factors weigh in Mr. Khan's favor.

Similar to the sixth and seventh factors, the eighth and ninth factors are linked, and Mr. Khan concedes that both do not weigh in his favor. The eighth factor examines "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [the defendant's] identity." *Id.* at 190. The ninth factor addresses "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Id.* at 190. Addressing the ninth factor first, Mr. Khan was acquitted in a highly publicized trial that was covered with no small vigor by the press from charging to verdict and that invoked widespread reaction at the height of the #MeToo movement. The media including the Yale Daily News insisted on publicizing and discussing the case long after the jury had delivered Mr. Khan's

acquittal. As soon as the instant action is filed, it will garner intense public scrutiny, which will widely publicize Jane Doe's name. Therefore, under no circumstances can Mr. Khan or counsel anticipate an atypically weak public interest in learning the parties' identities. Turning to the eighth factor, the public's interest will undoubtedly be aided tremendously if Mr. Khan is forced to disclose Jane Doe's identity. Both of these factors weigh against Mr. Khan.

The tenth and final factor examines "whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality." *Id.* at 190. There are none. Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life. If he is forced to name Jane Doe, Mr. Khan will be forced to choose between Scylla and Charybdis. If he chooses to continue with his claims against Jane Doe for the wrongs that she has committed against him, Mr. Khan will lose any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree. If he chooses to discontinue his claims, Mr. Khan may or may not succeed in negotiating a return to Yale University to complete his degree. However, he will certainly forfeit forever the opportunity to seek legal redress for the wrongs Jane Doe has committed against him. Consequently, the tenth factor weighs in Mr. Khan's favor.

**CONCLUSION**

Mr. Khan still holds out hope, albeit small hope, that he can piece his life back together by completing his degree at Yale University, either through a negotiated agreement with Yale University or by injunctive relief from the Court. At the same time, Jane Doe has destroyed Mr. Khan's life through her false accusations against him. Consequently, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

Therefore, for the foregoing reasons, Mr. Khan respectfully requests that the Court grant his motion to proceed against Jane Doe by identifying her with a pseudonym.

The Plaintiff

BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

## **CERTIFICATION**

I hereby certify that on September 23, 2019 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120