## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,

          Plaintiff,

     v.                                 Case No. 3:19-cv-001966-KAD

YALE UNIVERSITY, ET AL.,

          Defendants.            April 28, 2020

**Memorandum of Law in Support of**
**Jane Doe's Motion to Dismiss**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND .......................................................................................... 1

I.      In 2015, Jane Doe Reported that Plaintiff Assaulted Her. ................................. 1

II.     Yale Stays Disciplinary Proceedings Pending A Criminal Trial ....................... 2

III.    The UWC Proceedings Following the Criminal Trial ........................................ 2

IV.     Plaintiff's Complaint ......................................................................................... 4

        A.      Plaintiff's Defamation Claim. ................................................................ 5

        B.      Plaintiff's Tortious Interference Claim .................................................. 5

MOTION TO DISMISS STANDARDS UNDER RULE 12(B)(6) AND CONNECTICUT'S
ANTI-SLAPP STATUTE ............................................................................................... 6

I.      Rule 12(b)(6) ...................................................................................................... 6

II.     Connecticut's Anti-SLAPP Statute ................................................................... 6

ARGUMENT ................................................................................................................... 8

I.      Plaintiff's Claims About Jane's Initial Allegations in 2015 Are Untimely. ...... 8

II.     Plaintiff's Remaining Claim Regarding Jane's Participation in UWC Proceedings Fails to
        State a Claim Because Jane Has Absolute Immunity for Statements Made During the
        UWC Proceedings. .............................................................................................. 9

        1.      Quasi-Judicial Immunity ....................................................................... 9

        2.      UWC Proceedings Are Quasi-Judicial ................................................ 11

III.    In the Alternative, the Court Should Dismiss Plaintiff's Claims Under Connecticut's
        Anti-SLAPP Statute Because They Are Based on Jane's Exercise of Rights Protected by
        the Statute. ......................................................................................................... 16

        A.      Connecticut's Anti-SLAPP Statute Applies in Federal Court. ............. 16

        B.      The Anti-SLAPP Statute's Burden-Shifting Framework. ..................... 16

        C.      Plaintiff's Claims Are Based on Rights Protected by the Statute. ......... 17

1.  Plaintiff's Claim that Jane "Went Public With Her Claim of Rape" Relies on Protected Free Speech. .......................................................................... 17

2.  Jane's Communications with Yale Constitute Protected Freedom of Association. ............................................................................................ 18

3.  Jane Was Exercising Her Right to Petition the Government During the Criminal Investigation and Proceedings. .................................................. 20

D.  Plaintiff Cannot Establish Probable Cause that He Will Prevail. ........................ 21

1.  Probable Cause is a Demanding Standard. .............................................. 21

2.  Plaintiff's Claims Are Largely Time Barred. ........................................... 22

3.  Jane Has Absolute Immunity with Respect to the UWC. ........................ 22

4.  The Only Plausible Conclusion is that Jane Made Allegations in Good Faith and Plaintiff's Claims Therefore Fail. .............................................. 22

E.  The Court Should Dismiss Plaintiff's Claims Under the Statute. ......................... 24

CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelson v. Harris*,
  774 F.3d 803 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402
  P.3d 665 (2017)...............................................................................................2, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*,
  481 U.S. 537 (1987)..................................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................6

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015)......................................................................................22

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)............................................................................................18, 19

*Cicerone v. Lynch*,
  No. DBDCV186026091S, 2018 WL 7893360 (Conn. Super. Ct. July 25,
  2018) ........................................................................................................................18

*Craig v. Stafford Const., Inc.*,
  271 Conn. 78, 856 A.2d 372 (2004) ...............................................................9, 10, 14

*Cweklinsky v. Mobil Chem. Co.*,
  267 Conn. 210, 837 A.2d 759 (2004) .......................................................................12

*Davis v. Lapish*,
  No. 3:17CV898 (MPS), 2019 WL 5964792 (D. Conn. Nov. 13, 2019)..................15

*Day v. Dodge*,
  No. KNLCV186035362S, 2019 WL 994532
  (Conn. Super. Ct. Jan. 25, 2019)...................................7, 17, 18, 19, 20, 21, 23, 24

*Doe v. Univ. of Dayton*,
  766 F. App'x 275 (6th Cir. 2019) .............................................................................11

*Finn v. Barney*,
  471 F. App'x 30 (2d Cir. 2012) ................................................................................22

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Fogel v. University of the Arts,*
   No. CV 18-5137, 2019 WL 1384577 (E.D. Pa. Mar. 27, 2019) .............................................11

*Gallo v. Barile,*
   284 Conn. 459, 935 A.2d 103 (2007) ......................................................................................22

*Gambardella v. Apple Health Care, Inc.,*
   291 Conn. 620, 969 A.2d 736 (2009) ..................................................................................22, 23

*Greenberg v. McGraw,*
   2017 PA Super 136, 161 A.3d 976 (2017) ..............................................................................11

*Gupta v. New Britain General Hospital,*
   239 Conn. 574, 687 A.2d 111 (1996) .................................................................................13, 16

*Hartman v. Keri,*
   883 N.E.2d 774 (Ind. 2008) ....................................................................................................14

*Hopkins v. O'Connor,*
   282 Conn. 821, 925 A.2d 1030 (2007) ....................................................................................15

*Jacobs v. Ethel Walker Sch. Inc.,*
   No. CV-02-0515279-S, 2003 WL 22390051 (Conn. Super. Ct. Sept. 30, 2003) ..............13, 16

*Kotec v. Japanese Educ. Inst. of N.Y.,*
   321 F. Supp. 2d 428 (D. Conn. 2004) ........................................................................................8

*L-7 Designs, Inc. v. Old Navy, LLC,*
   647 F.3d 419 (2d Cir. 2011) .......................................................................................................6

*Lotto v. Hamden Bd. of Educ.,*
   No. CV-05-4010436, 2006 WL 618361 (Conn. Super. Ct. Feb. 21, 2006) ............................13

*Lynch v. City of New York,*
   952 F.3d 67 (2d Cir. 2020) ...........................................................................................2, 3, 13

*Mahmood v. Quershi,*
   No. CV156029588S, 2017 WL 4273361 (Conn. Super. Ct. Aug. 11, 2017) ...........................8

*Mahon v. Comm'r of Dep't of Motor Vehicles,*
   No. CV010506612S, 2001 WL 746533 (Conn. Super. Ct. June 8, 2001) ...............................21

*McNeil v. Yale University,*
   No. 3:19-cv-00209 (VAB), 2020 WL 495061 (D. Conn. January 30, 2020) ...........................3

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Miles v. Perry*,
  11 Conn. App. 584, 529 A.2d 199 (1987) ..............................................................22

*Miner v. Novotny*,
  304 Md. 164, 498 A.2d 269 (1985) ......................................................................14

*Razavi v. Sch. of the Art Inst. of Chicago*,
  2018 IL App (1st) 171409, 122 N.E.3d 361, *case dismissed sub nom. Razavi
  v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019).........................................11, 12, 14

*Reid v. Harriman*,
  No. CV196083510S, 2019 WL 5960521 (Conn. Super. Ct. Oct. 28, 2019) ........................20

*Rioux v. Barry*,
  283 Conn. 338, 927 A.2d 304 (2007) ...........................................................9, 10, 15

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)........................................................................................18

*Rom v. Fairfield University*,
  No. CV020391512S, 2006 WL 390448 (Conn. Super. Ct. Jan. 30, 2006)............................10

*Savoy v. Univ. of Akron*,
  15 N.E.3d 430 ...............................................................................................11

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
  Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)..............................................................................6

*State v. Bonilla*,
  131 Conn. App. 388, 28 A.3d 1005 (2011) ............................................................18

*Yovana Angelica Pacheco Quevedo et al. v. Hearst Corp. et al.*,
  No. FSTCV195021689S, 2019 WL 7900036 (Conn. Super. Ct. Dec. 19, 2019)..............17, 19

**Statutes**

20 U.S.C. § 1681 *et seq.*.....................................................................................2

Conn. Gen. Stat. §§ 10a-55m (b)(6)(E) ....................................................................14

Conn. Gen. Stat. §§ 10a-55m(b), (b)(6)....................................................................14

Conn. Gen. Stat. § 51-196a....................................................................................21

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

Conn. Gen. Stat. § 52-196a ................................................................................1, 6, 17, 19

Conn. Gen. Stat. § 52-196a(4) ........................................................................................7

Conn. Gen. Stat. § 52-196a(a)(1) ...............................................................................7, 17

Conn. Gen. Stat. § 52-196a(a)(2) ...............................................................................7, 17

Conn. Gen. Stat. § 52-196a(a)(3) ...................................................................................7

Conn. Gen. Stat. § 52-196a(a)(3)(B) ...........................................................................21

Conn. Gen. Stat. § 52-196a(b) ......................................................................................7

Conn. Gen. Stat. § 52-196a(e)(2) ...................................................................................2

Conn. Gen. Stat. § 52-196a(e)(3) ...................................................................................7

Conn. Gen. Stat. § 52-577 ..............................................................................................8

Conn. Gen. Stat. § 52-597 ........................................................................................8, 15

Connecticut Public Act 83-466 ....................................................................................21

General Statutes § 10a-55m .....................................................................................13, 14

Title IX .........................................................................................................................13

**Rules**

34 C.F.R. Part 106 ..........................................................................................................2

Fed. R. Civ. P. 8(a)(2) ...................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 6

Local Rule 7(a) ..............................................................................................................1

Pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(a) of the Local Rules of this Court, defendant Jane Doe submits this Memorandum of Law in support of her Motion to Dismiss all claims against her, Counts Seven (Defamation) and Eight (Tortious Interference with Business Relations), of the Complaint dated December 13, 2019 (Doc. No. 1) (the "Complaint").  In the alternative, Jane moves to dismiss those claims under Connecticut's "anti-SLAPP" statute, Conn. Gen. Stat. § 52-196a.

## INTRODUCTION

Plaintiff's core claims against Jane relate to allegations of sexual assault made in 2015 that are long-since time barred by the applicable statutes of limitation.  Plaintiff's remaining claims, which relate to Jane's involvement with Yale's University-Wide Committee on Sexual Misconduct (the "UWC"), are barred because Jane is entitled to absolute immunity for statements made during her involvement with the UWC.  In the alternative, the Court should dismiss Plaintiff's claims under Connecticut's anti-SLAPP statute because Jane exercised rights protected by that statute.

## FACTUAL BACKGROUND

### I.        In 2015, Jane Doe Reported that Plaintiff Assaulted Her.

According to Plaintiff, on the night of October 31, 2015, Plaintiff and Jane Doe had sexual intercourse. (Cmplt. ¶¶ 39–43.)  The next morning—November 1, 2015—Jane allegedly "reported to friends that she had been raped."  (Cmplt. ¶ 45.)  Plaintiff claims that in the "days following Halloween" 2015 "Jane Doe went public with her claim of rape," but does not identify what that means. (Cmplt. ¶ 46.)  Jane reported Plaintiff's conduct because she believed that it violated her rights and Yale's policies against sexual misconduct. (Exhibit A, "Declaration of Jane Doe" at ¶

4).[1]   Plaintiff alleges Jane's allegations caused Yale to suspend Plaintiff pending UWC proceedings.  (Cmplt. ¶ 47.)

## II.   Yale Stays Disciplinary Proceedings Pending A Criminal Trial

Plaintiff persuaded Yale to stay the UWC proceedings pending the conclusion of a criminal case against Plaintiff.  (Cmplt. ¶ 51.)  The criminal case proceeded through a trial in early 2018. (Cmplt. ¶¶ 52, 55.)  Plaintiff was found not-guilty at that trial.  (Cmplt. ¶ 52.)

## III.   The UWC Proceedings Following the Criminal Trial

Following the criminal trial, the UWC held proceedings regarding Jane's allegations. (Cmplt. ¶ 74).  The UWC is Yale's judicial body that investigates and adjudicates cases of student sexual misconduct.  (Exhibit B, hereinafter "UWC Procedures").[2]

The UWC procedures had to comply with the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and regulations promulgated pursuant to Title IX by the Department of Education, *see* 34 C.F.R. Part 106.   Plaintiff's Complaint describes that Yale was the subject of an investigation by the Department of Education's Office for Civil Rights ("OCR") based on purported violations of Title IX regulations;[3]  (Cmplt. ¶ 30.);

---

[1] Jane submits her declaration in support of her motion under Connecticut's anti-SLAPP statute.  *See, e.g.*, *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402 P.3d 665 (2017) (noting that anti-SLAPP statutes apply in federal court under the *Erie* doctrine); *see also, e.g.*, Conn. Gen. Stat. § 52-196a(e)(2) (noting that Court can consider affidavits in ruling on a motion under the anti-SLAPP statute).

[2] Plaintiff's Complaint discusses Yale's UWC procedures and Plaintiff alleges Yale violated those procedures.  *See, e.g.*, Cmplt. ¶ 107; *see also, e.g.*, Cmplt. ¶ 32.  The Court should therefore consider the UWC Procedures.  *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit or is incorporated in it by reference.  And even if the plaintiff chooses not to attach an instrument to the complaint or to incorporate it by reference, if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss.").

[3] In addition to the formal regulations Plaintiff describes, OCR issued "Dear Colleague" letters interpreting Title IX requirements.  (Cmplt. ¶ 28; *see, e.g.*, Exhibit C ("2011 Dear Colleague Letter").)  (Plaintiff relies on (and quotes from) the 2011 Dear Colleague Letter in his Complaint (Cmplt. ¶ 28) and the Court may therefore consider it.  *See, e.g.*, *Lynch*, 952 F.3d at 79.)  Plaintiff alleges that the 2011 Dear Colleague Letter "advised recipients that universities

and because of that investigation, Yale "voluntarily and proactively made changes to its procedures and practices related to compliance with Title IX" with respect to how it handled claims of sexual misconduct.  (Cmplt. ¶¶ 31 & 32; Exhibit D ("June 15, 2012 Letter from OCR (the "Close-Out Letter")").[4])  OCR concluded "that the UWC procedures are consistent with Title IX requirements . . . ."  (Close-Out Letter at 8.)  In December 2017, shortly before the 2018 UWC proceedings involving Plaintiff, OCR reaffirmed that conclusion when it noted that Yale had complied with the terms of the VRA.  (Exhibit F ("December 18, 2017 Letter from OCR") at 7.[5])

The UWC process required by Title IX and approved by OCR provides as follows:  When a complaint of sexual misconduct is made, an impartial fact-finder investigates the allegations by, among other things, interviewing the complainant, respondent, and witnesses.  (UWC Procedures at 7.3.)  The fact-finder prepares a report based on his or her investigation, which is forwarded to the members of a hearing panel.  (UWC Procedures at 7.3.)  The hearing panel then convenes a hearing at which it hears from and questions the complainant, respondent, and, where necessary,

---

needed to 'take immediate action to eliminate [sexual] harassment, prevent its recurrence, and address its effects, or face potential loss of federal funding under Title IX . . . and its attendant regulations."  (Cmplt. ¶ 28)

[4] Plaintiff describes the Close-Out Letter, which is publicly available on OCR's website.  *See* Close-Out Letter, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/investigations/01112027-a.pdf; *see also, e.g.*, *Lynch*, 952 F.3d at 79.  For example, Plaintiff relies on (but mischaracterizes) the conclusions OCR reached during the OCR investigation, which are contained in the Close-Out Letter and an accompanying Voluntary Resolution Agreement (the "VRA").  (*Compare* Cmplt. ¶ 30 (alleging that OCR "concluded . . . that [Yale] was deficient in the manner in which it responded to allegations of sexual misconduct"), *with* Exhibit E ("Voluntary Resolution Agreement") at 1 (noting that "OCR has not made a finding of noncompliance").  (Like the Close-Out Letter, Plaintiff relies on the Voluntary Resolution Agreement by discussing, albeit inaccurately, the results of OCR's investigation.  (Cmplt. ¶ 30.))  Judge Bolden recently considered correspondence related to OCR's investigation in ruling on a motion to dismiss even though plaintiffs objected to Yale's reliance on the document.  *See McNeil v. Yale University*, No. 3:19-cv-00209 (VAB), 2020 WL 495061 at *15 (D. Conn. January 30, 2020) ("While Plaintiffs argue that the OCR letter is beyond the scope of the Second Amended Complaint, on a motion to dismiss, this Court can—and in this instance, should—consider a document critically related to Plaintiffs' factual allegations and underlying legal theory:  that Yale fails to comply with the dictates of Title IX.").  Just like in *McNeil*, Plaintiff argues Yale violated Title IX and relies on the purported results of OCR's investigation.  (*See, e.g.*, Cmplt. ¶¶ 30, 82–84.)

[5] The Court may consider the 2017 letter for the same reasons it may consider the other core documents regarding the 2011 complaint:  Plaintiff relies on that investigation and its outcome to support his claims.  *See supra* note 4.

witnesses.  (UWC Procedures at 7.3 & 7.4.)  The panel applies Yale's definitions regarding sexual misconduct and the preponderance of the evidence standard of proof to those facts to determine whether the respondent violated Yale's policies.  (UWC Procedures at 7.4 & 7.5.)  If it concludes that a violation occurred, the panel recommends a penalty in a report, which is then forwarded to a decision maker.  (UWC Procedures at 7.5.)  The decision maker then renders a final decision (subject to appeal) and, if appropriate, imposes a binding penalty.  (UWC Procedures at 7.5 & 7.6.)

Plaintiff's Complaint alleges very little about the UWC process.  (Cmplt.)  In short, he describes that the UWC process proceeded to a hearing and he expresses displeasure that the hearing did not occur sooner, (Cmplt. ¶ 68), despite conceding that Yale stayed the UWC proceedings at his request, pending the conclusion of his criminal case (Cmplt. ¶ 51).

Plaintiff takes issue with various procedural aspects of the UWC hearing, (Cmplt. ¶ 78), but the only thing he alleges about Jane's involvement in the UWC proceedings is that she gave a statement during the UWC hearing.  (Cmplt. ¶ 77.)  Plaintiff does not however describe anything about what Jane allegedly said in that statement.  (Cmplt. ¶ 77.)

Plaintiff describes that the UWC panel recommended that he be expelled and (though not very clearly) that he was then expelled.  (Cmplt. ¶¶ 80, 81.)

## IV.    Plaintiff's Complaint

On December 13, 2019, more than four years after Jane reported being raped, Plaintiff filed this lawsuit.  Plaintiff served counsel for Jane on January 9, 2020, when Plaintiff sent counsel for Jane a request for waiver of service.  (Doc. No. 13.)  Plaintiff's Complaint contains two claims against Jane:  Defamation (Count Seven) and Tortious Interference with Business Relations (Count Eight).  (Cmplt. ¶¶ 111–121.)

4

### A.      Plaintiff's Defamation Claim.

Plaintiff's primary defamation claim is that Jane defamed him by "fabricat[ing] a claim of 'rape'" in 2015.  (Cmplt. ¶ 113.)  The only allegations related to Jane's purported initial reports of sexual assault in 2015 are, as previously discussed, that on November 1, 2015, Jane "reported to [unidentified] friends that she had been raped," (Cmplt. ¶ 45), that in the days following October 31, 2015, "Jane Doe went public with her claim of rape," (Cmplt. ¶ 46), and that sometime "in November 2015, [Jane] made a complaint alleging sexual assault against the [P]laintiff to [unidentified] officials at Yale University," (Cmplt. ¶ 16).

Plaintiff also alleges that after the conclusion of Plaintiff's criminal trial, Jane "Doe persisted in her false and defamatory claims in an effort to obtain the expulsion of [Plaintiff] from Yale." (Cmplt. ¶ 115.)  Thus, Plaintiff also bases his defamation claim on Jane's involvement with the UWC proceedings.  (*See* Cmplt. ¶ 115 (tying purported defamatory statements to the "effort to obtain the expulsion of [Plaintiff] from Yale").)   The sole allegations concerning Jane's involvement with the UWC—or any purported effort to obtain Plaintiff's expulsion following the conclusion of Plaintiff's criminal trial—is that Jane gave a statement during the UWC hearing. (Cmplt. ¶ 77).  Plaintiff does not describe that statement.

### B.      Plaintiff's Tortious Interference Claim

Plaintiff's tortious interference claim is based on the same statements allegedly made by Jane that Plaintiff uses to support his defamation claim.  (Cmplt. ¶ 118–121).  Plaintiff alleges that Jane "promulgat[ed] . . . intentionally false accusations against" Plaintiff.  (Cmplt. ¶ 119).

None of Plaintiff's claims against Jane state a claim upon which relief can be granted.

## MOTION TO DISMISS STANDARDS UNDER RULE 12(B)(6)
## AND CONNECTICUT'S ANTI-SLAPP STATUTE

### I.      Rule 12(b)(6).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "'formulaic recitation of the elements of a cause of action will not do,'" "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alterations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  In short, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).

### II.      Connecticut's Anti-SLAPP Statute.

Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a, provides in relevant part that in "any civil action in which a party files a complaint . . . against an opposing party based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to

dismiss the complaint . . . ."  Conn. Gen. Stat. § 52-196a(b).  The statute defines "right of free speech" as "communicating, or conduct furthering communication, in a public forum on a matter of public concern," and further defines a "matter of public concern" as, among other things, an issue related to "health or safety" or "community well-being."  Conn. Gen. Stat. §§ 52-196a(a)(1) & (2).  "'Right of association means' communication among individuals who join together to collectively express, promote, pursue or defend common interests."  Conn. Gen. Stat. § 52-196a(4).  Right to petition the government meanwhile means:

> [C]ommunication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial, or other governmental body, . . . communication that is reasonably likely to encourage consideration or review of a matter of public concern by a legislative, executive, administrative, judicial, or other governmental body, or . . . communication that is reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, administrative, judicial or other governmental body.

Conn. Gen. Stat. § 52-196a(a)(3).

"The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint . . . sets forth with particularity the circumstances giving rise to the complaint . . . and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint."  Conn. Gen. Stat. § 52-196a(e)(3); *see also, e.g.*, *Day v. Dodge*, No. KNLCV186035362S, 2019 WL 994532, at *2 (Conn. Super. Ct. Jan. 25, 2019).

## ARGUMENT

**I.      Plaintiff's Claims About Jane's Initial Allegations in 2015 Are Untimely.**

The core of Plaintiff's claims (both defamation and tortious interference) are that in 2015

Jane accused him of rape.  (*See* Cmplt. ¶¶ 113, 115, & 119.)  Those claims are time-barred.

Under Connecticut law, "[n]o action for libel or slander shall be brought but within two

years from the date of the act complained of."  Conn. Gen. Stat. § 52-597.

Tortious interference claims are subject to a three-year statute of limitation that begins to

run on the date of the act complained of.  *See* Conn. Gen. Stat. § 52-577 ("No action founded upon

a tort shall be brought but within three years from the date of the act or omission complained of.");

*see also, e.g.*, *Mahmood v. Quershi*, No. CV156029588S, 2017 WL 4273361, at *3 (Conn. Super.

Ct. Aug. 11, 2017) ("Actions for tortious interference may not be brought more than three years

from the date of the action or omission complained of.").

Jane allegedly made the statement(s) regarding sexual assault that allegedly constitute

tortious interference in 2015, well more than three years before Plaintiff served counsel for Jane

in this action on January 9, 2020.  (Doc. No. 13.)  *See, e.g.*, *Kotec v. Japanese Educ. Inst. of N.Y.*,

321 F. Supp. 2d 428, 431 (D. Conn. 2004) ("It is well settled that in Connecticut (unless otherwise

specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations

on the date of service of the complaint upon the defendant and that, in a federal diversity action,

such state rules control and not [Federal Rule of Civil Procedure] 3.").

Thus, all of Plaintiff's core claims are time-barred.

The Court must dismiss Plaintiff's defamation claim to the extent it relies on any allegedly

defamatory statements prior to January 9, 2018—two years before Plaintiff served counsel for

Jane—and it must also dismiss Plaintiff's tortious interference claim to the extent it relies on any

8

acts or omissions that occurred prior to January 9, 2017—three years before Plaintiff served counsel for Jane.  Such claims include, but are not limited to, Plaintiff's allegations that (1) on the morning after Jane was assaulted (*i.e.*, on November 1, 2015 (*see* Cmplt. ¶ 39)), Jane "reported to friends that she had been raped" (Cmplt. ¶ 45), (2) that "[i]n the days following Halloween [2015] Jane Doe went public with her claim of rape" (Cmplt. ¶ 46), and (3) that "in November 2015, [Jane] made a complaint alleging sexual assault against the [P]laintiff to officials at Yale University," (Cmplt. ¶ 16).

Thus, all of Plaintiff's core claims are time-barred.

## II.  Plaintiff's Remaining Claim Regarding Jane's Participation in UWC Proceedings Fails to State a Claim Because Jane Has Absolute Immunity for Statements Made During the UWC Proceedings.

Plaintiff's remaining claim (for defamation and tortious interference) is based on the allegation that Jane "persisted in her [allegedly] false and defamatory claims in an effort to obtain the expulsion of [Plaintiff] from Yale, a vendetta at which she succeeded" (*i.e.*, that Jane participated in the UWC proceedings against Plaintiff).  (Cmplt. ¶¶ 115, 119.)

Jane has absolute immunity for statements made in conjunction with the UWC proceedings.  Plaintiff's Counts 7 and 8 therefore fail to state a claim.

### 1.  Quasi-Judicial Immunity.

The Connecticut Supreme Court has "consistently . . . held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings."  *Rioux v. Barry*, 283 Conn. 338, 343–44, 927 A.2d 304, 307–08 (2007).

Quasi-judicial hearings include "any hearing before a tribunal which performs a judicial function, ex parte or otherwise, [regardless of] whether the hearing is public or not."  *Craig v. Stafford Const., Inc.*, 271 Conn. 78, 83–84, 856 A.2d 372, 376 (2004).  "Whether a particular

proceeding is quasi-judicial in nature, for the purposes of triggering absolute immunity, will depend on the particular facts and circumstances of each case." *Id.*

The Connecticut Supreme Court "has delineated several factors that assist in determining whether a proceeding is quasi-judicial in nature.  These factors include whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties."  *Id.* at 85 (internal quotation marks omitted).  In addition, "it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides."  *Id.*

In *Rom v. Fairfield University*, No. CV020391512S, 2006 WL 390448, at *5 (Conn. Super. Ct. Jan. 30, 2006), the Connecticut Superior Court applied these factors to Fairfield University's judicial board and held that "the Judicial Board at Fairfield University is a quasi-judicial proceeding."  The Court explained that the Judicial Board process involved the filing of reports and statements of alleged misconduct, a hearing at which the Board "questioned witnesses and reviewed statements and documents pertaining to the matter," "specific recommendations as to sanctions" that were forwarded to the Dean of Students, and a decision by the Dean regarding those recommendations and the imposition of punishment.[6]  *Id.* at *3.

In the context of a Title IX proceeding in a case strikingly similar to the instant one, the Sixth Circuit noted that the plaintiff did not "even dispute that [his accuser's] statements made in

---

[6] Curiously, the *Rom* Court concluded that employees sued for defamation were entitled to qualified immunity.  *Id.* at *5.  It is unclear why the court came to that conclusion when there is no question that absolute immunity attaches to quasi-judicial proceedings.  *See, e.g.*, *Rioux*, 283 Conn. at 343–44.  Even the Court in *Rom* observed:  "[I]f the proceedings of the university board in the present matter . . . are determined to be quasi-judicial in nature, any person making a statement in connection with those proceedings is entitled to absolute immunity . . . ."  *Rom*, 2006 WL 390448, at *2.

preparation for and during the [private university's] disciplinary hearing are entitled to absolute immunity" under Ohio law.  *See Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019) (citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435–36 & n.3 (affording absolute privilege to statements made in the context of university disciplinary proceedings)).

The Eastern District of Pennsylvania similarly concluded that a professor who reported another professor's alleged misconduct to a private university's Title IX coordinator was entitled to quasi-judicial immunity under Pennsylvania law and therefore dismissed in part the accused professor's defamation claim against the reporting professor.  *Fogel v. University of the Arts*, No. CV 18-5137, 2019 WL 1384577, at *1 (E.D. Pa. Mar. 27, 2019).  Pennsylvania law is similar to Connecticut's quasi-judicial immunity; Pennsylvania law focuses on, among other things, the "exercise of discretionary decision-making authority."  *See, e.g.*, *Greenberg v. McGraw*, 2017 PA Super 136, 161 A.3d 976, 983–84 (2017).

### 2.  UWC Proceedings Are Quasi-Judicial.

Yale's UWC proceedings are required by Title IX and have been approved by OCR.  (*See* Close-Out Letter at 4 ("[T]he UWC procedures are consistent with Title IX requirements . . . .").) OCR reaffirmed that in December 2017.  (Ex. F at 7.)  Individuals involved with the UWC, including hearing panel members and decision makers, apply the legal requirements imposed by Title IX to the facts of cases.  *See, e.g.*, *Razavi v. Sch. of the Art Inst. of Chicago*, 2018 IL App (1st) 171409, ¶ 29, 122 N.E.3d 361, 369–71, *case dismissed sub nom. Razavi v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019) (noting college's sexual misconduct procedures were required by federal law and concluding: "Given [the college's] policy, which was implemented as required by federal law, and Illinois precedent, as well as the Restatement (Second) of Torts, we conclude that the victims' allegedly defamatory restatements to [college] authorities and agents about the

11

claimed sexual assault and misconduct were absolutely privileged.").[7]  In so doing, individuals involved with the UWC exercise a classic judicial function just as this Court applies federal statutes to the facts before it.

Applying the *Craig* factors confirms that UWC proceedings are quasi-judicial:

- Individuals associated with the UWC, including the hearing panel, exercise judgment and discretion in applying procedures, standards of proof, and definitions to the facts before them; (Cmplt. ¶¶ 77, 78; UWC Procedures at 7.3, 7.4, 7.5) (noting, among other things, that "[f]ollowing the hearing, the panel will consider whether the respondent has violated University policy, giving an affirmative answer if it is satisfied that a violation has been shown by a preponderance of evidence" and that "the panel will complete a report, setting out its findings of fact, its conclusion as to whether or not those facts constitute a violation of University policy, and its recommended penalty, if any"); *see also* footnote 8);

- The hearing panel (and the fact-finder) hears and determines facts and decides issues of credibility (and did so in this case, *see* footnote 8); (Cmplt. ¶ 77; UWC Procedures at 7.3, 7.4 (providing, among other things, that the fact-finder's report "will describe the relevant facts and circumstances and may address the credibility of witnesses" and that the "hearing is intended primary to allow the panel to interview the complainant and the respondent"));

- The UWC process leads to binding orders and judgments; Plaintiff notes that he was expelled as a result of the UWC Panel's decision; (Cmplt. ¶ 81; *see also, e.g.*, UWC Procedures at 7.6, 7.7 (noting that persons "found to have violated the sexual misconduct policies of the University may receive penalties up to and including expulsion" and that a person found responsible may appeal a penalty and receive a final decision));

- As Plaintiff alleges, the UWC process has the ability to affect the privilege private individuals have to continue as Yale students (and did so in this case); (Cmplt. ¶ 81; *see also* UWC Procedures at 7.6 ("Persons found to have violated the sexual misconduct policies of the University may receive penalties up to and including expulsion . . . ."));

---

[7] *Razavi* did not determine whether the college's sexual misconduct procedures were quasi-judicial. *Id.* at 375 ("[W]e find it unnecessary to address whether the disciplinary hearing was quasi-judicial in nature . . . .").  Instead, the Court held that the complainants' initial statements to campus security were absolutely privileged as reports to law enforcement and that their subsequent statements were absolutely privileged under the Restatement (Second) of Torts, which provides that "[o]ne who is required by law to publish defamatory matter is absolutely privileged to publish it" because federal law required the college to investigate claims of sexual misconduct. *Id.* at 372–73.  Connecticut follows the Restatement (Second) of Torts with respect to defamation.  *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217, 837 A.2d 759, 763 (2004).  If the Court determines that the UWC proceedings are not quasi-judicial, it should nevertheless conclude that Jane is entitled to absolute immunity for her involvement with the proceedings under the rationale advanced in *Razavi* and the Restatement (Second) of Torts.  As in *Razavi*, Jane participated in an investigation that was required by federal law.

- The UWC panel (and the UWC fact-finder) hear from and examine witnesses during a hearing (and fact-finder interviews); (Cmplt. ¶ 77; UWC Procedures at 7.3, 7.4 (noting, among other things, that the "fact-finder will gather documents and conduct interviews as necessary to reach a thorough understanding of the facts and circumstances surrounding the allegations of the complaint" and that the hearing panel will "interview the complainant and then the respondent" and potentially witnesses by asking them questions)); and

- The UWC Procedures empower the decision maker to make and enforce decisions and impose penalties; (Cmplt. ¶ 81; *see also* UWC Procedures at 7.5, 7.6 ("Following the hearing, the panel will consider whether the respondent has violated University policy, giving an affirmative answer if it is satisfied that a violation has been shown by a preponderance of the evidence. . . .  Persons found to have violated the sexual misconduct policies of the University may receive penalties up to and including expulsion . . . .")).[8]

Public policy requires the conclusion that the UWC process is a quasi-judicial process to which absolute immunity attaches.[9]  In addition to being subject to federal law under Title IX, Yale's sexual misconduct procedures must comply with Connecticut General Statutes § 10a-55m. Section 10a-55m requires, among other things, that Yale "adopt and disclose" policies "including clear statements that" (1) "the investigation and any disciplinary proceedings shall be conducted by an official trained annually in issues relating to sexual assault . . . and shall use the preponderance of the evidence standard . . . . ;" (2) "both the student . . . who reports or discloses the alleged assault . . . and the student responding to such report (i) are entitled to be accompanied

---

[8] In addition to the UWC Procedures, the Court can consider the UWC's Panel's Decision in this case because Plaintiff relies on that decision in support of his claims by arguing, among other things, that the "panel's decision . . . was against the weight of the evidence . . . ." (Cmplt. ¶ 80.) *See, e.g.*, *Lynch*, 952 F.3d at 79.  The Panel's Decision shows the Panel applying the UWC Procedures and exercising classic quasi judicial functions by, among other things, examining the parties, weighing the evidence, applying Yale's standard of proof and relevant definitions regarding sexual misconduct to the facts of the case, and making credibility determinations.  Jane has not attached the Panel Decision to this Memorandum because it is a confidential and extremely sensitive document.  If, however, the Court has any question about the judicial nature of the UWC in this case, the parties can provide the Panel's Decision.

[9] The public policy of this State prohibits a court's interference with college and university disciplinary decisions. *See Gupta v. New Britain General Hospital*, 239 Conn. 574, 592, 687 A.2d 111 (1996); *see also, e.g.*, *Lotto v. Hamden Bd. of Educ.*, No. CV-05-4010436, 2006 WL 618361, at *4 (Conn. Super. Ct. Feb. 21, 2006) (relying on *Gupta* to dismiss claim challenging expulsion for possession of alcohol); *Jacobs v. Ethel Walker Sch. Inc.*, No. CV-02-0515279-S, 2003 WL 22390051, at *4 (Conn. Super. Ct. Sept. 30, 2003) (Robinson, *J.*) (then Superior Court judge and current Chief Justice of the Connecticut Supreme Court explaining:  "This court notes that issues raised by the parties in this matter directly concern the disciplinary aspect of the educational process instead of the academic aspect of the process, however when it comes to judicial intervention this is a distinction without a difference.")  Allowing claims based on purported conduct during university disciplinary proceedings is inconsistent with that policy.

. . . by an advisor or support person of their choice . . . and (ii) shall have the opportunity to present evidence and witnesses on their behalf during any disciplinary proceeding;" and (3) "a standard of affirmative consent is used in determining whether consent . . . was given."  Conn. Gen. Stat. §§ 10a-55m(b), (b)(6).  Section 10a-55m also contains confidentiality provisions.  Conn. Gen. Stat. §§ 10a-55m (b)(6)(E).  That the State of Connecticut statutorily requires the procedures at issue in this case (including training) supports the conclusion that UWC proceedings are quasi-judicial.

And in *Craig*, 271 Conn. at 92, the Court was persuaded by the reasoning in *Miner v. Novotny*, 304 Md. 164, 166, 498 A.2d 269, 270 (1985), when it concluded that internal affairs investigations are quasi-judicial because they "serve a public function of vital importance by providing a mechanism through which abuses may be reported to the proper authorities, and abusers held accountable."  *Id.* (quotation marks omitted).  Yale's UWC procedures serve a vital importance by providing a mechanism though which sexual misconduct may be reported to the proper authorities at Yale and perpetrators of sexual misconduct may be held accountable.  *See, e.g.*, *Razavi*, 122 N.E.3d 361, 373–74 (explaining that public policy "demands" that individuals who make complaints of sexual misconduct on college campuses be entitled to absolute immunity and noting:  "If sexual assault victims are at risk of facing a civil lawsuit from their attacker throughout the reporting and disciplinary process, they will be less likely to come forward and report the crime . . . .  This places the entire campus unnecessarily at a safety risk, thus dampening the intended purpose of higher education in a safe environment.").[10]

---

[10] *See also, e.g.*, *Hartman v. Keri*, 883 N.E.2d 774, 778 (Ind. 2008) (concluding that students who made sexual harassment allegation were entitled to absolute immunity and noting:  "Protecting their complaints with anything less than an absolute privilege could chill some legitimate complaints for fear of retaliatory litigation.").

Because UWC proceedings are quasi-judicial, Jane is entitled to absolute immunity for statements made in conjunction with the UWC proceedings, including statements made at any point of the proceedings, not just at the hearing before the panel.[11]  *See, e.g.*, *Hopkins v. O'Connor*, 282 Conn. 821, 832, 925 A.2d 1030, 1038 (2007) ("The scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding."); *see also, e.g.*, *Davis v. Lapish*, No. 3:17CV898 (MPS), 2019 WL 5964792, at *1 (D. Conn. Nov. 13, 2019).

Plaintiff's claim that Jane allegedly "persisted in her [purportedly] false and [allegedly] defamatory claims in an effort to obtain the expulsion of [Plaintiff] from Yale," (*i.e.*, that Jane pursued a claim with the UWC) fails to state a claim because UWC proceedings are quasi-judicial and it is well-established that witnesses have absolute immunity in such proceedings.[12]

The absolute immunity that Jane has with respect to her involvement with the UWC precludes both Plaintiff's defamation and tortious interference claims.  *See, e.g.*, *Rioux*, 283 Conn. at 343–44 (noting that the Connecticut Supreme Court has "consistently . . . held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings"); *id.* at 344 ("[I]n the context of a quasi-judicial proceeding, absolute immunity . . . does bar a suit alleging that . . . statements constituted an intentional interference with contractual or beneficial relations.").  Thus, Plaintiff's remaining factual underpinning for his

---

[11] Quasi-judicial immunity also extends to Jane's interactions with the UWC in 2015.

[12] If Plaintiff is attempting to rely on purported statements that relate to Jane's involvement in the criminal process against Plaintiff, Jane is entitled to absolute immunity for those statements as well and/or the statements at issue are barred by the statute of limitation.  *See, e.g.*, *Rioux*, 283 Conn. at 343–44; Conn. Gen. Stat. § 52-597.

15

claims, which relates to Jane's involvement with the UWC, fails to state a claim as well and Plaintiff's claims against Jane should be dismissed in their entirety.[13]

### III.     In the Alternative, the Court Should Dismiss Plaintiff's Claims Under Connecticut's Anti-SLAPP Statute Because They Are Based on Jane's Exercise of Rights Protected by the Statute.

Plaintiff's claims of defamation and tortious interference are exactly the types of claims Connecticut's anti-SLAPP statute was enacted to prevent.  The claims are based on Jane's exercise of all three rights protected by that statute and Plaintiff cannot establish probable cause that he will prevail on his claims in light of Jane's defenses to the claims.  The Court must therefore dismiss Plaintiff's claims pursuant to Connecticut's anti-SLAPP statute.

### A.     Connecticut's Anti-SLAPP Statute Applies in Federal Court.

In *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 133 Nev. 512, 402 P.3d 665 (2017), the Second Circuit held that the immunity and mandatory fee-shifting provisions of Nevada's anti-SLAPP statute apply in federal proceedings.

In this case, Jane seeks application of the same substantive provisions at issue in *Adelson*: The right not to be subject to a suit based on the exercise of rights protected by Connecticut's anti-SLAPP statute and, if appropriate, its mandatory fee-shifting provisions.[14]

### B.     The Anti-SLAPP Statute's Burden-Shifting Framework.

As discussed in more detail above, the anti-SLAPP statute articulates a burden-shifting approach.  The defendant has the burden of making an initial showing that the plaintiff's complaint

---

[13] Plaintiff's claims against Jane are also barred by *Gupta*, 239 Conn. at 592, and its progeny.  *Gupta* and its progeny establish a policy of noninterference with discipline by educational institutions.  *See supra* note 9.  Through his claims against Jane, Plaintiff is asking this Court to relitigate the decisions made by the UWC.  That is exactly what *Gupta* and its progeny preclude.  *See, e.g.*, *Jacobs*, 2003 WL 22390051, at *4.

[14] Jane does not seek application of the procedural aspects of the anti-SLAPP statute requiring, for example, that the Court hold a hearing regarding her motion within a set amount of time.

is based on the defendant's exercise of her right of free speech, right to petition the government, or right of association. Once the movant does so, the Court must dismiss the plaintiff's claims unless the plaintiff sets forth with particularity probable cause that he will prevail on his claims considering all valid defenses. *See* Conn. Gen. Stat. § 52-196a.

### C.     Plaintiff's Claims Are Based on Rights Protected by the Statute.

Plaintiff's claims are based on Jane's exercise of her right of free speech, right to free association, and right to petition the government.

### 1.     Plaintiff's Claim that Jane "Went Public With Her Claim of Rape" Relies on Protected Free Speech.

The anti-SLAPP statute prohibits Plaintiff from challenging Jane's right of free speech, which is defined in relevant part as communication or conduct furthering communication in a public forum on a "matter of public concern." Conn. Gen. Stat. §§ 52-196a(a)(1) & (2). Public concern includes, among other things, health, safety, and/or community well-being. *Id.*

Plaintiff's allegation that Jane "went public with her claim of rape," (Cmplt. ¶ 46), is clearly a communication on a matter of public concern. By definition, the allegation that Jane "went public" denotes communication in a public forum. There is also no serious dispute that Jane's allegations of sexual assault constitute communication on a "matter of public concern." Crime and suspected criminal conduct are "matters of public concern" because they relate to safety and community well-being. *See, e.g.*, *Yovana Angelica Pacheco Quevedo et al. v. Hearst Corp. et al.*, No. FSTCV195021689S, 2019 WL 7900036, at *5 (Conn. Super. Ct. Dec. 19, 2019) ("Moreover, the subject publication qualifies as a 'matter of public concern' under the anti-SLAPP statute, because it relates to 'health or safety,' 'community well-being,' and 'the government,' . . . Courts interpreting similar anti-SLAPP statutes across the country have held that speech about crime fits into these categories."); *Day*, 2019 WL 994532, at *3 ("[T]he allegations . . . are 'based on' the

17

defendants' right to contact the police about a matter of public concern, specifically, suspected sexual abuse of a minor child . . . .") Plaintiff's claims are exactly what the anti-SLAPP statute was designed to protect against.

### 2. Jane's Communications with Yale Constitute Protected Freedom of Association.

Jane's communications with Yale and the UWC, on which Plaintiff bases a significant part of both of his claims, challenge Jane's exercise of the right of association: In this case, Jane's right to request that Yale consider whether or under what circumstances Plaintiff should be allowed to continue associating with Jane and the Yale community.

The U.S. Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *see also, e.g.*, *State v. Bonilla*, 131 Conn. App. 388, 394, 28 A.3d 1005, 1009 (2011). "For this reason, impediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment." *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548 (1987) (alteration and internal quotation marks omitted). "[F]reedom of association plainly presupposes a freedom not to associate." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (alterations and quotation marks omitted); *see also, e.g.*, *Day*, 2019 WL 994532, at *6.

The right to freely associate (or not associate) is implicated by a wide array of relationships, including, for example, communications amongst neighbors. *Cicerone v. Lynch*, No. DBDCV186026091S, 2018 WL 7893360, at *2 (Conn. Super. Ct. July 25, 2018) ("Her communications with neighbors also implicates her protected freedom to associate.").

18

In *Day v. Dodge*, 2019 WL 994532, at *2–*3, the Court considered the right of association prong of Connecticut's anti-SLAPP statute. *Day*, 2019 WL 994532, at *6–*7. The *Day* Court recognized that being a member of a Boy Scout troop was "a privilege that may be denied, limited, or terminated when determined to be in the best interest of Scouting." *Id.* at *6 (internal quotation marks omitted). The Court noted that under *Dale*, 530 U.S. at 648, "freedom of association . . . plainly presuppose a freedom not to associate." *Day*, 2019 WL 994532, at *6 (quoting *Dale*, 530 U.S. at 648). The Court agreed with the defendants' argument that they were exercising their right of association (namely, their right not to associate) to the extent that they excluded the plaintiffs from membership based on allegations of sexual abuse against them. *Id.* at *6. The court therefore granted the defendants' special motion to dismiss the plaintiffs' claims regarding the purported revocation of their membership in the troop. *Id.* at *6–*7.

It is a privilege to be a member of the Yale community. (Ex. A at ¶ 3.) As a member of that community, Jane had a constitutionally protected right to provide information to Yale related to Plaintiff's association with the Yale community. When Jane provided that information, she was exercising her right to freedom of association, just as the defendants in *Day* were by providing information relevant to determining whether the plaintiffs in that case should continue to be members of the Boy Scout troop. *See, e.g.*, *Day*, 2019 WL 994532, at *6–*7; *see also* Conn. Gen. Stat. § 52-196a (defining right of association as "communication among individuals who join together to collectively express, promote, pursue or defend common interests"). For the reasons already discussed, Jane's communications with Yale regarding allegations of sexual assault constitute a matter of public concern. *See, e.g.*, *Day*, 2019 WL 994532, at *3; *see also, e.g.*, *Yovana Angelica Pacheco Quevedo*, 2019 WL 7900036, at *5.

19

3.      **Jane Was Exercising Her Right to Petition the Government During the Criminal Investigation and Proceedings.**

Plaintiff appears to base his claims, at least in part, on information Jane provided in connection with her report(s) to law enforcement.  (*See, e.g.*, Cmplt. ¶ 113 (alleging that police officers encouraged Jane to pursue and publicize her allegations); *see also, e.g.*, Cmplt. ¶¶ 16, 48 (alleging that Jane made allegations to "officials at Yale University" and that "the Yale Police Department immediately opened an investigation of a potential rape"). Those allegations are barred by the anti-SLAPP statute and must be dismissed.

In *Day*, 2019 WL 994532, at *2–*3, the Court concluded that claims based on interactions with law enforcement implicate the "right to petition the government" prong of the anti-SLAPP statute.  The Court explained that by "contacting and communicating with the state police about" "suspected sexual abuse of a minor child," which the Court noted was a matter of public concern and community well-being, "the defendants were petitioning the government." *Id.*  The Court also noted:  "Other jurisdictions have considered similar statutes and held that '[w]hen a person reports suspected criminal activity to the police, she is engaging in constitutionally-based petitioning activity.'"  *Id.* at *3.  The Court also noted that Massachusetts' anti-SLAPP statute, which is narrower than Connecticut's statute, protects communications and actions that have a plausible nexus to a criminal investigation. *Id.* at *3–*4.

Other Courts, including a Connecticut Court, have reached the same conclusion.  *See, e.g.*, *Reid v. Harriman*, No. CV196083510S, 2019 WL 5960521, at *2, *3 (Conn. Super. Ct. Oct. 28, 2019) ("The right to petition the government for suspected criminal activity, whether ultimately found to have probable cause or not, is a critical element in the performance of law enforcement and community safety.  Other jurisdictions have considered similar statutes and held that when a person reports suspected criminal activity to the police, she is engaging in constitutionally-based

20

petitioning activity . . . .  As set forth above, the right to petition the government for suspected criminal activity is a matter of public concern and falls within the purview of § 52-196a." (alteration and internal quotation marks omitted)).

Plaintiff cannot rely on any communications that have a plausible nexus to the criminal proceedings against Plaintiff, including but not limited to Jane's communications with the Yale Police Department.  Any such communications constitute classic petitioning activity and must be dismissed.[15]  Conn. Gen. Stat. § 52-196a(a)(3)(B).  Indeed, Plaintiff alleges that Jane's allegations led to a criminal investigation and prosecution.  (Cmplt. ¶ 48.)

### D.     Plaintiff Cannot Establish Probable Cause that He Will Prevail.

The Court must dismiss Plaintiff's claims because they are based on Jane's exercise of protected rights and Plaintiff cannot establish "with particularity . . . that there is probable cause, considering all valid defenses, that [he] will prevail on the merits of" his claims.

### 1.     Probable Cause is a Demanding Standard.

Probable cause is a demanding standard:  It requires "a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances in entertaining it."  *Day*, 2019 WL 994532, at *4 (alterations and internal quotation marks omitted).  The anti-SLAPP statute's text and legislative history establishes that in this context, probable cause requires "a showing of probability, a likelihood of prevailing on the merits, akin to the likelihood that you would see in an injunction hearing."  (Exhibit G, "Excerpts of anti-SLAPP Statute's Legislative History" at 6906.)

---

[15] The Yale Police Department is a governmental body.  *See, e.g.*, *Mahon v. Comm'r of Dep't of Motor Vehicles*, No. CV010506612S, 2001 WL 746533, at *4 (Conn. Super. Ct. June 8, 2001) (noting that Connecticut Public Act 83-466 provides, among other things, that officers in the Yale Police Department are appointed by the City of New Haven and "have all the powers conferred upon municipal police officers for the City of New Haven").

### 2. Plaintiff's Claims Are Largely Time Barred.

Plaintiff cannot establish probable cause that he is likely to succeed on his claims related to Jane purportedly going "public" with her claims in 2015, alleged statements to Yale (or anyone else) in 2015 (or 2016 ), or Jane's involvement in the criminal investigation that occurred in 2015 because, as previously discussed, such claims are time barred.[16]  *See supra.*

### 3. Jane Has Absolute Immunity with Respect to the UWC.

Plaintiff's remaining claims concern Jane's involvement with the UWC.  As previously discussed, Jane has absolute immunity related to the UWC process.  *See supra.*

### 4. The Only Plausible Conclusion is that Jane Made Allegations in Good Faith and Plaintiff's Claims Therefore Fail.

Even ignoring the more obvious bars to Plaintiff's claim, Plaintiff cannot prevail because he cannot disprove Jane's good faith opinion that sexual misconduct occurred.

To prevail on his claims, Plaintiffs must establish actual malice.[17]  That "requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth," which in turn requires an inquiry into "whether a defendant believes, honestly and in

---

[16] Plaintiff can also not establish with particularity that he will prevail on his claims when he does not even identify with particularity what they are.  For example, it is unclear what Plaintiff's allegation that Jane "went public" means.

[17] Plaintiff must do so for at least two reasons.  First, because in addition to the absolute immunity discussed above, Jane had a qualified privilege to make her allegations for a variety of reasons even assuming without conceding that they were false, which Jane does not concede.  *See, e.g., Gallo v. Barile*, 284 Conn. 459, 464 n.6, 935 A.2d 103, 107 (2007) ("A qualified privilege protects false statements that are not made maliciously."); *Miles v. Perry*, 11 Conn. App. 584, 594, 529 A.2d 199, 205 (1987) ("The privilege of fair comment is a common law qualified privilege arising out of an occasion to express an opinion or otherwise comment on matters of public interest."); *see also, e.g., Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 637, 969 A.2d 736, 747 (2009) (noting that plaintiff must establish malice to overcome qualified privilege).  Second and with respect to Plaintiff's allegations concerning more recent events, because according to Plaintiff's own Complaint, Plaintiff was at least a limited-purpose public figure by the time of his criminal trial and actual malice (not malice in fact) is required to state a claim of defamation against even a limited-purpose public figure.  (Cmplt. ¶ 55.)  *See, e.g., Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) ("Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice. . . .'").  In fact, Plaintiff has appeared in a documentary regarding the underlying facts, which the Court may take judicial notice of.  *See, e.g., Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012); *see also*, Louis Therous, *The Night in Question*, BBC, *available at* https://www.bbc.co.uk/iplayer/episode/m000327c/louis-theroux-the-night-in-question.

good faith, in the truth of his statements and whether he has grounds for such belief." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 637, 969 A.2d 736, 747 (2009).

In *Day*, the Court granted the defendants' special motion to dismiss because the plaintiff failed to adduce "the necessary evidentiary support upon which the [Court could] find bad faith by the defendants" while the defendants' evidence, including their affidavits, established that they "made a good faith report of suspected child abuse." *Day*, 2019 WL 994532, at *5–*6.

The Court should do the same in this case. Jane has consistently stated and has averred in this action that she believed Plaintiff violated her rights and Yale's policies against sexual misconduct by engaging in sexual misconduct. (Ex. A at ¶ 4.) Plaintiff cannot establish that Jane's belief about what occurred was improper. *See Day*, 2019 WL 994532, at *6 (granting motion to dismiss under anti-SLAPP statute based on defendant's affidavit regarding her good faith belief that she overheard statements indicative of sexual misconduct).

Against this evidence, Plaintiff offers no facts of actual malice. He offers only the conclusory allegation that Jane "fabricated" her allegations. (*See, e.g.*, Cmplt. ¶ 113.) That allegation is patently insufficient. *See Day*, 2019 WL 994532, at *5 & n.8 (noting that allegation that defendants "'fabricated allegations of sexual assault'" and similar allegations did "not set forth any factual bases for malice or bad faith in the defendants' alleged conduct."). Plaintiff also proffers his own theory, devoid of any actual facts, as to why Jane purportedly "fabricated" allegations: As part of "an attempt to explain her failure to rendezvous with friends on the night of October 31, 2015." (Cmplt. ¶ 113.) That unsupported theory is fantastical. Plaintiff would have this Court believe that, among other things, Jane voluntarily submitted to a sexual assault examination, participated in a criminal process through trial, and then cooperated with the UWC's investigation years after she was sexually assaulted to explain to friends why she wasn't at a bar.

23

The only plausible explanation in this case is that Jane made and allegedly pursued sexual assault allegations because she believed—and continues to believe—that Plaintiff took advantage of her sexually in violation of Yale's policies and the law.  The Court in *Day* granted a special motion to dismiss under the anti-SLAPP statute based on exactly the same type of good faith belief. *Day*, 2019 WL 994532, at *5–*7.  This Court should do the same.

### E.   The Court Should Dismiss Plaintiff's Claims Under the Statute.

Plaintiff's claims are based on the exercise of all of the rights protected by the anti-SLAPP statute.  For a variety of reasons, he is unlikely to succeed on his claims.[18]  His claims are therefore exactly what the anti-SLAPP statute was designed to protect against.  Rather than permit lengthy and costly litigation based on statutorily protected Constitutional rights, the Court should dismiss Plaintiff's claims pursuant to Connecticut's anti-SLAPP statute.

---

[18] Jane does not list every potential defense here.  Indeed, it would be impossible for her to do so.  Jane reserves the right to raise additional defenses should this litigation proceed.

**CONCLUSION**

For the foregoing reasons, Defendant Jane Doe respectfully submits that her Motion to Dismiss should be granted in its entirety and Counts Seven (Defamation) and Eight (Tortious Interference with Business Relations) of the Complaint be dismissed with prejudice.

Respectfully submitted,

DEFENDANT JANE DOE

By: */s/ James M. Sconzo*
  James M. Sconzo
  Brendan N. Gooley
  CARLTON FIELDS P.A.
  One State Street, Suite 1800
  Hartford, CT  06103
  Tel.: 860-392-5000
  Fax: 860-392-5058
  Email: jsconzo@carltonfields.com
     bgooley@carltonfields.com

  Her Attorneys

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 28th day of April 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.


<u>     */s/James M. Sconzo*           </u>
James M. Sconzo