**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. 3:19-CV-01966 (KAD) |
| | : | |
| YALE UNIVERSITY, et. al. | : | |
|     Defendants. | : | June 2, 2020 |

## **MEMORANDUM OF LAW IN OPPOSITION TO THE JANE DOE DEFENDANT'S MOTION TO DISMISS**

On Halloween night, 2015, Defendant Jane Doe seduced the Plaintiff, Saifullah Khan, to have consensual sexual intercourse with her. The next morning, she awoke with her dignity offended and only her own libidinal urges to blame. At least in an honest world, that would have been the case. Jane Doe, however, could not face the inevitable perception that she had behaved in a trashy manner by having a one-night stand with Mr. Khan. Consequently, she manufactured a claim of rape to spread to her friends and then sought contraceptive care at the Yale University Health Center for what she described as consensual unprotected sex.

Trapped in a lie of her own making, Jane Doe then proceeded to file a formal rape complaint against Mr. Khan instead of setting the record straight with an accurate account of the events of that fateful night. The consequences were devastating to Mr. Khan. He lost his years of hard work at Yale University, his scholarship, and a promising career. He also lost his familial relationships with his orthodox Muslim family, and he faces deportation to his native Afghanistan – a deportation that will inevitably result in certain death for him due to his non-adherence to strict Islam. He faced his criminal charges

bravely, and he was acquitted by a jury of four counts of sexual assault after less than a day of deliberation on the strength of the evidence presented to show Jane Doe's consent.

Mr. Khan faced a different sort of so-called justice from Yale University. In a hearing heavily biased against Mr. Khan and prejudiced by the self-righteous cries of an aggrieved #MeToo lynch mob, Yale University wholeheartedly embraced the lies that Jane Doe continued to tell about Halloween night, 2015 and expelled Mr. Khan.

Jane Doe now seeks immunity as a matter of law for destroying Mr. Khan's life in a failed effort to preserve her dignity by converting herself into the victim by false tales. For the reasons stated herein, the Court should deny Jane Doe's motion to dismiss.

## **FACTUAL BACKGROUND**

On the night of Halloween in 2015, Mr. Khan and Jane Doe – both Yale University students – met at a Halloween party sponsored by an off-campus secret society. Compl. ¶ 39. They subsequently attended a performance by the Yale Student Orchestra at Woolsey Hall – an on-campus auditorium. *Id.* at ¶ 39. The couple left the orchestral performance early because Jane Doe was not feeling well, and they walked together on campus before heading to Trumbull College where their co-educational dormitory was located. *Id.* at ¶ 41.

Mr. Khan escorted Jane Doe to her room, and he parted from her there and headed back to his own room. *Id.* at ¶ 42 While he was en route to his own room, Jane Doe asked him to come back. *Id.* at ¶ 42. Mr. Khan complied, and she then asked him to check on the whereabouts of one of her friends. *Id.* at ¶ 42. When Mr. Khan returned from checking on her friend, Mr. Khan and Jane Doe had consensual sex in Jane Doe's room. *Id.* at ¶ 43.

The next morning, Jane Doe told her friends that she had been raped; however, when she sought contraceptive care at the university health center, she told the health care workers that she had engaged in consensual unprotected sex. *Id.* at ¶ 45. After a few days elapsed, Jane Doe finally worked up the courage and sufficient details to tell Yale officials her alleged story of rape. *Id.* at ¶ 46. After an official from Yale University helped Jane Doe to prepare and file a formal complaint against Mr. Khan, Deputy Dean Joe Gordon suspended Mr. Khan immediately and ejected him from campus, rendering him homeless. *Id.* at ¶ 47.

The Yale Police Department opened a rape investigation into Mr. Khan, and the State of Connecticut charged him with multiple counts of sexual assault in mid-November 2015. *Id.* at ¶ 48. In early 2018, Mr. Khan was tried and acquitted of all counts of sexual assault with the jury returning a verdict after less than a day of deliberation. *Id.* at ¶ 52.

Evidence produced at trial showed that Jane Doe exhibited a pattern of seductive conduct toward Mr. Khan as well as consensual conduct on the night of the alleged rape. *Id.* at ¶ 52. She sent him flirtatious text messages and a Shakespearean sonnet in the days prior to Halloween. *Id.* at ¶¶ 53-54. She also wore a revealing and sexually provocative cat-costume that night. *Id.* at ¶¶ 53-54. Furthermore, video evidence showed that Jane Doe and Mr. Khan had enjoyed a happy walk across campus after they left the Yale Student Orchestra's performance. *Id.* at ¶ 54. Finally, Jane Doe could not contradict the fact that she invited Mr. Khan into her room in the first place, presumably for the purpose of copulating with him. *Id.* at ¶ 54.

The criminal trial so decimated the truth of Jane Doe's allegations that Yale University did not proceed with Title IX proceedings against Mr. Khan until a #MeToo

protest forced the university to act to stave off a public relations nightmare. *Id.* at ¶¶ 57-66, 74. The result was the lynching of Mr. Khan in a Title IX proceeding where he was not allowed counsel or the ability to confront Jane Doe to expose her lies as he had done in criminal court. *Id.* at ¶¶ 74-81

## **ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting Twombly, 550 U.S. at 557).

While legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth, *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), courts must accept all well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**I.    The Plaintiffs' Tortious Interference Claims About Jane Doe's Initial Allegations In 2015 Are Not Time Barred. Mr. Khan Did Not Intend To Plead Defamation Claims Occurring Prior To December 13, 2017.**

The first argument that Jane Doe raises is that Mr. Khan's claims, to the extent that his tortious interference claims, so far as they apply to conduct prior to December 13,

2016, and his defamation claims, so far as they apply to conduct prior to December 13, 2017, are time-barred. *See* Doe's Mot. To Dismiss, pp. 15-16.

Mr. Khan does not raise defamation claims prior to December 13, 2017; however, upon re-reading his count of defamation, he understands why Jane Doe felt compelled to address any such claims out of an abundance of caution. Mr. Khan did not raise defamation claims prior to December 13, 2017 because of the Connecticut Supreme Court's clear holding in *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 224 (2004) that each defamatory statement constitutes a separate cause of action.

As for Mr. Khan's tortious interference claim, it is well-established in Connecticut law that the continuing course of conduct doctrine applies to tortious interference claims. *See, e.g.*, *PMG Land Associates, L.P. v. Harbour Landing Condominium Association, Inc.*, 172 Conn. App. 688, 694-96 (2017).

> When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed ... [I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong

*Navin v. Essex Sav. Bank*, 82 Conn. App. 255, 262 (2004).

In the instant case, the Plaintiff has alleged that Jane Doe concocted a false claim of rape in 2015 and persisted in using her false allegations to get him expelled from Yale – an endeavor that took her almost four years to accomplish and which she eventually succeeded in doing. Compl. ¶ 119. Her continuing course of conduct included making her statements to anyone who would listen even though she knew that they were false. These listeners included Yale University who ultimately caved to intense pressure of a

bloodthirsty #MeToo lynch mob. *See generally* Compl. Jane Doe does not challenge the factual sufficiency of any of Mr. Khan's allegations.

Consequently, Mr. Khan's tortious interference claim is not time barred as it concerns Jane Doe's conduct prior to December 13, 2016. Therefore, the Court should deny Jane Doe's motion to dismiss.

## II. Jane Doe Does Not Enjoy Absolute Immunity For Her Statements Made During The UWC Proceedings Because Yale University Is Not A State Actor.

Jane Doe asserts an elaborate quasi-judicial immunity defense, but completely skips the elementary question underlying quasi-judicial immunity doctrine. Does quasi-judicial immunity extend to private institutions' disciplinary bodies? In doing so, she asks the Court to interpret Connecticut law in a way that Connecticut courts have never interpreted it without informing the Court or Mr. Khan as to any controlling Connecticut support for her argument.

The Connecticut Supreme Court and the Connecticut Appellate Court have never extended quasi-judicial immunity to a private disciplinary proceeding, and the Court should not do so now. *See, e.g., Bose v. Bea*, 947 F.3d 983, 994 (6th Cir., Jan. 28, 2020) (reversing a district court's dismissal of a defamation claim in a Title IX proceeding at a private university on the grounds that Tennessee case law had only applied its quasi-judicial absolute immunity privilege to proceedings conducted by public bodies); *Cuba v. Plyant*, 814 F.3d 701, 717 (5th Cir. 2016) (holding that a private university's disciplinary proceedings are not quasi-judicial because it does not have any law enforcement or law interpreting authority); *Overall v. Univ. of Pa.*, 412 F.3d 492, 497-98 (3d Cir. 2005) (holding that, under Pennsylvania law, a disciplinary proceeding a private university was

not quasi-judicial because there was no government involvement).[1] Even though one Connecticut Superior Court judge did extend quasi-judicial absolute immunity to statements made before a private university's disciplinary body, the plaintiffs in that case did not raise the argument that quasi-judicial immunity could not apply in a private disciplinary proceeding. *Rom v. Fairfield University*, 2006 WL 390448 (CT Sup. Ct. 2006); *see also Fogel v. University of the Arts*, 2019 WL 1384577, at *1 (E.D. Pa. Mar. 27, 2019) (dismissing a defamation claim related to Title IX proceedings at a private university on the basis of quasi-judicial immunity and making no mention of any arguments against applying quasi-judicial immunity to a private disciplinary proceeding). Consequently, there is no controlling Connecticut authority that would justify a decision to extend quasi-judicial immunity to a Title IX proceeding at a private university, and there is ample federal circuit precedent declining to recognize private universities as state actors for quasi-judicial immunity purposes.

Furthermore, in its discussions of the quasi-judicial immunity doctrine, the Connecticut Supreme Court has relied heavily on the common law. *See, e.g.*, *Peytan v. Ellis*, 200 Conn. 243, 245-46 (1986). The ancient English common law rule limits the quasi-judicial immunity privilege to "legislative and judicial proceedings and *other acts of state*." *Bose*, 947 F.3d at 994 (quoting *Jones v. Trice*, 210 Tenn. 535, 540 (1962)) (emphasis added). There is no question that Yale University's UWC proceedings are not acts of state. Consequently, there is no basis in the foundational doctrinal underpinnings

---

[1] At least one district court has held that the denial of due process or an adversarial hearing places quasi-judicial immunity out of reach. *Doe v. Roe*, 295 F.Supp.3d 664, 674-75 (E.D.V.A. 2018). In the instant case, Mr. Khan did not receive due process because he was denied counsel's participation during the UWC hearings, the right to cross-examine Jane Doe, or a comprehensive adversarial hearing in person. Compl. ¶¶ 76-81.

or in Connecticut case law to apply quasi-judicial immunity to Jane Doe's statements to the UWC in the instant case.

Even though Title IX requires Yale University to comply with federal law on its policies and procedures concerning sexual assault on campus, it does not automatically convert a private institution's disciplinary hearing into state action, which would be required under the common law underpinning Connecticut's quasi-judicial immunity doctrine. Neither does Conn Gen. Stat. 10a-55m. Jane Doe's attempt to draw an analogy to a finding of law enforcement interests in a report to campus security in *Razavi v. Sch. Of the Art Inst. Of Chicago*, 2018 IL App. (1st) 171409, 122 N.E.3d 361, 369-71, *case dismissed sub nom. Razavi v. Sch. Of Art inst. Of Chicago*, 124 N.E.3d 475 (Ill. 2019) fails under Connecticut law. The *Razavi* court's holding was strictly limited to the defendant's report of alleged assault to campus security. *Id.* At best, *Razavi*'s formulation of privilege protects the initiation of the law enforcement process, but it does not extend further although the court's dicta indicated that it would extend it further. *Id.*

One more argument remains. The *Razavi* court reasoned that federal law compelled the defendant to publish defamatory material. *Id.* This reasoning is grossly misguided in the instant case. Federal law does not require Jane Doe to fabricate claims of sexual assault to save whatever sense of dignity that she still had left after engaging in consensual sexual intercourse with Mr. Khan. Federal law does not even require Jane Doe to report an allegation of sexual assault even if it is true. If federal law did require such, the federal government would then become responsible for defaming Mr. Khan. To the contrary, federal law does not require anything of Jane Doe. It requires Yale University to investigate her claims, but it does not require her to speak at all, let alone require her

to fabricate an allegation to ensure an investigation into Mr. Khan and his ultimate punishment.

Consequently, because Yale University is not a state actor, the Court should deny Jane Doe's motion to dismiss Mr. Khan's claims on the assertion of quasi-judicial immunity.

### III. Connecticut's Anti-SLAPP Statute Does Not Protect Jane Doe Because It Does Not Make Her Constitutional Rights Absolute.

Mr. Khan does not dispute that Connecticut's anti-SLAPP statute, Conn. Gen. Stat. 52-196a, applies in federal court. He does, however, dispute Jane Doe's characterization of her constitutional rights as being absolute with no regard for his rights.

As the date of this filing, the undersigned was unable to find any decisions from the Second Circuit, the United States District Court for the District of Connecticut, the Connecticut Supreme Court, or the Connecticut Appellate Court interpreting the appropriate standard to be applied in an anti-SLAPP case.

However, Connecticut Superior Courts have generally followed a two-part framework based on the text of the statute of itself. First, the moving party must show, "by a preponderance of the evidence, that the… complaint falls within the scope of the statute." *Pacheco Quevedo v. Hearst Corp.*, 2019 WL 7900036, at *1 (CT. Super. Ct. Dec. 19, 2019) (internal quotation and citation omitted). Second, the Court "must next determine whether a plaintiff 'sets forth with particularity the circumstances giving rise to the complaint ... and demonstrates to the court that there is probable cause, considering all valid defenses, that the [plaintiff] will prevail on the merits of the complaint....'" *Id.* at *3 (quoting Conn. Gen. Stat. § 52-196a(e)(3)). A plaintiff's burden consists of two parts. First

a plaintiff must show that his pleading is adequate. *Id.* at *3. Second, a plaintiff must show probable cause that he will prevail. *Id.* at *3.

### A. Mr. Khan concedes that Connecticut's anti-SLAPP statute covers Jane Doe's arguments that his Complaint concerns matters related to her free speech and freedom of association rights. Mr. Khan did not state claims against Jane Doe for her statements to law enforcement or her testimony at his criminal trial.

Mr. Khan concedes that his claims of defamation and tortious interference fall within the scope of Connecticut's anti-SLAPP statute as they relate to Jane Doe's rights to free speech and freedom of association. *See United States v. Alvarez*, 567 U.S. 709 (2012) (holding that falsity alone does not suffice to bring the speech outside of the First Amendment). He does not concede that her statements are constitutionally protected though, thus entitling them to the protection of the anti-SLAPP statute.

Mr. Khan did not state claims against Jane Doe for her statements to law enforcement or her testimony at his criminal trial. Consequently, there is no issue as to Jane Doe's argument that his Complaint infringes on her right to petition the government for a redress of her perceived grievances.

### B. Mr. Khan set forth with particularity the circumstances giving rise to the complaint. There is probable cause, considering all valid defenses, that he will prevail on the merits of his complaint.

Jane Doe fails to challenge the factual sufficiency of Mr. Khan's complaint. Instead, she disputes the facts that he has alleged. Regardless, Mr. Khan has alleged that he and Jane Doe had consensual sexual intercourse in her Yale University dorm room, Compl. ¶¶ 43, 112, that she had actively pursued him with sexually provocative advances prior to their sexual encounter, Compl. ¶¶ 53-54, and that she had invited him into her dorm room with object of having sexual intercourse with him, Compl. ¶¶ 42-43, 54. Mr. Khan

has further alleged that Jane Doe concocted a claim of rape to excuse her behavior and hide her shame and rage at Mr. Khan, who treated their sexual encounter as a one-night stand instead of the beginning of a relationship. Compl. ¶¶ 43, 113, 115. Mr. Khan further alleged that Jane Doe persisted in her false claims of rape against him through the UWC proceedings to get him expelled from Yale. Compl. ¶¶ 77, 115, 119. It takes no magician to infer that Mr. Khan has alleged that Jane Doe had full knowledge of that she was making false statements of fact motivated by malice toward him. Consequently, these allegations sufficiently state with particularity the facts that give rise to the instant complaint.

Jane Doe argues that Mr. Khan cannot establish probable cause because his claims are time barred or that she has absolute immunity through quasi-judicial immunity. As discussed previously herein, these arguments fail.

Jane Doe's final argument is to attempt to frame her defamatory statements as statements of opinion that sexual assault occurred in an effort to argue that Mr. Khan cannot show probable cause. The First Amendment offers no protection to a statement that "(1) would reasonably have been perceived as an assertion of fact, (2) was false, and (3) was made with knowledge or reckless disregard of its falsity." *Reuland v. Hynes*, 460 F.3d 409, 414 (2006). Reckless disregard for the truth may be evidence from a speaker's "subjective awareness of probable falsity," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974), or "serious doubts as to the truth of his [speech]." *St. Amant v. Thompson*, 390 U.S. 727, 737 (1968).

To suggest that Jane Doe's statements are statements of opinion is to state that every statement of fact is a statement of opinion. Mr. Khan alleged that Jane Doe

concocted a story – a blow by blow as it were – allegedly describing how he took advantage of her sexually. Compl. ¶¶ 43, 113, 115. Her descriptions of the events of Halloween night, 2015 were not statements of opinion and were definitely perceived as assertions of fact by everyone who heard them: law enforcement, the state prosecutor, the criminal court judge, the criminal jury, the media, the public, and Yale's UWC personnel.

Mr. Khan has also alleged that these statements of fact were false, and a criminal jury acquitted him less than a day after beginning deliberations because they could not find Jane Doe's version of events to be truthful. Compl. ¶¶ 52-54. Furthermore, whether Jane Doe's statements were false is a question of a fact for a jury to decide.

Finally, Jane Doe cites *Gambardella v. Apple Health Care, Inc.* for the proposition that Mr. Khan must show that she did not "believe, honestly and in good faith, in the truth of [her] statements and whether [she] had grounds for such a belief." 291 Conn. 620, 638 (2009). What Jane Doe conveniently omitted in her brief was the rest of the controlling authority from *Gambardella*, which rests on United States Supreme Court precedent:

> Notably, however, a trial court is not required merely to accept a defendant's self-serving assertion that he published a defamatory statement without knowing that it was false…. As the United States Supreme Court aptly stated: "The defendant in a defamation action ... cannot ... automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.

*Id.* at 638-39 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)).

Mr. Khan has alleged that Jane Doe fabricated her account of the events that took place on Halloween night, 2015. Jane Doe provides no sworn testimony to the Court even

professing a good faith belief, relying wholly on her counsel's assertion.[2] Even if she did, it would not be sufficient to tip the balance in her favor. Whether a belief is held in good faith is a question of fact for a jury, and Mr. Khan has already succeeded in persuading one jury after less than a day of deliberation that Jane Doe's accusations are not credible.

Consequently, for these reasons, the Court should deny Jane Doe's anti-SLAPP motion to dismiss.

In the alternative, should the Court find that Mr. Khan needs to provide more evidence, Mr. Khan respectfully requests the Court to hold an evidentiary hearing and allow Mr. Khan to produce evidence to meet his evidentiary burden. *See* Conn. Gen. Stat. § 52-196a(e).

### **CONCLUSION**

For the foregoing reasons, Mr. Khan respectfully requests the Court to deny Jane Doe's motion to dismiss in its entirety.

The Plaintiff

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

---

[2] Jane Doe provides an unsworn declaration to the Court in support of her motion. *See* **Exhibit A to Jane Doe's Memo In Support Of Mot. To Dismiss**. There is no indication that it was notarized even though it claims that she made the declaration under the penalty of perjury.

## **CERTIFICATION**

I hereby certify that on June 2, 2020, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120