IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAIFULLAH KHAN, <br><br> Plaintiff, <br><br> v. <br><br> YALE UNIVERSITY, ET AL., <br><br> Defendants. | Case No. 3:19-cv-001966-KAD <br><br> June 30, 2020 |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### JANE DOE'S MOTION TO DISMISS

Pursuant to F.R.C.P. 12(b)(6) and Rule 7(d) of the Local Rules of this Court, Defendant Jane Doe ("Ms. Doe") submits this Reply in further support of her Motion to Dismiss (Doc. 26).

### SUMMARY OF REPLY

Plaintiff's Objection (Doc. 31 ("Objection")) fails to rebut the reasons why the Court should dismiss all claims made against Ms. Doe.

Ms. Doe is entitled to absolute immunity with respect to her involvement with Yale's UWC. Plaintiff's argument relies entirely on law from outside Connecticut, and his argument has been definitively rejected by Connecticut courts.

Plaintiff cannot avoid dismissal under Connecticut's anti-SLAPP statute because he does not come close to satisfying his burden of establishing with particularity probable cause that he will prevail on his claims.

The continuing course of conduct doctrine does not apply to this case. The Court must therefore dismiss Plaintiff's tortious interference claim to the extent it relies on alleged conduct that purportedly occurred prior to January 9, 2017.

The Court should therefore dismiss Plaintiff's claims in their entirety, with prejudice.

1

## MS. DOE IS ENTITLED TO ABSOLUTE IMMUNITY; THERE IS NO REQUIREMENT THAT QUASI-JUDICIAL PROCEEDINGS MUST BE RUN BY STATE ACTORS.

Plaintiff cannot contest that UWC proceedings meet the Connecticut Supreme Court's six-factor test for quasi-judicial proceedings. Thus, participants before the UWC are entitled to absolute immunity. *See, e.g., Craig v. Stafford Const., Inc.*, 271 Conn. 78, 83–84, 856 A.2d 372, 376 (2004); Ms. Doe's Memorandum of Law in support of her Motion to Dismiss (Doc. 27 ("Memorandum")) at 17–21. Citing no Connecticut case, Plaintiff argues that quasi-judicial proceedings must be run by state actors. (Objection at 6.) However, the test for whether a proceeding is quasi-judicial asks what happens in the proceeding, not who runs it, *see, e.g., Craig*, 271 Conn. at 83–84; Memorandum at 17–21, and Connecticut case law establishes that proceedings undertaken by non-state actors can be quasi-judicial.

The Connecticut Supreme Court has explained that the quasi-judicial proceedings to which "immunity attaches . . . include[] *any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not*." *See, e.g., Petyan v. Ellis*, 200 Conn. 243, 246, 510 A.2d 1337, 1338 (1986) (all emphasis added), *superseded by statute on other grounds as stated in Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005). The Connecticut Supreme Court has liberally defined the scope of proceedings that may be quasi-judicial: "'[J]udicial proceeding' has been defined *liberally* to *encompass much more than civil litigation or criminal trials*," *Hopkins v. O'Connor*, 282 Conn. 821, 839, 925 A.2d 1030, 1042 (2007) (emphasis added), and proceedings "are regarded as judicial or quasi-judicial" "so far as they have powers of discretion in applying the law to the facts," *Craig*, 271 Conn. at 85.

UWC proceedings meet the Connecticut Supreme Court's definition of quasi-judicial proceedings. The UWC is a tribunal that performs a quintessential judicial function. (Memorandum at 18–20.) It applies the law (both Title IX and Connecticut General Statutes §

10a-55m) to the facts of the cases before it. Plaintiff cannot contest that. (Objection at 6–9.) His argument that the hearing must be run by a "state actor" is not found in the Court's six-factor test.[1] *See Craig*, 271 Conn. at 85.

Moreover, the Connecticut Appellate Court has concluded that proceedings run by non-state actors may be quasi-judicial. In *Preston v. O'Rourke*, 74 Conn. App. 301, 310–11, 811 A.2d 753, 760 (2002), the Appellate Court stated that "[o]ftentimes, arbitration is a quasi judicial proceeding," and "concluded that the arbitration [in that case] was a quasi-judicial proceeding." *Id.* at 310, 312 (quoting *Petyan*, 200 Conn. at 246 and citing, *e.g.*, *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174 (2d Cir. 1984) ("[A]rbitrators act in a quasi-judicial capacity . . . .")).[2] *Preston* dooms Plaintiff's "state actor" argument because the Appellate Court recognized that a proceeding does not need to be run by a "state actor" to be quasi-judicial.[3]

Plaintiff concedes that *Rom v. Fairfield University*, No. CV020391512S, 2006 WL 390448, at *5 (Conn. Super. Ct. Jan. 30, 2006), is directly on point because it applied "quasi-judicial absolute immunity to statements made before a private university's disciplinary body." (Objection

---

[1] The Connecticut Supreme Court has also explained that it is "important to consider whether there is a sound public policy reason for" absolute immunity. *Id.* at 85; *see also Hopkins*, 282 Conn. at 828–29 ("[A]bsolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objection would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit."). The public policy for attaching absolute immunity to UWC proceedings could not be stronger: "If sexual assault victims are at risk of facing a civil lawsuit from their attacker throughout the reporting and disciplinary process, they will be less likely to come forward and report the crime . . . . This places the entire campus unnecessarily at a safety risk, thus dampening the intended purpose of higher education in a safe environment." *Razavi v. Sch. of the Art Inst. of Chicago*, 2018 IL App (1st) 171409, ¶ 29, 122 N.E.3d 361, 369–71, *case dismissed sub nom. Razavi v. Sch. of Art Inst. of Chicago*, 124 N.E.3d 475 (Ill. 2019).

[2] *Florasynth* involved private arbitration between an employee and his private employer. *Florasynth Inc.*, 750 F.2d at 172. Thus, the Appellate Court recognized in *Preston* that private arbitration, run by non-state actors, can be quasi-judicial.

[3] "This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). There is no such persuasive evidence. As discussed above, Connecticut Supreme Court jurisprudence supports the Appellate Court's recognition that proceedings can be quasi-judicial even if they are not run by "state actors."

3

at 7). Plaintiff's only challenge to *Rom* is that "the plaintiffs in that case did not raise the argument that quasi-judicial immunity could not apply in a private disciplinary proceeding." (Objection at 7.) But that is not correct. "The plaintiff [in *Rom*] argue[d] that the Fairfield University judicial hearing d[id] not qualify as a quasi-judicial proceeding . . . [because] the class of absolutely privileged communications . . . is limited to legislative and judicial proceedings and acts of state." *Rom*, 2006 WL 390448, at *1. The *Rom* Court rejected that argument and held that "the Judicial Board at Fairfield University is a quasi-judicial proceeding."

Finally, Plaintiff offers a few cases from outside Connecticut that are at odds with Connecticut law. (Objection at 6–7.) These cases rely on the law of other states that limit quasi-judicial proceedings to public proceedings. As discussed above, Connecticut law does not impose such a limitation.[4]

### THE CLAIMS MUST BE DISMISSED UNDER THE ANTI-SLAPP STATUTE BECAUSE PLAINTIFF HAS NOT ESTABLISHED PROBABLE CAUSE.

Plaintiff concedes that the Anti-SLAPP statute applies to this case. (Objection at 9.) The Anti-SLAPP statute requires him to set forth with particularity that there is probable cause to believe that he will prevail despite Ms. Doe's defenses. Conn. Gen. Stat. § 52-196a(e)(3); *see Day v. Dodge*, No. KNLCV186035362S, 2019 WL 994532, at *5–*6 (Conn. Super. Ct. Jan. 25, 2019) (dismissing claims where plaintiff failed to adduce necessary evidentiary support of bad faith). Plaintiff has not done that. He has failed to adduce any *evidentiary* support upon which the Court could find that he may prevail on his claims that Ms. Doe made her allegations in bad faith. Plaintiff has simply reasserted his conclusory allegations that Ms. Doe lied. That is insufficient.

---

[4] There are also states with laws similar to that of Connecticut. *See, e.g., Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019) (citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435–36 & n.3 (affording absolute privilege to statements made in the context of university disciplinary proceedings)); *Fogel v. University of the Arts*, No. CV 18-5137, 2019 WL 1384577, at *1 (E.D. Pa. Mar. 27, 2019) (applying absolute immunity to Title IX proceeding).

4

*See, e.g., Day*, 2019 WL 994532, at *5–*6. Plaintiff cannot overcome this deficiency by asking for a hearing; the statute requires he supply the court with evidence.[5] Conn. Gen. Stat. § 52-196a(e)(2).

Plaintiff trumpets the acquittal he obtained in a criminal proceeding (Objection at 12), but that proceeding and acquittal are irrelevant. Yale adjudicated Ms. Doe's allegations of misconduct under Title IX, Connecticut General Statutes § 10a-55m, and its own policies, and it applied a preponderance of the evidence standard. In contrast, the State had to prove beyond a reasonable doubt that, among other things, Plaintiff used or threatened to use force against Ms. Doe to compel her to engage in sexual intercourse or contact, *see* Conn. Gen. Stat. §§ 53a-70(a)(1), 53a-72a(a)(1)(A), that Ms. Doe was physically helpless, § 53a-71a(3), or that Plaintiff acted with criminal negligence by having sexual contact with Ms. Doe without her consent, § 53a-73a(a)(2).[6] To avoid dismissal under the Anti-SLAPP statute, Plaintiff must prove that Ms. Doe had no good faith basis to believe Plaintiff violated Yale's policies. (*See* Memorandum at 29.) He has submitted no such evidence. (Objection.) Plaintiff has failed to carry his burden and the Court must dismiss his claims.[7] *See, e.g., Day*, 2019 WL 994532, at *5–*6.

---

[5] In contrast, and even though Ms. Doe has no burden of proof, *see* Conn. Gen. Stat. § 52-196a(e)(3), Ms. Doe has submitted a declaration establishing that her report was made in good faith. (Doc. 27-1 ("In 2015, I reported to Yale and the Yale Police Department conduct by Plaintiff that I believed violated my rights and Yale policies against sexual misconduct.").) Ms. Doe's declaration has the force of and is equivalent to a sworn affidavit. *See* 28 U.S.C. § 1746.

[6] In Plaintiff's criminal case, "consent" was subject to a "criminal negligence" standard that required the State to prove beyond a reasonable doubt that Plaintiff's conduct "constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation." *Efstathiadis v. Holder*, 317 Conn. 482, 494, 496, 119 A.3d 522, 530 (2015).

[7] Plaintiff could have submitted a declaration and other evidence but chose not to. He now expects to burden the Court and parties with an evidentiary hearing, even though the Anti-SLAPP statute refers courts to the "pleadings and supporting and opposing affidavits." Conn. Gen. Stat. § 52-196a(e)(2). An evidentiary hearing is not warranted where Plaintiff has not submitted a declaration or proffered actual *facts* supporting his Objection.

## PLAINTIFF CANNOT RELY ON EVENTS BEFORE JANUARY 9, 2017 TO SUPPORT HIS TORTIOUS INTERFERENCE CLAIM BECAUSE THE CONTINUING COURSE OF CONDUCT DOCTRINE DOES NOT APPLY.

The core allegations underlying both of Plaintiff's claims concern conduct that allegedly occurred in 2015. (Cmplt. ¶¶ 113, 119.) Plaintiff claims that Yale then expelled him three years later.[8] (Cmplt. ¶ 80.) Under Connecticut law, Plaintiff's claims of defamation and tortious interference are subject to a two- and three-year statute of limitation, respectively. Conn. Gen. Stat. § 52-597 (defamation); Conn. Gen. Stat. § 52-577 (torts). Thus, all of Plaintiff's allegations related to conduct before January 9, 2018, and January 9, 2017, must be dismissed from Plaintiff's defamation and tortious interference claims, respectively.[9] That includes the following allegations:

- Ms. Doe's initial report to friends on November 1, 2015, (Cmplt. ¶ 45);

- Ms. Doe's written UWC complaint in November 2015, (Cmplt. ¶¶ 46, 47);

- Ms. Doe going "public with her claim of rape" in November 2015, (Cmplt. ¶ 46);

- Statements Plaintiff made to Yale (or anyone else) in November 2015, (Cmplt. ¶ 16);

- Statements Ms. Doe made to individuals associated with the criminal process prior to January 2017/2018,[10] (Cmplt. ¶ 48); and

---

[8] The Court should dismiss the allegations regarding Ms. Doe's post-January 2018 purported conduct because Ms. Doe has immunity for that alleged conduct for the reasons discussed above. Ms. Doe does not seek dismissal of Plaintiff's allegations regarding conduct that allegedly occurred after January 9, 2018 on statute of limitation grounds. Ms. Doe discusses Plaintiff's post-January 2018 allegation regarding her purported involvement in the UWC in this section only to demonstrate that Plaintiff's allegation does not render the continuing course of conduct doctrine applicable.

[9] Plaintiff concedes that he cannot rely on any "conduct prior to December 13, 2017" to support his defamation claim because any claim based on such conduct is "time-barred." (Objection at 5.) Plaintiff is actually barred from relying on any conduct prior to January 9, 2018, to support that claim because "[i]t is well settled that in Connecticut . . . a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint . . . and that, in a federal diversity action, such state rules control . . . ." *Kotec v. Japanese Educ. Inst. Of N.Y.*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004). Plaintiff served counsel for Ms. Doe on January 9, 2020. (Doc. 13.)

[10] Plaintiff does not particularize any such statements and has conceded that any such statements are outside the scope of his claims. (Objection at 10; *see also* Objection at 7 (discussing immunity)).

6

- Anything that allegedly constituted Ms. Doe "persist[ing]" with her allegations or engaging in a purported "crusade" to have Plaintiff expelled prior to January 2017/2018,[11] (Cmplt. ¶¶ 115, 119).

Even though these allegations are time-barred, Plaintiff asks the Court to consider the alleged conduct under the continuing course of conduct doctrine. That doctrine is not applicable in this case.

"[T]he continuing course of conduct doctrine recognizes that the 'act' or 'omission' that commences the limitation period *may not be discrete and attributable to a fixed point in time.*" *Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 503, 205 A.3d 534, 540–41 (2019) (emphasis added). For example, in *Shikhman v. Bobcat Endoscopy, LLC*, No. X03HHDCV176087023S, 2019 WL 3781699, at *2 (Conn. Super. Ct. July 15, 2019), the Court applied *Essex Insurance Co.*, 331 Conn. at 503, to dismiss claims of fraudulent misrepresentation:

> The continuous course of conduct doctrine does not apply here because there was no continuous course of the alleged conduct. The plaintiff alleges that the defendants made *discrete, specific misrepresentations* to him in 2006, 2009, and 2012. There are no allegations of misrepresentations after that point. Thus, *it is entirely possible to* "pinpoint the exact date of a particular negligent act or omissions that caused injury."

(Emphasis added).[12]

For the continuing course of conduct doctrine to apply, the "plaintiff must establish [among other things] that the defendant . . . *continually* breached [a] duty." *Essex Ins. Co.*, 331 Conn. at

---

[11] The allegations that Ms. Doe was on a "crusade" to have Plaintiff expelled and that Ms. Doe "persisted" with respect to her allegations are not facts. They are conclusory arguments that the Court may not accept as true. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *See, also, e.g., Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 50 (2d Cir. 2018), *certified question answered sub nom. Essex Ins. Co.*, 331 Conn. at 493 ("[F]or a series of subsequent wrongful omissions to trigger the continuing course of conduct doctrine, the series *must be more than a collection of 'repeated events giving rise to discrete injuries . . .* In such a case the damages from each discrete act would be readily calculable without waiting for the entire series of acts to end. There would be no excuse for delay. And so the violation would not be deemed "continuing."'" (emphasis added) (alterations omitted) (quoting *Watts v. Chittenden*, 301 Conn. 575, 22 A.3d 1214, 1222 (2011)).

7

504. In *International Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 184 (2d Cir. 2011), the Second Circuit applied that standard in concluding that the plaintiff had "not plausibly alleged that tolling [was] warranted" because a "single-page, handwritten fax sent twenty months after any other alleged misrepresentation by [the defendant] does not plausibly link up to form a continuous course of conduct." *Id.* (quotation marks omitted). The fact that the fax was related to prior improper conduct did not matter. *Id.*

Finally, "both the [Connecticut] Appellate Court and the [United States District Court for the District of Connecticut] agree that 'the continuing course of conduct doctrine has no application after the party has discovered the harm.'" *Wolinsky v. Brady*, No. MMXCV156012973, 2016 WL 2890412, at *4 (Conn. Super. Ct. Apr. 27, 2016) (citing *Rosato v. Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004)[13] and *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-CV-01539 JAM, 2014 WL 7270160, at *15 (D. Conn. Dec. 18, 2014), *aff'd*, 637 F. App'x 645, 646 (2d Cir. 2016)); *see Gourd v. Indian Mountain Sch., Inc.*, No. 3:18-CV-582 (JBA), 2020 WL 1244920, at *9 (D. Conn. Mar. 16, 2020).

In this case, Plaintiff's tortious interference claim is based on "the promulgation . . . of [allegedly] intentionally fabricated accusations against" Plaintiff. (Cmplt. ¶ 119.) Plaintiff alleges that Ms. Doe made her first allegations in early November 2015. (Cmplt. ¶ 46.) The continuing course of conduct doctrine is therefore inapplicable to Plaintiff's claim because he bases it on a discrete and fixed point in time. *See, e.g., Essex Ins. Co.*, 331 Conn. at 503. Indeed, all of Plaintiff's claims are based on a purported collection of discrete alleged misrepresentations that

---

[13] *Rosato* concerned an action subject to the statute of limitation in Connecticut General Statutes § 52-584. *Rosato*, 82 Conn. App. at 404. Connecticut State and Federal Courts have, however, applied *Rosato*'s holding to actions that, like the present one, are governed by Connecticut General Statutes § 52-577 and other statutes of limitations. *See, e.g., Coss v. Stewart*, No. CV085007541, 2010 WL 1050534, at *6 & n.1 (Conn. Super. Ct. Feb. 11, 2010), *aff'd sub nom. Coss v. Steward*, 126 Conn. App. 30, 10 A.3d 539 (2011) and cases cited above.

allegedly occurred on specific, discoverable dates. (*See* Cmplt. ¶¶ 45–48.) *See Shikhman*, 2019 WL 3781699, at *2 (concluding that continuous course of conduct doctrine is inapplicable to discrete misrepresentations). With one exception, those purported misrepresentations allegedly occurred in November 2015. The one exception was Ms. Doe's statement to the UWC three years later, in November 2018.[14] (Cmplt. ¶ 77.) That three-year gap is significantly longer than the twenty-month gap that the Second Circuit found to be too long in *International Strategies Group*. Moreover, Plaintiff was aware of Ms. Doe's allegations when they were made in 2015 because Yale suspended him as a result of those allegations. (Cmplt. ¶ 47.) For that additional reason, the continuing course of conduct doctrine is inapplicable. *See, e.g.*, *AT Engine Controls Ltd.*, 2014 WL 7270160, at *15.

Plaintiff's allegations establish that the continuing course of conduct doctrine is inapplicable, and he therefore cannot rely on events that occurred prior to January 9, 2017 to support his tortious interference claim or on events that occurred prior to January 9, 2018 to support his defamation claim.

---

[14] Not only does Plaintiff not allege any actionable conduct on Ms. Doe's part for three years, (*see supra* notes 10 & 11 (noting that Plaintiff is not basing claims on Ms. Doe's involvement in the criminal process and that his allegations regarding a "crusade" and Ms. Doe "persist[ing]" are conclusory arguments, not well-pleaded facts)), Plaintiff alleges that in November 2015, Yale stayed Ms. Doe's complaint to the UWC and that nothing occurred with respect to Ms. Doe's complaint until years later. (Cmplt. ¶ 51; *see also* Cmplt. ¶ 57 (alleging that "throughout the 2017/2018 academic year, [Yale] took no steps to bring to a closure the stayed UWC disciplinary procedure").) Plaintiff's own allegations render false his contention that Ms. Doe engaged in a continuous course of conduct for "almost four years." (Objection at 5.)

## CONCLUSION

The Court should dismiss Plaintiff's claims against Ms. Doe in their entirety with prejudice.

        Respectfully submitted,

        DEFENDANT JANE DOE

By: */s/ James M. Sconzo*
    James M. Sconzo
    Brendan N. Gooley
    CARLTON FIELDS P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email: jsconzo@carltonfields.com
           bgooley@carltonfields.com

Her Attorneys

## CERTIFICATION OF SERVICE

This is to certify that on this 30th day of June 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

                                                                     */s/James M. Sconzo*
                                                                     James M. Sconzo