UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | 3:19-CV-01966-KAD |
| Plaintiff, | : | |
| v. | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | MARCH 15, 2024 |

## MR. KHAN'S MOTION TO VACATE ORDER
## TREATING JANE DOE PSEUDONYMOUSLY

Mr. Khan initiated this lawsuit in 2019, one year after he was acquitted of criminal charges accusing him of the sexual assault of a classmate. At the time he filed this suit, he sought reinstatement to Yale. Under University rules, any student alleging sexual assault is entitled to anonymity. As a sign of respect for the University he hoped to re-enter, Mr. Khan sought, prior to the service of the Complaint, to designate his accuser as Jane Doe. Ms. Doe, the Connecticut Supreme Court noted in a related ruling, is no longer a student at the University, and is therefore not bound by obligations arising under the University Honor Code. Mr. Khan contends that any obligation to keep information about Ms. Doe confidential is also now moot. Nor is Jane Doe a victim of sexual assault. A criminal jury acquitted Mr. Khan of all

criminal charges. Ms. Doe has not herself filed a civil suit claiming assault. There is no case or controversy of any sort pending in which Jane Doe is entitled to anonymity. The order regarding the treatment of her under a pseudonym should be vacated.

There is no indication that at any time from 2019, when the action was filed, until 2023, when the Connecticut Supreme Court published its decision in his favor, that Mr. Khan publicized Ms. Doe's name. Nor is there any indication that the defendant sought to make Ms. Doe's name public in 2015, when the allegations against him were first raised, until 2019, when he was acquitted. Certainly, it is a name well known to him, as he endured a criminal trial with her testifying as a witness in the Connecticut Superior Court in 2018. He did not name her even after he was exonerated, and a jury quickly returned a verdict of not guilty on all counts. The cross-examination of Ms. Doe drew comments from and condemnation nationwide and was reported on in Time magazine. A Yale Student Accused Her Classmate Of Rape. His Lawyers Asked What She Was Wearing and How Much She Drank, Time, March 9, 2018( https://time.com/5192004/yale-university-sexual-assault-trial/).

When Mr. Khan filed this suit in 2019, his hope and objective were to be permitted to return to Yale to complete his degree. In service of that end, he sought pseudonymous protection for Jane Doe because that is how university regulations required that a student alleging sexual misconduct be treated. The Connecticut Supreme Court's decision regarding Ms. Doe's immunity claim was eye-opening for Mr. Khan and should be to this Court as well. The decision rejected the claim that Ms. Doe was under the functional equivalent of an oath when she made statements against Mr. Khan by operation of the student honor code, which would have subjected her to university sanctions for making a false statement in a university proceeding. "The UWC's only protection against false statements is the threat that the '[f]ailure to provide truthful information may result in a recommendation for a more severe penalty or a referral for discipline.' Because Doe had graduated from Yale by the time of the proceedings … she presumably could not be subject to any disciplinary consequences for failing to testify truthfully." *Khan v. Yale Univ.*, 347 Conn. 1, 28-29 (2023) (citation omitted). Similarly, an obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired.

There is a presumption against pseudonymous filings under Connecticut law. "The privilege of using fictitious names in actions should be granted only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest." *Buxton v. Ullman*, 147 Conn. 48, 60, 156 A.2d 508 (1959). "This policy of openness is not to be abridged lightly. In fact, the legislature has provided for very few instances in which it has determined that, as a matter of course, certain privacy concerns outweigh the public's interest in open judicial proceedings." *Vargas v. Doe*, 96 Conn. App. 399, 406, 900 A.2d 525 (2006).

"Pseudonyms may be used in place of the name of a party or parties only with the prior approval of the judicial authority and only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in knowing the name of the party or parties. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. The judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order. If any findings would reveal information entitled to remain confidential, those findings may be set

forth in a sealed portion of the record. An agreement of the parties that pseudonyms be used shall not constitute a sufficient basis for the issuance of such an order. The authorization of pseudonyms pursuant to this section shall replace the names of the parties required by Section 7-4A. Conn. Practice Book 11-20A (h)(1) (2022).

The defendant's reliance on the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. Section 1232g and 34 C.F.R. Part 99, is misplaced. FERPA pertains to the confidentiality of educational records. The statute provides a definition of education records and items excluded from the scope of educational records.

(A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which:

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution or by a person acting for such an agency or institution.

(B) The term "education records" does not include:

(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

(ii) records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;

(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or

institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

(iv) records on a student who is eighteen years of age or older, or is attending an institution of postsecondary education, which are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in his professional capacity, or assisting in that capacity, and which are made, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment, except that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

FERPA, 20 U.S.C., Section 1232g (4)(A) et seq.

The scope of the records protected by FERPA is broad but not unlimited. Information directly related to a student and maintained by an educational institution is covered. However, the exclusions are significant. For instance, records created and maintained by law enforcement are excluded if created for the purpose of law enforcement.

FERPA is silent on records created and maintained by administrative units within a university charged with investigating what amounts to criminal conduct. The plaintiff contends that a better reading of FERPA excludes protection of information gathered by a university when it investigates what amounts to criminal conduct. Being raped is not a normal incident of studentship, especially in a case where a criminal trial has taken place, with

university police and officials offering public testimony on the accusations and surrounding facts.

This is a case in which the plaintiff filed a lawsuit against an accuser for making a false accusation of rape, an accusation that garnered international attention, resulted in a firestorm of opposition to his return to Yale after he was acquitted, and has caused him enormous damages. The defendant elected not to file a civil action against the plaintiff, which would have provided her with the right to seek a confidentiality order. There is a substantial public interest in knowing the identity of a person making a false accusation of rape. In the context of this case, permitting individuals to enjoy special litigation status merely because they make a claim encourages future false claims.

Mr. Khan filed suit against Ms. Doe to hold her accountable; he will seek punitive damages to deter others from doing what she has done. Permitting her to enjoy the cloak of anonymity defeats the purpose of deterring false claims.

THE PLAINTIFF

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS
Pattis & Paz, LLC
Bar no. ct13120
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattislaw.com

## CERTIFICATION

I hereby certify that on March 15, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS