```
                  UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT


_____
SAIFULLAH KHAN,                   )
               Plaintiff,         ) No: 3:19-cv-1966-KAD
                                  )
       v.                         ) March 18, 2024
YALE UNIVERSITY, ET AL.,          )
               Defendants.        ) 9:57 a.m.
_____)
                             Brien McMahon Federal Building
                             915 Lafayette Boulevard
                             Bridgeport, CT 06604




                      MOTION HEARING



B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.
```

```
Courtroom Deputy:                  Official Court Reporter:
Kristen Gould, Esq.                Tracy L. Gow, RPR

                   Chambers: 203.579.5522
```

```
 1   A P P E A R A N C E S:
     For the Plaintiff:
 2       NORMAN A. PATTIS, ESQ.
         Pattis & Associates, LLC
 3       383 Orange Street, First Floor
         New Haven, CT 06511
 4       203-393-3017
         Email: npattis@pattislaw.com
 5
     For Defendant Yale University:
 6       GIOVANNA T. WELLER, ESQ.
         Carmody, Torrance, Sendak & Hennessey, LLP
 7       50 Leavenworth Street
         P.O. Box 1110
 8       Waterbury, CT 06721-1110
         203-573-1200
 9       Email: gweller@carmodylaw.com

10   For Defendant Jane Doe:
         BRENDAN GOOLEY, ESQ.
11       JAMES M. SCONZO, ESQ.
         Carlton Fields
12       One State Street
         Suite 1800
13       Hartford, CT 06103
         860-392-5036
14       Email: bgooley@carltonfields.com
                 jsconzo@carltonfields.com
15
     Also Present:
16       SAIFULLAH KHAN, Plaintiff

17

18

19

20

21

22

23

24

25
```

```
1                 (Call to Order, 9:57 a.m.)

2          THE COURT:  All right.  Good morning, everybody.  We

3     are here on the matter of Khan v. Yale University, et al.

4          Counsel, please identify yourselves for the record.

5          MR. PATTIS:  Norm Pattis, on behalf of Mr. Khan,

6     Judge.

7          THE COURT:  Good morning, Mr. Pattis.  It's been a

8     while.

9          MR. PATTIS:  Good morning, Judge.  Good to see you.

10         Yeah, I know.  I was just saying to my colleagues

11    that I hadn't been in this building since before the

12    pandemic.

13         THE COURT:  It's --

14         MR. PATTIS:  And I've missed it.  So it's good to be

15    back.

16         THE COURT:  Welcome back, Mr. Khan.

17         MR. GOOLEY:  Your Honor, Brendan Gooley, on behalf

18    of Defendant Jane Doe.  With me is Attorney Jim Sconzo; and

19    Attorney Giovanna Weller, who represents Yale.

20         MR. SCONZO:  Good morning, Judge.

21         MS. WELLER:  Good morning, Your Honor.

22         THE COURT:  All right.  I had scheduled oral

23    argument on Jane Doe's Motion to Dismiss that is premised

24    largely on Mr. Khan's disclosing of her identity on social

25    media and some activity that flowed from that.
```

1          Since then, I think other -- the issues that are

2     probably implicated a little bit in the Motion to Dismiss

3     have been the subject of a additional motions, which we are

4     not taking up today, and that is Jane Doe's motion for a

5     protective order, restricting and limiting Mr. Khan's access

6     to and use of certain information, as well as a motion by Mr.

7     Khan to remove the pseudonym of Jane Doe, largely because the

8     reasons he had sought the pseudonym at the beginning was out

9     of respect or concern for Yale's Title IX procedure, which is

10    no longer a concern.

11         We're not going to resolve those issues today, and I

12    think I'm going to ask -- first of all, they're still being

13    briefed.  And once they are fully briefed, or maybe even

14    before they're fully briefed, I'm going to ask that all of

15    those issues be taken up by one of our magistrate judges, who

16    will in due course.

17         Turning back to the Motion to Dismiss.  I think some

18    procedural background is helpful.  As I indicated, Mr. Khan

19    had filed, initially, the request for a pseudonym for Jane

20    Doe at a time when he indicated he was still perhaps

21    interested in pursuing and returning to Yale to get his

22    degree.  And out of recognition of their Title IX procedures

23    and the confidentiality of those procedures, he sought a

24    pseudonym for Jane Doe.

25         He analyzed the factors, the Second Circuit factors,

1    from "In re: Sealed Plaintiff" sort of through his lens,

2    through his eyes, and how those factors impacted his

3    interest.

4         Ordinarily, when a pseudonym is being contemplated,

5    it's through the interest for the person for whom the

6    pseudonym is going to be used.  And, so, Yale chimed in on

7    the motion for a pseudonym, and agreed, but sort of did it

8    through the eyes of Jane Doe as the accuser in the Title IX

9    proceedings.

10        And I granted the motion and ordered that all

11   pleadings and references to Jane Doe would use that

12   appellation throughout the litigation.

13        That was the only order I had entered.  Jane Doe had

14   not appeared at that time.  There was no request for a

15   protective order in terms of the use of her name, and I

16   certainly didn't *sua sponte* issue a prior restraint with

17   respect to anybody as to Jane Doe's identity.

18        So, with that background, I don't think -- and you

19   can tell me why I'm wrong -- I don't think that there would

20   be a basis at this juncture to dismiss the claims that Mr.

21   Khan brings for violating the Court's order; and if I've

22   missed something or there's an order there that did what I --

23   created a situation where he would be precluded from doing

24   what he has since done, then, by all means, share that with

25   me.  But I don't see that on this docket.

1          That said, I do have some concerns.  Attorney

2    Sconzo.

3          MR. SCONZO:  Thank you, Your Honor.  Good morning.

4          I hear what Your Honor says, but the consequence of

5    that would be that any litigant, then, could obtain such an

6    order and basically go worldwide and disseminate the name of

7    the person for whom they seek anonymity in this court.  So

8    there'd be no reason for the order, so to speak.

9          And I would say this, too, that before --

10          THE COURT:  But the protection that it affords is in

11    the confines of the litigation and public access to the

12    docket and who can look at the docket and know who the

13    players are.

14          I have not found a single case that says an

15    anonymity order serves as a prior restraint.  I just haven't

16    found it, Attorney Sconzo.

17          MR. SCONZO:  I would say this, Judge.  Well, I think

18    that's how the parties in this district have always viewed

19    this -- and, in fact, before what Mr. Khan did, Attorney

20    Pattis and I had been speaking candidly with each other, and

21    he had said, Jim, you know, we're going to move to remove

22    that order; and I said, in effect, Sure, you know, do what

23    you need to do, we'll respond to it.

24          So I think, in candor, even Attorney Pattis would

25    have to concede that nobody envisioned once this order

1   attached, that a litigant could take an end-run and

2   disseminate a name for whom they sought anonymity in this

3   case.

4           So, I do understand what Your Honor is saying, and I

5   do understand that you did not make an order against prior

6   restraint.  But the disclosure of the name in this case came

7   after Mr. Khan sought anonymity of the name and the

8   disclosures, as we've shown, Your Honor, all related to

9   litigation.  It's not as though he wrote some poem with her

10  name in it.  His disclosures are all defined by this

11  litigation and directed to this litigation.

12          So it seems to me, if there's no sanction for this,

13  then any litigant who obtains such an order will just ignore

14  it and go and say, Well, I didn't file a pleading so I can

15  use that name wherever I want.

16          MR. PATTIS:  May I address the Court, Judge?

17          THE COURT:  You may.

18          MR. PATTIS:  This is going to be a long piece of

19  litigation, and I think that our candor toward you and

20  respect to one another matters, because this is our first

21  time before you.

22          Everything Attorney Sconzo said is true.  I have

23  represented Mr. Khan since 2015, since he was first arrested,

24  I represented him in the 2018 trial and we've presented him

25  through the various appellate proceedings.  It is I who

1   drafted the complaint.  It is I who sought the protective

2   order on his behalf.  And it was our understanding at that

3   time that we would be governed by Yale process, as it were,

4   which was to keep anonymity of the complainant.  And,

5   frankly, it was the Supreme Court's decision that sort of --

6   and it's conclusion about the application of the honor code

7   to her -- to Jane Doe, that tipped the balance.

8           It was my expectation that we were going to file

9   something with this Court.  In listening to you, I'm

10  thinking, Jeez, I'm not half as good a lawyer as I thought

11  because that was a defense that wasn't raised, but it's

12  because it was an issue I didn't --

13          THE COURT:  Slow down.

14          MR. PATTIS:  It was a defense I didn't raise because

15  it's an issue I didn't see.  I saw it as Attorney Sconzo did,

16  and I did provide him notice that we would be seeking relief

17  from the order.

18          So I appreciate the Defense, and I appreciate the

19  concern about prior restraints, but I was operating as though

20  the order applied where it may not have, and I wanted you to

21  hear that from me.

22          THE COURT:  Okay.  Thank you.

23          I'll circle-back to where I was.  What I have seen

24  does give me concern about what's going on here, and some of

25  the things that Mr. Khan has done that give me pause.

1  Because some of the tenor and tone of the posts feel less

2  like his plan is to have his rights vindicated as it is to

3  exact retribution, and that is not the purpose of the use of

4  our courts or litigation generally.

5        When he has posted about the litigation and talking

6  about attending depositions, there is a sense of an intent to

7  intimidate.  There is a sense of an intent to harass.  The

8  idea of sort of mobilizing the Internet -- I mean, this is

9  borderline doxing, and it's very concerning.

10        The flipside of this -- I know that we have -- Mr.

11  Khan has an interest, if I'm reading these attachments

12  correctly, in challenging the structure of Title IX

13  proceedings generally, separate and distinct from this

14  litigation.

15        And I guess I would ask Attorney Sconzo or Attorney

16  Gooley, the motion for protective order that you filed, that

17  sort of seeks to achieve essentially what you're arguing

18  should have been or already was in place.  Is that a fair

19  statement?

20        MR. SCONZO:  Well, partly, Your Honor.  I think that

21  motion did not address the dissemination of the name, but

22  that motion addressed the dissemination of disclosures made

23  in discovery.  So the name issue still, I think, remains the

24  largest concern.

25        THE COURT:  And that issue is teed up with

1    plaintiff's motion.  You would agree with that, I assume?

2            MR. SCONZO:  I would agree with that.  I would also

3    agree with, we have a lot more to say on that.

4            THE COURT:  Okay.  Attorney Pattis, what is your

5    client's plan?

6            MR. PATTIS:  When I have talked to Mr. Sconzo, to

7    alert him we'd be filing a motion, it was my belief that we

8    would be filing a motion, and I was awaiting some instruction

9    from Mr. Khan.  And I have permission to discuss this with

10   you.

11           His disclosure surprised me, and I think the word I

12   used in one of my pleadings was "flummoxed," and led to

13   discussions between he and I about whether the

14   attorney-client relationship would continue, because my view

15   is that orders of the court are orders of court, and I

16   construed it strictly, and in ways that perhaps the Court

17   doesn't think are necessarily justified on the pleadings.

18   But that's how I saw it.

19           He, and for good reason, regards himself as the

20   victim in this case, not Jane Doe.  They had a consensual

21   experience, a jury vetted it, and Mr. Khan has been deprived

22   of the promise that Yale made him for a bright future in the

23   country of his adoption by using a procedure that might best

24   be described as a "kangaroo court," and encouraging and

25   enabling a young woman to come forth and lie about him to the

1   world, and now she seeks the protection for the consequences

2   of her action.

3          Now, the Court may say that his purpose is revenge

4   and revenge is inappropriate.  Accountability is not.  And to

5   the degree that he will seek punitive damages, those are to

6   punish and deter, and deterrence is a uniquely personal

7   function.

8          So I think he wants her to feel what he felt.  What

9   it was to have every publication that reports on things like

10  that, like Time Magazine reported him to be a rapist, when,

11  in fact, what he did was engaged in what one headline writer

12  called "messy sex."  And sex, typically, when it's consensual

13  among people above a certain age, may be messy, but it's not

14  a crime.

15         And, so, for reasons of her own, and for reasons of

16  a highly-mobilized political group, Mr. Khan was held out to

17  be a criminal and had to fight for his liberty, and he won.

18  And when he went back to Yale, the anger was mobilized and

19  they forced him to the street, and he's lost the promise.  I

20  remind you, he was recruited from a refugee camp in

21  Pakistan -- or Afghanistan, rather -- and came to the United

22  States, educated at Yale's expense.  He does want

23  retribution.  His future was stolen from him.

24         Now, having said that, I'm in a tough spot on the

25  "prior restraint" issue because I don't think this does come

1     close to doxing, and I know a lot about that from the Alex

2     Jones case in the state court, where there is a new theory in

3     the defamation cases called "stochastic terrorism," which is,

4     in an interconnected digital universe, a defamatory remark

5     placed in the right context will inflame the online world.

6             You know, I don't see that Mr. Khan is responsible

7     for the interest the public has taken in this case.  The

8     interest the public has taken in this case goes to the very

9     injury or the harm he's suffered.  In the eyes of many, he's

10    a rapist because she said he was, and it's never been shown.

11            So I hear what you're saying, Judge.  What we've

12    come to court -- Mr. Khan has recently had jaw surgery.  He's

13    able to speak.  It's a little difficult.  I told him to

14    expect a rebuke from the Court and to be put -- that he would

15    be placed on notice that further misuse of court material

16    would not be tolerated and would come with consequences.

17            I hear the Court saying that it may not be prepared

18    to drop that hammer yet.  But I think his intentions are to

19    fully and fairly --

20            THE COURT:  Still thinking about it.

21            MR. PATTIS:  Well, I hear you.

22            But, I mean, I think that his intentions -- finally,

23    to answer your question -- are to fully and fairly litigate

24    this case and bring it to a jury.  I've explained to him that

25    any other questions about his compliance with court orders

1    could cost him my representation of him, because it'll raise

2    questions about my credibility.

3           And, candidly, there was discovery mishap in the

4    Jones case that in state court had cost me a suspension that

5    is still being litigated in the appellate courts.  I'm

6    uniquely sensitive to these issues, and Mr. Khan knows it.

7           So his intentions are to obey your orders, but to

8    fight hard to vindicate his claims.

9           MR. SCONZO:  Judge, may I be heard just briefly.

10          THE COURT:  Of course.

11          MR. SCONZO:  I see an merging notion in this case

12   that Mr. Khan was vindicated.  Mr. Khan was found "not

13   guilty" in a criminal standard, in a criminal court.  Nothing

14   has been decided in a civil context, and I want to make that

15   clear.  Mr. Khan was dismissed from Yale on a standard far

16   different than a criminal process for rape, and he has not

17   proven that my client lied, and I need to put a stop to this

18   notion I see building momentum that he's been vindicated.

19          He's not be vindicated of anything, Judge.  The only

20   charge he's been absolved of by a jury is that the State did

21   not prove beyond a reasonable doubt that he raped my client.

22   That is it.  The rest is yet to be determined.

23          THE COURT:  All right.  I agree.  And I think that

24   that puts a finer point on the concerns that I have.  I mean,

25   obviously, Mr. Pattis, I'm sure you're going to have a

1   conversation with your client about his own exposure as he

2   publicly accuses, outside the confines of a courtroom, when

3   he publicly accusing her of a false accusation.

4        What I don't want -- because Mr. Sconzo is correct.

5   This case is going to be decided on the basis of the

6   allegations, presumably to a jury who will have to make a

7   determination not beyond a reasonable doubt, but by a

8   preponderance of the evidence whether or not it was a false

9   accusation.

10        And we will get the case there.  We had a few starts

11   and stops as it bounced around various appellate courts.  It

12   found its way back.  But what I don't want, I don't want the

13   case litigated on X or on Youtube or on TikTok.  That just

14   can't happen.  That starts to infect the entire process, and

15   if I -- and I think I do have a legitimate concern that that

16   might be on Mr. Khan's list of things to do, in terms of

17   having his viewpoint out there in the world repeated to the

18   Jane Doe's detriment, at a time when nothing has been

19   decided.  That's what I'm concerned about.

20        MR. PATTIS:  So, Judge, I understand the Court's

21   concerns.  And this was a subject of litigation, on the basis

22   of a special public interest appeal to the Connecticut

23   Supreme Court in the case of *State of Connecticut v. Fotis*

24   *Dulos,* and I would ask you to consider looking at the briefs

25   there.  That was a case involving the serious death of a

1   mother of five children.  I believe his co-defendant,

2   Michelle Troconis, just had a verdict.

3        I represented Mr. Dulos, who wanted an aggressive

4   presentation of his defense and questions about it raised in

5   the press, given the extraordinary interest the press had

6   taken in the case, so we did so.  The State moved for a gag

7   order, and the Court issued one.  We got the Connecticut

8   Supreme Court to grant a special public interest appeal,

9   because it was our understanding that the prohibition against

10  potentially prejudicial pretrial publicity was limited to

11  those circumstances in which it was likely to not have an

12  influence on the jury, and that remarks distant in time by a

13  nontrial -- by a nonlawyer were protected speech, and that

14  what the Court had engaged in the Dulos case was a gag order.

15       We never got a decision on that case because Mr.

16  Dulos committed suicide.  But it is a -- given the way that

17  the waves are breaking in here today, that's an issue that

18  might well come before this Court.  And it may be, that as

19  the Court considers its own comfort level with the conduct of

20  litigants here and what is to come next, that the Court may

21  request briefing on that issue.  It would be an easy enough

22  thing, for me certainly, to re-tool the Dulos brief, because

23  I think there are legitimate issues in there.

24       You know, there is an inherent authority for courts

25  to regulate the conduct of trial participants.  We saw that

1    in another public-interest appeal I handled involving

2    Mr. Jones' speech about trial counsel in the Sandy Hook case

3    on his broadcast.  The Court did issue a decision in that

4    case.  We took *certiori* to the United States Supreme Court on

5    that, and it was denied.

6          All of which to say, I think that the extra-judicial

7    statements of non -- of non-counsel trial participants are

8    protected speech unless it can be shown that they're

9    imminently likely to cause prejudice to the jury.  And we're

10   so far out, I don't think he should be kept -- he should be

11   ordered to not speak about the case.  And if he seeks to try

12   it on X or Youtube, the normal rules with respect to

13   defamation and so forth would apply.

14         I'm not sure that the Court has authority to bar

15   commentary about a case prior to his coming to trial.  The

16   case isn't even scheduled for trial yet, as near as I can

17   tell.

18         So it I think there are issues here that the Court's

19   going to potentially have to grapple with, and I recite these

20   other cases only because a lot of time and effort went into

21   briefing them and it might provide the Court with something

22   to think about.

23         THE COURT:  Attorney Sconzo.

24         Thank you, Attorney Pattis.

25         MR. SCONZO:  I respect what Attorney Pattis is

1    saying, but I think he's jumping the gun here.  We were

2    motivated by what we saw -- and I think Your Honor commented

3    on this a few moments ago -- what we saw was retaliatory

4    action.  The comments were, in our opinion -- and we set the

5    sequence up in your briefing.  They started with -- it's a

6    retaliatory sequence of events starting with e-mails directly

7    to my client that were found harassing, after he had sought

8    to hide her name.

9         So it's not that we have taken the position in our

10   motion that he can't speak about the case.  We haven't even

11   got there yet.  What we have said is he's used her name

12   publicly after telling the Court that he wouldn't do that,

13   and the Court entering an order to that effect, and then

14   harassing my client and using her name publicly, telling the

15   world "a gift is going to come," and sure enough he does

16   this.

17        So it's not quite as Attorney Pattis is portraying.

18   I don't think we're there yet.  We're in the immediacy of

19   this harassing, vile conduct that does need to be addressed,

20   Your Honor, and we'd be happy to brief it further.  But the

21   conduct is vile and out-of-bounds, and I've been doing this a

22   long time, Your Honor.

23        MR. PATTIS:  Judge, I have too, and "vile" doesn't

24   even come close to it.  This isn't even close to vile or

25   harassing.  If somebody brings a suit against me and I

1    comment on them, "I can't wait to see you in court," and I

2    pose their name online, that's vile?  That's harassing?

3            I mean, that's too tender, by far, for a regime

4    governed by First Amendment protections.

5            MR. SCONZO:  It's vile, Your Honor, when he knows

6    full well the platform he's using to do this, the setup that

7    he's using, and then what has happened.  And we showed Your

8    Honor what has happened -- "the Nazis have taken this," "the

9    fringe element has taken this," that's exactly what he

10   intended and he's gotten his intention.

11           MR. PATTIS:  And this is the brave new world of

12   stochastic terrorism.  And, you know, I don't know that the

13   First Amendment -- I mean, I'm reasonably confident that

14   nobody contemplated social media, and I'm reasonably

15   confident that our times have become unhinged.

16           You know, I've recently tried a case, Judge, for six

17   months in D.C., involving the Proud Boys.  And what I saw in

18   the courtroom didn't correspond to what appeared online from

19   both the right and the left.  And, so, I recognize that

20   social media has created this inflammatory tinderbox, where

21   any spark can light a fire.  But I don't think that the

22   person who lights the spark is intentionally -- or, is

23   responsible for the fire, absence a showing of intent to do

24   so.  And merely asserting that he must have had that intent

25   because it occurred is *post hoc ergo propter hoc*.

1          THE COURT:  Well, I think there's certainly language

2     that your client shows from which a reasonable inference

3     could be drawn that he was looking to set the spark or he was

4     looking to visit upon her something similar to what has been

5     visited upon her.

6          MR. PATTIS:  I don't know that anything has.  I

7     mean, you know, I endured the Sandy Hook defaults trial for

8     Alex Jones, and they brought in an expert on digital imprint

9     and stochastic terrorism, and then they brought on the family

10     to talk about the contact that was made in that.  Because

11     there was a default entry, causation was established.  And so

12     it was assumed that when a drop -- when a pebble was dropped

13     in an ocean, every ripple was the responsibility of Mr.

14     Jones.  The plaintiffs never had to prove that.  And the

15     plaintiff -- or the defendant in this instance never even

16     tried.

17          THE COURT:  Well, I'm not -- I'm not going to

18     dismiss the case.  I think that, consistent with the parties'

19     earlier understanding, with the issues now I think adequately

20     joined between the motion to remove the pseudonym and the

21     motion for the protective order, what the parties' conduct

22     looks like going forward is teed up.

23          I am going to direct -- I suppose you can take an

24     immediate appeal to the Second Circuit if you'd like,

25     Attorney Pattis, but I am going to direct Mr. Khan not to at

1   least use Jane Doe's real name in his social media

2   communications until such time as all of those motions are

3   adjudicated by the Court.

4           And, Mr. Pattis, I would ask you to ask your client

5   whether he has any concern about following that order.

6           MR. PATTIS:  May I have a moment, please?

7           THE COURT:  Yes.

8           (Conferring.)

9           MR. PATTIS:  Judge, I had a chance to speak to Mr.

10  Khan, and he said, What is it exactly that the Court is

11  saying?  And I said I understand it to say the following:

12  That unless and until there is a ruling on a series of

13  motions related to the anonymity order, that he is not to use

14  Jane Doe's name in any social media posting or publish --

15  publications to the world; and what's more -- I went a little

16  further than what I thought I heard the Court say, and that

17  he should take down any that he has control over right now.

18          He -- and he understands that, and he would like to

19  address you himself, Judge.

20          THE COURT:  Okay.

21          MR. KHAN:  Good morning, Your Honor.

22          THE COURT:  Good morning.

23          MR. KHAN:  Apologies for the mask.  I am at risk for

24  infection.

25          THE COURT:  No apology necessary.

1    MR. KHAN:  Your Honor, I have never harassed Jane

2    Doe, the various characterization.  Although I'm not privy to

3    what Attorney Sconzo has been saying because of the sealed

4    nature of the motions, my intention has never, as you said,

5    with the tenor of my posts, has never been to intimidate or

6    harass anyone.  It's merely to conduct a robust discovery.

7         And my interpretation of what the Second Circuit

8    said in Footnote 1, Brief 3, and what the Supreme Court said

9    in Footnote 39, and on those two bases I -- yes, I completely

10   apologize.  I jumped the gun, I misunderstood, and I

11   profusely apologize, and I will completely abide by any

12   punishment or order that the Court gives me.

13        As my mom used to say, the English equivalent is "no

14   good deed goes unpunished" -- simply, abiding by the Yale

15   confidentiality policy.  I should have just sued her under

16   the name originally and fought this back then.  I'm sorry for

17   this.

18        I -- in 2015 until 2018, at the Superior Court with

19   Judge Blue and Judge Fischer, I complied with all of the

20   laws; at the Yale Title IX policy, I complied with all of the

21   laws; and in the various bouncing around from District, to

22   Second, to Supreme, I've complied with all of the laws of

23   Your Honor, including the requests of Attorney Sconzo --

24   including, yes, when -- there have been three contacts

25   between me and Jane Doe:

1          One, I had my attorney request settlement discussion

2     from Attorney Sconzo, and they did it by phone -- they had no

3     appetite.  I don't consider that harassment.

4          The second was -- I looked it up.  I thought that,

5     while attorneys are not allowed to contact opposing clients,

6     it didn't -- it said that it's okay for clients to do so, as

7     long as it's respectful.  I carbon-copied Attorney Sconzo on

8     that e-mail.  When I was told by Attorney Sconzo to never

9     contact her again, I obliged.  I have not done so.

10         And the third time was I got -- the situation again

11    changed over the years.  I e-mailed Attorney Sconzo directly.

12    He considers that harassment again.  In none of those things

13    have I been intending to harass or intimidate anyone.

14         And, so, if Your Honor would like to, for lack of a

15    better word, put a gag order on me, I will completely oblige.

16    I will do exactly as you say.

17         MR. PATTIS:  Objection.  We're not going to -- we're

18    not completely oblige to any gag orders, Mr. Khan.  Speak to

19    me before you offer to comply with gag orders to the Court.

20         MR. KHAN:  I'm saying, if Your Honor -- I don't know

21    the laws here, I'm still not a citizen yet, but I will seek

22    whatever judicial -- I will always comply with the law.

23         I come from a lawless country, and I have tremendous

24    respect for this court, and I'm just seeking justice for the

25    pain that the client caused me -- and Yale.  It'll take me

1   nine more years, I don't care.  I'm sorry for --

2          THE COURT:  It's all right.

3          MR. KHAN:  Thank you.

4          THE COURT:  All right.  I think that -- well, let me

5   ask, Attorney Weller:  Does Yale have anything to add to this

6   landscape?

7          MS. WELLER:  I'm sorry, Your Honor.  Can you repeat

8   the question?

9          THE COURT:  Did Yale have anything they wanted to

10  add to this landscape?

11         MS. WELLER:  No, Your Honor, not at this time.

12         THE COURT:  All right.  Thank you.

13         I think that the motion for protective order is

14  broad enough in its contours that I think, in terms of Mr.

15  Khan's access to and use of discovery in this case, which

16  obviously will include Jane Doe's true name, and the motion

17  regarding removing the pseudonym, when fully briefed will, I

18  think, allow for a complete vetting of all of the issues that

19  have been decided -- or discussed, or sort of identified here

20  this morning.

21         Until those motions are adjudicated, I'm going to

22  direct that Mr. Khan sort of abide by the status quo that was

23  the parties' understanding as to the impact of the pseudonym

24  order, which means, Mr. Khan, I'm going to direct you not to

25  publicly identify her again on social media or elsewhere

1   until those rulings are issued.

2          In large respect, Attorney Sconzo, Attorney Gooley,

3   as you know, once something is on the Internet, it's very

4   difficult to scrub.  It's probably impossible to scrub.  So

5   there's nothing I can do about that *vis-a-vis* Mr. Khan or

6   otherwise, frankly.

7          Was there anything -- I'm not sure that there's

8   anything else we can do.  I am going to deny the Motion to

9   Dismiss for the reasons I've already indicated.

10          Anything else we can do with respect to Mr. Khan,

11   Attorney Pattis?

12          MR. PATTIS:  Not today, Judge.

13          THE COURT:  Thank you.

14          Attorney Sconzo.

15          MR. SCONZO:  Just one thing on the last point, Your

16   Honor, and I think Attorney Pattis was prepared to do this.

17   Could Your Honor at least order that Mr. Khan take down what

18   he's posted?  I understand you can't order that people who

19   repost take theirs down, but you certainly could direct Mr.

20   Khan to take down his posts.

21          THE COURT:  Yeah, I don't -- I don't under -- I

22   don't pretend to have a full understanding of Mr. Khan's

23   social media presence.  Are we talking about a Facebook page,

24   a Twitter -- an X account?  Where -- is there a particular

25   situs that Mr. Khan generally posts to?  What's your

1   understanding, Mr. Sconzo?

2          MR. SCONZO:  My understanding is -- and I'm not that

3   savy with this stuff, but my understanding is it's on X.

4          THE COURT:  Okay.

5          MR. SCONZO:  And that's what I'm directing my

6   comments toward.

7          THE COURT:  Attorney Pattis, is there any objection

8   to her name being removed until such time as those motions

9   are adjudicated?

10         (Conferring.)

11         MR. PATTIS:  Judge, Mr. Khan is willing to take down

12  any posting her name on X or any other account under which he

13  has the ability to do so.

14         What?

15         (Conferring.)

16         MR. PATTIS:  He is willing to do so because of

17  respect for your orders, but he won't do so at Mr. Sconzo's

18  direction.  He would do so if that is the order of the

19  Court.

20         THE COURT:  Then that is the order of the Court.

21         All right.  Anything else we can do, from Jane Doe's

22  perspective?

23         MR. SCONZO:  No.  Thank you very much, Your Honor.

24         THE COURT:  All right.  Thank you for coming in,

25  Counsel.

1      MR. PATTIS:  Thank you, Judge.

2          (Proceedings conclude, 10:35 a.m.)

3

4               C E R T I F I C A T E

5              RE: *Khan v. Yale, et al.*
                Civil No. 3:19-cv-1966-KAD
6
                    Motion Hearing
7                   March 18, 2024

8

9      I, Tracy L. Gow, RPR, Official Court Reporter for the

10  United States District Court, District of Connecticut, do

11  hereby certify that the foregoing pages, 1 through 26, are a

12  true and accurate transcription of my shorthand notes taken

13  in the aforementioned matter to the best of my skill and

14  ability.

15

16                    /s/  TRACY L. GOW
                      Official Court Reporter
17                    U.S. District Court
                      915 Lafayette Boulevard, Room 216
18                    Bridgeport, Connecticut 06604
                      (203) 910-0323
19

20

21

22

23

24

25