UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,      :
            :
    Plaintiff,    :
V.           :    Case No. 3:19-cv-01966 (KAD)
            :
YALE UNIVERSITY, ET AL.    :
            :
    Defendants    :    April 5, 2024

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ORDER TO LITIGATE CLAIMS AGAINST JANE DOE USING PSEUDONYM

The undersigned defendants (the "Yale defendants") oppose the plaintiff's Motion to Vacate the Court's Order granting pseudonym protection to the defendant, Jane Doe (Doc. 89, Mr. Khan's Motion to Vacate Order Treating Jane Doe Pseudonymously). In December 2019, the plaintiff moved to have Jane Doe's identity protected (Doc. 7, Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name). The Yale defendants filed a Memorandum of Law in Support of that Motion (Doc. 9) and now incorporate by reference those arguments into this Memorandum in Opposition, as if fully set forth herein. *See*, Exhibit 1, Memorandum of Law In Support of Plaintiff's Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name.

The Court granted the Motion to Proceed Pseudonymously by Order dated January 10, 2020 (Doc. 12). In doing so, the Court considered this Circuit's non-exhaustive list of ten factors to determine whether a party should be allowed to proceed under a pseudonym. Specifically, the Court "based its ruling upon consideration of the [1] inherently sensitive and personal nature of the issues raised in this litigation, [2] the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, [3] the risk of harm and the absence

of prejudice to the litigants, [4] the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and [5] other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008)." (Doc. 12.)

Nothing has changed since the Order that warrants reversal of it. The case remains of a "inherently sensitive and personal nature"; the University continues to have policies protecting confidentiality of Title IX proceedings; the harm to Jane Doe has not lessened over the years; the plaintiff has not made any arguments of prejudice; and there is no viable alternative procedure that would maintain Jane Doe's confidentiality. *See also*, Ex. 1, Memorandum of Law in Support at 2-5, setting forth arguments on the various factors in support of proceeding pseudonymously.

Instead, the plaintiff now argues that the Connecticut Supreme Court's decision was "eye opening" for him when the Court observed that the University's disciplinary reach extended *only* to students, and that this Supreme Court's observation has rendered "moot" the confidentiality obligation under university policy. *See* Doc. 89, Motion to Vacate at 1 ("Ms. Doe, the Connecticut Supreme Court noted in a related ruling, is no longer a student at the University, and is therefore not bound by obligations arising under the University's Honor Code. Mr. Khan contends that any obligation to keep information about Ms. Doe confidential is also now moot."); ("The Connecticut Supreme Court's decision regarding Ms. Doe's immunity claim was eye-opening for Mr. Khan and should be to this Court as well. ... [A]n obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired.") *id*. at 3.

This argument is nonsensical at best and disingenuous at worst. First, the plaintiff knew in December 2019 when he filed his Motion to Proceed Pseudonymously that he and Jane Doe were no longer students at the University. More importantly, he unequivocally knew then that the

University's disciplinary reach extended *only* to members of the school community. *See* Doc. 7, Plaintiff's Motion to Proceed Pseudonymously at 3-4 ("Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. ... However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale University or an injunction from the Court, this provision would apply to him."). His stated reason in the Motion to Vacate, therefore, cannot be credited.

The more likely reason the plaintiff seeks to vacate the Order is that his desire to extract retribution from Ms. Doe has overshadowed his desire to return to the University community. The District Court raised a concern about the plaintiff's motives at the hearing on the Motion to Dismiss on March 18, 2024. There, when discussing the social media posts that underlined the Motion to Dismiss, the Court expressed concern because "some of the tenor and tone of the posts feel less like his plan is to have his rights vindicated as it is to extract retribution, and that is not the purpose of the use of our courts or litigation generally." Exhibit 2, Hearing Transcript, March 18, 2024, at 8-9. Instead of assuaging that concern, plaintiff's counsel confirmed that the plaintiff wants Ms. Doe "to feel what he has felt. ... He does want retribution. His future was stolen from him." Ex. 2, Transcript at 11. Retribution, however, is not a reason for vacating an order of pseudonymity.

Next, the plaintiff incorrectly argues that the defendant's reliance on Federal Educational Rights and Privacy Act (FERPA) is misplaced. Doc. 89, Motion to Vacate at 5. While the plaintiff properly recognizes that FERPA's scope is broad, he argues that a "better reading" of FERPA "excludes protection of information gathered by a university when it investigates what amounts to criminal conduct." *Id.* at 6. Essentially, the plaintiff argues that disciplinary records

should not fall within FERPA's purview. Plaintiff cites to no support for his "better reading" because no support exists. *See Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 74 (1st Cir. 2022) ("Student disciplinary records typically fall under this protective carapace" of FERPA); *U.S. v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002) ("Under a plain language interpretation of the FERPA, student disciplinary records are education records because they directly relate to a student and are kept by that student's university.").

The recent decision from the Court of Appeals for the First Circuit is directly on point. In *Doe v. Massachusetts Institute of Technology*, *supra*, the plaintiff sued his former university alleging breach of contract, *inter alia*, on the ground he was wrongly expelled following an allegedly biased investigation of a nonconsensual sexual conduct claim against him. The plaintiff moved to proceed with a pseudonym in place of his actual name. MIT objected and the district court denied the plaintiff's motion. The plaintiff appealed. The First Circuit vacated the district court's order and remanded the case under its newly articulated methodology that considered four "paradigms" of exceptional cases that warrant anonymity. *Doe v. MIT*, 46 F.4th at 71-73.

In doing so, the First Circuit squarely addressed the confidentiality of Title IX disciplinary proceedings. *Id.* at 74. "In a nutshell, both Congress and the Executive Branch have given careful thought to the proper conduct of Title IX proceedings." *Id.* The First Circuit recognized that, by enacting FERPA, Congress sought to prevent educational institutions from unilaterally disclosing "sensitive information about students," subject to certain exceptions enumerated in FERPA. *Id.*, citing, *Owasso Indep. Sch. Dist. No. I-001 v. Falvo*, 534 U.S. 426, 428, 122 S.Ct.934, 151 L.Ed.2d 896 (2002).

In addition to the protections afforded by FERPA, the First Circuit acknowledged that the Title IX regulations also protect this sensitive information. "So, too, the Department's

regulations implementing Title IX require universities to 'keep confidential the identity of any individual who has made a report or complaint of sex discrimination … subject to a few exceptions (such as the FERPA exceptions)." *Id.*, at 74-75, citing, 34 C.F.R. § 106.71.

In short, the Court concluded that "it is evident, we think, that federal law aims to keep such proceedings largely under wraps." *Id.* at 75; *see also Doe 1 et al v. Starpoint Central School Dist.*, Docket No. 23-cv-207-LJV, 2023 WL 2752509 at n. 2 (W.D.N.Y. Apr. 3, 2023) ("In *Doe*, for example, the First Circuit found that the protections of Title IX and FERPA weighed in favor of keeping a plaintiff's name anonymous. … So the First Circuit protected the privacy interests at stake by allowing a plaintiff to proceed by pseudonym, and this Court can do the same, or something similar, here.")

The final reason the plaintiff offers to vacate the Order is that his acquittal by a criminal jury of criminal charges somehow negates any reason to have Jane Doe continue to proceed anonymously. *See* Doc. 89, Motion to Vacate at 1-2, 7. First, the plaintiff was acquitted by a criminal jury *before* he filed suit; therefore, that acquittal offers nothing new to vacate the Order granting pseudonymity. Second, courts have recognized the important public interest in protecting the identities of individuals who report claims of sexual assault on campuses. Ex. 1, Memorandum of Law in Support at 5. Third, the acquittal establishes *only* that a criminal jury found that the state had not proven its case beyond a reasonable doubt. Indeed, when counsel for Ms. Doe raised a concern over the plaintiff's assertions of vindication at the March 25 hearing, the District Court agreed and stated, "[t]his case is going to be decided on the basis of the allegations, presumably to a jury who will have to make a determination not beyond a reasonable doubt, but by a preponderance of the evidence whether or not it was a false accusation." Ex. 2, Hearing Transcript at 13-14. Any argument to the contrary cannot stand.

In conclusion, the plaintiff has failed to offer any basis, legal or factual, to vacate the Order of Pseudonymity. While the plaintiff may have had a change of heart, the compelling reasons for granting the Order have not changed. For all these reasons, and those articulated in their Memorandum of Law in Support of the Motion to Proceed Pseudonymously, the undersigned defendants oppose the plaintiff's Motion to Vacate.

THE DEFENDANTS,
YALE UNIVERSITY, PETER SALOVEY,
JONATHAN HOLLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK
SOLOMON, ANN KUHLMAN, LYNN COOLEY,
PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, AND CAROLE GOLDBERG

By: _____
Giovanna Tiberii Weller (ct11187)
Patrick M. Noonan (ct00189)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: gweller@carmodylaw.com
Email: pnoonan@carmodylaw.com

**CERTIFICATION OF SERVICE**

 I hereby certify that on April 5, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Giovanna Tiberii Weller

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SAIFULLAH KHAN                  :

                         :

      Plaintiff               :        CIVIL ACTION NO.:

                         :        3:19-cv-01966-AVC

vs.                       :

                         :

YALE UNIVERSITY, ET AL     :

                         :

      Defendants           :        JANUARY 2, 2020

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME**

The undersigned defendants submit this memorandum of law in support of the plaintiff's Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name ("Motion"). The defendants in no way adopt the factual assertions or legal arguments made in the plaintiff's Motion, but only support the requested relief, i.e., permission to use the pseudonym Jane Doe to refer to the female student defendant at all times during the pendency of this action.

In support of his motion, the plaintiff cites the Second Circuit's decision in Sealed Plaintiff v. Sealed Defendant, 357 F.3d 185 (2d Cir. 2008). District courts in the Second Circuit have considered the factors listed by the Second Circuit in Sealed Plaintiff when determining whether to allow the use of a pseudonym in cases involving allegations of sexual assault by college students. See, Doe v. Smith, 2019 U.S. Dist. LEXIS 205707 (N.D.N.Y. November 27, 2019);[1] Doe v. Vassar College, 2019 U.S. Dist. LEXIS 196933 (S.D.N.Y. November 13, 2019); Doe v. Colgate Univ., 2016 U.S. Dist. LEXIS 48787 (N.D.N.Y. April 12, 2016). An analysis of all the

---

[1] In Doe v. Smith, the Court permitted both the plaintiff student and defendant student to proceed pseudonymously. Doe v. Smith, 2019 U.S. Dist. LEXIS 205707, n. 1 (N.D.N.Y. November 27, 2019).

1

factors set forth in <u>Sealed Plaintiff,</u> which are relevant to the present case, militate in favor of permitting the present plaintiff to refer to the female student defendant using a pseudonym.

*Whether the Litigation Involves Matters that are Highly Sensitive and of a Personal Nature*

This action involves allegations that the defendants mishandled its investigation of Jane Doe's complaint asserting that the plaintiff had sexually assaulted her in violation of the University's Sexual Misconduct Policies and improperly expelled him from the University. The district court in <u>Doe v. Vassar College</u>, 2019 U.S. Dist. LEXIS 196933 *4 (S.D.N.Y. November 13, 2019), concluded that allegations of this nature were highly sensitive and of a personal nature: "The allegations in the complaint concern the actions of a private educational institution concerning its handling of an alleged sexual assault. Allegations of sexual assault are generally inherently sensitive and private in nature." The district court in <u>Doe v. Smith</u>, 2019 U.S. Dist. LEXIS 205707 *3 (N.D.N.Y. November 27, 2019), similarly concluded that the necessity of a detailed discussion of the particular sexual encounter alleged in the complaint weighed in favor of permitting the use of a pseudonym. The present action will necessarily involve the publication of the details of the sexual encounter between the plaintiff and Jane Doe on Halloween night in 2015. The use of a pseudonym will protect Jane Doe's confidentiality, which is consistent with the intent of the Family Educational Rights and Privacy Act and the purpose of Yale University's policy of confidentiality[2] in complaints brought to the University-Wide Committee on Sexual Misconduct ("UWC"), the committee at the University that investigates complaints of sexual misconduct. Since this action involves allegations that are highly sensitive and of a personal nature, this factor weighs in favor of permitting the plaintiff to refer to the female student defendant by the pseudonym of Jane Doe.

---

[2] The University's Statement on Confidentiality of UWC Proceedings is attached to the plaintiff's Motion as Exhibit 2.

*Whether Identification Poses a Risk of Retaliatory Physical or Mental Harm to the Party or to Innocent Non-Parties*

The district court in <u>Doe v. Vassar College</u>, 2019 U.S. Dist. LEXIS 196933 *4 (S.D.N.Y. November 13, 2019), observed that public disclosure of the victim's identity in a case alleging sexual assault by a fellow student could result in psychological trauma for the victim. Given this potential risk, this factor weighs in favor of referring to the female student defendant as Jane Doe.

*Whether Identification Presents Other Harms and the Likely Severity of Those Harms*

The district court in <u>Doe v. Colgate</u>, 2016 U.S. Dist. LEXIS 48787 *6 (N.D.N.Y. April 12, 2016), observed: "Recently, cases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers." The district court concluded that "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." <u>Id.</u> at *6-7. The present action has already received wide publicity, as articles were published by the Yale Daily News, Connecticut Law Tribune, Hartford Courant, Connecticut Post, New York Post, Fox 61, as well as several other media outlets,[3] within days of the filing of the complaint. Clearly, this factor weighs in favor of granting the plaintiff's Motion.

*Whether Another Party Would Be Prejudiced by Allowing One of the Defendants to Be Protected by a Pseudonym*

The defendants agree that the use of a pseudonym to identify the female student defendant is appropriate in this action; and her lawyer has informed defense counsel that she would prefer to

---

[3] See, https://yaledailynews.com/blog/2019/12/20/khan-files-suit-against-yale/;
https://www.law.com/ctlawtribune/2019/12/13/game-on-acquitted-of-rape-ex-student-sues-yale-university-for-110-million/; https://www.courant.com/news/connecticut/hc-news-yale-sexual-assault-lawsuit-20191213-ehcs6gqtjrcrhlvol7z7t5sjo4-story.html; https://www.ctpost.com/news/article/Former-Yale-student-acquitted-of-rape-sues-14907049.php; https://nypost.com/2019/12/16/former-yale-student-acquitted-of-rape-sues-university-for-110m/; https://fox61.com/2019/12/13/former-yale-student-acquitted-of-sexual-assault-sues-school-for-110-million/.
This is a non-exhaustive list of the publications concerning the plaintiff's lawsuit over the past two weeks.

preserve her confidentiality, as was done in the criminal trial.[4] None of the parties will suffer prejudice if the plaintiff's Motion is granted, because the identity of the female student who brought a complaint of sexual misconduct against the plaintiff is known to all parties. Therefore, this factor weighs in favor of permitting the use of a pseudonym for the female student defendant. See, Doe v. Vassar College, 2019 U.S. Dist. LEXIS 196933 *4-5 (S.D.N.Y. November 13, 2019) ("Defendant would not be prejudiced by permitting the Plaintiff to proceed by use of a pseudonym and such use would not only protect the confidentiality of the plaintiff, but, more importantly, also protect the confidentiality of the victim."); Doe v. Smith, 2019 U.S. Dist. LEXIS *5 (N.D.N.Y. November 27, 2019) (court did not identify any prejudice to defendant if plaintiff used a pseudonym because "Defendant knows Plaintiff's identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff's identity publicly."); Doe v. Colgate Univ., 2016 U.S. Dist. LEXIS 48787 *10 (N.D.N.Y. April 12, 2016) ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly.")

*Whether the Party's Identity Has Thus Far Been Kept Confidential*

As noted by the plaintiff, the female student defendant's name was kept confidential during the pendency of the criminal proceedings and during the University's investigation of her complaint of sexual misconduct, pursuant to the University's policy on confidentiality of such complaints. This factor weighs in favor of permitting the use of a pseudonym.

---

[4] Of course, Yale University was not a party to the criminal proceedings, and therefore did not have any role in preserving confidentiality in that proceeding. As is always true in disputes involving students, the University would have preferred that the identity of both students be protected.

4

*Whether the Public's Interest in the Litigation is Furthered by Requiring Disclosure of the Party's Identity*

The public's interest in the litigation is not furthered by disclosing the identify of the female student defendant. In fact, one district court has noted: "Courts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes." Doe v. Vassar College, 2019 U.S. Dist. LEXIS 196933 *4 (S.D.N.Y. November 13, 2019). Since the use of pseudonyms for victims of sexual assault is in the public interest, this factor weighs in favor of granting the plaintiff's Motion.[5]

*Whether there is an Atypically Weak Public Interest in Knowing the Litigant's Identities*

As noted above, it is in the public's interest to protect the identities of sexual assault victims. See, Doe v. Vassar College, 2019 U.S. Dist. LEXIS 196933 *4 (S.D.N.Y. November 13, 2019). Therefore, this factor also weighs in favor of granting the plaintiff's Motion.

*Whether there are Any Alternative Mechanisms for Protecting the Confidentiality of the Party*

The defendant submits that there are no alternative mechanisms for protecting the female student defendant's confidentiality.

## CONCLUSION

While the defendants do not agree with the plaintiff's recitation of the facts or the legal arguments presented in support of his Motion, the defendants nevertheless join in the plaintiff's request for permission to identify the female student defendant by the pseudonym Jane Doe at all

---

[5] The University's policy on confidentiality recognizes the importance of encouraging parties and witnesses to report sexual misconduct: "The purpose of confidentiality [in UWC proceedings] is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process." (Ex. 2 to Pl.'s Motion.)

times during the pendency of this action.

**THE DEFENDANTS,**

**YALE UNIVERSITY,
PETER SALOVEY, JONATHAN
HOLLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK
SOLOMON, ANN KUHLMAN, LYNN
COOLEY, PAUL GENECIN,
STEPHANIE SPANGLER, SARAH
DEMERS, AND CAROLE GOLDBERG**

BY: /s/ Patrick M. Noonan
  Patrick M. Noonan (#ct00189)
  Colleen Noonan Davis (#ct27773)
  Donahue, Durham & Noonan, P.C.
  741 Boston Post Road
  Guilford, CT 06437
  (203) 458-9168
  pnoonan@ddnctlaw.com

## CERTIFICATION

  I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

             /s/
          Patrick M. Noonan

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
_____
SAIFULLAH KHAN,                 )
              Plaintiff,        ) No: 3:19-cv-1966-KAD
                                )
        v.                      ) March 18, 2024
YALE UNIVERSITY, ET AL.,        )
                 Defendants.    ) 9:57 a.m.
_____ )
```

Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604


MOTION HEARING


B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.


Courtroom Deputy:                 Official Court Reporter:
Kristen Gould, Esq.               Tracy L. Gow, RPR

Chambers: 203.579.5522

2

```
 1   A P P E A R A N C E S:
     For the Plaintiff:
 2        NORMAN A. PATTIS, ESQ.
          Pattis & Associates, LLC
 3        383 Orange Street, First Floor
          New Haven, CT 06511
 4        203-393-3017
          Email: npattis@pattislaw.com
 5
     For Defendant Yale University:
 6        GIOVANNA T. WELLER, ESQ.
          Carmody, Torrance, Sendak & Hennessey, LLP
 7        50 Leavenworth Street
          P.O. Box 1110
 8        Waterbury, CT 06721-1110
          203-573-1200
 9        Email: gweller@carmodylaw.com

10   For Defendant Jane Doe:
          BRENDAN GOOLEY, ESQ.
11        JAMES M. SCONZO, ESQ.
          Carlton Fields
12        One State Street
          Suite 1800
13        Hartford, CT 06103
          860-392-5036
14        Email: bgooley@carltonfields.com
                  jsconzo@carltonfields.com
15
     Also Present:
16        SAIFULLAH KHAN, Plaintiff

17

18

19

20

21

22

23

24

25
```

3

```
 1              (Call to Order, 9:57 a.m.)

 2         THE COURT:  All right.  Good morning, everybody.  We

 3    are here on the matter of Khan v. Yale University, et al.

 4         Counsel, please identify yourselves for the record.

 5         MR. PATTIS:  Norm Pattis, on behalf of Mr. Khan,

 6    Judge.

 7         THE COURT:  Good morning, Mr. Pattis.  It's been a

 8    while.

 9         MR. PATTIS:  Good morning, Judge.  Good to see you.

10         Yeah, I know.  I was just saying to my colleagues

11    that I hadn't been in this building since before the

12    pandemic.

13         THE COURT:  It's --

14         MR. PATTIS:  And I've missed it.  So it's good to be

15    back.

16         THE COURT:  Welcome back, Mr. Khan.

17         MR. GOOLEY:  Your Honor, Brendan Gooley, on behalf

18    of Defendant Jane Doe.  With me is Attorney Jim Sconzo; and

19    Attorney Giovanna Weller, who represents Yale.

20         MR. SCONZO:  Good morning, Judge.

21         MS. WELLER:  Good morning, Your Honor.

22         THE COURT:  All right.  I had scheduled oral

23    argument on Jane Doe's Motion to Dismiss that is premised

24    largely on Mr. Khan's disclosing of her identity on social

25    media and some activity that flowed from that.
```

4

1      Since then, I think other -- the issues that are

2  probably implicated a little bit in the Motion to Dismiss

3  have been the subject of a additional motions, which we are

4  not taking up today, and that is Jane Doe's motion for a

5  protective order, restricting and limiting Mr. Khan's access

6  to and use of certain information, as well as a motion by Mr.

7  Khan to remove the pseudonym of Jane Doe, largely because the

8  reasons he had sought the pseudonym at the beginning was out

9  of respect or concern for Yale's Title IX procedure, which is

10  no longer a concern.

11      We're not going to resolve those issues today, and I

12  think I'm going to ask -- first of all, they're still being

13  briefed.  And once they are fully briefed, or maybe even

14  before they're fully briefed, I'm going to ask that all of

15  those issues be taken up by one of our magistrate judges, who

16  will in due course.

17      Turning back to the Motion to Dismiss.  I think some

18  procedural background is helpful.  As I indicated, Mr. Khan

19  had filed, initially, the request for a pseudonym for Jane

20  Doe at a time when he indicated he was still perhaps

21  interested in pursuing and returning to Yale to get his

22  degree.  And out of recognition of their Title IX procedures

23  and the confidentiality of those procedures, he sought a

24  pseudonym for Jane Doe.

25      He analyzed the factors, the Second Circuit factors,

5

1    from "In re: Sealed Plaintiff" sort of through his lens,

2    through his eyes, and how those factors impacted his

3    interest.

4         Ordinarily, when a pseudonym is being contemplated,

5    it's through the interest for the person for whom the

6    pseudonym is going to be used.  And, so, Yale chimed in on

7    the motion for a pseudonym, and agreed, but sort of did it

8    through the eyes of Jane Doe as the accuser in the Title IX

9    proceedings.

10        And I granted the motion and ordered that all

11   pleadings and references to Jane Doe would use that

12   appellation throughout the litigation.

13        That was the only order I had entered.  Jane Doe had

14   not appeared at that time.  There was no request for a

15   protective order in terms of the use of her name, and I

16   certainly didn't *sua sponte* issue a prior restraint with

17   respect to anybody as to Jane Doe's identity.

18        So, with that background, I don't think -- and you

19   can tell me why I'm wrong -- I don't think that there would

20   be a basis at this juncture to dismiss the claims that Mr.

21   Khan brings for violating the Court's order; and if I've

22   missed something or there's an order there that did what I --

23   created a situation where he would be precluded from doing

24   what he has since done, then, by all means, share that with

25   me.  But I don't see that on this docket.

6

1        That said, I do have some concerns.  Attorney

2   Sconzo.

3        MR. SCONZO:  Thank you, Your Honor.  Good morning.

4        I hear what Your Honor says, but the consequence of

5   that would be that any litigant, then, could obtain such an

6   order and basically go worldwide and disseminate the name of

7   the person for whom they seek anonymity in this court.  So

8   there'd be no reason for the order, so to speak.

9        And I would say this, too, that before --

10       THE COURT:  But the protection that it affords is in

11  the confines of the litigation and public access to the

12  docket and who can look at the docket and know who the

13  players are.

14       I have not found a single case that says an

15  anonymity order serves as a prior restraint.  I just haven't

16  found it, Attorney Sconzo.

17       MR. SCONZO:  I would say this, Judge.  Well, I think

18  that's how the parties in this district have always viewed

19  this -- and, in fact, before what Mr. Khan did, Attorney

20  Pattis and I had been speaking candidly with each other, and

21  he had said, Jim, you know, we're going to move to remove

22  that order; and I said, in effect, Sure, you know, do what

23  you need to do, we'll respond to it.

24       So I think, in candor, even Attorney Pattis would

25  have to concede that nobody envisioned once this order

7

1     attached, that a litigant could take an end-run and
2     disseminate a name for whom they sought anonymity in this
3     case.
4           So, I do understand what Your Honor is saying, and I
5     do understand that you did not make an order against prior
6     restraint.  But the disclosure of the name in this case came
7     after Mr. Khan sought anonymity of the name and the
8     disclosures, as we've shown, Your Honor, all related to
9     litigation.  It's not as though he wrote some poem with her
10    name in it.  His disclosures are all defined by this
11    litigation and directed to this litigation.
12          So it seems to me, if there's no sanction for this,
13    then any litigant who obtains such an order will just ignore
14    it and go and say, Well, I didn't file a pleading so I can
15    use that name wherever I want.
16          MR. PATTIS:  May I address the Court, Judge?
17          THE COURT:  You may.
18          MR. PATTIS:  This is going to be a long piece of
19    litigation, and I think that our candor toward you and
20    respect to one another matters, because this is our first
21    time before you.
22          Everything Attorney Sconzo said is true.  I have
23    represented Mr. Khan since 2015, since he was first arrested,
24    I represented him in the 2018 trial and we've presented him
25    through the various appellate proceedings.  It is I who

8

1    drafted the complaint.  It is I who sought the protective

2    order on his behalf.  And it was our understanding at that

3    time that we would be governed by Yale process, as it were,

4    which was to keep anonymity of the complainant.  And,

5    frankly, it was the Supreme Court's decision that sort of --

6    and it's conclusion about the application of the honor code

7    to her -- to Jane Doe, that tipped the balance.

8          It was my expectation that we were going to file

9    something with this Court.  In listening to you, I'm

10   thinking, Jeez, I'm not half as good a lawyer as I thought

11   because that was a defense that wasn't raised, but it's

12   because it was an issue I didn't --

13         THE COURT:  Slow down.

14         MR. PATTIS:  It was a defense I didn't raise because

15   it's an issue I didn't see.  I saw it as Attorney Sconzo did,

16   and I did provide him notice that we would be seeking relief

17   from the order.

18         So I appreciate the Defense, and I appreciate the

19   concern about prior restraints, but I was operating as though

20   the order applied where it may not have, and I wanted you to

21   hear that from me.

22         THE COURT:  Okay.  Thank you.

23         I'll circle-back to where I was.  What I have seen

24   does give me concern about what's going on here, and some of

25   the things that Mr. Khan has done that give me pause.

9

1    Because some of the tenor and tone of the posts feel less

2    like his plan is to have his rights vindicated as it is to

3    exact retribution, and that is not the purpose of the use of

4    our courts or litigation generally.

5            When he has posted about the litigation and talking

6    about attending depositions, there is a sense of an intent to

7    intimidate.  There is a sense of an intent to harass.  The

8    idea of sort of mobilizing the Internet -- I mean, this is

9    borderline doxing, and it's very concerning.

10           The flipside of this -- I know that we have -- Mr.

11   Khan has an interest, if I'm reading these attachments

12   correctly, in challenging the structure of Title IX

13   proceedings generally, separate and distinct from this

14   litigation.

15           And I guess I would ask Attorney Sconzo or Attorney

16   Gooley, the motion for protective order that you filed, that

17   sort of seeks to achieve essentially what you're arguing

18   should have been or already was in place.  Is that a fair

19   statement?

20           MR. SCONZO:  Well, partly, Your Honor.  I think that

21   motion did not address the dissemination of the name, but

22   that motion addressed the dissemination of disclosures made

23   in discovery.  So the name issue still, I think, remains the

24   largest concern.

25           THE COURT:  And that issue is teed up with

Case 3:19-cv-01966-KAD   Document 102   Filed 04/05/24   Page 25 of 30
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 10 of 26

10

1  plaintiff's motion.  You would agree with that, I assume?

2          MR. SCONZO:  I would agree with that.  I would also

3  agree with, we have a lot more to say on that.

4          THE COURT:  Okay.  Attorney Pattis, what is your

5  client's plan?

6          MR. PATTIS:  When I have talked to Mr. Sconzo, to

7  alert him we'd be filing a motion, it was my belief that we

8  would be filing a motion, and I was awaiting some instruction

9  from Mr. Khan.  And I have permission to discuss this with

10  you.

11          His disclosure surprised me, and I think the word I

12  used in one of my pleadings was "flummoxed," and led to

13  discussions between he and I about whether the

14  attorney-client relationship would continue, because my view

15  is that orders of the court are orders of court, and I

16  construed it strictly, and in ways that perhaps the Court

17  doesn't think are necessarily justified on the pleadings.

18  But that's how I saw it.

19          He, and for good reason, regards himself as the

20  victim in this case, not Jane Doe.  They had a consensual

21  experience, a jury vetted it, and Mr. Khan has been deprived

22  of the promise that Yale made him for a bright future in the

23  country of his adoption by using a procedure that might best

24  be described as a "kangaroo court," and encouraging and

25  enabling a young woman to come forth and lie about him to the

Case 3:19-cv-01966-KAD   Document 102   Filed 04/05/24   Page 26 of 30
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 11 of 26

11

1    world, and now she seeks the protection for the consequences

2    of her action.

3         Now, the Court may say that his purpose is revenge

4    and revenge is inappropriate.  Accountability is not.  And to

5    the degree that he will seek punitive damages, those are to

6    punish and deter, and deterrence is a uniquely personal

7    function.

8         So I think he wants her to feel what he felt.  What

9    it was to have every publication that reports on things like

10   that, like Time Magazine reported him to be a rapist, when,

11   in fact, what he did was engaged in what one headline writer

12   called "messy sex."  And sex, typically, when it's consensual

13   among people above a certain age, may be messy, but it's not

14   a crime.

15        And, so, for reasons of her own, and for reasons of

16   a highly-mobilized political group, Mr. Khan was held out to

17   be a criminal and had to fight for his liberty, and he won.

18   And when he went back to Yale, the anger was mobilized and

19   they forced him to the street, and he's lost the promise.  I

20   remind you, he was recruited from a refugee camp in

21   Pakistan -- or Afghanistan, rather -- and came to the United

22   States, educated at Yale's expense.  He does want

23   retribution.  His future was stolen from him.

24        Now, having said that, I'm in a tough spot on the

25   "prior restraint" issue because I don't think this does come

Case 3:19-cv-01966-KAD  Document 102  Filed 04/05/24  Page 27 of 30
Case 3:19-cv-01966-KAD  Document 94  Filed 03/26/24  Page 12 of 26

12

1  close to doxing, and I know a lot about that from the Alex

2  Jones case in the state court, where there is a new theory in

3  the defamation cases called "stochastic terrorism," which is,

4  in an interconnected digital universe, a defamatory remark

5  placed in the right context will inflame the online world.

6      You know, I don't see that Mr. Khan is responsible

7  for the interest the public has taken in this case.  The

8  interest the public has taken in this case goes to the very

9  injury or the harm he's suffered.  In the eyes of many, he's

10  a rapist because she said he was, and it's never been shown.

11      So I hear what you're saying, Judge.  What we've

12  come to court -- Mr. Khan has recently had jaw surgery.  He's

13  able to speak.  It's a little difficult.  I told him to

14  expect a rebuke from the Court and to be put -- that he would

15  be placed on notice that further misuse of court material

16  would not be tolerated and would come with consequences.

17      I hear the Court saying that it may not be prepared

18  to drop that hammer yet.  But I think his intentions are to

19  fully and fairly --

20      THE COURT:  Still thinking about it.

21      MR. PATTIS:  Well, I hear you.

22      But, I mean, I think that his intentions -- finally,

23  to answer your question -- are to fully and fairly litigate

24  this case and bring it to a jury.  I've explained to him that

25  any other questions about his compliance with court orders

Case 3:19-cv-01966-KAD   Document 102   Filed 04/05/24   Page 28 of 30
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 13 of 26

13

1    could cost him my representation of him, because it'll raise

2    questions about my credibility.

3           And, candidly, there was discovery mishap in the

4    Jones case that in state court had cost me a suspension that

5    is still being litigated in the appellate courts.  I'm

6    uniquely sensitive to these issues, and Mr. Khan knows it.

7           So his intentions are to obey your orders, but to

8    fight hard to vindicate his claims.

9           MR. SCONZO:  Judge, may I be heard just briefly.

10          THE COURT:  Of course.

11          MR. SCONZO:  I see an merging notion in this case

12   that Mr. Khan was vindicated.  Mr. Khan was found "not

13   guilty" in a criminal standard, in a criminal court.  Nothing

14   has been decided in a civil context, and I want to make that

15   clear.  Mr. Khan was dismissed from Yale on a standard far

16   different than a criminal process for rape, and he has not

17   proven that my client lied, and I need to put a stop to this

18   notion I see building momentum that he's been vindicated.

19          He's not be vindicated of anything, Judge.  The only

20   charge he's been absolved of by a jury is that the State did

21   not prove beyond a reasonable doubt that he raped my client.

22   That is it.  The rest is yet to be determined.

23          THE COURT:  All right.  I agree.  And I think that

24   that puts a finer point on the concerns that I have.  I mean,

25   obviously, Mr. Pattis, I'm sure you're going to have a

14

1   conversation with your client about his own exposure as he

2   publicly accuses, outside the confines of a courtroom, when

3   he publicly accusing her of a false accusation.

4        What I don't want -- because Mr. Sconzo is correct.

5   This case is going to be decided on the basis of the

6   allegations, presumably to a jury who will have to make a

7   determination not beyond a reasonable doubt, but by a

8   preponderance of the evidence whether or not it was a false

9   accusation.

10       And we will get the case there.  We had a few starts

11  and stops as it bounced around various appellate courts.  It

12  found its way back.  But what I don't want, I don't want the

13  case litigated on X or on Youtube or on TikTok.  That just

14  can't happen.  That starts to infect the entire process, and

15  if I -- and I think I do have a legitimate concern that that

16  might be on Mr. Khan's list of things to do, in terms of

17  having his viewpoint out there in the world repeated to the

18  Jane Doe's detriment, at a time when nothing has been

19  decided.  That's what I'm concerned about.

20       MR. PATTIS:  So, Judge, I understand the Court's

21  concerns.  And this was a subject of litigation, on the basis

22  of a special public interest appeal to the Connecticut

23  Supreme Court in the case of *State of Connecticut v. Fotis*

24  *Dulos,* and I would ask you to consider looking at the briefs

25  there.  That was a case involving the serious death of a

26

```
 1            MR. PATTIS:  Thank you, Judge.

 2            (Proceedings conclude, 10:35 a.m.)

 3

 4                      C E R T I F I C A T E

 5            RE: Khan v. Yale, et al.
              Civil No. 3:19-cv-1966-KAD
 6
                        Motion Hearing
 7                      March 18, 2024

 8

 9        I, Tracy L. Gow, RPR, Official Court Reporter for the

10   United States District Court, District of Connecticut, do

11   hereby certify that the foregoing pages, 1 through 26, are a

12   true and accurate transcription of my shorthand notes taken

13   in the aforementioned matter to the best of my skill and

14   ability.

15

16                      /s/  TRACY L. GOW
                        Official Court Reporter
17                      U.S. District Court
                        915 Lafayette Boulevard, Room 216
18                      Bridgeport, Connecticut 06604
                        (203) 910-0323
19

20

21

22

23

24

25
```