UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Saifullah Khan,<br><br>                              Plaintiff,<br><br>v.<br><br>Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons;<br><br>                              Defendants. | Civil No. 3:19-cv-01966-KAD<br><br><br><br>JUNE 19, 2024 |

**RULING AND ORDER**

## I.    INTRODUCTION

In 2015, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") and Defendant Jane Doe ("Jane Doe") matriculated at Defendant Yale University ("Yale").  They went to the same Halloween party, went to a student orchestra performance together, returned to Trumbull College where they both lived, and woke up in her room.  *See* Compl. (ECF No. 1) ¶¶ 39, 41–43.  Shortly after, Jane Doe filed a Title IX complaint against Khan, alleging he raped her.  *See id.* ¶¶ 46, 48.  Khan was immediately suspended, criminally charged with four counts of assault, acquitted, and readmitted pending the disciplinary hearing. *See id.* ¶¶ 47–52, 58.  In October 2018, Yale suspended Khan again for unrelated issues.  *See id.* ¶¶ 60–64.  The following month, Yale's University-Wide Committee on Sexual Misconduct ("UWC") held a disciplinary hearing concerning Jane Doe's allegations and then voted to expel him.  *See id.* ¶¶ 74–80.

Khan now sues Yale, 12 Yale employees, unknown journalists, and Jane Doe for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., for breach of due

process concerning the disciplinary hearing, and various breach of contract and tort claims stemming from his expulsion. [1] Khan also asserts two counts specific to Jane Doe: defamation and tortious interference with a business relationship.  When he filed this lawsuit, Khan moved to proceed against Jane Doe using a pseudonym and Yale filed a memorandum in support.  District Judge Kari A. Dooley granted the motion.

The parties are embroiled in a key dispute: whether Jane Doe should enjoy continued anonymity as this case proceeds in litigation.  Judge Dooley has referred several pending motions to me, two of which directly conflict and are the subject of this order: (1) Khan's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) ("Plaintiff's Motion to Vacate"); and (2) Jane Doe's Motion to Continue Anonymity (ECF No. 103) ("Doe's Anonymity Motion").  These motions are ripe for a ruling.  For the following reasons, I **DENY** Plaintiff's Motion to Vacate and **GRANT** Doe's Anonymity Motion.

## II.    BACKGROUND

Given the comprehensive factual recitations from *Khan I* through *Khan IV*, *infra* at 4, I presume familiarity with the facts of this case and summarize only the procedure, facts, and evidence relevant to the pending motions.

### A.    <u>Khan Moves to Litigate Against Jane Doe under a Pseudonym</u>

When Khan filed this lawsuit on December 13, 2019, he also moved for permission to litigate against Jane Doe using a pseudonym.  *See* Pl.'s Mot. Pseudonym (ECF No. 2); Exs. to Pl.'s Mot. Pseudonym (ECF No. 7).   As Khan explained, Yale's UWC procedures require confidentiality of individuals and proceedings, and he wanted to maintain Jane Doe's anonymity

---

[1] Defendants Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, and Unknown Persons have not briefed the motions before this Court.

to comply with these procedures for one reason: "Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life." *Id.* at 9.  Although Khan applied the Second Circuit's ten-factor test for determining whether a pseudonym is appropriate—as established in *Sealed Plaintiff v. Sealed* Defendant, 537 F.3d 185 (2d Cir. 2008)—he focused on why Jane Doe's anonymity would be beneficial to <u>him</u>, not her.[2]

In addition to Khan, Yale filed a memorandum explaining why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff*.  *See* Yale Mem. Pseudonym (ECF No. 9).  Yale explained why Jane Doe's anonymity was necessary to protect <u>her</u>.  In brief, Yale lodged five main arguments: (1) as Plaintiff contended, the litigation involves highly sensitive and personal matters; (2) anonymity is an important safeguard to protect Jane Doe, a rape survivor, from likely reputational harms and media attention; (3) no party will suffer prejudice because Plaintiff knows her identity; (4) her identity has thus far been kept confidential; (5) public interest weighs in favor of protecting sexual assault survivors; (6) and, because it's in the public interest to conceal her identity, the public has an atypically weak interest in knowing her identity.  *See id.*

On January 10, 2020, Judge Dooley granted Plaintiff's Motion.  Judge Dooley reasoned:

> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

Text Order (ECF No. 12).  The case has proceeded under a pseudonym since this ruling.

---

[2] I will address the ten-factor test later in this ruling.

B.     **Judge Dooley's Dismissal of Claims Against Jane Doe and the Subsequent Appeals Process.**

On April 28, 2020, Jane Doe moved to dismiss the claims against her, arguing she enjoys absolute immunity from suit arising from her testimony at the disciplinary hearing, because it was a quasi-judicial proceeding.  Judge Dooley granted her motion, and Khan appealed.  *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021) (*Khan I*).

The Second Circuit certified the issue, among others, to the Connecticut Supreme Court on March 4, 2022.  *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022) (*Khan II*).  On June 27, 2023, the Connecticut Supreme Court ruled that Yale's disciplinary hearing procedure did not constitute a quasi-judicial hearing because it lacks procedural safeguards.  The Supreme Court concluded Jane Doe does not enjoy absolute immunity or (at least at the pleading stage) qualified immunity. *See Khan v. Yale Univ.*, 347 Conn. 1 (2023) (*Khan III*) (denying absolute immunity).  On October 25, 2023, the Second Circuit reversed in part Judge Dooley's decision and remanded the case for further proceedings consistent with the decision.  *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023) (*Khan IV*) (reversing in part and remanding for further proceedings).

C.     **Motion for Judgment of Dismissal and Hearing**

On December 27, 2023, Jane Doe moved for a judgment of dismissal as a sanction for Plaintiff publicly disclosing her identity and directly communicating with her about settlement. *See* Mot. Seal Emergency Mot. J. Dismissal (ECF No. 73) at 1.  The substance of these communications have been filed under seal pursuant to a court order.  *See* Hr'g Tr. (ECF No. 94).

Judge Dooley held a hearing on March 18, 2024.  The topics discussed included Khan's posts on X, his direct contact with Jane Doe, and the standard for awarding sanctions.  Jane Doe's counsel described Plaintiff's actions as a "retaliatory sequence of events starting with e-mails directly to [his] client that were found harassing, after he had sought to hide her name" and "using

4

her name publicly, telling the world 'a gift is going to come,' and sure enough he does this." *Id.*

at 17:5–16. He also stated Nazis and "the fringe element" took interest in Plaintiff's posts. *See*

*id.* at 18:5–10. Plaintiff's counsel conceded that he interpreted the anonymity restriction as

applying to public posts, *see id.* at 8:14–21, Plaintiff's public disclosure of Jane Doe's identity

"surprised" and "flummoxed" him, *id.* at 10:6–18, that his client wants accountability and for "her

to feel what he felt," *id.* at 11:4–14, that Plaintiff wants to "fully and fairly litigate this case" before

a jury, *id.* at 12:22–24, and that failure to comply with court orders could result in counsel's

withdrawal, *see id.* at 12:24–13:2.

Judge Dooley expressed concern for Khan's social media tactics, stating "there is a sense

of an intent to intimidate" and "[t]here is a sense of an intent to harass" in Khan's public posts

about the litigation and depositions. *Id.* at 9:1–9. Judge Dooley reflected, "The idea of sort of

mobilizing the Internet – I mean, this is borderline doxing, and it's very concerning." *Id.* She also

explained that she did not want "the case litigated on X or on Youtube or on TikTok," clarifying,

"I think I do have a legitimate concern that that might be on Mr. Khan's list of things to do, in

terms of having his viewpoint out there in the world repeated to the Jane Doe's detriment, at a time

when nothing has been decided." *Id.* at 14:12–19. Despite her reservations, Judge Dooley clarified

that she had never issued a protective order preventing Khan from publicly using Jane Doe's

identity, and so technically Khan did not violate a court order. *See id.* at 5:10–25.

Judge Dooley denied the motion but ordered Khan to refrain from publicly revealing Jane

Doe's name until the pending motions are decided and to remove the posts publicly identifying

her. *See id.* at 23:13–25:19. Regarding the pending motions, Judge Dooley reflected:

"[C]onsistent with the parties' earlier understanding, with the issues now I think adequately joined

between the motion to remove the pseudonym and the motion for the protective order, what the parties' conduct looks like going forward is teed up." *Id.* at 19:18–23.

## III.   DISCUSSION

The two motions at issue seek opposing relief: Plaintiff seeks to vacate Jane Doe's anonymity, and Jane Doe seeks to maintain it.  Plaintiff filed his motion three days before Judge Dooley's hearing.  *See* Pl.'s Mot. Vacate.  Both Yale and Jane Doe object to the motion.  *See* Yale's Opp'n (ECF No. 102); Doe's Opp'n (ECF No. 104).  Jane Doe filed her respective motion on April 5, 2024, after the hearing.  *See* Doe's Anonymity Mot.  To date, Plaintiff has not responded.

### A.    Jane Doe's Continued Anonymity Is Warranted.

Rule 10(a) of the Federal Rules of Civil Procedure requires the complaint's title to name all parties.  *See* Fed. R. Civ. P. 10(a).  While identifying the parties is an important component to ensuring the public's access to the courts, special circumstances sometimes warrant an exception. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).  Courts within the Second Circuit must use the non-exhaustive ten-factor balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*:

(1) "whether the litigation involves matters that are highly sensitive and [of a] personal nature;"

(2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties;"

(3) "whether identification presents other harms and the likely severity of those harms;"

(4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure;"

(5) "whether the suit is challenging the actions of the government or that of private parties;"

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal quotation marks and citations removed).  The purpose of this test is to "weigh[] the plaintiff's need for anonymity against countervailing interests in full disclosure," *id.* at 189, including "public interest in disclosure and prejudice to defendants," *id.* at 193.

Judge Dooley evaluated these ten factors in her initial order.  *See* Text Order (citing *Sealed Plaintiff*).  She specifically noted the "sensitive and personal nature of the issues" (factor one), the risk of harm (factors two through four) and the absence of prejudice to the parties (factor six), and the lack of alternative procedures (factor ten), among the other relevant factors.[3]  *Id.*

With the exception of factor seven (7),[4] none of the facts relevant to the factors considered by Judge Dooley have changed.  As Yale points out, the subject matter still involves Jane Doe's

---

[3] I construe Judge Dooley's order to mean that she considered all *Sealed Plaintiff* factors but found these six factors the most compelling and—because the ten *Sealed Plaintiff* factors are non-exhaustive—considered other arguments raised by the parties that do not neatly fit into the ten-factor test.

[4] Factor 7 requires the Court to consider whether the identity of the person seeking anonymity has thus far been kept confidential. *See Sealed Plaintiff*, 537 F.3d at 190.  As set forth in Jane Doe's Motion for Judgment of Dismissal and discussed during the hearing, Plaintiff—without Jane Doe's consent—disclosed Jane Doe's identity on social media.  The Court has since ordered Plaintiff to remove his posts referencing Jane Doe's identity pending the outcome of these motions. The Court gives no weight to this factor given that Plaintiff's disclosure of Jane Doe's identity without consent from Jane Doe, at a minimum, undermines the spirit of the anonymity order in

7

alleged sexual assault, there has been no reduction of potential risk if Jane Doe's name is revealed, Plaintiff still does not argue he will be prejudiced if Jane Doe continues to proceed under a pseudonym, and no viable alternative to her confidentiality has been established since Judge Dooley's ruling.

Instead, Plaintiff argues there is no longer a need for Jane Doe's anonymity because he does not want to return to Yale anymore, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g et seq., does not cover Yale's investigation records, and the Connecticut Supreme Court's decision caused him to conclude Jane Doe is not entitled to anonymity because she is no longer a student.  For several reasons, these arguments are unpersuasive.

<u>First</u>, it is of no moment that Plaintiff no longer wants to re-enroll at Yale.  The *Sealed Plaintiff* standard focuses on the needs of the person seeking anonymity and balances <u>those needs</u> against the interests of the other parties and the public.  *See Sealed Plaintiff*, 537 F.3d at 189 ("We agree that the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym.").  In other words, Plaintiff's future plans, which are unrelated to Jane Doe, are irrelevant for the purposes of the *Sealed Plaintiff* factors.  The only factor specifically related to the opponent is the sixth: whether the non-movant might be prejudiced by the anonymity.  *See id.* at 190.  Because Khan knows Jane Doe's identity, he will not be prejudiced by continued anonymity.  *See Doe v. Smith*, No. 1:19-

---

place, and even came as a surprise to Plaintiff's attorney who was "flummoxed" and offered that he thinks Plaintiff wants "her to feel what he felt," including "[w]hat it was to have every publication that reports on things like [allegations of college campus sexual assault]."  Hr'g Tr. at 10:11–14, 11:8–10.  Giving weight to this factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe outside of the judicial process.

CV-1121 (GLS/DJS), 2019 WL 6337305, at *2 (N.D.N.Y. Nov. 27, 2019) ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff[']s identity publicly."). Plaintiff's desired outcome for this litigation does not equate to whether he will be prejudiced by her anonymity. Accordingly, this argument does not persuade me.

Second, Plaintiff argues that FERPA—which, in relevant part, requires universities to keep educational records confidential—does not apply to a university's investigation into potential criminal conduct. *See* Mot. Vacate at 5–6. As an initial matter, Judge Dooley did not find that FERPA required Jane Doe's anonymity. Rather, she determined that one of the factors warranting anonymity was "the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality." Text Order (ECF No. 12). To the extent Plaintiff regrets conceding that Yale's confidentiality policy applies to these facts, he cannot un-ring that bell.

In any event, the First Circuit addressed Plaintiff's very argument in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022). There, the plaintiff—a male MIT student who was expelled after being accused of sexually assaulting a female student and then sued the university for breach of contract and other state claims—sought to litigate under a pseudonym. *See id.* at 64–65. As a matter of first impression, the First Circuit established its own version of the *Sealed Plaintiff* test and concluded the district court erred in denying him pseudonymity.[5] MIT

---

[5] The First Circuit concluded the multi-factor tests, like the *Sealed Plaintiff* test, "do not establish a clear standard" and chose instead to use "the easily understood 'totality of the circumstances' standard, *see id.* at 69–70, outlining four paradigms in which pseudonymity is generally appropriate: (1) if the "would-be Doe" fears "coming out of the shadows will cause him unusually severe harm (either physical or psychological); (2) if "identifying the would-be Doe would harm 'innocent non-parties;'" (3) if identification could create a "chilling effect on future litigants who may be similarly situated;" or (4) if the lawsuit is "bound up with a prior proceeding confidential by law." *Id.* at 71–73.

argued that FERPA (and Title IX) only constrain the university during its own proceedings and that a student waives his right to confidentiality by filing a lawsuit. *See id.* at 75. While the First Circuit acknowledged that FERPA and Title IX do not impose "a gag order on individual participants," it nonetheless concluded MIT "misses the mark." *Id.* The First Circuit opined that "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. It explained that there is little basis to "lift the veil of pseudonymity" in a collateral attack, reasoning: "The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Id.*

To be sure, the facts are slightly different here insofar as Khan's identity is public and it is <u>he</u> (not a university) that seeks to reveal the identity of Jane Doe, who has been brought into this litigation against her will as a Defendant. Because she has not brought this case on her own volition, the public has an even greater interest to maintain her anonymity during this collateral attack in federal court. *See id.* Indeed, the risk of a "chilling effect" would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack. *See Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public ... has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'") (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

<u>Third</u>, Jane Doe graduated before this case was filed and so her status as an alumna is not a new or changed fact. *See* Yale's Opp'n at 2. Yale posits that Khan knew this when he first sought to litigate against her through a pseudonym in December 2019, and Khan has not filed an opposition to dispute this fact. *See id.* In his Motion to Vacate, Khan argues that the Connecticut

Supreme Court acknowledged her graduation forecloses Yale's ability to discipline her for failing to testify truthfully, and so the "obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired." This appears to be a more creative version of his FERPA argument. For the same reasons I did not find the FERPA argument warrants vacating the pseudonym order, I do not find Plaintiff's third argument compelling.

Accordingly, I conclude that Jane Doe's anonymity should be continued.

**B.    An Order Prohibiting Public Disclosure of Jane Doe's Identity Is Warranted.**

Having decided that Jane Doe may continue to proceed under a pseudonym, I must now evaluate the scope of that decision. *See* Hr'g Tr. at 19:18–23. Jane Doe requests that the following order be issued: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere. Plaintiff's claims will be dismissed with prejudice if he identifies Jane." Doe's Anonymity Mot. at 30. While Plaintiff has moved to vacate Jane Doe's anonymity, he did not object to this request. Because I do not have authority to involuntarily dismiss an action, *see* 28 U.S.C. § 636(b)(1)(A), I will limit my ruling to the first sentence and will leave issues of dismissal to Judge Dooley.

I conclude that Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her. But I do so with the acknowledgment that the relevant facts and procedural posture concerning Jane Doe's anonymity are unique. At first blush, her anonymity request does not appear to fit neatly within a specific legal framework.

### 1.    *A Rule 26(c) Protective Order is Not Applicable.*

I begin with Federal Rule of Civil Procedure 26(c), which governs protective orders. *See* Doe's Anonymity Mot. At 11–15. Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts in this circuit have noted that, '[f]or purposes of a

protective order, good cause is established when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" *Qube Films Ltd. v. Padell*, No. 13–CV–8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 (RPP), 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (internal quotation marks removed)).

Certainly, the principles of Rule 26 apply insofar as the disclosure of Jane Doe's identity would cause her more than "annoyance, embarrassment, oppression, or undue burden," as I have explained above. But Plaintiff knew Jane Doe's identity before litigation. In this vein, Rule 26 does not apply insofar as her identity is not information learned through a document, responses to discovery requests or interrogatories, depositions, or otherwise. *See Bridge CAT Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983) ("Rule 26, however, which is entitled 'General Provisions Governing Discovery,' is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

In requesting an order prohibiting Plaintiff from publicly disclosing her identity, Jane Doe cites case law involving discovery. *See* Doe's Anonymity Mot. at 11–15. Take *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021), and *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020), two related lawsuits involving plaintiffs who were sex trafficked and sexually assaulted as minors and whose identities were not known to the accused defendants. These plaintiffs sought protective orders that required the defendants to keep their identities confidential from the public in exchange for their identities. *See Baram*, 2021 WL 3423595, at *3; *Nygard*, 2020 WL 4890427, at *3.

12

Because the defendants did not know their accusers' identities, the court's issuance of a protective order functioned as a discovery management tool under Rule 26. *See Baram*, 2021 WL 3423595, at *3. So too did *Plaintiffs #1–21 v. County of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015), *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), and the *Strike 3* and *Malibu Media* cases involve protecting a party's identity for discovery purposes. *See* Doe's Anonymity Mot. at 13–15. These cases therefore do not apply here.

### 2.  *Based on record before Court Jane Doe's Request is Not a Prior Restraint.*

Having concluded that a Rule 26 protective order does not apply, I'd like to address potential concerns involving whether an order limiting a litigant's right to publicly disclose the identity of an individual—who has been granted anonymity in court—would serve as a "prior restraint." "A prior restraint is a governmental order or action 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The Second Circuit in *In Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), explained why a court's order preventing parties from speaking with the press did not violate the press's First Amendment rights. While the facts are of course different, its reasoning applies:

> The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and therefore public. A prior restraint deprives the public of specific news because it prevents publication. Although the restraining order in this case limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press.

*Id.* at 608. The Second Circuit concluded "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by

the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *Id.*

As with the parties in *In Application of Dow Jones & Co.*, Plaintiff did not object. While it is true Plaintiff moved to vacate Jane Doe's anonymity, it is also true that his motion is denied. Given this denial, he has not pointed me to specific legal authority or facts explaining why he should be given carte blanche to publicly disclose her identity outside of the litigation. Quite the opposite. During the hearing, Khan offered to comply with an order preventing such disclosure before his counsel objected. *See* Hr'g Tr. at 22:14–19 (Pattis: "Objection. We're not going to – we're not completely oblige to any gag orders, Mr. Khan. Speak to me before you offer to comply with gag orders to the Court."). While Plaintiff's counsel preserved his objection to future "gag orders," I construe Khan's testimony along with counsel's failure to oppose Jane Doe's argument to mean that Plaintiff concedes there is no legal justification supporting his desire to identify Jane Doe outside this litigation when the court has ruled she may litigate anonymously. In other words, this circumstance is similar to *In Application of Dow Jones* insofar as the parties do not object to such a court order, and therefore it is not a "prior restraint." 842 F.2d at 608.

As Judge Dooley explained during the hearing, Plaintiff's disclosure of Jane Doe's risks this case being litigated on X, TikTok, Facebook, or social media generally. *See* Hr'g Tr. at 14:4–19. I have reviewed all briefing and evidence filed under seal relating to Khan's public disclosure of Jane Doe's identity. I have also reviewed the hearing held before Judge Dooley on March 18, 2024 and her concerns about the how Khan's public disclosure of Jane Doe's identity has the potential to impact this case. I have reviewed Defendant Jane Doe's sur-reply filed under seal, Sur-Reply (ECF No. 114), which attaches exhibits evincing Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly. In light of the record before the Court, and for

the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

## IV.   CONCLUSION

For the above reasons, I **DENY** Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) and **GRANT** Jane Doe's Motion to Continue Anonymity (ECF No. 103).   I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.   Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.   Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration.   Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language.   If the parties agree, they may jointly file a Proposed Order.   If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

This is not a recommended ruling. This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

It is so ordered.

_/s/ Maria E. Garcia_
Hon. Maria E. Garcia
United States Magistrate Judge