UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAIFULLAH KHAN

PLAINTIFF

v.

YALE UNIVERSITY, ET AL.

DEFENDANTS

DOCKET NO. 3:19-cv-01966(KAD)

June 28, 2024

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR JUDGMENT OF DISMISSAL OF THE PLAINTIFF'S COMPLAINT**

Pursuant to the Court's inherent authority and Rule 41(b) of the Federal Rules of Civil Procedure, the defendants, Yale University and twelve Yale University employees (collectively, the "Yale Defendants"), respectfully submit this Memorandum of Law in support of their Emergency Motion for Judgment of Dismissal of the Plaintiff's Complaint.

The Yale Defendants incorporate by reference the Second Emergency Motion for Judgment of Dismissal ("Second Motion for Dismissal") and Memorandum of Law in Support filed by defendant, Jane Doe, on June 24, 2024 ("Doe's Memo of Law"). (ECF 123). For the reasons below, those in Jane Doe's Second Motion for Dismissal, and on the record as a whole, the Plaintiff's actions warrant dismissal of the Complaint with prejudice under Rule 41(b) and the Court's inherent authority.

**PRELIMINARY STATEMENT**

"The Supreme Court has long recognized that certain implied powers must necessarily result to our Courts of justice from the nature of their institution." *Armstrong v. Guccione*, 470 F.3d 89, 100–01 (2d Cir. 2006) (internal citations and quotations omitted). "The most prominent

of these is the contempt sanction, which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Id.* at 101 (citation omitted); *see also Gompers v. Buck's Stoves & Range Co.*, 221 U.S. 418, 450 (1911) (it has long been held that "[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery").

On June 19, 2024, the Court (*Garcia, J.*) issued an Order prohibiting the Plaintiff "directly or indirectly (including through his counsel) … from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform." *See Khan v. Yale University et al*, No. 3:19-cv-01966-KAD, Ruling and Order at 15, (*Garcia, J.* June 19, 2024) (ECF 119) (hereinafter "Third Anonymity Order"). The Court made it abundantly clear to the Plaintiff that "***any*** release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order ***is sanctionable by the Court, including but not limited to dismissal***." (Emphasis added) (ECF 119).

Within hours of the Court's Third Anonymity Order, the Plaintiff violated it. He posted the Order on social media, mislabeled it a "gag order," and repeatedly egged on his followers into revealing Jane Doe's identity. And the ***only*** reason his followers knew Jane Doe's identity was because the Plaintiff had previously disclosed it in violation of, at the very least, Yale University's clear policy on confidentiality.

There was nothing subtle, or clever, or innocent about the Plaintiff's actions. He made himself the judge of the validity of this Court's order and deemed it unworthy of compliance. And, as stated in Jane Doe's Second Motion for Dismissal, this is not the first time the Plaintiff

has shown his contempt for the Court's orders and process. Doe's Memo of Law at 3–5, 20–21. His actions make a mockery of this Court, and any sanction less draconian than dismissal with prejudice would be futile.[1]

**ADDITIONAL PROCEDURAL HISTORY**

It is undisputed that Yale University maintains a policy requiring strict confidentiality of the information obtained for its University Wide Committee on Sexual Misconduct ("UWC") proceedings. *See* Plaintiff's Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of her Actual Name, dated December 16, 2019 (ECF 7, at 1) ("…Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's [UWC] procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser").

It is equally undisputed that the Plaintiff had Yale's UWC confidentiality policy front of mind when he filed his motion to proceed with a pseudonym for Jane Doe. (*Id.*) The Yale Defendants filed a Memorandum of Law in Support of that motion on January 2, 2020. (ECF 9, 1/2/2020). In their Memorandum of Law, the Yale Defendants "explain[ed] why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff* [*v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008)]." Third Anonymity Order at 3. Judge Dooley granted the motion based, in part, on

---

[1] Indeed, although the present motion does not involve non-parties, it is well-settled that a court's contempt power may extend to non-parties who have notice of the court's order and the responsibility to comply with it. *See Bridgeport Guardians v. Delmonte*, 371 F. Supp. 2d 115, 121 (D. Conn. 2005). The Supreme Court has long recognized that a person, "not a party to the suit, [may be] guilty of contempt for violation of an order of that court, made in such suit, and imposing a fine for such contempt." *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 325 (1904). Within the Second Circuit, Judge Learned Hand explained that, while no court can make a decree that binds "the world at large," a non-party "may be punished . . . [if he either] abet[s] the defendant or [is] legally identified with him." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–33 (2d Cir. 1930).

"the inherently sensitive and personal nature of the issues raised in this litigation, [and] the parties' acknowledgement of the Defendant Yale University's applicable policies concerning confidentiality . . . ." (ECF 12, Order dated 1/10/2020).

At some point, however, the Plaintiff decided that Jane Doe was no longer deserving of even the pretext of anonymity, and that he was no longer interested in appearing to comply with Yale University's confidentiality policy. On Christmas morning, 2023, he gifted his social media followers (and the public) with Jane Doe's identity.[2]

On March 15, 2024, several months after disclosing Jane Doe's identity, the plaintiff filed his Motion to Vacate the Order Treating Jane Doe Pseudonymously. (ECF 89, 3/15/2024). He attended the hearing on March 18, 2023, claiming to have "misunderstood" the scope of the Court's January 10, 2020 Order. *See* Doe's Memo of Law at 4–5. On April 5, 2024, the Yale Defendants filed a Memorandum in Opposition to the Plaintiff's Motion to Vacate the Order. (ECF 102). Also on April 5, 2024, Jane Doe filed a Motion to Continue Anonymity. (ECF 103).

On June 19, 2024, Judge Garcia rendered the Court's Third Anonymity Order denying the Plaintiff's Motion to Vacate and Granting Jane Doe's Motion to Continue Anonymity. (ECF 119). The Court held, "[i]n light of the record before the Court, and for the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity, the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media." Third Anonymity Order at 15.

---

[2] The defendants have learned through the Plaintiff's partial discovery compliance that the Plaintiff had, in fact, disclosed Jane Doe's identity several times before his Christmas 2023 posts. *See* Doe's Memo of Law at 3–4, 20–21.

**ARGUMENT**

Within two hours of losing his Motion to Vacate, the Plaintiff gutted the Third Anonymity Order and litigated this case (once again) on social media. His violation of this Court's Order was immediate, blatant, and inexcusable. His actions warrant the sanction of dismissal.

"Under Rule 41(b), whether to dismiss an action as a sanction is within the sound discretion of the district court, after weighing the factors articulated by the Second Circuit for dismissal and complying with the procedural prerequisites for involuntary dismissal – notice and an opportunity to be heard." *Petty v. City of New Britain*, No. 3:17-CV-01798 (KAD), 2019 WL 121719, at *4 (D. Conn. Jan. 7, 2019) (dismissing case under Rules 41(b) and 37(b)(A)(2) for repeated discovery noncompliance and violation of Court order concerning discovery); *Pal v. Cipolla*, No. 3:18-cv-00616-MPS, 2024 WL 2746865, at *9 (D. Conn. May 29, 2024) (plaintiff's repeated failure to abide by Court's orders requiring her to file on the docket evidence supporting her various representations to the Court and to appear for trial on two consecutive days warranted dismissal under Rule 41(b)).

A district court considering dismissal of a plaintiff's claim for failure to comply with a court order pursuant to Rule 41(b) must consider:

> (i) the duration of the plaintiff's failure to comply; (ii) whether the plaintiff was on notice that failure to comply would result in dismissal; (iii) whether the defendants are likely to be prejudiced by further delay in the proceedings; (iv) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (v) whether the judge has adequately considered a sanction less drastic than dismissal. No one factor is dispositive, and the determination is based on the record as a whole. The decision to dismiss for failure to prosecute is committed to the district court's discretion.

*Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022) (internal quotation marks and citations omitted).

The Yale Defendants incorporate Jane Doe's well-reasoned arguments on why the relevant factors weigh in favor of dismissal. Doe's Memo of Law at 14–26. The Yale Defendants make additional arguments to the third factor (likelihood of prejudice to the defendants) and the fifth factor (consideration of a less drastic sanction than dismissal) in support of dismissal.

A. Plaintiff's Deliberate Violation of the Court's Third Anonymity Order Has Caused Harm to All Defendants

It is undisputed that Yale's UWC confidentiality policy led the Plaintiff to file his motion to proceed with a pseudonym for Jane Doe. He cannot, therefore, dispute the importance of that very policy or Yale's substantial interest in upholding it. Without consequences for blatant violations of confidentiality, university students will be discouraged from reporting sexual misconduct allegations, which are, as Judge Dooley found, highly sensitive and of a personal nature. (ECF 12, Order); *see also Doe v. Rector & Visitors of George Mason Univ*., 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (compromising the confidentiality afforded through the Title IX process "may discourage victims from reporting sexual misconduct in the first instance"); *Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 74 (1st Cir. 2022) (citing to 34 C.F.R. § 106.71, the First Circuit acknowledged that the Title IX regulations seek to protect sensitive information about students, stating that "the Department's regulations implementing Title IX require universities to 'keep confidential the identity of any individual who has made a report or complaint of sex discrimination' . . . subject to a few exceptions" and concluding that "it is evident . . . that federal law aims to keep such proceedings largely under wraps"). Indeed, as the First Circuit recognized, destroying that confidentiality "may throw a wrench into other Title IX proceedings." *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 76.

The enforcement of Yale's confidentiality policy is no less vital when the matter leaves the campus and enters the courtroom. As this Court recognized, the public has an interest in ensuring that this confidentiality is maintained in court proceedings. *See* Court's June 19, 2024 Ruling and Order (ECF 119, at 10) (stating that, as is the case here, when an accuser is brought into court against their will, "the public has an even greater interest to maintain [the accuser's] anonymity during [a] collateral attack in federal court"); *see also Doe v. Baram*, No. 20 Civ. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public . . . has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes'"); *Doe v. Vassar Coll.*, 19-CV-09601 (NSR), 2019 WL 5963482, at *2 (S.D.N.Y. Nov. 13, 2019) ("Courts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes").

As the First Circuit has found, "[t]he public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 76. Here, the Plaintiff has thrown a wrench into the University's UWC proceedings by so deliberately and publicly violating the Third Anonymity Order and, with it, Yale's confidentiality policy. The Yale Defendants are prejudiced by the Plaintiff's deliberate violation of the Third Anonymity Order and nothing short of dismissal is sufficient to address his repeated violations of confidentiality.

Moreover, the prejudice to Jane Doe cannot be fully addressed unless the case is dismissed because all the confidentiality issues—and the justified apprehension that the Plaintiff will continue to ignore the Court's orders—remain so long as the case remains pending. *See J-Square Mktg., Inc. v. Sipex Corp.*, No. 3:97-CV-924 (GLG), 1999 WL 608817, at *7 and *11 (D.

Conn. Aug. 9, 1999) (dismissing case for plaintiff's repeated discovery violations, including violation of a confidentiality order, despite finding "... the prejudice factor does not entirely weigh in favor of dismissal, because the case will continue on [defendant's] counterclaims"). There are no counterclaims in this case that would cause the prejudice to continue in the event of a dismissal of the complaint. And it is only with a dismissal that the Court, and the parties, can be assured the Plaintiff will no longer violate Court orders.

B. Any Sanction Less Than Dismissal with Prejudice Would Be Inadequate and Futile

Courts in our District have found dismissal warranted when faced with arguably less egregious conduct than what the Plaintiff has done here. *See Rzayeva v. U.S.*, 492 F. Supp. 2d 60, 89–90 (D. Conn. 2007) (dismissing plaintiff's claims under Fed. R. Civ. P. 41(b) where plaintiff repeatedly served documents upon defense counsel *electronically* in violation of Court's order requiring all documents to be served on all counsel in *paper* format); *Verity v. Hargreaves*, No. 3:22-cv-813 (SRU), 2022 WL 4265145, at *1 (D. Conn. Sept. 14, 2022) (dismissing case under Rule 41(b) based on plaintiff's failure to comply with Court's orders requiring plaintiff to notify the Court of any change of address as required under Local Rule 83.1(c)); *Y.R. v. Manzano*, No. 3:18-cv-402 (SRU), 2022 WL 4263280, at *4 (D. Conn. Sept. 14, 2022) (dismissal under Rule 41(b) warranted where plaintiffs repeatedly failed to comply with Court's orders concerning filing of Rule 26(f) report).

Here, the Plaintiff was explicitly warned that noncompliance with the Third Anonymity Order could result in the severe sanction of dismissal of his action. He violated it anyway. Any sanction less than dismissal would be futile to address the Plaintiff's open defiance of the Anonymity Order and the underlying authority of this Court. *See S.E.C. v. Razmilovic*, 738 F.3d 14, 27 (2d Cir. 2013), *as amended* (Nov. 26, 2013) (finding that "although [defendant] disobeyed

only that single court order, his adamance in the face of the court's warning of possible sanctions that included the extreme sanction of default clearly supported an inference that renewed orders … would be unavailing and that no lesser sanction would be effective to induce [defendant]" to comply); *Brissett v. Manhattan & Bronx Surface Operating Auth.*, No. 09 CV 874 (CBA)(LB), 2011 WL 1930686, at *4 (E.D.N.Y. Apr. 20, 2011) ("lesser sanctions would not be effective, given that the Court has warned plaintiff that she would face the severest sanction of dismissal, and yet such warning went unheeded"), *report and recommendation adopted sub nom. Brissett v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 09 CV 874, 2011 WL 1930682 (E.D.N.Y. May 19, 2011), *aff'd* 472 F.App'x 73 (2d Cir. 2012).

Finally, the Plaintiff and other litigants would not be deterred from violating the Court's order with any lesser sanction. As the Supreme Court has stated, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

**CONCLUSION**

Before the Anonymity Order, the Plaintiff appeared before Judge Dooley on March 18, 2024, to explain his previous actions in disclosing Jane Doe's identity. There, he claimed to have misunderstood the Court's prior order. (Doe Memo in Support at 4; citing March 18, 2024 Hearing Transcript (ECF 94) at 21:9-11). While at the hearing, he heard Judge Dooley express the Court's concern with the Plaintiff's conduct and what could possibly be a plan to "exact retribution" and "mobiliz[e] the Internet." (Doe Memo in Support at 5, citing ECF 94, 8:23-9:9).

Since the March 18th hearing, the parties have learned that the Plaintiff had made numerous other disclosures of information he knew to be confidential under Yale University's UWC policy. (Doe's Memo of Law at 3–5, 20–21).

On June 19, 2024, the Third Anonymity Order warned the plaintiff in no uncertain terms that his direct or indirect disclosing or revealing of Jane Doe's identity could result in dismissal. (ECF 119, at 15). In open defiance of that Order, the plaintiff wasted no time before "mobilizing the Internet" with a call to his followers to aid his violation of the Order. He chose this path instead of mobilizing his multiple attorneys to move for reconsideration of the Third Anonymity Order.

Judge Garcia noted at the status conference on the pending motions that simply saying orders are being followed is mere "lip service" if the orders are not actually being followed. (Status Conference, 6/20/24, ECF 120, Transcript Ordered). The Plaintiff's actions have shown that he has violated, and will continue to violate, the orders of this Court. He will choose which orders he deems worthy of compliance. No sanction short of dismissal will suffice.

Respectfully submitted,

Yale University, Jonathon Halloway, Marvin Chun Joe Gordon, David Post, Mark Solomon, Peter Salovey, Ann Kuhlman, Lynn Cooley, Paul Genecin Stephanie Spangler, Sarah Demers, Carole Goldberg

By: ______________________

Giovanna Tiberii Weller (ct11187)
Patrick M. Noonan (ct00289)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: gweller@carmodylaw.com
pnoonan@carmodylaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that on June 28, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

______________________
Giovanna Tiberii Weller