1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT
2
                                    )
3     SAIFULLAH KHAN,                )    No. 3:19-CV-01966-KAD
                                     )    141 Church Street
4                    vs.             )    New Haven, Connecticut
                                     )
5     YALE UNIVERSITY, JANE DOE,     )    June 20, 2024
      et al.                         )
6     _____

7                    TRANSCRIPT OF MOTION HEARING

8              BEFORE THE HONORABLE MARIA E. GARCIA

9                UNITED STATES MAGISTRATE JUDGE

10    APPEARANCES:
      For the Plaintiff:        ALEXANDER T. TAUBES, ESQ.
11                              Alexander T. Taubes
                                59 Elm Street
12                              Suite 207
                                New Haven, CT 06511
13
      For the Defendants:       GIOVANNA T. WELLER, ESQ.
14                              MARIA L. LAURATO, ESQ.
                                Carmody Torrance Sendak & Hennessey,
15                              LLP
                                195 Church Street
16                              New Haven, CT 06510

17    For the Defendant:        BRENDAN GOOLEY, ESQ.
                                Carlton Fields
18                              One State Street
                                Suite 1800
19                              Hartford, CT 06103

20

21

      ECR Operator:            COURTSMART
22
                          Rachel Wiley, CDLT-251
23                         7227 N. 16th Street
                               Suite 207
24                         Phoenix, AZ 85020
                            (800) 257-0885
25

1                            I N D E X

2    RULINGS:                                    PAGE   LINE
     Motions for extension of time are denied     39     17
3    without prejudice.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy

1           (11:01 O'CLOCK, A.M.)

2           THE CLERK:  All rise.  The Honorable United States

3  District Court for the District of Connecticut is now open.

4  All persons having causes of action pending or who've been

5  bound or summoned to appear herein will take due notice hereof

6  and give attention according to law.  The Honorable --

7           THE COURT:  Good morning.  Please be seated.

8           MS. WELLER:  Good morning, Your Honor.

9           THE COURT:  Okay.  We're here in the matter of Khan

10  v. Yale University, et al.  It's case 19-CV-1966 assigned to

11  Judge Dooley.  My name is Judge Garcia.

12           If I could start with the appearances of counsel,

13  starting with plaintiff, please.

14           MR. TAUBES:  Good morning, Your Honor.  This is

15  attorney Alexander Taubes for the plaintiff, Saifullah Khan.

16           THE COURT:  Good morning, Attorney Taubes.  And is

17  that your client at the table?

18           MR. TAUBES:  Yes.

19           THE COURT:  Okay.

20           MR. TAUBES:  Sitting to my right is --

21           THE COURT:  Good morning --

22           MR. TAUBES:  -- Mr. Khan.

23           THE COURT:  -- Mr. Khan.  Twice in one --

24           THE PLAINTIFF:  Good morning.

25           THE COURT:  -- day, Attorney Taubes.

Colloquy

```
 1          MR. TAUBES:  Yes.

 2          THE COURT:  Okay.

 3          MS. WELLER:  Good morning, Your Honor.  Giovanna

 4  Weller for the defendant Yale University and the individual

 5  Yale defendants.  And with me is my colleague, Maria Laurato.

 6          MS. LAURATO:  Good morning, Your Honor.

 7          THE COURT:  Good morning.

 8          MR. GOOLEY:  And good morning, Your Honor.  Brendan

 9  Gooley of Carlton Fields on behalf of defendant Jane Doe.

10          THE COURT:  Good morning to all of you.  Any of your

11  clients in the courtroom?

12          MS. WELLER:  Yale does not, Your Honor.

13          MR. GOOLEY:  No, Your --

14          THE COURT:  I'm sorry?

15          MR. GOOLEY:  -- Honor.  I'm sorry.

16          THE COURT:  Go ahead.  I'm sorry, Attorney Weller, I

17  didn't hear that.

18          MS. WELLER:  Yeah.  Yale does not have clients in the

19  courtroom.

20          THE COURT:  Okay.

21          MR. GOOLEY:  Same, Judge.

22          THE COURT:  Okay.

23          MR. GOOLEY:  No client -- Jane is not in the

24  courtroom.

25          THE COURT:  Okay.  Thank you.  So I'm going to
```

Colloquy

1    inquire as to whether everybody has been alerted of the ruling

2    that came out yesterday related to a lot of the pending

3    motions.

4            MR. TAUBES:  Yes, Your Honor.

5            MS. WELLER:  Yes, Your Honor.

6            THE COURT:  Okay.  So for purposes of today, there

7    are two -- well, there's four pending motions, but really,

8    it's Jane Doe's motion for protective order, which is docket

9    number 81.  The sealed version is docket number 82.  And then

10   Mr. Khan's motion for extension of time is docket 105.

11   There's a previously filed one, which is 100, which can be

12   mooted out.

13           So I wanted to start with the protective order,

14   because it appears to me that a lot of time has passed since

15   that motion was filed.  And I know that initially there had

16   been some conversations, meeting-and-confer efforts to see

17   whether something could be agreed to.  And I wanted to know

18   whether there had been any additional communications and kind

19   of where we stand on that motion.

20           I see you standing up, Attorney Gooley.  Why don't

21   you start since it's your motion.

22           MR. GOOLEY:  Sure thing, Judge.  And I certainly

23   hesitate to throw us out of order here, but there is an issue

24   related to yesterday's order that I --

25           THE COURT:  Okay.

Colloquy

1    MR. GOOLEY:  -- wanted to address with the Court --

2    THE COURT:  Okay.

3    MR. GOOLEY:  -- which is it has just come to my

4    attention that the plaintiff posted on X, now -- formerly

5    known as Twitter, the order, and then also posted a series of

6    tweets that I've just been made aware of about this -- what he

7    refers to as a gag order, only applies to him, hopefully

8    others -- I'm doing my part -- hopefully others contribute in

9    their own way.  He tweets at someone to specifically say, This

10   gag order only applies to me.  That individual then appears to

11   disclose personal information about Jane Doe.

12        And I just wanted to apprize Your Honor, it is, as I

13   read this, certainly our position that that is a violation of

14   Your Honor's order insofar as it prohibited the plaintiff from

15   indirectly disclosing Jane's name by specifically encouraging

16   others to disclose her name through the tweet, such as,

17   hopefully others contribute in their own way.  I wanted to

18   apprise Your Honor because I think it would be a mistake not

19   to while we're all here today that there will be briefing

20   coming on that forthwith.

21        And I also wanted to see if there's anything we can

22   do to -- I would say, Judge, I would say respect the status

23   quo as we've had in the case while we briefed that issue and

24   take Your Honor up on her offer to meet and confer about a

25   protective order that more specifically delineates what can

Colloquy

1   and cannot be done with Jane's identity.  And so that's --

2   again, apologies for throwing us off script here.

3         THE COURT:  So can you detail for me what is the

4   nature of the postings?  The order was posted online, which

5   it's a public order, so that's not --

6         MR. GOOLEY:  Correct.

7         THE COURT:  -- concerning.

8         MR. GOOLEY:  Correct.

9         THE COURT:  And it hasn't -- it wasn't filed under

10  seal because there was nothing -- I was very careful to make

11  sure that I didn't include anything in the order that was

12  referencing any of the sealed materials.  So can you list for

13  me what it is that Mr. Khan disclosed publicly that in your

14  view is a violation of the order in place?

15        MR. GOOLEY:  We read the order's prohibition on Mr.

16  Khan indirectly disclosing Jane's name as prohibiting him from

17  encouraging others to do so.  And the tweet, I'm doing my

18  part; hopefully others contribute in their own way, tweeting

19  at an individual to specifically inform the individual that

20  this gag order only applies to me, and then that individual

21  posting information about Jane is a violation.  But as I

22  mentioned, Judge, I think that warrants full briefing, and we

23  do intend to submit that briefing.

24        Again, my point today is just I thought it would be a

25  mistake not to apprise Your Honor of that --

Colloquy

1          THE COURT:  Um-hum.

2          MR. GOOLEY:  -- given that we're all here today and

3    that that is coming in short order.

4          THE COURT:  Okay.  Well, I look forward to that.  And

5    obviously, if it's filed as an emergency motion or there are

6    significant concerns about violation of my order, I'll turn my

7    attention to it immediately.

8          MR. GOOLEY:  Thank you, Judge.

9          THE COURT:  Mr. Khan, I know you were before Judge

10   Dooley back in March when the initial postings were there.

11   You seemed quite contrite at that time.  I don't know if

12   something has changed between then and now.  My order is quite

13   clear as to what can and can't happen, and the spirit of the

14   order as well.

15          If you want to now kind of undermine or change your

16   direction as to what you said to Judge Dooley, I would just

17   caution you because I think Judge Dooley has been quite clear.

18   And I think my order is quite clear that any violation of my

19   order could lead to sanctions, which could include dismissal

20   of your claims against Jane Doe and potentially Yale.  So I

21   won't make any rulings here because I haven't seen the

22   materials, there is no briefing before me.  But the orders are

23   orders of the Court.  They're expected to be followed.  And if

24   they're not followed, there are significant potential

25   repercussions.

Colloquy

1          Attorney Taubes, is there something you'd like to say

2     regarding what Attorney Gooley has brought to the Court's

3     attention?

4          MR. TAUBES:  Yes, Your Honor.  I've reviewed the

5     tweets that Attorney Gooley has referenced, and I respectfully

6     disagree that Mr. Khan has violated any of the orders.

7     Obviously, they have every right to have a position on Mr.

8     Khan's social media posts, and they can make their arguments

9     in briefing, and we'll have an opportunity then to respond.

10    But I have had the opportunity to speak with Mr. Khan.  He has

11    expressed to me that he has every intention of abiding by the

12    Court's orders and rules and that -- and from what I have

13    seen, he has.  So we respectfully disagree with the position,

14    and I expect that we'll have to bring this up at another date.

15          THE COURT:  All right.

16          MS. WELLER:  Your Honor, may I be heard briefly?

17          THE COURT:  Of course.

18          MS. WELLER:  Yes.  I agree with counsel for Jane Doe.

19    I believe that these tweets from Mr. Khan are really a dog

20    whistle to others to do what it is that he has now been

21    officially prohibited from doing.  His first tweet, as I

22    understand, it was around 4:20 p.m. yesterday, where he says,

23    As of today, I have been officially gagged by the federal

24    court system of the United States for my speech on this

25    platform, Judge's order below.  And as Your Honor said,

Colloquy

1    publicly posting a public filing is not a violation.

2              Not too long after that, though, he states:

3              My actions are limited.  I'm going to a hundred-

4              percent obey this order.  I can't directly or

5              indirectly tell anyone what to do.  In no way, shape,

6              or form should my tweets here be interpreted in any

7              way to construe anything beyond the limited scope of

8              this ruling applies to me.

9              And then, as Mr. Gooley said, he then later says:

10             I'm doing my part; hopefully others contribute in

11             their own way.  I cannot instruct anyone on their

12             personal actions.  I must fully adhere, abide, and be

13             obedient to the Court and to the rule of law.

14             And then says shortly thereafter, This gag order

15    applies only to me.  So I do believe that what the plaintiff

16    is doing is setting the table for others to do that which he

17    cannot do.  And I believe that that does indirectly violate

18    this Court's order.

19             THE COURT:  Well, I think it surely dovetails very

20    neatly into the issues related to the motion for protective

21    order, because to the extent there's evidence that Mr. Khan is

22    trying to find loopholes to get around the Court's orders, and

23    like I said, the spirit of the order, then that gives Yale and

24    Jane Doe kind of stronger arguments for the protective order

25    that they're seeking.

Colloquy

1        So I'm not going to make any more kind of statements

2   about what you've posted, Mr. Khan.  Everybody can file what

3   they need to file.  And I will, if it's referred to me -- I

4   don't know if it will be; it might be handled by Judge Dooley

5   directly -- take it in due course.  But I will reiterate that

6   the orders of the Court are the orders of the Court.  And it's

7   not about saying that you're going to follow the orders of the

8   Court; it's about following the orders of the Court.  Because

9   just saying that you're going to follow them and not actually

10  doing that is just lip service.

11       So can we move on to the motion for protective order?

12       MR. GOOLEY:  Yes.

13       THE COURT:  Thank you.

14       MR. GOOLEY:  And thank you, Judge.  And I agree with

15  what Your Honor said; it does dovetail nicely.  And I know

16  Your Honor's reviewed everything, so I will try to keep my

17  comments relatively brief on the motion for protective order.

18  But the reason we filed the motion, Judge, in a nutshell, is

19  because of really two concerning things that that we've seen

20  in this case, and I know that the Court has seen in this case,

21  which is a disregard of confidentiality restrictions, both in

22  this case and outside of this case, and pronouncements of an

23  intent to misuse the litigation to abuse and harass Jane.  The

24  combination of those things, in our view, more than warrants a

25  protective order that goes somewhat above and beyond this

Colloquy

1    Court's standing protective order -- or I should say, the

2    District of Connecticut's standing protective order insofar as

3    we think the crux of the issue is whether the plaintiff should

4    be precluded from having access to sensitive documents.

5              And I think, Your Honor, before we got a little

6    sidetracked, began her remarks by asking what is in dispute.

7    And as I understand it, there certainly is -- as I understand

8    it again, there certainly is no dispute about a protective

9    order precluding the parties from disseminating confidential

10   documents, meaning it's the standard protective order; every

11   party can mark something that's confidential as long as that's

12   warranted, and the parties then are restricted in the ways

13   they can use that document.  I understand that to not be

14   disputed.  I understand there to not be a dispute about

15   plaintiff's signing an acknowledgment to that effect warning

16   him that --

17             THE COURT:  So that's --

18             MR. GOOLEY:  -- disclosure --

19             THE COURT:  -- section 5.  So looking at the

20   protective order that you've submitted attached --

21             MR. GOOLEY:  Yes.

22             THE COURT:  -- to your motion, I think it's 82-2, or

23   at least that's what I have in front of me.  So it's your view

24   that there's no dispute as to paragraph 3 and 5-A?

25             MR. GOOLEY:  Give me one second, Judge.  I believe

Colloquy

1    that is correct, the confidential piece of it that would just

2    prohibit dissemination.

3            THE COURT:  Okay.

4            MR. GOOLEY:  I think the crux of the dispute is, to

5    follow the order of paragraph 4 and 5-B, which is whether

6    there is good cause to prohibit the plaintiff himself from

7    receiving sensitive documents.  We believe we've submitted

8    more than ample evidence that there is.

9            Just to highlight one example very briefly, and I

10   know Your Honor is well familiar with the motion to dismiss --

11   or excuse me, judgment of dismissal briefing that arose on the

12   original disclosure of Jane Doe's name.  And although Judge

13   Dooley ultimately did decide that her order wasn't quite as

14   clear on how that should be violated, we submitted to Your

15   Honor, in briefing the protective order issue, two links to

16   videos where Mr. Khan recognizes or appears to believe that

17   that order prohibited him from disclosing Jane's name.

18   Attorney Pattis in his briefing said, I understand the order.

19           Everyone understood the order to prohibit Mr. Khan

20   from doing what he did, but he did it anyway.  And that, in

21   our mind, is in and of itself more than sufficient for the

22   entry of an order to prohibit him from getting access to

23   sensitive documents.

24           I understand plaintiff's concern, in a nutshell, is

25   that it would interfere somewhat with their prosecution of the

Colloquy

1    case, at least that's their theory.  And I would say to that a

2    few points.  First and foremost, this protective order does

3    include a process by which if there's a problem that develops,

4    there's the standard meet-and-confer process, and

5    unfortunately may need to go to the Court.  And while

6    certainly we don't want to bother the Court with needless

7    motions, I will say, unfortunately, I think we are at that

8    point given the concerns about the sensitivity of documents

9    and how they've been handled, both in this case and outside of

10   this case, as well as the potential that they may be misused,

11   as demonstrated by the email written by Mr. Khan that we

12   submitted to Your Honor last Friday.

13          The second thing is, I would say, Judge, if there is

14   some interruption, we think it's more than warranted.  It's

15   unfortunate, perhaps, but it is something that the plaintiff

16   has brought upon himself through his actions.

17          And the third point I would raise, and I think this

18   is an important clarification, is we are seeking to preclude

19   his access to documents themselves.  We're not seeking to

20   prohibit communication between his attorneys and him.  And I

21   think that's an important distinction.  And let me just

22   explain what I mean by that for a moment.  How we are

23   understanding this would work, we would produce confidential

24   documents to Attorney Pattis or Attorney Taubes --

25          THE COURT:  Confidential or confidential --

Colloquy

1        MR. GOOLEY:  Excuse me.

2        THE COURT:  -- not for plaintiff's eyes?

3        MR. GOOLEY:  Confidential not for plaintiff's eyes.

4        THE COURT:  Okay.

5        MR. GOOLEY:  Thank you.  Let me be clear.  They

6   couldn't produce the documents to them, but if there was

7   something that they felt they needed to discuss with their

8   clients, they could discuss that with their client, of course,

9   provided he agrees not to disclose the information itself.

10       And so we think there really is no risk of prejudice

11  or anything like that, if you will.  It literally is just

12  prohibiting him from having the documents themselves, because

13  we believe that's a very big distinction between him having

14  conversations with his attorneys and having actual copies of

15  documents that he could do the things he's already done in the

16  UWC process, which -- and Your Honor saw that in our surreply

17  from last Friday.

18       THE COURT:  Um-hum.

19       MR. GOOLEY:  And so candidly, we actually think it

20  would -- we could -- there's more than sufficient cause to go

21  a step further and stop him from accessing information, but

22  we're not asking for that --

23       THE COURT:  But the --

24       MR. GOOLEY:  -- at this point.

25       THE COURT:  But the lawyers wouldn't be able to take

Colloquy

1    a document that's been marked, Confidential, not for

2    plaintiff's eyes, and read it to the plaintiff, for example,

3    from start to finish.

4            MR. GOOLEY:  I --

5            THE COURT:  That would be -- I mean, so --

6            MR. GOOLEY:  I think that would be a step too far.

7            THE COURT:  Right.

8            MR. GOOLEY:  But.

9            THE COURT:  Now, one of the things I was thinking

10   about to balance the concerns raised by plaintiff's counsel

11   about being able to have discussions with plaintiff about

12   documents that are part and parcel of the case, is would

13   defendants contemplate producing to plaintiff's counsel --

14   let's say there's a document that's been designated as

15   Confidential not for plaintiff's eyes material because it has,

16   let's say, the names of some of the potential witnesses that

17   came forward in support of Jane Doe.  And so could the

18   document that's been marked, Confidential, attorney eyes only,

19   be redacted -- minimally redacted to exclude the information

20   that defendant is seeking to keep from plaintiff's eyes, but

21   allow at least some of the document to be able to be shared

22   with plaintiff so that plaintiff's counsel can have that kind

23   of conversation about, look, these are the -- and I understand

24   that there may be documents where the redactions are in whole

25   because there's no way to make it narrowly tailored, but at

Colloquy

 1   least some process to enable plaintiff's counsel to show some

 2   aspect of some of the documents that are marked, I'm going to

 3   say, attorney eyes only, because it's -- so striking some kind

 4   of balance there to address plaintiff's counsel's concerns

 5   about communications with their client?

 6           MR. GOOLEY:  I think that could be done on a case-by-

 7   case basis as part of the meet-and-confer process we envision

 8   as being part of this protective order.  And so just to play

 9   it out, how I'm envisioning it would develop is I would

10   disclose to Attorney Taubes a document marked, Confidential,

11   not for plaintiff's eyes.  He, if he was so inclined, could

12   come back to me and say, I believe the only section of this

13   document that warrants that level of protection is the third

14   paragraph.  I propose redacting the third paragraph and giving

15   the rest of the document to my client; is that acceptable to

16   you?  I would either say yes or no.  And that would be a meet

17   and confer.  And I think -- but to answer your question

18   boldly, I think that is certainly envisioned and something we

19   would be willing to do on a case-by-case basis.

20           I'm certainly not going to say I'm going to waive any

21   right to say, no, this document can't go at all, or there's

22   other portions that need to be redacted.  But that type of

23   dialog, I think, is certainly something we would envision.

24           THE COURT:  So there could be kind of two sets of

25   documents.  It could be the one that's marked in its entirety,

Colloquy

1    Confidential, not for plaintiff's eyes material, and then a

2    redacted version of that which may be marked confidential,

3    which eliminates or redacts the portions that defendants deem

4    should not be seen by plaintiff?

5             MR. GOOLEY:  I think so.

6             THE COURT:  Okay.  Can you cover -- so I -- the

7    definition of Confidential, not for plaintiff's eyes, you

8    mentioned here sensitive information, but that's not what

9    you're proposing --

10            MR. GOOLEY:  Yeah.

11            THE COURT:  -- in the proposed protective order in

12   paragraph 4.  The language that you're using here is that,

13   Contain information implicating an individual's legitimate

14   expectation of privacy.  So can you expand for the Court and

15   for the benefit of plaintiff and plaintiff's counsel kind of

16   what it is that this definition is meant to capture?

17            MR. GOOLEY:  Sure, Judge.  And let me just preface

18   that with we were intentionally broad in this because of the

19   broad array of sensitive information in this case and the many

20   forms it may take.  But I'm happy to give you a couple

21   examples.

22            So one example that we're specifically concerned

23   about, and the plaintiffs (sic) know this from our disclosures

24   and discovery requests to him in this case, is we're

25   investigating other sexual -- other potential sexual

Colloquy

1    misconduct by the plaintiff, and we think that may be highly

2    relevant to this case, including names of other victims and

3    information about those victims.  That's certainly something

4    that I would mark, Confidential, not for plaintiff's eyes.

5    And again, the actual information itself, like the name and

6    the gist of what the allegation is, again, Attorney Taubes

7    could talk to Mr. Khan about.

8         But I don't want him having those documents, in large

9    part because of what's happened with Jane and to Jane so far

10   in this case and the UWC other case, including the disclosure

11   of highly sensitive documents against UWC rules, the

12   information about the malintent against Jane.  Frankly, I

13   think he's going to do the same thing to all those other

14   people.  And that's one big category of information that we

15   think wholesale should automatically fall under that level of

16   protection.

17        With that said, Judge, and I know it's broad, I can't

18   say, unfortunately, that I can give you a full list of

19   everything that may come out at this point in discovery that

20   we would want to attach this level of protection to.  I think

21   my point is there's a wide array of extremely sensitive

22   information that may develop or probably will develop that

23   that we think warrants this level of protection.  I will say

24   this; of course, it's all subject to the meet and confer.  So

25   if there's a concern about it, we of course welcome and invite

Colloquy

1    the meet and confer.  It doesn't mean we'll resolve it.  But I

2    think that's -- some of this may unfortunately need to be

3    dealt with on a case-by-case basis.

4         THE COURT:  I mean, this case has been pending for a

5    while, and I understand it's gone up to the Supreme Court and

6    Second Circuit and back, so there are justified reasons for

7    the delay.  But have defendants at this point done all of

8    their gathering of documents that they believe are going to be

9    produced at this point?  Or are you still in the process of

10   culling documents that you think may be disclosed to

11   plaintiff?

12        MR. GOOLEY:  Still in the --

13        THE COURT:  I guess --

14        MR. GOOLEY:  -- process --

15        THE COURT:  -- do you know the universe of documents?

16        MR. GOOLEY:  No.  Sorry, Judge.

17        THE COURT:  Why not?

18        MR. GOOLEY:  I would say this.  Let me give you one

19   example off the example we just asked.  As I mentioned, we're

20   investigating other potential sexual misconduct by the

21   plaintiff.  We asked in interrogatories, give us a list of the

22   people who have accused you of sexual misconduct.  We received

23   an answer.  We believe it's deficient.  And so I don't even

24   have names from him of people that he believes have accused

25   him of sexual -- and once I have those names, I need to begin

Colloquy

1    my investigation into what documents may be out there as to

2    all those individuals.  So that would be one category of

3    documents.  And there's other, I would say, issues with that.

4            I think, as you know, the case has been pending for a

5    while, but just to kind of give you a high level view of where

6    we are, it was stayed by agreement.  And so I think it's fair

7    to say, and I welcome other counsel to weigh in on this, we

8    are really just beginning the discovery process in earnest

9    because of the stay, I think.  And we have ideas about

10   categories of documents for sure.  But certainly I'm not

11   prepared to say that I have even close to every document that

12   I would think is out there or potentially out there.

13           THE COURT:  Can I ask you about Exhibit 1 to the

14   protective order, which is the affirmation by Mr. Khan that

15   you're proposing?  In the last paragraph there's a statement

16   there:

17           "I understand that all of my remaining claims will be

18           dismissed with prejudice if I disseminate any

19           documents or information designated confidential or

20           access or attempt to access any documents or

21           information designated Confidential, not for

22           plaintiff's eyes".

23           And then the second sentence is:

24           "I further understand that I may be subject to

25           additional sanctions for disseminating any

Colloquy

1            confidential documents or information or accessing or

2            attempting to access any Confidential, not for

3            plaintiff's eyes documents or information.

4        So my question is about the first sentence.  I've

5    never seen a term like that in a protective order, and I'm

6    wondering kind of what is -- do you have any kind of authority

7    supporting that that's something that is within the bounds of

8    what a court can order --

9            MR. GOOLEY:  What --

10           THE COURT:  -- on a protective order?

11           MR. GOOLEY:  With the caveat, Judge, that, of course,

12   the ultimate decision of whether to dismiss a case as a

13   sanction is for the Court --

14           THE COURT:  Right.

15           MR. GOOLEY:  -- we believe that at this point that

16   language is necessary.  In fact, because when we filed our

17   first motion for judgment of dismissal one of the reasons

18   plaintiff opposed it is, well, I haven't been warned about

19   dismissal.  It's kind of a high sanction.  I mean, and so we

20   took that to say he basically needs a warning, because I

21   believe their argument was that's one of the relevant factors.

22       And we think in light of what I'll call the history,

23   which I won't repeat unless Your Honor wants me to, we think

24   the strongest possible language is warranted because anything

25   shorter, to Your Honor when we started the discussion of this

Colloquy

1    pointed out, there is now a concern about loopholes and

2    exploiting loopholes and workarounds and things of that

3    nature.  And so if we just put in there, could be dismissed,

4    may be dismissed, I fully expect that he would argue, well, I

5    mean, it didn't -- you didn't say will be dismissed, so I

6    didn't know it would be necessarily dismissed, which I

7    believe, by the way, would be a meritless argument.  But I

8    would say that I think we're past the point of the standard

9    language, and frankly, the standard protective order is the

10   short of it.

11           THE COURT:  Okay.  Attorney Taubes?

12           MR. TAUBES:  Thank you, Your Honor.  We do agree with

13   the defendants that there should be documents which Mr. Khan

14   cannot disseminate to the public, whether it be the documents

15   or the information within the documents.

16           We don't agree with a provision that would limit Mr.

17   Khan's ability to work with his attorneys on discovery in this

18   case in the way that they've proposed.  I mean, I think this

19   is a very overbroad and extreme, not narrowly tailored remedy

20   for the problem that they are attempting to address.

21           THE COURT:  How is it overbroad?

22           MR. TAUBES:  Well, it's overbroad because --

23           THE COURT:  In the context of how this litigation has

24   evolved.

25           MR. TAUBES:  Well, I think that this plaintiff did

Colloquy

1    what he did and he --

2            THE COURT:  Be specific.

3            MR. TAUBES:  When he disseminated the name, that was

4    an action which my co-counsel believed was in violation of the

5    order.  It was not certainly within the spirit of the Court's

6    orders --

7            THE COURT:  And that he believed to be a violation of

8    the order; isn't that right?

9            MR. TAUBES:  Apparently not, because he's shaking his

10   head next to me --

11           THE COURT:  Have you seen the videos that were --

12           MR. TAUBES:  Your Honor, I certainly haven't seen

13   every video --

14           THE COURT:  Well, the ones that --

15           MR. TAUBES:  -- in the time --

16           THE COURT:  -- were linked to one of defendant's

17   memorandums.

18           MR. TAUBES:  Yeah.  I believe he was being

19   interviewed about this case.  And the fact of the matter is,

20   is that since those actions happened, the plaintiff has been

21   warned.  And since those actions happened, there has not been

22   any further noncompliance.

23           Now the defendants have raised this issue that he's

24   currently not complying or seeking loopholes.  But I would say

25   that it's premature to consider that at this time because,

Colloquy

 1   frankly, I strongly disagree that anything he's done to this

 2   point has been improper since the Court's order was issued.

 3           THE COURT:  How about the dissemination of the UWC

 4   report, which Yale expected to be maintained confidential?

 5           MR. TAUBES:  Yes, that was --

 6           THE COURT:  That was --

 7           MR. TAUBES:  -- improper.

 8           THE COURT:  -- I mean --

 9           MR. TAUBES:  But --

10           THE COURT:  Yeah.

11           MR. TAUBES:  -- Your Honor, that was many years ago.

12           THE COURT:  So what?

13           MR. TAUBES:  Well, when considering whether a remedy

14   is warranted today under the circumstances that are present

15   today where the consequences of any violation of an order are

16   very clear and present to the plaintiff today is different

17   from something that happened six years ago or seven --

18           THE COURT:  I mean --

19           MR. TAUBES:  -- years ago.

20           THE COURT:  -- I would submit that the consequences

21   of him violating that confidentiality in terms of his desire

22   to get back at Yale or achieve the things that he's trying to

23   achieve through this litigation are no different.

24           MR. TAUBES:  Certainly.

25           THE COURT:  And doesn't it --

Colloquy

1        MR. TAUBES:  But that's --

2        THE COURT:  And doesn't it just demonstrate a

3   disregard for designations of confidentiality, designations of

4   things that are intended to stay confidential?

5        MR. TAUBES:  Yeah.  Your Honor, the plaintiff was, I

6   think, what, eighteen years old, twenty years old at the time

7   that that occurred?  And yes, foolish decisions are made at

8   that young age.  But --

9        THE COURT:  But then there have been subsequent

10  actions as well.

11        MR. TAUBES:  Yes.  However --

12        THE COURT:  So if that was the only thing, then you

13  could say fine, but there have been subsequent actions.

14        MR. TAUBES:  So I agree with you that it was --

15  it's -- there's a past history of actions which can raise a

16  concern.  Some of those actions are many years ago; others are

17  more recent.  The one that are more recent I believe have been

18  fully addressed by your Court's order from yesterday

19        The addressing keeping this case anonymous, which is

20  in itself not the norm in a civil action in this courthouse.

21  Even civil actions or criminal actions involving very

22  serious -- sensitive and serious things, it's not the norm to

23  keep a party's name secret.  And we have gone further than

24  that.

25        THE COURT:  And I'll note that it was your client who

Colloquy

1    sought that relief from the very beginning.  So go --

2            MR. TAUBES:  Initially.

3            THE COURT:  -- ahead.

4            MR. TAUBES:  Initially, but not at this stage.

5            THE COURT:  Right.

6            MR. TAUBES:  And now at this stage where it's not

7    being sought by both parties, it's been ordered, and

8    additionally, he's been ordered not to say the name, not just

9    in the context of in a court pleading, but also outside of the

10   courthouse, in the public.  And he's expressed his intention

11   to abide by that completely.  And I would argue that until

12   there's actually been an airing of the allegation that he has

13   not abided by it in whole or in part or that the spirit of it

14   or circumvention or whatever argument they'd like to make,

15   until we've had a proper opportunity to respond to that, I

16   don't think it's appropriate to consider that in the context

17   of curtailing what looks to be an extended process of

18   discovery and his ability to participate in it.

19            And it's very important to prepare a client, for

20   example, for a deposition, to be able to show them the

21   documents that are going to be shown to them at the

22   deposition.  Their definition actually says --

23            THE COURT:  Um-hum.

24            MR. TAUBES:  -- Documents we're going to show.

25            THE COURT:  Right.

Colloquy

1        MR. TAUBES:  So that's introducing an element of

2   unfair surprise into the case and an element of lack of

3   ability to prepare, which creates an asymmetry of fairness.

4   And I understand that there's an irreparable harm they're

5   trying to prevent through disclosure.  And what I would argue

6   is that the punishment that would come from any such

7   disclosure or any such improper further action by the

8   plaintiff is sufficient.  And anything more than that, like

9   what they're proposing, is greater than what is necessary.

10        THE COURT:  And what is that punishment?  You're

11   talking about dismissal of the case?

12        MR. TAUBES:  I believe so.  And furthermore, the

13   Court has inherent authority to sanction parties beyond just

14   dismissal of a case.  I mean, as Your Honor knows, if you

15   disobey a court order, you can be held in contempt.  I mean,

16   so there's -- the Court has a panoply of remedies that would

17   not impair the plaintiff's right.  Because, again, he's

18   brought a civil claim as well, claiming that his rights have

19   been violated in a variety of ways, his right to have his

20   claims of his rights violated be handled in a manner which

21   comports with the processes of a court case, which have

22   procedural safeguards for both the plaintiff and the defendant

23   and their ability to fully prosecute and fully defend their

24   cases.

25        So I think that what they've got is one step too far,

Colloquy

1   but that many of the things that they've sought, including

2   this provision that we're going to be very clear about what

3   punishments might be available, including and even beyond

4   dismissal, I think that that is sufficient.  And anything more

5   than that would be greater than necessary for the issue and

6   the problem that we're trying to solve today.

7           I also think it will end up miring the Court in a lot

8   of disputes between counsel, and especially difficult because

9   we have a tripartite case here.  The defendant for Doe, their

10  position is that there's a lot more document discovery to be

11  done and that they haven't even begun -- they haven't even

12  gotten their hands around the universe of documents that might

13  be discoverable from them.

14          On the other hand, I think that our friends at

15  counsel from Yale have a different view of discovery.  And

16  we've had disputes about whether any further documents are

17  going to be produced, because the deadline for document

18  production in the prior scheduling order has passed.  And our

19  motion for extension of time, which preview of coming

20  attractions, only talks about extending the end date and

21  doesn't provide a concomitant extension of production of

22  document deadline.

23          So we have one defendant who is saying, we're just at

24  the start of document production.  We have another defendant

25  who's saying, document production is over.  All I say -- I

Colloquy

1    don't say this to cast aspersions on either.  They have

2    legitimate positions that they're taking and they can have

3    different positions.  They don't have to be lockstep.

4         But my point is, is that when you have these three

5    different parties, there's going to be a lot of disagreements

6    in the ordinary course.  You're adding in an additional --

7    multiple layers of complexity that is going to ultimately

8    hamstring the Court.  We're already talking about extending

9    the discovery deadline once now, six months, I believe, from

10   April to October.  That might not even be sufficient if we're

11   adding in this complexity.  And so those are the issues that I

12   wanted to raise with that.

13        THE COURT:  How is it -- I want you to go back to how

14   is the protective order as proposed by defendants overbroad.

15   Because attorney-eye-only designations are common in cases

16   that involve even less sensitive issues than the ones that are

17   here present.  So how is it overbroad?

18        MR. TAUBES:  Well, I think Attorney Gooley's example

19   is a great example.  If people are going to -- if the

20   defendant's defense is going to be that there are other people

21   who are accusing this plaintiff of sexual misconduct, he

22   should have that information.  I understand that whenever a

23   party has information, there is therefore some risk that they

24   may violate laws or violate rules, and that information may

25   get disseminated.  But frankly, for him to have his due

Colloquy

1    process, he cannot be tried on uncharged things that were

2    never charged within court, never charged with by Yale, new

3    allegations against him, and not even know what those

4    allegations are, where they're coming from, when they

5    happened.  That's creating like a star-chamberesque atmosphere

6    for the plaintiff and his ability to prosecute his claim.

7            So their definition of what -- you're right, Your

8    Honor; attorney's eyes only exists in all of our protective --

9            THE COURT:  Um-hum.

10           MR. TAUBES:  -- orders in this Court.  I'm not saying

11   that that shouldn't exist as a category.  But it should exist

12   in the same category that it exists for other cases.  So for

13   example, psychiatric or medical records or something like

14   that, those could be legitimately attorney's eyes only under

15   certain circumstances.  And we may have disagreements about

16   some of them if they're particularly material or put at issue

17   in the case.

18           But the very broad anything that might implicate

19   someone's legitimate expectation of privacy, I mean, that's

20   such a broad standard.  We could argue about the standard now,

21   of course, but --

22           THE COURT:  Have you --

23           MR. TAUBES:  -- we'll likely --

24           THE COURT:  Have you proposed language to defendant's

25   counsel on what the attorney's-eyes-only definition could be?

Colloquy

1          MR. TAUBES:  I haven't --

2          THE COURT:  Having conceded --

3          MR. TAUBES:  -- I personally have --

4          THE COURT:  -- that --

5          MR. TAUBES:  -- I have not, Your Honor.  And I was

6    not engaged, frankly, in all of the discussions on this motion

7    because I had not been retained when the motions were filed, I

8    think, even fully briefed.  But I will say this.  I think that

9    the standard order we have in all of our civil cases, I have a

10   lot of civil cases in this courthouse, as Your Honor knows.  I

11   think it works fine.

12          I agree that this case has presented circumstances

13   that have warranted certain orders that don't exist in other

14   cases.

15          THE COURT:  Um-hum.

16          MR. TAUBES:  Those orders, I believe, are already

17   there.  I think going further with what they've proposed is an

18   overreach.

19          THE COURT:  But how about --

20          MR. TAUBES:  Maybe overbroad is not the --

21          THE COURT:  -- something in the middle?

22          MR. TAUBES:  -- right word.

23          THE COURT:  So for example, when you hear about

24   Attorney Gooley saying potentially other people who have come

25   forward and have accused Mr. Khan of sexual misconduct, their

Colloquy

1    addresses, how does that information serve your client's

2    prosecution of his case?  I don't know that it does.  And

3    keeping that information from Mr. Khan might make sense in

4    this case.  Perhaps not the name, because like you said, he

5    may need the information of who the accuser is so that he can

6    defend against that.

7           So why hasn't there been a conversation about a

8    middle of the road between the broader definition proposed by

9    defendants and the one that's in the regular standing order,

10   that -- something in the middle that addresses the real

11   concerns in this case?

12          MR. TAUBES:  I think that that is a very good

13   question, Your Honor.  And I wish I had had that opportunity

14   to meet with counsel prior to this hearing.  I have been

15   working with counsel since my appearance in this case very

16   diligently to try and move this case forward.  There have been

17   discovery requests from both defendants that have been

18   outstanding for a long time, which we worked very, very

19   diligently to try and bring an initial compliance, and there's

20   more documents that have to be produced, as they've mentioned.

21          I have reached out to counsel for Yale.  We're

22   meeting tomorrow to meet and confront some of our

23   disagreements.  And certainly, that could -- we could add that

24   to our agenda of trying to iron something out.

25          I certainly agree with Your Honor, that personally

Colloquy

1    identifying information as that information is typically

2    defined in, for example, the Connecticut Practice Book --

3              THE COURT:  Um-hum.

4              MR. TAUBES:  -- would be a fine candidate for

5    something that certainly would be unnecessary for a plaintiff

6    to have, Social Security numbers, addresses --

7              THE COURT:  Email address?

8              MR. TAUBES:  Yeah.  Date -- yeah.  Even date of

9    birth-  Some of those things don't need to be disclosed so.

10             THE COURT:  Well, I don't mean to cut you off.  And

11   what I think I'm inclined to do is say, why don't you guys go

12   back and have a conversation about a protective order that

13   contains -- I mean, you've conceded today, Attorney Taubes,

14   that an attorney-eyes designation is appropriate.

15             And so what is the scope of what that attorney-eyes-

16   only should be?  I have a good understanding of the record in

17   this case.  And I'm happy to take it on and issue the

18   protective order that I believe is appropriate here.  But I

19   think to the extent that you all know the discovery that

20   hasn't yet been produced and can speak not in hypotheticals,

21   but concretely about what you expect to produce and how that

22   information should or shouldn't be protected, or how you,

23   Attorney Taubes, need to be able to share that information

24   with your client for purposes of diligently prosecuting your

25   case, I think you're going to get a better result in terms of

Colloquy

1   the language of the protective order, which will in turn

2   minimize the involvement of the Court.

3            But let me talk a little bit about the involvement of

4   the Court.  I'm not concerned about you hamstringing the Court

5   with these issues.  That's what I do.  And to the extent that

6   you all need a lot of help in getting it right, then I'm

7   available to be that person who can help the process along.

8   And many of you who have appeared before me know that I can --

9   we can have scheduled weekly meetings where you bring to the

10  table the issues that you have in terms of designations, what

11  the disputes are.  And we can in a very efficient manner

12  dispose of these issues and make sure that the litigation is

13  moving at the pace that it should be moving all the while

14  protecting everybody's interests here.  And so that's not a

15  persuasive argument for me because I'm willing to do the work

16  to the extent that I think that the lawyers are acting in good

17  faith and bringing legitimate disputes before me.

18           But I think to the extent that the protective -- I

19  mean, we need a protective order, right?  What is it going to

20  say?  As specific and as clear as that protective order can

21  be, it's going to help alleviate a lot of issues downstream.

22  So I'm encouraged to hear that you're all talking tomorrow

23  about some of the issues related to discovery.  I'd encourage

24  you to add the protective order to the agenda.

25           And what I'll ask is that within a week from today

Colloquy

1    you file a joint status report as to where you are on the

2    issue of the protective order.  If you each have your own

3    protective order that you'd like to propose at that point -- I

4    haven't gotten a proposed protective order from plaintiff --

5    so you're each free to file a proposed protective order if you

6    haven't been able to arrive at an agreement as to what the

7    language should say.  Does that seem like a fair way to

8    proceed to everybody?

9            MR. GOOLEY:  That's certainly agreeable to me, Judge.

10   Thank you for your help.

11           MS. WELLER:  Yes, Your Honor.

12           THE COURT:  Attorney Taubes?

13           MR. TAUBES:  Thank you, Your Honor.  I greatly

14   appreciate that.

15           THE COURT:  Okay.  In terms of the schedule, I have

16   two motions.  And one motion to modify is saying -- the

17   earlier filed one is asking to extend the discovery from April

18   15, 2024 to October 15, 2024.  And the second one has the 2025

19   deadline.  So what is the actual deadline for discovery?

20           I think you told me.  Is it the 2025?  Okay.

21           So is discovery set to close April 15, 2025?

22           MS. WELLER:  Yes, Your Honor.  And I think the --

23           THE COURT:  Uh-huh.  Thank you.

24           MS. WELLER:  -- the correct motion is ECF 105.

25           THE COURT:  Okay.  So have you all talked about

Colloquy

1    scheduling in this case recently?

2         MS. WELLER:  Not broadly and not beyond what Attorney

3    Taubes has already stated to Your Honor.  I will say that

4    typically we do not object to opposing counsel's motions for

5    extension of time.

6         In this case, though, there are certain concerns that

7    I have that I think are unique.  The first one is that I

8    believe plaintiff has already indicated in some documents that

9    we have -- we are reviewing through discovery and elsewhere

10   that there is at least a desire to use the discovery process

11   and depositions to make other individuals feel how he said he

12   is feeling.

13        Two, Judge Dooley has already denied without

14   prejudice the plaintiff's request to take twenty depositions.

15        And third, there are allegations in the complaint

16   that Yale sort of stymied the timely adjudication of Mr.

17   Khan's claims, at least through the University process.  And

18   my concern is that if we say, sure, take as much time as you

19   want, that that could come back and thrown at us and say, look

20   how long this is taking.  So where we land with the

21   plaintiff's motion is that we think it's probably premature

22   since there's ten months left on the order, but we take no

23   position on whether it's granted or denied.

24        THE COURT:  Attorney Taubes, my problem with the

25   motion is that it just contains absolutely no specifics about

Colloquy

1    what it is that you're trying to accomplish in the time

2    between now and October 15, 2025.  All it says is there's a

3    new lawyer and he needs time.  And so I'm just going to tell

4    you, my inclination is to deny it without prejudice to you

5    filing something that lays out more specifically, like what

6    are you trying to do, what are the interim deadlines that you

7    are trying to comply with?  Like I need to -- to defendant's

8    counsel's point, like how many depositions are you planning on

9    taking?  How many experts are you seeing?  When do you intend

10   to fully respond to defendant's outstanding discovery?  I

11   mean, I just have zero information here as to why the

12   additional -- we're already -- like April 15, 2025 is ten

13   months from today.  You want additional six months?  I don't

14   know what you're trying to do in that additional six months.

15            MR. TAUBES:  Thank you, Your Honor.  And that motion

16   was also filed before I entered the --

17            THE COURT:  Okay.

18            MR. TAUBES:  -- case, so not to throw my co-counsel

19   under the bus --

20            THE COURT:  No, I know.

21            MR. TAUBES:  -- or anything like that.  He's trying

22   to do me --

23            THE COURT:  He's not here --

24            MR. TAUBES:  -- a solid.

25            THE COURT:  -- so that would be unfair.

Colloquy

1      MR. TAUBES:  And he was trying to help me by filing

2   that.  I think, he -- oh, he's coming in at this point, it's

3   such a big case, he's going to need more time, let me file

4   something right away.  But I totally take your point very

5   well.  And I would suggest that I'll also add that to the

6   agenda to speak with opposing counsel.  I'll make a proposal,

7   and we'll have their input on the proposal as well.  And then

8   that will be more appropriately teed up for you.

9      THE COURT:  All right.  I appreciate that.  So what

10  I'm going to do is I'm going to deny both of those motions

11  without prejudice.  And when you're ready to have something

12  before the Court that has the kind of detail that we've

13  discussed here in a more realistic view of what needs to

14  happen and timelines for that to happen, we will convene, or

15  I'll review it on the papers.

16      Is there anything else we should discuss while we're

17  here today?

18      MS. WELLER:  Just one more sort of housekeeping

19  matter.  The meet-and-confer that Attorney Taubes referred to

20  is -- was between my -- the Yale defendants and the plaintiff.

21  It's going to be at my office tomorrow.

22      THE COURT:  Okay.

23      MS. WELLER:  And I'm perfectly fine with folding in

24  the discussion about the protective order.  But Attorney

25  Gooley, I don't know if his schedule allows him to attend the

Colloquy

1   conference tomorrow.  And with just one week to get everything

2   done, I just wanted to put that before the Court and give him

3   an opportunity to speak.

4           THE COURT:  Thank you.

5           MR. GOOLEY:  And thank you.

6           Judge, I may not be able to make it tomorrow.  I'm

7   going to do my best to ensure that Attorney Taubes and I meet

8   and confer within one week.  And I'm hopeful we will be able

9   to do that.  In the unlikely event we can't, the status report

10  may just request an additional couple of days for us to hammer

11  out hopefully, ideally, what would be a joint motion for

12  protective order, or if not, at least more streamlined

13  competing motions --

14          THE COURT:  Okay.

15          MR. GOOLEY:  -- for protective order.

16          THE COURT:  If you need additional time, go ahead and

17  file the motion.  I'll also offer that there's conference

18  rooms here.  I don't know how long you were expecting to be

19  here, but if you'd like to use some of these conference rooms,

20  we can make them available so that you can use the time since

21  you're here in person.

22          MS. WELLER:  Thank you, Your Honor.

23          MR. GOOLEY:  Thank you, Judge.

24          THE COURT:  And if that's something that you're

25  interested in, just let my courtroom deputy know, and we'll

                          Colloquy

1    find you conference rooms.

2            All right.  Anything else?

3            MR. TAUBES:  No.  Thank you, Your Honor.

4            THE COURT:  All right.

5            MS. WELLER:  No, thank you.

6            THE COURT:  We'll stand --

7            MR. GOOLEY:  Not from --

8            THE COURT:  -- in recess.

9            MR. GOOLEY:  -- not from me.

10           THE COURT:  Thank you.

11           THE CLERK:  All rise.  The Honorable United States

12   District Court is now in recess.

13           (Whereupon the above matter was concluded at 11:50

14   o'clock, a.m.)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Rachel Wiley, Official Court Transcriber for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of the proceedings in the aforementioned matter to the best of my skill and ability.

Date: June 29, 2024

_____

RACHEL WILEY, CDLT-251

eScribers, LLC
7227 N. 16th Street
Phoenix, AZ 85020
(800) 257-0885