**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KHAN                                                :

v.                                                     :    3:19-cv-1966  (KAD)

YALE UNIVERSITY et al.              :    AUGUST 7, 2024

**REPLY TO DEFENDANT'S RESPONSES TO**
**72.2 OBJECTION CONCERNING GAG ORDER**

At least Doe concedes on page one that the order does restrict speech.  That much is correct in the response.

## I.  COUNTER STATEMENTS OF FACT(?)

Doe engages in a number of legal claims in the ostensible section of facts, which are addressed here seriatim.

As to the Defendants' claims as to the Plaintiff's initial request, the Plaintiff initially asked that Doe be pseudonymous (1) to *protect himself* from possible retaliation by Yale at the time—that is, the request was made for the Plaintiff to protect himself from Yale, which is similar to how plaintiffs in other cases protect themselves by proceeding with pseudonyms; (2) he made the request because he was not aware of footnote 1 of *Khan v. Yale Univ.*, 27 F.4th 805, 809n.1 (2d Cir. 2022) or footnote 39 of *Khan v. Yale Univ.*, 347 Conn. 1, 295 A.3d 855 (2023); and (3) out of human compassion to protect Doe from ridicule, i.e. "pillorying."

As to the claims that General Statutes § 54-86e applied, it is undeniable that the victim gave her first and last name in a public proceeding, as ordered by the Superior Court.  The colloquy concerning this requirement appears just before Doe's testimony begins in the trial court transcript that was submitted at the hearing

several weeks ago.

Doe cites language from the court in the March 18, 2024 hearing.  But that was not an evidentiary hearing.  Doe did not testify and there was no evidence adduced concerning potential effect on the jury pool.  Nor could there be, given that Doe's name was already public—literally stated in open court, by her own volition.

Doe claims waiver on page three.  Waiver must be knowing, intelligent, and voluntary.  Indicating willingness to merely comply with an order violating a plaintiff's rights is not waiver and does not indicate scienter of voluntary relinquishment.  Even an illegal order must be complied with, and acquiescence to the power of a court is not waiver.

Doe claims on page four she does not want to silence the plaintiff as to discussing the substance of the case.  But when the Plaintiff complained publicly about the Court's gag order—without mentioning Doe's identity—Doe sought to punish the Plaintiff for that criticism of the Court.  Her criticism of the Plaintiff on this point in other filings is blistering.  It's obvious from this filing and the numerous improper motions to seal that the Defendants jointly want this to be a Star-Chamber proceeding, without any scrutiny by the public.  And they have been successful in that.

Doe and Yale claim that the Plaintiff should not litigate the case on social media.  There is evidence, however, this is being done by other than the Plaintiff.  Searching for Doe's name on the internet reveals an *enormous* amount of DMCA takedown notices.  It is common knowledge that because a counter notice requires a speaker shed anonymity and submit to federal court personal jurisdiction, most

speakers do not elect to issue a counter notice, being afraid of a SLAPP.  Section 512(f) is all well and good, but sophisticated counsel willing to litigate such claims is relatively rare.  It is obvious from a simple internet search that considerable resources are being expended to affect what information is available on social media.  Query who is actually litigating on social media?

## II. REVIEW IS DE NOVO

On page 6, and then on pages 16–18, Doe claims the standard of review is clearly erroneous, and Yale agrees.  They are wrong.

In a 72.2 objection, a magistrate judge's order is reviewed for being **"contrary to law"** *or* as clearly erroneous.  Most conveniently, the Defendants never mention that phrase, "or contrary to law," although they obviously were aware of that adverse authority.

The order here should be reviewed as to whether it is contrary to law.  The scope and applicability of constitutional rights are always questions of law. The construction of words, the meaning of words, are always questions of law—be it the *meaning* of a statement for a hearsay objection (as opposed to the application of the rule, which is abuse of discretion), the *meaning* of a contract, the *meaning* of a statute, the *meaning* of a court order.  Questions of fact are reviewed for clear error. The issues here are all issues of law.

It is worth recalling the reason for the rule.  There is nothing in these proceedings like personal testimony that would have put Judge Garcia in a better position vis-à-vis any reviewing tribunal.  Nor was this a proceeding calling balls and strikes on the rules of evidence.  This objection is not about questions of fact.

These are pure questions of law.  There is no logical reason for any deference.

## III.    THE OBJECTION IS TIMELY MADE

Doe makes an argument on pages 7–8 that the arguments in the objection are untimely.  Doe repeats this argument at 13–14.  The text of the order at issue was not written until it was issued during the hearing.

First, Defendants don't cite any cases where fundamental constitutional rights like speech was at stake.  Moreover, there was no opportunity to object to the text of the order as contrary to law before the hearing because the text of the order had not issued.  Assuming strictly for the sake of the argument that the Defendants are correct, there is a due process problem as-applied here.  The Plaintiff did not have notice of the text of the order until it issued.

In the alternative, as the Plaintiff points out, the procedural right to proceed under a pseudonym is not coextensive with the power to enjoin a party from speaking.  If the Plaintiff failed raise certain arguments concerning pseudonymity, that is distinct from the prior restraint.

In the second alternative, a plaintiff can at any time move to vacate an illegal injunction.  The harm is not one-off—it is ongoing.  Even if as a matter of *form* the Defendants are right, the Plaintiff can, and will, move to vacate the illegal injunction as an illegal order.  The error in issuing a prior restraint is so core to free speech principles, even predating the republic, that the error is fundamental.  In addition, the failure to distinguish the issue of pseudonymity and issuing the prior restraint are changes in circumstances. This Court must wrestle with the constitutional merits at some point.

In the third alternative, a prior restraint is so objectionable and contrary to law that it can be reviewed for plain error and vacated sua sponte.  C.f. *The Pentagon Papers Case*, 403 U.S. 713 (1971).  The harm is not only to the Plaintiff. The public is also hurt by a judicially enforced prior restraint.

## IV. THIS IS NOT A CRIMINAL CASE, THERE IS NO COMPELLING INTEREST

The Defendants reliance on *Trump* as supporting their position is misplaced. Protecting the sanctity of a *criminal investigation* can be a compelling interest *during that investigation*. Again, the reason for the rule is paramount.

One criminal defendant can be brought to trial while other, related investigations of other potential defendants are ongoing.  Yet, a criminal defendant has certain procedural rights to discovery from the prosecution—even if there are other ongoing investigations.  Sharing information obtained through that discovery process for the duration of an investigation can be restricted because it meets strict scrutiny—as was applied in *Trump* and as should be applied here.

See, there is a compelling interest in protecting the ongoing criminal investigations, but the government **must share** that information with the criminal defendant pursuant to the defendant's constitutional rights.  If the government was not **required** to share the information, a less speech restrictive alternative would be to simply not share the information.  But it **must** be shared.  Therefore, where such information must be shared, the least speech restrictive alternative is to prohibit a criminal defendant from sharing that information during the investigation.  The compelling interest, in that case, is to protect the investigation.

There is also a compelling interest in adjudication of criminal cases.

Accordingly, where the government presents **evidence** sufficient to satisfy strict scrutiny that statements will affect the ability to adjudicate a criminal case fairly, litigants' speech can be restricted for the duration of the case.  The compelling interest, in that case, is to protect the prosecution of violations of law.

This case is different.  First, there is no compelling interest in Doe's privacy rights. Privacy rights are important, but not compelling.  Second, the end here in the constitutional means-end analysis cannot be effectuated through restricting the Plaintiff's speech. Doe's name is already public.  Moreover, is the Court going to enter a permanent injunction against the Plaintiff? If not, how is the ostensible privacy interest adequately protected?  The Court will not do a vain or futile thing.

As Her Honor correctly pointed out in the last hearing, it seems there is nothing stopping the Plaintiff from withdrawing the case and identifying Doe in any manner in which he chooses.  Therefore, **the Defendants in this case are asking this Court to make the Plaintiff's right to access the Court *contingent* on waiving his First Amendment rights.**  This is a critical point that the Court recently raised.

No criminal defendant ever has such a choice.  They can't just withdraw. That is furthermore what distinguishes the gag order in this case from all criminal defendants.  The interests at stake are different on this aspect of the free speech issues.   No court in these United States has the power to enter such an illegal order, making one fundamental constitutional right contingent on waiving another, without some other compelling government interest at play.

## V.  DOE IS NOT A PLAINTIFF, NOR UNKNOWN DEFENDANT

There is no federal rule providing for a pseudonym.  The rules indicate

otherwise, like in FRCP 10(a) (requiring actual names in pleadings) and 17(a)(1)(requiring actual plaintiff's name) and 17(d)(a sometime exception, but just for public officials). The allowance falls outside of the rules, and should be construed **narrowly** because it is not a provided for form of relief, and because the relief impedes the public's fundamental right to know about what happens in court.

These Defendants have asked this Court to expand the right to proceed under a pseudonym. They cite cases where a *plaintiff* proceeds under a pseudonym—the case might not be brought otherwise, and thus pseudonymity protects access to the courts. They also cite cases involving unknown defendants sued by a public figure plaintiffs—*Denrite*-type cases. Individuals do have a fundamental right to criticize the government, which a court must protect, and so anonymity is a fundamental right in such cases, unlike this case.

They curiously cite *Strike 3 Holdings, LLC v. Doe*, 3:22-CV-303 (KAD)(March 9, 2022) (2022 WL 1050340). Unlike this case, that case involved information about an anonymous defendant, **whose identity was not known to the plaintiff**, and concerned information obtained through discovery. It is well-established that information passed through discovery can be restricted in its dissemination. That is a function of the court's regulation of the discovery process, and it protects both that process and encourages parties to engage in the semi-cooperative process. This case does not involve an individual not known to the plaintiff or not known to the public, and does not involve an identity obtained through discovery.

On page 20, Doe strangely cites *Plaintiff B. v. Francis*, 5:08-cv-79 (March 2, 2011)( 2011 WL 809610). Doe claims that this is the magic case that the Plaintiff

has been ignoring.  There is nothing remarkable about the case.  Again, the anonymous party in that case was the plaintiff, **not the defendant**.  As explained above, the interests are different from the present case.  That plaintiff in that case identified the defendant by name, and asked for permission to proceed under a pseudonym as a plaintiff.  This is done sometimes, but there are no cases where a previously-known defendant obtains a judicially enforced gag order against a plaintiff as to the defendant's identity, nor a case where such a previously known defendant obtains a right to proceed under a pseudonym as a defendant.  There are no cases like the present one.

The present case is not analogous to any cases cited by the Defendants.  They want the Court to make a new rule.

## VI.   COUNSEL FOR DOE'S EXTRAJUDICIAL BADGERING OF A COURT REPORTER  SHOULD NOT BE REWARDED

Doe submits an exhibit at CM/ECF 186 where with a partial redaction of the criminal transcript.  They also submit an email from a court reporter asking that a prior copy of the transcript be destroyed.  This exhibit is **absolutely fascinating** for a number of reasons.

First, it is plain that **at least** until July 17, 2024, Doe's name was publicly available in the transcript from the Superior Court.  Regardless of whether that was an error—which it was not—it was publicly available.

Second, no doubt the reporter is a lovely human being, and a hardworking individual.  An Official Court Reporter II, however, is probably not an attorney, and is certainly not a judge.  Doe submits no authority that § 54-86e applies after an

acquittal.

Third, because Doe elects not to include the full email discussion, it is also not clear whether the reporter was informed that the case resulted in an acquittal. It is not clear whether that would affect her opinion on the transcript.

Fourth, it is clear that Doe independently demanded the Court Reporter change the transcript.   Cleverly for Defendants, once again, they dodge due process.  There was no chance for the Plaintiff to be heard on the issue.  However troublesome for the Defendants, due process is a fundamental right.

Sixth, the court reporter's statement is furthermore inadmissible hearsay. Counsel for Doe knows this but submits it regardless, without any pretense at a hearsay exception or exemption.  The statement was not created in the ordinary course of business.  It was created due to an exceptional incident.  It is also not a legal opinion from which this Court may take judicial notice, and neither the Plaintiff nor the Court can immediately verify the veracity or authenticity of the document.

Inasmuch as Doe claims that this is evidence that the transcript identifying Doe by name is a mistake . . . .  No.  Just because counsel for Doe can cajole a lone court reporter into altering a transcript does not mean it should have been so or that the alteration was lawful.  Certainly, the Court should not reward such extrajudicial badgering of court staff.  Is the Plaintiff's remedy to explain to the court reporter why she was wrong? That would seem to be the case, if what Doe's counsel did was proper.  Doe could have sought a declaratory judgment or perhaps filed a motion in the criminal case.  But, you see, those options would have required due process for

9

the Plaintiff.  It would have required allowing the Plaintiff to be heard and to raise sound points of law.  How inconvenient?  So Doe elected for the option where the Plaintiff could not be heard.

## VII.   GENERAL STATUTES § 54-86e DOES NOT APPLY NOW

The jury of his peers acquitted Mr. Khan.  Mr. Khan is innocent.  Doe never brought a civil suit alleging she was a victim of sexual assault.

There are no findings of fact before any court indicating that Doe is a victim of sexual assault by Mr. Khan.  To the extent that § 54-86e once applied, Doe cites no authority that she is still, legally, a victim of sex assault after an acquittal.

## VIII.  NO EVIDENCE OF DANGER

If Doe wants to claim she has received death threats, Plaintiff has a right to cross examine her on the issue.  If Doe's fear is based on logic and reason, Plaintiff has a right to question and examine those reasons.

Doe claims that the Plaintiff cannot renege on his claim that Doe will be subject to "pillorying." "Pillorying" means ridicule.  It does not mean threats to physical safety.

Sure.  Doe may be subject to ridicule.  She may be offended.  She may be very offended and aghast at what people say.  Neither offense nor ridicule are ever enough to suppress speech.  Protection from ridicule or offense are never anything close to a compelling interest.

Doe has made public claims against the Plaintiff.  Through counsel, Doe continues to make these claims.  The Plaintiff was acquitted of the criminal charges against him, and Doe never sought judicial relief through a lawsuit for what she

claims the Plaintiff did.

When Doe made the claims she did, she chose to enter public discourse.  She did not have to make those claims.  She does not have to continue to make those claims through counsel. Like those offended by Cohen's offensive jacket, in entering public discourse, she has given up her right to not be offended by responses. *See Cohen v. California*, 403 U.S. 15, 21, 91 S. Ct. 1780 (1971).  She is certainly not entitled to use the Court system to silence her critics, including the Plaintiff, who seeks to salvage his reputation.

If the Plaintiff says something false about Doe, Doe's remedy is to sue him in defamation.  Doe does not have the right to silence the Plaintiff because she might be subject to ridicule or offense, i.e. "pilloried."

## IX.   DANGER IN EXPANDING PSEUDONYMITY AND PRIOR RESTRAINTS

Let us assume this Court upholds this order.  How will this Court rule when, inevitably, a criminal defendant seeks a gag order on the United States Attorney's Office from identifying his name?  The federal government doesn't even have a fundamental right to speak to protect itself from such an order.  And, unlike Doe, a criminal defendant does have a fundamental right to the presumption of innocence. A criminal prosecution is devastating to privacy interests.  It seems a fortiori such an injunction restricting the United States Attorney's Office should be granted.

Attorney Dominic Gentile's case presents a helpful reminder.   Attorney Gentile spoke because he was concerned that unless some of the weaknesses in the State's case were made public, a potential jury venire would be poisoned.  What if

instead Attorney Gentile could have simply restrained the government from identifying his client at all, to protect his client's privacy interests?  Under the Defendants' reasoning, it seems that the Court would have to enjoin the government from identifying such a criminal defendant at all.

In other words, there are sound reasons why there are no cases with the same procedural posture on point for what Doe seeks, and this Court should not expand on the limited exceptions that exist to a case that is not analogous.

## X.  THE COURT SHOULD DISREGARD THE AD HOMINEM ATTACK

Undersigned takes particular issue with the accusation that he acted in derogation of his duty of candor to the tribunal.  This claim is made at pages 21–22. Undersigned takes his duty of candor to the tribunal extremely seriously. He also, genuinely, did not have access to documents, the facts of which issue are well described in other filings and do not occasion repetition here.

If Doe's counsel is serious in the claim that undersigned has made an intentional misrepresentations to the Court, the matter should be reported to the bar authorities for a violation of the duty of candor as well as violations of various aspects of CT RPC 8.4. Indeed, if the accusation is genuine, Doe's counsel has an affirmative duty to report undersigned.  If, instead, Doe's counsel is only raising the claim as a cheap ad hominem attack, the Court should not find it persuasive. Regardless, the claim is not appropriately raised here.

## CONCLUSION

For the foregoing reasons, the Court should sustain the objection to the Order by Judge Garcia, CM/ECF No. 119.

Respectfully submitted,

SAIFULLAH KHAN

AUGUST 7, 2024 _/s/ Mario Cerame ct30125_
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## **CERTIFICATION**

I hereby certify that on AUGUST 7, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/
Mario Cerame