## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KHAN | : | |
| v. | : | 3:19-cv-1966  (KAD)(MAG) |
| YALE UNIVERSITY et al. | : | OCTOBER 17, 2024 |

### EMERGENCY MOTON TO VACATE ORDER, OR,
### IN THE ALTERNATIVE, FOR LIMITED STAY OR LIFT OF ORDER

On October 16, 2024, this Court denied without prejudice Plaintiff's motion for limited stay or lift of the order restricting speech. *See* ECF No. 204. Among other things, the Court ordered that any renewed motion should provide case law and analyses in support of Plaintiff's request.  The Court furthermore ordered that Plaintiff should address arguments by Doe in her responsive pleading.  *See* ECF No. 203.  This motion endeavors to respond to that Order.

Given the mortal danger posed to Plaintiff, and the exceptionally tight deadline for compliance with DHS, Plaintiff has erred on the side of being more complete to the extent possible under the circumstances.  In his initial motion, Plaintiff incorporated by reference arguments previously raised as to constitutionality.  See ECF No. 201 at 2–3.  Plaintiff understands from ECF No. 204 that this was inadequate briefing, and corrects that here.

Given the ongoing harm caused by the Order Restricting Speech, including that Plaintiff must now defend his presumptively protected speech as lawful, Plaintiff also seeks a vacatur of the order restricting speech.  The legal analyses as to both forms of relief sought are substantially the same.

For the following reasons, the vacatur should be granted.  In the alternative,

the order restricting speech at ECF No. 119 should be temporarily stayed or lifted

in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

## I. OPERATIVE FACTS

### A. Procedural Facts Underlying the Motion

In summer, 2016—eight years ago—Plaintiff applied for asylum.  Plaintiff

formerly lived in a refugee camp before coming to the U.S.  Plaintiff faces likely

execution if he is deported to his native country of Afghanistan.

On June 19, 2024, this Court entered an order restricting Plaintiff's speech.

See ECF No. 119.  Specifically, this Court ordered that:

> I further ORDER that Plaintiff directly or indirectly (including
> through his counsel) is prohibited from publicly disclosing or revealing
> Jane Doe's identity, including but not limited to on any social media
> platform.

The Court's order restricting speech is **permanent**.  Even if Plaintiff voluntarily

dismissed this case pursuant to FRCP 41(a)(1), even if the case were adjudicated to

judgment on the merits, the order restricting speech would still be in effect.

On or about October 7, 2024, Plaintiff received a letter from DHS, dated

October 3, 2024, that is the genesis of the present motion.   The letter directs the

Plaintiff as follows:

> Please submit the following additional documentary evidence.
>
> 1. You testified that you were arrested in Connecticut 2015 and that a
>    criminal trial resulted in a Not Guilty Verdict.  Please submit a
>    certificate of disposition regarding your case in criminal court and the
>    official transcript from the court.
>
> 2. You testified that you had a protection order filed against you in
>    Dearborn, Indiana that you were able to check online.  Please provide
>    documentation of this protection order.

Response to these requests will violate the order of this Court restricting Plaintiff's speech by disclosing Doe's identity directly or indirectly.

On November 2, 2021, Plaintiff was interviewed by DHS, one of a number of such interviews that has occurred over the years.  At that time, Plaintiff submitted these same three documents identified above to DHS.  Plaintiff was supposed to receive a decision concerning the interview within 45 days of that interview.  He did not receive a decision.  Instead, almost three years later, he received the DHS letter, requesting that he submit the same documents again.

On October 8, 2024, Plaintiff filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201.  .

On October 16, 2024, this Court denied the motion without prejudice:

> The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.

Undersigned did not have access to the disposition or the protective order until yesterday because he is not Plaintiff's immigration attorney.

## B.  Documents at Issue

Only the official transcript identifies Doe by name.  Neither the certified disposition nor the document concerning the protective order identify Doe.

The transcript identifies Doe by name more than 500 times, consists of some ~1800 pages, and contains biographical information about Doe that would indirectly reveal her identity.  There is no dispute that the unredacted transcript had been

3

publicly available as the only available official transcript for years.

## C. Fraught Nature of Immigration Proceedings

1. <u>The High Stakes Nature of Proceedings Before the Agency</u>

The alien has the burden of proof. *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991). Asylum is discretionary. Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien. *See id.* at 191–92. The alien generally must adduce more than mere testimony, with objective, corroborating evidence. *See id.* "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020). Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned. *See, e.g.*, *Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons). All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr*, *supra,* 838 F. App'x 30 serves as a cautionary tale. Nikpay

testified to prior physical abuse he suffered from the Taliban, and threats against his life.  But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum.  Nikpay was of the Hazara ethnicity.  "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34.  The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

      2.  <u>Reliance on Advice of Counsel</u>

Plaintiff believes that his best course of legal action is to rely on advice of immigration counsel and submit the requested documents as he submitted them in 2021.  Not modified versions—the same documents.  Plaintiff has provided as exhibits the documents in exactly the format he intends to submit to DHS.

      3.  <u>Mortal Danger Posed by Non-Compliance with DHS Request</u>

The disclosure in this case is necessary to comply with the request of DHS.  If Plaintiff does not comply he may be deported, where he faces execution.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g.*, *Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), modified on reh'g, 95 F.4th 151 (4th Cir. 2023),(highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr*, *supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir.

2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Plaintiff is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child).  The Plaintiff's fear is rational.

## II. THE COURT SHOULD VACATE THE ORDER RESTRICTING SPEECH AS UNCONSTITUTIONAL

### A.  Relevant Legal Standard

"The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).  The burden is on Doe to show the speech restriction is lawful.

> A judicial order forbidding certain communications when issued in advance of the time that such communications are to occur is generally regarded as a prior restraint . . . and is **the most serious** and **the least tolerable** infringement on First Amendment rights . . . . **Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification** . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26, 2009)(emphasis added)(citations and internal quotation marks omitted).  The prohibition on prior restraints is so ancient that it predates the republic.  *See* William Blackstone, Commentaries 4:151[1] (liberty of the press consists in laying no previous restraints upon publications)(1769).  This cornerstone of free speech has been reaffirmed time and time again by the Supreme Court[2]—and even popular culture[3].

The standard of review applied to prior restraints is the same as for content-based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a strict test. . . .  Under the strict-scrutiny test, a content-based restriction may be upheld if the restriction serves a compelling governmental interest, is *necessary* to serve the asserted [compelling] interest . . . is precisely tailored to serve that interest, and is the least restrictive means readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations omitted; internal quotation marks omitted; emphasis retained); see also *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880 (S.D. Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press

---

[1] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[2] See, e.g., Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is . . . clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91 S.Ct. 2140 (1971) (per curiam).

[3] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last accessed October 16, 2024).

under the First Amendment, and must pass muster under well-established constitutional case law.").

Because the restriction on Plaintiff's speech is presumptively invalid, the very heavy burden is on Doe to show the speech restriction at issue in this instance is lawful.

## B. What Law to Apply to the Motion

The Court has crafted an order that is *sui generis*. Undersigned can locate no case law concerning gag orders in this context. Undersigned is unable to find a case like the present, in civil or criminal law, where a defendant whose identity is *known prior to litigation* is able to obtain a gag order restraining a plaintiff or prosecutor from revealing the defendant's identity.

None of the contexts where gag orders otherwise appear apply here. This is not information obtained through discovery, so the law concerning protective orders does not apply[4]. The Court did not treat the order as a preliminary injunction—there were no findings or balancing of the equities as to that effect—so the law concerning preliminary injunctions does not apply. There was no judgment after a trial on the merits, so the law concerning a permanent injunction does not apply. There is no allegation that the documents at issue were obtained illegally[5]. This is

---

[4]*See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S. Ct. 2199, 2206–07, (1984) ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been **obtained through pretrial discovery**" [emphasis added]).

[5] *Compare with In re Zyprexa Litig.*, No. 07-CV-0504 (E.D.N.Y. Mar. 1, 2007)(2007 WL 669797), *and aff'd sub nom.* Eli Lilly & Co. v. Gottstein, 617 F.3d 186 (2d Cir.

not a criminal case, and there is no ongoing criminal prosecution to provide a compelling interest, so the law concerning pretrial publicity in the criminal law context does not apply.  This is not an instance where a public figure plaintiff seeks to unmask the identity of actually unknown speakers, so the legal doctrine exemplified in the seminal *Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001) does not apply.  This is not a contempt proceeding, so the law concerning civil or criminal contempt does not apply.  None of the federal rules provide authority to provide any party with pseudonym.  None of the federal rules provide a mechanism to enjoin a plaintiff from identifying a defendant.

There is no law on point to provide for the order the Court has entered, let alone any law to consider how such an order may be modified or when it may be vacated.

The Court should, however, apply the usual standard for prior restraints. The restriction on Plaintiff's speech is presumptively invalid.  The party seeking to justify the restraint—Doe—bears the very heavy burden to show the speech restriction at issue here is lawful and satisfies the unusually searching scrutiny applied to prior restraints.

At the time the Court enjoined speech, there is no evidence in the record that the Court, Plaintiff, or any Defendant contemplated that the order could pose a danger to Plaintiff's life, or interfere with a directive from DHS in a confidential

---

2010) ("The injunction is justified not by reference to the content of the covered documents, but rather by their **unlawful acquisition**." [emphasis added] ).

proceeding.  Plaintiff had not heard from DHS in three years and had already submitted the documents at issue to DHS.  Accordingly, at the time when the anonymity was litigated, he had no reason to believe this could be an issue. The Court should therefore revisit its order considering this unforeseen change in circumstances.

### C.  No Compelling Interest Shown

Neither Doe, nor Yale, nor this Court, nor the District Court, have **ever** articulated a compelling interest in support of the gag order.  History indicates that there is no compelling interest in preventing the dissemination of truthful information that was already in a public court record.  Accordingly, the order restrict speech is unconstitutional and should be vacated.

### D.  The Order Cannot be Squared With *Cox* or *Florida Star*

The order threatens Plaintiff, prepublication, with punishment for his protected speech.  This order is unconstitutional under both *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989).  *Cox* has been settled law for almost a half-century.  The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident.  *Id.* at 471.  The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia.  *Id.* at 471–72.

The victim's name appeared in indictments.  *Id.* at 472.  The indictments

were public records available for inspection.  *Id.* at 472–73.  A reporter learned the victim's identity through these public records and broadcast a report that named the victim.  *Id.* at 473–74.  The report was repeated the following day.  *Id.* at 474.

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name.  *Id.* at 474–75.  Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475.  The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern.  *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489.  Nonetheless, the Court concluded that a state **may not** "**impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* T 2/26/18 at 35.  Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started.  Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and

11

hear what transpired can report it with impunity. There is no special
prerequisite of the judiciary which enables it, as distinguished from other
institutions of democratic government, to suppress, edit, or censor events
which transpire in proceedings before it . . . .

*Cox* at 492–93.  The Plaintiff participated in proceedings, and he can speak and

communicate about those proceedings.  He can submit a transcript of those

proceedings where that transcript has been the official transcript of the Superior

Court.  This includes identifying Doe, by name, as Doe herself did in open court.

This case is based on falsities about Plaintiff.  There is no right to privacy for

making false allegations against Plaintiff.  If Doe's accusation is false, Plaintiff has

every right to publish the truth, including identifying Doe, in order to salvage his

reputation:  that Doe lied about him, and to identify Doe's name, especially using

documents that are in the public record.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded

on *Cox*.  In *Florida Star*, Florida had a law that made it illegal to print, publish, or

broadcast the name of a victim of a sexual offense. *Id.* at 526.  The Florida Star

published the name of *B.J.F.* in a police blotter by mistake.  *Id.* at 527.  This was in

violation of the Florida Star's own policy of not publishing the name of sex assault

victims.  *Id.* at 528.  B.J.F. filed suit sounding in negligence.  *Id*.  The trial court

directed a verdict as to negligence *per se* in favor of B.J.F.  *Id.* at 529.

The Supreme Court held that punishing the publication was

unconstitutional.  "[W]here the government has made certain information publicly

available, it is highly anomalous to sanction persons other than the source of its

release." *Id.* at 535.  The "source" of the release in this case is the Connecticut

Superior Court, not the Plaintiff.  See T 2/26/18 at 35.  "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

The Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, accused the Plaintiff of sexual assault.  That is in the public record.  The information in the transcript had been publicly available for years, and this order restricts the dissemination of that protected speech.  This order restricts Plaintiff's lawful speech, threatening him with sanctions for such protected speech.  Accordingly, the order restricting speech is unconstitutional and should be vacated.

### E.  The General Statutes § 54-86e Claim is Meritless

Doe essentially claims *Cox* and *Florida Star* do not apply because the official

transcript should be redacted pursuant to Connecticut General Statutes §52-86e, and thus Doe's identity should not be public.  Doe points to the fact that counsel for Doe and Yale convinced a court reporter—not a judge—to redact a page of a transcript. The claim is meritless.

This statute falls under Chapter 961 of the General Statutes.  Chapter 961 is entitled "Trial and Proceedings After Conviction." General Statutes §52-86e provides, in relevant part:

> The name and address of the victim of a sexual assault under [various enumerated crimes] and such other identifying information pertaining to such victim as determined by the court, shall be confidential and shall be disclosed only upon order of the Superior Court, except that (1) such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses, and (2) if a protective order is issued in a prosecution under any of said sections, the name and address of the victim, in addition to the information contained in and concerning the issuance of such order, shall be entered in the registry of protective orders pursuant to section 51-5c.

There is no dispute that the criminal proceeding at issue resulted in an acquittal. *See* Certificate of Disposition at 2.

Chapter 961 concerns "Trial and Proceedings After Conviction." The trial is over, and there was no conviction.  Undersigned can find no authority in statute or case law or section of the Connecticut Practice Book that stands for the proposition that §52-86e applies after an acquittal.  General Statutes §52-86e does not apply to the official transcript.

Doe submits an exhibit at ECF No. 186 with a partial redaction of the criminal transcript on a single page.  Doe also submits an email from a court reporter asking that a prior copy of the transcript be destroyed.  The exhibits

undermine Doe's claim.

First, it is plain that **at least** until July 17, 2024, Doe's name was publicly available in the transcript from the Superior Court. Regardless of whether that was an error as Doe claims—which it was not—the identity had been publicly available in the official transcript available from the Superior Court for six years' prior.

Second, no doubt the reporter is a very good person and good at her job. An Official Court Reporter II, however, is probably not an attorney, and is certainly not a judge. Doe submits no authority that §54-86e applies after an acquittal.

Third, because Doe elects not to include the full email discussion, it is also not clear whether the reporter was informed that the case resulted in an acquittal. It is not clear whether that would affect her opinion on the transcript.

Fourth, it is clear that Doe demanded the Court Reporter change the transcript by dodging due process. There was no chance for the Plaintiff to be heard on the issue of the applicability of §52-86e. This was by design—there was no attempt to bring this issue to Plaintiff's attention. This was a planned ambush.

Just because counsel for Doe can cajole a lone Court Reporter into altering a transcript does not mean it should have been so or that the alteration was lawful. The Court should not reward such extrajudicial badgering of court staff. Is the Plaintiff's remedy to in turn explain to the court reporter why she was wrong? The reporter should be being subject to an email tug-of-war between counsel? No.

Doe *could* have intervened and filed a motion in the criminal case. But that would have required due process for the Plaintiff. It would have required allowing the Plaintiff to be heard and to raise sound points of law, like that the chapter

15

where §52-86e appears only concerns trials and post-conviction proceedings—not post-acquittals.

Fifth, the Court Reporter's statement is furthermore inadmissible hearsay. It is also not a legal opinion from which this Court may take judicial notice. The document is not self-authenticating, so neither the Plaintiff nor the Court can verify the authenticity of the document based on the submission alone. The statement was not created in the ordinary course of business. It was created due to an exceptional incident.

The jury of his peers acquitted Plaintiff. Doe never brought a civil suit alleging she was a victim of sexual assault. There are no findings of fact before any court indicating that Doe is a victim of sexual assault by Plaintiff. The false allegations are a major basis for the present lawsuit. Plaintiff has a right to speak about the harm to his reputation caused by Defendants, including by confronting the false accusations against him and their source. The Court does not have the power to censure him for that, as the order provides, and therefore the order is unconstitutional and should be vacated.

## F. The Order is Underinclusive

It is not clear what compelling interest is used to justify the order. Plaintiff is reticent to engage in a strawman analysis as to what he imagines the interest may be. Nonetheless, assuming the interest concerns Doe's identity, the order is grossly underinclusive.

"[U]nderinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or

16

viewpoint. . . In a textbook illustration of that principle, [the Supreme Court] invalidated a city's ban on ritual animal sacrifices because the city failed to regulate vast swaths of conduct that similarly diminished its asserted interests in public health and animal welfare." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543–547, 113 S.Ct. 2217 (1993).  Underinclusiveness can also reveal that a law does not actually advance a compelling interest. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 448–49, 135 S. Ct. 1656 (2015)(citations and internal quotation marks omitted).

The order is plainly underinclusive.  Doe's identity has been public for years before the order.  Plaintiff already submitted the documents at issue in 2021.  These disclosures cannot be prevented by an order of this Court.  Furthermore, there are other public sources that identify Doe—including the publicly available transcript. If the issue concerning Doe's identity were truly a compelling interest, this Court would, for example, enjoin the Superior Court from disclosing Doe's identity through the official transcript. Doe's name continues to be used on social media by a number of individuals.  If the interest were compelling, the Court would enjoin *anyone* from mentioning her name—not just Plaintiff.  This suggests that the actual interest in the order concerns Plaintiff and Plaintiff's viewpoint rather than a genuine compelling interest.

### G. The Order is Vague

The Plaintiff believed the order only prohibited speech that identified Doe, directly or indirectly.  The Plaintiff believed that no other speech was prohibited. The Court's order that Plaintiff should produce those documents that disclose Doe's

name undermines this supposition.  Plaintiff *stipulated* that responding to the letter from DHS would disclose Doe's identity and violate the order. There is no fact question on that point.

The only rational reason to review the documents for the purposes of the request to lift the order would be because the order prohibits something more than just disclosing Doe's identity, directly or indirectly.  There was no question of fact that responding to the DHS letter would violate the order by disclosing Doe's identity.  Although the order apparently applies to facts beyond disclosures of Doe's identity, the order does not provide adequate notice to a reasonable person as to what else is prohibited.  The order is therefore vague.

## III.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT REQUEST FOR LIMITED STAY OR LIFTING THE ORDER

As detailed above, the Court should vacate the order restraining speech as unconstitutional on its face.  A fortiori, the Court should grant the limited stay or lift of the order so that Plaintiff can engage in his constitutionally protected speech in response to the DHS Letter and in furtherance of his interest in protecting his life.  In particular, under *Cox* and *Florida Star*, this Court cannot punish Plaintiff for disclosing Doe's identity through documents that had been part of the public record for years.

## IV.  WHY THE DISCLOSURE IS NECESSARY

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address why it is necessary to disclose Jane Doe's full name and/or first name . . . ." DHS has directed Plaintiff to provide the "official transcript."  Not a

18

redacted transcript.  Not a transcript with an asterisk next to it.  Not a transcript that an adversary claims is adequate.  Not a transcript that an Article III judge says is adequate.  The official transcript.

That official transcript contains Doe's first name hundreds of times, and her last name a handful of times as well.  Because complying with the DHS request requires the official transcript, it requires transmitting this information to DHS.

Plaintiff has explained that these immigration proceedings are high stakes affairs.  Plaintiff has pointed out that "[e]ven a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland, supra*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).  Plaintiff has pointed out that errors in by the agency may not be reviewable because of the deferential standard of review. Plaintiff has pointed out that if he is deported, he faces **execution** by the Taliban in Afghanistan.  Plaintiff has identified other cases such that his fears are not unique.

In order to best protect his life, Plaintiff must fully comply with the request by DHS without exception, being consistent with his actions in 2021 when he submitted the same documents.  This means providing DHS with the official transcript, which in turn means disclosing Doe's full name as contained in that official transcript.

## V.  OTHER CLAIMS BY DOE

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address the other arguments raised by Jane Doe in her responsive

pleading." However irrelevant some of these claims by Doe may be, in this section, Plaintiff endeavors to comply.

### A.  Plaintiff's Alleged Misconduct and Inadequate Briefing by Doe

Doe alleges prior misconduct. The issue concerning dismissal is still before the District Court. There is no judgment on those issues.

Doe apparently raises the claims of misconduct to ask the Court to punish Plaintiff. If the Court seeks to punish Plaintiff for violating a court order, that involves the doctrine of criminal contempt. "Civil contempt differs from criminal contempt in that it seeks only to coerc[e] the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011)(internal quotation marks omitted).

"In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987). This requires among other things, that the Court appoint "a disinterested prosecutor." *Id.* at 808. "[D]efendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves . . . must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses . . . must be given a public trial before an unbiased judge . . . and must be afforded a jury trial for serious contempts . . . ." *Id.* at 798–99; *see also* Fed. R. Crim. Proc. 42. Doe's briefing is inadequate to invoke criminal contempt proceedings. It's just mud-slinging, divorced and unattached to a legal standard or doctrine.

### B. Documents at Issue

First of all, this is not a discovery motion.  Doe sought—and obtained—a remedy ordinarily reserved for a Rule 37 Motion to Compel.  Such a motion normally would be premature at this point.  Discovery is ongoing.  For example, **Doe still has not produced a single document in discovery.** Doe's claims in this section amount to "discovery for me but not for thee."  They were not good-faith arguments. They were legerdemain, and they worked.

Plaintiff acquiesced not because it was procedurally just, but because he cannot afford a misfire as his life is actually at risk. Discovery issues should have been handled according to the FRCP and Local Rules governing discovery—not on an ad hoc basis as was done on this motion. The interest at stake underlying Plaintiff's demurrer on the informal motion to compel by Doe is the same reason Plaintiff must submit the unredacted official transcript to DHS.  The stakes are too high.

Plaintiff conceded that disclosure would violate the order. Undersigned did not have the documents at issue and mistakenly believed that two documents would violate the Court order.   As explained above, undersigned is not Plaintiff's immigration attorney and undersigned did not need to review the documents to concede the disclosure.  If the order restricting speech only prohibits Plaintiff from disclosing Doe's identity, it should have been enough to concede compliance with the DHS request violates the order.  No further factual analysis is necessary—if that is truly what the order prohibits.

### C. Attorney Gooley's legal advice to Plaintiff is unethical, uninformed,

**unintelligent, unsupported, and unwanted**

On Pages 6–7 in particular, but smatteringly throughout, Attorney Gooley proffers his legal advice to Plaintiff as concerns the official transcript. None of his conduct here was understood to be made in good faith.

In this case, Plaintiff has been advised by his retained immigration counsel to submit the same documents he submitted in 2021. **No one** should interfere with that representation.

Attorney Gooley claimed on page one of Doe's objection that he "explained how Plaintiff could respond to the USCIS Request without revealing Jane's name, and asked Plaintiff to agree to do so."

First, contrary to what Attorney Gooley represents, Attorney Gooley never conferred with Plaintiff's immigration attorney about this issue. Undersigned is not an immigration lawyer and specifically not Plaintiff's immigration lawyer.

Second, Attorney Gooley provides no case law, no evidence, no expert testimony, no law review article, no regulation, no statute, no authority whatsoever that his proposition would satisfy DHS.

Third, Plaintiff does not have, nor has he ever seen, nor does he believe there exists, nor does he believe it is lawful for the Superior Court reporter's office to provide, a version of the transcript that redacts Doe's name throughout. This issue is already discussed fully above.

Fourth, *even if there were* such an altered version of the official transcript in Plaintiff's possession or control, Plaintiff would *still* violate the order by submitting such an improperly redacted transcript to DHS. The order mandates that Plaintiff

cannot reveal Doe's identity directly *or indirectly*, including through counsel.  Even an improperly redacted transcript will indirectly reveal Doe's identity.  There is an enormous amount of biographical—and even *biological*—information about Doe in the transcript, spread across hundreds of thousands of words.  *See, e.g.*, T 2/26/18 at 36–38, 40, 41, 50.  Doe's name is used more than 500 times in the official transcript across some 1800 pages, and information in the transcript context to such redactions will make it possible to identify Doe.

Fifth, Doe knows that her name was used hundreds of times at trial.  She knows that in context, even a transcript that redacts her name will indirectly reveal her identity.  Doe's counsel similarly knows that mere redactions are inadequate to obscure Doe's identity in the official transcript.  The redactions argument was a bad-faith argument, in part to harass Plaintiff and in part to circumvent the discovery process and obtain desired documents out-of-order, an impromptu motion to compel without the showings and procedures required under Local Rule 37.  The strategy worked because Plaintiff's life is actually at risk, and Doe has yet to produce a document herself.

Sixth, DHS is not a party to this action.  Attorney Gooley does not attest to having conferred with the agency or anyone else as to standards, practice, or institutional culture around these issues.  DHS may be of a very different mind than Attorney Gooley about whether modified documents are adequate, or whether DHS must as a matter of law accept such documents, where there are no court orders from a court of competent jurisdiction concerning the adequacy of the transcript, or whether an improperly redacted transcript can serve as a substitute

for an actual official transcript.

Seventh, Attorney Gooley owes no duty of loyalty to Plaintiff, and his armchair-immigration-lawyering is grossly improper and violates the spirit if not the letter of the CTRPC prohibiting legal advice to an adverse party.

Undersigned is not an immigration lawyer and will not interfere with the needs of that representation.  Neither should Attorney Gooley be doling out legal advice to Plaintiff about how Plaintiff should handle his immigration case, especially when the case presents one of mortal peril.

**Plaintiff's life is at risk**. Attorney Gooley's legal advice to Plaintiff about how Plaintiff should conduct his immigration case is unethical, uninformed, unintelligent, unsupported, and unwanted.

## VI.  REVIEW

The Court previously misstated the standard of review for orders in this context.  Rule 72.2 provides, in relevant part (emphasis added):

> In matters determined by the Magistrate Judge for the Court, such as under Rule 72.1(C)(2) or (4), supra, the reviewing Judge on timely objection shall set aside any order found to be clearly erroneous **or contrary to law** . . . .

In ECF No. 119 at page 15, this Court previously omitted the phrase, "or contrary to law" in setting forth the standard of review.  This omission left only the "clear error" review applied to factual determinations and is silent on the standard of review of for determination of legal issues.  Plaintiff points out that such an order may also be reviewed if it is contrary to law.

## VII. EXIGENCY

The nature of the proceedings here are exigent as they implicate Plaintiff's life and liberty under a tight time frame.  Plaintiff respectfully requests the Court render judgment by Monday, October 21, 2024, so that he may file for emergency review or mandamus if necessary and still comply with the DHS letter.

## VIII.  CONCLUSION

For the foregoing reasons, the vacatur should be granted.  In the alternative, the order restricting speech at ECF No. 119 should be temporarily stayed or lifted in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

Respectfully submitted,

SAIFULLAH KHAN

OCTOBER 17, 2024        */s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## <u>CERTIFICATION</u>

I hereby certify that on OCTOBER 17, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I furthermore certify that a copy of every sealed exhibit to this motion was delivered electronically by other means, to wit, Microsoft Share Folder, to counsel of record for each Defendant.

/s/ _____
Mario Cerame