# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

IN RE: SAIFULLAH KHAN   : CoA No. _____

           : Trial Docket: 3:19-cv-1966 (KAD/MEG)

           : OCTOBER 21, 2024

## APPENDIX TO THE PETITION FOR WRIT OF MANDAMUS
## <u>DOCUMENTS THAT ARE NOT SEALED</u>

Docket.................................................................................................2

ECF No. 2 Motion for Permission to Litigate Against Doe
using Pseudonym...................................................................26

ECF No. 94 Transcript March 26, 2024................................................37

ECF No. 119 Order Denying Motion to Vacate Order Treating Jane Doe
Pseudonymously and Granting 103 Jane Doe's Motion to
Continue Anonymity. ...........................................................63

ECF No. 152 Objection to Order at ECF No. 119 pursuant to
Local Rule 72.2 ...................................................................79

ECF No. 154 Supplement to Local Rule 72.2 Objection.........................92

ECF No. 183 Yale Response to 72.2 Objection .....................................99

ECF No. 186 Exhibits Concerning Redacted Transcript by Doe ........102

ECF No. 201 Emergency Motion for limited stay of order at ECF 119
to allow response to Department of Homeland Security ...............109

ECF No. 203 Objection re ECF No. 201 by Jane Doe..........................115

ECF No. 205 Emergency Motion to Vacate Order restricting speech,
or, in the alternative, for limited stay or lift of order. ..................149

ECF No. 212 Response to Emergency Motion to Vacate Order
restricting speech Jane Doe. ...............................................175

ECF No. 213 Response to Emergency Motion to Vacate Order
restricting speech by Yale. ..................................................184

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:19-cv-01966-KAD

Khan v. Yale University et al
Assigned to: Judge Kari A. Dooley
Referred to: Judge Maria E. Garcia
Demand: $110,000,000
Cause: 42:1981 Civil Rights

Date Filed: 12/13/2019
Jury Demand: Plaintiff
Nature of Suit: 448 Civil Rights: Education
Jurisdiction: Federal Question

**Plaintiff**

**Saifullah Khan**

represented by **Kevin Murray Smith**
Pattis & Smith, LLC
383 Orange Street, First Floor
New Haven, CT 06511
203-393-3017
Fax: 203-393-9745
Email: kms@kevinsmithlaw.com
*TERMINATED: 07/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mario K. Cerame**
Brignole, Bush & Lewis
73 Wadsworth St.
Hartford, CT 06106
860-527-9973
Fax: 860-527-5929
Email: mario@brignole.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
Pattis & Associates, LLC
383 Orange Street
1st Floor
New Haven, CT 06511
203-393-3017
Fax: 203-393-9745
Email: npattis@pattislaw.com
*TERMINATED: 07/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander T. Taubes**
Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513
203-909-0048
Email: alextt@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

2

**Yale University**

represented by **Maria Laurato**
Carmody Torrance Sandak & Hennessey, LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
203-784-3157
Email: mlaurato@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Noonan**
Carmody Torrance Sandak & Hennessey LLP
Concept Park
741 Boston Post Road
Ste 306
Guilford, CT 06437
203-458-9168
Fax: 203-458-4424
Email: pnoonan@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
Carmody Torrance Sendak & Hennessey, LLP -
WTBY
50 Leavenworth St., PO Box 1110
Waterbury, CT 06721-1110
203-573-1200
Email: gweller@carmodylaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Salovey**

represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathon Halloway**

represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Marvin Chun**          represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joe Gordon**          represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Post**          represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark Solomon**          represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ann Kuhlman**          represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lynn Cooley**          represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Paul Genecin**          represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stephanie Spangler**        represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sarah Demers**          represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jane Doe**                    represented by    **Brendan Gooley**
                                                  Carlton Fields
                                                  One State Street
                                                  Ste 1800
                                                  Hartford, CT 06103
                                                  860-392-5036
                                                  Email: bgooley@carltonfields.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **James M. Sconzo**
                                                  Carlton Fields, P.C.
                                                  One State Street
                                                  Suite 1800
                                                  Hartford, CT 06103
                                                  860-392-5022
                                                  Fax: 860-392-5058
                                                  Email: jsconzo@carltonfields.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Carole Goldberg**             represented by    **Patrick M. Noonan**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Giovanna T. Weller**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Maria Laurato**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Persons**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/13/2019 | 1 | COMPLAINT against All Defendants ( Filing fee $400 receipt number ACTDC-5590669.), filed by Saifullah Khan.(Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 |   | Request for Clerk to issue summons as to All Defendants. (Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 |   | Judge Alfred V. Covello added. (Walker, J.) (Entered: 12/13/2019) |
| 12/13/2019 | 2 | MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name by Saifullah Khan.Responses due by 1/3/2020 (Pattis, Norman) Modified on 1/13/2020 (Gould, K.). (Entered: 12/13/2019) |

| 12/13/2019 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 2/11/2020. Discovery due by 6/13/2020. Dispositive Motions due by 7/18/2020. Signed by Clerk on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
|---|---|---|
| 12/13/2019 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER. Signed by Judge Alfred V. Covello on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 5 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 2 MOTION for Permission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name filed by Saifullah Khan, 1 Complaint filed by Saifullah Khan, 4 Electronic Filing Order, and 3 Order on Pretrial Deadlines. Signed by Clerk on 12/16/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 6 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University* with answer to complaint due within *21* days. Attorney *Norman A. Pattis* *The Pattis Law Firm, LLC* *383 Orange St., First Floor* *New Haven, CT 06511*. (Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 7 | MOTION for Permission to Litigate Claims Against Jane Doe using a Pseudonym in Place of her Actual Name - EXHIBIT by Saifullah Khan re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Pattis, Norman) Modified on 12/18/2019 to change to motion event/relief (Bozek, M.). (Entered: 12/16/2019) |
| 12/18/2019 | 8 | WAIVER OF SERVICE Returned Executed as to Paul Genecin waiver sent on 12/18/2019, answer due 2/16/2020; David Post waiver sent on 12/18/2019, answer due 2/16/2020; Yale University waiver sent on 12/18/2019, answer due 2/16/2020; Sarah Demers waiver sent on 12/18/2019, answer due 2/16/2020; Joe Gordon waiver sent on 12/18/2019, answer due 2/16/2020; Peter Salovey waiver sent on 12/18/2019, answer due 2/16/2020; Ann Kuhlman waiver sent on 12/18/2019, answer due 2/16/2020; Stephanie Spangler waiver sent on 12/18/2019, answer due 2/16/2020; Carole Goldberg waiver sent on 12/18/2019, answer due 2/16/2020; Mark Solomon waiver sent on 12/18/2019, answer due 2/16/2020; Jonathon Halloway waiver sent on 12/18/2019, answer due 2/16/2020; Lynn Cooley waiver sent on 12/18/2019, answer due 2/16/2020; Marvin Chun waiver sent on 12/18/2019, answer due 2/16/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 12/18/2019) |
| 01/02/2020 | 9 | Memorandum in Support re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name , 7 MOTION to Proceed in Fictitious Name filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Noonan, Patrick) (Entered: 01/02/2020) |
| 01/03/2020 | 10 | NOTICE of Appearance by Patrick M. Noonan on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University (Noonan, Patrick) (Entered: 01/03/2020) |
| 01/08/2020 | 11 | ORDER OF TRANSFER. Case reassigned to Judge Kari A. Dooley for all further proceedings. Signed by Judge Alfred V. Covello on 1/8/2020.(Bozek, M.) (Entered: 01/09/2020) |
| 01/10/2020 | 12 | ORDER granting 7 Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name without prejudice. Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action. Signed by Judge Kari A. Dooley on 1/10/2020. (Cahill, Leslie) (Entered: 01/10/2020) |

| | | |
|---|---|---|
| 01/24/2020 | 13 | WAIVER OF SERVICE Returned Executed as to Jane Doe waiver sent on 1/9/2020, answer due 3/9/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 01/24/2020) |
| 01/24/2020 | 14 | NOTICE of Appearance by James M. Sconzo on behalf of Jane Doe (Sconzo, James) (Entered: 01/24/2020) |
| 01/24/2020 | 15 | NOTICE of Appearance by Brendan Gooley on behalf of Jane Doe (Gooley, Brendan) (Entered: 01/24/2020) |
| 02/03/2020 | 16 | REPORT of Rule 26(f) Planning Meeting. (Noonan, Patrick) (Entered: 02/03/2020) |
| 02/05/2020 | 17 | Order on Pretrial Deadlines. The Court has reviewed the Parties' 16 Rule 26(f) Report. It is Approved, Adopted, and So Ordered, except that the Parties' Joint Trial Memorandum shall be filed in accordance with the deadlines and procedures set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **February 24, 2020.** The Defendants shall move to join additional parties by **February 24, 2020** and shall respond to the complaint by **March 24, 2020.** Discovery shall be completed by **February 26, 2021.** Dispositive motions, if any (see Local Rule 56(c)), shall be filed by **March 30, 2021.** The Joint Trial Memorandum shall comport with this Court's standing order, which will be separately docketed. The date for filing the Joint Trial Memorandum required by this Court's standing order shall be set by the Court after the close of discovery.<br><br>A telephonic status conference is scheduled for **March 5, 2021 at 10:00 A.M.**<br><br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | | Set Deadlines/Hearings:<br>Motion to Amend Pleadings due by 2/24/2020.<br>Discovery due by 2/26/2021.<br>Dispositive Motions due by 3/30/2021.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley.<br>Answer Deadlines Updated for All Defendants. Responsive pleading due 3/24/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 18 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 19 | STANDING ORDER ON JOINT TRIAL MEMORANDUM attached.<br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 03/04/2020 | 20 | NOTICE of Appearance by Kevin Murray Smith on behalf of Saifullah Khan (Smith, Kevin) (Entered: 03/04/2020) |
| 03/18/2020 | 21 | Consent MOTION for Extension of Time until April 7, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 03/18/2020) |
| 03/18/2020 | 22 | ORDER granting 21 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 3/18/2020. (Cahill, Leslie) (Entered: 03/18/2020) |
| 03/18/2020 | | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/7/2020 (Cahill, Leslie) (Entered: 03/18/2020) |
| 04/03/2020 | 23 | Second MOTION for Extension of Time until April 28, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 04/03/2020) |
| 04/06/2020 | 24 | ORDER granting 23 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 4/6/2020. (Cahill, Leslie) (Entered: 04/06/2020) |
| 04/06/2020 | | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/28/2020 (Cahill, Leslie) (Entered: 04/06/2020) |
| 04/24/2020 | 25 | ANSWER to 1 Complaint by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, |

| | | Stephanie Spangler, Yale University.(Noonan, Patrick) (Entered: 04/24/2020) |
|---|---|---|
| 04/28/2020 | 26 | MOTION to Dismiss by Jane Doe.Responses due by 5/19/2020 (Sconzo, James) (Entered: 04/28/2020) |
| 04/28/2020 | 27 | Memorandum in Support re 26 MOTION to Dismiss filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Affidavit Declaration of Brendan Gooley)(Sconzo, James) (Entered: 04/28/2020) |
| 05/12/2020 | 28 | First MOTION for Extension of Time to File Response/Reply *Unopposed* as to 26 MOTION to Dismiss until June 2, 2020 by Saifullah Khan. (Pattis, Norman) (Entered: 05/12/2020) |
| 05/12/2020 | 29 | ORDER granting 28 Motion for Extension of Time to File Response/Reply. Plaintiff's response is due on or before 6/2/2020. Signed by Judge Kari A. Dooley on 5/12/2020. (Cahill, Leslie) (Entered: 05/12/2020) |
| 05/12/2020 | 30 | Reset Deadline as to 26 MOTION to Dismiss . Response due by 6/2/2020. (Gould, K.) (Entered: 05/13/2020) |
| 06/02/2020 | 31 | Memorandum in Opposition *To Jane Doe's* re 26 MOTION to Dismiss filed by Saifullah Khan. (Pattis, Norman) (Entered: 06/02/2020) |
| 06/11/2020 | 32 | MOTION for Extension of Time until June 23, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/11/2020) |
| 06/12/2020 | 33 | ORDER granting 32 Motion for Extension of Time. Defendant's reply brief is due on or before June 23, 2020. Signed by Judge Kari A. Dooley on 6/12/2020. (Cahill, Leslie) (Entered: 06/12/2020) |
| 06/22/2020 | 34 | MOTION for Extension of Time until June 30, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/22/2020) |
| 06/22/2020 | 35 | ORDER granting 34 Motion for Extension of Time. Defendant's reply brief is due on or before June 30, 2020. Signed by Judge Kari A. Dooley on 6/22/2020. (Cahill, Leslie) (Entered: 06/22/2020) |
| 06/30/2020 | 36 | REPLY to Response to 26 MOTION to Dismiss filed by Jane Doe. (Sconzo, James) (Entered: 06/30/2020) |
| 10/07/2020 | 37 | MOTION for Extension of Time until 11/06/20 Discovery by Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 10/07/2020) |
| 10/08/2020 | 38 | ORDER granting on consent 37 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 10/8/2020. (Cahill, Leslie) (Entered: 10/08/2020) |
| 12/23/2020 | 39 | Joint MOTION for Extension of Time -- Modification of the Scheduling Order by Jane Doe. (Sconzo, James) (Entered: 12/23/2020) |
| 01/07/2021 | 40 | ORDER granting 26 Motion to Dismiss, for the reasons stated in the attached Memorandum of Decision. Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/07/2021 | 41 | ORDER. The parties shall appear for a telephonic scheduling conference to address their joint 39 motion to modify the Scheduling Order on 1/21/2021 at 10:00 A.M.<br>Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/07/2021 | 42 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Scheduling Conference set for 1/21/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/14/2021 | 43 | NOTICE OF APPEAL as to 40 Order on Motion to Dismiss by Saifullah Khan. Filing fee $ 505, receipt number ACTDC-6328789. (Pattis, Norman) (Entered: 01/14/2021) |
| 01/15/2021 | 44 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as |

| | | |
|---|---|---|
| | | noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 01/15/2021) |
| 01/21/2021 | 45 | Minute Entry for proceedings held before Judge Kari A. Dooley: Telephonic Scheduling Conference held on 1/21/2021. Total Time: 17 minutes(Court Reporter Tracy Gow.) (Gould, K.) (Entered: 01/22/2021) |
| 01/26/2021 | 46 | MOTION for Entry of Judgment under Rule 54(b) *in accordance with the Court's order in Dkt. 40* by Saifullah Khan. (Pattis, Norman) (Entered: 01/26/2021) |
| 02/05/2021 | 47 | ORDER granting 46 Motion for Entry of Judgment under Rule 54(b) and staying proceedings pending resolution of the Plaintiff's appeal. See attached Order. The Clerk of the Court is directed to enter a Judgment, pursuant to Rule 54(b), in favor of the Defendant Jane Doe. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/05/2021 | 48 | ORDER finding as moot 39 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/09/2021 | 49 | PARTIAL JUDGMENT entered in favor of Jane Doe against Saifullah Khan.<br><br>For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms<br>Signed by Clerk on 2/09/2021.(Gould, K.) (Entered: 02/09/2021) |
| 02/10/2021 | 50 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 02/10/2021) |
| 02/16/2021 | 51 | ORDER. In light of the stay of the proceedings pending resolution of the Plaintiff's appeal, the telephonic status conference scheduled for March 5, 2021 at 10:00 A.M. is canceled.<br>Signed by Judge Kari A. Dooley on 2/16/2021. (Cahill, Leslie) (Entered: 02/16/2021) |
| 09/01/2021 | 52 | Joint STATUS REPORT by Yale University. (Noonan, Patrick) (Entered: 09/01/2021) |
| 12/01/2021 | 53 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons. (Noonan, Patrick) (Entered: 12/01/2021) |
| 03/01/2022 | 54 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 03/01/2022) |
| 03/04/2022 | 55 | OPINION of USCA as to 43 Notice of Appeal filed by Saifullah Khan USCA Case Number 21-95. (Fanelle, N.) (Entered: 03/07/2022) |
| 03/11/2022 | 56 | Notice of Letter to Counsel, signed by Peter D. Keane, Assistant Clerk-Appellate of the State of Connecticut Supreme Appellate Court. (Freberg, B) (Entered: 03/11/2022) |
| 06/01/2022 | 57 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 06/01/2022) |
| 08/30/2022 | 58 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/30/2022) |
| 12/14/2022 | 59 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 12/14/2022) |
| 02/22/2023 | 60 | Joint STATUS REPORT by Saifullah Khan. (Smith, Kevin) (Entered: 02/22/2023) |
| 05/16/2023 | 61 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 05/16/2023) |
| 08/04/2023 | 62 | STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/04/2023) |
| 10/25/2023 | 63 | ORDER of USCA as to 43 Notice of Appeal filed by Saifullah Khan, USCA Case Number 21-95. (Fanelle, N.) (Entered: 10/31/2023) |
| 11/02/2023 | 64 | Joint STATUS REPORT by Jane Doe. (Gooley, Brendan) (Entered: 11/02/2023) |

| 11/15/2023 | 65 | MANDATE of USCA dated 11/15/2023, USDC Partial Judgment Affirmed in Part and Vacated in Part. Case is Remanded for further proceedings re: 43 Notice of Appeal filed by Saifullah Khan. (Attachments: # 1 Supporting Document)(Fanelle, N.) (Entered: 11/15/2023) |
| 11/16/2023 | 66 | ORDER. Per the parties' Status Report dated November 2, 2023 (ECF No. 64 ), the parties shall file an amended Rule 26(f) Report by December 1, 2023.<br>Signed by Judge Kari A. Dooley on 11/16/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/16/2023 | | Set Deadlines: Joint Status Report due by 12/1/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/29/2023 | 67 | Joint REPORT of Rule 26(f) Planning Meeting. (Sconzo, James) (Entered: 11/29/2023) |
| 12/04/2023 | 68 | Order on Pretrial Deadlines. The Court has reviewed 67 , the parties' Rule 26(f) Report, and the parties held a Rule 16(b) Conference on November 14, 2023. The Rule 26(f) Report is Approved, Adopted, and So Ordered, except as set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **December 31, 2023**. The Defendants shall move to join additional parties by **January 31, 2024**. All discovery shall be concluded by **April 15, 2025**. Dispositive motions, if any (see Local Rule 56(c)), shall be filed by **June 15, 2025**. The Court will set a date for filing a joint trial memorandum after the close of discovery. The joint trial memorandum shall comport with this Court's standing order, which will be separately docketed.<br><br>Defendant Jane Doe's time constraints notwithstanding, the discovery deadline in this case is not likely to be further extended, absent unforeseen and extraordinary circumstances.<br><br>A telephonic status conference is scheduled for April 22, 2025 at 2:00 pm. A separate calendar shall be docketed.<br>Signed by Judge Kari A. Dooley on 12/4/2023. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/04/2023 | | Set Deadlines/Hearings:<br>Motion to Amend Pleadings due by 12/31/2023;<br>Answer Deadline Updated for All Defendants. Responsive pleading due 1/31/2024;<br>Discovery due by 4/15/2025;<br>Dispositive Motions due by 6/15/2025;<br>Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/11/2023 | 69 | Amended REPORT of Rule 26(f) Planning Meeting. (Pattis, Norman) (Entered: 12/11/2023) |
| 12/11/2023 | 70 | Joint MOTION for Revision of the Rule 26(f) Report of Parties' Planning Meeting Order by Jane Doe. (Gooley, Brendan) (Entered: 12/11/2023) |
| 12/13/2023 | 71 | AMENDED SCHEDULING ORDER re 70 , Joint MOTION for Revision of the Rule 26(f) Report. Initial Disclosures shall be exchanged on **February 1, 2024**. To the extent that Plaintiff's written discovery requests seek material duplicative of the initial disclosures, Defendants may indicate as much in its responses and need not reproduce any such materials. Plaintiff shall be allowed until **February 8, 2024** to file motions to join additional parties and/or motions to amend the complaint. Defendants shall be allowed until **March 8, 2024** to file motions to join additional parties or to file a response to the operative complaint. Plaintiff's request for permission to notice 20 depositions is DENIED without prejudice. If, following written discovery, the Plaintiff is able to identify more than 10 individuals whose deposition he believes are appropriately noticed, he may renew his request. Defendants may renew any objection as well. All other deadlines previously set remain. Signed by Judge Kari A. Dooley on 12/13/2023. (Alquesta, Steven) Modified on 12/13/2023 (Gould, K.). (Entered: 12/13/2023) |
| 12/13/2023 | | Set Deadlines/Hearings:<br>Amended Pleadings due by 2/8/2024;<br>Answer Deadline Updated for All Defendants. Responsive pleading due 3/8/2024;<br>Discovery due by 4/15/2025;<br>Dispositive Motions due by 6/15/2025;<br>Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/13/2023) |

| 12/20/2023 | 72 | NOTICE of Appearance by Giovanna T. Weller on behalf of Yale University (Weller, Giovanna) (Entered: 12/20/2023) |
|---|---|---|
| 12/27/2023 | 73 | MOTION to Seal Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |
| 12/27/2023 | 74 | SEALED MOTION Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |
| 12/27/2023 | 75 | Sealed Document: Memorandum of Law In Support of Emergency Motion for Judgment of Dismissal by Jane Doe re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Gooley, Brendan) (Entered: 12/27/2023) |
| 12/28/2023 | 76 | ORDER re 74 Emergency Motion for Judgment of Dismissal. The Court will not take up the 74 motion to dismiss on an emergency basis. Plaintiff's opposition to the motion is due on or before January 17, 2024.<br>Signed by Judge Kari A. Dooley on 12/28/2023. (Alquesta, Steven) (Entered: 12/28/2023) |
| 01/16/2024 | 77 | Sealed Document: Mr. Khan's Objection to Emergency Motion for Judgment of Dismissal by Saifullah Khan . (Pattis, Norman) (Entered: 01/16/2024) |
| 01/30/2024 | 78 | MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 01/30/2024) |
| 01/30/2024 | 79 | Sealed Document: Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe . (Attachments: # 1 Exhibit K (Sealed), # 2 Exhibit L (Sealed), # 3 Exhibit M (Sealed))(Gooley, Brendan) (Entered: 01/30/2024) |
| 03/04/2024 | 80 | MOTION to Seal Memorandum of Law in Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 81 | MOTION for Protective Order *(Redacted)* by Jane Doe.Responses due by 3/25/2024 (Attachments: # 1 Memorandum in Support Redacted, # 2 Exhibit A, # 3 Exhibit B)(Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 82 | SEALED MOTION *for a* Protective Order by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Gooley, Brendan) (Entered: 03/04/2024) |
| 03/05/2024 | 83 | Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024 by Jane Doe. (Gooley, Brendan) (Entered: 03/05/2024) |
| 03/06/2024 | 84 | SCHEDULING ORDER. Oral argument on 74 Defendant Doe's Motion for Judgment of Dismissal shall be heard on March 18, 2024, at 10:00 AM. Plaintiff shall personally appear at oral argument. The Court will also address Defendant Doe's 83 Motion for Extension of Time. A calendar entry with further details will be separately docketed.<br>Signed by Judge Kari A. Dooley on 3/6/2024. (Alquesta, S) (Entered: 03/06/2024) |
| 03/06/2024 | 85 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Oral Argument on 74 Defendant Doe's Motion for Judgment of Dismissal set for March 18, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 03/06/2024) |
| 03/08/2024 | 86 | First MOTION to Amend/Correct 25 Answer to Complaint, *to Add Affirmative Defenses* by Yale University.Responses due by 3/29/2024 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Noonan, Patrick) (Entered: 03/08/2024) |
| 03/15/2024 | 87 | MOTION to Seal Proposed Sur-Reply and Exhibits by Jane Doe. (Gooley, Brendan) (Entered: 03/15/2024) |
| 03/15/2024 | 88 | SEALED MOTION Motion for Sur-Reply and Exhibits by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit N, # 3 Exhibit O, # 4 Exhibit P, # 5 Exhibit Q)(Gooley, Brendan) (Entered: 03/15/2024) |

| 03/15/2024 | 89 | MOTION to Vacate *Order Treating Jane Doe Pesudonyously* by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |
|---|---|---|
| 03/15/2024 | 90 | OBJECTION *to Jane Doe's Motion for a Protective Order* filed by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |
| 03/18/2024 | 91 | Minute Entry. Proceedings held before Judge Kari A. Dooley: denying 74 Sealed Motion; Motion Hearing held on 3/18/2024 re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal filed by Jane Doe. As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification. 38 minutes(Court Reporter Tracy Gow.) (Gould, K.) Modified docket text on 3/19/2024 (Pesta, J.). (Entered: 03/18/2024) |
| 03/18/2024 | 92 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for ruling on motions 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 81 MOTION for Protective Order *(Redacted).* Signed by Judge Kari A. Dooley on 3/18/2024. Motion referred to Magistrate Judge Maria E. Garcia. (Gould, K.) (Entered: 03/18/2024) |
| 03/18/2024 | 93 | ORDER GRANTING 73 Motion to Seal; granting 78 Motion to Seal; granting 80 Motion to Seal; granting 73 MOTION to Seal Emergency Motion for Judgment of Dismissal, 78 MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal, 80 MOTION to Seal Memorandum of Law in Support of Motion for Protective Order, 87 MOTION to Seal Proposed Sur-Reply and Exhibits ; granting 87 Motion to Seal. The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern.<br>GRANTING 83 Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024, Defendant's shall respond to Plaintiff's complaint on or before **May 7, 2024.** Signed by Judge Kari A. Dooley on 3/18/2024. (Gould, K.) (Entered: 03/18/2024) |
| 03/26/2024 | 94 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on March 18, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 4/16/2024. Redacted Transcript Deadline set for 4/26/2024. Release of Transcript Restriction set for 6/24/2024. (Gow, T.) (Entered: 03/26/2024) |
| 03/29/2024 | 95 | MOTION to Seal Reply in Further Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/29/2024) |
| 03/29/2024 | 96 | SEALED MOTION Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 03/29/2024) |
| 04/01/2024 | 97 | MOTION for Extension of Time until October 15, 2024 Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/01/2024) |
| 04/01/2024 | 98 | NOTICE of Appearance by Alexander T. Taubes on behalf of Saifullah Khan (Taubes, Alexander) (Entered: 04/01/2024) |
| 04/01/2024 | 99 | ORDER Denying without prejudice 97 Motion for Extension of Time for failure to comply with Local Rule 7(b). Signed by Judge Kari A. Dooley on 4/1/2024. (Alquesta, S) (Entered: 04/01/2024) |
| 04/05/2024 | 100 | MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/05/2024 | 101 | MOTION to Seal Motion to Continue Anonymity by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |

| 04/05/2024 | 102 | Memorandum in Opposition re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 04/05/2024) |
|---|---|---|
| 04/05/2024 | 103 | SEALED MOTION TO CONTINUE ANONYMITY by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 104 | OBJECTION re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 105 | MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/11/2024 | 106 | ORDER granting 86 Motion to Amend/Correct. Absent objection, Defendant Yale Universitys motion to amend its answer to add affirmative defenses is granted. Defendant Yale University shall docket the amended answer attached as Exhibit B therein, ECF No. 86-3, as a new docket entry. Signed by Judge Kari A. Dooley on 4/11/2024. (Alquesta, S) (Entered: 04/11/2024) |
| 04/12/2024 | 107 | *AMENDED* ANSWER to 1 Complaint with Affirmative Defenses by Yale University.(Weller, Giovanna) (Entered: 04/12/2024) |
| 04/12/2024 | 108 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for rulings on motions including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 96 SEALED MOTION Reply in Further Support of Motion for a Protective Order, 81 MOTION for Protective Order *(Redacted)*, 95 MOTION to Seal Reply in Further Support of Motion for Protective Order.<br>Signed by Judge Kari A. Dooley on 4/12/2024. Motions referred to Magistrate Judge Maria E. Garcia. (Gould, K.) (Entered: 04/12/2024) |
| 05/07/2024 | 109 | ANSWER to 1 Complaint with Affirmative Defenses by Jane Doe.(Gooley, Brendan) (Entered: 05/07/2024) |
| 05/13/2024 | 110 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for case management and pretrial non dispositive matters including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 103 SEALED MOTION TO CONTINUE ANONYMITY, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 100 MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions, 105 MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions, 96 SEALED MOTION Reply in Further Support of Motion for a Protective Order, 81 MOTION for Protective Order *(Redacted)*, 95 MOTION to Seal Reply in Further Support of Motion for Protective Order, 101 MOTION to Seal Motion to Continue Anonymity.<br>Signed by Judge Kari A. Dooley on 5/13/2024. Motions and case management referred to Magistrate Judge Maria E. Garcia.(Gould, K.) (Entered: 05/13/2024) |
| 05/14/2024 | 111 | ORDER re: 110 Referral Order and for Chamber's Copies.<br>The parties will provide two (2) tabbed binders with copies of all of the referred motions and responses, printed from CMecf, within seven (7) days.<br>Signed by Judge Maria E. Garcia on 5/14/24. (Esposito, A.) (Entered: 05/14/2024) |
| 06/11/2024 | 112 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. In-person Status Conference re: all pending motions set for **6/20/2024 at 11:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Lee, E) (Entered: 06/11/2024) |
| 06/14/2024 | 113 | MOTION to Seal Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |
| 06/14/2024 | 114 | SEALED MOTION for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |

| 06/18/2024 | 115 | ORDER finding as moot 88 Sealed Motion.<br>Jane Doe filed an Emergency Motion for Judgment of Dismissal under seal on December 27, 2023. *See* ECF No. 74 . On March 6, 2024once the motion was fully briefedJudge Dooley scheduled oral argument for March 18, 2024. *See* ECF No. 84. Three days before the hearing, Jane Doe filed a Motion to File a Sur-Reply, attaching exhibits under seal. While Judge Dooley did not rule on the motion itself, she and counsel discussed at length Plaintiff's social media posts, including those that were submitted as exhibits to the Sur-Reply. *See* ECF No. 94 at 5:425, 8:249:19, 14:419:5, 23:1325:20. Judge Dooley ultimately denied the motion on the grounds that Khan did not violate a court order, because no party had previously sought and obtained a protective order preventing public disclosure. *See id.* Because the topics raised in the Sur-Reply were discussed during the hearing and the Court denied the motion on independent grounds, the Court finds this motion to be MOOT.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
|---|---|---|
| 06/18/2024 | 116 | ORDER terminating 96 Sealed Motion.<br>Jane Doe's counsel moved to seal her Reply in Further Support of Motion for a Protective Order at ECF No. 95 but then filed the Reply as a Sealed Motion rather than filing the Reply under seal (the latter of which is permitted by Local Rule 5(e)4). Accordingly, the Court terminates the motion and construes it as a Reply.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/18/2024 | 117 | ORDER granting 95 Motion to Seal Reply in Further Support of Motion for Protective Order by Jane Doe; granting 101 Motion to Seal Motion to Continue Anonymity by Jane Doe; and granting 113 Motion to Seal Motion for Sur-Reply in Further Support of Motion for a Protective Order; for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93 : "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/18/2024 | 118 | ORDER granting 114 Sealed Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe for good cause shown. *See* D. Conn. L. Civ. R. 7(d) ("No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause.") Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/19/2024 | 119 | RULING and ORDER denying 89 Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously and granting 103 Jane Doe's Motion to Continue Anonymity.<br>The parties will be prepared to address the remaining pending motions at oral argument on June 20, 2024.<br>Signed by Judge Maria E. Garcia on 6/19/2024. (Esposito, A.) (Entered: 06/19/2024) |
| 06/20/2024 | 120 | Minute Entry. Proceedings held before Judge Maria E. Garcia: taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion; taking under advisement 100 Motion for Extension of Time and taking under advisement 105 Motion for Extension of Time. In-person status conference and oral argument held on 6/20/2024 re Motions 81 , 82 , 100 , and 105 . 49 minutes (Court Reporter CourtSmart.) (Langello, N) (Entered: 06/20/2024) |
| 06/21/2024 | 121 | ORDER taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion for Protective Order; denying without prejudice 100 Motion for Extension of Time to October 15, 2024 ; denying without prejudice 105 Motion for Extension of Time to October 15, 2025 to complete discovery and depositions (Revised).<br><br>ORDER.<br>As stated on the record during oral argument on June 20, 2024, Plaintiff's Motions to Modify the Scheduling Order are denied without prejudice to refiling after the parties' meet and confer conferences. ECF Nos. 100, 105. Plaintiff is advised that any future request to modify the current scheduling order should include interim deadlines and comply with Local Rule 7. *See* D. Conn. L. Civ. R. 7(b)(1) ("All motions for extensions of time must be decided by a Judge and will not be granted except for good cause. The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension.").<br><br>Defendant Jane Doe's Motions for Protective Order are taken under advisement. ECF Nos. 81, 82. The |

| | | |
|---|---|---|
| | | parties will meet and confer on the contours of a protective order and file a Joint Status Report with proposed language by June 27, 2024.<br><br>Signed by Judge Maria E. Garcia on 9/21/2024. (Esposito, A.) (Entered: 06/21/2024) |
| 06/24/2024 | 122 | MOTION to Seal Second Emergency Motion to Dismiss by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |
| 06/24/2024 | 123 | SEALED MOTION Second Emergency Motion for Judgment of Dismissal by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |
| 06/25/2024 | 124 | ORDER re 123 Second Emergency Motion for Judgment of Dismissal filed by Jane Doe (Sealed). Plaintiff's response is due by the close of business July 1, 2024.<br>Oral argument is scheduled for July 3, 2024 at 1:30 PM. Plaintiff shall be present at the hearing.<br>Signed by Judge Maria E. Garcia on 6/25/24. (Esposito, A.) (Entered: 06/25/2024) |
| 06/25/2024 | 125 | NOTICE of E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.<br>ORDER re: 123 Second Emergency Motion for Judgement of Dismissal by Jane Doe (Sealed). A hearing is scheduled for 7/3/2024 at 01:30 PM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. Plaintiff shall be present at the hearing. (Esposito, A.) (Entered: 06/25/2024) |
| 06/26/2024 | 126 | NOTICE of Appearance by Maria Laurato on behalf of Yale University (Laurato, Maria) (Entered: 06/26/2024) |
| 06/27/2024 | 127 | NOTICE of Appearance by Mario K. Cerame on behalf of Saifullah Khan *filing as additional counsel, particularly as concerns free speech interests* (Cerame, Mario) (Entered: 06/27/2024) |
| 06/27/2024 | 128 | Consent MOTION for Extension of Time until July 8, 2024 to Submit Joint Status Report by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/27/2024) |
| 06/28/2024 | 129 | ORDER granting 128 Consent Motion for Extension of Time until July 8, 2024 to Submit Joint Status Report. Signed by Judge Maria E. Garcia on 6/28/24. (Esposito, A.) (Entered: 06/28/2024) |
| 06/28/2024 | 130 | Emergency MOTION to Dismiss *Plaintiff's Complaint* by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University.Responses due by 7/19/2024 (Attachments: # 1 Memorandum in Support)(Noonan, Patrick) (Entered: 06/28/2024) |
| 06/28/2024 | 131 | MOTION for Extension of Time until ten days*to file an* Objection to Motion to Dismiss or Other Sanction 119 Order on Motion to Vacate,, Order on Sealed Motion, by Saifullah Khan. (Attachments: # 1 Exhibit correspondence with court, # 2 Exhibit correspondence with counsel)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 132 | MOTION for *Order to the clerk to grant* access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan. (Attachments: # 1 correspondence with court)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 133 | MOTION to Seal Objection to Plaintiff's Motion for Extension of Time by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 134 | NOTICE of Appearance by Giovanna T. Weller on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Weller, Giovanna) (Entered: 06/28/2024) |
| 06/28/2024 | 135 | NOTICE of Appearance by Maria Laurato on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Laurato, Maria) (Entered: 06/28/2024) |
| 06/28/2024 | 136 | ORDER granting in part and denying in part 131 Motion for Extension of Time to respond to Defendant Jane Doe's Second Emergency Motion for Entry of Judgment of Dismissal. ECF No. 123 (filed June 24, 2024). Plaintiff's request for an additional ten days to file a response is denied. Good cause has not been shown given the issues set forth in the emergency motion and the Court's ability to |

hold an emergency hearing. Plaintiff is represented by four capable attorneys. The appearance yesterday by the fourth attorney does not establish good cause for a ten day extension. Accordingly, absent consent and good cause, this request for an additional ten days to respond to Doe's Second Emergency Motion for Entry of Judgment of Dismissal is denied.

The request for more time is granted in part. Plaintiff's response is due by 11:59 PM on Monday, July 1, 2024.

Signed by Judge Maria E. Garcia on 6/28/2024. (Cabral, D) (Entered: 06/28/2024)

| | | |
|---|---|---|
| 06/28/2024 | 137 | MOTION for Reconsideration re 136 Order on Motion for Extension of Time,,, *and to preserve the record as to relevant facts for later review* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 138 | OBJECTION re 133 MOTION to Seal Objection to Plaintiff's Motion for Extension of Time filed by Saifullah Khan. (Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 139 | MOTION to Seal Objection to Plaintiff's Motion for Reconsideration by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 140 | Sealed Document: Objection to Plaintiff's Motion for Reconsideration by Jane Doe . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/29/2024 | 141 | ORDER finding as moot 133 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Extension of Time in light of the Court's ruling [ECF No. 136] granting in part and denying in part Plaintiffs Motion for Extension of Time *before* Doe filed an objection.. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 142 | VACATED: ORDER granting 123 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) Modified on 6/29/2024 to indicated order was vacated (Ruocco, M.). (Entered: 06/29/2024) |
| 06/29/2024 | 143 | ORDER denying 137 Plaintiff's Motion for Reconsideration.<br><br>"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Generally, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).<br><br>Plaintiff presents no new evidence, arguments or caselaw on reconsideration. Rather, Attorney Cerame points out that although Plaintiff has four attorneys who have filed notices of appearance on his behalf, apparently only he, who filed a notice of appearance after the deadline for responding to Doe's Second Emergency Motion for Judgment of Dismissal had been set by the Court, is tasked with responding to that Motion. It has long been settled that the "fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation." *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981) (Cabranes, J.) (citing *Maryland Metals, Inc. v. Harbaugh*, 33 Md. App. 570, 575-576, 365 A.2d 600, 603 (Ct. Spec. App.1976) ("In the practice of law, a lawyer is charged with the responsibility of knowing what is entered upon the dockets, from time to time, in the case in which he is counsel. It is his duty to follow the dockets so as to keep himself abreast of the happenings in his case.... Put in another more graphic way, the buck stops with the attorney's appearance as counsel of record."). An appearing attorney has a "responsibility to 'investigate and prepare every phase' of his client's case". *J.M. Cleminshaw Co*., 93 F.R.D. 338 at 348 n.5, n.8 (citations omitted); *see also Ortiz v. Stambach*, No. 1:16-CV-00321 (EAW), 2022 WL 1746771, at *6 (W.D.N.Y. May 31, 2022) (rejecting counsel's "suggested argument that co-counsel was responsible for any expert disclosure failures" and reminding counsel that he was admitted to the bar and it was incumbent on him to ensure that his client's discovery obligations were satisfied). |

Furthermore, the "courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). After consideration of Doe's objection, the Court finds that Attorney Cerame's argument that he had no access to the sealed motions disingenuous. Doe's counsel offered to provide Attorney Cerame with the sealed documents on June 27, 2024 at 4:02 PM and again on June 28, 2024 at 12:24 PM. *See* ECF No. 140-1 at 2, 4. Moreover, other counsel of record for Plaintiff had access to the sealed documents. Doe argues that "there is no basis for extending the briefing or hearing... because Plaintiff has seemingly not taken down the posts that identify Jane and created this exigency." ECF No. 140 at 1. The Court agrees.

Because Plaintiff failed to identify any ground sufficient to justify reconsideration, the Motion for Reconsideration is **DENIED**. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024)

| 06/29/2024 | 144 | ORDER In light of the filing of Yale's Emergency Motion for Judgment of dismissal of the Plaintiff's Complaint (ECF No. 130) filed on June 28, 2024, to which Plaintiff is entitled to respond to, and the Court's preference to hold an evidentiary hearing on both Emergency Motions on the same day, the Court modifies the response deadlines and schedule as follows: Plaintiff's response to Doe's Second Emergency Motion for Dismissal (ECF No. 123) and Yale's Emergency Motion to Dismiss (ECF No. 130) is now July 5, 2024, Defendants may file a reply by July 9, 2024, and the evidentiary hearing on both Motions is rescheduled to July 11, 2024 at 10:00 am. A new calendar will issue, Plaintiff shall appear for the evidentiary hearing.<br>Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |
| --- | --- | --- |
| 06/29/2024 | 145 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.<br>*RESET FROM 7/3/24.*<br>Evidentiary Hearing set for 7/16/2024 at 10:00 AM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 146 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.<br>*RESET FROM 7/16/24*<br>Evidentiary Hearing set for **7/11/2024 at 10:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 147 | ORDER re: 146 July 11, 2024 Hearing.<br>The parties will provide two chamber's copies of their motions and responsive pleadings, with tabs of the exhibits, by the close of business July 9, 2024.<br>Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 148 | ORDER Vacating 142 Order on Sealed Motion, Order on Motion to Seal,<br>Signed by Judge Maria E. Garcia on 6/29/24.(Ruocco, M.) (Entered: 06/29/2024) |
| 06/29/2024 | 149 | ORDER granting 122 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 6/29/24. (Ruocco, M.) (Entered: 06/29/2024) |
| 07/01/2024 | 150 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on 06/20/24 before Judge Maria E. Garcia. Court Reporter: eScribers, LLC. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After |

| | | |
|---|---|---|
| | | that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 7/22/2024. Redacted Transcript Deadline set for 8/1/2024. Release of Transcript Restriction set for 9/29/2024. (Gottlieb, J) (Entered: 07/01/2024) |
| 07/03/2024 | 151 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Status Conference set for 7/10/2024 at 10:00 AM before Judge Maria E. Garcia. The parties will call the conference line at: (888) 557-8511; Access Code: 3852222# (Esposito, A.) (Entered: 07/03/2024) |
| 07/03/2024 | 152 | OBJECTION re 119 Order on Motion to Vacate,, Order on Sealed Motion, *objection pursuant to Local Rule 72.2* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/03/2024) |
| 07/04/2024 | 153 | OBJECTION as Per Entry 152 with Sealed Exhibits by Saifullah Khan. (Attachments: # 1 Exhibit, # 2 Exhibit)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.) (Entered: 07/04/2024) |
| 07/04/2024 | 154 | OBJECTION re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits, 152 Objection *Supplemental to Objection* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/04/2024) |
| 07/04/2024 | 155 | OBJECTION *to factual finding that counsel was "disingenuous," plausibly violating duty of candor to the tribunal* filed by Saifullah Khan. (Attachments: # 1 Exhibit Counsel's Inbox Showing Emails (and lack thereof) from Counsel Gooley)(Cerame, Mario) (Entered: 07/04/2024) |
| 07/05/2024 | 156 | MOTION for Extension of Time until five days Objections to Motions to Dismiss 144 Order,,, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint*, 146 Calendar Entry, 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal, 145 Calendar Entry, by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/05/2024) |
| 07/06/2024 | 157 | OBJECTION to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 by Saifullah Khan. (Attachments: # 1 Memorandum in Opposition to Motions to Dismiss)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.) (Entered: 07/06/2024) |
| 07/08/2024 | 158 | RESPONSE re 155 Objection, *to Court's Finding that Plaintiff Acted Disingenuously* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 159 | Consent MOTION for Extension of Time until 7/12/2024 file language regarding protective order 121 Order on Motion for Protective Order,,,,,, Order on Sealed Motion,,,,,, Order on Motion for Extension of Time,,,,,,,,,, 129 Order on Motion for Extension of Time by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 07/08/2024) |
| 07/08/2024 | 160 | OBJECTION *TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME AS TO YALE* filed by Jane Doe. (Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 161 | MOTION in Limine *as described in ECF 157.1 at page 2* by Saifullah Khan.Responses due by 7/29/2024 Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/08/2024) |
| 07/08/2024 | 162 | ORDER. Defendant Doe shall respond to Plaintiff's 153 Objection to Magistrate Judge Garcia's order at ECF No. 119 and request for *de novo* review on or before July 24, 2024. Signed by Judge Kari A. Dooley on 7/8/2024. (Alquesta, S) (Entered: 07/08/2024) |
| 07/08/2024 | 163 | ORDER granting 159 Motion for Extension of Time until July 12, 2024 to file language regarding proposed protective order. Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |
| 07/08/2024 | 164 | ORDER denying 156 Motion for Extension of Time 156 for the reasons set forth in 136 Order on Motion for Extension of Time and 143 Order on Motion for Reconsideration. In addition to repeatedly failing to meet the good cause standard, the instant motion fails to comply with D. Conn. L. Rule 7(b)3. which requires that "[a]ll motions for extension of time shall be filed at least three (3) business days before the deadline sought to be extended [...]". Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |
| 07/09/2024 | 165 | MOTION to Seal Reply, Response and Objection by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 07/09/2024) |

| 07/09/2024 | 166 | Sealed Document: Reply in Further Support of Second Emergency Motion for Judgment of Dismissal by Jane Doe re 157 SEALED MOTION Objection to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 07/09/2024) |
|---|---|---|
| 07/09/2024 | 167 | OBJECTION *in part to motion to seal, specifically as concerns 161, motion in limine* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/09/2024) |
| 07/09/2024 | 168 | Sealed Document: Response to Plaintiff's Rule 72.2 Motion by Jane Doe re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits . (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 169 | Sealed Document: Objection to Plaintiff's Motion in Limine by Jane Doe re 161 MOTION in Limine *as described in ECF 157.1 at page 2* . (Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 170 | ORDER granting 132 MOTION for Order to the clerk to grant access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan.<br>The clerk of the court will provide Attorney Mario Cerame with access to sealed documents. Signed by Judge Maria E. Garcia on 7/9/2024. (Esposito, A.) (Entered: 07/09/2024) |
| 07/09/2024 | 171 | REPLY to Response to 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/09/2024) |
| 07/09/2024 | 172 | OBJECTION re 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 07/09/2024) |
| 07/10/2024 | 173 | ORDER 151 re: June 10, 2024 Telephonic Status Conference.<br>As discussed, the hearing scheduled for July 11, 2024, on Defendant Doe's Second Emergency Motion to Dismiss, (ECF No. 123) and Defendant Yale's Emergency Motion to Dismiss Plaintiff's Complaint (ECF No. 130) is CANCELLED.<br>Judge Dooley will issue a calendar rescheduling the hearing in due course.<br>Signed by Judge Maria E. Garcia on 7/10/24. (Esposito, A.) (Entered: 07/10/2024) |
| 07/10/2024 | 174 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Status Conference held on 7/10/2024. Total Time: 7 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 07/10/2024) |
| 07/11/2024 | 175 | First MOTION for Kevin Murray Smith to Withdraw as Attorney by Saifullah Khan. Motions referred to Maria E. Garcia(Smith, Kevin) (Entered: 07/11/2024) |
| 07/11/2024 | 176 | MOTION for Norman A. Pattis to Withdraw as Attorney *Motion for Permission to Withdraw Appearance* by Saifullah Khan. Motions referred to Maria E. Garcia(Pattis, Norman) (Entered: 07/11/2024) |
| 07/12/2024 | 177 | ORDER granting 175 Motion to Withdraw as Attorney. Attorney Kevin Murray Smith terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 178 | ORDER granting 176 Motion to Withdraw as Attorney. Attorney Norman A. Pattis terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 179 | SCHEDULING ORDER. In light of Judge Garcia's order at ECF No. 173, Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 shall be heard on July 25, 2024, at 10:00 AM. Plaintiff shall appear personally at oral argument. A calendar entry with further details shall be separately docketed.<br>Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 180 | NOTICE OF E-FILED CALENDAR. THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 is set for July 25, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 07/12/2024) |

| | | |
|---|---|---|
| 07/15/2024 | 181 | Joint STATUS REPORT *Regarding Proposed Protective Order* by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/15/2024) |
| 07/17/2024 | 182 | ORDER granting 165 Defendant Jane Doe's MOTION to Seal Reply, Response and Objection. The Motion to Seal is granted as to her: (1) Reply in Further Support of her Second Emergency Motion for Judgment of Dismissal; (ECF No. 123 (SEALED)); (2) Response to Plaintiffs Rule 72.2 Objection; and (3) Objection to Plaintiffs Motion in Limine; for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117, 149: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 7/17/24. (Esposito, A.) (Entered: 07/17/2024) |
| 07/24/2024 | 183 | RESPONSE re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathan Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/24/2024) |
| 07/24/2024 | 184 | NOTICE by Saifullah Khan re 179 Scheduling Order, 152 Objection *Notice of Supplemental Authority* (Attachments: # 1 Supplement Order in Doe v. Butler U., 1:22-cv-1828, ECF No. 102 (S.D. Ind. July 23, 2024))(Cerame, Mario) (Entered: 07/24/2024) |
| 07/25/2024 | 185 | ORDER. Plaintiff may reply to Defendants' 168 and 183 responses to Plaintiff's 153 Objection to Judge Garcia's 119 ruling on or before August 7, 2024. Signed by Judge Kari A. Dooley on 7/25/2024. (Alquesta, S) (Entered: 07/25/2024) |
| 07/25/2024 | 187 | Minute Entry. Proceedings held before Judge Kari A. Dooley: taking under advisement 123 Sealed Motion; taking under advisement 130 Motion to Dismiss; So Ordered 161 Motion in Limine; Motion Hearing held on 7/25/2024 re 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal filed by Jane Doe, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Sarah Demers, Peter Salovey, Mark Solomon, Carole Goldberg, Lynn Cooley, Jonathon Halloway, Ann Kuhlman, Yale University, David Post, Stephanie Spangler, Paul Genecin, Marvin Chun, Joe Gordon, 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Saifullah Khan. Total Time: 1 hours and 34 minutes(Court Reporter Tracy Gow.) (Gould, K) (Entered: 08/02/2024) |
| 07/25/2024 | 188 | Marked Exhibit List from July 25, 2024 Motion Hearing (Gould, K) (Entered: 08/02/2024) |
| 07/30/2024 | 186 | EXHIBIT by Jane Doe. (Attachments: # 1 Exhibit Access Guidelines, # 2 Exhibit Email from Lillian Perry, # 3 Exhibit Corrected Transcript (Additional Redaction by Jane Doe)(Gooley, Brendan) (Entered: 07/30/2024) |
| 08/06/2024 | 189 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Discovery Status Conference re: Defendants' Motion for Protective Order, [ECF Nos. 81, 82], and the parties' Proposed Protective Order, [ECF No. 181], set for 8/13/2024 at 10:30 AM before Judge Maria E. Garcia. The parties will call: 203-684-6202; and enter the Conference ID: 439 176 102# when prompted. (Esposito, A.) (Entered: 08/06/2024) |
| 08/07/2024 | 190 | RESPONSE re 185 Order, 154 Objection, 168 Sealed Document, 186 Exhibit, 183 Response, 152 Objection *reply to responses by Defendants* filed by Saifullah Khan. (Cerame, Mario) (Entered: 08/07/2024) |
| 08/13/2024 | 191 | ORDER re: 80 81 Defendant Jane Doe's Motion for Protective Order. Based on the discussion during today's telephonic discovery status conference, the parties will confer and submit a Revised Proposed Protective Order by **August 19, 2024**. Signed by Judge Maria E. Garcia on 8/13/2024. (Esposito, A.) (Entered: 08/13/2024) |
| 08/13/2024 | 192 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Discovery Status Conference held on 8/13/2024. Total Time: 11 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 08/13/2024) |
| 08/16/2024 | 193 | Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 08/16/2024) |

| | | |
|---|---|---|
| 08/19/2024 | 194 | ORDER granting 193 Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re: Motion for a Protective Order 81 82 .<br>Signed by Judge Maria E. Garcia on 8/19/24. (Esposito, A.) (Entered: 08/19/2024) |
| 08/26/2024 | 195 | Joint STATUS REPORT by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Gooley, Brendan) (Entered: 08/26/2024) |
| 08/28/2024 | 196 | ORDER re: 195 Joint Status Report Regarding Proposed Protective Order.<br>The Court reviewed the parties' Proposed Protective Order. The Court would like to thank the parties for working collaboratively to reach an agreement.<br>On or before September 5, 2024, the parties will accept the track changes and file the Protective Order with Exhibit 1, executed by Plaintiff, for entry by the Court.<br>Signed by Judge Maria E. Garcia on 8/28/24. (Esposito, A.) (Entered: 08/28/2024) |
| 09/05/2024 | 197 | RESPONSE re 196 Order, by Saifullah Khan *EXECUTED PROTECTIVE ORDER*. (Taubes, Alexander) (Entered: 09/05/2024) |
| 09/06/2024 | 198 | ORDER APPROVING and ADOPTING the Parties' Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Materials.<br>Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |
| 09/06/2024 | 199 | ORDER finding as moot 81 Motion for Protective Order; finding as moot 82 Sealed Motion for Protective Order in light of the parties' agreed to Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Information. ECF No. 198. Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |
| 09/16/2024 | 200 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on July 25, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 10/7/2024. Redacted Transcript Deadline set for 10/17/2024. Release of Transcript Restriction set for 12/15/2024. (Gow, T.) (Entered: 09/16/2024) |
| 10/08/2024 | 201 | Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* by Saifullah Khan.Responses due by 10/29/2024 (Attachments: # 1 Exhibit DHS Letter)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/08/2024) |
| 10/08/2024 | 202 | ORDER re: 201 Plaintiff's Emergency MOTION for Stay of Order Restricting Speech.<br>Defendants' response is due on or before **October 14, 2024.**<br><br>Signed by Judge Maria E. Garcia on 10/8/24. (Esposito, A.) (Entered: 10/08/2024) |
| 10/14/2024 | 203 | OBJECTION re 201 Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Gooley, Brendan) (Entered: 10/14/2024) |
| 10/16/2024 | 204 | ORDER 201 denying without prejudice Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech.<br>"Plaintiff requests permission from this Court to deliver any necessary documents, without redaction, to the Department of Homeland Security, U.S. Citizenship and Immigration Services ("DHS"), as per the October 3, 2024 Letter from DHS." ECF No. 201 at 1. The DHS letter requests three documents: (1) a certificate of disposition in Plaintiff's criminal case; (2) the official transcript from the court in the criminal case; and (3) a copy of a protective order filed against Plaintiff in Dearborn, Indiana. *Id.* Plaintiff represents that "both documents contain Doe's name" but did not state which of the three documents he was referring to. *Id.* Defendant Doe responds that she cannot meaningfully respond because Plaintiff refused to provide copies of the documents he intends to submit to DHS, and that |

| | | |
|---|---|---|
| | | Plaintiff has not shown that it "is necessary for Plaintiff to disclose Jane's name in order to comply with the request issued by the U.S. Citizenship and Immigration Services." ECF No. 203 at 1, 4. On this record, Plaintiff's motion raises more questions than answers.<br><br>Accordingly, Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech is denied without prejudice on the current record. The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.<br><br>SO ORDERED. Signed by Judge Maria E. Garcia on 10/16/2024. (Esposito, A.) (Entered: 10/16/2024) |
| 10/17/2024 | 205 | MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 206 | Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech (entry 205 erroneously not flagged as emergency motion)* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 207 | Sealed Document: Sealed Exhibits Pursuant to ECF No. 204, Attached to ECF No. 206 by Saifullah Khan re 204 Order on Motion to Stay,,,,,,, 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech ( Exhibit Letter from DHS. (Attachments: # 1 Exhibit Certificate of Disposition, # 2 Exhibit Document Concerning Protective Order, # 3 Exhibit 2.26.2018 Transcript, # 4 Exhibit 2.28.2018 Transcript, # 5 Exhibit 3.1.2018 Transcript, # 6 Exhibit 3.2.2018 Transcript, # 7 Exhibit 3.5.2018 Transcript, # 8 Exhibit 3.6.2018 Transcript, # 9 Exhibit 3.7.2018 Transcript)(Cerame, Mario) (Entered: 10/17/2024)* |
| 10/18/2024 | 208 | MOTION to Withdraw 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech || corrected emergency motion filed at ECF No. 206* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/18/2024) |
| 10/18/2024 | 209 | ORDER. Defendants will file a response to Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order by Sunday, October 20, 2024. ECF No. 206.<br><br>Defendants will articulate the harm to permit Plaintiff to produce unredacted copies of the Trial Transcripts that have already been produced to DHS in 2021. ECF No. 206 at 5. Their response will include proposed redactions to the Trial Transcripts. ECF Nos. 207-3 through 207-9. Defendants will also state their position on ECF Nos. 207-1 ("Destroyed Case File Letter") and 207-2 ("Mycourts.IN.gov") and whether they continue to maintain an objection.<br><br>Oral argument is scheduled for Monday, October 21, 2024 at 3:00 PM. Plaintiffs immigration counsel will attend the hearing. The Court will distribute the Zoom information to the parties via email. Signed by Judge Maria E. Garcia on 10/18/24. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 210 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 is set for 10/21/2024 at 03:00 PM before Judge Maria E. Garcia.<br>The Court will distribute the Zoom information to the parties via email. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 211 | ORDER withdrawing 205 Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order.<br>ORDER granting 208 Motion to Withdraw in light of a duplicate filing. ECF No. 206.<br>Signed by Judge Maria E. Garcia on 10/18/2024. (Esposito, A.) (Entered: 10/18/2024) |

| 10/20/2024 | 212 | RESPONSE re 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* filed by Jane Doe. (Attachments: # 1 Exhibit A) (Gooley, Brendan) (Entered: 10/20/2024) |
|---|---|---|
| 10/20/2024 | 213 | RESPONSE re 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech ( filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 10/20/2024)* |
| 10/21/2024 | 214 | MOTION for *Inquiry Concerning Public Access to October 21, 2024 Proceedings* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/21/2024) |
| 10/21/2024 | 215 | NOTICE regarding hearing via Zoom: The Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 scheduled for 10/21/2024 at 3:00 p.m. will be conducted via Zoom. |
| | | Call-in and Public Access Number: 1 646 828 7666 |
| | | Meeting ID: 161 220 9850 |
| | | Meeting Password: 713585 |
| | | *The Court will distribute the video link to the parties via email.* |
| | | Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. |
| | | NOTICE OF E-FILED CALENDAR re: Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 . Motion Hearing set for **10/21/2024 at 3:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 10/21/2024) |
| 10/21/2024 | 216 | ORDER re: 206 Plaintiff's Emergency Motion to Vacate Order, Or In the Alternative, For Limited Stay or Lift of Order. This motion is before the Court to address an October 3, 2024, USCIS/DHS letter (ECF No. 201-1) requesting three categories of documents from Plaintiff. A hearing was held on October 21, 2024, and the parties had an opportunity to be heard. For the reasons that follow, the motion is denied as moot in part, granted in part, and denied in part as follows: |
| | | Finding as moot as to the State of Connecticut Superior Court "Destroyed Case File Letter", at ECF No. 207-1, and the "MyCourts.IN.gov" Indiana Protective Order, at ECF No. 207-2, in light of the fact that these documents make no reference to Jane Doe. |
| | | The motion is granted as follows: Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in *State of Connecticut v. Khan,* No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §54-86e, that has been publicly available at least as of July 25, 2024. *See* ECF No. 186, 200. As stated on the record, to the extent that Plaintiff disagrees with the application of Conn. Gen. Stat. § 54-86e to the transcripts in the criminal case, his recourse is with the Connecticut Superior Court. This Court will not disturb what the Superior Court deems to be the Official Transcript. *See* ECF. No. 200, July 25, 2024 Hrg Tr. at 18:11-14. |
| | | The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), the unredacted trial transcripts, at ECF Nos. 207-3, 207-4, 207-5, |

| | | |
|---|---|---|
| | | 207-6, 207-7, 207-8 and 207-9, as the Court does not deem them responsive to the USCIS/DHS letter request.<br><br>The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that he may not disseminate the transcript to anyone else. SO ORDERED.<br><br>Signed by Judge Maria E. Garcia on 10/21/2024. (Esposito, A.) (Entered: 10/21/2024) |
| 10/21/2024 | 217 | ORDER finding as moot 214 MOTION for Inquiry Concerning Public Access to October 21, 2024 Proceedings by Saifullah Khan. The Zoom log-in information was provided on the docket. Signed by Judge Maria E. Garcia on 10/21/24. (Esposito, A.) (Entered: 10/21/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/22/2024 08:04:01 | | |
| **PACER Login:** | mariocerame | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-01966-KAD |
| **Billable Pages:** | 26 | **Cost:** | 2.60 |

25

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,               :
    Plaintiff,            :      cv _19-1966_

                   :

v.                     :

                   :

YALE UNIVERSITY,       :
PETER SALOVEY,        :
JONATHON HALLOWAY,   :
MARVIN CHUN, JOE GORDON, :
DAVID POST, MARK SOLOMON, :
PAUL GENECIN,         :
STEPHANIE SPANGLER,   :
SARAH DEMERS, JANE DOE  :
CAROLE GOLDBERG,     :
UNKNOWN PERSONS,    :
    Defendants.         :     DECEMBER 13, 2019

## MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME

The Plaintiff, Mr. Khan, brings the instant action before the Court for an abuse of his rights under Title IX, broken promises that resulted in a heinous breach of contract against him, and fabricated allegations of false conduct against the Plaintiff. Notwithstanding the heinous falsities that the Jane Doe Defendant brought against Mr. Khan, Mr. Khan hereby moves the Court to grant him permission to litigate his pendent state law claims against Jane Doe using a pseudonym in place of her actual name because he holds out hope that he may move on with his life and complete his undergraduate degree at Yale University – either by permission of Yale University (also a defendant in the instant action) or by virtue of injunctive relief from the Court. In that hope and despite the many egregious wrongs committed against him, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual

Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

## Relevant Facts

On Halloween, 2015, Mr. Khan and Jane Doe had consensual sexual relations. *See* **Compl. at ¶¶ 39-43**. The next morning, Jane Doe belatedly decided that having consensual sexual relations with Mr. Khan was a bad decision so she concocted a story for her friends, claiming that she had been raped; however, she told the Yale University Health Center worker who provided her with contraception that she had engaged in consensual, unprotected sex. *Id.* **at ¶ 45**. With the advice and counsel of the Defendants in this action, Jane Doe filed a formal complaint against Mr. Khan with the Yale University police department, which immediately began investigating Mr. Khan for rape. *Id.* **at ¶¶ 46-48**. The State of Connecticut subsequently charged Mr. Khan with sexual assault in the first degree. *Id.* **at ¶ 48**.

During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e. After a two-week jury trial in early 2018, the jury quickly returned a verdict acquitting Mr. Khan of all charges against him. *Id.* **at ¶ 52**. Through the efforts of his defense counsel, Mr. Khan succeeded in having his UWC disciplinary hearing delayed until after his criminal trial. *Id.* **at ¶ 51**. Mr. Khan was subsequently readmitted to Yale University in the fall of 2018, but he was denied on-campus housing. *Id.* **at ¶ 57**. At this time, Yale University made no effort to move forward with his UWC disciplinary hearing, and Jane Doe had already graduated. *Id.* **at ¶¶ 57, 68**.

In November 2018, Yale University convened a UWC hearing on Jane Doe's complaint – the same one that had resulted in the criminal charges against Mr. Khan. *Id.* at ¶¶ 74. Jane Doe testified at that hearing, peddling the same concocted falsities that she had levelled against Mr. Khan in the criminal trial. *Id.* at ¶¶ 74-81. The only difference was that Mr. Khan could not cross-examine her or confront his accuser in any manner. *Id.* at ¶ 77. Yale university ultimately decided to expel Mr. Khan. *Id.* at ¶ 80.

On its website, Yale University publicizes a set of policies and procedures for UWC proceedings. The policies and procedures unequivocally pronounce "[t]he UWC and all members of the Yale community who are involved in a matter before the UWC are expected to maintain the confidentiality of its proceedings and the information obtained for those proceedings." *See* **Exhibit A – UWC Procedures, p. 3**. Yale University has elaborated on this provision through a formal policy statement made by its provost. *Id.* at 3.

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.

*See* **Exhibit B – Statement on Confidentiality of UWC Proceedings, p. 1**.

## ARGUMENT

Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. **Exhibit A, p. 3.** However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale

University or an injunction from the Court, this provision would apply to him. Consequently, to preserve his interest in rejoining the Yale University community to complete his undergraduate education, Mr. Khan respectfully requests the Court to allow him to proceed in his defamation and tortious interference claims by naming Jane Doe under a pseudonym.

Fed. R. Civ. P. 10(1) mandates that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d. Cir. 2008).[1] However, courts have "carved out a limited number of exceptions to the general requirement of disclosure…." *Id.* at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). These exceptions have typically arisen in cases involving sensitive and intimate issues such as abortion decisions, e.g., *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), or cases involving minors, e.g., *Smith v. Edwards*, 175 F.3d 99 (2d. Cir. 1999).

In the *Sealed Plaintiff* case, the Second Circuit established ten non-exclusive factors, discussed in turn below, to determine whether the Court should grant a party's request to persuade under a pseudonym. *Id.* at 189-90. While these factors have traditionally been applied to parties seeking to protect their own identities by use of a pseudonym, these factors are also readily adaptable to a

---

[1] To the best of counsel's knowledge after research, this case is still sealed. Consequently, counsel has provided the Court with a copy of the Second Circuit's decision to save the Court any difficulty in locating it. *See* **Exhibit C – *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d. Cir. 2008)**.

request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym.

The first factor weighs "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature.'" *Id*. at 190 (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The instant case involves matters of a highly sensitive and personal nature, both to Mr. Khan and Jane Doe. As stated above, Jane Doe accused Mr. Khan of raping her. "[A]llegations of sexual harassment and misconduct" raises issues and questions "that are of a highly sensitive and personal nature." *A.B. v. C.D.*, 2018 WL 1935999, at *2. Therefore, the first factor weighs in Mr. Khan's favor.

The second factor examines "whether identification poses a risk of retaliatory physical or mental harm to the… party (seeking to proceed anonymously] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190 (quoting *Zavaras*, 139 F.3d at 803). As stated above, Jane Doe was protected by Conn. Gen. Stat. § 54-86e, which prevented the publication of her name during Mr. Khan's criminal trial. Consequently, for the purposes of Mr. Khan's UWC process, his conduct of his criminal trial did not violate the UWC procedures. If Mr. Khan names Jane Doe in this action, he will suffer the risk of retaliatory physical or mental harm, namely, the loss of any chance to successfully negotiate his return to Yale University to complete his undergraduate studies and the jeopardization of his opportunity to obtain injunctive relief from the Court to allow him to complete his undergraduate studies. Therefore, Mr. Khan seeks to

respect the UWC confidentiality rules by seeking to proceed against Jane Doe pseudonymously. Thus, the second factor weighs in Mr. Khan's favor.

The third factor examines "whether identification presents other harms and the likely severity of those harms…, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Id*. at 190 (quoting *Zavaras*, 139 F.3d at 803). At first glance, the injury incurred by Mr. Khan has already occurred. However, Mr. Khan does face the significant likelihood of further antagonizing Yale University to the point of placing his chances of negotiating a return to Yale University to complete his undergraduate degree by naming Jane Doe in violation of the UWC hearing. Furthermore, if Mr. Khan does name Jane Doe, Yale University will undoubtedly use that fact against him to illustrate its version that Mr. Khan "breaks" Yale University polices in opposing Mr. Khan's request for injunctive relief. Consequently, the third factor weighs in favor of Mr. Khan.

Mr. Khan concedes that the fourth factor weighs against him in that he is not "particularly vulnerable to the possible harms of disclosure…, particularly in light of his age." *Id.* at 190.

The fifth factor weighs in favor of Mr. Khan: "whether the suit is challenging the actions of the government or that or private parties." *Id.* at 190. Normally, suits against private parties do not enjoy a stronger presumption of a need to protect a party's privacy because personal embarrassment is the only consideration for keeping them private. *A.B. v. C.D.*, 2018 WL 1935999, at *3. However, when a party sues the government and seeks to serve as "a significant check on abuse of

public power," "it is in the public interest that the price of access to the courts not be too high." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." *Id.* at 158 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The value of open proceedings disappears when there are no proceedings to be had." *Id.* at 158. The reasoning underlying this presumptive balancing factor is the power disparity between the government, the public at large, and potential plaintiffs. The same reasoning applies here. Yale University enjoys tremendous social power, and it can have a tremendous impact on a person's life as Mr. Khan can readily attest to. If Mr. Khan names Jane Doe, the potential for Yale to retaliate against him in negotiations about his potential readmission to Yale to complete his degree and to whip up public scorn against him would be similar to that of a government trying to accomplish the same goals against a plaintiff. Consequently, while Mr. Khan does not presumptively enjoy the benefit of this factor, he should be given its protections for the same reasons undergirding it.

The sixth and seventh factors also weigh in Mr. Khan's favor. The sixth factor weighs "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor examines "whether the [defendant]'s identity has thus far been kept confidential." *Id.* at 190. Jane Doe's identity has been kept confidential for more than three years now. Her

identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial. Yale University's UWC policies and procedures kept her identity confidential in Mr. Khan's UWC proceeding. If anyone has suffered prejudice in this concocted saga, it is Mr. Khan, who was publicly and privately pilloried on the basis of Jane Doe's false accusations without ever being allowed to name her as his accuser when defending himself. Every single proceeding that has involved Jane Doe and Mr. Khan to this point has kept Jane Doe's identity confidential to protect her from a similar public pillorying. Consequently, as Mr. Khan seeks to put his life back together by complying with rules that Jane Doe has gladly embraced to protect herself, it will not prejudice Jane Doe in the slightest to continue to protect her from public scrutiny. Therefore, both the sixth and seventh factors weigh in Mr. Khan's favor.

Similar to the sixth and seventh factors, the eighth and ninth factors are linked, and Mr. Khan concedes that both do not weigh in his favor. The eighth factor examines "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [the defendant's] identity." *Id*. at 190. The ninth factor addresses "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Id.* at 190. Addressing the ninth factor first, Mr. Khan was acquitted in a highly publicized trial that was covered with no small vigor by the press from charging to verdict and that invoked widespread reaction at the height of the #MeToo movement. The media including the Yale Daily News insisted on publicizing and discussing the case long after the jury had delivered Mr. Khan's

acquittal. As soon as the instant action is filed, it will garner intense public scrutiny, which will widely publicize Jane Doe's name. Therefore, under no circumstances can Mr. Khan or counsel anticipate an atypically weak public interest in learning the parties' identities. Turning to the eighth factor, the public's interest will undoubtedly be aided tremendously if Mr. Khan is forced to disclose Jane Doe's identity. Both of these factors weigh against Mr. Khan.

The tenth and final factor examines "whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality." *Id.* at 190. There are none. Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life. If he is forced to name Jane Doe, Mr. Khan will be forced to choose between Scylla and Charybdis. If he chooses to continue with his claims against Jane Doe for the wrongs that she has committed against him, Mr. Khan will lose any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree. If he chooses to discontinue his claims, Mr. Khan may or may not succeed in negotiating a return to Yale University to complete his degree. However, he will certainly forfeit forever the opportunity to seek legal redress for the wrongs Jane Doe has committed against him. Consequently, the tenth factor weighs in Mr. Khan's favor.

## CONCLUSION

Mr. Khan still holds out hope, albeit small hope, that he can piece his life back together by completing his degree at Yale University, either through a negotiated agreement with Yale University or by injunctive relief from the Court. At the same time, Jane Doe has destroyed Mr. Khan's life through her false accusations against him. Consequently, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

Therefore, for the foregoing reasons, Mr. Khan respectfully requests that the Court grant his motion to proceed against Jane Doe by identifying her with a pseudonym.

The Plaintiff

BY:

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT 06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

**CERTIFICATION**

I hereby certify that on September 23, 2019 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

_____
NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT


_____
SAIFULLAH KHAN,                  )
                Plaintiff,       ) No: 3:19-cv-1966-KAD
                                 )
        v.                       ) March 18, 2024
YALE UNIVERSITY, ET AL.,         )
                Defendants.      ) 9:57 a.m.
_____  )
                                 Brien McMahon Federal Building
                                 915 Lafayette Boulevard
                                 Bridgeport, CT 06604




                        MOTION HEARING



B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.
```

Courtroom Deputy:                Official Court Reporter:
Kristen Gould, Esq.              Tracy L. Gow, RPR

                   Chambers: 203.579.5522

```
 1   A P P E A R A N C E S:
     For the Plaintiff:
 2        NORMAN A. PATTIS, ESQ.
          Pattis & Associates, LLC
 3        383 Orange Street, First Floor
          New Haven, CT 06511
 4        203-393-3017
          Email: npattis@pattislaw.com
 5
     For Defendant Yale University:
 6        GIOVANNA T. WELLER, ESQ.
          Carmody, Torrance, Sendak & Hennessey, LLP
 7        50 Leavenworth Street
          P.O. Box 1110
 8        Waterbury, CT 06721-1110
          203-573-1200
 9        Email: gweller@carmodylaw.com

10   For Defendant Jane Doe:
          BRENDAN GOOLEY, ESQ.
11        JAMES M. SCONZO, ESQ.
          Carlton Fields
12        One State Street
          Suite 1800
13        Hartford, CT 06103
          860-392-5036
14        Email: bgooley@carltonfields.com
                  jsconzo@carltonfields.com
15
     Also Present:
16        SAIFULLAH KHAN, Plaintiff

17

18

19

20

21

22

23

24

25
```

```
1                (Call to Order, 9:57 a.m.)

2                THE COURT:  All right.  Good morning, everybody.  We

3      are here on the matter of Khan v. Yale University, et al.

4                Counsel, please identify yourselves for the record.

5                MR. PATTIS:  Norm Pattis, on behalf of Mr. Khan,

6      Judge.

7                THE COURT:  Good morning, Mr. Pattis.  It's been a

8      while.

9                MR. PATTIS:  Good morning, Judge.  Good to see you.

10               Yeah, I know.  I was just saying to my colleagues

11     that I hadn't been in this building since before the

12     pandemic.

13               THE COURT:  It's --

14               MR. PATTIS:  And I've missed it.  So it's good to be

15     back.

16               THE COURT:  Welcome back, Mr. Khan.

17               MR. GOOLEY:  Your Honor, Brendan Gooley, on behalf

18     of Defendant Jane Doe.  With me is Attorney Jim Sconzo; and

19     Attorney Giovanna Weller, who represents Yale.

20               MR. SCONZO:  Good morning, Judge.

21               MS. WELLER:  Good morning, Your Honor.

22               THE COURT:  All right.  I had scheduled oral

23     argument on Jane Doe's Motion to Dismiss that is premised

24     largely on Mr. Khan's disclosing of her identity on social

25     media and some activity that flowed from that.
```

1          Since then, I think other -- the issues that are

2    probably implicated a little bit in the Motion to Dismiss

3    have been the subject of a additional motions, which we are

4    not taking up today, and that is Jane Doe's motion for a

5    protective order, restricting and limiting Mr. Khan's access

6    to and use of certain information, as well as a motion by Mr.

7    Khan to remove the pseudonym of Jane Doe, largely because the

8    reasons he had sought the pseudonym at the beginning was out

9    of respect or concern for Yale's Title IX procedure, which is

10   no longer a concern.

11         We're not going to resolve those issues today, and I

12   think I'm going to ask -- first of all, they're still being

13   briefed.  And once they are fully briefed, or maybe even

14   before they're fully briefed, I'm going to ask that all of

15   those issues be taken up by one of our magistrate judges, who

16   will in due course.

17         Turning back to the Motion to Dismiss.  I think some

18   procedural background is helpful.  As I indicated, Mr. Khan

19   had filed, initially, the request for a pseudonym for Jane

20   Doe at a time when he indicated he was still perhaps

21   interested in pursuing and returning to Yale to get his

22   degree.  And out of recognition of their Title IX procedures

23   and the confidentiality of those procedures, he sought a

24   pseudonym for Jane Doe.

25         He analyzed the factors, the Second Circuit factors,

1    from "In re: Sealed Plaintiff" sort of through his lens,

2    through his eyes, and how those factors impacted his

3    interest.

4           Ordinarily, when a pseudonym is being contemplated,

5    it's through the interest for the person for whom the

6    pseudonym is going to be used.  And, so, Yale chimed in on

7    the motion for a pseudonym, and agreed, but sort of did it

8    through the eyes of Jane Doe as the accuser in the Title IX

9    proceedings.

10          And I granted the motion and ordered that all

11   pleadings and references to Jane Doe would use that

12   appellation throughout the litigation.

13          That was the only order I had entered.  Jane Doe had

14   not appeared at that time.  There was no request for a

15   protective order in terms of the use of her name, and I

16   certainly didn't *sua sponte* issue a prior restraint with

17   respect to anybody as to Jane Doe's identity.

18          So, with that background, I don't think -- and you

19   can tell me why I'm wrong -- I don't think that there would

20   be a basis at this juncture to dismiss the claims that Mr.

21   Khan brings for violating the Court's order; and if I've

22   missed something or there's an order there that did what I --

23   created a situation where he would be precluded from doing

24   what he has since done, then, by all means, share that with

25   me.  But I don't see that on this docket.

1          That said, I do have some concerns.  Attorney

2    Sconzo.

3          MR. SCONZO:  Thank you, Your Honor.  Good morning.

4          I hear what Your Honor says, but the consequence of

5    that would be that any litigant, then, could obtain such an

6    order and basically go worldwide and disseminate the name of

7    the person for whom they seek anonymity in this court.  So

8    there'd be no reason for the order, so to speak.

9          And I would say this, too, that before --

10         THE COURT:  But the protection that it affords is in

11   the confines of the litigation and public access to the

12   docket and who can look at the docket and know who the

13   players are.

14         I have not found a single case that says an

15   anonymity order serves as a prior restraint.  I just haven't

16   found it, Attorney Sconzo.

17         MR. SCONZO:  I would say this, Judge.  Well, I think

18   that's how the parties in this district have always viewed

19   this -- and, in fact, before what Mr. Khan did, Attorney

20   Pattis and I had been speaking candidly with each other, and

21   he had said, Jim, you know, we're going to move to remove

22   that order; and I said, in effect, Sure, you know, do what

23   you need to do, we'll respond to it.

24         So I think, in candor, even Attorney Pattis would

25   have to concede that nobody envisioned once this order

1   attached, that a litigant could take an end-run and

2   disseminate a name for whom they sought anonymity in this

3   case.

4          So, I do understand what Your Honor is saying, and I

5   do understand that you did not make an order against prior

6   restraint.  But the disclosure of the name in this case came

7   after Mr. Khan sought anonymity of the name and the

8   disclosures, as we've shown, Your Honor, all related to

9   litigation.  It's not as though he wrote some poem with her

10  name in it.  His disclosures are all defined by this

11  litigation and directed to this litigation.

12          So it seems to me, if there's no sanction for this,

13  then any litigant who obtains such an order will just ignore

14  it and go and say, Well, I didn't file a pleading so I can

15  use that name wherever I want.

16          MR. PATTIS:  May I address the Court, Judge?

17          THE COURT:  You may.

18          MR. PATTIS:  This is going to be a long piece of

19  litigation, and I think that our candor toward you and

20  respect to one another matters, because this is our first

21  time before you.

22          Everything Attorney Sconzo said is true.  I have

23  represented Mr. Khan since 2015, since he was first arrested,

24  I represented him in the 2018 trial and we've presented him

25  through the various appellate proceedings.  It is I who

1   drafted the complaint.  It is I who sought the protective

2   order on his behalf.  And it was our understanding at that

3   time that we would be governed by Yale process, as it were,

4   which was to keep anonymity of the complainant.  And,

5   frankly, it was the Supreme Court's decision that sort of --

6   and it's conclusion about the application of the honor code

7   to her -- to Jane Doe, that tipped the balance.

8           It was my expectation that we were going to file

9   something with this Court.  In listening to you, I'm

10  thinking, Jeez, I'm not half as good a lawyer as I thought

11  because that was a defense that wasn't raised, but it's

12  because it was an issue I didn't --

13          THE COURT:  Slow down.

14          MR. PATTIS:  It was a defense I didn't raise because

15  it's an issue I didn't see.  I saw it as Attorney Sconzo did,

16  and I did provide him notice that we would be seeking relief

17  from the order.

18          So I appreciate the Defense, and I appreciate the

19  concern about prior restraints, but I was operating as though

20  the order applied where it may not have, and I wanted you to

21  hear that from me.

22          THE COURT:  Okay.  Thank you.

23          I'll circle-back to where I was.  What I have seen

24  does give me concern about what's going on here, and some of

25  the things that Mr. Khan has done that give me pause.

1    Because some of the tenor and tone of the posts feel less

2    like his plan is to have his rights vindicated as it is to

3    exact retribution, and that is not the purpose of the use of

4    our courts or litigation generally.

5            When he has posted about the litigation and talking

6    about attending depositions, there is a sense of an intent to

7    intimidate.  There is a sense of an intent to harass.  The

8    idea of sort of mobilizing the Internet -- I mean, this is

9    borderline doxing, and it's very concerning.

10           The flipside of this -- I know that we have -- Mr.

11   Khan has an interest, if I'm reading these attachments

12   correctly, in challenging the structure of Title IX

13   proceedings generally, separate and distinct from this

14   litigation.

15           And I guess I would ask Attorney Sconzo or Attorney

16   Gooley, the motion for protective order that you filed, that

17   sort of seeks to achieve essentially what you're arguing

18   should have been or already was in place.  Is that a fair

19   statement?

20           MR. SCONZO:  Well, partly, Your Honor.  I think that

21   motion did not address the dissemination of the name, but

22   that motion addressed the dissemination of disclosures made

23   in discovery.  So the name issue still, I think, remains the

24   largest concern.

25           THE COURT:  And that issue is teed up with

1   plaintiff's motion.  You would agree with that, I assume?

2            MR. SCONZO:  I would agree with that.  I would also

3   agree with, we have a lot more to say on that.

4            THE COURT:  Okay.  Attorney Pattis, what is your

5   client's plan?

6            MR. PATTIS:  When I have talked to Mr. Sconzo, to

7   alert him we'd be filing a motion, it was my belief that we

8   would be filing a motion, and I was awaiting some instruction

9   from Mr. Khan.  And I have permission to discuss this with

10  you.

11           His disclosure surprised me, and I think the word I

12  used in one of my pleadings was "flummoxed," and led to

13  discussions between he and I about whether the

14  attorney-client relationship would continue, because my view

15  is that orders of the court are orders of court, and I

16  construed it strictly, and in ways that perhaps the Court

17  doesn't think are necessarily justified on the pleadings.

18  But that's how I saw it.

19           He, and for good reason, regards himself as the

20  victim in this case, not Jane Doe.  They had a consensual

21  experience, a jury vetted it, and Mr. Khan has been deprived

22  of the promise that Yale made him for a bright future in the

23  country of his adoption by using a procedure that might best

24  be described as a "kangaroo court," and encouraging and

25  enabling a young woman to come forth and lie about him to the

1   world, and now she seeks the protection for the consequences

2   of her action.

3        Now, the Court may say that his purpose is revenge

4   and revenge is inappropriate.  Accountability is not.  And to

5   the degree that he will seek punitive damages, those are to

6   punish and deter, and deterrence is a uniquely personal

7   function.

8        So I think he wants her to feel what he felt.  What

9   it was to have every publication that reports on things like

10  that, like Time Magazine reported him to be a rapist, when,

11  in fact, what he did was engaged in what one headline writer

12  called "messy sex."  And sex, typically, when it's consensual

13  among people above a certain age, may be messy, but it's not

14  a crime.

15       And, so, for reasons of her own, and for reasons of

16  a highly-mobilized political group, Mr. Khan was held out to

17  be a criminal and had to fight for his liberty, and he won.

18  And when he went back to Yale, the anger was mobilized and

19  they forced him to the street, and he's lost the promise.  I

20  remind you, he was recruited from a refugee camp in

21  Pakistan -- or Afghanistan, rather -- and came to the United

22  States, educated at Yale's expense.  He does want

23  retribution.  His future was stolen from him.

24       Now, having said that, I'm in a tough spot on the

25  "prior restraint" issue because I don't think this does come

1   close to doxing, and I know a lot about that from the Alex

2   Jones case in the state court, where there is a new theory in

3   the defamation cases called "stochastic terrorism," which is,

4   in an interconnected digital universe, a defamatory remark

5   placed in the right context will inflame the online world.

6         You know, I don't see that Mr. Khan is responsible

7   for the interest the public has taken in this case.  The

8   interest the public has taken in this case goes to the very

9   injury or the harm he's suffered.  In the eyes of many, he's

10   a rapist because she said he was, and it's never been shown.

11         So I hear what you're saying, Judge.  What we've

12   come to court -- Mr. Khan has recently had jaw surgery.  He's

13   able to speak.  It's a little difficult.  I told him to

14   expect a rebuke from the Court and to be put -- that he would

15   be placed on notice that further misuse of court material

16   would not be tolerated and would come with consequences.

17         I hear the Court saying that it may not be prepared

18   to drop that hammer yet.  But I think his intentions are to

19   fully and fairly --

20         THE COURT:  Still thinking about it.

21         MR. PATTIS:  Well, I hear you.

22         But, I mean, I think that his intentions -- finally,

23   to answer your question -- are to fully and fairly litigate

24   this case and bring it to a jury.  I've explained to him that

25   any other questions about his compliance with court orders

1  could cost him my representation of him, because it'll raise

2  questions about my credibility.

3       And, candidly, there was discovery mishap in the

4  Jones case that in state court had cost me a suspension that

5  is still being litigated in the appellate courts.  I'm

6  uniquely sensitive to these issues, and Mr. Khan knows it.

7       So his intentions are to obey your orders, but to

8  fight hard to vindicate his claims.

9       MR. SCONZO:  Judge, may I be heard just briefly.

10      THE COURT:  Of course.

11      MR. SCONZO:  I see an merging notion in this case

12  that Mr. Khan was vindicated.  Mr. Khan was found "not

13  guilty" in a criminal standard, in a criminal court.  Nothing

14  has been decided in a civil context, and I want to make that

15  clear.  Mr. Khan was dismissed from Yale on a standard far

16  different than a criminal process for rape, and he has not

17  proven that my client lied, and I need to put a stop to this

18  notion I see building momentum that he's been vindicated.

19      He's not be vindicated of anything, Judge.  The only

20  charge he's been absolved of by a jury is that the State did

21  not prove beyond a reasonable doubt that he raped my client.

22  That is it.  The rest is yet to be determined.

23      THE COURT:  All right.  I agree.  And I think that

24  that puts a finer point on the concerns that I have.  I mean,

25  obviously, Mr. Pattis, I'm sure you're going to have a

1 conversation with your client about his own exposure as he

2 publicly accuses, outside the confines of a courtroom, when

3 he publicly accusing her of a false accusation.

4      What I don't want -- because Mr. Sconzo is correct.

5 This case is going to be decided on the basis of the

6 allegations, presumably to a jury who will have to make a

7 determination not beyond a reasonable doubt, but by a

8 preponderance of the evidence whether or not it was a false

9 accusation.

10      And we will get the case there. We had a few starts

11 and stops as it bounced around various appellate courts. It

12 found its way back. But what I don't want, I don't want the

13 case litigated on X or on Youtube or on TikTok. That just

14 can't happen. That starts to infect the entire process, and

15 if I -- and I think I do have a legitimate concern that that

16 might be on Mr. Khan's list of things to do, in terms of

17 having his viewpoint out there in the world repeated to the

18 Jane Doe's detriment, at a time when nothing has been

19 decided. That's what I'm concerned about.

20      MR. PATTIS: So, Judge, I understand the Court's

21 concerns. And this was a subject of litigation, on the basis

22 of a special public interest appeal to the Connecticut

23 Supreme Court in the case of *State of Connecticut v. Fotis*

24 *Dulos,* and I would ask you to consider looking at the briefs

25 there. That was a case involving the serious death of a

1    mother of five children.  I believe his co-defendant,

2    Michelle Troconis, just had a verdict.

3           I represented Mr. Dulos, who wanted an aggressive

4    presentation of his defense and questions about it raised in

5    the press, given the extraordinary interest the press had

6    taken in the case, so we did so.  The State moved for a gag

7    order, and the Court issued one.  We got the Connecticut

8    Supreme Court to grant a special public interest appeal,

9    because it was our understanding that the prohibition against

10   potentially prejudicial pretrial publicity was limited to

11   those circumstances in which it was likely to not have an

12   influence on the jury, and that remarks distant in time by a

13   nontrial -- by a nonlawyer were protected speech, and that

14   what the Court had engaged in the Dulos case was a gag order.

15          We never got a decision on that case because Mr.

16   Dulos committed suicide.  But it is a -- given the way that

17   the waves are breaking in here today, that's an issue that

18   might well come before this Court.  And it may be, that as

19   the Court considers its own comfort level with the conduct of

20   litigants here and what is to come next, that the Court may

21   request briefing on that issue.  It would be an easy enough

22   thing, for me certainly, to re-tool the Dulos brief, because

23   I think there are legitimate issues in there.

24          You know, there is an inherent authority for courts

25   to regulate the conduct of trial participants.  We saw that

1    in another public-interest appeal I handled involving

2    Mr. Jones' speech about trial counsel in the Sandy Hook case

3    on his broadcast.  The Court did issue a decision in that

4    case.  We took *certiori* to the United States Supreme Court on

5    that, and it was denied.

6         All of which to say, I think that the extra-judicial

7    statements of non -- of non-counsel trial participants are

8    protected speech unless it can be shown that they're

9    imminently likely to cause prejudice to the jury.  And we're

10   so far out, I don't think he should be kept -- he should be

11   ordered to not speak about the case.  And if he seeks to try

12   it on X or Youtube, the normal rules with respect to

13   defamation and so forth would apply.

14        I'm not sure that the Court has authority to bar

15   commentary about a case prior to his coming to trial.  The

16   case isn't even scheduled for trial yet, as near as I can

17   tell.

18        So it I think there are issues here that the Court's

19   going to potentially have to grapple with, and I recite these

20   other cases only because a lot of time and effort went into

21   briefing them and it might provide the Court with something

22   to think about.

23        THE COURT:  Attorney Sconzo.

24        Thank you, Attorney Pattis.

25        MR. SCONZO:  I respect what Attorney Pattis is

1  saying, but I think he's jumping the gun here.  We were

2  motivated by what we saw -- and I think Your Honor commented

3  on this a few moments ago -- what we saw was retaliatory

4  action.  The comments were, in our opinion -- and we set the

5  sequence up in your briefing.  They started with -- it's a

6  retaliatory sequence of events starting with e-mails directly

7  to my client that were found harassing, after he had sought

8  to hide her name.

9       So it's not that we have taken the position in our

10  motion that he can't speak about the case.  We haven't even

11  got there yet.  What we have said is he's used her name

12  publicly after telling the Court that he wouldn't do that,

13  and the Court entering an order to that effect, and then

14  harassing my client and using her name publicly, telling the

15  world "a gift is going to come," and sure enough he does

16  this.

17       So it's not quite as Attorney Pattis is portraying.

18  I don't think we're there yet.  We're in the immediacy of

19  this harassing, vile conduct that does need to be addressed,

20  Your Honor, and we'd be happy to brief it further.  But the

21  conduct is vile and out-of-bounds, and I've been doing this a

22  long time, Your Honor.

23       MR. PATTIS:  Judge, I have too, and "vile" doesn't

24  even come close to it.  This isn't even close to vile or

25  harassing.  If somebody brings a suit against me and I

1   comment on them, "I can't wait to see you in court," and I
2   pose their name online, that's vile?  That's harassing?
3        I mean, that's too tender, by far, for a regime
4   governed by First Amendment protections.
5        MR. SCONZO:  It's vile, Your Honor, when he knows
6   full well the platform he's using to do this, the setup that
7   he's using, and then what has happened.  And we showed Your
8   Honor what has happened -- "the Nazis have taken this," "the
9   fringe element has taken this," that's exactly what he
10  intended and he's gotten his intention.
11       MR. PATTIS:  And this is the brave new world of
12  stochastic terrorism.  And, you know, I don't know that the
13  First Amendment -- I mean, I'm reasonably confident that
14  nobody contemplated social media, and I'm reasonably
15  confident that our times have become unhinged.
16       You know, I've recently tried a case, Judge, for six
17  months in D.C., involving the Proud Boys.  And what I saw in
18  the courtroom didn't correspond to what appeared online from
19  both the right and the left.  And, so, I recognize that
20  social media has created this inflammatory tinderbox, where
21  any spark can light a fire.  But I don't think that the
22  person who lights the spark is intentionally -- or, is
23  responsible for the fire, absence a showing of intent to do
24  so.  And merely asserting that he must have had that intent
25  because it occurred is *post hoc ergo propter hoc*.

1     THE COURT:  Well, I think there's certainly language

2  that your client shows from which a reasonable inference

3  could be drawn that he was looking to set the spark or he was

4  looking to visit upon her something similar to what has been

5  visited upon her.

6     MR. PATTIS:  I don't know that anything has.  I

7  mean, you know, I endured the Sandy Hook defaults trial for

8  Alex Jones, and they brought in an expert on digital imprint

9  and stochastic terrorism, and then they brought on the family

10  to talk about the contact that was made in that.  Because

11  there was a default entry, causation was established.  And so

12  it was assumed that when a drop -- when a pebble was dropped

13  in an ocean, every ripple was the responsibility of Mr.

14  Jones.  The plaintiffs never had to prove that.  And the

15  plaintiff -- or the defendant in this instance never even

16  tried.

17     THE COURT:  Well, I'm not -- I'm not going to

18  dismiss the case.  I think that, consistent with the parties'

19  earlier understanding, with the issues now I think adequately

20  joined between the motion to remove the pseudonym and the

21  motion for the protective order, what the parties' conduct

22  looks like going forward is teed up.

23     I am going to direct -- I suppose you can take an

24  immediate appeal to the Second Circuit if you'd like,

25  Attorney Pattis, but I am going to direct Mr. Khan not to at

1  least use Jane Doe's real name in his social media

2  communications until such time as all of those motions are

3  adjudicated by the Court.

4         And, Mr. Pattis, I would ask you to ask your client

5  whether he has any concern about following that order.

6         MR. PATTIS:  May I have a moment, please?

7         THE COURT:  Yes.

8         (Conferring.)

9         MR. PATTIS:  Judge, I had a chance to speak to Mr.

10  Khan, and he said, What is it exactly that the Court is

11  saying?  And I said I understand it to say the following:

12  That unless and until there is a ruling on a series of

13  motions related to the anonymity order, that he is not to use

14  Jane Doe's name in any social media posting or publish --

15  publications to the world; and what's more -- I went a little

16  further than what I thought I heard the Court say, and that

17  he should take down any that he has control over right now.

18         He -- and he understands that, and he would like to

19  address you himself, Judge.

20         THE COURT:  Okay.

21         MR. KHAN:  Good morning, Your Honor.

22         THE COURT:  Good morning.

23         MR. KHAN:  Apologies for the mask.  I am at risk for

24  infection.

25         THE COURT:  No apology necessary.

1          MR. KHAN:  Your Honor, I have never harassed Jane

2    Doe, the various characterization.  Although I'm not privy to

3    what Attorney Sconzo has been saying because of the sealed

4    nature of the motions, my intention has never, as you said,

5    with the tenor of my posts, has never been to intimidate or

6    harass anyone.  It's merely to conduct a robust discovery.

7          And my interpretation of what the Second Circuit

8    said in Footnote 1, Brief 3, and what the Supreme Court said

9    in Footnote 39, and on those two bases I -- yes, I completely

10   apologize.  I jumped the gun, I misunderstood, and I

11   profusely apologize, and I will completely abide by any

12   punishment or order that the Court gives me.

13         As my mom used to say, the English equivalent is "no

14   good deed goes unpunished" -- simply, abiding by the Yale

15   confidentiality policy.  I should have just sued her under

16   the name originally and fought this back then.  I'm sorry for

17   this.

18         I -- in 2015 until 2018, at the Superior Court with

19   Judge Blue and Judge Fischer, I complied with all of the

20   laws; at the Yale Title IX policy, I complied with all of the

21   laws; and in the various bouncing around from District, to

22   Second, to Supreme, I've complied with all of the laws of

23   Your Honor, including the requests of Attorney Sconzo --

24   including, yes, when -- there have been three contacts

25   between me and Jane Doe:

1        One, I had my attorney request settlement discussion

2  from Attorney Sconzo, and they did it by phone -- they had no

3  appetite.  I don't consider that harassment.

4        The second was -- I looked it up.  I thought that,

5  while attorneys are not allowed to contact opposing clients,

6  it didn't -- it said that it's okay for clients to do so, as

7  long as it's respectful.  I carbon-copied Attorney Sconzo on

8  that e-mail.  When I was told by Attorney Sconzo to never

9  contact her again, I obliged.  I have not done so.

10        And the third time was I got -- the situation again

11  changed over the years.  I e-mailed Attorney Sconzo directly.

12  He considers that harassment again.  In none of those things

13  have I been intending to harass or intimidate anyone.

14        And, so, if Your Honor would like to, for lack of a

15  better word, put a gag order on me, I will completely oblige.

16  I will do exactly as you say.

17        MR. PATTIS:  Objection.  We're not going to -- we're

18  not completely oblige to any gag orders, Mr. Khan.  Speak to

19  me before you offer to comply with gag orders to the Court.

20        MR. KHAN:  I'm saying, if Your Honor -- I don't know

21  the laws here, I'm still not a citizen yet, but I will seek

22  whatever judicial -- I will always comply with the law.

23        I come from a lawless country, and I have tremendous

24  respect for this court, and I'm just seeking justice for the

25  pain that the client caused me -- and Yale.  It'll take me

1    nine more years, I don't care.  I'm sorry for --

2            THE COURT:  It's all right.

3            MR. KHAN:  Thank you.

4            THE COURT:  All right.  I think that -- well, let me

5    ask, Attorney Weller:  Does Yale have anything to add to this

6    landscape?

7            MS. WELLER:  I'm sorry, Your Honor.  Can you repeat

8    the question?

9            THE COURT:  Did Yale have anything they wanted to

10   add to this landscape?

11           MS. WELLER:  No, Your Honor, not at this time.

12           THE COURT:  All right.  Thank you.

13           I think that the motion for protective order is

14   broad enough in its contours that I think, in terms of Mr.

15   Khan's access to and use of discovery in this case, which

16   obviously will include Jane Doe's true name, and the motion

17   regarding removing the pseudonym, when fully briefed will, I

18   think, allow for a complete vetting of all of the issues that

19   have been decided -- or discussed, or sort of identified here

20   this morning.

21           Until those motions are adjudicated, I'm going to

22   direct that Mr. Khan sort of abide by the status quo that was

23   the parties' understanding as to the impact of the pseudonym

24   order, which means, Mr. Khan, I'm going to direct you not to

25   publicly identify her again on social media or elsewhere

1 until those rulings are issued.

2          In large respect, Attorney Sconzo, Attorney Gooley,

3 as you know, once something is on the Internet, it's very

4 difficult to scrub.  It's probably impossible to scrub.  So

5 there's nothing I can do about that *vis-a-vis* Mr. Khan or

6 otherwise, frankly.

7          Was there anything -- I'm not sure that there's

8 anything else we can do.  I am going to deny the Motion to

9 Dismiss for the reasons I've already indicated.

10          Anything else we can do with respect to Mr. Khan,

11 Attorney Pattis?

12          MR. PATTIS:  Not today, Judge.

13          THE COURT:  Thank you.

14          Attorney Sconzo.

15          MR. SCONZO:  Just one thing on the last point, Your

16 Honor, and I think Attorney Pattis was prepared to do this.

17 Could Your Honor at least order that Mr. Khan take down what

18 he's posted?  I understand you can't order that people who

19 repost take theirs down, but you certainly could direct Mr.

20 Khan to take down his posts.

21          THE COURT:  Yeah, I don't -- I don't under -- I

22 don't pretend to have a full understanding of Mr. Khan's

23 social media presence.  Are we talking about a Facebook page,

24 a Twitter -- an X account?  Where -- is there a particular

25 situs that Mr. Khan generally posts to?  What's your

```
1   understanding, Mr. Sconzo?

2        MR. SCONZO:  My understanding is -- and I'm not that

3   savy with this stuff, but my understanding is it's on X.

4        THE COURT:  Okay.

5        MR. SCONZO:  And that's what I'm directing my

6   comments toward.

7        THE COURT:  Attorney Pattis, is there any objection

8   to her name being removed until such time as those motions

9   are adjudicated?

10       (Conferring.)

11       MR. PATTIS:  Judge, Mr. Khan is willing to take down

12  any posting her name on X or any other account under which he

13  has the ability to do so.

14       What?

15       (Conferring.)

16       MR. PATTIS:  He is willing to do so because of

17  respect for your orders, but he won't do so at Mr. Sconzo's

18  direction.  He would do so if that is the order of the

19  Court.

20       THE COURT:  Then that is the order of the Court.

21       All right.  Anything else we can do, from Jane Doe's

22  perspective?

23       MR. SCONZO:  No.  Thank you very much, Your Honor.

24       THE COURT:  All right.  Thank you for coming in,

25  Counsel.
```

1          MR. PATTIS:  Thank you, Judge.

2          (Proceedings conclude, 10:35 a.m.)

3

4                  C E R T I F I C A T E

5              RE: *Khan v. Yale, et al.*
                   Civil No. 3:19-cv-1966-KAD
6
                   Motion Hearing
7                  March 18, 2024

8

9       I, Tracy L. Gow, RPR, Official Court Reporter for the

10   United States District Court, District of Connecticut, do

11   hereby certify that the foregoing pages, 1 through 26, are a

12   true and accurate transcription of my shorthand notes taken

13   in the aforementioned matter to the best of my skill and

14   ability.

15

16                  /s/  TRACY L. GOW
                    Official Court Reporter
17                  U.S. District Court
                    915 Lafayette Boulevard, Room 216
18                  Bridgeport, Connecticut 06604
                    (203) 910-0323
19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Saifullah Khan,<br><br>Plaintiff,<br><br>v.<br><br>Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons;<br><br>Defendants. | Civil No. 3:19-cv-01966-KAD<br><br><br><br>JUNE 19, 2024 |

**RULING AND ORDER**

## I.   INTRODUCTION

In 2015, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") and Defendant Jane Doe ("Jane Doe") matriculated at Defendant Yale University ("Yale").  They went to the same Halloween party, went to a student orchestra performance together, returned to Trumbull College where they both lived, and woke up in her room.  *See* Compl. (ECF No. 1) ¶¶ 39, 41–43.  Shortly after, Jane Doe filed a Title IX complaint against Khan, alleging he raped her.  *See id.* ¶¶ 46, 48.  Khan was immediately suspended, criminally charged with four counts of assault, acquitted, and readmitted pending the disciplinary hearing. *See id.* ¶¶ 47–52, 58.  In October 2018, Yale suspended Khan again for unrelated issues.  *See id.* ¶¶ 60–64.  The following month, Yale's University-Wide Committee on Sexual Misconduct ("UWC") held a disciplinary hearing concerning Jane Doe's allegations and then voted to expel him.  *See id.* ¶¶ 74–80.

Khan now sues Yale, 12 Yale employees, unknown journalists, and Jane Doe for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., for breach of due

1

process concerning the disciplinary hearing, and various breach of contract and tort claims stemming from his expulsion. [1] Khan also asserts two counts specific to Jane Doe: defamation and tortious interference with a business relationship. When he filed this lawsuit, Khan moved to proceed against Jane Doe using a pseudonym and Yale filed a memorandum in support. District Judge Kari A. Dooley granted the motion.

The parties are embroiled in a key dispute: whether Jane Doe should enjoy continued anonymity as this case proceeds in litigation. Judge Dooley has referred several pending motions to me, two of which directly conflict and are the subject of this order: (1) Khan's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) ("Plaintiff's Motion to Vacate"); and (2) Jane Doe's Motion to Continue Anonymity (ECF No. 103) ("Doe's Anonymity Motion"). These motions are ripe for a ruling. For the following reasons, I **DENY** Plaintiff's Motion to Vacate and **GRANT** Doe's Anonymity Motion.

## II.     BACKGROUND

Given the comprehensive factual recitations from *Khan I* through *Khan IV*, *infra* at 4, I presume familiarity with the facts of this case and summarize only the procedure, facts, and evidence relevant to the pending motions.

### A.     Khan Moves to Litigate Against Jane Doe under a Pseudonym

When Khan filed this lawsuit on December 13, 2019, he also moved for permission to litigate against Jane Doe using a pseudonym. *See* Pl.'s Mot. Pseudonym (ECF No. 2); Exs. to Pl.'s Mot. Pseudonym (ECF No. 7). As Khan explained, Yale's UWC procedures require confidentiality of individuals and proceedings, and he wanted to maintain Jane Doe's anonymity

---

[1] Defendants Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, and Unknown Persons have not briefed the motions before this Court.

2

to comply with these procedures for one reason: "Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life." *Id.* at 9. Although Khan applied the Second Circuit's ten-factor test for determining whether a pseudonym is appropriate—as established in *Sealed Plaintiff v. Sealed* Defendant, 537 F.3d 185 (2d Cir. 2008)—he focused on why Jane Doe's anonymity would be beneficial to <u>him</u>, not her.[2]

In addition to Khan, Yale filed a memorandum explaining why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff. See* Yale Mem. Pseudonym (ECF No. 9). Yale explained why Jane Doe's anonymity was necessary to protect <u>her</u>. In brief, Yale lodged five main arguments: (1) as Plaintiff contended, the litigation involves highly sensitive and personal matters; (2) anonymity is an important safeguard to protect Jane Doe, a rape survivor, from likely reputational harms and media attention; (3) no party will suffer prejudice because Plaintiff knows her identity; (4) her identity has thus far been kept confidential; (5) public interest weighs in favor of protecting sexual assault survivors; (6) and, because it's in the public interest to conceal her identity, the public has an atypically weak interest in knowing her identity. *See id.*

On January 10, 2020, Judge Dooley granted Plaintiff's Motion. Judge Dooley reasoned:

> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

Text Order (ECF No. 12). The case has proceeded under a pseudonym since this ruling.

---

[2] I will address the ten-factor test later in this ruling.

3

**B.** **Judge Dooley's Dismissal of Claims Against Jane Doe and the Subsequent Appeals Process.**

On April 28, 2020, Jane Doe moved to dismiss the claims against her, arguing she enjoys absolute immunity from suit arising from her testimony at the disciplinary hearing, because it was a quasi-judicial proceeding. Judge Dooley granted her motion, and Khan appealed. *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021) (*Khan I*).

The Second Circuit certified the issue, among others, to the Connecticut Supreme Court on March 4, 2022. *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022) (*Khan II*). On June 27, 2023, the Connecticut Supreme Court ruled that Yale's disciplinary hearing procedure did not constitute a quasi-judicial hearing because it lacks procedural safeguards. The Supreme Court concluded Jane Doe does not enjoy absolute immunity or (at least at the pleading stage) qualified immunity. *See Khan v. Yale Univ.*, 347 Conn. 1 (2023) (*Khan III*) (denying absolute immunity). On October 25, 2023, the Second Circuit reversed in part Judge Dooley's decision and remanded the case for further proceedings consistent with the decision. *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023) (*Khan IV*) (reversing in part and remanding for further proceedings).

**C.** **Motion for Judgment of Dismissal and Hearing**

On December 27, 2023, Jane Doe moved for a judgment of dismissal as a sanction for Plaintiff publicly disclosing her identity and directly communicating with her about settlement. *See* Mot. Seal Emergency Mot. J. Dismissal (ECF No. 73) at 1. The substance of these communications have been filed under seal pursuant to a court order. *See* Hr'g Tr. (ECF No. 94).

Judge Dooley held a hearing on March 18, 2024. The topics discussed included Khan's posts on X, his direct contact with Jane Doe, and the standard for awarding sanctions. Jane Doe's counsel described Plaintiff's actions as a "retaliatory sequence of events starting with e-mails directly to [his] client that were found harassing, after he had sought to hide her name" and "using

4

66

her name publicly, telling the world 'a gift is going to come,' and sure enough he does this." *Id.* at 17:5–16. He also stated Nazis and "the fringe element" took interest in Plaintiff's posts. *See id.* at 18:5–10. Plaintiff's counsel conceded that he interpreted the anonymity restriction as applying to public posts, *see id.* at 8:14–21, Plaintiff's public disclosure of Jane Doe's identity "surprised" and "flummoxed" him, *id.* at 10:6–18, that his client wants accountability and for "her to feel what he felt," *id.* at 11:4–14, that Plaintiff wants to "fully and fairly litigate this case" before a jury, *id.* at 12:22–24, and that failure to comply with court orders could result in counsel's withdrawal, *see id.* at 12:24–13:2.

Judge Dooley expressed concern for Khan's social media tactics, stating "there is a sense of an intent to intimidate" and "[t]here is a sense of an intent to harass" in Khan's public posts about the litigation and depositions. *Id.* at 9:1–9. Judge Dooley reflected, "The idea of sort of mobilizing the Internet – I mean, this is borderline doxing, and it's very concerning." *Id.* She also explained that she did not want "the case litigated on X or on Youtube or on TikTok," clarifying, "I think I do have a legitimate concern that that might be on Mr. Khan's list of things to do, in terms of having his viewpoint out there in the world repeated to the Jane Doe's detriment, at a time when nothing has been decided." *Id.* at 14:12–19. Despite her reservations, Judge Dooley clarified that she had never issued a protective order preventing Khan from publicly using Jane Doe's identity, and so technically Khan did not violate a court order. *See id.* at 5:10–25.

Judge Dooley denied the motion but ordered Khan to refrain from publicly revealing Jane Doe's name until the pending motions are decided and to remove the posts publicly identifying her. *See id.* at 23:13–25:19. Regarding the pending motions, Judge Dooley reflected: "[C]onsistent with the parties' earlier understanding, with the issues now I think adequately joined

between the motion to remove the pseudonym and the motion for the protective order, what the parties' conduct looks like going forward is teed up." *Id.* at 19:18–23.

## III. DISCUSSION

The two motions at issue seek opposing relief: Plaintiff seeks to vacate Jane Doe's anonymity, and Jane Doe seeks to maintain it. Plaintiff filed his motion three days before Judge Dooley's hearing. *See* Pl.'s Mot. Vacate. Both Yale and Jane Doe object to the motion. *See* Yale's Opp'n (ECF No. 102); Doe's Opp'n (ECF No. 104). Jane Doe filed her respective motion on April 5, 2024, after the hearing. *See* Doe's Anonymity Mot. To date, Plaintiff has not responded.

### A. Jane Doe's Continued Anonymity Is Warranted.

Rule 10(a) of the Federal Rules of Civil Procedure requires the complaint's title to name all parties. *See* Fed. R. Civ. P. 10(a). While identifying the parties is an important component to ensuring the public's access to the courts, special circumstances sometimes warrant an exception. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Courts within the Second Circuit must use the non-exhaustive ten-factor balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*:

> (1) "whether the litigation involves matters that are highly sensitive and [of a] personal nature;"
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties;"
>
> (3) "whether identification presents other harms and the likely severity of those harms;"
>
> (4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure;"
>
> (5) "whether the suit is challenging the actions of the government or that of private parties;"

6

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal quotation marks and citations removed). The purpose of this test is to "weigh[] the plaintiff's need for anonymity against countervailing interests in full disclosure," *id.* at 189, including "public interest in disclosure and prejudice to defendants," *id.* at 193.

Judge Dooley evaluated these ten factors in her initial order. *See* Text Order (citing *Sealed Plaintiff*). She specifically noted the "sensitive and personal nature of the issues" (factor one), the risk of harm (factors two through four) and the absence of prejudice to the parties (factor six), and the lack of alternative procedures (factor ten), among the other relevant factors.[3] *Id.*

With the exception of factor seven (7),[4] none of the facts relevant to the factors considered by Judge Dooley have changed. As Yale points out, the subject matter still involves Jane Doe's

---

[3] I construe Judge Dooley's order to mean that she considered all *Sealed Plaintiff* factors but found these six factors the most compelling and—because the ten *Sealed Plaintiff* factors are non-exhaustive—considered other arguments raised by the parties that do not neatly fit into the ten-factor test.

[4] Factor 7 requires the Court to consider whether the identity of the person seeking anonymity has thus far been kept confidential. *See Sealed Plaintiff*, 537 F.3d at 190. As set forth in Jane Doe's Motion for Judgment of Dismissal and discussed during the hearing, Plaintiff——without Jane Doe's consent—disclosed Jane Doe's identity on social media. The Court has since ordered Plaintiff to remove his posts referencing Jane Doe's identity pending the outcome of these motions. The Court gives no weight to this factor given that Plaintiff's disclosure of Jane Doe's identity without consent from Jane Doe, at a minimum, undermines the spirit of the anonymity order in

7

alleged sexual assault, there has been no reduction of potential risk if Jane Doe's name is revealed, Plaintiff still does not argue he will be prejudiced if Jane Doe continues to proceed under a pseudonym, and no viable alternative to her confidentiality has been established since Judge Dooley's ruling.

Instead, Plaintiff argues there is no longer a need for Jane Doe's anonymity because he does not want to return to Yale anymore, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g et seq., does not cover Yale's investigation records, and the Connecticut Supreme Court's decision caused him to conclude Jane Doe is not entitled to anonymity because she is no longer a student. For several reasons, these arguments are unpersuasive.

First, it is of no moment that Plaintiff no longer wants to re-enroll at Yale. The *Sealed Plaintiff* standard focuses on the needs of the person seeking anonymity and balances those needs against the interests of the other parties and the public. *See Sealed Plaintiff*, 537 F.3d at 189 ("We agree that the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym."). In other words, Plaintiff's future plans, which are unrelated to Jane Doe, are irrelevant for the purposes of the *Sealed Plaintiff* factors. The only factor specifically related to the opponent is the sixth: whether the non-movant might be prejudiced by the anonymity. *See id.* at 190. Because Khan knows Jane Doe's identity, he will not be prejudiced by continued anonymity. *See Doe v. Smith*, No. 1:19-

---

place, and even came as a surprise to Plaintiff's attorney who was "flummoxed" and offered that he thinks Plaintiff wants "her to feel what he felt," including "[w]hat it was to have every publication that reports on things like [allegations of college campus sexual assault]." Hr'g Tr. at 10:11–14, 11:8–10. Giving weight to this factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe outside of the judicial process.

CV-1121 (GLS/DJS), 2019 WL 6337305, at *2 (N.D.N.Y. Nov. 27, 2019) ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff[']s identity publicly."). Plaintiff's desired outcome for this litigation does not equate to whether he will be prejudiced by her anonymity. Accordingly, this argument does not persuade me.

Second, Plaintiff argues that FERPA—which, in relevant part, requires universities to keep educational records confidential—does not apply to a university's investigation into potential criminal conduct. *See* Mot. Vacate at 5–6. As an initial matter, Judge Dooley did not find that FERPA required Jane Doe's anonymity. Rather, she determined that one of the factors warranting anonymity was "the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality." Text Order (ECF No. 12). To the extent Plaintiff regrets conceding that Yale's confidentiality policy applies to these facts, he cannot un-ring that bell.

In any event, the First Circuit addressed Plaintiff's very argument in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022). There, the plaintiff—a male MIT student who was expelled after being accused of sexually assaulting a female student and then sued the university for breach of contract and other state claims—sought to litigate under a pseudonym. *See id.* at 64–65. As a matter of first impression, the First Circuit established its own version of the *Sealed Plaintiff* test and concluded the district court erred in denying him pseudonymity.[5] MIT

---

[5] The First Circuit concluded the multi-factor tests, like the *Sealed Plaintiff* test, "do not establish a clear standard" and chose instead to use "the easily understood 'totality of the circumstances' standard, *see id.* at 69–70, outlining four paradigms in which pseudonymity is generally appropriate: (1) if the "would-be Doe" fears "coming out of the shadows will cause him unusually severe harm (either physical or psychological); (2) if "identifying the would-be Doe would harm 'innocent non-parties;'" (3) if identification could create a "chilling effect on future litigants who may be similarly situated;" or (4) if the lawsuit is "bound up with a prior proceeding confidential by law." *Id.* at 71–73.

argued that FERPA (and Title IX) only constrain the university during its own proceedings and that a student waives his right to confidentiality by filing a lawsuit. *See id.* at 75. While the First Circuit acknowledged that FERPA and Title IX do not impose "a gag order on individual participants," it nonetheless concluded MIT "misses the mark." *Id.* The First Circuit opined that "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. It explained that there is little basis to "lift the veil of pseudonymity" in a collateral attack, reasoning: "The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Id.*

To be sure, the facts are slightly different here insofar as Khan's identity is public and it is he (not a university) that seeks to reveal the identity of Jane Doe, who has been brought into this litigation against her will as a Defendant. Because she has not brought this case on her own volition, the public has an even greater interest to maintain her anonymity during this collateral attack in federal court. *See id.* Indeed, the risk of a "chilling effect" would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack. *See Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public ... has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'") (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

Third, Jane Doe graduated before this case was filed and so her status as an alumna is not a new or changed fact. *See* Yale's Opp'n at 2. Yale posits that Khan knew this when he first sought to litigate against her through a pseudonym in December 2019, and Khan has not filed an opposition to dispute this fact. *See id.* In his Motion to Vacate, Khan argues that the Connecticut

10

Supreme Court acknowledged her graduation forecloses Yale's ability to discipline her for failing to testify truthfully, and so the "obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired." This appears to be a more creative version of his FERPA argument. For the same reasons I did not find the FERPA argument warrants vacating the pseudonym order, I do not find Plaintiff's third argument compelling.

Accordingly, I conclude that Jane Doe's anonymity should be continued.

**B.     An Order Prohibiting Public Disclosure of Jane Doe's Identity Is Warranted.**

Having decided that Jane Doe may continue to proceed under a pseudonym, I must now evaluate the scope of that decision. *See* Hr'g Tr. at 19:18–23. Jane Doe requests that the following order be issued: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere. Plaintiff's claims will be dismissed with prejudice if he identifies Jane." Doe's Anonymity Mot. at 30. While Plaintiff has moved to vacate Jane Doe's anonymity, he did not object to this request. Because I do not have authority to involuntarily dismiss an action, *see* 28 U.S.C. § 636(b)(1)(A), I will limit my ruling to the first sentence and will leave issues of dismissal to Judge Dooley.

I conclude that Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her. But I do so with the acknowledgment that the relevant facts and procedural posture concerning Jane Doe's anonymity are unique. At first blush, her anonymity request does not appear to fit neatly within a specific legal framework.

**1.  *A Rule 26(c) Protective Order is Not Applicable.***

I begin with Federal Rule of Civil Procedure 26(c), which governs protective orders. *See* Doe's Anonymity Mot. At 11–15. Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts in this circuit have noted that, '[f]or purposes of a

11

protective order, good cause is established when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" *Qube Films Ltd. v. Padell*, No. 13–CV–8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 (RPP), 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (internal quotation marks removed)).

Certainly, the principles of Rule 26 apply insofar as the disclosure of Jane Doe's identity would cause her more than "annoyance, embarrassment, oppression, or undue burden," as I have explained above. But Plaintiff knew Jane Doe's identity before litigation. In this vein, Rule 26 does not apply insofar as her identity is not information learned through a document, responses to discovery requests or interrogatories, depositions, or otherwise. *See Bridge CAT Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983) ("Rule 26, however, which is entitled 'General Provisions Governing Discovery,' is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

In requesting an order prohibiting Plaintiff from publicly disclosing her identity, Jane Doe cites case law involving discovery. *See* Doe's Anonymity Mot. at 11–15. Take *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021), and *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020), two related lawsuits involving plaintiffs who were sex trafficked and sexually assaulted as minors and whose identities were not known to the accused defendants. These plaintiffs sought protective orders that required the defendants to keep their identities confidential from the public in exchange for their identities. *See Baram*, 2021 WL 3423595, at *3; *Nygard*, 2020 WL 4890427, at *3.

12

Because the defendants did not know their accusers' identities, the court's issuance of a protective order functioned as a discovery management tool under Rule 26. *See Baram*, 2021 WL 3423595, at *3. So too did *Plaintiffs #1–21 v. County of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015), *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), and the *Strike 3* and *Malibu Media* cases involve protecting a party's identity for discovery purposes. *See* Doe's Anonymity Mot. at 13–15. These cases therefore do not apply here.

### 2. *Based on record before Court Jane Doe's Request is Not a Prior Restraint.*

Having concluded that a Rule 26 protective order does not apply, I'd like to address potential concerns involving whether an order limiting a litigant's right to publicly disclose the identity of an individual—who has been granted anonymity in court—would serve as a "prior restraint." "A prior restraint is a governmental order or action 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The Second Circuit in *In Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), explained why a court's order preventing parties from speaking with the press did not violate the press's First Amendment rights. While the facts are of course different, its reasoning applies:

> The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and therefore public. A prior restraint deprives the public of specific news because it prevents publication. Although the restraining order in this case limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press.

*Id.* at 608. The Second Circuit concluded "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by

13

the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *Id.*

As with the parties in *In Application of Dow Jones & Co.*, Plaintiff did not object. While it is true Plaintiff moved to vacate Jane Doe's anonymity, it is also true that his motion is denied. Given this denial, he has not pointed me to specific legal authority or facts explaining why he should be given carte blanche to publicly disclose her identity outside of the litigation. Quite the opposite. During the hearing, Khan offered to comply with an order preventing such disclosure before his counsel objected. *See* Hr'g Tr. at 22:14–19 (Pattis: "Objection. We're not going to – we're not completely oblige to any gag orders, Mr. Khan. Speak to me before you offer to comply with gag orders to the Court."). While Plaintiff's counsel preserved his objection to future "gag orders," I construe Khan's testimony along with counsel's failure to oppose Jane Doe's argument to mean that Plaintiff concedes there is no legal justification supporting his desire to identify Jane Doe outside this litigation when the court has ruled she may litigate anonymously. In other words, this circumstance is similar to *In Application of Dow Jones* insofar as the parties do not object to such a court order, and therefore it is not a "prior restraint." 842 F.2d at 608.

As Judge Dooley explained during the hearing, Plaintiff's disclosure of Jane Doe's risks this case being litigated on X, TikTok, Facebook, or social media generally. *See* Hr'g Tr. at 14:4–19. I have reviewed all briefing and evidence filed under seal relating to Khan's public disclosure of Jane Doe's identity. I have also reviewed the hearing held before Judge Dooley on March 18, 2024 and her concerns about the how Khan's public disclosure of Jane Doe's identity has the potential to impact this case. I have reviewed Defendant Jane Doe's sur-reply filed under seal, Sur-Reply (ECF No. 114), which attaches exhibits evincing Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly. In light of the record before the Court, and for

14

the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

## IV.    CONCLUSION

For the above reasons, I **DENY** Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) and **GRANT** Jane Doe's Motion to Continue Anonymity (ECF No. 103).  I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.  Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.  Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration.  Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language.  If the parties agree, they may jointly file a Proposed Order.  If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

This is not a recommended ruling. This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

It is so ordered.

15

_/s/ Maria E. Garcia_
Hon. Maria E. Garcia
United States Magistrate Judge

16

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KHAN                                    :

v.                                      :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                  :    JULY 3, 2024

## LOCAL RULE 72.2 OBJECTION AND REQUEST FOR DE NOVO REVIEW BY DISTRICT COURT OF MAGISTRATE JUDGE ORDER AT CM/ECF NO. 119

On June 19, 2024, Judge Garcia issued a ruling and order concerning speech rights and pseudonymity.  Specifically, Judge Garcia ordered, among other things, Jane Doe's request for pseudonymity was a request for anonymity; Jane Doe was entitled to such pseudonymity; Jane Doe's continued pseudonymity is warranted; the request for pseudonymity in this case is not a discovery issue governed by FRCP 26; the Plaintiff may not identify Doe by name and that restriction on the Plaintiff's speech is not a prior restraint.

In accordance with Local Rule 72.2, the Plaintiff objects and requests de novo review by the District Court.  The Plaintiff objects to each finding and judgment in the memorandum except that FRCP 26 does not apply, including each of those matters specifically identified above as well as any other matters in the Order at CM/ECF Entry 119.

Even if Doe may proceed under a *pseudonym*, that is in the caption of the case, the Order constitutes an illegal *prior restraint*.  How the case is captioned is separate from whether the Court can enjoin or punish the Plaintiff under the circumstances for his protected speech.  The Order cannot be squared with Supreme Court precedent and current legal doctrine.

## I. BACKGROUND

The Plaintiff revealed Doe's identity, citing as his reason a footnote in the Second Circuit opinion in this case:

> While Doe's real name is known to the parties, Khan moved to pursue this civil action against her pseudonymously to avoid violating the privacy requirement of Yale's Sexual Misconduct Policy. That policy does not bind the federal courts, which generally require a complaint to "name all the parties." . . . . This court has, however, recognized judicial discretion to depart from Rule 10(a) when a party's interest in anonymity outweighs "both the public interest in disclosure and any prejudice" to the adverse party. . . . Because no party complains that the district court failed to balance these interests here or otherwise abused its discretion, **we do not pursue the matter further** and simply refer to defendant as "Jane Doe" in this opinion. . . .

*Khan v. Yale Univ.*, 27 F.4th 805, 809n.1 (2d Cir. 2022), *certified question* answered, 347 Conn. 1, 295 A.3d 855 (2023)(emphasis added; citations omitted).  He also cited reliance on Footnote 39 of the Connecticut Supreme Court opinion in this case.

*Khan v. Yale Univ.*, 347 Conn. 1, 53n.39, 295 A.3d 855, 887 (2023)

On June 19, 2024, Judge Garcia issued an order:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration. Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language. If the parties agree, they may jointly file a Proposed Order. If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

The Order is a prior restraint.

2

## II. THE ORDER IS <u>PLAINLY</u> A PRIOR RESTRAINT ON ITS FACE

Judge Garcia claims at 13–14 that the Order is not a prior restraint. The order is plainly a prior restraint on its face:

> A "prior restraint" on speech is a law, regulation or judicial order that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression.

*United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005). In the present case, the Order prohibits "publicly disclosing or revealing Jane Doe's identity . . . ." Order at 15. Prohibiting public disclosure is suppressing communication. By any logical measure, this order suppresses speech on the basis of its content.

## III. THE ORDER CANNOT BE SQUARED WITH *COX* OR *FLORIDA STAR*

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) has been settled law for almost a half-century. The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident. *Id.* at 471. The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia. *Id.* at 471–72.

The victim's name appeared in indictments. *Id.* at 472. The indictments were public records available for inspection. *Id.* at 472–73. A reporter learned the victim's identity through these public records and broadcast a report that named the victim. *Id.* at 473–74. The report was repeated the following day. *Id.* at 474.

3

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name. *Id.* at 474–75. Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475. The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern. *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489. Nonetheless, the Court concluded that a state **may not** "**impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* T 2/26/18 at 35. Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started. Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

Furthermore, Doe's position cannot be reconciled with itself. In this case, Doe maintains she is a victim of sexual assault by the Plaintiff. Attorney Sconzo made this argument forcefully at the March 26, 2014 hearing. See T 3/18/24 at 13–14. Let's assume for the moment, **strictly for the sake of the argument,** that is the case. The Court cannot impose sanctions on the Plaintiff for disclosing this

4

(ostensibly) true fact that is already available to the public in the public record:

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and hear what transpired can report it with impunity. There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it . . . .

*Cox* at 492–93. The Plaintiff participated in proceedings, and he can testify about them. This includes identifying Doe, by name, as she did in open court.

In the alternative, assuming for the sake of the argument that Doe is **not** a victim of sex assault by the Plaintiff, as the Plaintiff claims in this litigation, then she has no right to privacy for making false allegations against the Plaintiff. If her accusation is false, the Plaintiff has every right to publish the truth, including identifying Doe, in order to salvage his reputation: that Doe lied about him, and to identify Doe's name.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded on *Cox*. In *Florida Star*, Florida had a law that made it illegal to print, publish, or broadcast the name of a victim of a sexual offense. *Id.* at 526. The Florida Star published the name of *B.J.F.* in a police blotter by mistake. *Id.* at 527. This was in violation of the Florida Star's own policy of not publishing the name of sex assault victims. *Id.* at 528. B.J.F. filed suit sounding in negligence. *Id.* The trial court directed a verdict as to negligence *per se* in favor of B.J.F. *Id.* at 529.

The Supreme Court held that punishing the publication was unconstitutional. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its

5

release." *Id.* at 535. The "source" of the release in this case is the Connecticut Superior Court, not the Plaintiff. See T 2/26/18 at 35. "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

Note that this all is separate from how *this Court* elects to caption the case. *See Florida Star* at n1. This Court can caption the case however it wishes to. But the Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, has accused the Plaintiff of sexual assault. That is in the public record. Accordingly, it is beyond the power of this Court to punish the Plaintiff for publishing that fact, with her true name.

6

## IV. JANE DOE WANTS PSEUDONYMITY; SHE IS NOT ANONYMOUS

In the order, Judge Garcia frequently elides pseudonymity with anonymity. That is a mistake and part of why reliance on *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) is misplaced.

Anonymity is when a speaker's identity is not known. **Doe is not anonymous, and has never been anonymous.** Doe did not send an anonymous tip. Doe did not commence a lawsuit under a pseudonym. Doe testified under oath at the criminal trial, and used her full name in open court. *See* T 2/26/18 at 35. Doe's name is in transcripts that anyone can obtain from the Connecticut judicial branch. *Id.* Doe's name has been published online by a journalist. However protected by FERPA, Doe did not speak *anonymously* in the school proceedings: FERPA kept her name *confidential*, but the Plaintiff knew her name and her name was known during that process. He obtained knowledge of her identity lawfully. In this case, allowing Doe to proceed with a pseudonym does not make her anonymous, no matter what Judge Garcia supposes. Doe has never been anonymous and Doe is not anonymous now. It is error to elide these two principles as they are factually and legally distinct.

An **anonymous plaintiff** may, prior to revealing their identity, ask for permission to proceed under a pseudonym. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). Or a pseudonym may be necessary for the plaintiff to make out a complaint against unknown individuals, **where the identity of an anonymous defendant is not known** and that identity is sought through litigation. *See Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001). In such a case where a defendant is a Doe, the plaintiff does so for

logistics; not to preserve anonymity, but to defeat it. In both cases, the public is not aware of the identity of the anonymous party at the start of a lawsuit.

Undersigned can find no case where the specific identity of a defendant was a matter of public record before a suit and where a party was lawfully punished for disseminating that information.

Now, as to some defendants in defamation suits, there is a fundamental right to anonymously criticize government officials. Thus, the judicial process sometimes can protect that kind of anonymity. *See id.* There is no fundamental right to defame a private individual, however. This case does not involve an anonymous party criticizing the government or any attempt to uncover the identity of an anonymous defendant through the judicial process.

In accordance with *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), a **plaintiff** may attempt to proceed under a pseudonym to protect their identity. That is a situation where the identity of the party seeking the pseudonym is not known to the public before the lawsuit commences, and this was also the case in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) as well as *Doe v. Baram*, No. 20-cv-9522 (S.D.N.Y. Aug. 5, 2021)(2021 WL 3423595) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006). The public knowledge about the parties before litigation is different in those cases from the present case. Those Does are anonymous. This Doe is not.

In Connecticut, there are also situations where a *court* in opinions or in captions will use a pseudonym or initials for a victim. But there are no cases where a party—not an attorneys, but a party—is sanctioned or criminalized for identifying

individuals by name in public where the speaker knew that name before the litigation started.

If Doe's identity emerged in the discovery process, this case would be different. A court has power over the discovery process. A court can compel attorneys and parties to keep certain information confidential when it is obtained through the discovery process. This is codified in FRCP 26(c). But FRCP 26(c) does not apply to the present case. *See* Order at 12–13.

Protecting the identity of individuals from publication is also recognized as part of the criminal process, to protect against an "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or to protect "an ongoing investigation or the identity of witnesses in such a proceeding." *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746). This is obviously not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses. "A presumption of openness pervades federal dockets." *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937). To the extent the Court does not want the facts of the case reported or discussed publicly, the Court must identify a compelling interest. History indicates that there is no compelling interest in preventing the dissemination of truthful information already in a public court record. *See Florida Star v. B.J.F.*, *supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.

9

Undersigned is unable to find a case with an order like Judge Garcia's. In this case, the Plaintiff has always known Doe's identity. Her identity has been published publicly, and her identity is a matter of public record. Undersigned has not been able to find a case where the name of a **defendant**, **whose identity is known** and a **matter of public record** is lawfully protected by a gag order. Judge Garcia has created a new procedural right out of whole cloth, and improperly employs this new right to infringe on the Plaintiff's freedom of speech.

## V. NO EQUITY JURISDICTION : VAIN OR FUTILE THING

Setting aside the First Amendment for a moment, the Court lacks equity jurisdiction to effect the injunction against the Plaintiff. It is a well-established, ancient principle that "equity will not do or require the doing of a useless, vain, or futile thing." 27A Am.Jur.2d 629, Equity § 91 (2008)[1]. According to Judge Garcia, the interest in the injunction enjoining the Plaintiff's speech is in preserving Doe's anonymity. **But Doe is already not anonymous.** Either the purpose of the order is

---

[1] *See* 30A C.J.S. Equity §16 ("A court sitting in equity will not do, or require the doing of, a vain or useless thing; it will not use its authority to accomplish a useless purpose"); *see also All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905 (11th Cir. 2000)("the law does not require the performance of vain or useless things"); *Realty Income Tr. v. Eckerd*, 564 F.2d 447, 458 (D.C. Cir. 1977) ("equity should not require the doing of a vain or useless thing" [internal quotation marks omitted]); *Bd. of Sup'rs of Louisiana State Univ. v. Fleming*, 265 F.2d 736, 738 (5th Cir. 1959)("[t]he law does not require the doing of a vain and useless thing"); *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957)(same); *Sch. Bd. of City of Charlottesville, Va. v. Allen*, 240 F.2d 59, 64 (4th Cir. 1956)("equity does not require the doing of a vain thing"); *Mitchell v. Chambers Const. Co.*, 214 F.2d 515, 517 (10th Cir. 1954)("[e]quity will not do a useless or vain thing"); *Szynkowicz v. Szynkowicz*, 140 Conn. App. 525, 536, 59 A.3d 1194 (2013)("equity will not grant a decree that is ineffectual"); *c.f. O & G Indus., Inc. v. Plan. & Zoning Comm'n of Town of Beacon Falls*, 232 Conn. 419, 429, 655 A.2d 1121 (1995)("The law does not require the doing of a useless thing").

10

to a vain or useless end—or the underlying purpose is actually something else. For example, the purpose may be to chill or prevent the Plaintiff from expressing his views about the proceedings, or Yale, or the suit, or the Court. To such an unspoken end, the order may not be feckless. But the order cannot preserve Doe's anonymity.

Doe was not anonymous when the suit commenced. There is no equity jurisdiction to enjoin the Plaintiff from publicly identifying Doe if the interest is in preserving Doe's anonymity because Doe is not anonymous and equity will not do a vain or useless thing. There is no way to put the toothpaste back in that tube. The cat is out of the bag.

## VI. JUDGE GARCIA IMPROPERLY PRESUMES HARM WITHOUT A FACTUAL PREDICATE TO FIND HARM

To find a compelling interest requires evidence be adduced. Here, there was no competent evidence adduced by Doe or expert testimony or anyone that Doe might suffer harm from the disclosure (order at 8); that other individuals might be chilled from coming forward (order at 10), or what the Plaintiff desires, (order at 8); or that Doe's future plans will be harmed by the disclosure. See *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) ("courts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests . . . .); *see also id.* at 270.

## VII. CONCERNING FORFEITURE OR WAIVER

Undersigned notes that he is working under difficult circumstances.

**Undersigned still does not have access to substantial portions of the docket**—any

11

sealed portions are wholly inaccessible to undersigned.  *See* ECF No. 132 (still pending).  Undersigned was retained less than a week ago for free speech issues.  Undersigned is operating under unusually pressured circumstances, as detailed in the motion for extension of time at ECF No. 131 which was denied. *See also* Motion to Set Aside Final Extension Order, *Pryor v. Brignole*, Connecticut Appellate Court AC44253[2] (explaining context).  Failure to identify issues should not be regarded as forfeiture or waiver but a product of exceptionally difficult and unfair circumstances.

## CONCLUSION

For the foregoing reasons, the Court should sustain the objection to the Order by Judge Garcia, CM/ECF No. 119.

Respectfully submitted,

SAIFULLAH KHAN

JULY 3, 2024

/s/ *Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

---

[2] *Available at*
https://appellateinquiry.jud.ct.gov/DocumentDisplayer.aspx?AppId=2&DocId=gMjW%2fzUjBIoWyeKEsY7DvA%3d%3d.

12

**CERTIFICATION**

I hereby certify that on July 3, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/_____
Mario Cerame

13

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KHAN                                    :

v.                                      :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                  :    JULY 4, 2024

### SUPPLEMENTAL BRIEF TO CM/ECF ENTRIES 152, 153, 72.2 OBJECTION

The following was mistakenly left out of the objection at entries 152 and 153.

### VII. JUDGE GARCIA IMPROPERLY APPLIED, CONSTRUED THE FACTORS CONCERNING ANONYMITY

In addition to the order improperly infringing on the Plaintiff's freedom of

speech, at pages 6–10, Judge Garcia misapplies in part the factors concerning

whether a party may proceed under a pseudonym.

**Judge Dooley specifically noted that the matter had not yet been briefed.**
Judge Garcia did not ask for briefing on these issues before ruling.

#### A. Relevant Legal Standards

A an order to which a party objects under Local Rule 72.2 is reviewed de

novo. Local Rule 72.2.

Judge Garcia properly cites the factors at issue, as set forth in *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008):

Courts within the Second Circuit must use the non-exhaustive ten-factor

balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed*

*Defendant*, 537 F.3d 185, 189 (2d Cir. 2008)(emphasis added):

    (1)   whether the litigation involves matters that are highly sensitive and
           [of a] personal nature;

    (2)   whether identification poses a risk of retaliatory physical or mental

harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the **defendant** is prejudiced by allowing the **plaintiff** to press his claims **anonymously**, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

## B. The Test Applies to an Anonymous Plaintiff, and the Defendant is Neither Anonymous Nor a Plaintiff

This has already been discussed in the objection. This test is for a plaintiff whose identity is not known at the start of litigation—a plaintiff who wishes to proceed under a pseudonym. The factors are not designed for the situation at hand. Judge Garcia cited no cases on point applying the factors to a defendant like in the present case.

## C. Factor One: The Subject Matter is Public

The present case concerns falsehoods in a criminal prosecution. The statements at issue were made in open court, under oath, and without anonymity. Criminal prosecutions of such a serious nature are plainly a public matter.

The present case also concern's Yale's abuses of its disciplinary system and inappropriate use proceedings under federal law to hurt the Plaintiff. Yale's

2

93

reputation for educating leaders in society needs no citation, and the Connecticut Supreme Court admonished Yale for shortcomings in the proceedings. These issues are also at stake in this case and that is very much a public matter. This factor tilts sharply against allowing a pseudonym.

### D. Factor Two: No Competent Evidence to Support

Doe testified about the issues at stake in this case in the criminal court, and there has been no evidence adduced that she suffered harm from those proceedings. Litigation is of course stressful for anyone, but there is no *evidence adduced* that she will be harmed any less if she proceeds under a pseudonym. There was no *evidence adduced* that indicates Doe has or will suffer retaliatory physical or mental harm. There is no testimony from any expert, and there was no evidence of any threats posed to Doe. The existence of this factor is purely speculative. Furthermore, Doe is not an "innocent non-party," being neither innocent (as pleaded) nor a non-party. This factor tilts against allowing a pseudonym.

### E. Factor Three: No Competent Evidence to Support

This factor is evaluated substantially the same as the previous factor. Doe testified about the issues at stake in this case in the criminal court, and there was no evidence adduced that she suffered harm from that proceeding. There is no evidence that she will suffer less harm if she is allowed to proceed under a pseudonym. There is no evidence adduced in support of this factor, and the Plaintiff has not been able to challenge the validity of that non-existent evidence in an adversarial hearing. This factor tilts against allowing a pseudonym.

### F. Factor Four: No Competent Evidence to Support

3

94

This factor is similar to factors two and three. Doe testified about the issues at stake in this case in the criminal court, and there was no evidence adduced that she was particularly vulnerable to possible harms of disclosure. There was no competent evidence that Doe suffered trauma from offering testimony in the criminal court or that she suffered retaliation for her testimony, or any other evidence in support of the existence of this factor. There is no evidence that she will suffer less harm if she is allowed to proceed under a pseudonym. There is no evidence adduced in support of this factor, and the Plaintiff has not been able to challenge the validity of that non-existent evidence in an adversarial hearing. This factor tilts against allowing a pseudonym.

## G. Factor Five: Both Public and Private Actions

On the one hand, Doe is certainly a private individual, and Yale is a private school. However, Yale claims that it acted pursuant to federal law in the Title IX proceedings. Inasmuch as the litigation challenges Yale's actions in those proceedings, the suit in part challenges federal action. And Yale's reputation is well established as educating leaders of society. This factor probably tilts in favor of a pseudonym, but not sharply so.

## H. Factor Six: No Prejudice

As discussed above, this factor concerns an anonymous plaintiff, and Doe is neither anonymous nor a plaintiff. Otherwise, as Judge Dooley concluded, there is no evidence of prejudice *in the proceedings*.

The goal of the litigation, however, is for the Plaintiff to salvage his reputation. If this factor is construed in a manner to allow the Court to restrict his

4

speech, it is deeply prejudicial to the Plaintiff. There are public facts and allegations, made in open court, and tying his hands to be able to respond to these allegations hurts him and hurts counsel's ability to do his job. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Like in *Gentile*, there has been press about these proceedings. Yale's student newspaper published about it, and there have been a number of statements about the case. Like in *Gentile*, restrictions on speech concerning matters that are already in the public possession. *See id.* at 1046 ("Much of the information provided . . . had been published in one form or another . . . . The remainder, and details petitioner refused to provide, were available to any journalist willing to do a little bit of investigative work." [citation omitted]). This factor either tilts against allowing a pseudonym or is a wash.

## I. Factor Seven: The Defendant's Identity is not Confidential

Again, this factor applies to a **plaintiff** whose identity is unknown, not to a **defendant.** Regardless, however, Doe's identity is a matter of public record. It is a farce to pretend it is confidential. This factor tilts against allowing a pseudonym.

## J. Factor Eight: Public Interest is Furthered

Because this is a deeply factual case, the public's understanding of Yale's culpability is advanced by knowing Doe's identity. The public has a right to know the full facts about Yale's misdeeds and errors in judgment, and Doe's identity and the Plaintiff's identity are part of that calculus. This factor tilts against allowing a pseudonym.

## K. Factor Nine: Not an Atypically Weak Public Interest

The case revolves around a question of fact, not of law: whether Doe lied,

5

whether Yale unfairly punished the Plaintiff for this lie, what Yale and Yale officials knew and didn't know, whether the beliefs of Yale officials were reasonable. This is not a theoretical case of counting angels on the head of a pin and abstract points of law. The case is deeply factual. This factor tilts against allowing a pseudonym.

## L. Factor Ten: Does not Apply

Factor ten does not apply. Doe's identity is already a matter of public record. The substance of the statements at issue were repeated in open court, under oath. Her identity is already not confidential. The inapplicability is a result of applying the case to a scenario that is not appropriate—misunderstanding the legal standard. Accordingly, the factor does not apply.

## M. As a Whole

Reviewing the factors as a whole, the calculus tilts against allowing Doe to proceed under a pseudonym.

Respectfully submitted,

SAIFULLAH KHAN

JULY 4, 2024 _/s/ Mario Cerame ct30125_
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

6

HIS ATTORNEYS

## **CERTIFICATION**

     I hereby certify that on July 4, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/_____
Mario Cerame

7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JULY 24, 2024 |

## YALE DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 72.2 OBJECTION

Yale University and the twelve individual Yale University Defendants (collectively,

"Yale Defendants"), hereby file their Response to the Plaintiff's Objection to Magistrate Judge

Garcia's Ruling and Order at ECF 119 ("Ruling and Order") and Request for *De Novo* Review

(ECF 153) (hereinafter, "Plaintiff's Rule 72.2 Objection").[1] The Yale Defendants incorporate

and adopt the arguments in Jane Doe's Response to Plaintiff's Rule 72.2 Objection, dated July 9,

2024 (ECF 168).

Judge Garcia properly concluded that "without an Order preventing Plaintiff, directly or

indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and

there is a reasonable likelihood this case could be litigated on social media." Ruling and Order at

15. Beyond that, Judge Garcia's Ruling and Order recognized that the "public has an abiding

interest in ensuring that the values underpinning the confidentiality protections imposed by

FERPA and Title IX are not subverted by collateral attacks in federal court." Ruling and Order at

10, citing *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 76 (1st Cir. 2022).

---

[1] This Court's July 8, 2024 Text Order, which sets the time for a response to the Plaintiff's Rule 72.2 Objection, was directed specifically at the Defendant, Jane Doe. The Yale Defendants have submitted filings pertinent to the Ruling and Order, such as their Objection (ECF 102) to the Plaintiff's Motion to Vacate and their earlier Memorandum in Support (ECF 9) of the Plaintiff's Motion for Permission to Litigate Claims against Jane Doe Using a Pseudonym (ECF 2). These filings are referenced throughout the Ruling and Order. (*See, e.g.* Ruling and Order, at 2, 6-8, and 10). The Yale Defendants, therefore, submit this Response.

{N6010184}

The Ruling and Order is thoughtful, well-reasoned, and narrowly tailored to what Judge Garcia acknowledged are the relevant facts and procedural posture that make Jane Doe's anonymity "unique." Ruling and Order at 11. Plaintiff has failed to show that the Ruling and Order was clearly erroneous, and his Objection must be overruled.

Respectfully submitted, Yale Defendants

By: _____

Giovanna Tiberii Weller (ct11187)
Patrick M. Noonan (ct00289)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: gweller@carmodylaw.com
Email: pnoonan@carmodylaw.com
Email: mlaurato@carmodylaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on July 24, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Giovanna Tiberii Weller

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JULY 30, 2024 |

**EXHIBITS RELATED TO PLAINTIFF'S RULE 72.2 OBJECTION**

Defendant Jane Doe respectfully submits the following Exhibits related to Plaintiff's Rule

72.2 Objection: (1) Access Guidelines; (2) Email from Lillian Perry, Official Court Reporter II,

Judicial District of New Haven; and (3) Corrected Transcript, with additional redaction by Jane

Doe.


DEFENDANT JANE DOE,


By: _/s/ Brendan N. Gooley_
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT  06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
        bgooley@carltonfields.com

Her Attorneys

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 30th day of July 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

<div align="right">

<u>    */s/ Brendan N. Gooley*    </u>
Brendan N. Gooley

</div>

2

https://www.jud.ct.gov/faq/courtrec2.html

Court Records FAQs - CT Judicial

https://www.jud.ct.gov/faq/courtrec2.html

CF Bookmarks

Other

Open, unless sealed by the court order.

**Sexual assault files**

Open, with identity of victim masked.

**Victim's Identity in Sexual Assault and Risk of Injury Cases**

Comment: Closed, except to the accused. The name and address of the victim are confidential (C.G.S. 54-86e). Restrictions on disclosure of other identifying information about such victim is to be determined by the court and can be redacted only upon order of the court, except that such information shall be available to the accused. Reference in a sexual assault file to the name and address of the victim shall be redacted from any copies provided to the public.



| From: | Perry, Lillian |
|---|---|
| To: | mlaurato@carmodylaw.com |
| Cc: | Gooley, Brendan N.; Sweetland, Kelli |
| Date: | Wednesday, July 17, 2024 11:34:46 AM |
| **Importance:** | High |

## EXTERNAL SENDER: This Message is from outside the organization.

Good morning, Maria

Would you please discard the transcript I delivered on Monday and use this copy in its place; an invoice will not be submitted as I indicated previously.   I have removed the last name of the victim per CGS 54-86e on page 47 which was stated on the record.  I have also included Attorney Gooley and the Office of the Chief State's Attorney  so they have in their possession the corrected transcript and would request any previously delivered transcript also be discarded.

As the Office Court Reporter for the Judicial District of New Haven, I am appreciative that this was brought to my attention and, along with my administration's guidance, we are able to rectify it.

Thank you very kindly, Lilly

**Lillian Perry**
**Official Court Reporter II**
**Judicial District of New Haven**
**235 Church Street – Seventh Floor**
**(203) 503-6825**

**From:** Perry, Lillian
**Sent:** Monday, July 15, 2024 4:06 PM
**To:** mlaurato@carmodylaw.com
**Subject:**

Hi   As promised.  Invoice to follow.

Thank you, Lilly

**Lillian Perry**
**Official Court Reporter II**
**Judicial District of New Haven**
**235 Church Street – Seventh Floor**
**(203) 503-6825**

```
NO: NNH CR15 0162194          :  SUPERIOR COURT

STATE OF CONNECTICUT         :  JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                           :  AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN               :  FEBRUARY 26, 2018
```

**CORRECTED**


BEFORE THE HONORABLE BRIAN T. FISCHER, JUDGE and JURY



A P P E A R A N C E S :


   Representing the State

      ATTORNEY MICHAEL PEPPER
      SENIOR ASSISTANT STATE'S ATTORNEY
      235 Church Street
      New Haven, Connecticut 06510


   Representing the Defendant

      PATTIS AND SMITH LAW FIRM
      ATTORNEY NORMAN PATTIS
      ATTORNEY DANIEL ERWIN
      383 Orange Street
      New Haven, Connecticut 06510



                       Recorded and Transcribed By
                       Mary Lou Coppola
                       Court Recording Monitor
                       235 Church Street
                       New Haven, Connecticut 06510

```
 1              Jane            [NAME OMMITTED] ,

 2     Having been duly sworn, was examined and testified as

 3   follows:

 4              THE COURT:  And you could have a seat, ma'am.

 5              Just pull that chair up and that microphone you could

 6              pull it down and that'll amplify your voice, but

 7              please try to keep your voice up the best you can.

 8              With that, I'll look to the State of Connecticut.

 9              ATTY. PEPPER:  Thank you.

10   DIRECT EXAMINATION BY ATTY. PEPPER:

11      Q    Jane            how old are you?

12      A    I'm 24 years old

13      Q    Do you live in Connecticut?

14      A    I don't.

15      Q    Did you at one time?

16      A    I lived here during college.

17      Q    And where was college?

18      A    College was Yale University.

19      Q    When did you start Yale and when did you leave Yale?

20      A    I started Yale in 2012 and I graduated in 2016.

21      Q    Okay.  And what kind of degree?

22      A    I double majored in Slavic literature and Biology.

23      Q    And are you working out of state now?

24      A    I am.

25      Q    Okay.  When -- When you came to Yale how old were

26   you?

27      A    I was 18.
```

```
NO: NNH CR15 0162194          :  SUPERIOR COURT

STATE OF CONNECTICUT          :  JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                            :  AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN                :  FEBRUARY 26, 2018
```

C E R T I F I C A T I O N

   I hereby certify that the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District
of New Haven, at New Haven, Connecticut, before the Honorable
Brian T. Fischer, Judge, on the 26th day of February, 2018.


   Dated this 21st day of March, 2018, in New Haven, Connecticut.


*Lillian M. Perry, OCR 7/17/2024*

_____
Mary Lou Coppola
Court Recording Monitor

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KHAN | : |
| v. | :    3:19-cv-1966 (KAD)(MEG) |
| YALE UNIVERSITY et al. | :    OCTOBER 8, 2024 |

**EMERGENCY MOTION FOR LIMITED STAY OF**
**ORDER RESTRICTING SPEECH**

Plaintiff seeks an emergency limited stay of the order for him to in no way communicate, directly or indirectly, the identity of Doe. *See* ECF No. 119. Plaintiff requests permission from this Court to deliver any necessary documents, without redaction, to the Department of Homeland Security, U.S. Citizenship and Immigration Services ("DHS"), as per the October 3, 2024 Letter from DHS. *See* attached Letter. Doe does **not** consent. Plaintiff has also attempted to reach counsel for Yale and has not received a response yet.

Under the circumstances, Plaintiff seeks immediate **emergency** review as the documents must be supplied to and in the possession of DHS by October 24, 2024.

Specifically, Plaintiff points out that responding to the letter as to items 1 and 2 would violate the present order from this Court:

1. . . . Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.

Both documents contain Doe's name. Plaintiff does not intend to submit any other documents containing Doe's name aside from responses to these two requests.

**Plaintiff faces execution if deported.** This is literally a Matter of Life and

Death for Plaintiff. Plaintiff believes therefore it is of utmost importance that he comply fully with the request from DHS, that he do everything possible avoid even the shadow of a possibility of any administrative mishap to the extent he is able to. Plaintiff could be killed if he does not.

Plaintiff notes that his last communication with DHS occurred three years ago, on November 2, 2021. At that time, an interview was taken. At that time, Plaintiff submitted the same documents requested here. Plaintiff was supposed to receive a decision within 45 days. He still has not, because of these documents.

Plaintiff believes that any alternative to submitting the documents imperils his Life. On the basis of his past experiences with DHS, including but not limited to the facts above, Plaintiff is understandably afraid of Kafka-esque administrative failures. He believes a delay or administrative error caused by redactions or explanations could get him killed. Plaintiff *has already submitted these documents* to DHS, elevating and legitimizing his concerns about administrative mishaps that could cost him his life.

Plaintiff's fears are exacerbated by political discourse in the coming election cycle concerning deportations of individuals *accused* of crimes, nevermind acquittals.

Plaintiff is rationally afraid for his life under the circumstances, and accordingly requests a limited stay or lifting of the Order of this Court silencing him; *see* ECF no. 119; strictly for the purposes of responding to the request from DHS as described above.

As to constitutionality, Plaintiff has already argued extensively in other

2

filings why the present order is illegal. Such arguments do not necessitate or occasion repetition here.

This Court may alter an injunctive order when there is a change in circumstances. This clear and present danger to the Plaintiff's Life constitutes such a change in circumstances.

Plaintiff must have these documents in the possession of DHS by Thursday, October 24, 2024. Under the circumstances, Plaintiff respectfully requests that the Court render judgment by Monday, October 21, 2024, if not before then, so that he has adequate time to comply with the request by DHS, and, if necessary, seek emergency stay.

**CONCLUSION**

For the foregoing reasons, the Court grant the limited stay or limited lift of the order, and that such judgment be rendered by October 21, 2024.

Respectfully submitted,

SAIFULLAH KHAN

October 8, 2024

*/s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

3

**<u>CERTIFICATION</u>**

I hereby certify that on OCTOBER 8, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/_____
Mario Cerame

4



**U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

| DATE: 10/03/2024 |
| FILE NO. A 208484528 |
| FORM NO. I-589 |

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.
3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.
4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024**.

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

USCIS, Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102
Fax # 973-848-3101
NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72
(REV. 10/05)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH YOUR RESPONSE**



**U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

| DATE: 10/03/2024 |
| FILE NO. A 208484528 |
| FORM NO. I-589 |

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.

2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.

3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.

4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024**.

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

USCIS, Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102
Fax # 973-848-3101
NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72
(REV. 10/05)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH
YOUR RESPONSE**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | OCTOBER 14, 2024 |

## OBJECTION TO PLAINTIFF'S MOTION FOR LIMITED STAY

Defendant Jane Doe ("Jane") respectfully objects to Plaintiff's Motion For a Limited Stay (ECF 201 ("Plaintiff's Motion")) of the orders protecting her name.

## I. PRELIMINARY STATEMENT

The record in this case demonstrates that Plaintiff cannot be trusted with Jane's name and that he does not respect Court Orders or his discovery obligations. Plaintiff exclaimed that this case is his "war," and because of that the Court must take extra caution to evaluate anything Plaintiff submits to the Court, particularly when it concerns Jane. (*See, e.g.*, ECF 200 at 46:11–13 ("The Court: . . . . You just said that I should take your client at his word. Well, *your client sat in that chair three months ago and was dishonest with me*." (emphasis added).)

It is not necessary for Plaintiff to disclose Jane's name in order to comply with the request issued by U.S. Citizenship and Immigration Services ("USCIS"). Counsel for Jane contacted counsel for Plaintiff, explained how Plaintiff could respond to the USCIS Request without revealing Jane's name, and asked Plaintiff to agree to do so. (*See* **Exhibit A**.) Plaintiff refused and called this Court's Orders protecting Jane's name "patently illegal." (**Exhibit B**; **Exhibit C**.)

Plaintiff also refused to provide Jane with the documents he plans to submit to USCIS. Plaintiff refused to do that even though Plaintiff long ago should have disclosed to Jane in

discovery his full immigration file and all documents and information about the other women and men who have accused him of sexual misconduct. Jane cannot fully assess what Plaintiff is arguing about in his Motion because Plaintiff has not complied with his discovery obligations, as well as Jane's request that he provide the documents at issue in his Motion.

The Court should not consider Plaintiff's Motion given that Plaintiff will not provide Jane with the documents at issue. Regardless, the Court should deny Plaintiff's Motion because there is no need for Plaintiff to disclose Jane's name, because Plaintiff cannot be trusted with any disclosure of Jane's name, and because Plaintiff's failure to comply with his discovery obligations and provide the documents at issue leaves Jane unable to properly respond to Plaintiff's arguments.

## II.   PLAINTIFF'S MISCONDUCT IN THIS CASE

Plaintiff's request to disseminate Jane's name must be considered in the context of Plaintiff's misconduct in this case, particularly his misconduct with respect to Jane's name. The Court is well aware of that misconduct. (*E.g.*, ECF 75, ECF 123-1; ECF 200.) Jane will not rehash that misconduct here, but it is important to note that Plaintiff continues to maintain that this Court's most recent Order prohibiting him from "directly or indirectly" revealing Jane's name allowed him to make a series of posts encouraging others to post Jane's name. (*See, e.g.*, ECF 119; ECF 200.)

The bottom line is that Plaintiff's misconduct in this case demonstrates that:

- (1)  Plaintiff is intent on harassing Jane and misusing this Court's process to do so. (*See, e.g.*, ECF 75; ECF 114 (containing statements by Plaintiff about harassing Jane).)

- (2)  Plaintiff disregards Orders of this Court and then argues that he "misunderstood" the Orders. (*See, e.g.*, ECF 94 at 21:9–11; ECF 123-1; ECF 200 at 46.)

## III.   THE REQUEST FROM USCIS

Against that backdrop, the Court should view Plaintiff's Motion with a high degree of skepticism. The USCIS's Request does not require the disclosure of Jane's name. USCIS has

requested (1) the "official transcript" from Plaintiff's criminal trial, (2) "a certificate of disposition regarding" the criminal case, and (3) "documentation" related to "a protection order filed against [Plaintiff] in Dearborn, Indiana." (USCIS Request.)

- The "official transcript" from Plaintiff's criminal trial does *not* contain Jane's full name. The Court will recall that a prior version of the transcript may have mistakenly contained Jane's full name, but the Official Court Reporter corrected the transcript such that the official transcript does not include her full name. (*See* ECF 186 (showing that the Official Court Reporter corrected the transcript and that the Corrected Transcript does not contain Jane's name other than her first name); *see also* ECF 200.) The USCIS Request does not prohibit Plaintiff from redacting Jane's first (or last) name. Plaintiff should submit the corrected transcript and redact Jane's first name.

- The portion of the "official transcript" from the criminal trial in which the jury returns its verdict is "a certificate of disposition regarding" the criminal case. That portion of the transcript does not include either Jane's first or last name. Plaintiff can thus comply with this request without disclosing Jane's name. Indeed, Plaintiff can comply with this request without producing any additional documents whatsoever because he will be submitting the entire corrected transcript. Plaintiff has indicated that he is planning to respond to this request with a document other than the portion of the "official transcript" in which the jury reads its verdict, which will be a needless disclosure of Jane's name.

- The "protection order filed against [Plaintiff] in Dearborn, Indiana" was filed by a non-party who claimed that Plaintiff sexually assaulted him. That documentation should not include Jane's name. Jane had no involvement in that matter. It is therefore curious why Plaintiff appears to claim in his Motion that this Request requires the disclosure of Jane's name. (*See* Motion at 1 (seemingly asserting that documents responsive to both of USCIS's document requests contain Jane's name).) (As noted below, Plaintiff's counsel has since noted that he is unsure whether these documents contain Jane's name.) USCIS has only asked for "documentation of th[e] protection order," which seems to allow Plaintiff some discretion in terms of what to produce. Plaintiff should not need to disclose Jane's name to respond to this request because Jane's name should not be in the applicable documents.

## IV. PLAINTIFF'S MOTION AND A BRIEF SUMMARY REGARDING DISCOVERY

Plaintiff's Motion makes sensational claims about the purported importance of Plaintiff's response to USCIS's Request. (Motion.) Plaintiff has prevented Jane from properly responding to those claims, however, because he has not produced the immigration documents and documents about the other people who accused him of sexual misconduct, including the individual who filed

3

the Protection Order in Indiana. Without those documents, which Plaintiff did not object to producing but has still not produced, Jane cannot thoroughly respond to Plaintiff's Motion. Plaintiff has been under an obligation to produce this information for many months and the Court should not consider his Motion unless and until Plaintiff complies with his discovery obligations.

In January 2024, Jane requested that Plaintiff produce:

> All documents and communications, other than communications with your attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct. . . . This Request also includes authorizations sufficient to obtain all documents requested in this Request.

(**Exhibit D**.) Plaintiff did not object to that Request (or any of Jane's other Requests). He therefore should have produced all documents and communications concerning all allegations that he engaged in sexual misconduct many months ago. Among other things, Plaintiff did not produce the documentation related to the "protection order filed against [him] in Dearborn, Indiana."

In addition to asking for these documents in discovery, which Plaintiff did not object to, Jane asked Plaintiff immediately after he filed his Motion to provide her with the documents from the Indiana Protection Order that Plaintiff plans to submit to USCIS. (Exhibit A.) Plaintiff refused. (Exhibit C ("As to the Indiana documents, we will not provide you with a copy [of] these documents. More specifically, we will not provide you with a copy of *any* of the documents at issue. These documents are not discoverable. . . ." (emphasis in original)).)

Jane cannot respond to why her name may be relevant to that matter because Plaintiff will not produce the documents. This Court should not entertain Plaintiff's Motion unless and until Jane's counsel has an opportunity to analyze these documents and file an additional brief.

Plaintiff's refusal to produce the documents is concerning because the documents may contain sensitive information about Jane other than just her name if, as Plaintiff's Motion suggests,

4

they contain her name.  Given Plaintiff's history, this raises a serious question regarding whether

the real goal of Plaintiff's Motion may be to reveal sensitive information in conjunction with Jane's

name.  Jane cannot evaluate that issue because Plaintiff will not produce the documents.

Even more concerning, the USCIS Request indicates that Plaintiff "testified" at USCIS

regarding another allegation of sexual misconduct against him, and Plaintiff has not produced that

testimony to Jane.  The non-disclosure of Plaintiff's testimony to USCIS about another allegation

of sexual misconduct is particularly troublesome because that information is also responsive to

another request Jane issued and Plaintiff did not object to seeking relevant immigration records:

> [A]ll documents and communications, other than communications with your
> attorneys, concerning your immigration status since October 31, 2015, including
> but not limited to all documents and communications submitted to and received
> from immigration officials, as well as authorizations sufficient to obtain these
> documents and communications.

(Exhibit D.)  In his response to that Request, Plaintiff referred Jane to eleven documents, which

were largely non-substantive (*e.g.*, there were automated emails acknowledging receipt of certain

things Plaintiff apparently submitted or non-substantive status updates—they were certainly not a

transcript or recording of testimony Plaintiff gave to USCIS).  Plaintiff also wrote:  "Please provide

an authorization sufficient to obtain further documents you require."  (**Exhibit E**.)

Jane sent Plaintiff an authorization for immigration records over two months ago, but

Plaintiff did not sign it despite saying he would.  (**Exhibit F**.)  During a recent meet and confer,

counsel for Plaintiff indicated that Plaintiff had instead obtained records from immigration

officials and that Plaintiff was planning to produce those.  Plaintiff has not done so.  Jane therefore

does not have documents relevant to the claims in Plaintiff's Motion (and this case more generally).

Plaintiff's failure to provide relevant immigration records and documents regarding the

Indiana Protection Order that he now claims require the disclosure of Jane's name, leaves Jane

unable to properly respond to the claims that Plaintiff makes to try to convince this Court to allow him to release Jane's name in contravention of the Court's Orders, which were entered to protect Jane from further publication of her name by Plaintiff.

## V.     EFFORTS TO RESOLVE THIS DISPUTE

On October 9, 2024, counsel for Jane attempted to resolve the Parties' dispute regarding the USCIS Request by sending the email attached as Exhibit A, which detailed her position as set forth above and proposed a solution that counsel believed would be amenable to Jane and would thus spare the Court additional time in addressing this issue.  In response, counsel for Plaintiff sent the email attached as Exhibit B.  Plaintiff's counsel then sent the letter attached as Exhibit C.

As Plaintiff's counsel's email and letter show, Plaintiff refuses to accept that the corrected transcript is the official version of the transcript from the criminal trial and intends to submit the prior version of the transcript.  (Exhibit B; Exhibit C.)  Plaintiff's position is extremely concerning and suggests that Plaintiff's goals may be less about complying with USCIS's request, which expressly calls for the "official transcript," and more about disseminating Jane's name.  Indeed, Plaintiff's arguments about the alleged consequences of not complying directly with the Request from USCIS are incompatible with his intent to submit a document that is *not* the "official transcript from the [C]ourt."  (*Compare, e.g.*, Exhibit C (claiming that "the most minor variations are routinely used to justify denials" and "review is infamously strict on the smallest details" and stating:  "What is critical to us is to comply with the directive from DHS in every possible way."), *with, e.g.*, Exhibit C ("[T]he document you call 'corrected' is an unlawfully redacted transcript. . . ."); *see also* ECF 186 (showing that the Official Court Reporter corrected the transcript).)

Plaintiff also plans to obtain a certified "disposition document" from the criminal court in lieu of submitting the portion of the transcript reflecting the jury's verdict as the certificate of

disposition. (Exhibit C.) Plaintiff is unsure whether that document will contain Jane's name. (Exhibit C.) Given that Plaintiff plans to request a "disposition document," however, Plaintiff should request that the "disposition document" not include Jane's name so that this is a non-issue. To the extent that that is not possible for some reason, Plaintiff should submit the portion of the certified, corrected transcript, which does not include Jane's name, or just redact Jane's name.

Plaintiff's counsel indicated that he will inquire as to whether the Indiana documents contain Jane's name. (Exhibit C.) As noted above, Jane believes they do not, but Jane cannot evaluate this issue because Plaintiff will not provide the documents despite Jane's requests. (Exhibit C "[W]e will not provide you with a copy of *any* of the documents at issue.")

## VI.    CONCLUSION

The Court should not consider Plaintiff's Motion in light of Plaintiff's refusal to give Jane the documents at issue, which Jane should have had long ago. In the event that the Court is inclined to rule on Plaintiff's Motion, the Court should deny the Motion because Plaintiff can respond to the USCIS Request without disclosing Jane's name and should do so in light of his history of misconduct disclosing Jane's name and because Plaintiff has denied Jane the right to fully respond to his Motion by failing to meet discovery obligations. If this Court allows Plaintiff to disclose Jane's name in any format, his past conduct reveals that he will exceed the scope of the Court's Order and disseminate Jane's name in ways the Court never intended to permit and, if he is caught, he will claim he "misunderstood" the Court's Order or that it allowed him to do things it did not. (*See, e.g.*, ECF ECF 94 at 21:9–11; ECF 123-1; ECF 200 at 46:11–13.)

The Court should therefore deny Plaintiff's Motion.

DEFENDANT JANE DOE,

By: _/s/ Brendan N. Gooley_
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email: jsconzo@carltonfields.com
          bgooley@carltonfields.com

    Her Attorneys

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 14th day of October 2024, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's

electronic filing system.


<u>*/s/ Brendan N. Gooley*</u>
Brendan N. Gooley

# EXHIBIT A

| | |
|---|---|
| **From:** | Gooley, Brendan N. |
| **To:** | "Mario Cerame"; Alex Taubes |
| **Cc:** | Sconzo, James M. |
| **Subject:** | Khan |
| **Date:** | Wednesday, October 9, 2024 5:39:13 PM |

Hi Mario and Alex:

We are formulating a response to Plaintiff's Motion for a Limited Stay (ECF 201). We have a few thoughts/questions we were hoping you could weigh in on:

1. We understand the official transcript from the criminal case to be the corrected transcript, which only contains Jane's first name. Does Mr. Khan agree that the corrected transcript is now the official transcript and is he planning to submit the corrected transcript? If so, is he willing to redact Jane's first name? We expect that we will be able to agree to Mr. Khan's request regarding the transcript if Mr. Khan is planning to submit the corrected transcript and redact Jane's first name and Mr. Khan recognizes that any stay is limited to allowing him to provide the redacted, corrected transcript to USCIS and that he is still prohibited from disseminating Jane's name in any other way. If that is not the case, please let us know so that we can appropriately frame our objection to this request.

2. We understand the portion of the official transcript from the criminal case in which the jury returns its verdict to be a certificate of disposition regarding the criminal case. Is Mr. Khan willing to submit that portion of the transcript as the certificate of disposition? If so, we expect we can agree to that because Jane's name is not in that potion of the transcript. If not, please let us know why Mr. Khan believes the transcript in which the jury returns its verdict is not a certificate of disposition and please send us the document that Mr. Khan plans to submit as the certificate of disposition so that we can evaluate it and see whether we can propose a possible solution, such as redaction.

3. We understand the Indiana Protection Order to be related to the non-party male that made allegations against Mr. Khan in 2018. We therefore do not believe that the Indiana Protection Order relates to Jane, that her name will not appear in documents related to that matter, and that Mr. Khan may have made a mistake in asserting that Jane's name is in these documents. If it is the case that Jane's name does not appear in these documents, we believe this is a non-issue. If Jane's name appears in the documents Mr. Khan plans to produce, please send them to us so that we can analyze them and see whether we can propose a possible solution, such as redaction.

Best,

Brendan



**Brendan N. Gooley**

Attorney at Law

One State Street
Suite 1800
Hartford, Connecticut 06103
Direct: 860.392.5036 | Fax: 860.392.5058

BGooley@carltonfields.com | www.carltonfields.com
bio | vcard

**Carlton Fields is ISO 27001:2022 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

# EXHIBIT B

| | |
|---|---|
| **From:** | Mario Cerame |
| **To:** | Gooley, Brendan N. |
| **Cc:** | Sconzo, James M.; Giovanna Tiberii Weller; Alex Taubes |
| **Subject:** | In reponse to your questions concerning the DHS Letter |
| **Date:** | Thursday, October 10, 2024 10:46:09 AM |

---

**EXTERNAL SENDER: This Message is from outside the organization.**

---

Attorney Gooley,

1.  **No, we do not understand that to be the case without a ruling from a judge. We made this clear in prior filings.**  We think what Doe's (and Yale's) counsel did in obtaining the document was at least improper, if not a violation of the CTRPC.

    We believe Doe and Yale, in that process, once again, specifically and intentionally avoided elementary due process rights of my client in obtaining that document.  We were not heard on the issue, had no notice of the issue, and no officer of the court issued a judgment from which we could take appeal.  No, we do not recognize your claim on the transcript as valid, and you have declined to present any case law or statutory law contra our position as articulated in filings.

    What is critical to me, and my client of course, is to comply with the directive from DHS in every possible way, without asking for any exceptions or exemptions that will create further delay or possible administrative mishap and imperil my client's life and liberty.

    Furthermore, the attempt to use this issue as a vehicle to legitimize the misuse of process as concerns the transcript is not understood as good faith litigation.  I not willing to imperil my client's life for your convenience.

    I note again, as stated in the motion, we already submitted the unredacted version to DHS in 2021.

2.   A "disposition" is both a procedural posture, and a shorthand for a particular document used internally by the court.   We would provide a "certified disposition." That is, we would get a certified copy of the court's disposition document.

    There may be a process to obtain a more formal "certificate" issued from a clerk of court, but I have never seen such and it would be unusual and not something I would ordinarily seek for any purpose.  I don't think there is such a process, but it is possible.  In practice, we would always use a certified disposition for anything like this, because that is what is always used for things like this.

    Although I have not yet seen the document at issue, I don't believe Doe's name would appear.  It is possible it appears.  It should not appear, in the usual course of business for the

128

court, but it is possible—e.g. if there was a huge issue or motion practice about Doe, and there was a filing that uses her name in the title, her name may appear as recording the disposition and such of such a motion.

Who indicated to you a certificate of disposition was a portion of a transcript? It is possible I am mistaken, and I welcome correction from someone who practices criminal law in this area. I spoke with a colleague about this today, to verify if my perception was wrong, and he shared my belief. I don't think you practice criminal law in state court (Attorney Weller's husband is very well versed in this area of the law, otoh) but I welcome correction if I am mistaken.

3.  I do not know whether Doe's name features in the Indiana documents. I will inquire and if it does not, I will let you know so that, perhaps, we can at least narrow the issues somewhat in accordance with FRCP 1.


We will vigorously oppose request for redaction because we believe, based on logic and reason, such imperils my client's life, as we indicate in our emergency motion.


Yours sincerely,

Mario Cerame
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
Phone: (860) 527-9973
Fax: (860) 527-5929




---

**From:** Gooley, Brendan N. [mailto:BGooley@carltonfields.com]
**Sent:** Wednesday, October 09, 2024 5:39 PM
**To:** Mario Cerame; Alex Taubes
**Cc:** Sconzo, James M.
**Subject:** Khan

Hi Mario and Alex:

We are formulating a response to Plaintiff's Motion for a Limited Stay (ECF 201). We have a few thoughts/questions we were hoping you could weigh in on:

1. We understand the official transcript from the criminal case to be the corrected transcript, which only contains Jane's first name. Does Mr. Khan agree that the corrected transcript is now the official transcript and is he planning to submit the corrected transcript? If so, is he willing to redact Jane's first name? We expect that we will be able to agree to Mr. Khan's request regarding the transcript if Mr. Khan is planning to submit the corrected transcript and redact Jane's first name and Mr. Khan recognizes that any stay is limited to allowing him to provide the redacted, corrected transcript to USCIS and that he is still prohibited from disseminating Jane's name in any other way. If that is not the case, please let us know so that we can appropriately frame our objection to this request.

2. We understand the portion of the official transcript from the criminal case in which the jury returns its verdict to be a certificate of disposition regarding the criminal case. Is Mr. Khan willing to submit that portion of the transcript as the certificate of disposition? If so, we expect we can agree to that because Jane's name is not in that potion of the transcript. If not, please let us know why Mr. Khan believes the transcript in which the jury returns its verdict is not a certificate of disposition and please send us the document that Mr. Khan plans to submit as the certificate of disposition so that we can evaluate it and see whether we can propose a possible solution, such as redaction.

3. We understand the Indiana Protection Order to be related to the non-party male that made allegations against Mr. Khan in 2018. We therefore do not believe that the Indiana Protection Order relates to Jane, that her name will not appear in documents related to that matter, and that Mr. Khan may have made a mistake in asserting that Jane's name is in these documents. If it is the case that Jane's name does not appear in these documents, we believe this is a non-issue. If Jane's name appears in the documents Mr. Khan plans to produce, please send them to us so that we can analyze them and see whether we can propose a possible solution, such as redaction.

Best,

Brendan



**Brendan N. Gooley**
Attorney at Law

One State Street
Suite 1800
Hartford, Connecticut 06103
Direct: 860.392.5036 | Fax: 860.392.5058

BGooley@carltonfields.com | www.carltonfields.com
bio | vcard

**Carlton Fields is ISO 27001:2022 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

This transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-527-9973, and immediately delete this message and all of its attachments.

# EXHIBIT C

# BRIGNOLE, BUSH AND LEWIS

### ATTORNEYS AND COUNSELLORS AT LAW

TIMOTHY BRIGNOLE*
DAVID W. BUSH
JOHN C. LEWIS III

———

KEVIN F. BRIGNOLE.
MARIO CERAME

*National Certification
as Civil Trial Attorney

73 WADSWORTH STREET
HARTFORD, CONNECTICUT 06106
(860) 527-9973
FAX (860) 527-5929
attorneys@brignole.com

GRANBY OFFICE:
261 SALMON BROOK STREET
GRANBY, CONNECTICUT 06035
(860) 653-5222

October 10, 2024

**BY FIRST CLASS AND ELECTRONIC MAIL**
Brendan Gooley, Esq.
One State Street
Suite 1800, Hartford, Connecticut 06103
BGooley@carltonfields.com

**Re: Formal Response to October 10, 2024 Email**

Dear Attorney Gooley,

Given the gravity of the circumstances, I believed I needed to formally respond to your October 10, 2024 email, a copy of which is attached. Some of what is expressed here was already stated in a short email this morning. Some of the information here was not previously stated.

In case you aren't aware, in this immigration context, the most minor variations are routinely used to justify denials. My client has the burden here, and review is infamously strict on the smallest details—things ordinary people would consider insignificant.

As to the "official transcript" issue, we do not share your understanding. Unless a judge says otherwise, the document you call "corrected" is an unlawfully redacted transcript. The official transcript is what was provided to us by the Superior Court on prior occasions without ex parte badgering and browbeating a court reporter. The documents to be submitted to DHS are the same documents exactly as we have already submitted them.

As I stated in our email, based on our understanding of what counsel to Doe and Yale did, it appears that once again, Doe and Yale both intentionally avoided elementary due process rights of my client in obtaining this unlawfully redacted transcript. We

133

Formal Response to October 19, 2024 Email
October 10, 2024, page 2 of 3

were not heard on the issue, had no notice of the issue, and no officer of the court issued a judgment from which we could take appeal.

You have declined to present any case law or statutory law contra our position as articulated in filings. You *have* cited a statute, but we have in turn explained how that statute does not make Doe a victim after a judgment of acquittal, and you have adduced no judicial authority contrariwise.

What is critical to us is to comply with the directive from DHS in every possible way, without asking for any exceptions or exemptions that will create further delay or possible administrative mishap, endangering my client's life and liberty. Furthermore, the attempt to use this issue as a vehicle to legitimize the misuse of process as concerns the unlawfully redacted transcript is not understood as good faith litigation. I am not willing to imperil my client's life for your convenience.

I note again, as stated in the motion, we already submitted the actual official transcript and all these documents to DHS in 2021.

As to a certificate of disposition, I do not know where your understanding comes from. I welcome correction. A "disposition" is both a procedural posture, and a document used internally by the court. We are providing DHS a "certified disposition," a certified copy of the court's internal document. It a public document.

As to the Indiana documents, we will not provide you with a copy with these documents. More specifically, we will not provide you with a copy of *any* of the documents at issue. These documents are not discoverable. This is a confidential matter and according to the DHS letter, my client did not need to inform *anyone* about this matter. My client has voluntarily done so in deference and respect for the court's order, notwithstanding that this order is a patently illegal order.

We have alerted the court that submitting these public documents to DHS would be violative of the gag order. Our obligation ends there. We believe your client has sufficient notice to fully litigate the issue. If you disagree, you can seek an order from the court.

Yours sincerely

Mario Cerame

Formal Response to October 19, 2024 Email
October 10, 2024, page 3 of 3

Cc:
Attorney Giovanna Weller, Esq.
GWeller@carmodylaw.com

James Sconzo, Esq.
JSconzo@carltonfields.com

Attorney Alex Taubes, Esq.
alextt@gmail.com

Enclosure (1)

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JANUARY 30, 2024 |

## DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF

Pursuant to Fed. R. Civ. P. 33 and 34, Defendant Jane Doe requests that Plaintiff answer the following Interrogatories under oath and respond to the following Requests for Production.

## INSTRUCTIONS AND DEFINITIONS

1. In answering these Interrogatories and Requests for Production, please furnish all information available to you, including information in the possession of your attorneys, their investigators, any person acting on your behalf, and/or any of your agents.

2. If you cannot answer any Interrogatory or any part of these Interrogatories in full after exercising due diligence to secure the information requested, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

3. If you cannot produce any part of the requested documents after exercising due diligence to secure the documents, so state and produce the remainder of documents.

4. If you cannot answer any Interrogatory or provide any documents because they have been destroyed, lost, deleted, etc., or for any other reason, please so state.

5. If you claim that any document or portion thereof is privileged, please make the claim expressly and provide a privilege log in accordance with Rule 26(b)(5) and Local Rule 26(e).

6. These Interrogatories and Requests for Production are to be considered continuing in

137

7.     Identify all individuals who you believe may be witnesses in this case and/or who witnessed and/or have knowledge concerning this case or the facts underlying it and for each such individual briefly describe the knowledge and/or information each such individual has.

**ANSWER:**

8.     Please identify all account(s) and/or webpage(s) with any social networking websites, including but not limited to Facebook, Twitter, Instagram, Snapchat, LinkedIn, Tumblr, Reddit, or any other webpage(s), app(s), website(s), and or blog(s) (collectively "social networking websites") that you have used or had in your name or have been used on your behalf since October 31, 2010 and, for each social networking website identified, please identify all usernames that have been associated with each such account or webpage since that time.

**ANSWER:**

9.     Please identify each expert witness you may call at trial and briefly describe the subject matter on which each such expert witness may testify, the substance of the facts and opinions on which each such expert witness may testify, and a summary of the grounds for each opinion each such expert witness may testify about.

**ANSWER:**

10.     Please identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them and please identify all documents and communications, other than communications with your attorneys, regarding all such allegations, statements, and/or assertions of sexual misconduct against you.

**ANSWER:**

5

9.      All documents provided to each expert witness you may call at trial.

**RESPONSE:**


10.     All documents and communications, other than communications with your attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**


11.     Please produce all versions of your résumé since October 31, 2010, all job applications you have completed since October 31, 2010, and all other documents and communications, other than communications with your attorneys, concerning your efforts to obtain employment and earn income (such as bids on contracts, efforts to form companies, etc.).

**RESPONSE:**


12.     Please produce copies of all local, state, and federal tax returns and IRS form W-2s and 1099s for the years 2010 to the present, as well as a fully signed and executed IRS Form 4506.

**RESPONSE:**


9

13.     For each employer, entity, or individual you have worked for and/or obtained income from since October 31, 2010, please produce your personnel file, job description, documents and communications concerning the beginning and end of your employment or relationship with the company or individual, documents and communications concerning your compensation and benefits, performance evaluations and documents and communications concerning your performance, documents and communications concerning any complaints by or against you, documents and communications concerning any investigations or discipline concerning you, as well as authorizations to obtain these documents and communications from each employer and/or individual or entity that you have worked for since October 31, 2010.

**RESPONSE:**

14.     Please produce paystubs and all other documents and communications, other than communications with your attorneys, concerning your pay, income, earnings, and benefits from all work and employment you have had since October 31, 2010, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

15.     Please produce all documents and communications, other than communications with your attorneys, concerning your immigration status since October 31, 2015, including but not limited to all documents and communications submitted to and received from immigration officials, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | MAY 20, 2024 |

## RESPONSES TO DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF

Pursuant to the Federal Rules of Procedure and the Local Rules of this Court, the Plaintiff, Saifullah Khan, hereby responds to the Defendant's discovery requests. In responding to these requests, the plaintiff responds with the qualification that he is responding to the best of his knowledge, belief, and memory, after a reasonable investigation, and that his investigation is ongoing through the process of discovery in this matter. To the extent that the plaintiff is unable to provide, for example, a witness's address or phone number, their name is included. To the extent that their address or phone number or another detail is learned it will be disclosed. Discovery is ongoing. Accordingly, the plaintiff reserves the right to amend, revise, correct, modify, supplement or clarify all of the responses provided herein, upon discovering additional information, up through the close of discovery.

### REQUESTS FOR PRODUCTION

1.      All documents and communications relied on in answering any Interrogatories in this action, preparing Plaintiff's Initial Disclosures, and/or preparing any Damages Analysis.

### RESPONSE:

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

limited to counseling and/or support groups for alcohol and/or drug use), therapy, psychiatric treatment, or other mental health treatment or medical consultations related to placement on any kind of medication for any type of emotional distress, stress, anxiety, depression, or any other mental or emotional illness since October 31, 2010.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

Please see enclosed authorizations; copies in the plaintiff's possession are also enclosed in Volume I of the production (SAIFKHAN_000001-SAIFKHAN_004113); See in particular, e.g., SAIFKHAN_001606, 003945, 003877, 3868. (psychological evaluations).


8.      All posts, status updates, tags (including but not limited to location tags and "check ins") as well as all documents and communications concerning this case or the facts underlying it, including but not limited to your claimed damages and any efforts to mitigate your damages, on any social networking websites, including but not limited to Facebook, Twitter, Instagram, Snapchat, LinkedIn, Tumblr, Reddit, (as defined above) since October 31, 2010.

**RESPONSE:**

Please see complete export of Twitter account enclosed with production.


9.      All documents provided to each expert witness you may call at trial.

**RESPONSE:**

To be provided in accordance with the Court's scheduling orders and Rule 26 disclosures.


10.     All documents and communications, other than communications with your

attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above. This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

11.  Please produce all versions of your résumé since October 31, 2010, all job applications you have completed since October 31, 2010, and all other documents and communications, other than communications with your attorneys, concerning your efforts to obtain employment and earn income (such as bids on contracts, efforts to form companies, etc.).

**RESPONSE:**

Not applicable.

12.  Please produce copies of all local, state, and federal tax returns and IRS form W-2s and 1099s for the years 2010 to the present, as well as a fully signed and executed IRS Form 4506.

**RESPONSE:**

To be provided; authorizations enclosed.

13.    For each employer, entity, or individual you have worked for and/or obtained income from since October 31, 2010, please produce your personnel file, job description, documents and communications concerning the beginning and end of your employment or relationship with the company or individual, documents and communications concerning your compensation and benefits, performance evaluations and documents and communications concerning your performance, documents and communications concerning any complaints by or against you, documents and communications concerning any investigations or discipline concerning you, as well as authorizations to obtain these documents and communications from each employer and/or individual or entity that you have worked for since October 31, 2010.

**RESPONSE:**

Not applicable.

14.    Please produce paystubs and all other documents and communications, other than communications with your attorneys, concerning your pay, income, earnings, and benefits from all work and employment you have had since October 31, 2010, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

Not applicable. Authorizations to request information from the IRS are being provided.

15.    Please produce all documents and communications, other than communications with your attorneys, concerning your immigration status since October 31, 2015, including but not limited to all documents and communications submitted to and received from immigration officials, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

See, e.g., SAIFKHAN_003953, 003952, 003950, 003947, 003948, 003893, 003867, 003481, 003480, 003478, 003472. Please provide an authorization sufficient to obtain any further documents you require.

16.      To the extent not already requested by Jane's other Requests for Production, please produce all other documents and communications you may use to support your claims in this case, including but not limited to your liability and damages claims.

**RESPONSE:**

Provided (SAIFKHAN_000001-SAIFKHAN_010363); additional documents will be produced as discovered.

17.      To the extent not already requested by Jane's other Requests for Production, please produce all other documents and communications, other than communications with your attorneys, concerning the events alleged in your Complaint and/or the facts underlying this case.

**RESPONSE:**

Provided (SAIFKHAN_000001-SAIFKHAN_010363); additional documents will be produced as discovered.

PLAINTIFF SAIFULLAH KHAN,

By: */s/ Alexander T. Taubes*
Alexander T. Taubes (ct30100)
LAW OFFICES OF
ALEXANDER T. TAUBES, PLLC
470 James St., Ste 007
New Haven, CT 06513

# EXHIBIT F

# Authorization For Release of Immigration Records

TO:    U.S. Citizenship and Immigration Services;
Department of Homeland Security;
Immigration and Customs Enforcement;
U.S. Customs and Border Protection

       This is to authorize you to furnish **CARLTON FIELDS P.A.P.C.**, Attorneys at Law, or their representative, including but not limited to Brendan Gooley, with any and all information and copies of records which they may request regarding Saifullah Khan and his immigration status, including but not limited to all documents concerning historical status, applications for status and any supporting documentation, and communications with Mr. Khan or anyone acting on his behalf, including but not limited to decisions on applications for status. **A photostatic copy of this authorization shall be considered as effective and valid as the original.**

_____
Saifullah Khan

_____
Date

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KHAN                                          :

v.                                            :    3:19-cv-1966  (KAD)(MAG)

YALE UNIVERSITY et al.                        :    OCTOBER 17, 2024

### EMERGENCY MOTON TO VACATE ORDER, OR,
### IN THE ALTERNATIVE, FOR LIMITED STAY OR LIFT OF ORDER

On October 16, 2024, this Court denied without prejudice Plaintiff's motion for limited stay or lift of the order restricting speech. *See* ECF No. 204. Among other things, the Court ordered that any renewed motion should provide case law and analyses in support of Plaintiff's request.  The Court furthermore ordered that Plaintiff should address arguments by Doe in her responsive pleading.  *See* ECF No. 203.  This motion endeavors to respond to that Order.

Given the mortal danger posed to Plaintiff, and the exceptionally tight deadline for compliance with DHS, Plaintiff has erred on the side of being more complete to the extent possible under the circumstances.  In his initial motion, Plaintiff incorporated by reference arguments previously raised as to constitutionality.  See ECF No. 201 at 2–3.  Plaintiff understands from ECF No. 204 that this was inadequate briefing, and corrects that here.

Given the ongoing harm caused by the Order Restricting Speech, including that Plaintiff must now defend his presumptively protected speech as lawful, Plaintiff also seeks a vacatur of the order restricting speech.  The legal analyses as to both forms of relief sought are substantially the same.

For the following reasons, the vacatur should be granted.  In the alternative,

the order restricting speech at ECF No. 119 should be temporarily stayed or lifted in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

## I. OPERATIVE FACTS

### A. Procedural Facts Underlying the Motion

In summer, 2016—eight years ago—Plaintiff applied for asylum. Plaintiff formerly lived in a refugee camp before coming to the U.S. Plaintiff faces likely execution if he is deported to his native country of Afghanistan.

On June 19, 2024, this Court entered an order restricting Plaintiff's speech. See ECF No. 119. Specifically, this Court ordered that:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.

The Court's order restricting speech is **permanent**. Even if Plaintiff voluntarily dismissed this case pursuant to FRCP 41(a)(1), even if the case were adjudicated to judgment on the merits, the order restricting speech would still be in effect.

On or about October 7, 2024, Plaintiff received a letter from DHS, dated October 3, 2024, that is the genesis of the present motion. The letter directs the Plaintiff as follows:

> Please submit the following additional documentary evidence.
>
> 1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
>
> 2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.

2

Response to these requests will violate the order of this Court restricting Plaintiff's speech by disclosing Doe's identity directly or indirectly.

On November 2, 2021, Plaintiff was interviewed by DHS, one of a number of such interviews that has occurred over the years. At that time, Plaintiff submitted these same three documents identified above to DHS. Plaintiff was supposed to receive a decision concerning the interview within 45 days of that interview. He did not receive a decision. Instead, almost three years later, he received the DHS letter, requesting that he submit the same documents again.

On October 8, 2024, Plaintiff filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201. .

On October 16, 2024, this Court denied the motion without prejudice:

> The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.

Undersigned did not have access to the disposition or the protective order until yesterday because he is not Plaintiff's immigration attorney.

**B. Documents at Issue**

Only the official transcript identifies Doe by name. Neither the certified disposition nor the document concerning the protective order identify Doe.

The transcript identifies Doe by name more than 500 times, consists of some ~1800 pages, and contains biographical information about Doe that would indirectly reveal her identity. There is no dispute that the unredacted transcript had been

3

publicly available as the only available official transcript for years.

## C. Fraught Nature of Immigration Proceedings

1. <u>The High Stakes Nature of Proceedings Before the Agency</u>

The alien has the burden of proof. *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991). Asylum is discretionary. Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien. *See id.* at 191–92. The alien generally must adduce more than mere testimony, with objective, corroborating evidence. *See id.* "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020). Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned. *See, e.g.*, *Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons). All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr*, *supra,* 838 F. App'x 30 serves as a cautionary tale. Nikpay

4

testified to prior physical abuse he suffered from the Taliban, and threats against his life. But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum. Nikpay was of the Hazara ethnicity. "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34. The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

2. <u>Reliance on Advice of Counsel</u>

Plaintiff believes that his best course of legal action is to rely on advice of immigration counsel and submit the requested documents as he submitted them in 2021. Not modified versions—the same documents. Plaintiff has provided as exhibits the documents in exactly the format he intends to submit to DHS.

3. <u>Mortal Danger Posed by Non-Compliance with DHS Request</u>

The disclosure in this case is necessary to comply with the request of DHS. If Plaintiff does not comply he may be deported, where he faces execution.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g.*, *Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), modified on reh'g, 95 F.4th 151 (4th Cir. 2023),(highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr*, *supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir.

5

2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Plaintiff is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child).  The Plaintiff's fear is rational.

## II. THE COURT SHOULD VACATE THE ORDER RESTRICTING SPEECH AS UNCONSTITUTIONAL

### A.  Relevant Legal Standard

"The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).  The burden is on Doe to show the speech restriction is lawful.

> A judicial order forbidding certain communications when issued in advance of the time that such communications are to occur is generally regarded as a prior restraint . . . and is **the most serious** and **the least tolerable** infringement on First Amendment rights . . . .  **Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification** . . . .

6

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26,

2009)(emphasis added)(citations and internal quotation marks omitted).  The

prohibition on prior restraints is so ancient that it predates the republic.  *See*

William Blackstone, Commentaries 4:151[1] (liberty of the press consists in laying no

previous restraints upon publications)(1769).  This cornerstone of free speech has

been reaffirmed time and time again by the Supreme Court[2]—and even popular

culture[3].

The standard of review applied to prior restraints is the same as for content-

based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a
> strict test. . . .  Under the strict-scrutiny test, a content-based restriction
> may be upheld if the restriction serves a compelling governmental
> interest, is *necessary* to serve the asserted [compelling] interest . . . is
> precisely tailored to serve that interest, and is the least restrictive means
> readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations

omitted; internal quotation marks omitted; emphasis retained); see also *In re

Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880

(S.D. Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press

---

[1] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[2] See, e.g., Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is
. . . clear that the barriers to prior restraint remain high unless we are to abandon
what the Court has said for nearly a quarter of our national existence and implied
throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91
S.Ct. 2140 (1971) (per curiam).

[3] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title
Films 1998) ("For your information, the Supreme Court has roundly rejected prior
restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last
accessed October 16, 2024).

7

under the First Amendment, and must pass muster under well-established constitutional case law.").

Because the restriction on Plaintiff's speech is presumptively invalid, the very heavy burden is on Doe to show the speech restriction at issue in this instance is lawful.

## B. What Law to Apply to the Motion

The Court has crafted an order that is *sui generis*. Undersigned can locate no case law concerning gag orders in this context. Undersigned is unable to find a case like the present, in civil or criminal law, where a defendant whose identity is *known prior to litigation* is able to obtain a gag order restraining a plaintiff or prosecutor from revealing the defendant's identity.

None of the contexts where gag orders otherwise appear apply here. This is not information obtained through discovery, so the law concerning protective orders does not apply[4]. The Court did not treat the order as a preliminary injunction— there were no findings or balancing of the equities as to that effect—so the law concerning preliminary injunctions does not apply. There was no judgment after a trial on the merits, so the law concerning a permanent injunction does not apply. There is no allegation that the documents at issue were obtained illegally[5]. This is

---

[4]*See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S. Ct. 2199, 2206–07, (1984) ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been **obtained through pretrial discovery**" [emphasis added]).

[5] *Compare with In re Zyprexa Litig.*, No. 07-CV-0504 (E.D.N.Y. Mar. 1, 2007)(2007 WL 669797), *and aff'd sub nom.* Eli Lilly & Co. v. Gottstein, 617 F.3d 186 (2d Cir.

8

not a criminal case, and there is no ongoing criminal prosecution to provide a compelling interest, so the law concerning pretrial publicity in the criminal law context does not apply. This is not an instance where a public figure plaintiff seeks to unmask the identity of actually unknown speakers, so the legal doctrine exemplified in the seminal *Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001) does not apply. This is not a contempt proceeding, so the law concerning civil or criminal contempt does not apply. None of the federal rules provide authority to provide any party with pseudonym. None of the federal rules provide a mechanism to enjoin a plaintiff from identifying a defendant.

There is no law on point to provide for the order the Court has entered, let alone any law to consider how such an order may be modified or when it may be vacated.

The Court should, however, apply the usual standard for prior restraints. The restriction on Plaintiff's speech is presumptively invalid. The party seeking to justify the restraint—Doe—bears the very heavy burden to show the speech restriction at issue here is lawful and satisfies the unusually searching scrutiny applied to prior restraints.

At the time the Court enjoined speech, there is no evidence in the record that the Court, Plaintiff, or any Defendant contemplated that the order could pose a danger to Plaintiff's life, or interfere with a directive from DHS in a confidential

---

2010) ("The injunction is justified not by reference to the content of the covered documents, but rather by their **unlawful acquisition**." [emphasis added] ).

9

proceeding.  Plaintiff had not heard from DHS in three years and had already submitted the documents at issue to DHS.  Accordingly, at the time when the anonymity was litigated, he had no reason to believe this could be an issue. The Court should therefore revisit its order considering this unforeseen change in circumstances.

## C.  No Compelling Interest Shown

Neither Doe, nor Yale, nor this Court, nor the District Court, have **ever** articulated a compelling interest in support of the gag order.  History indicates that there is no compelling interest in preventing the dissemination of truthful information that was already in a public court record.  Accordingly, the order restrict speech is unconstitutional and should be vacated.

## D.  The Order Cannot be Squared With *Cox* or *Florida Star*

The order threatens Plaintiff, prepublication, with punishment for his protected speech.  This order is unconstitutional under both *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989).  *Cox* has been settled law for almost a half-century.  The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident.  *Id.* at 471.  The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia.  *Id.* at 471–72.

The victim's name appeared in indictments.  *Id.* at 472.  The indictments

10

were public records available for inspection. *Id.* at 472–73. A reporter learned the victim's identity through these public records and broadcast a report that named the victim. *Id.* at 473–74. The report was repeated the following day. *Id.* at 474.

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name. *Id.* at 474–75. Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475. The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern. *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489. Nonetheless, the Court concluded that a state **may not** "**impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* T 2/26/18 at 35. Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started. Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and

11

hear what transpired can report it with impunity. There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it . . . .

*Cox* at 492–93. The Plaintiff participated in proceedings, and he can speak and communicate about those proceedings. He can submit a transcript of those proceedings where that transcript has been the official transcript of the Superior Court. This includes identifying Doe, by name, as Doe herself did in open court.

This case is based on falsities about Plaintiff. There is no right to privacy for making false allegations against Plaintiff. If Doe's accusation is false, Plaintiff has every right to publish the truth, including identifying Doe, in order to salvage his reputation: that Doe lied about him, and to identify Doe's name, especially using documents that are in the public record.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded on *Cox*. In *Florida Star*, Florida had a law that made it illegal to print, publish, or broadcast the name of a victim of a sexual offense. *Id.* at 526. The Florida Star published the name of *B.J.F.* in a police blotter by mistake. *Id.* at 527. This was in violation of the Florida Star's own policy of not publishing the name of sex assault victims. *Id.* at 528. B.J.F. filed suit sounding in negligence. *Id*. The trial court directed a verdict as to negligence *per se* in favor of B.J.F. *Id.* at 529.

The Supreme Court held that punishing the publication was unconstitutional. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Id.* at 535. The "source" of the release in this case is the Connecticut

12

Superior Court, not the Plaintiff. See T 2/26/18 at 35. "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

The Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, accused the Plaintiff of sexual assault. That is in the public record. The information in the transcript had been publicly available for years, and this order restricts the dissemination of that protected speech. This order restricts Plaintiff's lawful speech, threatening him with sanctions for such protected speech. Accordingly, the order restricting speech is unconstitutional and should be vacated.

### E. The General Statutes § 54-86e Claim is Meritless

Doe essentially claims *Cox* and *Florida Star* do not apply because the official

13

transcript should be redacted pursuant to Connecticut General Statutes §52-86e, and thus Doe's identity should not be public. Doe points to the fact that counsel for Doe and Yale convinced a court reporter—not a judge—to redact a page of a transcript. The claim is meritless.

This statute falls under Chapter 961 of the General Statutes. Chapter 961 is entitled "Trial and Proceedings After Conviction." General Statutes §52-86e provides, in relevant part:

> The name and address of the victim of a sexual assault under [various enumerated crimes] and such other identifying information pertaining to such victim as determined by the court, shall be confidential and shall be disclosed only upon order of the Superior Court, except that (1) such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses, and (2) if a protective order is issued in a prosecution under any of said sections, the name and address of the victim, in addition to the information contained in and concerning the issuance of such order, shall be entered in the registry of protective orders pursuant to section 51-5c.

There is no dispute that the criminal proceeding at issue resulted in an acquittal. *See* Certificate of Disposition at 2.

Chapter 961 concerns "Trial and Proceedings After Conviction." The trial is over, and there was no conviction. Undersigned can find no authority in statute or case law or section of the Connecticut Practice Book that stands for the proposition that §52-86e applies after an acquittal. General Statutes §52-86e does not apply to the official transcript.

Doe submits an exhibit at ECF No. 186 with a partial redaction of the criminal transcript on a single page. Doe also submits an email from a court reporter asking that a prior copy of the transcript be destroyed. The exhibits

14

undermine Doe's claim.

First, it is plain that **at least** until July 17, 2024, Doe's name was publicly available in the transcript from the Superior Court. Regardless of whether that was an error as Doe claims—which it was not—the identity had been publicly available in the official transcript available from the Superior Court for six years' prior.

Second, no doubt the reporter is a very good person and good at her job. An Official Court Reporter II, however, is probably not an attorney, and is certainly not a judge. Doe submits no authority that §54-86e applies after an acquittal.

Third, because Doe elects not to include the full email discussion, it is also not clear whether the reporter was informed that the case resulted in an acquittal. It is not clear whether that would affect her opinion on the transcript.

Fourth, it is clear that Doe demanded the Court Reporter change the transcript by dodging due process. There was no chance for the Plaintiff to be heard on the issue of the applicability of §52-86e. This was by design—there was no attempt to bring this issue to Plaintiff's attention. This was a planned ambush.

Just because counsel for Doe can cajole a lone Court Reporter into altering a transcript does not mean it should have been so or that the alteration was lawful. The Court should not reward such extrajudicial badgering of court staff. Is the Plaintiff's remedy to in turn explain to the court reporter why she was wrong? The reporter should be being subject to an email tug-of-war between counsel? No.

Doe *could* have intervened and filed a motion in the criminal case. But that would have required due process for the Plaintiff. It would have required allowing the Plaintiff to be heard and to raise sound points of law, like that the chapter

15

where §52-86e appears only concerns trials and post-conviction proceedings—not post-acquittals.

Fifth, the Court Reporter's statement is furthermore inadmissible hearsay. It is also not a legal opinion from which this Court may take judicial notice. The document is not self-authenticating, so neither the Plaintiff nor the Court can verify the authenticity of the document based on the submission alone. The statement was not created in the ordinary course of business. It was created due to an exceptional incident.

The jury of his peers acquitted Plaintiff. Doe never brought a civil suit alleging she was a victim of sexual assault. There are no findings of fact before any court indicating that Doe is a victim of sexual assault by Plaintiff. The false allegations are a major basis for the present lawsuit. Plaintiff has a right to speak about the harm to his reputation caused by Defendants, including by confronting the false accusations against him and their source. The Court does not have the power to censure him for that, as the order provides, and therefore the order is unconstitutional and should be vacated.

### F. The Order is Underinclusive

It is not clear what compelling interest is used to justify the order. Plaintiff is reticent to engage in a strawman analysis as to what he imagines the interest may be. Nonetheless, assuming the interest concerns Doe's identity, the order is grossly underinclusive.

"[U]nderinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or

16

viewpoint. . . In a textbook illustration of that principle, [the Supreme Court] invalidated a city's ban on ritual animal sacrifices because the city failed to regulate vast swaths of conduct that similarly diminished its asserted interests in public health and animal welfare." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543–547, 113 S.Ct. 2217 (1993). Underinclusiveness can also reveal that a law does not actually advance a compelling interest. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 448–49, 135 S. Ct. 1656 (2015)(citations and internal quotation marks omitted).

The order is plainly underinclusive. Doe's identity has been public for years before the order. Plaintiff already submitted the documents at issue in 2021. These disclosures cannot be prevented by an order of this Court. Furthermore, there are other public sources that identify Doe—including the publicly available transcript. If the issue concerning Doe's identity were truly a compelling interest, this Court would, for example, enjoin the Superior Court from disclosing Doe's identity through the official transcript. Doe's name continues to be used on social media by a number of individuals. If the interest were compelling, the Court would enjoin *anyone* from mentioning her name—not just Plaintiff. This suggests that the actual interest in the order concerns Plaintiff and Plaintiff's viewpoint rather than a genuine compelling interest.

### G. The Order is Vague

The Plaintiff believed the order only prohibited speech that identified Doe, directly or indirectly. The Plaintiff believed that no other speech was prohibited. The Court's order that Plaintiff should produce those documents that disclose Doe's

17

name undermines this supposition. Plaintiff *stipulated* that responding to the letter from DHS would disclose Doe's identity and violate the order. There is no fact question on that point.

The only rational reason to review the documents for the purposes of the request to lift the order would be because the order prohibits something more than just disclosing Doe's identity, directly or indirectly. There was no question of fact that responding to the DHS letter would violate the order by disclosing Doe's identity. Although the order apparently applies to facts beyond disclosures of Doe's identity, the order does not provide adequate notice to a reasonable person as to what else is prohibited. The order is therefore vague.

## III. IN THE ALTERNATIVE, THE COURT SHOULD GRANT REQUEST FOR LIMITED STAY OR LIFTING THE ORDER

As detailed above, the Court should vacate the order restraining speech as unconstitutional on its face. A fortiori, the Court should grant the limited stay or lift of the order so that Plaintiff can engage in his constitutionally protected speech in response to the DHS Letter and in furtherance of his interest in protecting his life. In particular, under *Cox* and *Florida Star*, this Court cannot punish Plaintiff for disclosing Doe's identity through documents that had been part of the public record for years.

## IV. WHY THE DISCLOSURE IS NECESSARY

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address why it is necessary to disclose Jane Doe's full name and/or first name . . . ." DHS has directed Plaintiff to provide the "official transcript." Not a

18

redacted transcript. Not a transcript with an asterisk next to it. Not a transcript that an adversary claims is adequate. Not a transcript that an Article III judge says is adequate. The official transcript.

That official transcript contains Doe's first name hundreds of times, and her last name a handful of times as well. Because complying with the DHS request requires the official transcript, it requires transmitting this information to DHS.

Plaintiff has explained that these immigration proceedings are high stakes affairs. Plaintiff has pointed out that "[e]ven a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland, supra*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures). Plaintiff has pointed out that errors in by the agency may not be reviewable because of the deferential standard of review. Plaintiff has pointed out that if he is deported, he faces **execution** by the Taliban in Afghanistan. Plaintiff has identified other cases such that his fears are not unique.

In order to best protect his life, Plaintiff must fully comply with the request by DHS without exception, being consistent with his actions in 2021 when he submitted the same documents. This means providing DHS with the official transcript, which in turn means disclosing Doe's full name as contained in that official transcript.

## V. OTHER CLAIMS BY DOE

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address the other arguments raised by Jane Doe in her responsive

19

pleading." However irrelevant some of these claims by Doe may be, in this section, Plaintiff endeavors to comply.

### A. Plaintiff's Alleged Misconduct and Inadequate Briefing by Doe

Doe alleges prior misconduct. The issue concerning dismissal is still before the District Court. There is no judgment on those issues.

Doe apparently raises the claims of misconduct to ask the Court to punish Plaintiff. If the Court seeks to punish Plaintiff for violating a court order, that involves the doctrine of criminal contempt. "Civil contempt differs from criminal contempt in that it seeks only to coerc[e] the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011)(internal quotation marks omitted).

"In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987). This requires among other things, that the Court appoint "a disinterested prosecutor." *Id.* at 808. "[D]efendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves . . . must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses . . . must be given a public trial before an unbiased judge . . . and must be afforded a jury trial for serious contempts . . . ." *Id.* at 798–99; *see also* Fed. R. Crim. Proc. 42. Doe's briefing is inadequate to invoke criminal contempt proceedings. It's just mud-slinging, divorced and unattached to a legal standard or doctrine.

20

## B. Documents at Issue

First of all, this is not a discovery motion. Doe sought—and obtained—a remedy ordinarily reserved for a Rule 37 Motion to Compel. Such a motion normally would be premature at this point. Discovery is ongoing. For example, **Doe still has not produced a single document in discovery.** Doe's claims in this section amount to "discovery for me but not for thee." They were not good-faith arguments. They were legerdemain, and they worked.

Plaintiff acquiesced not because it was procedurally just, but because he cannot afford a misfire as his life is actually at risk. Discovery issues should have been handled according to the FRCP and Local Rules governing discovery—not on an ad hoc basis as was done on this motion. The interest at stake underlying Plaintiff's demurrer on the informal motion to compel by Doe is the same reason Plaintiff must submit the unredacted official transcript to DHS. The stakes are too high.

Plaintiff conceded that disclosure would violate the order. Undersigned did not have the documents at issue and mistakenly believed that two documents would violate the Court order. As explained above, undersigned is not Plaintiff's immigration attorney and undersigned did not need to review the documents to concede the disclosure. If the order restricting speech only prohibits Plaintiff from disclosing Doe's identity, it should have been enough to concede compliance with the DHS request violates the order. No further factual analysis is necessary—if that is truly what the order prohibits.

## C. Attorney Gooley's legal advice to Plaintiff is unethical, uninformed,

21

**unintelligent, unsupported, and unwanted**

On Pages 6–7 in particular, but smatteringly throughout, Attorney Gooley proffers his legal advice to Plaintiff as concerns the official transcript. None of his conduct here was understood to be made in good faith.

In this case, Plaintiff has been advised by his retained immigration counsel to submit the same documents he submitted in 2021. **No one** should interfere with that representation.

Attorney Gooley claimed on page one of Doe's objection that he "explained how Plaintiff could respond to the USCIS Request without revealing Jane's name, and asked Plaintiff to agree to do so."

First, contrary to what Attorney Gooley represents, Attorney Gooley never conferred with Plaintiff's immigration attorney about this issue. Undersigned is not an immigration lawyer and specifically not Plaintiff's immigration lawyer.

Second, Attorney Gooley provides no case law, no evidence, no expert testimony, no law review article, no regulation, no statute, no authority whatsoever that his proposition would satisfy DHS.

Third, Plaintiff does not have, nor has he ever seen, nor does he believe there exists, nor does he believe it is lawful for the Superior Court reporter's office to provide, a version of the transcript that redacts Doe's name throughout. This issue is already discussed fully above.

Fourth, *even if there were* such an altered version of the official transcript in Plaintiff's possession or control, Plaintiff would *still* violate the order by submitting such an improperly redacted transcript to DHS. The order mandates that Plaintiff

22

cannot reveal Doe's identity directly *or indirectly*, including through counsel.  Even an improperly redacted transcript will indirectly reveal Doe's identity.  There is an enormous amount of biographical—and even *biological*—information about Doe in the transcript, spread across hundreds of thousands of words.  *See, e.g.*, T 2/26/18 at 36–38, 40, 41, 50.  Doe's name is used more than 500 times in the official transcript across some 1800 pages, and information in the transcript context to such redactions will make it possible to identify Doe.

Fifth, Doe knows that her name was used hundreds of times at trial.  She knows that in context, even a transcript that redacts her name will indirectly reveal her identity.  Doe's counsel similarly knows that mere redactions are inadequate to obscure Doe's identity in the official transcript.  The redactions argument was a bad-faith argument, in part to harass Plaintiff and in part to circumvent the discovery process and obtain desired documents out-of-order, an impromptu motion to compel without the showings and procedures required under Local Rule 37.  The strategy worked because Plaintiff's life is actually at risk, and Doe has yet to produce a document herself.

Sixth, DHS is not a party to this action.  Attorney Gooley does not attest to having conferred with the agency or anyone else as to standards, practice, or institutional culture around these issues.  DHS may be of a very different mind than Attorney Gooley about whether modified documents are adequate, or whether DHS must as a matter of law accept such documents, where there are no court orders from a court of competent jurisdiction concerning the adequacy of the transcript, or whether an improperly redacted transcript can serve as a substitute

23

for an actual official transcript.

Seventh, Attorney Gooley owes no duty of loyalty to Plaintiff, and his armchair-immigration-lawyering is grossly improper and violates the spirit if not the letter of the CTRPC prohibiting legal advice to an adverse party.

Undersigned is not an immigration lawyer and will not interfere with the needs of that representation. Neither should Attorney Gooley be doling out legal advice to Plaintiff about how Plaintiff should handle his immigration case, especially when the case presents one of mortal peril.

**Plaintiff's life is at risk**. Attorney Gooley's legal advice to Plaintiff about how Plaintiff should conduct his immigration case is unethical, uninformed, unintelligent, unsupported, and unwanted.

## VI. REVIEW

The Court previously misstated the standard of review for orders in this context. Rule 72.2 provides, in relevant part (emphasis added):

> In matters determined by the Magistrate Judge for the Court, such as under Rule 72.1(C)(2) or (4), supra, the reviewing Judge on timely objection shall set aside any order found to be clearly erroneous **or contrary to law** . . . .

In ECF No. 119 at page 15, this Court previously omitted the phrase, "or contrary to law" in setting forth the standard of review. This omission left only the "clear error" review applied to factual determinations and is silent on the standard of review of for determination of legal issues. Plaintiff points out that such an order may also be reviewed if it is contrary to law.

## VII. EXIGENCY

24

The nature of the proceedings here are exigent as they implicate Plaintiff's life and liberty under a tight time frame. Plaintiff respectfully requests the Court render judgment by Monday, October 21, 2024, so that he may file for emergency review or mandamus if necessary and still comply with the DHS letter.

## VIII. CONCLUSION

For the foregoing reasons, the vacatur should be granted. In the alternative, the order restricting speech at ECF No. 119 should be temporarily stayed or lifted in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

Respectfully submitted,

SAIFULLAH KHAN

OCTOBER 17, 2024
_/s/ Mario Cerame ct30125_
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

25

## **CERTIFICATION**

I hereby certify that on OCTOBER 17, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I furthermore certify that a copy of every sealed exhibit to this motion was delivered electronically by other means, to wit, Microsoft Share Folder, to counsel of record for each Defendant.

/s/_____
Mario Cerame

26

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | OCTOBER 20, 2024 |

## RESPONSE TO PLAINTIFF'S MOTION TO VACATE OR FOR LIMITED STAY

Pursuant to the Court's Order (ECF 209), Defendant Jane Doe ("Jane") respectfully responds to Plaintiff's Motion To Vacate Or For A Stay (ECF 206 ("Plaintiff's Motion")).

## I.      PRELIMINARY STATEMENT

On a purported emergency basis, Plaintiff seeks to be relieved from the Court's Order not to disclose Jane's name.  The Court does not need to re-evaluate its valid Order and Plaintiff's attempt to overturn, via an emergency Motion, the Court's Order when that Order is before Judge Dooley pursuant to Plaintiff's Rule 72.2 Objection is improper.  That has been litigated thoroughly. Plaintiff should not be allowed to circumvent the process for any reconsideration, especially in a manner where defendants are afforded two days to respond.  Instead, the Court must evaluate the sincerity of the so-called emergency and, once again, how to ensure the protection of Jane from Plaintiff's refusal to abide by Court orders.

## II.     THE "EMERGENCY"

Plaintiff has not been honest to the Court in this case.  (*E.g.*, ECF 200 at 46:11–13.)  The Court must, therefore, carefully evaluate the so-called emergency for Plaintiff's request.

In his December 13, 2019 Complaint in this matter, Plaintiff wrote:

- "Mr. Khan was born [in] [] 1993, in a refugee camp in Peshawar, Pakistan."  (Cmplt. ¶ 18.)

175

- "Mr. Khan was born six months after his family fled Afghanistan." (Cmplt. ¶ 19.)
- "Mr. Khan and his family lived in a refugee camp and various places surrounding it in Pakistan for 16 years . . . . The family fled to the United Arab Emirates." (Cmplt. ¶ 20.)

Plaintiff disclosed in discovery an email he wrote on October 2, 2023: "[P]arents and I were refugees; I was born in a refugee camp, never lived in Afghanistan)." (SAIFKHAN_003919.)

Most importantly, in media interviews Plaintiff acknowledged that he lived and went to school for years in the United Arab Emirates before coming to the United States. (*E.g.*, **Exhibit A**.) Thus the claim that he would be deported to Afghanistan and executed is a sensational claim on the part of the Plaintiff that seems tenuous at best based on the facts.

Based on Plaintiff's own words, the Court must evaluate Plaintiff's argument that he will be deported to Afghanistan and killed there. If Plaintiff's contention lacks credibility, this request is not an emergency. But it does speak volumes about the Plaintiff's credibility.

## III. THE HARM TO JANE

The harm to Jane from Plaintiff's request to produce the unredacted transcript stems from the combination of Plaintiff's desire to harm Jane and his willingness to violate this Court's Orders. This is the classic situation of giving Plaintiff an inch but Plaintiff taking a mile. The Court must address this because of Plaintiff's repeated misconduct in this case. Disclosure of Jane's name presents a real risk that she will be harmed.

Plaintiff has expressed a desire to harass Jane and has acted on that desire and has repeatedly shown disrespect for this Court and violated its Orders. (*See, e.g.*, ECF 114 (containing an email from Plaintiff about harassing Jane and members of her family); ECF 123-1 (discussing Plaintiff's actions on social media violating this Court's Orders); ECF 200 at 46:11–13 ("The Court: . . . . You just said that I should take your client at his word. Well, *your client sat in that*

*chair three months ago and was dishonest with me*." (emphasis added).)  Plaintiff can't be trusted.

Jane is justifiably concerned that Plaintiff's animus toward her and willingness to disregard Court Orders will result in him exceeding the scope of any Order this Court issues in a way that causes her harm.  Plaintiff has already done that.  (*E.g.*, ECF 123-1.)  Stunningly, he continues to maintain that his prior actions did not violate this Court's Orders.  (*E.g.*, ECF 200.)  As concerning, he maintains that this Court lacks the authority to sanction him for harassing Jane, (*e.g.*, Motion at 11 ("The Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name."); and he continues to challenge the Court's valid authority to enter an Order to regulate the conduct of the Parties.  Even though that issue has already been thoroughly litigated, Plaintiff again shows his disdain for the Court by mischaracterizing the Order as a "prior restraint" and "gag order."  The Order was neither.  It was a legitimate Order, first requested by Plaintiff, that has been necessary to address the misconduct of Plaintiff. Plaintiff knows this but his unrelenting false arguments show why Jane is concerned about giving Plaintiff an inch.   The prospective harm to Jane is serious.  Plaintiff's prior disclosures of Jane's name resulted in Jane's name and information about where she works being posted on a forum for extremists that has a swastika imbedded in its logo. (*See* ECF 103-7.)  Plaintiff asserts in his Motion that Jane's "name continues to be used on social media," but neglects to mention that, if that is the case, it is only so because Plaintiff put her name out there.  (Motion at 17; *see also, e.g.*, ECF 123-1 at 10 ("I'm doing my part.  Hopefully others contribute in their own way.").)  These facts establish why the Court's Orders are essential.

The Court should therefore approach Plaintiff's request with great skepticism.

## IV.    JANE'S PROPOSAL REGARDING THE TRANSCRIPT

Jane has tried to work out a reasonable proposal but Plaintiff refuses.  Jane has requested that at least her last name be redacted from any transcript submitted to USCIS.  These are the

3

redactions Jane seeks. Jane understands that even a redacted transcript may permit some people to figure out her name, but she understands that for purposes of submitting the transcript to USCIS that risk is low as long as Plaintiff goes no farther with his use of the transcript.

If Plaintiff does as USCIS requests, and submits the official transcript, the redactions have already been made by the official court reporter. Whether Plaintiff likes it or not, the official transcript does not include Jane's last name. Plaintiff's unbecoming attacks on Jane's counsel do not change a thing and Plaintiff has presented no evidence that anyone "badger[ed]" any Court staff because no one did that. Indeed, Plaintiff knows that the statute he cites to this Court supports the position that Jane's last name must be redacted. (*See, e.g.*, ECF 7 at 7–8 (Plaintiff acknowledging that "[Jane's] identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial."); *see also, e.g.*, ECF 7 at 2 ("During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e.").)

Thus, Plaintiff may submit the official transcript to USCIS because it does not contain Jane's last name. The Court should, however, remind Plaintiff and all his various legal counsel, in no uncertain terms, that Plaintiff remains under Orders not to directly or indirectly disclose Jane's name.

If the Court is persuaded by Plaintiff that USCIS is interested in the prior transcript, that contains Jane's full name, this Court's Order should include the following conditions:

- The Court should order Plaintiff's immigration counsel to submit the transcript and note in its Order that Plaintiff's immigration counsel is prohibited from providing the transcript to anyone else, including Plaintiff. The Court should order the Plaintiff not to communicate with anyone about the transcript in any fashion.

- Plaintiff should stipulate that the Court's Order allowing his immigration counsel to submit the transcript does not grant him any relief from the Court's Orders regarding Jane's name.

- Plaintiff should stipulate that the Court's Order allowing his counsel to submit the transcript does not create a basis to revisit or invalidate the Court's Orders protecting Jane. *See, e.g.*, Motion at 17 (arguing that the Court should vacate its Orders protecting Jane in part because Jane's "name continues to be used on social media" due to Plaintiff's actions).

If Plaintiff's true motive is to comply with USCIS's Request, he should have no problem agreeing to these conditions. The only basis for objection would be if Plaintiff's true motive is to use USCIS's Request as a pretext to circumvent or seek to revisit the Court's Orders.

If Plaintiff objects to these conditions, Jane requests that the Court issue an Order allowing his counsel to produce the Corrected Transcript to USCIS but nowhere else.

## V. THE DESTROYED CASE FILE LETTER (ECF 207-1)

This document does not contain Jane's name and Jane has no objection to its production.

## VI. THE MYCOURTS.IN.GOV DOCUMENT (ECF 207-2)

This document does not contain Jane's name and Jane has no objection to its production.

## VII. CONCLUSION

Plaintiff's conduct has required Jane and the Court to look with suspicion at anything Plaintiff says. He has declared this case a "war;" lied to the Court (*see, e.g.*, ECF 200 at 46:11–13); and shown disdain for the Court's Orders. Plaintiff cannot be trusted.

Jane has shown that Plaintiff already tried to harm her in this case (*see, e.g.*, ECF 114) and the Court must guard against that type of misconduct.

Jane proposes that the Court Order Plaintiff to produce the Corrected Transcript rather than the prior transcript or, in the alternative, if the Court is convinced that USCIS is interested in the prior transcript, that the Court issue the following Order to ensure Jane is protected:

The Court's Orders regarding the use of Jane's name (ECF 91 & ECF 119) remain in full force and effect, except that Plaintiff's immigration attorney, Attorney Glenn L. Formica, is authorized to submit the original transcript from Plaintiff's criminal trial to USCIS provided that he may not disseminate the transcript to anyone else

in light of Plaintiff's stipulation that this Order does not grant Plaintiff any relief from the Court's Orders (ECF 91 & ECF 119) and Plaintiff's stipulation that this Order does not create a basis to revisit or invalidate the Court's Orders.

DEFENDANT JANE DOE,

By: */s/ Brendan N. Gooley*
      James M. Sconzo (ct04571)
      Brendan N. Gooley (ct30584)
      CARLTON FIELDS, P.A.
      One State Street, Suite 1800
      Hartford, CT  06103
      Tel.: 860-392-5000
      Fax: 860-392-5058
      Email: jsconzo@carltonfields.com
              bgooley@carltonfields.com

      Her Attorneys

6

## CERTIFICATION OF SERVICE

This is to certify that on this 20th day of October 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

*/s/ Brendan N. Gooley*
Brendan N. Gooley

# Exhibit A



**Richard Hanania** ✔
@RichardHanania

Imagine a young boy comes to America as an Afghan refugee. He finds his way to the UAE, where he attends high school. Somehow, against all odds, due to the miracle that is standardized testing being able to identify talent no matter where it is in the world, he gets into Yale. He can enroll and pursue his dream of becoming a neuroscientist.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAIFULLAH KHAN                                    :
                                                  :          DOCKET NO. 3:19-cv-01966(KAD)
                        PLAINTIFF                  :
                                                  :
v.                                                :
                                                  :
YALE UNIVERSITY, ET AL.                           :          October 20, 2024
                                                  :
                        DEFENDANT                 :
                                                  :

### YALE DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO VACATE ORDER OR FOR LIMITED STAY

Yale University and the twelve individual Yale University Defendants (collectively, "Yale Defendants"), hereby respond to the Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, For Limited Stay (ECF 206, "Plaintiff's Motion"). The Yale Defendants incorporate and adopt the arguments set forth in Jane Doe's Response to the Plaintiff's Motion, dated October 20, 2024, (ECF 212).

Respectfully submitted,

Yale University, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Peter Salovey, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg

By:  _/s/ Maria L. Laurato_____
          Patrick M. Noonan (ct00189)
          Giovanna Tiberii Weller (ct11187)
          Maria L. Laurato (ct31443)
          Carmody Torrance Sandak & Hennessy LLP
          195 Church Street
          P.O. Box 1950
          New Haven, CT 06509
          Phone: 203-777-5501
          Fax: 203-784-3199

{N6025909}

Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that on October 20, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Maria L. Laurato* ____
Maria L. Laurato

{N6025909}                                        2