UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KHAN                                    :

v.                                      :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                  :    NOVEMBER 18, 2024

## EMERGENCY SUPPLEMENT TO 72.2 OBJECTION

On November 15, 2024, the Second Circuit Court of Appeals denied Plaintiff's petition for a writ of mandamus challenging the magistrate judges orders. The orders challenged were both at ECF Nos. 119 and 216. The Second Circuit also ordered, however:

> We expect that the district court will consider any timely challenges to the magistrate judge's orders in an appropriately expeditious manner, mindful of the November 25, 2024 deadline for Plaintiff's submission to the Department of Homeland Security.

*See In re: Khan*, 24-2794 (November 15, 2024). Pursuant to that order, Plaintiff files such a challenge.

## I. FORM OF CHALLENGE AND RELIEF REQUESTED

The Magistrate Judge's October 21, 2024 order is predicated on its June 19, 2024 order. At oral argument on October 21, 2024, the Magistrate Judge indicated it would not reach constitutional arguments. The reason the Magistrate Judge gave was that the 72.2 objection concerning these arguments was pending. *See* ECF Nos. 152–54 ("Pending 72.2 Objection"). In other words, Plaintiff had already filed an applicable 72.2 objection.

These constitutional arguments, however, are Plaintiffs strongest arguments

and **must** be addressed.  These are deprivations of fundamental rights.

 To close the loop, Plaintiff renews and supplements the Pending 72.2 Objection.  Plaintiff agrees that he has already filed the applicable 72.2 objection. In renewing the objection, Plaintiff requests that the Pending 72.2 Objection be re-docketed as an emergency.  In addition, sustaining the objection and vacating the June 19, 2024 order would render any arguments concerning the October 21, 2024 order moot.  This is the most complete remedy.

If the Court needs additional time to rule on the Pending 72.2 Objection, however, the Plaintiff requests, in the interim, that the Court grant a limited stay of the June 19, 2024 order so that the Plaintiff may respond to the request from DHS in time for the November 25, 2024 deadline by filing the November 7, 2024 Transcript or wholly unredacted transcript.  *See* ECF No. 222.  In addition, the October 21, 2024 order should be vacated in its entirety as it makes compliance with the order from DHS impossible and operates as an independent and illegal expansion of the prior restraint in this case.

To these ends, Plaintiff supplements the Pending 72.2 Objection with argument directed squarely at the October 21, 2024 order that is predicated on the June 19, 2024 order pursuant to this interim requested relief.

## II. BACKGROUND

### A. Pre-Suit Factual Background, Up to Expulsion

In *Khan v. Yale Univ.*, 27 F.4th 805, 810–12 (2d Cir. 2022), *certified question answered*, 347 Conn. 1, 295 A.3d 855 (2023), the Court found these facts:

Saifullah Khan, a citizen of Afghanistan, was born in a refugee camp in Pakistan, to which country his family had fled after having their lives threatened by the Taliban. When Khan was sixteen, his family settled in the United Arab Emirates, and it was from there that Khan applied for and received acceptance to Yale's undergraduate class of 2016. . . .

On Halloween night in 2015, Khan and fellow Yale student Jane Doe separately attended an off-campus party . . . . At some point, Khan and Doe left the party together to attend an on-campus event. When Doe began to feel unwell, she and Khan left the event and returned to . . . the Yale dormitory where both resided. Khan asserts that after he dropped Doe off at her room and started to return to his own, Doe called him back and asked him to check on a friend. After Khan did so, he returned to Doe's room where the two had consensual sex before falling asleep.

The next morning, Doe told friends that Khan had raped her. That same day, however, when Doe sought contraceptive assistance at the university's health center, she reported having engaged in consensual, unprotected sex. A few days later, when Doe publicly repeated her rape claim, she was directed to the Yale Women's Center. There, a counselor . . . assisted Doe in preparing a formal university complaint against Khan. Upon receipt of that complaint, a Yale deputy dean . . . suspended Khan, ordering him to vacate his dormitory room and to leave campus. Soon thereafter, Yale began a disciplinary proceeding against Khan under the university's Sexual Misconduct Policy.

At and about the same time, the Yale Police Department opened an investigation into Doe's sexual assault claim. This ultimately resulted in the State of Connecticut criminally charging Khan with [a number of] sexual assault crimes]. . . .

The state's criminal case against Khan would not be resolved for approximately two and a half years. On March 7, 2018, after a two-week trial, a Connecticut jury acquitted Khan of all charges after less than a full day's deliberations. Khan attributes this outcome to his attorney's ability to cross-examine Doe, highlighting various memory lapses and inconsistencies in her accounts of the alleged sexual assault, and eliciting flirtatious communications that she had sent Khan in the days before Halloween 2015.

Khan's trial and its outcome were unfavorably reported on in the Yale Daily News. Thereafter, over 77,000 persons signed a petition urging Yale not to readmit Khan, notwithstanding his acquittal. Yale nevertheless permitted Khan to resume full-time student status at the start of the Fall

2018 term. . . .

Shortly after returning to school, though, Yale suspended Plaintiff due to public pressure, claiming it was necessary to "protect" Plaintiff.  See *id.* at 811–12.

Sexual misconduct disciplinary proceedings against Plaintiff resumed in November, 2018. *Id.* at 812. These proceedings lacked fundamental due process considerations and procedural safeguards, such as a requirement to testify under oath, notice to the accused, the opportunity to call witnesses or otherwise have them subpoenaed, right to counsel and meaningful assistance of counsel, right to appeal, and right to an adequate record for review.  *See Khan v. Yale Univ.*, 85 F.4th 86, 92 (2d Cir. 2023); *see also Khan v. Yale Univ.*, *supra,* 27 F.4th at 815–16.  The disciplinary panel found that Plaintiff violated Yale's Sexual Misconduct Policy in his 2015 encounter with Jane Doe and Yale expelled him.

## B. Action Commenced and Appeal

On December 13, 2019, Plaintiff commenced the present action against Yale, various of its employees, and Doe.  *Khan v. Yale Univ.*, *supra,* 27 F.4th at 816.  Initially, this court granted a FRCP 12(b)(6) motion to dismiss, extending absolute immunity to Doe for her statements during a quasi-judicial proceeding and concluding that other claims were time barred.  *See Khan v. Yale Univ.*, 85 F.4th at 88.  The issue was appealed and certified questions were posed to the Connecticut Supreme Court.  *See Khan v. Yale Univ.*, *supra,* 27 F.4th at 833–34.  On the basis of the Connecticut Supreme Court's responses to the certified questions, this Court concluded that while some claims were time barred, Doe did not have absolute

immunity. *See Khan v. Yale Univ.*, 85 F.4th 86, 89 (2d Cir. 2023). The case was remanded.

### C. Pseudonymity Reassessed Based on Appellate Judgments

At the outset of the litigation, Plaintiff hoped to return to Yale to complete his degree. See ECF No. 2 at 5. Therefore, at that time, he sought to respect the confidentiality rules of Yale as much as possible. *Id.* at 5–6. In support of his request that he proceed under a pseudonym for Doe, Plaintiff noted that "During [Plaintiff's criminal] trial, the identity of his accuser, Jane Doe, was kept from the public record by [Connecticut General Statutes] § 54-86e." ECF 2 at 2.

In the wake of the aforementioned appeal concerning absolute immunity, Plaintiff personally took note of footnote 39 of the Connecticut Supreme Court opinion. *C.f.* ECF No. 94 at 21 (Plaintiff identifying importance of footnote). "Anonymous reporting may trigger further investigations and, if a subsequent hearing ensues, **require** that the **victim's identity be disclosed.** *See* General Statutes §10a-55m(d)." *Khan v. Yale Univ.*, *supra*, 347 Conn. at 53.n39 (emphasis added). He furthermore took note of how the Connecticut Supreme Court afforded substantial importance to the right to "confront, and cross-examine witnesses . . . ." *Id.* at 26.

Plaintiff also personally took note of footnote 1 in the Second Circuit Court of Appeals opinion in 27 F.4th 805 at 809. *C.f.* ECF No. 94 at 21 (Plaintiff identifying importance of footnote). There, this Court questioned the applicability of pseudonymity to the case. The Court noted that Rule 10 does not normally allow

parties to proceed under a pseudonym. *Khan v. Yale Univ.*, 27 F.4th 805 at 809. This Court noted that because the issue was not squarely before it, it would not address the issue. *Id.*

The appeal and certification halted proceedings for substantial time. Given the length of time that had elapsed since Yale stopped Plaintiff's studies in 2015, by the end of 2023, a negotiated return to Yale seemed unlikely and had become far less attractive than at the outset of the litigation.

### D. Doe Publicly Identified and Flurry of Motion Practice

In late December, 2023, Plaintiff publicly identified Doe on his x.com account. A few days later, Doe moved to dismiss the case as a sanction. *See* ECF No. 74 (sealed).  On March 4, 2024, Doe moved for a protective order, although Doe's name was not identified through discovery.  On March 6, 2024, oral argument on the motion to dismiss was scheduled for March 18, 2024.  On March 15, 2024, Plaintiff moved to vacate the order concerning the pseudonym. *See* ECF No. 89.

On March 18, 2024, a hearing was held on the motion to dismiss.  The motion was denied.  ECF No. 91 (on docket).  This Court noted that there was no order concerning Plaintiff's speech at that time and that a pseudonymity order does not itself put a restriction on what parties can say in public. ECF No. 94 at 5–6.

This Court concluded that related issues were not fully briefed.  ECF No. 94 at 4.  This Court referred all motions concerning the pseudonymity issue to Magistrate Judge Maria E. Garcia, so that issues could be fully briefed. *See id.* at 4, 20; *see also* ECF No. 110 (on docket).

This Court also ordered that "I am going to direct [Plaintiff] not to at least use Jane Doe's real name in his social media communications until such time as all of those motions are adjudicated by the Court."  ECF No. 94 at 20.  Plaintiff indicated he would acquiesce to the authority of the Court and obey the order of the Court.  *Id.* at 22.[1]

In addition to what was stated in the hearing, this Court entered an order on the docket that "As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification."  ECF No. 91.[2]

### E. Permanent Gag Order on Plaintiff Pursuant to Pseudonymity

Issues continued to be briefed.  Among other things, on April 4, 2024, Doe affirmatively moved to proceed pseudonymously.

On June 19, 2024, the Magistrate Judge denied the motion to vacate the order to proceed pseudonymously, granting Doe's motion to proceed under a pseudonym.  *See* ECF No. 119 at 15.  But, at that time, the Magistrate Judge also entered a permanent prior restraint on Plaintiff:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.

---

[1] Plaintiff also indicated at that time that his change on the pseudonymity issue was based on the two footnotes identified above.  ECF No. 94 at 21.

[2] Of note, there was no canvass, nor finding of waiver, as to any speech rights during the hearing.

This judgment does not rest on a compelling interest and has no precedent—there are no other federal cases where a plaintiff cannot identify a defendant whose name is known before litigation.  The order concludes there is no prior restraint because Plaintiff stated on March 18, 2024 hearing that he would acquiesce to the authority of the Court and obey the order of the Court.  *See* ECF No. 119 at 14; *but see* note 2 of this motion.

On June 19, 2024, Plaintiff criticized the judgment of the Magistrate Judge on x.com.  Among other things, he wrote, "I have been officially gagged."  See ECF 123 at 1 (sealed).  On June 23, 2024, Doe filed a Second Emergency Motion to Dismiss, claiming that these statements, although objectively compliant, surreptitiously solicited others to identify Doe by name.  One individual did identify Doe by name on x.com in the comments to Plaintiff's post.

On June 27, 2024, Plaintiff retained new counsel.   *See* ECF 127 (appearance).

On June 28, 2024, Yale joined Doe's Second Emergency Motion. *See* ECF No. 130.

On July 3, 2024, Plaintiff sought review of the June 19, 2024 gag order by way of a timely objection pursuant to District of Connecticut Local Rule 72.2 in the aforementioned Pending 72.2 Objection.  Plaintiff pointed out that the judgment of the Magistrate Judge was contrary to law.  *See* ECF Nos. 152, 153 (sealed), 154. Arguments rest, among other things, on the heavy presumption against prior restraints, that no compelling interest was articulated, and that *Cox Broadcasting*

*Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) prohibited a court from punishing an individual for publishing information contained in an official court record open to the public.  Review of the gag order and order concerning pseudonymity are still pending before this Court.

On July 6, 2024, Plaintiff filed a joint objection to both Second Emergency Motions.  *See* ECF No. 157 (sealed).  On July 10, 2024, this Court indicated it would conduct the hearing on the Emergency Motions to Dismiss, scheduled for July 25, 2024.  *See* ECF No. 173 (on docket).  Judgment on the emergency motions to dismiss is still pending.

### F. Gag Order Interferes with Asylum Process

#### 1. Asylum and DHS Letter

In summer, 2016—eight years ago—Plaintiff applied for asylum.  Plaintiff formerly lived in a refugee camp before coming to the U.S.  Though he has never lived there, Plaintiff is a citizen of Afghanistan.

On November 2, 2021, Plaintiff was interviewed by DHS—one of a number of such interviews that had occurred over the years.  Plaintiff was very candid about the criminal charges against him.  At that time, Plaintiff submitted three sets of documents to DHS, pursuant to a request from DHS:  the official transcript from the criminal matter, a certificate of disposition in that matter, and the only document in his possession concerning a protective order that issued from Indiana.

Plaintiff was supposed to receive a decision concerning the interview within 45 days of that interview.  He did not receive a decision.  These documents caused a

delay.

Instead, on October 7, 2024—almost three years later—he received a letter from DHS, requesting the same three documents again.  The letter directs Plaintiff as follows (*see* ECF No. 201-1):

> Please submit the following additional documentary evidence.
>
> 1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict.  Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
>
> 2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online.  Please provide documentation of this protection order.

The deadline in this initial letter was to submit documents by October 24, 2024. On November 4, 2024, DHS extended this deadline to submit documents until November 25, 2024. *See* ECF 222.

### 3. Plaintiff Seeks Permission From Magistrate Judge to Publish Documents to DHS

On October 8, 2024, the day after receiving the DHS letter, Plaintiff filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201. On October 16, 2024, the Magistrate Judge denied the motion without prejudice, requiring more specificity and briefing, as well as filing all relevant documents under seal.

Doe objected. Doe demanded Plaintiff file a redacted transcript.  Among other things, as described the immediately preceding section, Doe claimed that a redacted transcript was an official transcript.

Plaintiff believes that submitting an altered transcript risks delaying his application or jeopardizing it all together.  The last time Plaintiff submitted documents that raised a question, his case was delayed three years. Being forced to submit a redacted transcript jeopardizes his present procedural right to litigate his asylum application as he feels is best for his life and liberty.

### 4. Magistrate Judge Upholds and Expands Scope of Prior Restraint

On October 21, 2024, the Magistrate Judge ordered that Plaintiff could only submit a redacted transcript to DHS. *See* ECF No. 216 (on docket)(emphasis added):

> Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in *State of Connecticut v. Khan*, No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §54-86e, that has been publicly available at least as of July 25, 2024. . . .
>
> The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS . . . the unredacted trial transcripts . . . as the Court does not deem them responsive to the USCIS/DHS letter request.
>
> The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that **he may not disseminate the transcript to anyone else**.

The Magistrate Judge has defined the "official transcript" as that containing Doe's redacted name.  No such certified transcript exists.  Submitting such a transcript is impossible. *See id.*

In addition, the Magistrate Judge expanded the scope of the restraint.  The

Magistrate Judge's October 21, 2024 order also prohibits Plaintiff from distributing even a redacted transcript to *anyone* other than DHS. This would ostensibly include the Connecticut Superior Courts, the District Court, the Second Circuit—even opposing counsel or the Magistrate Judge.

Submitting the most recent version of the transcript violates the June 19, 2024 order restricting Plaintiff's speech by disclosing Doe's identity directly and indirectly. In addition to hundreds of uses of her name, there is an enormous amount of biographical and biological data in the transcript by which her identity could be discerned indirectly.

### 5. Mandamus Petition

On October 22, 2024, Plaintiff filed a petition for a writ of mandamus in the Second Circuit Court of Appeals as a collateral attack on the October 21, 2024 Judgment. *See In re: Khan*, 24-2794 (November 15, 2024). On November 15, 2024, the Circuit Court denied the writ, directing Plaintiff to file a challenge in District Court instead.

### G. Facts Concerning the "Official Transcript"

Complying with the DHS request requires submitting an official court transcript. There has been a dispute over whether the official transcript ought to be redacted pursuant to Connecticut General Statutes §54-86e. As explained below, this is a red herring: Plaintiff wants to submit the November 7, 2024 transcript or unredacted transcript. There is no lawful reason to restrain his speech. He has the speech and petition rights to do so.

Nonetheless, because this issue factors into the October 21, 2024 order by the Magistrate Judge, this additional background is submitted to aid the Court.

The parties agree that **every published version of the transcript contains Doe's name.** The original transcript submitted by Plaintiff contains Doe's name hundreds of times. The single page initially provided to Defendants by the court reporter in July, 2024, contains Doe's full name. The single page with a redaction provided to Defendants in July, 2024, also contains Doe's name—Doe, not the reporter, redacts Doe's first name. *See* ECF No. 186 ("Additional Redaction by Jane Doe"). The transcript issued November 7, 2024, certified by the court reporter, contains Doe's name hundreds of times. *See* ECF No. 223.

Both the Pending 72.2 Objection and the July 6, 2024 objection to the motions to dismiss cite *Florida Star v. B.J.F.*, *supra*, 491 U.S. 524 and *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469. The principle underlying both cases is that the government cannot punish an individual for publishing facts in a court document that is available to the public. The theory in the objections is that Doe's name appears in the official transcript. Plaintiff has a copy of this transcript and pointed out that the official transcript was unredacted.

Shortly after these July filings, however, Doe and Yale sought a copy of the official transcript. *See* ECF No. 186. Initially, Yale received an unredacted version, like the version in Plaintiff's possession. *See* ECF No. 186-1. After corresponding ex parte with a court reporter for the Superior Court, Judicial District of New Haven, the court reporter apparently redacted Doe's last name—and only last

name—on a single page.  *Id.*

This was not a judgment of the Superior Court.   There was no adjudication by a judge or clerk or agency, no notice to Plaintiff and no hearing on the issue. Doe and Yale claim that Connecticut General Statutes §54-86e applies to the transcript after an acquittal.  There is no law to support this conclusion.

As noted above, at the start of the case, Plaintiff noted that §54-86e applied **during the criminal trial**.  ECF 2 at 2.  **Not** after an acquittal.

It is not clear from the record whether Doe indicated to the reporter that the result of the trial was an acquittal.[3]  The statute appears in Chapter 961 of the General Statutes, which concerns "Trial and Proceedings After Conviction." Not after acquittal.

Nonetheless, on November 7, 2024, notwithstanding various procedural hurdles, Plaintiff was provided an official transcript.  *See* ECF No. 223. The transcript appears identical to the original transcript except for a single page—the page previously provided by Defendants.  On that page, Doe's last name, and only last name, is redacted, twice.  No other instance of Doe's name is redacted anywhere in any version of the transcript.

The complete transcript is over 1300 pages and contains more than 700 instances of Doe's name across more than 200,000 words.  There is no evidence of a transcript redacting all such instances of Doe's name, or any instances of her first

---

[3] Doe has declined to clarify this on the record.  Failure to disclose that fact would have misled the reporter because the conviction rate for criminal cases that are tried is extremely high.

name.

Even viewing this exchange in the light most charitable to Doe and Yale, at least up until mid-July, 2024, there is no dispute that for years the official transcript had been an unredacted transcript, that such an unredacted version had been publicly available for years.

Again, as described below, this issue is a red herring.  There is no dispute that Plaintiff lawfully has in his possession an unredacted transcript.  Plaintiff wishes to publish this document to DHS in support of his asylum petition.  He has the speech, press, and petition rights to do so.  He does not need approval.  It is protected speech.

## H. Facts Concerning How Plaintiff's Life is at Risk If Deported

### 1. Immigration Proceedings are High Stakes and Front-Loaded

The alien has the burden of proof.  *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991).  Asylum is discretionary.  Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien.  *See id.* at 191–92.  The alien generally must adduce more than mere testimony, with objective, corroborating evidence.  *See id.*  "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either

substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020).  Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned.  *See, e.g.*, *Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons).  All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr*, *supra,* 838 F. App'x 30 serves as a cautionary tale.  Nikpay testified to prior physical abuse he suffered from the Taliban, and threats against his life.  But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum.  Nikpay was of the Hazara ethnicity.  "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34.  The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

### 2. Deportation is Likely to Afghanistan

Defendants have claimed, without authority, that Plaintiff will not be deported to Afghanistan.  Plaintiff respectfully directs attention to the IIRIRA

§241(b)(2)[4] and *Jama v. ICE*, 543 U.S. 335, 341 (2005)[5].

There is a risk that failing to comply with DHS could jeopardize Plaintiff's asylum petition. So to where would he be deported in such an event? Plaintiff is a citizen of Afghanistan and only Afghanistan. As the alien, Plaintiff could, in theory, designate either the UAE or Pakistan instead of Afghanistan pursuant to (b)(2)(B). However, because he is not a citizen of either country, and has no significant ties to either country, there is no reason to believe either country would accept Plaintiff. This leaves the Attorney General to disregard those designations pursuant to (b)(2)(C)(ii) or (b)(2)(C)(iii). According to (b)(2)(D), then, the Attorney General would designate deportation to Afghanistan as Plaintiff is a citizen of Afghanistan. Because he is a citizen of Afghanistan, and only Afghanistan, there is no reason to believe that country would refuse to accept him.

### 3. Genuine Physical Danger in Afghanistan

Plaintiff does not comply with the DHS request, he may be deported, where he faces execution.

Plaintiff's uncle was executed by the Taliban for advocating for the education of girls. Plaintiff is an atheist and according to the laws of Afghanistan, if deported to Afghanistan, he will have three days to convert to Islam or be executed. This is not some remote, speculative kind of harm. These laws are enforced and people are executed on this basis. These are the laws of the nation. The underlying case is well

---

[4] *See* 8 U.S.C. §1231(b)(2).
[5] *See also* Adam L. Fleming, *Around the World in the INA: Designating a Country of Removal in Immigration Proceedings*, Immigration Law Advisor, Vol. 7 No. 5, pp. 1–4, 10–14 (May 2013) (attached).

publicized, and Plaintiff is well known.  Although he is a citizen of Afghanistan, he has never lived there, having grown up in a refugee camp.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g., Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), *modified on reh'g*, 95 F.4th 151 (4th Cir. 2023), (highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr*, *supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir. 2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Plaintiff is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child).  The Plaintiff's fear is rational.

## I. Facts Concerning Harm to Speech and Petition

Plaintiff wishes to submit a document in his possession to DHS.  This is

pursuant to his right to petition for redress of grievances as well as his freedom of speech and of the press.  *See* U.S. Constitution, Amend. I.  Specifically, Plaintiff wishes to give DHS a transcript he has actually received from Superior Court—not a hypothetical transcript he has never seen.  Moreover, he believes a transcript as altered as the Magistrate Court orders will raise questions and cause delay again.  Submitting court documents previously caused a three year delay.  Another such delay could result in a change in public policy that affects Plaintiff's ability to seek asylum.

Accordingly, it is critical to Plaintiff that he exercise his fundamental right to speech, press, and petition **now** in pursuit of the asylum petition.  Although these circumstances are especially acute, the prior restraint infringes on Plaintiff's speech and press rights every day.  Every such day is an irreparable harm depriving Plaintiff of his right to speak as he chooses.

Further facts and procedural history are set forth as necessary.

## II. PRIOR RESTRAINT AND PSEUDONYMITY ORDER IS CONTRARY TO LAW[6]

### A. Standard of Review

Pursuant to LR 72.2, orders by a Magistrate Judge that are not advisory are reviewed for whether they are contrary to law.  Fact findings are reviewed for clear error.

---

[6] For convenience, and in the interest of preservation, and in the interest of time restraints considering the emergency circumstances, some arguments from the Pending 72.2 Objection are repeated here.

B. <u>The Prior Restraint is Contrary to Law</u>

No constitutional command is as fundamental to American cultural identity and jurisprudence as the prohibition on prior restraints. The principle predates the republic. *See* William Blackstone, Commentaries 4:151[7] (liberty of the press consists in laying no previous restraints upon publications)(1769). This cornerstone of free speech has been reaffirmed time and time again by the Supreme Court[8]—and has even infiltrated popular culture[9].

In its June 19, 2024 order, the Magistrate Judge concluded that its permanent restriction on Plaintiff was not a prior restraint. The order restricting speech is plainly a prior restraint. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).

The Magistrate Judge applied none of the jurisprudence concerning prior restraints on June 19, 2024 nor October 21, 2024. There was no compelling interest

---

[7] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[8] *See, e.g., Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is . . . clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91 S.Ct. 2140 (1971) (per curiam).

[9] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last accessed October 16, 2024).

identified.  In the latter, the burden was improperly flipped such that Plaintiff had

to justify his speech.  *See* ECF No. 204 (on docket)(directing Plaintiff to "address

why it is necessary to disclose Jane Doe's full name . . . .").  Rather, the Magistrate

Judge had a duty to put the *burden on Doe* to show the speech restriction was

lawful.

> Any prior restraint on expression comes to [a court] with a heavy
> presumption against its constitutional validity . . . and carries a heavy
> burden of showing justification . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26,

2009)(citations and internal quotation marks omitted).

The standard of review applied to prior restraints is the same as for content-

based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a
> strict test. . . .  Under the strict-scrutiny test, a content-based restriction
> may be upheld if the restriction serves a compelling governmental
> interest, is *necessary* to serve the asserted [compelling] interest . . . is
> precisely tailored to serve that interest, and is the least restrictive means
> readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations

omitted; internal quotation marks omitted; emphasis retained); see also *In re

Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880 (S.D.

Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press under

the First Amendment, and must pass muster under well-established constitutional

case law.").

This case is similar to *In re United States*, *supra*, 945 F.3d at 625 in that the

error here is an erroneous view of the law.  The Magistrate Judge fails to identify

the prior restraint as a textbook example of such a restraint and applied none of the law concerning prior restraints.  There is no compelling interest identified, and the order restricting speech here has no analogues.  This is not a case where Doe's identity emerged in the discovery process, where an order of protection could be entered.  *See* Fed. R. Civ. P. 26(c).  There is no "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or necessity to protect "an ongoing investigation or the identity of witnesses in such a proceeding."  *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746).  This is not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses.  "A presumption of openness pervades federal dockets."  *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937).  The order is **permanent** on its face. To the extent the Magistrate Judge did not want the facts of the case reported or discussed publicly, the Judge had a duty to identify a compelling interest.  History indicates that there is no compelling interest in preventing the dissemination of truthful information already published in a public court record. *See Florida Star v. B.J.F.*, *supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.

Furthermore, the elementary failure as concerns flipping the burden and forcing Plaintiff to justify his speech is analogous to the error in *In re The City of New York*, *supra*, 607 F.3d at 944.  In that case, the Magistrate Judge failed to

22

apply the "strong presumption against lifting the privilege." *Id.* In this case, the Magistrate Judge failed to apply the very heavy presumption against prior restraints.

Accordingly, the prior restraints imposed by the Magistrate Judge in its June 19, 2024 Order as well as its October 21, 2024 order are contrary to law.

### C. Pseudonymity is Neither a Compelling Interest nor Lawful Here

Defendants improperly rest their argument in substantial part on the interest in protecting the Magistrate Judge's order of pseudonymity.

#### 1. No Compelling Interest

Privacy interests are surely important.  A number of courts have recognized a substantial or important interest in certain privacy rights.  *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 489 (1975) (recognizing "impressive credentials for a right of privacy"); *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-cv-2678 at 2 (S.D.N.Y. July 10, 2019)(2019 WL 3034793)(acknowledging "important" interest). But this is not a **compelling** interest.

This court should not be misled by Defendants' reliance on cases that actually have a compelling interest.  There can be a compelling interest in the context of a criminal prosecution—where there is an interest to protect an ongoing criminal investigation or to protect the judicial process in the context of a criminal proceeding.  Defendants improperly rely on these justifications in this case.  *See* Doe Brief at 28–29 (citing *Sheppard v. Maxwell* criminal habeas; *US v. Trump* criminal case; *Application of Dow Jones & Co., Inc.* criminal context).

## 2. Pseudonymity Order is Not Lawful

Defendants improperly rely on the pseudonymity order to justify the prior restraint.  The order is not lawful.  There are three categories of cases where a pseudonym is used.  Defendants rely on all of these categories to justify the pseudonymity order but there are no cases are analogous to this case.

The first category of pseudonymity is a case where the *identity of a defendant is actually unknown prior to litigation*.  In that case, a Doe defendant is named as a placeholder.  If a true name is revealed only through the discovery process, a court can compel attorneys and parties to keep that information confidential when it is obtained through the discovery process.  This is codified in FRCP 26(c).  But FRCP 26(c) does not apply to the present case.

This is in some ways similar to the second category, protecting the identity of *an anonymous Doe defendant who spoke critically about a government official*, and who is sued by that government official.  *See, e.g., Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001)(seminal case); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005)(same).  In the context of speech about a government official, there is a fundamental right to anonymously criticize the government, and a court may have a duty to continue to protect that fundamental right by keeping the Doe defendant's identity anonymous.  The principle is that the discovery process cannot be used to circumvent the right to criticize government anonymously.  But Plaintiff is not a government official, and Doe's name was known prior to litigation, so these cases do not apply either.

The third category concerns plaintiffs, not defendants. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) is a ready example, where pseudonyms were used to protect a **plaintiff's** identity.  In *Sealed Plaintiff,* the plaintiff was a sex assault victim. That is a situation where the identity of the party seeking the pseudonym *is not known to the public before the lawsuit commences*. This was also the case in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) as well as *Doe v. Baram*, No. 20-cv-9522 (S.D.N.Y. Aug. 5, 2021)(2021 WL 3423595) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006).  The interest in such anonymity is in enabling such a plaintiff to seek redress in court. Meritorious cases may otherwise not be heard if such **plaintiff** were not protected. If Doe were suing Plaintiff in this case, she might have a right to proceed under a pseudonym.  But she never pursued such a suit and she is not a plaintiff here.

Undersigned can find no cases like the present, where a **defendant** whose identity is known before litigation, whose name appears in public documents, seeks and obtains the right to proceed under a pseudonym.  This is an expansion of the law, and in derogation of FRCP Rule 10.

### 3. In the Alternative, Pseudonymity is Improper Even Under the Rubric Adopted by the Magistrate Judge

In her order granting Doe's motion to continue with a pseudonym, Judge Garcia applied the ten factors in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).  As described in the forgoing section, that case is distinguishable from the present case.  Nonetheless, even under that rubric, Judge Garcia should not have granted the motion to continue under a pseudonym.  This issue is relevant

to the immediate issue because the Magistrate Judge relied on the pseudonymity

order to impose the prior restraint.  The factors are:

(1)  whether the litigation involves matters that are highly sensitive and [of a] personal nature;

(2)  whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3)  whether identification presents other harms and the likely severity of those harms;

(4)  whether the plaintiff is particularly vulnerable to the possible harms of disclosure;

(5)  whether the suit is challenging the actions of the government or that of private parties;

(6)  whether the **defendant** is prejudiced by allowing the **plaintiff** to press his claims **anonymously**, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7)  whether the plaintiff's identity has thus far been kept confidential;

(8)  whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9)  whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)  whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

These factors are exhaustively examined at ECF 154, and those arguments are

incorporated here by reference.

### 4. Policy Problem:  Expanding Pseudonymity

If Doe is allowed, as a Defendant, to compel Plaintiff to not identify Doe, then

how will this Court respond when a criminal defendant seeks a similar order to

prohibit a USAO from identifying them?  Surely the privacy interests for a criminal

defendant are at least as strong as that of a defendant like Doe, and unlike Doe, a

criminal defendant enjoys a presumption of innocence.  There is no limiting

principle to the Magistrate Judge's expansion of pseudonymity that prevents such
an outcome.

### D. Legal Standards for "Harassment" Not Satisfied

Doe has repeatedly claimed Plaintiff's speech is or would be "harassment."
Plaintiff's speech does not qualify as harassment under state or federal law.
Connecticut law defines "harassment" at General Statutes §53a-183 *et seq.* and the
term appears in some federal statutes such as 18 U.S.C. §2261A.

What is key under both state and federal law is that for harassment, a speech
exception must apply, or the proscription must be applied to non-expressive
conduct. *See, e.g., United States v. Yung*, 37 F.4th 70, 75, 80 (3d Cir.
2022)(construing harassment under cyberstalking statute narrowly to avoid First
Amendment implications); *State v. Billings*, 217 Conn. App. 1, 34–37, 287 A.3d 146
(2022), cert. denied, 346 Conn. 907, 288 A.3d 217 (2023)(vacating conviction of
harassment because speech did not fall within exception); *c.f. United States v.
Waggy*, 936 F.3d 1014, 1018 (9th Cir. 2019(considering First Amendment
implications as to harassment under cyberstalking law).  There is no allegation that
simply identifying Doe by name falls within a speech exception.

Moreover, Criminal harassment-type statutes, if lawfully applied, are a less
speech restrictive alternative than the prior restraint here. There is no reason to
believe such statutes are not a sufficient deterrent as to any harassment.

### E. No Evidence of Safety Interest for Doe

If there were evidence that Plaintiff's speech put Doe in *imminent physical*

*danger*, this might be a closer case. As it stands, however, physical and emotional harm to Doe are speculative.  There is no expert testimony as to the likelihood of such harm or the degree of such harm, nor has Doe herself offered testimony as to such harm, nor is there evidence of a history of such harm or treatment because of such harm.  Due process would require that Plaintiff be allowed to cross examine testimony as to such harm, but there is no such testimony.  Defendants' sometime claim of a safety interest is speculative and contested.

## III. CONCLUSION

The Plaintiff renews his 72.2 Objection filed July 3, 2024 and requests the objection be re-docketed as an Emergency.

For the foregoing reasons, the District Court should sustain the objection and vacate the June 19, 2024.

In the alternative, should the Court needs additional time to rule on the Pending 72.2 Objection, the Court should in the interim grant a limited stay of the June 19, 2024 order so that the Plaintiff may respond to the request from DHS in time for the November 25, 2024 deadline by filing the November 7, 2024 Transcript or wholly unredacted transcript, and the October 21, 2024 order should be vacated in its entirety.

> Respectfully submitted,
>
> SAIFULLAH KHAN

NOVEMBER 18, 2024          */s/ Mario Cerame ct30125*
                          Mario Cerame
                          Brignole, Bush & Lewis LLC
                          73 Wadsworth Street

28

Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## **<u>CERTIFICATION</u>**

      I hereby certify that on NOVEMBER 18, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/_____
Mario Cerame