UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | |
| | : | DOCKET NO. 3:19-cv-01966(KAD) |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, ET AL. | : | December 3, 2024 |
| | : | |
| DEFENDANT | : | |

### YALE DEFENDANTS' MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION TO COMPEL

## I.    PRELIMINARY STATEMENT

In his second Motion to Compel, the plaintiff complains that he has been prejudiced because of Yale's alleged failure to timely produce documents, yet he ignores the fact that much of the delay he complains of is self-induced. Further, in bringing this Motion, the plaintiff has ignored the clear procedural directives of Local Rule 37.

Accordingly, Yale hereby submits its Memorandum in Opposition to the plaintiff's Motion to Compel to highlight the several procedural and substantive infirmities necessitating the Motion's denial. This Memorandum also seeks to provide the Court with a complete understanding of Yale's efforts to comply with its discovery obligations, the roadblocks it has encountered as a result of the plaintiff's actions, and its plan to produce additional documents, notwithstanding its timely, appropriate, and unchallenged objections to the plaintiff's initial and untimely discovery requests.

**ORAL ARGUMENT REQUESTED**

{N6033702}                                    1

## II.    NATURE OF THE CASE

The plaintiff's core claims against Yale—all of which Yale denies—relate to allegations that Yale mishandled its investigation of Jane Doe's UWC complaint asserting that the plaintiff had sexually assaulted her in violation of the University's Sexual Misconduct Policies and improperly expelled him from the University. He asserts claims against Yale for alleged violations under Title IX and 42 U.S.C. § 1981, in addition to claims asserting breach of contract, breach of the implied warranty of fair dealing, breach of his right to be free from negligent and intentional infliction of emotional distress, and breach of his right to privacy arising under Connecticut law.

Yale denies all of the plaintiff's claims and maintains that it did not discriminate against the plaintiff and properly followed all of the University's procedures in addressing the complaints made against the plaintiff and in suspending and later expelling the plaintiff.

## III.    COUNTERSTATEMENT OF FACTS

### A.    Yale Timely Complied with Plaintiff's Initial Discovery Requests Served in 2020, While the Plaintiff Ignored Yale's 2020 Discovery Requests Until 2024

The plaintiff served written discovery on Yale University on June 19, 2020. The discovery consisted of eighteen interrogatories (with discrete subparts) and thirteen requests for production. The plaintiff also served each of the twelve individual Yale defendants with separate interrogatories and requests for production. Yale and the individual Yale defendants provided timely responses, objections, and production to each the plaintiff's thirteen sets of written discovery. To date, the plaintiff has neither brought any of Yale's objections before the Court nor moved to compel responses to any specific request.

On September 28, 2020, Yale served the plaintiff with interrogatories and requests for production; the plaintiff did not object or otherwise respond to the discovery before the case was

stayed in February 2021. Having received no response, Yale resent the written discovery to the plaintiff. Aside from the date, this discovery was identical to the discovery Yale served the plaintiff in 2020, which had remained unanswered for over three years. *See* Exhibit A, (email from Attorney Weller dated February 8, 2024).

Under the Local Rules, the plaintiff was to respond to Yale's discovery requests within 30 days, or by March 11, 2024. The plaintiff failed to timely comply. Yale subsequently agreed to extend the date of the plaintiff's discovery compliance to May 17, 2024, at which time the plaintiff began providing discovery compliance.

**B. In 2024, More Than 3 Months After the Deadline to Do So, Plaintiff Served Yale with New Untimely Discovery Requests**

In the Rule 26(f) Report, the parties conferred and jointly agreed that "[w]ritten discovery requests will be propounded by January 31, 2024, and written discovery will be substantially completed by July 29, 2024." *See* Joint Report of Rule 26(f) Planning Meeting, entered November 29, 2023 (ECF 67). Moreover, in the parties' 26(f) Reports, the plaintiff affirmatively and repeatedly reported to the Court that he did not request permission to serve more than 25 interrogatories. *See id.* at 7; *see also* ECF 16 at 7 and ECF 70 at 8. The Court issued its Order on Pretrial Deadlines on December 4, 2023, whereby "[t]he Rule 26(f) Report is Approved, Adopted, and So Ordered except as set forth below [concerning other deadlines]." ECF 68.

On December 11, 2023, the parties filed a Joint Motion for Revision of the Rule 26(f) Report, which did *not* seek to amend the written discovery dates. ECF 70. The Court amended the Scheduling Order on December 13, 2023, and the written discovery dates remained in place.

ECF 71. At *no time* has the plaintiff sought to extend the deadline to propound written discovery.[1]

The plaintiff propounded his second set of written discovery on Yale on **May 9, 2024**, more than three months after the January 31st deadline. It contains **eight** additional interrogatories, with subparts, and **eighty-two** additional requests for production. With this, the plaintiff served more than twenty-five interrogatories.

On June 6, 2024, Yale served its objections to the plaintiff's untimely discovery requests. Yale objected to each of the plaintiff's discovery requests because they were (1) untimely and violated the Scheduling Order; (2) duplicative of the first set of written discovery served on, responded to and/or objected to by Yale; and, (3) with respect to the interrogatories, in excess of the 25-interrogatory limit, even before counting the discrete subparts.

Yale's objections were premised on, among other things, the plaintiff's untimely attempt to re-tool his prior discovery requests into micro-requests on the very same topics where discovery was already propounded in 2020. As mentioned, the plaintiff previously raised no concerns with Yale's 2020 compliance, nor did he file any appropriate motion with the Court. In compliance with Rule 34(b)(2)(C), and given its General Objections, Yale's objections provided that it was not producing documents at that time. Additionally, Yale provided specific objections to each Interrogatory and Request for Production, including, for example, the plaintiff's request for documentation concerning the distribution of condoms or other contraceptives on Yale's campus from 2015 through the present.

---

[1] The plaintiff filed a Motion to Modify the Scheduling Order to extend the date by which all discovery is to be *completed*, including the deposition of expert witnesses, from the current date of April 15, 2024, to October 15, 2025. ECF 100 and 105, revised to correct scrivener's error. The motion did *not* seek to extend the deadline to propound written discovery. On June 21, 2024, Magistrate Judge Garcia denied the plaintiff's motion without prejudice. ECF 121.

C. **The Plaintiff's Actions Delayed the Efforts to Reach an Agreement on ESI Protocols**

In an attempt to resolve outstanding discovery disputes, including deficiencies in the plaintiff's discovery compliance, the parties scheduled an initial meet and confer for June 21, 2024. On the morning of June 21st, plaintiff's counsel informed the parties that he would be unable to attend the meet and confer due to a family emergency. *See* Exhibit B, (email from Attorney Taubes dated June 21, 2024). The parties rescheduled for July 10, 2024.

At the July 10 meet and confer, the parties agreed to make a good faith effort to reach common ground on an ESI proposal. Specifically, the plaintiff agreed to provide a reasonable list of proposed custodians, date ranges, and search terms by July 19; Yale would then provide a counterproposal by August 2. It was further agreed that the parties would meet to discuss the proposals on August 8. *See* Exhibit C, (email from Attorney Weller, dated July 10, 2024).

On the afternoon of July 19, the date by which the plaintiff was to provide his proposal, plaintiff's counsel sought the parties' consent to extend the deadline to provide proposed custodians, date ranges, and search terms to Monday, July 22. Yale consented to the plaintiff's request. *See* Exhibit D, (email from Attorney Taubes, dated July 19, 2024). On July 22, plaintiff's counsel provided the defendants with his list of custodians and search terms. *See* Exhibit E, filed under seal, (email from Attorney Taubes, dated July 22, 2024, attaching list of proposed custodians and search terms). Contrary to the parties' agreement that the plaintiff would provide a reasonable ESI proposal, the plaintiff's proposed list comprised **over 380 custodians and over 560 independent search terms over a twelve-year period.**

Many of the proposed "custodians" are not subject to Yale's control because they were students, including student journalists, and members of Jane Doe's family. Other custodians included attorneys in Yale's Office of General Counsel. As for search terms, the plaintiff included

the names of judges on the Second Circuit, the Honorable Judge Dooley, all seven Connecticut

Supreme Court justices, lawyers, Hollywood actors (including, for example, Kevin Spacey and

Johnny Depp), and the defendants in a separate lawsuit brought by the plaintiff, in addition to

terms such as "bikini," "cigar," "beer," "porn," and "rum & coke".

Upon review of plaintiff's ESI proposal, counsel for Yale informed plaintiff's counsel

that, based upon the unreasonableness of the proposed custodians and search terms, Yale

intended to stand on its objections to the plaintiff's untimely written discovery. *See* Exhibit F,

(email from Attorney Weller, dated July 31, 2024).

From July 31 through August 5, the plaintiff insisted that Yale provide a counterproposal

to his disproportionate and unworkable ESI proposal, arguing that each of his 560-plus search

terms were "directly relevant to [plaintiff's] case" and could "be justified individually and

collectively." *See* Exhibit G, (email thread between Attorneys Weller and Taubes from July 10,

2024 through August 5, 2024). Rather than provide a reasonable proposal, as the parties had

agreed, plaintiff's counsel demanded that Yale "provide specific complaints about what is

unacceptable and what is not, and [the plaintiff would] *provide a rationale* or adjust

accordingly." *See id.*, at p. 3 (emphasis added). Yale again requested that the plaintiff produce a

reasonable list of proposed custodians and search terms.

Days after the plaintiff provided his initial ESI proposal, on July 25, 2024, the parties

appeared before Judge Dooley for oral argument on the defendants' Emergency Motions to

Dismiss. *See* ECF 187. During that argument, Judge Dooley questioned plaintiff's counsel,

Attorney Mario Cerame, about the status of discovery. *See* Exhibit H, at 51:21–24. Attorney

Cerame incorrectly informed the Court that the plaintiff has "produced some discovery, but my

adversaries have not produced any discovery, whatsoever." *Id.*, at 52:1-4. Clarifying the record,

Attorney Weller explained where the status of discovery stood, including Yale's production and its recent receipt of the plaintiff's unworkable ESI proposal. *Id.*, at 53:7–25; 54:1–11, 18–19. Upon hearing this explanation, Judge Dooley indicated that she was "very unlikely to move this scheduling order if [she does not] dismiss this case." *Id.*, at 54:14–16.

On August 6, the plaintiff provided an updated proposal, this time proposing **forty-seven custodians** and various combinations of **thirty-five search terms**. *See* Exhibit I, (email from Attorney Taubes dated August 6, 2024, filed under seal). The plaintiff's revised search protocol remained overly broad and excessive. It still included many improper custodians, including, among others, attorneys in Yale's Office of General Counsel and third parties. Many of the search terms also remained unreasonable, *e.g.,* "cat costume" and "cinderella gown".

On August 16, Yale provided the plaintiff with its ESI counterproposal. Yale proposed to search 15 of the plaintiff's proposed 47 custodians and to apply specific, targeted date ranges for each custodian. *See* Exhibit J, (email from Attorney Weller dated August 16, 2024, filed under seal). Given the significant number of custodians, in order to avoid generating thousands of false positives that would need to be reviewed by counsel prior to production, Yale also proposed variations of the plaintiff's name and known email addresses as search terms in an effort to capture only relevant documents and limit non-responsive hits. *Id.*

The plaintiff did not respond to Yale's counterproposal for four weeks. On September 12, 2024, the plaintiff indicated that he thought Yale's proposal "remains too narrow" and suggested the inclusion of **eleven** additional custodians (including, again, the improper inclusion of Yale attorneys), for a total of **twenty-six** custodians, and eight additional search terms. *See* Exhibit K, (email from Attorney Taubes dated September 12, 2024, filed under seal). Upon receipt of the plaintiff's September 12th proposal, counsel for Yale sought to schedule a final meet and confer.

*See* Exhibit L, (email from Attorney Weller dated September 16, 2024). The parties agreed to meet at 2:00 PM on September 25, 2024.

At the September 25 meet and confer, **Yale agreed to search one additional custodian, bringing the total number of custodians to 16, and accepted all of the plaintiff's proposed search terms and date ranges**. During this meeting, the plaintiff also proposed introducing a revised post-production schedule that would extend the deadlines in the Court's Scheduling Order, despite Judge Dooley's clear directive that she was "very unlikely to move this scheduling order if [she did not] dismiss this case." *See* Exhibit H, at 54:14–15. [2]

On October 16, Attorney Taubes indicated that the plaintiff would agree to the parameters of Yale's ESI counterproposal, *only* if the parties would agree to a post-production schedule that would allow the plaintiff to make follow-up requests and that would require the extension of various deadlines under the Court's Scheduling Order, even ones that had passed. *See* Exhibit N, (email from Attorney Taubes dated October 16, 2024).

Yale responded that it was not amenable to tying the plaintiff's acceptance of the ESI proposal to the condition that it agree to request a post-production schedule, in large part, because the request was premature, given that the close of discovery is set for the end of April 2025. *See* Exhibit O, (email from Attorney Weller dated October 21, 2024). Moreover, the Court had recently informed the parties of its intention to stick to the current deadlines under the

---

[2] Although the plaintiff felt compelled to include in his Motion that Attorney Weller did not circulate her notes of the September 25 meet and confer "for weeks," Attorney Taubes was aware that, shortly after the meet and confer, Attorney Weller would be out of the country on vacation. Moreover, Attorney Taubes acknowledged in an email to Attorney Weller on October 16 that he knew she'd been out of the office, indicated that he "figured that" was the reason why he had not received the notes prior, and further explained that he "held off on contacting [her] because [he] knew [she] had a vacation." *See* Exhibit M, (email from Attorney Taubes, dated October 16, 2024).

Scheduling Order. The plaintiff nevertheless persisted in his demands to tie the previously agreed-upon ESI proposal to his request to extend the Scheduling Order.

On October 23, Attorney Weller indicated that Yale would move forward with its review despite the plaintiff's decision to renege on custodians, terms, and date ranges. *See* Exhibit P, (email from Attorney Weller dated October 23, 2024). Yale's ESI search would include the collection of data from the 16 custodians; the search term "Khan" and its variations, as Yale proposed on August 16 (*see* Exhibit J); and, the date ranges Yale proposed on August 16 (*see id.*). To assist in its review, Yale has engaged TransPerfect, a third-party e-discovery vendor, to help process and review the data exported from the 16 custodians. *See* Laurato Affidavit at ¶ 20.

**D.    November 19 Meet and Confer**

Following the entry of Magistrate Judge Garcia's Order denying without prejudice the plaintiff's first motion to compel, *see* ECF 225, on November 19, the parties attended a meet and confer. At that meeting, Yale agreed to further supplement its production by providing the plaintiff additional documents the following week. On Monday, November 25, Yale produced more than 3,000 additional pages of documents to the plaintiff, with document production likely to follow in the coming weeks. Moreover, Yale agreed to expand its ESI search to include the additional eight search terms and expanded date ranges the plaintiff proposed on September 12. *See* Exhibit Q, (list of agreed-to custodians, search terms, date ranges, filed under seal).

In this Motion to Compel, the plaintiff takes issue with the categories of documents Yale produced on November 25. However, each document was responsive to the plaintiff's specific document requests. *See* Exhibit R, (Yale's Supplemental Responses to Plaintiff's Requests for Production, dated November 26, 2024, indicating that it "produces its supplemental documents and materials to Requests for Production Nos. 1 through 5").

A summary of the key dates discussed above has been appended hereto as <u>Appendix A.</u>

## IV.    LEGAL STANDARD

"When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021). After this burden has been met, the "party resisting discovery [then] bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "Put differently, the moving party must make 'a *prima facie* showing of relevance,' after which 'it is up to the responding party to justify curtailing discovery.'" *Huseby*, 2021 WL 3206776, at *6 (quoting *Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)).

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS, Inc.,* 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

## V.    ARGUMENT

### A.    The Plaintiff's Motion is Riddled with Procedural Deficiencies

Local Rule 37 supplies several threshold requirements that must be met before a court may consider the merits of a motion to compel. Local Civil Rule 37(b)(1) provides, in pertinent part, that "[e]ach memorandum shall contain a concise statement of the nature of the case and a specific verbatim listing of each of the items of discovery sought or opposed, and immediately following each specification shall set forth the reason why the item should be allowed or disallowed." D. Conn. L. Civ. R. 37(b)(1). Thus, Local Rule 37 "requires that any discovery

motion filed with the court be accompanied by a detailed memorandum of law containing the specific items of discovery sought or opposed." *Alston v. Pafumi*, No. 3:09 CV 1978 (CSH), 2010 WL 5129128, at *2 (D. Conn. Dec. 10, 2010) (denying motion to compel where plaintiff failed to comply with the provisions of Federal and Local Rule 37). Local Rule 37 also requires that the movant's memorandum "set forth the reasons why each of the requested documents should be allowed" and "include, as exhibits, copies of the discovery requests in dispute." D. Conn. L. Civ. R. 37(b)(1).

"If a moving party fails to adhere to the Local Rules, the Court should deny the motion to compel." *Pagan v. Dougherty*, No. 3:18-CV-1668 (VLB), 2020 WL 249101, at *2 (D. Conn. Jan. 16, 2020) (citations omitted).

> 1. *Plaintiff's failure to provide a concise statement of the case, a specific verbatim listing of each item of discovery sought, and the reason why each item should be allowed, requires denial of the plaintiff's motion to compel.*

Courts in this district have repeatedly denied motions to compel where the movant's memorandum failed to fulfill these requirements. *See Pagan*, 2020 WL 249101, at *1 (denying motion to compel where plaintiff failed to satisfy the conditions of Local Rule 37 requiring the inclusion of "a concise statement of the nature of the case and a specific verbatim listing of each of the items of discovery sought" and concluding that absent such information, the "Court has no information regarding the relevancy of the discovery Plaintiff seeks."); *Alston*, 2010 WL 5129128, at *2 (denying motion to compel where plaintiff failed to "set forth the reasons why each of the requested documents should be allowed."); *Hunnicutt v. Kitt*, No. 3:10-cv-857 (CSH), 2011 WL 3047648, at *1 (D. Conn. July 25, 2011) (finding plaintiff's general discussion of his discovery requests "insufficient" and denying his motion to compel "for failure to comply with

local court rules" requiring a verbatim listing of each item sought along with specific reasons why that item is needed to resolve a specific claim in the case).

Here, not only does the Motion fail to provide a concise statement of the case, but the plaintiff also fails to identify, list, or otherwise discuss a single one of his discovery requests in his Motion to Compel. He also fails to articulate anything other than a conclusory argument, apparently generally applicable to each of his discovery requests, that the requested interrogatory responses and documents are relevant or otherwise discoverable. *See* Motion to Compel at p. 8. Instead, the plaintiff has taken an improper wholesale approach to Yale's objections, all of which have been properly asserted in response to each of the plaintiff's untimely discovery requests. This is of no aid to the Court, because without a "specific verbatim listing of each of the items of discovery sought," and an explanation of "the reason why the item should be allowed or disallowed"—as is required by Local Rule 37—the Court cannot properly adjudicate the parties' disputed discovery items. Indeed, here it is particularly critical that the plaintiff identify the specific requests for which he is seeking relief, since the majority of his requests were served months after the deadline.

Accordingly, the Court should find that the plaintiff has failed to comply with the requirements of Local Rule 37(b) and, for this reason alone, deny his Motion to Compel.

> 2.  *Plaintiff's failure to attach copies of the discovery requests and responses in dispute to his motion warrants dismissal.*

The plaintiff's motion should also be denied because he has failed to attach copies of either set of his discovery requests directed to Yale to his Motion to Compel, as Local Rule 37 requires. *See Pagan*, 2020 WL 249101, at *1 (denying motion to compel where, among other things, plaintiff failed to attach "to his motion a copy of the discovery request he sent to defense counsel"); *Ashley v. City of Bridgeport*, No. 3:17CV00724 (AWT), 2018 WL 1698261, at *3 (D.

Conn. Apr. 6, 2018) (declining to compel defendants to respond to discovery requests where the plaintiff failed to attach copies of its discovery requests as exhibits to its motion to compel); *Brown v. UConn Med. Grp.*, No. 3:12-cv-1305 (JBA), 2014 WL 2804345, at *2 (D. Conn. June 20, 2014) (denying motion to compel because the plaintiff failed to attach discovery requests as exhibits).

Here, the plaintiff failed to annex copies of any of the discovery requests in dispute to his Motion. Accordingly, the Court should deny the plaintiff's motion for this additional failure to comply with the requirements of Local Rule 37(b).

## B. Plaintiff Wholly Fails to Make a *Prima Facie* Showing of Relevance

The plaintiff's motion suffers equally from substantive infirmities. "When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby LLC*, 2021 WL 3206776 at *6. Here, however, by failing to attach the relevant discovery requests or to include a specific verbatim listing of each of the items of discovery sought and the reasons why each item should be allowed, the plaintiff has offered the Court "no information regarding the relevancy of the discovery Plaintiff seeks." *See Pagan*, 2020 WL 249101, at *1 (denying motion to compel where motion lacked copies of discovery requests sent to defense counsel, a concise statement of the nature of the case, and a specific verbatim listing of each of the items of discovery sought nor the reason why the item should be allowed); *see also Huseby LLC*, 2021 WL 3206776 at *6.

The plaintiff's approach makes it impossible for the Court to assess the relevancy of the discovery the plaintiff seeks to compel or the strengths and weaknesses of the parties' arguments with respect to each item of discovery sought. Moreover, by failing to identify *any* specific item of discovery sought, as is required by Local Rule 37, it appears that the plaintiff is ostensibly

more interested in extending the Scheduling Order than he is in receiving any specific response or document.

Here, just like in *Pagan*, the plaintiff's failures leave this Court with no information regarding the relevancy of the discovery he seeks. The plaintiff has thus failed to meet his burden in making a *prima facie* case of relevancy, and for that reason, the Court should deny the plaintiff's motion.

**C.  Plaintiff's Motion Should Be Denied Because he Has Failed to Establish that his Discovery Requests are Proportional to the Needs of this Case.**

The plaintiff has not attempted an explanation of how the documents he seeks from Yale are proportional to the needs of the case, and by failing to provide the Court with his discovery requests, the Court is unable to consider the proportionality of those requests in relation to their relevancy. Federal Rule of Civil Procedure 26(b)(1) delineates the scope and limitations of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"The advisory committee's notes to Rule 26 and the relevant caselaw, both expressly and by implication, instruct that the court has a duty to consider the proportionality of all discovery." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.,* No. 3:19-cv-1324 (JCH), 2023 WL 5567410, at \*4 (D. Conn. April 12, 2023); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to

2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving all discovery disputes.").

"Proportionality focuses on the marginal utility of the discovery sought." *Id.*, at \*2. "Even relevant information must be reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Conservation Law Foundation, Inc. v. Shell Oil Co.*, No. 3:21-cv-00933 (JAM), 2023 WL 5434760, at \*12 (D. Conn. Aug. 22, 2023). Stated another way, "[t]he fact that particular information is relevant does not mean that its production will always be proportional to the needs of the case." *Id.* "Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.,* 2023 WL 5567410, at \*3. "However, before evaluating proportionality, the relevancy of the 'matter' requested must be understood." *Id.*, at \*4.

Instead of seeking information proportional to the needs to needs of the case, the plaintiff initially sought documents over 380 custodians and 560 search terms (*see* Exhibit E). *See Alta Devices, Inc. v. LG Elecs., Inc.*,No, 3:18-cv-00404-LHK (VKD), 2019 WL 8757255, at \*1 (N.D. Cal. Feb. 20, 2019) (finding that the plaintiff's "demand for ESI discovery from 33 custodians is not proportional to the needs of this case" and holding that the plaintiff "may obtain custodial ESI discovery from no more than 10 [of defendant's] custodians.). Yale raised proportionality concerns to the plaintiff, yet he persisted in his absurd and unworkable demands. *See* Exhibit F ("What you sent [plaintiff's initial ESI proposal] is unworkable and not proportional to the needs of the case."). As a result, Yale was forced to waste time arguing with plaintiff's counsel. Ultimately, Yale agreed to undertake a search of sixteen custodians and to apply the plaintiff's proposed search terms and dates ranges—an approach that is more than proportional to the needs

of this case. Because the plaintiff fails to address the relevancy and proportionality of the discovery it seeks to compel, and because the plaintiff failed to provide the Court with his discovery requests, the Court cannot assess the proportionality necessary to grant the Motion. Accordingly, this Motion should be denied.

### D. Yale Has Been Diligent in its Responses and Attention to Plaintiff's Discovery

Contrary to the one-sided picture the plaintiff has attempted to paint in his motion, the complete timeline of events demonstrates that Yale has been proactive, reasonable, and diligent in its efforts to comply with its discovery obligations and to reach a reasonable agreement on its search parameters. From July 22, when Yale received the plaintiff's initial unwieldly, unworkable, and unreasonable ESI proposal, until October 16, when the plaintiff rescinded his agreement to Yale's ESI counterproposal, Yale worked in good faith to try to reach middle ground with the plaintiff, despite the plaintiff's absurd requests that Yale search over 380 custodians and using over 560 independent search terms over a twelve-year period. *See* Appendix A. And Yale has moved discovery forward despite the needless, extensive distractions the plaintiff has caused. As Judge Dooley noted on July 25, 2024:

> [T]he amount of money and time and effort that has been spent in the last three or four months litigations [the plaintiff's] conduct outside the confines of this litigation is ridiculous. It's ridiculous.

> And if everybody would just focus their attention on discovery, completing discovery, getting the case to trial, well, then we'd be in a very different place than where we are. But my sense is that that's not [the plaintiff's] agenda.

(*See* Exhibit H at 9:7–14).

Indeed, Yale has agreed to a large-scale search of ESI, including searches of 16 custodians and using the plaintiff's proposed search terms and date ranges. Despite the pared back scope, this review will be a large undertaking. In *Strauch v. Computer Sciences Corp.*, 3:14

CV 956 (JBA), 2015 WL 7458506 (D. Conn. Nov. 24, 2015), a case involving "1,047 opt-in

plaintiffs, potentially hundreds more as class members in the four states of Connecticut,

California, North Carolina and Missouri, and a possible verdict in eight or nine digits if plaintiff

are successful . . ." the court rejected the plaintiffs' 103 proposed search terms and instead

ordered that the defendant's ESI search would consist of the limited search terms proposed by

the defendant and be allied to the files of *eight* custodians. *Id,* at *3.

 This case involves only a single plaintiff, yet Yale has agreed to search twice as many

custodians as the *Strauch* court ordered. *See also Webasto Thermo & Comfort N.A., Inc. v.

Bestop, Inc.*, 326 F.R.D. 465 (E.D. Mich. 2018) (a patent case where the court entered a

stipulated order governing ESI that limited production to **eight** custodians, with the parties to

propound **ten** search terms for each individual); *Lawson v. Love's Travel Stops & Country Stores,

Inc.*, No. 1:17-cv-1266, 2019 WL 7102450, at *2 (M.D. Penn. Dec. 23, 2019) (the court

"question[ed] whether the plaintiffs' proposed list of 65 search terms fully met the Sedona

Principles' injunction that discovery requests for [ESI] should be as specific as possible and

concluded that plaintiff's proposed terms were "so broad that they may well capture much which

is not relevant and exponentially increase the costs and burdens of discovery", ultimately finding

that the plaintiff's conduct in not narrowly crafting their search terms represented a departure

from the best practices enshrined in the Sedona Principles).

 The plaintiff ignores this and instead seeks to blame Yale for his own actions in

frustrating discovery. It seems that the plaintiff's Motion is less of an attempt to obtain a

resolution of whether particular documents need to be produced, and more of an improper

attempt to obtain the extension this Court previously denied based on an incomplete presentation

of the facts.

{N6033702}                                       17

### E.  Plaintiff's Request for Sanctions Fails to Meet the Standards of Rule 37 Necessary to Warrant Sanctions.

By seeking sanctions under Rule 37(b) in the form of staying all current discovery deadlines, the plaintiff has artfully disguised his Motion to Compel as what should instead be cast as a Motion to Modify the Scheduling Order. This Court, however, has repeatedly indicated that it was unlikely to extend the discovery deadlines in this case. *See* ECF 68 ("the discovery deadline in this case is not likely to be further extended, absent unforeseen and extraordinary circumstances"); *see also* Exhibit H at 54:14–16 (the Court is "very unlikely to move this scheduling order if [it does not] dismiss this case.").

Moreover, in seeking sanctions in the form of a stay, the plaintiff ignores that Yale served timely objections to each of his untimely requests, that the plaintiff has not moved to compel responses to any specific requests, and that Yale is under no order to comply with any such requests. This request is both premature and unwarranted. Indeed, "[t]he predicate for imposition of sanctions pursuant to Rule 37(b) is failure to obey a lawful order from this court." *Call Ctr. Tech. v. Grand Adventures Tour & Travel Publ'g Corp.*, No. 3:03CV1036 (DJS), 2007 WL 2439401, at *4 (D. Conn. Aug. 24, 2007). "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).

Because Yale has timely objected to the plaintiff's discovery, fully engaged in efforts to resolve any disputes, including by agreeing to conduct ESI discovery for 16 custodians over broad timeframes, and because there is no prior order directing Yale to comply with any discovery, there is no basis to impose any sanctions, including sanctions in the form of a stay.

Accordingly, should the Court grant a part of the plaintiff's motion, Yale respectfully requests that it deny the plaintiff's premature and improper request for the imposition of sanctions.

**F.  Upon Denial of the Plaintiff's Motion, Yale is Entitled to the Expenses Incurred in Responding to the Motion, Including its Attorneys' Fees**

Pursuant to Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is denied, the court

> [m]ust, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

"An award of expenses under Rule 37(a)(5)(B) is 'mandatory' unless an exception is met." *Saliga v. Chemtura Corp.*, No. 3:12cv832 (VAB), 2016 WL 3093355, at *1 (D. Conn. June 1, 2016) (citing *Pegoraro v. Marrero*, No. 10 CIV. 00051 (AJN) (KN), 2012 WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012)). "The presumption in favor of imposing expense shifting sanctions against a party who unsuccessfully litigates a motion to compel reflects the importance of using monetary sanctions to deter abusive or otherwise unjustifiable resort to the judiciary in the discovery process." *Saliga*, 2016 WL 3093355, at *1 (quoting James Wm. Moore et al., Moore's Federal Practice ¶ 37.23[1] (3rd ed. 2015)). "The sanctions provision of Rule 37(a)(5)(B) was intended 'to reduce the burden on the courts' by deterring the "making [of] unjustified motions for discovery . . . ." *Id.* (quoting 8B Charles A. Wright et al., Federal Practice and Procedure § 2288 at 514 (3rd ed. 2010). "The rule places directly on attorneys a somewhat unique sanction to refrain from the frivolous, to weigh carefully considerations of relevancy and privilege, and to advise in accordance with the best judgment." *Id.*

The Court has already denied one of the plaintiff's procedurally deficient motions to compel. *See* ECF 225, Court's Order denying first Motion to Compel for failure to comply with condition of Local Rule 37 requiring a certification that that he has conferred in good faith but was unable to resolve the discovery issues. Now again, the plaintiff has filed a motion that fails to satisfy, among other things, additional conditions of Local Rule 37, making it impossible for the Court to find that the plaintiff's motion is substantially justified. An exception to Rule 37(a)(5)(B)'s mandate is thus inapplicable.

As a result of the motion's fatal deficiencies, the Court is without any information to determine whether the plaintiff has a valid basis to bring this motion. *See Pagan*, 2020 WL 249101, at *1. Accordingly, Yale requests that the Court order the plaintiff to reimburse Yale for its costs and attorneys' fees incurred in connection with responding to the plaintiff's motion.

### G. Even if this Court Grants Plaintiff's Motion, an Award of Costs or Attorney's Fees to Plaintiff is Unwarranted.

Rule 37(a)(5)(A) prohibits the Court from ordering the payment of attorneys' fees if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; [or] (ii) the opposing party's nondisclosure, response, or objection was substantially justified." A position is "substantially justified" if "reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." *Wenc v. New London Bd. of Educ.,* No. 3:14-cv-0840 (VAB), 2016 WL 4203371, at *1 (D. Conn. Aug 9, 2016) (internal citations and quotation marks omitted).

Here, Yale is more than substantially justified in withholding documents on the basis of its timely and proper objections to the plaintiff's untimely 2024 discovery requests, served more than 3 months after the Court's deadline to do so, and which also violate Rule 33(a). Since Yale's initial compliance in September of 2020, the plaintiff has not brought *any* of Yale's objections

before the Court nor moved to compel responses to any specific request. Instead, the plaintiff has taken an improper wholesale approach to Yale's objections, requesting compliance with *all* of the plaintiff's requests—not one of which the Court has before it to determine the relevancy thereof.

Moreover, Yale is honoring its duty to supplement the 2020 discovery directed to it, having just recently produced an additional 3,000 documents to the plaintiff; it has agreed to the plaintiff's requests to include additional custodians, search terms, and date ranges for its ESI search; and has engaged an outside vendor to assist in its ESI efforts and is currently in the process of collecting and processing nearly 300 GB of data. Accordingly, even if this Court choses to grant the plaintiff's motion, in whole or in part, Yale respectfully submits that the record before the Court does not warrant an award of costs or fees.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny the plaintiff's motion in its entirety.

Respectfully submitted,

Yale University, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Peter Salovey, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg

By: _____
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

## **CERTIFICATION OF SERVICE**

I hereby certify that on December 3, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Maria L. Laurato

# APPENDIX A

| DATE | DESCRIPTION | SOURCE |
|---|---|---|
| 6/19/20 | Plaintiff serves Yale with eighteen interrogatories (with subparts) and thirteen requests for production. The plaintiff also serves each of the twelve individual Yale defendants with separate interrogatories and requests for production. | ECF 233 at p. 2 |
| 9/28/20 | Yale serves plaintiff with written discovery. Yale's 2020 discovery requests to plaintiff are unanswered until 2024. | Exhibit A |
| 10/9/20 | All Yale defendants timely comply with plaintiff's initial discovery requests. | ECF 233 at p. 2 |
| 2/7/24 | Yale resends the plaintiff the same 2020 written discovery requests. | Exhibit A |
| 5/9/24 | Plaintiff serves Yale with untimely written discovery comprised of eight additional interrogatories (with subparts) and eighty-two requests for production. | ECF 233 at p. 2 |
| 6/6/24 | Yale lodges timely objections to plaintiff's untimely second set of discovery requests. | ECF 233 at p. 2 |
| 6/21/24 | First scheduled meet and confer, which plaintiff cancels. | Exhibit B |
| 7/10/24 | Rescheduled meet and confer. | Exhibit C |
| 7/22/24 | Plaintiff's ESI proposal contains 380+ custodians and 560+ search terms over a 12-year period. | Exhibit E |
| 7/31/24 – 8/5/24 | Yale requests revised and reasonable ESI proposal. Plaintiff refuses and insists that Yale provide a counterproposal. | Exhibit G |
| 8/6/24 | The plaintiff's "refined" ESI proposal: 47 custodians and 35 search terms. | Exhibit I |
| 8/16/24 | Yale provides ESI counterproposal. | Exhibit J |
| 9/12/24 | After four weeks, plaintiff responds to Yale's counterproposal. | Exhibit K |
| 9/25/24 | Second meet and confer: Yale agrees to additional custodian and accepts all of plaintiff's search terms and date ranges. | ECF 233 at p. 2 |

| 10/16/24 | Plaintiff states no agreement to Yale's ESI counterproposal. | Exhibit N |
| 11/12/24 | Plaintiff files first Motion to Compel. | ECF 224 |
| 11/13/24 | Court denies first Motion to Compel without prejudice. | ECF 225 |
| 11/19/24 | Third meet and confer: Yale agrees to search 16 custodians and to apply plaintiff's proposed search terms and date ranges | ECF 233 at p. 5 |
| 11/26/24 | Yale's supplemental production of more than 3,000 documents | ECF 233 at p. 5 |