# EXHIBIT A

NO. NNH-CR15-0162194         :      SUPERIOR COURT
                        :

STATE OF CONNECTICUT      :      JUDICIAL DISTRICT
                        :      OF NEW HAVEN

V.                        :
                        :      AT NEW HAVEN

SAIFULLH KHAN            :
                        :      NOVEMBER 25, 2024

## EMERGENCY MOTION TO OPEN CASE
## FOR LIMITED PURPOSE AND FOR ORDER

Jane Doe, the victim in this case, respectfully moves the Court to open this case for the limited purpose of addressing Jane's request that, pursuant to Connecticut General Statutes § 54-86e, her name should be removed from the official transcript. Jane requests an Order instructing the Official Court Reporter to redact her name from the official transcript in this case. Jane also requests that the Court immediately issue an Order precluding the Court Reporter from disseminating the transcript until this issue is decided and Jane's name is removed.

**I.    PRELIMINARY STATEMENT**

The Connecticut Supreme Court noted in this case that Jane's name is protected by our State's policy of protecting the privacy interests of the victims of sexual assault, as embodied in Connecticut General Statutes § 54-86e. *Khan v. Yale Univ.*, 347 Conn. 1, 8 n.1, 295 A.3d 855, 862 (2023). Despite that recognition, and despite a pretrial ruling by this Court that Jane's name is protected by § 54-86e, Jane's name appears in the trial transcript of this case.

The Court should correct this error by ordering Jane's name removed from the transcript.

The Defendant ("Mr. Khan") disagrees with Jane's position about her name. However, in a civil action in federal court, Mr. Khan represented that this Court should address the issue. The interests of justice require this Court re-open this matter for this limited purpose.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    This Case

The State charged the Mr. Khan, then a Yale student, with sexual assault.  (Information.) Jane Doe was the victim.  *See Khan v. Yale Univ.*, 347 Conn. 1, 8 n.1, 295 A.3d 855, 862 (2023).

### B.    Jane's Motion For A Pseudonym And This Court's Ruling

In accordance with Connecticut General Statutes § 54-86e, Jane filed a pretrial Motion in this case asking, among other things, that the Court issue an Order that she be referred to as "Jane Doe" rather than her real name.  (*See* **Exhibit A** (excerpts of June 30, 2016 Hearing).)

Mr. Khan opposed Jane's Motion, though he conceded that "the law [was] going against [him]" and thus largely limited his objection to disputing whether Jane should be referred to as "Jane Doe" or by her initials.  (*See* Exhibit A (excerpts of June 30, 2016 Hearing).)

Judge Clifford held that Connecticut General Statutes § 54-86e protected Jane's name from disclosure.  (Exhibit A 31:15–18 ("The Court: I mean, 'cause don't we have the Statute that we're supposed to avoid using any names that could lead to identifying the victim?  The Clerk:  54-86e."); *see also* Exhibit A 28:3–6 (The Court:  "And I think we have sections in our Statutes that are trying to protect the—obviously the victim and trying to identify who the victim is.").)

Judge Clifford decided that he would leave it up to whichever Judge presided over the trial in this case to determine whether Jane should be referred to as "Jane Doe" or her initials at trial.  (*E.g.*, Exhibit A 29:5–9 (The Court: "I'm not going to bind the trial Judge with that order and I would allow—if the trial Judge feels that Jane Doe is not the appropriate way and that it should be some kind of initials, I—I will certainly defer to the trial Judge . . . .").)

### C.    The Mistake At Trial

Despite Judge Clifford's ruling that § 54-86e applied, a mistake was made at trial. The

Trial Judge asked the State's Attorney whether Jane would testify using her full name.  (**Exhibit B** (Excerpt of February 26, 2018 Trial) 45:4–5.)  The State's Attorney responded that he "would like to use just her first name." (Exhibit B 45:12–13.) Counsel for the Mr. Khan objected. (Exhibit B 45:18–22.)  The Court asked the State's Attorney whether he had "any authority that [Jane's] last name not be used." (Exhibit B 45:23–24.) The State's Attorney responded: "I don't, Judge, off the top of my head." (Exhibit B 45:25–26.)  The Trial Judge therefore said: "All right. . . . I'm going to ask her to state her full name." (Exhibit B 45:27–46:1.)

The Trial Judge and the State's Attorney overlooked Judge Clifford's ruling and the clear mandate of Connecticut General Statutes § 54-86e.

Jane was not represented by personal legal counsel during the trial and therefore was not reminded of her statutory right to anonymity or Judge Clifford's Order, and Jane therefore was prejudiced by no assistance of legal counsel in Court when this mistake was made.

The jury returned a not guilty verdict.  As a federal judge has since noted, the jury did not "vindicate" Mr. Khan.  All that the not guilty verdict means is that the State failed to prove the elements of the crimes it charged Mr. Khan with beyond a reasonable doubt.  (*E.g.*, **Exhibit C** (Transcript Of March 18, 2024 Hearing) 13:11–23.)

### D.      The Yale Proceedings

Yale subsequently found Mr. Khan responsible for sexually assaulting Jane under its Title IX policy.  That process was confidential and subject to different legal standards, including but not limited to different standards of proof, than the criminal trial in this case.

### E.      Mr. Khan's Civil Lawsuit

Mr. Khan then sued Yale, individuals associated with Yale, and Jane in federal court. *Saifullah Khan v. Yale University et al.*, No. 3:19-cv-01966-KAD (D. Conn.).  In that lawsuit, Mr.

Khan filed a Motion to use a pseudonym for Jane.  (**Exhibit D**.)  In that Motion (and thereafter), Mr. Khan conceded that § 54-86e protected Jane at trial.  (*E.g.*, Exhibit D (Mr. Khan's Motion To Use A Pseudonym For Jane) at 7–8 (Mr. Khan acknowledged that "[Jane's] identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial."); Exhibit D at 2 ("During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e."); *see also* **Exhibit E** (Transcript Of October 21, 2024 Hearing) 16:19–20 (Mr. Khan counsel stating:  "Unquestionably the statute applied during the trial, Judge.").)

Mr. Khan also conceded that anonymity was necessary "to protect [Jane] from a [] public pillorying."  (Exhibit D at 5, 8.)  Mr. Khan has elsewhere acknowledged receiving death threats because of this case and has represented that he moves around a lot because he fears for his physical safety.  A video of Mr. Khan saying that can be accessed here.

The District Court granted Mr. Khan's Motion to use a pseudonym for Jane and has since reaffirmed that Jane is entitled to a pseudonym despite Mr. Khan's efforts to have the District Court remove her anonymity.  (*See, e.g.*, **Exhibit F** (Select Orders From The Federal Court).)

### F.    The Connecticut Supreme Court's Decision

Our federal courts certified questions raised in Mr. Khan's civil lawsuit to the Connecticut Supreme Court.  When the Connecticut Supreme Court decided those questions, the Connecticut Supreme Court declined to identify Jane in accordance with § 54-86e, writing:

> In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained.  See General Statutes § 54-86e.

*Khan v. Yale Univ.*, 347 Conn. 1, 8 n.1, 295 A.3d 855, 862 (2023).

In other words, the Connecticut Supreme Court recognized that, pursuant to § 54-86e, Jane should not be identified, even though Mr. Khan had been acquitted.

### G.    Mr. Khan's Efforts To Harass Jane By Disseminating Her Name

Mr. Khan has embarked on a lengthy campaign to harass Jane by disseminating her name. For example, through discovery in the civil case, Jane obtained an email that Mr. Khan had written in which Mr. Khan stated that he would "do everything [he] can to get [Jane] to break," including "spend[ing] thousands of dollars to keep [news] articles [containing Jane's name] circulating on the Internet for years" and sending mail to Jane's mother.  (**Exhibit G**.)

Even before that email was uncovered, the federal judge overseeing this case said:

What I have seen does give me concern about what's going on here, and some of the things that [Mr. Khan] has done [] give me pause.  Because some of the tenor and tone of [Mr. Khan's] posts feel less like his plan is to have his rights vindicated as it is to exact retribution, and that is not the purpose of the use of our [C]ourts[.]

When [Mr. Khan] has posted about the litigation and talking about attending depositions, there is a sense of an intent to intimidate.  There is a sense of an intent to harass.  The idea of sort of mobilizing the Internet—I mean, this is borderline doxing, and it's very concerning. . . .

(Exhibit C 8:23–9:9.)

When evaluating this, the District Court observed:

I think there's certainly language that [Mr. Khan used] from which a reasonable inference could be drawn that [Mr. Khan] was looking to set the spark or he was looking to visit upon [Jane] something similar to what has been visited upon [him].

(Exhibit C 19:1–5.)

Incredibly, when the District Court asked Mr. Khan's attorney what Mr. Khan's "plan" was, Mr. Khan's attorney confirmed that Mr. Khan's plan was to harass Jane, saying, *inter alia*:

I think he wants [Jane] to feel what he felt.  What it was to have every publication that reports on things like that, like *Time Magazine* reported him to be a rapist[.]

(Exhibit C 11:8–10.)

The District Court also concluded that Mr. Khan lied to her when he personally addressed the Court to deny any intent to harass Jane.  (**Exhibit H** (Transcript Of July 25, 2024 Hearing)

46:11–13 ("The Court: . . . . You just said that I should take your client at his word. Well, *your client sat in that chair three months ago and was dishonest with me*." (emphasis added).)

She also observed: "[A]t this juncture, based on everything that's been submitted, [Mr. Khan's] utter disdain and hostility towards at the very least Jane Doe, and probably to a lesser extent the Yale Defendants, is manifest." (Exhibit H 9:24–10:2.)

Mr. Khan's harassment of Jane has exposed her to a risk of retaliatory harm. For example, after Mr. Khan posted Jane's real name and commented on her ethnicity on social media on Christmas Morning 2023, a third party posted Jane's real name and information about where she works on a forum for extremists that has a swastika embedded in its logo. (**Exhibit I**.)

## H.    The District Court's Efforts To Prevent Abuse Of The Court System

The District Court attempted to stop Mr. Khan from misusing its process and protect Jane's right to a fair trial by, among other things, precluding Mr. Khan from publicly disseminating Jane's name. (Exhibit F (Orders).) Incredibly, Mr. Khan took the position that the District Court lacked the authority to (1) preclude him from disseminating Jane's name and (2) sanction him for violating its relevant Orders because Jane's name was technically "public" as a result of appearing in the transcript from the trial in this case. (**Exhibit J** (Excerpts Of Filings).)

Jane, who until that time believed her name was not publicly available through the transcript, investigated this issue and learned that her name was apparently publicly available. Jane was subsequently able to get in touch with the Court Reporter's Office and believed that the transcript had been corrected to remove her last name. Jane recently learned, however, that the Court Reporter's Office only partially redacted the transcript and that her name appears in it.

Jane therefore makes this Motion seeking an Order that her name be removed.

## III.    RELEVANT LAW AND ARGUMENT

The Court should issue an Order instructing the Court Reporter to redact Jane's name from the transcript in this case by replacing all references to Jane's first name with "Jane," all references to Jane's last name with "Doe," and all references to Jane's full name with "Jane Doe."

### A.    The Court Can And Should Fix The Mistake

The Connecticut Supreme Court recognized Jane's name should have been and should still be protected pursuant to § 54-86e.  *See Khan v. Yale Univ.*, 347 Conn. 1, 8 n.1, 295 A.3d 855, 862 (2023) (declining to identify Jane pursuant to § 54-86e).  The Supreme Court's application of § 54-86e is binding on this Court and is the law of this case.

This Court has the authority to fix the mistake made in the transcript and should do so.  In *State v. Molnar*, 79 Conn. App. 91, 829 A.2d 439 (2003), *aff'd sub nom. State v. Eric M.*, 271 Conn. 641, 858 A.2d 767 (2004), a police officer referred to the victim by her full name even though the Court had ruled "that it would follow § 54-86e and not disclose [the victim's] name on the record."  *Id.* at 98.  The Court "ordered those references stricken from the record and informed the jury that it was following a statute that required that the identity of a victim of sexual assault remain confidential."  *Id.*  The defendant challenged the Court's actions on appeal.  *Id.*

The Appellate Court rejected the defendant's challenge and affirmed the obligation of our Courts to protect names pursuant to § 54-86e when mistakes are made:

> [T]he [C]ourt's use of pseudonyms to refer to the victim was proper and a well established method for courts to comport with § 54-86e, which provides for the confidentiality of the name and address of a victim of sexual assault.  *The [C]ourt's subsequent action in striking references to the victim's full name from the record was little more than an effort to maintain compliance with the statutory requirements and was not improper.*

*Id.* at 99 (emphasis added).

This Court should correct the mistake made during trial by Ordering the Official Court

Reporter to remove Jane's name from the transcript.

### B.    Mr. Khan's Arguments Are Baseless

Mr. Khan makes a nonsensical argument that Jane should lose the protection of § 54-86e because he was acquitted. That argument is baseless for a number of reasons.

First and foremost, the Connecticut Supreme Court cited § 54-86e when it declined to identify Jane in its opinion in this case, which was issued *after* the not guilty verdict. *Khan*, 347 Conn. at 8 n.1. The Connecticut Supreme Court would not have done that if Jane lost the protection of § 54-86e when Mr. Khan was acquitted. Of course, the Supreme Court made this observation because nowhere in § 54-86e does the statute remove anonymity if a defendant is acquitted. Mr. Khan's argument to the contrary is without any support.

Second, one of the primary purposes of § 54-86e is to encourage the disclosure of sexual assaults. *E.g.*, *Doe v. Roe*, No. CV116010525, 2013 WL 453052, at *3 (Conn. Super. Ct. Jan. 7, 2013); *see also id.* at *5 (ordering that: "Any transcripts of these proceedings shall be subject to this pseudonym order and any transcription shall be made with pseudonyms in place of a party's actual name."). That purpose is frustrated if the protections of § 54-86e disappear in the event of an acquittal. Victims cannot guarantee a favorable verdict, particularly given how notoriously difficult it is to obtain convictions in sexual assault cases, and they will be discouraged from reporting sexual assault if their identities will be made public following an acquittal.

Third, as the District Court recognized, the not guilty verdict in this case does *not* mean that Jane is not a victim. *E.g.*, *Khan*, 347 Conn. at 8 n.1 (referring to Jane as "the victim"). It means that the State failed to convince a jury beyond a reasonable doubt. Under a different standard of proof, Yale concluded that Mr. Khan sexually assaulted Jane.

Mr. Khan's argument is baseless.

**C.      The Court Should Protect Jane Even Putting Aside § 54-86e**

Our Courts recognize a policy of protecting the privacy interests of victims and alleged victims of sexual misconduct that is independent of § 54-86e. *E.g.*, *State v. Eric M.*, 271 Conn. at 641 n* ("In accordance with the spirit and intent of General Statutes § 54-86e . . . *and* this [C]ourt's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained." (emphasis added)). The District Court has now repeatedly held that Jane's name should be protected pursuant to common law principles. (*E.g.*, Exhibit F.) That conclusion is amply warranted in light of Mr. Khan's announced plan of disseminating Jane's name to harass Jane, deprive of a fair trial, and get her to "break." This Court should not allow Mr. Khan to exploit the mistaken inclusion of Jane's name in the trial transcripts. It certainly should not allow the mistake to be exploited to harass Jane. Even if § 54-86e didn't apply—which it does—the Court has broad discretion to remove Jane's name from the trial transcript and should exercise that discretion.

## IV.    CONCLUSION

Consistent with the Connecticut Supreme Court's decision on referral from the Second Circuit, Conn. Gen. Stat. § 54-86e, and public policy, this Court should issue an Order instructing the Court Reporter to redact Jane's name from the transcript in this case by replacing all references to Jane's first name with "Jane," all references to Jane's last name with "Doe," and all references to Jane's full name with "Jane Doe." The Court should also issue an Order reiterating that Jane's name is confidential, that no one is to release materials from this case that contain Jane's name, and that if anyone learns that materials from this case that may be publicly available contain Jane's name (such as a line in a transcript that was missed) they are to alert the Court immediately.

JANE DOE,

By: */s/ Brendan N. Gooley*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email:  jsconzo@carltonfields.com
           bgooley@carltonfields.com

    Her Attorneys

## **CERTIFICATION OF SERVICE**

This is to certify that on this 25th day of November 2024, a copy of the foregoing was filed

with the Court and emailed to the following:

Mario Cerame, Esq.
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
mcerame@brignole.com

John P. Doyle, Jr., Esq.
Office of the State's Attorney
Judicial District of New Haven
235 Church Street
New Haven, CT 06510
conndcj@ct.gov

Christie Ciancola
Office of Victim's Services
235 Church Street
New Haven, CT 06510
Christie.Ciancola@jud.ct.gov

                          */s/ Brendan N. Gooley*
                          Brendan N. Gooley

# Exhibit A

```
NNH-CR15-0162194-T              :   SUPERIOR COURT

STATE OF CONNECTICUT            :   JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                              :   AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN                  :   JUNE 30, 2016
```

               BEFORE THE HONORABLE PATRICK CLIFFORD, JUDGE


A P P E A R A N C E S :


        Representing the State of Connecticut:

            ATTORNEY MICHAEL PEPPER
            STATE'S ATTORNEY'S OFFICE
            235 CHURCH STREET
            NEW HAVEN, CT 06510


        Representing the Defendant:

            ATTORNEY DANIEL ERWIN
            PATTIS & SMITH, LLC
            383 ORANGE STREET
            FIRST FLOOR
            NEW HAVEN, CT 06511


        Also Present:

            ATTORNEY JAMES CLARK
            VICTIM RIGHTS CENTER OF CONNECTICUT, INC.
            8 RESEARCH PARKWAY
            WALLINGFORD, CT 06492


                              Recorded By:
                              Christine Bachman

                              Transcribed By:
                              Alison Case
                              Court Recording Monitor
                              235 Church Street
                              New Haven, CT 06510

SAIFKHAN_010656

1   court and make a second or third Esposito showing

2   before we go out there.  That's the core of my

3   objection.

4       THE COURT:  I don't think that's the intent, so

5   I'm granting that.

6       Five, all court documents filed shall be copied

7   to the attorney of the victim.

8       Does the State have an objection to that?  I

9   guess that's motions or --

10      ATTY. PEPPER:  No.

11      THE COURT:  All right.

12      ATTY. ERWIN:  Our objection is limited to if --

13  if we had the proper basis for an ex parte document

14  certificate for out of state subpoena process,

15  something like that that reveals workings of the

16  defense, normal -- normal filings --

17      THE COURT:  Well, I mean, motions that would be

18  public motions.

19      ATTY. ERWIN:  We would do that any way.  They do

20  have an appearance in the case and that's our

21  process.

22      THE COURT:  All right.  So I'll grant that.

23      And, lastly, and all documents, pleadings,

24  statements in court, examination and testimony of

25  witnesses shall refer to the victim only as, quote,

26  Jane Doe, closed quote.  All references to other

27  members of the victim's family shall use anonymous

SAIFKHAN_010684

1    names to be agreed upon by the parties prior to any

2    proceedings that may require the use of those names.

3        Any objection to that?  And I think we have

4    sections in our Statutes that are trying to protect

5    the -- obviously the victim and trying to identify

6    who the victim is.  They're just asking specifically

7    that it be Jane Doe and not initials that might also

8    -- might be a way of identifying the alleged victim.

9        ATTY. ERWIN:  In addition to our standing global

10    objection --

11        THE COURT:  Besides that.

12        ATTY. ERWIN:  -- the -- the -- I mean, look, I'm

13    of the minds that this battle has already been lost

14    and for me to come to court and testify my client has

15    been outed and that's the only thing.  I accept that

16    the law is going against me on that; however, the

17    custom of using initials does permit some important

18    function which is that if we have other witnesses on

19    the stand or we're trying to voir dire potential

20    jurors, they're not going to know from the use of

21    Jane Doe or whomever whether they have a connection

22    to this case. So, you know, it's kind of like my

23    position on paragraph five with -- with respect to

24    general filings where that's not an issue, I don't

25    particularly care, but where it burdens the rights of

26    my client, I think that we'd have to find a way

27    around that.

SAIFKHAN_010685

```
1           THE COURT:  Well, I would say this.  As far as
2      any pleadings, et cetera, I don't have a problem
3      granting that motion to refer to the alleged victim
4      or victims as Jane Doe.  As far as the trial itself,
5      if it goes to trial, I'm not going to bind the trial
6      Judge with that order and I would allow -- if the
7      trial Judge feels that Jane Doe is not the
8      appropriate way and that it should be some kind of
9      initials, I -- I will certainly defer to the trial
10     Judge and I'll write that into the motion.
11          ATTY. ERWIN:  Fair enough.
12          THE COURT:  Okay.  All right.
13          ATTY. PEPPER:  Can I just give --
14          THE COURT:  Oh.  And you also -- did you have a
15     motion about the pretrial process?  No?
16          ATTY. ERWIN:  I don't think so.
17          THE COURT:  Okay.
18          ATTY. PEPPER:  Can I just be heard on that
19     paragraph?
20          THE COURT:  Yes.
21          ATTY. PEPPER:  When this does get to trial,
22     Judge --
23          THE COURT:  Pardon?
24          ATTY. PEPPER:  When it does get to trial, Judge
25     --
26          THE COURT:  Yes.
27          ATTY. PEPPER:  -- we're going to be referring to
```

SAIFKHAN_010686

1     the alleged victim in this case as a Jane Doe?

2          THE COURT:   No.   What I just said was as far as

3     any -- that's the way the paragraph reads, but what I

4     just indicated was any court document should refer to

5     the alleged victim at this point as Jane Doe, but

6     I'll -- I'll defer to the trial Judge as to whether

7     they want to refer the victim, alleged victim, as

8     Jane Doe or in some other fashion.

9          ATTY. PEPPER:   Okay.   But it also says

10    references to other members of the victim's family to

11    use anonymous names.   I'm just wondering when I --

12    when I get to the point where I have to file a -- a

13    witness list, what am I supposed to do with that?

14         ATTY. CLARK:   Can I respond to that one, Judge?

15         THE COURT:   Yes.

16         ATTY. CLARK:   I don't think that he actually has

17    to file a witness list that contains those names.   He

18    has to turn over to the defense at some point a

19    witness list, but I don't think that needs to be a

20    court document and those two documents can be

21    different.   The public document we would prefer to

22    maintain the anonymity that the general statutes

23    require, but that doesn't mean that his witness list

24    has to be -- I mean --

25         THE COURT:   Does the witness --

26         ATTY. CLARK:   -- it is sometimes filed, but I

27    don't think there's any requirement that it be filed.

SAIFKHAN_010687

```
1          It's a notice to the defense.
2               ATTY. PEPPER:  Well, I think it's been the
3          practice here for years that we file the witness
4          list, Judge, and I just --
5               THE COURT:  Is it filed in the court documents
6          or --
7               ATTY. PEPPER:  Yes.
8               THE COURT:  -- does it just go to defense
9          counsel?
10              ATTY. PEPPER:  No, no, no.  It's filed in the
11         court documents.
12              ATTY. CLARK:  Then I'd ask that it apply to that
13         one and there be a different one given to the defense
14         for obvious constitutional purposes.
15              THE COURT:  I mean, 'cause don't we have the
16         Statute that we're supposed to avoid using any names
17         that could lead to identifying the victim?
18              THE CLERK:  54-86e.
19              THE COURT:  Yeah.  I mean, couldn't you -- I
20         mean, if you file it, certain relatives could they be
21         done in some other manner by initials and yet, you
22         know, you can give counsel the -- the full names?
23              ATTY. PEPPER:  Sure.
24              THE COURT:  I mean, I'm just --
25              ATTY. PEPPER:  Yeah.
26              THE COURT:  I mean, the Statute does say that.
27              ATTY. PEPPER:  Right.
```

1          THE COURT:  And many times it's very difficult.

2     It can be practically issues that -- certainly during

3     these proceedings.  It's very hard.

4          ATTY. PEPPER:  Right.

5          THE COURT:  But I don't see a problem there.

6          ATTY. CLARK:  And we may -- with no objection,

7     if we get to trial, that's a different world then.

8          THE COURT:  I agree.

9          ATTY. CLARK:  And obviously everybody here knows

10    that I'm aware of that.

11         THE COURT:  I agree.

12         ATTY. CLARK:  And we'll see what the trial Judge

13    wants to do --

14         THE COURT:  All right.

15         ATTY. CLARK:  -- and we'll either have

16    objections or not.

17         THE COURT:  All right.  Fair enough.

18    Okay.  Thank you.

19         ATTY. CLARK:  Thank you, your Honor.

20         ATTY. ERWIN:  Thank you.

21         (Whereupon the matter was concluded.)

22

23

24

25

26

27

SAIFKHAN_010689

NNH-CR15-0162194-T                 :    SUPERIOR COURT

STATE OF CONNECTICUT               :    JUDICIAL DISTRICT
                                        OF NEW HAVEN

v.                                 :    AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN                     :    JUNE 30, 2016


C E R T I F I C A T I O N


        I hereby certify the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, New Haven, Connecticut, before the Honorable Patrick
Clifford, Judge, on the 30th day of June, 2016.



        Dated this 7th day of July, 2016 in New Haven,
Connecticut.


                                   _Alison Case_____
                                   Alison Case
                                   Court Recording Monitor

SAIFKHAN_010690

# Exhibit B

```
NO: NNH CR15 0162194          :   SUPERIOR COURT

STATE OF CONNECTICUT          :   JUDICIAL DISTRICT
                                  OF NEW HAVEN

v.                            :   AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN                :   FEBRUARY 26, 2018
```

**CORRECTED**


BEFORE THE HONORABLE BRIAN T. FISCHER, JUDGE and JURY



A P P E A R A N C E S :


   Representing the State

      ATTORNEY MICHAEL PEPPER
      SENIOR ASSISTANT STATE'S ATTORNEY
      235 Church Street
      New Haven, Connecticut 06510


   Representing the Defendant

      PATTIS AND SMITH LAW FIRM
      ATTORNEY NORMAN PATTIS
      ATTORNEY DANIEL ERWIN
      383 Orange Street
      New Haven, Connecticut 06510


                    Recorded and Transcribed By
                    Mary Lou Coppola
                    Court Recording Monitor
                    235 Church Street
                    New Haven, Connecticut 06510

1     you, you know, it's speculative, the jury's not going

2     to hear it.  So it sounds like appropriate cross-

3     examination on many of the concerns you have.

4          We're using the name of the complaining witness

5     when she comes in here, full name?

6          ATTY. PEPPER:  May I have a moment.

7          THE COURT:  Sure.

8          ATTY. PEPPER:  Can I be excused for just a

9     second.

10         THE COURT:  Sure.

11         (Attorney Pepper steps out for a moment.)

12         ATTY. PEPPER:  Thank you, your Honor.  I would

13    like to use just her first name.

14         THE COURT:  Excuse me.

15         ATTY. PEPPER:  We'd like to use just the first

16    name.

17         THE COURT:  Just the first name?

18         ATTY. PATTIS:  Judge, we object to that.  Mr.

19    Khan is presumed innocent.  His name has been held

20    out to the world as a rapist and this is a young

21    woman who had a confrontation in her room.  I don't

22    see why she's entitled to special solicitude.

23         THE COURT:  Do you have any authority that her

24    last name not be used?

25         ATTY. PEPPER:  I don't, Judge, off the top of my

26    head.

27         THE COURT:  All right.  So I'm not -- I'm going

1      to ask her to state her full name.

2           ATTY. PEPPER:  Okay.

3           THE COURT:  Won't ask for any address or

4      anything, just her full name and put her under oath.

5      All right, Counsels.  I'm going to bring the jury

6      out and we will --

7           ATTY. PEPPER:  Well, before you do that, can I

8      just tell her that.

9           THE COURT:  Sure.  Go ahead.

10          ATTY. PEPPER:  All set.

11          THE COURT:  All right.  Why don't we bring

12     the -- Well, hold on one second.  Why don't we --

13     wait with your witness there, we're going to bring

14     the jury out first then you could call your witness

15          (The jury panel enters the courtroom.)

16          THE COURT:  All right.  The record will reflect

17     we have the jury panel back in the courtroom.  I look

18     to the State of Connecticut.

19          ATTY. PEPPER:  The State would call ███████ **[NAME**

20     **OMITTED]**.

21          THE COURT:  Okay.  Sure.  Ma'am, come forward.

22     Good morning, ma'am.  If you could please remain

23     standing the clerk to my right is going to swear you

24     in.  He's going to ask you to raise your right hand.

25

NO: NNH CR15 0162194       :    SUPERIOR COURT

STATE OF CONNECTICUT       :    JUDICIAL DISTRICT
                                       OF NEW HAVEN

v.                                  :    AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN              :    FEBRUARY 26, 2018


### C E R T I F I C A T I O N

I hereby certify that the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, at New Haven, Connecticut, before the Honorable Brian T. Fischer, Judge, on the 26th day of February, 2018.


Dated this 21st day of March, 2018, in New Haven, Connecticut.


_____
Mary Lou Coppola
Court Recording Monitor

*Gillian M Perry, OCR*

*11-7-2024*

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
SAIFULLAH KHAN,                  )
                Plaintiff,       ) No: 3:19-cv-1966-KAD
                                 )
        v.                       ) March 18, 2024
YALE UNIVERSITY, ET AL.,         )
                Defendants.      ) 9:57 a.m.
_____  )
                        Brien McMahon Federal Building
                        915 Lafayette Boulevard
                        Bridgeport, CT 06604


                    MOTION HEARING


B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.

Courtroom Deputy:               Official Court Reporter:
Kristen Gould, Esq.             Tracy L. Gow, RPR

            Chambers: 203.579.5522

1   drafted the complaint.  It is I who sought the protective
2   order on his behalf.  And it was our understanding at that
3   time that we would be governed by Yale process, as it were,
4   which was to keep anonymity of the complainant.  And,
5   frankly, it was the Supreme Court's decision that sort of --
6   and it's conclusion about the application of the honor code
7   to her -- to Jane Doe, that tipped the balance.
8            It was my expectation that we were going to file
9   something with this Court.  In listening to you, I'm
10  thinking, Jeez, I'm not half as good a lawyer as I thought
11  because that was a defense that wasn't raised, but it's
12  because it was an issue I didn't --
13           THE COURT:  Slow down.
14           MR. PATTIS:  It was a defense I didn't raise because
15  it's an issue I didn't see.  I saw it as Attorney Sconzo did,
16  and I did provide him notice that we would be seeking relief
17  from the order.
18           So I appreciate the Defense, and I appreciate the
19  concern about prior restraints, but I was operating as though
20  the order applied where it may not have, and I wanted you to
21  hear that from me.
22           THE COURT:  Okay.  Thank you.
23           I'll circle-back to where I was.  What I have seen
24  does give me concern about what's going on here, and some of
25  the things that Mr. Khan has done that give me pause.

1    Because some of the tenor and tone of the posts feel less

2    like his plan is to have his rights vindicated as it is to

3    exact retribution, and that is not the purpose of the use of

4    our courts or litigation generally.

5         When he has posted about the litigation and talking

6    about attending depositions, there is a sense of an intent to

7    intimidate.  There is a sense of an intent to harass.  The

8    idea of sort of mobilizing the Internet -- I mean, this is

9    borderline doxing, and it's very concerning.

10        The flipside of this -- I know that we have -- Mr.

11   Khan has an interest, if I'm reading these attachments

12   correctly, in challenging the structure of Title IX

13   proceedings generally, separate and distinct from this

14   litigation.

15        And I guess I would ask Attorney Sconzo or Attorney

16   Gooley, the motion for protective order that you filed, that

17   sort of seeks to achieve essentially what you're arguing

18   should have been or already was in place.  Is that a fair

19   statement?

20        MR. SCONZO:  Well, partly, Your Honor.  I think that

21   motion did not address the dissemination of the name, but

22   that motion addressed the dissemination of disclosures made

23   in discovery.  So the name issue still, I think, remains the

24   largest concern.

25        THE COURT:  And that issue is teed up with

1    world, and now she seeks the protection for the consequences

2    of her action.

3          Now, the Court may say that his purpose is revenge

4    and revenge is inappropriate.  Accountability is not.  And to

5    the degree that he will seek punitive damages, those are to

6    punish and deter, and deterrence is a uniquely personal

7    function.

8          So I think he wants her to feel what he felt.  What

9    it was to have every publication that reports on things like

10   that, like Time Magazine reported him to be a rapist, when,

11   in fact, what he did was engaged in what one headline writer

12   called "messy sex."  And sex, typically, when it's consensual

13   among people above a certain age, may be messy, but it's not

14   a crime.

15         And, so, for reasons of her own, and for reasons of

16   a highly-mobilized political group, Mr. Khan was held out to

17   be a criminal and had to fight for his liberty, and he won.

18   And when he went back to Yale, the anger was mobilized and

19   they forced him to the street, and he's lost the promise.  I

20   remind you, he was recruited from a refugee camp in

21   Pakistan -- or Afghanistan, rather -- and came to the United

22   States, educated at Yale's expense.  He does want

23   retribution.  His future was stolen from him.

24         Now, having said that, I'm in a tough spot on the

25   "prior restraint" issue because I don't think this does come

1    could cost him my representation of him, because it'll raise

2    questions about my credibility.

3           And, candidly, there was discovery mishap in the

4    Jones case that in state court had cost me a suspension that

5    is still being litigated in the appellate courts.  I'm

6    uniquely sensitive to these issues, and Mr. Khan knows it.

7           So his intentions are to obey your orders, but to

8    fight hard to vindicate his claims.

9           MR. SCONZO:  Judge, may I be heard just briefly.

10          THE COURT:  Of course.

11          MR. SCONZO:  I see an merging notion in this case

12   that Mr. Khan was vindicated.  Mr. Khan was found "not

13   guilty" in a criminal standard, in a criminal court.  Nothing

14   has been decided in a civil context, and I want to make that

15   clear.  Mr. Khan was dismissed from Yale on a standard far

16   different than a criminal process for rape, and he has not

17   proven that my client lied, and I need to put a stop to this

18   notion I see building momentum that he's been vindicated.

19          He's not be vindicated of anything, Judge.  The only

20   charge he's been absolved of by a jury is that the State did

21   not prove beyond a reasonable doubt that he raped my client.

22   That is it.  The rest is yet to be determined.

23          THE COURT:  All right.  I agree.  And I think that

24   that puts a finer point on the concerns that I have.  I mean,

25   obviously, Mr. Pattis, I'm sure you're going to have a

19

1      THE COURT:  Well, I think there's certainly language

2  that your client shows from which a reasonable inference

3  could be drawn that he was looking to set the spark or he was

4  looking to visit upon her something similar to what has been

5  visited upon her.

6      MR. PATTIS:  I don't know that anything has.  I

7  mean, you know, I endured the Sandy Hook defaults trial for

8  Alex Jones, and they brought in an expert on digital imprint

9  and stochastic terrorism, and then they brought on the family

10  to talk about the contact that was made in that.  Because

11  there was a default entry, causation was established.  And so

12  it was assumed that when a drop -- when a pebble was dropped

13  in an ocean, every ripple was the responsibility of Mr.

14  Jones.  The plaintiffs never had to prove that.  And the

15  plaintiff -- or the defendant in this instance never even

16  tried.

17      THE COURT:  Well, I'm not -- I'm not going to

18  dismiss the case.  I think that, consistent with the parties'

19  earlier understanding, with the issues now I think adequately

20  joined between the motion to remove the pseudonym and the

21  motion for the protective order, what the parties' conduct

22  looks like going forward is teed up.

23      I am going to direct -- I suppose you can take an

24  immediate appeal to the Second Circuit if you'd like,

25  Attorney Pattis, but I am going to direct Mr. Khan not to at

1          MR. PATTIS:  Thank you, Judge.

2             (Proceedings conclude, 10:35 a.m.)

3

4                   C E R T I F I C A T E

5               RE: *Khan v. Yale, et al.*
                Civil No. 3:19-cv-1966-KAD
6
                     Motion Hearing
7                    March 18, 2024

8

9      I, Tracy L. Gow, RPR, Official Court Reporter for the

10   United States District Court, District of Connecticut, do

11   hereby certify that the foregoing pages, 1 through 26, are a

12   true and accurate transcription of my shorthand notes taken

13   in the aforementioned matter to the best of my skill and

14   ability.

15

16                   /s/  TRACY L. GOW
                     Official Court Reporter
17                   U.S. District Court
                     915 Lafayette Boulevard, Room 216
18                   Bridgeport, Connecticut 06604
                     (203) 910-0323

19

20

21

22

23

24

25

# Exhibit D

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,     :
  Plaintiff,      :    cv__19-1966_____
             :
v.           :
             :
YALE UNIVERSITY,    :
PETER SALOVEY,     :
JONATHON HALLOWAY,  :
MARVIN CHUN, JOE GORDON, :
DAVID POST, MARK SOLOMON, :
PAUL GENECIN,      :
STEPHANIE SPANGLER,   :
SARAH DEMERS, JANE DOE  :
CAROLE GOLDBERG,    :
UNKNOWN PERSONS,    :
  Defendants.      :    DECEMBER 13, 2019

## MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME

   The Plaintiff, Mr. Khan, brings the instant action before the Court for an abuse of his rights under Title IX, broken promises that resulted in a heinous breach of contract against him, and fabricated allegations of false conduct against the Plaintiff. Notwithstanding the heinous falsities that the Jane Doe Defendant brought against Mr. Khan, Mr. Khan hereby moves the Court to grant him permission to litigate his pendent state law claims against Jane Doe using a pseudonym in place of her actual name because he holds out hope that he may move on with his life and complete his undergraduate degree at Yale University – either by permission of Yale University (also a defendant in the instant action) or by virtue of injunctive relief from the Court. In that hope and despite the many egregious wrongs committed against him, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual

Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

### Relevant Facts

On Halloween, 2015, Mr. Khan and Jane Doe had consensual sexual relations. *See* **Compl. at ¶¶ 39-43**. The next morning, Jane Doe belatedly decided that having consensual sexual relations with Mr. Khan was a bad decision so she concocted a story for her friends, claiming that she had been raped; however, she told the Yale University Health Center worker who provided her with contraception that she had engaged in consensual, unprotected sex. *Id.* **at ¶ 45**. With the advice and counsel of the Defendants in this action, Jane Doe filed a formal complaint against Mr. Khan with the Yale University police department, which immediately began investigating Mr. Khan for rape. *Id.* **at ¶¶ 46-48**. The State of Connecticut subsequently charged Mr. Khan with sexual assault in the first degree. *Id.* **at ¶ 48**.

During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e. After a two-week jury trial in early 2018, the jury quickly returned a verdict acquitting Mr. Khan of all charges against him. *Id.* **at ¶ 52**. Through the efforts of his defense counsel, Mr. Khan succeeded in having his UWC disciplinary hearing delayed until after his criminal trial. *Id.* **at ¶ 51**. Mr. Khan was subsequently readmitted to Yale University in the fall of 2018, but he was denied on-campus housing. *Id.* **at ¶ 57**. At this time, Yale University made no effort to move forward with his UWC disciplinary hearing, and Jane Doe had already graduated. *Id.* **at ¶¶ 57, 68**.

In November 2018, Yale University convened a UWC hearing on Jane Doe's complaint – the same one that had resulted in the criminal charges against Mr. Khan. *Id.* **at ¶¶ 74**. Jane Doe testified at that hearing, peddling the same concocted falsities that she had levelled against Mr. Khan in the criminal trial. *Id.* **at ¶¶ 74-81**. The only difference was that Mr. Khan could not cross-examine her or confront his accuser in any manner. *Id.* **at ¶ 77**. Yale university ultimately decided to expel Mr. Khan. *Id.* **at ¶ 80**.

On its website, Yale University publicizes a set of policies and procedures for UWC proceedings. The policies and procedures unequivocally pronounce "[t]he UWC and all members of the Yale community who are involved in a matter before the UWC are expected to maintain the confidentiality of its proceedings and the information obtained for those proceedings." *See* **Exhibit 1 – UWC Procedures, p. 3**. Yale University has elaborated on this provision through a formal policy statement made by its provost. *Id.* **at 3**.

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.

*See* **Exhibit 2 – Statement on Confidentiality of UWC Proceedings, p. 1**.

## ARGUMENT

Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. **Exhibit 1, p. 3.** However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale

University or an injunction from the Court, this provision would apply to him. Consequently, to preserve his interest in rejoining the Yale University community to complete his undergraduate education, Mr. Khan respectfully requests the Court to allow him to proceed in his defamation and tortious interference claims by naming Jane Doe under a pseudonym.

Fed. R. Civ. P. 10(1) mandates that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d. Cir. 2008).[1] However, courts have "carved out a limited number of exceptions to the general requirement of disclosure…." *Id.* at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). These exceptions have typically arisen in cases involving sensitive and intimate issues such as abortion decisions, e.g., *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), or cases involving minors, e.g., *Smith v. Edwards*, 175 F.3d 99 (2d. Cir. 1999).

In the *Sealed Plaintiff* case, the Second Circuit established ten non-exclusive factors, discussed in turn below, to determine whether the Court should grant a party's request to persuade under a pseudonym. *Id.* at 189-90. While these factors have traditionally been applied to parties seeking to protect their own identities by use of a pseudonym, these factors are also readily adaptable to a

---

[1] To the best of counsel's knowledge after research, this case is still sealed. Consequently, counsel has provided the Court with a copy of the Second Circuit's decision to save the Court any difficulty in locating it. *See* **Exhibit 3 – *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d. Cir. 2008)**.

request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym.

The first factor weighs "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature.'" *Id.* at 190 (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The instant case involves matters of a highly sensitive and personal nature, both to Mr. Khan and Jane Doe. As stated above, Jane Doe accused Mr. Khan of raping her. "[A]llegations of sexual harassment and misconduct" raises issues and questions "that are of a highly sensitive and personal nature." *A.B. v. C.D.*, 2018 WL 1935999, at *2. Therefore, the first factor weighs in Mr. Khan's favor.

The second factor examines "whether identification poses a risk of retaliatory physical or mental harm to the… party (seeking to proceed anonymously] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190 (quoting *Zavaras*, 139 F.3d at 803). As stated above, Jane Doe was protected by Conn. Gen. Stat. § 54-86e, which prevented the publication of her name during Mr. Khan's criminal trial. Consequently, for the purposes of Mr. Khan's UWC process, his conduct of his criminal trial did not violate the UWC procedures. If Mr. Khan names Jane Doe in this action, he will suffer the risk of retaliatory physical or mental harm, namely, the loss of any chance to successfully negotiate his return to Yale University to complete his undergraduate studies and the jeopardization of his opportunity to obtain injunctive relief from the Court to allow him to complete his undergraduate studies. Therefore, Mr. Khan seeks to

respect the UWC confidentiality rules by seeking to proceed against Jane Doe pseudonymously. Thus, the second factor weighs in Mr. Khan's favor.

The third factor examines "whether identification presents other harms and the likely severity of those harms…, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Id.* at 190 (quoting *Zavaras*, 139 F.3d at 803). At first glance, the injury incurred by Mr. Khan has already occurred. However, Mr. Khan does face the significant likelihood of further antagonizing Yale University to the point of placing his chances of negotiating a return to Yale University to complete his undergraduate degree by naming Jane Doe in violation of the UWC hearing. Furthermore, if Mr. Khan does name Jane Doe, Yale University will undoubtedly use that fact against him to illustrate its version that Mr. Khan "breaks" Yale University polices in opposing Mr. Khan's request for injunctive relief. Consequently, the third factor weighs in favor of Mr. Khan.

Mr. Khan concedes that the fourth factor weighs against him in that he is not "particularly vulnerable to the possible harms of disclosure…, particularly in light of his age." *Id.* at 190.

The fifth factor weighs in favor of Mr. Khan: "whether the suit is challenging the actions of the government or that or private parties." *Id.* at 190. Normally, suits against private parties do not enjoy a stronger presumption of a need to protect a party's privacy because personal embarrassment is the only consideration for keeping them private. *A.B. v. C.D.*, 2018 WL 1935999, at *3. However, when a party sues the government and seeks to serve as "a significant check on abuse of

public power," "it is in the public interest that the price of access to the courts not be too high." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." *Id.* at 158 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The value of open proceedings disappears when there are no proceedings to be had." *Id.* at 158. The reasoning underlying this presumptive balancing factor is the power disparity between the government, the public at large, and potential plaintiffs. The same reasoning applies here. Yale University enjoys tremendous social power, and it can have a tremendous impact on a person's life as Mr. Khan can readily attest to. If Mr. Khan names Jane Doe, the potential for Yale to retaliate against him in negotiations about his potential readmission to Yale to complete his degree and to whip up public scorn against him would be similar to that of a government trying to accomplish the same goals against a plaintiff. Consequently, while Mr. Khan does not presumptively enjoy the benefit of this factor, he should be given its protections for the same reasons undergirding it.

The sixth and seventh factors also weigh in Mr. Khan's favor. The sixth factor weighs "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor examines "whether the [defendant]'s identity has thus far been kept confidential." *Id.* at 190. Jane Doe's identity has been kept confidential for more than three years now. Her

identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial. Yale University's UWC policies and procedures kept her identity confidential in Mr. Khan's UWC proceeding. If anyone has suffered prejudice in this concocted saga, it is Mr. Khan, who was publicly and privately pilloried on the basis of Jane Doe's false accusations without ever being allowed to name her as his accuser when defending himself. Every single proceeding that has involved Jane Doe and Mr. Khan to this point has kept Jane Doe's identity confidential to protect her from a similar public pillorying. Consequently, as Mr. Khan seeks to put his life back together by complying with rules that Jane Doe has gladly embraced to protect herself, it will not prejudice Jane Doe in the slightest to continue to protect her from public scrutiny. Therefore, both the sixth and seventh factors weigh in Mr. Khan's favor.

Similar to the sixth and seventh factors, the eighth and ninth factors are linked, and Mr. Khan concedes that both do not weigh in his favor. The eighth factor examines "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [the defendant's] identity." *Id.* at 190. The ninth factor addresses "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Id.* at 190. Addressing the ninth factor first, Mr. Khan was acquitted in a highly publicized trial that was covered with no small vigor by the press from charging to verdict and that invoked widespread reaction at the height of the #MeToo movement. The media including the Yale Daily News insisted on publicizing and discussing the case long after the jury had delivered Mr. Khan's

acquittal. As soon as the instant action is filed, it will garner intense public scrutiny, which will widely publicize Jane Doe's name. Therefore, under no circumstances can Mr. Khan or counsel anticipate an atypically weak public interest in learning the parties' identities. Turning to the eighth factor, the public's interest will undoubtedly be aided tremendously if Mr. Khan is forced to disclose Jane Doe's identity. Both of these factors weigh against Mr. Khan.

The tenth and final factor examines "whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality." *Id.* at 190. There are none. Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life. If he is forced to name Jane Doe, Mr. Khan will be forced to choose between Scylla and Charybdis. If he chooses to continue with his claims against Jane Doe for the wrongs that she has committed against him, Mr. Khan will lose any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree. If he chooses to discontinue his claims, Mr. Khan may or may not succeed in negotiating a return to Yale University to complete his degree. However, he will certainly forfeit forever the opportunity to seek legal redress for the wrongs Jane Doe has committed against him. Consequently, the tenth factor weighs in Mr. Khan's favor.

**CONCLUSION**

Mr. Khan still holds out hope, albeit small hope, that he can piece his life back together by completing his degree at Yale University, either through a negotiated agreement with Yale University or by injunctive relief from the Court. At the same time, Jane Doe has destroyed Mr. Khan's life through her false accusations against him. Consequently, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

Therefore, for the foregoing reasons, Mr. Khan respectfully requests that the Court grant his motion to proceed against Jane Doe by identifying her with a pseudonym.

The Plaintiff

BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT 06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

## CERTIFICATION

I hereby certify that on September 23, 2019 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120

# Exhibit E

```
             UNITED STATES DISTRICT COURT

              DISTRICT OF CONNECTICUT


---------------------------------x
                                 :
SAIFULLAH KHAN,                  :
               Plaintiff,  :      Civil No.
                           :  3:19-CV-01966 (KAD)
          vs.              :
                           :  October 21, 2024
YALE UNIVERSITY, ET AL.,   :
               Defendants. :
                                 :
---------------------------------x
```

EMERGENCY MOTION TO VACATE ORDER

(Via Zoom Teleconference)


(Transcription from Electronic Recording)


Held Before:

THE HON. MARIA E. GARCIA
United States Magistrate Judge




Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

1  basis of any case law, on the text of statute, on the —-

2  it's clear, Judge, the only transcript if the official

3  one, the unredacted.

4        THE COURT:  Attorney Pattis, your predecessor,

5  make very specific representations about the fact that

6  54-86e applies to the proceedings involving Mr. Khan and

7  that Jane Doe's identity was kept from the public record.

8  And so if that didn't happen for whatever reason and the

9  transcript contained her name and then it was later

10 identified that that was a mistake, and I think Judge

11 Dooley talked about this in her —- in the argument that

12 she had where you were present, Attorney Cerame, then

13 that's just what it is.

14        And so we don't have the benefit of knowing what

15 the original transcript is today because you're saying you

16 haven't been able to get it.  I'm going to -- is there

17 anything else you would like to say on the original

18 transcript question?

19        MR. CERAME:  Yes.  Unquestionably the statue

20 applied during the trial, Judge.

21        THE COURT:  Those representations were made

22 after Mr. Khan was acquitted.

23        MR. CERAME:  I'm not aware of these

24 representations and I would like to review them closely in

25 context.

1                                CERTIFICATE

2

3                I hereby certify that the foregoing 32

4  pages are a complete and accurate transcription to the

5  best of my ability of the Emergency Motion to Vacate Order

6  in re:  SAIFULLAH KHAN vs. YALE UNIVERSITY, ET AL., Civil

7  No. 3:19-CV-01966 (KAD), held before The Hon. Maria E.

8  Garcia, United States Magistrate Judge, via Zoom

9  teleconference on October 21, 2024.

10

11  _____

12  Suzanne Benoit, Transcriber          Date:  10/24/2024

13

14

15

16

17

18

19

20

21

22

23

# Exhibit F

| 01/10/2020 | 12 | ORDER granting 7 Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name without prejudice. Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action. Signed by Judge Kari A. Dooley on 1/10/2020. (Cahill, Leslie) (Entered: 01/10/2020) |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Saifullah Khan, | |
| Plaintiff, | Civil No. 3:19-cv-01966-KAD |
| v. | |
| Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons; | JUNE 19, 2024 |
| Defendants. | |

**RULING AND ORDER**

## I.    INTRODUCTION

In 2015, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") and Defendant Jane Doe ("Jane Doe") matriculated at Defendant Yale University ("Yale").  They went to the same Halloween party, went to a student orchestra performance together, returned to Trumbull College where they both lived, and woke up in her room.  *See* Compl. (ECF No. 1) ¶¶ 39, 41–43.  Shortly after, Jane Doe filed a Title IX complaint against Khan, alleging he raped her.  *See id.* ¶¶ 46, 48.  Khan was immediately suspended, criminally charged with four counts of assault, acquitted, and readmitted pending the disciplinary hearing. *See id.* ¶¶ 47–52, 58.  In October 2018, Yale suspended Khan again for unrelated issues.  *See id.* ¶¶ 60–64.  The following month, Yale's University-Wide Committee on Sexual Misconduct ("UWC") held a disciplinary hearing concerning Jane Doe's allegations and then voted to expel him.  *See id.* ¶¶ 74–80.

Khan now sues Yale, 12 Yale employees, unknown journalists, and Jane Doe for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., for breach of due

1

process concerning the disciplinary hearing, and various breach of contract and tort claims stemming from his expulsion. [1] Khan also asserts two counts specific to Jane Doe: defamation and tortious interference with a business relationship. When he filed this lawsuit, Khan moved to proceed against Jane Doe using a pseudonym and Yale filed a memorandum in support. District Judge Kari A. Dooley granted the motion.

The parties are embroiled in a key dispute: whether Jane Doe should enjoy continued anonymity as this case proceeds in litigation. Judge Dooley has referred several pending motions to me, two of which directly conflict and are the subject of this order: (1) Khan's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) ("Plaintiff's Motion to Vacate"); and (2) Jane Doe's Motion to Continue Anonymity (ECF No. 103) ("Doe's Anonymity Motion"). These motions are ripe for a ruling. For the following reasons, I **DENY** Plaintiff's Motion to Vacate and **GRANT** Doe's Anonymity Motion.

## II.     BACKGROUND

Given the comprehensive factual recitations from *Khan I* through *Khan IV*, *infra* at 4, I presume familiarity with the facts of this case and summarize only the procedure, facts, and evidence relevant to the pending motions.

### A.     Khan Moves to Litigate Against Jane Doe under a Pseudonym

When Khan filed this lawsuit on December 13, 2019, he also moved for permission to litigate against Jane Doe using a pseudonym. *See* Pl.'s Mot. Pseudonym (ECF No. 2); Exs. to Pl.'s Mot. Pseudonym (ECF No. 7). As Khan explained, Yale's UWC procedures require confidentiality of individuals and proceedings, and he wanted to maintain Jane Doe's anonymity

---

[1] Defendants Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, and Unknown Persons have not briefed the motions before this Court.

to comply with these procedures for one reason: "Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life." *Id.* at 9. Although Khan applied the Second Circuit's ten-factor test for determining whether a pseudonym is appropriate—as established in *Sealed Plaintiff v. Sealed* Defendant, 537 F.3d 185 (2d Cir. 2008)—he focused on why Jane Doe's anonymity would be beneficial to <u>him</u>, not her.[2]

In addition to Khan, Yale filed a memorandum explaining why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff. See* Yale Mem. Pseudonym (ECF No. 9). Yale explained why Jane Doe's anonymity was necessary to protect <u>her</u>. In brief, Yale lodged five main arguments: (1) as Plaintiff contended, the litigation involves highly sensitive and personal matters; (2) anonymity is an important safeguard to protect Jane Doe, a rape survivor, from likely reputational harms and media attention; (3) no party will suffer prejudice because Plaintiff knows her identity; (4) her identity has thus far been kept confidential; (5) public interest weighs in favor of protecting sexual assault survivors; (6) and, because it's in the public interest to conceal her identity, the public has an atypically weak interest in knowing her identity. *See id.*

On January 10, 2020, Judge Dooley granted Plaintiff's Motion. Judge Dooley reasoned:

> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

Text Order (ECF No. 12). The case has proceeded under a pseudonym since this ruling.

---

[2] I will address the ten-factor test later in this ruling.

B.    **Judge Dooley's Dismissal of Claims Against Jane Doe and the Subsequent
      Appeals Process.**

On April 28, 2020, Jane Doe moved to dismiss the claims against her, arguing she enjoys

absolute immunity from suit arising from her testimony at the disciplinary hearing, because it was

a quasi-judicial proceeding.  Judge Dooley granted her motion, and Khan appealed.  *See Khan v.*

*Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021) (*Khan I*).

The Second Circuit certified the issue, among others, to the Connecticut Supreme Court on

March 4, 2022.  *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022) (*Khan II*).  On June 27, 2023,

the Connecticut Supreme Court ruled that Yale's disciplinary hearing procedure did not constitute

a quasi-judicial hearing because it lacks procedural safeguards.  The Supreme Court concluded

Jane Doe does not enjoy absolute immunity or (at least at the pleading stage) qualified immunity.

*See Khan v. Yale Univ.*, 347 Conn. 1 (2023) (*Khan III*) (denying absolute immunity).  On October

25, 2023, the Second Circuit reversed in part Judge Dooley's decision and remanded the case for

further proceedings consistent with the decision.  *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023)

(*Khan IV*) (reversing in part and remanding for further proceedings).

C.    **Motion for Judgment of Dismissal and Hearing**

On December 27, 2023, Jane Doe moved for a judgment of dismissal as a sanction for

Plaintiff publicly disclosing her identity and directly communicating with her about settlement.

*See* Mot. Seal Emergency Mot. J. Dismissal (ECF No. 73) at 1.  The substance of these

communications have been filed under seal pursuant to a court order.  *See* Hr'g Tr. (ECF No. 94).

Judge Dooley held a hearing on March 18, 2024.  The topics discussed included Khan's

posts on X, his direct contact with Jane Doe, and the standard for awarding sanctions.  Jane Doe's

counsel described Plaintiff's actions as a "retaliatory sequence of events starting with e-mails

directly to [his] client that were found harassing, after he had sought to hide her name" and "using

4

her name publicly, telling the world 'a gift is going to come,' and sure enough he does this." *Id.* at 17:5–16. He also stated Nazis and "the fringe element" took interest in Plaintiff's posts. *See id.* at 18:5–10. Plaintiff's counsel conceded that he interpreted the anonymity restriction as applying to public posts, *see id.* at 8:14–21, Plaintiff's public disclosure of Jane Doe's identity "surprised" and "flummoxed" him, *id.* at 10:6–18, that his client wants accountability and for "her to feel what he felt," *id.* at 11:4–14, that Plaintiff wants to "fully and fairly litigate this case" before a jury, *id.* at 12:22–24, and that failure to comply with court orders could result in counsel's withdrawal, *see id.* at 12:24–13:2.

Judge Dooley expressed concern for Khan's social media tactics, stating "there is a sense of an intent to intimidate" and "[t]here is a sense of an intent to harass" in Khan's public posts about the litigation and depositions. *Id.* at 9:1–9. Judge Dooley reflected, "The idea of sort of mobilizing the Internet – I mean, this is borderline doxing, and it's very concerning." *Id.* She also explained that she did not want "the case litigated on X or on Youtube or on TikTok," clarifying, "I think I do have a legitimate concern that that might be on Mr. Khan's list of things to do, in terms of having his viewpoint out there in the world repeated to the Jane Doe's detriment, at a time when nothing has been decided." *Id.* at 14:12–19. Despite her reservations, Judge Dooley clarified that she had never issued a protective order preventing Khan from publicly using Jane Doe's identity, and so technically Khan did not violate a court order. *See id.* at 5:10–25.

Judge Dooley denied the motion but ordered Khan to refrain from publicly revealing Jane Doe's name until the pending motions are decided and to remove the posts publicly identifying her. *See id.* at 23:13–25:19. Regarding the pending motions, Judge Dooley reflected: "[C]onsistent with the parties' earlier understanding, with the issues now I think adequately joined

between the motion to remove the pseudonym and the motion for the protective order, what the parties' conduct looks like going forward is teed up." *Id.* at 19:18–23.

## III. DISCUSSION

The two motions at issue seek opposing relief: Plaintiff seeks to vacate Jane Doe's anonymity, and Jane Doe seeks to maintain it. Plaintiff filed his motion three days before Judge Dooley's hearing. *See* Pl.'s Mot. Vacate. Both Yale and Jane Doe object to the motion. *See* Yale's Opp'n (ECF No. 102); Doe's Opp'n (ECF No. 104). Jane Doe filed her respective motion on April 5, 2024, after the hearing. *See* Doe's Anonymity Mot. To date, Plaintiff has not responded.

### A. Jane Doe's Continued Anonymity Is Warranted.

Rule 10(a) of the Federal Rules of Civil Procedure requires the complaint's title to name all parties. *See* Fed. R. Civ. P. 10(a). While identifying the parties is an important component to ensuring the public's access to the courts, special circumstances sometimes warrant an exception. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Courts within the Second Circuit must use the non-exhaustive ten-factor balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*:

> (1) "whether the litigation involves matters that are highly sensitive and [of a] personal nature;"
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties;"
>
> (3) "whether identification presents other harms and the likely severity of those harms;"
>
> (4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure;"
>
> (5) "whether the suit is challenging the actions of the government or that of private parties;"

6

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal quotation marks and citations removed). The purpose of this test is to "weigh[] the plaintiff's need for anonymity against countervailing interests in full disclosure," *id.* at 189, including "public interest in disclosure and prejudice to defendants," *id.* at 193.

Judge Dooley evaluated these ten factors in her initial order. *See* Text Order (citing *Sealed Plaintiff*). She specifically noted the "sensitive and personal nature of the issues" (factor one), the risk of harm (factors two through four) and the absence of prejudice to the parties (factor six), and the lack of alternative procedures (factor ten), among the other relevant factors.[3] *Id.*

With the exception of factor seven (7),[4] none of the facts relevant to the factors considered by Judge Dooley have changed. As Yale points out, the subject matter still involves Jane Doe's

---

[3] I construe Judge Dooley's order to mean that she considered all *Sealed Plaintiff* factors but found these six factors the most compelling and—because the ten *Sealed Plaintiff* factors are non-exhaustive—considered other arguments raised by the parties that do not neatly fit into the ten-factor test.

[4] Factor 7 requires the Court to consider whether the identity of the person seeking anonymity has thus far been kept confidential. *See Sealed Plaintiff*, 537 F.3d at 190. As set forth in Jane Doe's Motion for Judgment of Dismissal and discussed during the hearing, Plaintiff——without Jane Doe's consent—disclosed Jane Doe's identity on social media. The Court has since ordered Plaintiff to remove his posts referencing Jane Doe's identity pending the outcome of these motions. The Court gives no weight to this factor given that Plaintiff's disclosure of Jane Doe's identity without consent from Jane Doe, at a minimum, undermines the spirit of the anonymity order in

alleged sexual assault, there has been no reduction of potential risk if Jane Doe's name is revealed, Plaintiff still does not argue he will be prejudiced if Jane Doe continues to proceed under a pseudonym, and no viable alternative to her confidentiality has been established since Judge Dooley's ruling.

Instead, Plaintiff argues there is no longer a need for Jane Doe's anonymity because he does not want to return to Yale anymore, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g et seq., does not cover Yale's investigation records, and the Connecticut Supreme Court's decision caused him to conclude Jane Doe is not entitled to anonymity because she is no longer a student. For several reasons, these arguments are unpersuasive.

First, it is of no moment that Plaintiff no longer wants to re-enroll at Yale. The *Sealed Plaintiff* standard focuses on the needs of the person seeking anonymity and balances those needs against the interests of the other parties and the public. *See Sealed Plaintiff*, 537 F.3d at 189 ("We agree that the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym."). In other words, Plaintiff's future plans, which are unrelated to Jane Doe, are irrelevant for the purposes of the *Sealed Plaintiff* factors. The only factor specifically related to the opponent is the sixth: whether the non-movant might be prejudiced by the anonymity. *See id.* at 190. Because Khan knows Jane Doe's identity, he will not be prejudiced by continued anonymity. *See Doe v. Smith*, No. 1:19-

_____

place, and even came as a surprise to Plaintiff's attorney who was "flummoxed" and offered that he thinks Plaintiff wants "her to feel what he felt," including "[w]hat it was to have every publication that reports on things like [allegations of college campus sexual assault]." Hr'g Tr. at 10:11–14, 11:8–10. Giving weight to this factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe outside of the judicial process.

CV-1121 (GLS/DJS), 2019 WL 6337305, at *2 (N.D.N.Y. Nov. 27, 2019) ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff[']s identity publicly.").  Plaintiff's desired outcome for this litigation does not equate to whether he will be prejudiced by her anonymity.  Accordingly, this argument does not persuade me.

      <u>Second</u>, Plaintiff argues that FERPA—which, in relevant part, requires universities to keep educational records confidential—does not apply to a university's investigation into potential criminal conduct.  *See* Mot. Vacate at 5–6.  As an initial matter, Judge Dooley did not find that <u>FERPA</u> required Jane Doe's anonymity.  Rather, she determined that one of the factors warranting anonymity was "the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality."  Text Order (ECF No. 12).  To the extent Plaintiff regrets conceding that Yale's confidentiality policy applies to these facts, he cannot un-ring that bell.

      In any event, the First Circuit addressed Plaintiff's very argument in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022).  There, the plaintiff—a male MIT student who was expelled after being accused of sexually assaulting a female student and then sued the university for breach of contract and other state claims—sought to litigate under a pseudonym. *See id.* at 64–65.  As a matter of first impression, the First Circuit established its own version of the *Sealed Plaintiff* test and concluded the district court erred in denying him pseudonymity.[5]  MIT

---

[5] The First Circuit concluded the multi-factor tests, like the *Sealed Plaintiff* test, "do not establish a clear standard" and chose instead to use "the easily understood 'totality of the circumstances' standard, *see id.* at 69–70, outlining four paradigms in which pseudonymity is generally appropriate: (1) if the "would-be Doe" fears "coming out of the shadows will cause him unusually severe harm (either physical or psychological); (2) if "identifying the would-be Doe would  harm 'innocent non-parties;'" (3) if identification could create a "chilling effect on future litigants who may be similarly situated;" or (4) if the lawsuit is "bound up with a prior proceeding confidential by law." *Id.* at 71–73.

argued that FERPA (and Title IX) only constrain the university during its own proceedings and that a student waives his right to confidentiality by filing a lawsuit. *See id.* at 75. While the First Circuit acknowledged that FERPA and Title IX do not impose "a gag order on individual participants," it nonetheless concluded MIT "misses the mark." *Id.* The First Circuit opined that "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. It explained that there is little basis to "lift the veil of pseudonymity" in a collateral attack, reasoning: "The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Id.*

To be sure, the facts are slightly different here insofar as Khan's identity is public and it is he (not a university) that seeks to reveal the identity of Jane Doe, who has been brought into this litigation against her will as a Defendant. Because she has not brought this case on her own volition, the public has an even greater interest to maintain her anonymity during this collateral attack in federal court. *See id.* Indeed, the risk of a "chilling effect" would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack. *See Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public ... has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'") (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

Third, Jane Doe graduated before this case was filed and so her status as an alumna is not a new or changed fact. *See* Yale's Opp'n at 2. Yale posits that Khan knew this when he first sought to litigate against her through a pseudonym in December 2019, and Khan has not filed an opposition to dispute this fact. *See id.* In his Motion to Vacate, Khan argues that the Connecticut

10

Supreme Court acknowledged her graduation forecloses Yale's ability to discipline her for failing to testify truthfully, and so the "obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired."  This appears to be a more creative version of his FERPA argument.  For the same reasons I did not find the FERPA argument warrants vacating the pseudonym order, I do not find Plaintiff's third argument compelling.

Accordingly, I conclude that Jane Doe's anonymity should be continued.

**B.      An Order Prohibiting Public Disclosure of Jane Doe's Identity Is Warranted.**

Having decided that Jane Doe may continue to proceed under a pseudonym, I must now evaluate the scope of that decision.  *See* Hr'g Tr. at 19:18–23.  Jane Doe requests that the following order be issued: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere. Plaintiff's claims will be dismissed with prejudice if he identifies Jane."  Doe's Anonymity Mot. at 30.  While Plaintiff has moved to vacate Jane Doe's anonymity, he did not object to this request.  Because I do not have authority to involuntarily dismiss an action, *see* 28 U.S.C. § 636(b)(1)(A), I will limit my ruling to the first sentence and will leave issues of dismissal to Judge Dooley.

I conclude that Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her.  But I do so with the acknowledgment that the relevant facts and procedural posture concerning Jane Doe's anonymity are unique.  At first blush, her anonymity request does not appear to fit neatly within a specific legal framework.

**1.   *A Rule 26(c) Protective Order is Not Applicable.***

I begin with Federal Rule of Civil Procedure 26(c), which governs protective orders.  *See* Doe's Anonymity Mot. At 11–15.  Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts in this circuit have noted that, '[f]or purposes of a

11

protective order, good cause is established when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" *Qube Films Ltd. v. Padell*, No. 13–CV–8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 (RPP), 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (internal quotation marks removed)).

Certainly, the principles of Rule 26 apply insofar as the disclosure of Jane Doe's identity would cause her more than "annoyance, embarrassment, oppression, or undue burden," as I have explained above. But Plaintiff knew Jane Doe's identity before litigation. In this vein, Rule 26 does not apply insofar as her identity is not information learned through a document, responses to discovery requests or interrogatories, depositions, or otherwise. *See Bridge CAT Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983) ("Rule 26, however, which is entitled 'General Provisions Governing Discovery,' is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

In requesting an order prohibiting Plaintiff from publicly disclosing her identity, Jane Doe cites case law involving discovery. *See* Doe's Anonymity Mot. at 11–15. Take *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021), and *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020), two related lawsuits involving plaintiffs who were sex trafficked and sexually assaulted as minors and whose identities were not known to the accused defendants. These plaintiffs sought protective orders that required the defendants to keep their identities confidential from the public in exchange for their identities. *See Baram*, 2021 WL 3423595, at *3; *Nygard*, 2020 WL 4890427, at *3.

Because the defendants did not know their accusers' identities, the court's issuance of a protective order functioned as a discovery management tool under Rule 26. *See Baram*, 2021 WL 3423595, at *3. So too did *Plaintiffs #1–21 v. County of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015), *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), and the *Strike 3* and *Malibu Media* cases involve protecting a party's identity for discovery purposes. *See* Doe's Anonymity Mot. at 13–15. These cases therefore do not apply here.

### 2. *Based on record before Court Jane Doe's Request is Not a Prior Restraint.*

Having concluded that a Rule 26 protective order does not apply, I'd like to address potential concerns involving whether an order limiting a litigant's right to publicly disclose the identity of an individual—who has been granted anonymity in court—would serve as a "prior restraint." "A prior restraint is a governmental order or action 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The Second Circuit in *In Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), explained why a court's order preventing parties from speaking with the press did not violate the press's First Amendment rights. While the facts are of course different, its reasoning applies:

> The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and therefore public. A prior restraint deprives the public of specific news because it prevents publication. Although the restraining order in this case limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press.

*Id.* at 608. The Second Circuit concluded "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by

13

the former is properly characterized as a prior restraint, one opposed solely by the latter is not."
*Id.*

As with the parties in *In Application of Dow Jones & Co.*, Plaintiff did not object.  While it is true Plaintiff moved to vacate Jane Doe's anonymity, it is also true that his motion is denied.  Given this denial, he has not pointed me to specific legal authority or facts explaining why he should be given carte blanche to publicly disclose her identity outside of the litigation.  Quite the opposite.  During the hearing, Khan offered to comply with an order preventing such disclosure before his counsel objected.  *See* Hr'g Tr. at 22:14–19 (Pattis: "Objection. We're not going to – we're not completely oblige to any gag orders, Mr. Khan. Speak to me before you offer to comply with gag orders to the Court.").  While Plaintiff's counsel preserved his objection to future "gag orders," I construe Khan's testimony along with counsel's failure to oppose Jane Doe's argument to mean that Plaintiff concedes there is no legal justification supporting his desire to identify Jane Doe outside this litigation when the court has ruled she may litigate anonymously.  In other words, this circumstance is similar to *In Application of Dow Jones* insofar as the parties do not object to such a court order, and therefore it is not a "prior restraint."  842 F.2d at 608.

As Judge Dooley explained during the hearing, Plaintiff's disclosure of Jane Doe's risks this case being litigated on X, TikTok, Facebook, or social media generally.  *See* Hr'g Tr. at 14:4–19.  I have reviewed all briefing and evidence filed under seal relating to Khan's public disclosure of Jane Doe's identity.  I have also reviewed the hearing held before Judge Dooley on March 18, 2024 and her concerns about the how Khan's public disclosure of Jane Doe's identity has the potential to impact this case.  I have reviewed  Defendant Jane Doe's sur-reply filed under seal, Sur-Reply (ECF No.  114), which attaches exhibits evincing Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly.  In light of the record before the Court, and for

14

the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

## IV.   CONCLUSION

For the above reasons, I **DENY** Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) and **GRANT** Jane Doe's Motion to Continue Anonymity (ECF No. 103).   I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.   Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.   Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration.   Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language.   If the parties agree, they may jointly file a Proposed Order.   If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

This is not a recommended ruling. This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

It is so ordered.

_/s/ Maria E. Garcia_
Hon. Maria E. Garcia
United States Magistrate Judge

# Exhibit G

# To Be Filed Under Seal

# Exhibit H

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
SAIFULLAH KHAN,                      )
                    Plaintiff,       ) No: 3:19-cv-01966-KAD
                                     )
        v.                           ) July 25, 2024
YALE UNIVERSITY, ET AL.,             )
                    Defendants.      ) 10:00 a.m.
_____     )
                              Brien McMahon Federal Building
                              915 Lafayette Boulevard
                              Bridgeport, CT 06604


                        MOTION HEARING


B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.

Courtroom Deputy:                   Official Court Reporter:
Kristen Gould, Esq.                 Tracy L. Gow, RPR

              Chambers: 203.579.5522

1   to dismiss, the motion for sanctions, are not about the First

2   Amendment.  They're not about whether Mr. Khan has the right

3   or the ability to reach out to the world on social media or

4   otherwise.  To me, I look at this conduct -- and his now, I

5   would say, pattern of conduct or repeated conduct -- and I

6   think this is about a party who is misusing and arguably

7   abusing and manipulating our civil justice system to his own

8   ends and to advance an agenda that has nothing to do with

9   this civil litigation or the vindication of the claims that

10  are contained in the operative complaint.

11          Mr. Khan is not a disgruntled defendant who's been

12  hauled into federal court against his will.  He's the

13  Plaintiff.  He walked through the courthouse doors, and he

14  set in motion the wheels of our civil justice system by

15  filing a complaint.  He has availed himself of the court

16  process, the very process he now derides/thwarts, in an

17  effort to garner support for an agenda that has nothing to do

18  with this litigation.

19          I don't have a judgment about that agenda or those

20  goals or what it is Mr. Khan might be attempting to achieve

21  outside the confines of the civil litigation.  Those are his

22  decisions.

23          What I do have an objection to is that he's using,

24  or appears to be using, this litigation, this Court, our

25  civil justice system, as the springboard to advancing this

1  social media agenda or his cause in the contexts of discourse

2  about Title IX and, it appears, an interest in retribution

3  for the wrongs he claims to have suffered at the hands of

4  Jane Doe and others.

5  This conduct does not present as the Plaintiff

6  seeking a factual and legal adjudication of his claims as

7  would be determined by a jury following an established civil

8  procedure for his claims.  What appears on the record is that

9  Mr. Khan seeks to harass and intimidate others and to

10  influence the world at large regarding the allegations in

11  this case, which, I will add, he repeatedly mischaracterizes.

12  And I can only assume that this is as an inappropriate

13  effort, perhaps, to influence the jury pool.

14  When we were last convened, I expressed significant

15  concern regarding Mr. Khan's motives.  I referred to his

16  social media postings as "borderline doxing."  I questioned

17  whether he was trying to try this case on social media.  "No,

18  no," he proclaimed, "Not me."  And yet, here we are again.

19  Mr. Khan treats this litigation like an inconvenient

20  sideshow.  But it's a necessary sideshow, because it still

21  provides him the platform for him to continue to advance this

22  other nonlitigation-related agenda.

23  And that is not okay.  Why should I sit back and

24  allow the Plaintiff to invoke and then abuse the civil

25  justice system to his own ends?  And for the purposes of

1    harassment and intimidation?  That is not the purpose for

2    which we have a civil justice system.

3         Whether it's my inherent authority, whether it's

4    Rule 41, whether we can even agree to disagree as to whether

5    the conduct at issue violated the letter or spirit of Judge

6    Garcia's order, how do I permit this to continue?  I would

7    like nothing more -- I mean, the amount of money and time and

8    effort that has been spent in the last three or four months

9    litigating Mr. Khan's conduct outside the confines of this

10   litigation is ridiculous.  It's ridiculous.

11        And if everybody would just focus their attention on

12   discovery, completing discovery, getting the case to trial,

13   well, then we'd be in a very different place than where we

14   are.  But my sense is that that's not Mr. Khan's agenda.

15        Dismissal of these claims as a sanction is the most

16   severe sanction that I could mete out, and I haven't decided

17   what to do about this situation.  I just know it has to end

18   one way or another -- whether by court order; by the end of

19   the litigation, which we know is what the Defendants are

20   asking.  I don't know what the right answer here is.  But I

21   know it has to stop.  And there will be competing arguments,

22   factual and legal, as to what Mr. Khan is or is not trying to

23   do.

24        But I think at this juncture, based on everything

25   that's been submitted, Mr. Khan's utter disdain and hostility

1  towards at the very least Jane Doe, and probably to a lesser

2  extent the Yale Defendants, is manifest.

3        And we just don't use our civil justice system to

4  exact revenge.  It's just not what it's there for.  If I

5  could convene a jury tomorrow to adjudicate these claims, I

6  would do it.

7        So, those are my overarching concerns.  They are in

8  some respects related and in other respects unrelated to the

9  specific legal issues that have been raised in the motions to

10  dismiss.  And I won't belabor the points.

11        I will turn it over to counsel for arguments.  I

12  don't know whether the Defendants have had a discussion about

13  who is going to proceed in what order.  It would be my

14  practice to have the Movant argue first, obviously then I'll

15  hear from Plaintiff Mr. Khan, and we'll take it one issue-one

16  motion at a time.

17        MR CERAME:  There is a pending motion *in limine,*

18  *Judge,* and we discussed this with Judge Garcia in the status

19  conference.  We asked that certain exhibits -- a certain

20  exhibit be included for the Court.  And it was decided by

21  Attorney Weller and then myself, that we wouldn't -- I

22  wouldn't push that issue between her and would bring that in

23  front of the Court.

24        I said -- I brought this up to Judge Garcia.  I

25  said, This seems like a housekeeping issue.  We have these --

1    there's a strong -- there's a reason to believe you should

2    take my client at his word, objectively.  We look at the

3    words "objectively."  The Court asked whether there was a

4    reason to believe.  I believe --

5          (Hits microphone.)

6          MR. CERAME:  Oh.  I am so sorry.  I am really sorry.

7    I know that hurts.  My Italian hands.  I'm sorry.

8          I've lost my train.  Objectively -- I'm sorry.  I

9    feel now like I'm going back and forth with Your Her Honor,

10   and I'm going in circles.

11        THE COURT:  That's okay.  You just said that I

12   should take your client at his word.  Well, your client sat

13   in that chair three months ago and was dishonest with me.

14        MR CERAME:  Your Honor, I wasn't here for that

15   proceeding.  I don't remember what Her Honor is referring to.

16   And when I say, "take him at his word" the language

17   objectively doesn't violate the order.  That's what I'm --

18   look at the language there.  It doesn't appear to violate the

19   order.  It doesn't solicit someone.  It doesn't -- the Court

20   is making a supposition that someone did so because they felt

21   he was -- they believed -- they understood him to be

22   soliciting from them that he -- to post.  If there was

23   another -- seems like there's a missing piece of information

24   to make the logical leap.

25        I can understand why there might be smoke, but I

1          C E R T I F I C A T E

2     RE: *Khan v. Yale University, et al.*
          Civil No. 3:19-cv-1966-KAD
3
                Motion Hearing
4               July 25, 2024

5

6        I, Tracy L. Gow, RPR, Official Court Reporter for the

7    United States District Court, District of Connecticut, do

8    hereby certify that the foregoing pages, 1 through 69, are a

9    true and accurate transcription of my shorthand notes taken

10   in the aforementioned matter to the best of my skill and

11   ability.

12

13                         /s/   TRACY L. GOW
                           Official Court Reporter
14                         U.S. District Court
                           915 Lafayette Boulevard, Room 216
15                         Bridgeport, Connecticut 06604
                           (203) 910-0323
16

17

18

19

20

21

22

23

24

25

# Exhibit I

# To Be Filed Under Seal

# Exhibit J

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KHAN | : | |
| v. | : | 3:19-cv-1966 (KAD) |
| YALE UNIVERSITY et al. | : | JULY 3, 2024 |

## LOCAL RULE 72.2 OBJECTION AND REQUEST FOR DE NOVO REVIEW BY DISTRICT COURT OF MAGISTRATE JUDGE ORDER AT CM/ECF NO. 119

On June 19, 2024, Judge Garcia issued a ruling and order concerning speech rights and pseudonymity. Specifically, Judge Garcia ordered, among other things, Jane Doe's request for pseudonymity was a request for anonymity; Jane Doe was entitled to such pseudonymity; Jane Doe's continued pseudonymity is warranted; the request for pseudonymity in this case is not a discovery issue governed by FRCP 26; the Plaintiff may not identify Doe by name and that restriction on the Plaintiff's speech is not a prior restraint.

In accordance with Local Rule 72.2, the Plaintiff objects and requests de novo review by the District Court. The Plaintiff objects to each finding and judgment in the memorandum except that FRCP 26 does not apply, including each of those matters specifically identified above as well as any other matters in the Order at CM/ECF Entry 119.

Even if Doe may proceed under a *pseudonym*, that is in the caption of the case, the Order constitutes an illegal *prior restraint*. How the case is captioned is separate from whether the Court can enjoin or punish the Plaintiff under the circumstances for his protected speech. The Order cannot be squared with Supreme Court precedent and current legal doctrine.

release." *Id.* at 535.  The "source" of the release in this case is the Connecticut Superior Court, not the Plaintiff.  See T 2/26/18 at 35.  "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

Note that this all is separate from how *this Court* elects to caption the case. *See Florida Star* at n1. This Court can caption the case however it wishes to.  But the Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, has accused the Plaintiff of sexual assault.  That is in the public record.  Accordingly, it is beyond the power of this Court to punish the Plaintiff for publishing that fact, with her true name.