UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAIFULLAH KHAN, <br>     *Plaintiff*, <br><br> v. <br><br> YALE UNIVERSITY, *et al*, <br>     *Defendants*. | )    CASE NO. 19-cv-01966 (KAD) <br> ) <br> ) <br> ) <br> ) <br> )    JANUARY 29, 2025 <br> ) |

**MEMORANDUM OF DECISION
RE: EMERGENCY MOTIONS TO DISMISS (ECF NOs. 123, 130)**

Kari A. Dooley, United States District Judge:

On December 13, 2019, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") initiated this action against Yale University and several of its employees (the "Yale Defendants"), as well as former Yale student Jane Doe ("Doe," collectively, "Defendants"). On the same day Plaintiff sought permission to proceed against Doe using a pseudonym. *See* Compl., ECF No. 1; Pl.'s Mot. for Pseudonym, ECF No. 2. The Court granted Plaintiff's request on January 10, 2019. *See* Order, ECF No. 12. On June 19, 2024, Magistrate Judge Garcia issued an opinion adjudicating the parties' dueling motions to either vacate or continue Doe's pseudonymity. Therein, she determined that Jane Doe's continued anonymity was warranted and issued an order (the "June 19 Order") prohibiting Plaintiff or his counsel from directly or indirectly "publicly disclosing Jane Doe's identity, including but not limited to on any social media platform," and informing Plaintiff that any "release or deliberate disclosure of Jane Doe's identity" in violation of the order could subject him to sanctions, "including but not limited to dismissal."[1] *See* Ruling and Order, ECF No. 119 at 15.

---

[1] This order is similar to the verbal order issued by the Court during a hearing on March 18, 2024, which directed Plaintiff "not to publicly identify [Jane Doe] again on social media or elsewhere," until the parties' motions regarding pseudonymity were decided. Mar. 18 Hearing Tr., ECF No. 94, 23:12–24:1. *See also* ECF No. 91.

By motion, Defendants now seek dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) as well as within the Court's inherent authority to sanction bad faith conduct. Defendants allege that Plaintiff violated the June 19 Order shortly after it was issued. *See* Def. Doe's Mot. for J. of Dismissal ("Doe Mot."), ECF No. 123 (SEALED per Mot. at ECF No. 122, Order at ECF No. 149);[2] Yale Def.s' Mot. for J. of Dismissal ("Yale Mot."), ECF No. 130. Plaintiff opposes these motions, arguing, *inter alia*,[3] that his conduct does not merit dismissal under either Rule 41 or the Court's inherent authority. *See* Pl.'s Obj., ECF No. 157 (SEALED). For the reasons that follow, though Plaintiff's conduct has been and continues to be troubling, the Court agrees that his actions do not warrant dismissal. Defendants' motions are therefore DENIED.

**Standard of Review**

*Inherent Authority*

"It is well settled that 'courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Hall v. Oriska Corp Gen. Contracting*, No. 21-1564, 2022 WL 17420307, at *2 (2d Cir. Dec. 6, 2022) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989)). This inherent authority includes the power to sanction "bad-faith conduct." *Davis v. Saint Luke's-Roosevelt Hosp. Ctr.*, 771 F. App'x 116 (2d Cir. 2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct.

---

[2] The Court necessarily cites to sealed documents in order to decide the instant motions. The sealed documents cited herein were either sealed pursuant to a finding by the undersigned or Magistrate Judge Garcia that a clear and compelling reason existed for sealing and that the proposed sealing was narrowly tailored to protect the relevant privacy interest, or were filed by a party in response to an already sealed motion. For any documents sealed pursuant to a motion and order, the Court notes the corresponding docket numbers in the initial citation. However, because the cited documents are significant to the Court's ultimate ruling on these dispositive motions, the Court may, upon notice to the parties, *sua sponte* unseal the filings.

[3] Plaintiff also argues that the June 19 Order is unconstitutional, both facially and as applied, as a prior restraint on his speech. *See* Pl.'s Obj., ECF No. 157 at 16–23 (SEALED). However, whether the June 19 Order was proper, constitutionally or otherwise, is irrelevant to whether Plaintiff was bound by it or did something to violate it. Our justice system does not countenance a party picking and choosing which orders must be followed based upon that party's own view of the law. *See Maness v. Meyers,* 419 U.S. 449, 458-60 (1975).

2123, 115 L.Ed.2d 27 (1991)). Such sanctionable bad-faith conduct includes "abuse of the judicial process[.]" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). A court's decision to impose sanctions under its inherent authority is "truly discretionary," *id.*, but "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "Such sanctions are warranted only where there is clear and convincing evidence of bad faith." *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2024 WL 2044696, at *4 (D. Conn. May 7, 2024) (citing *Yukos Cap. S.A.R.L.*, 977 F.3d at 235).

"The sanction of dismissal… is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Davis*, 771 F. App'x 116 (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)). If a party's conduct evinces "flagrant bad faith," a court may resort to dismissal "not merely to penalize," but "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Dismissal is also appropriate where "'a party ... abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-CV-6279 (JPO), 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), *aff'd sub nom. Davis*, 771 F. App'x 116 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

*Rule 41(b)*

In addition to their inherent and traditional authority, federal courts are explicitly authorized to involuntarily dismiss cases under Fed. R. Civ. P. 41(b). Rule 41(b) provides for dismissal "[i]f the plaintiff fails to prosecute or to comply with [the federal] rules or a court order." The decision to dismiss an action as a sanction lies within the discretion of the district court. *Smalls*

3

*v. Cty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017). The Second Circuit has identified five factors to guide the Court's exercise of discretion under Rule 41(b). District courts must consider:

> (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Spencer v. Doe*, 139 F.3d 107, 112–13 (2d Cir. 1998) (citation omitted). *See also Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d. Cir. 1995). No one factor is dispositive. *Id.* Because a Rule 41(b) dismissal "is one of the harshest sanctions," it must "'be proceeded by particular procedural prerequisites, including notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls*, 718 F. App'x at 19 (quoting *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014)). A "dismissal pursuant to Rule 41(b) operates as adjudication on the merits unless otherwise specified by the Court." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 89 (D. Conn. 2007).

**Facts and Procedural History**

The Court has previously summarized the allegations in this case, presumes familiarity with its facts and history, and only recites what is necessary to deciding the instant motions.

*Factual Allegations*

In October, 2015, Plaintiff and Defendant Doe were undergraduate classmates at Yale University. Compl. at ¶ 16. On Halloween night, 2015, the two attended a Halloween party and student orchestra performance. Following the concert, Plaintiff accompanied Doe to her room, where a sexual encounter ensued. *Id.* at ¶¶ 39–43. Thereafter, Doe filed a formal complaint against Plaintiff, alleging that he raped her. *Id.* at ¶¶ 45–46. Plaintiff was suspended by Yale, and after an investigation by the Yale Police Department, criminally charged by the state of Connecticut with,

4

*inter alia,* sexual assault. *Id.* at 47–48. He was subsequently acquitted on all counts after a jury trial and readmitted to Yale in 2018, before being suspended again for unrelated issues in October 2018.[4] *Id.* at ¶¶ 58–64. In November 2018, Yale's University-Wide Committee on Sexual Misconduct ("UWC") convened for a hearing regarding Doe's 2015 sexual assault allegations. *Id.* at ¶ 74. The UWC panel voted to expel Plaintiff. *Id.* at ¶ 80.

In 2019 Plaintiff brought claims against the Yale Defendants for due process violations under Title IX, breach of contract, breach of the implied warranty of fair dealing, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of privacy. *Id.* at ¶¶ 82–110. He also brought claims of defamation and tortious interference with business relationships against Doe. *Id.* at ¶¶ 111–121.

*Procedural History*

On the same day that he filed his complaint, Plaintiff filed a motion seeking permission to proceed against Jane Doe using a pseudonym. *See* Pl.'s Mot. for Pseudonym. He did so in order to comply with Yale's UWC procedures on sexual misconduct, "which require him to maintain the confidentiality of UWC proceedings… including the name of his accuser." *Id.* at 1–2. In his motion, Plaintiff indicated that he hoped to be readmitted to Yale and complete his degree, and so sought to adhere to the UWC anonymity requirements because they would apply to him upon readmission. *See id*. Plaintiff argued under the ten-factor test set forth in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), which the Second Circuit established for determining whether pseudonymity is appropriate in a given case. *Id.* at 4. He noted that though the test had "traditionally been applied to parties seeking to protect their own identities," the factors

---

[4] Plaintiff alleges that this suspension was pretextual, and related to his history at Yale and Yale's "prevailing culture" regarding claims of sexual assault. *Id.* at ¶¶ 67, 70.

were "readily adaptable to a request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym." *Id.* at 4–5.

Shortly after Plaintiff moved for Doe's pseudonymity, the Yale Defendants filed a memorandum in support, applying the *Sealed Plaintiff* factors to Doe and arguing that the facts supported her continued pseudonymity.[5] *See generally* Yale Def.'s Mem. in Supp. of Pseudonymity, ECF No. 9. On January 10, 2020, the Court, considering the *Sealed Plaintiff* factors, and emphasizing "the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, [and] the lack of an alternative procedure for maintaining Jane Doe's confidentiality," granted Plaintiff's motion and allowed Doe to remain pseudonymous. *See* Order, ECF No. 12. The order was without prejudice to challenge by Doe, which she did not do. The order has remained in effect ever since.

Doe moved to dismiss Plaintiff's claims on April 28, 2020. *See* Def. Doe's Mot. to Dismiss ("Doe MTD"), ECF No. 26. She argued that the 2018 UWC hearing was a quasi-judicial proceeding, and that as such, under Connecticut law, she was entitled to absolute immunity as to any claims arising from her testimony therein. *See* Mem. in Supp. of Doe MTD, ECF No. 27 at 9–16. The Court agreed and dismissed all claims against Doe. *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 228 (D. Conn. 2021), *aff'd in part, vacated in part, remanded*, 85 F.4th 86 (2d Cir. 2023) ("*Khan I*").[6]

---

[5] As of the date of Yale's memorandum in support, Doe had not yet appeared.
[6] The parties agreed that any defamation claim related to Doe's initial report of sexual assault in 2015 was time barred. *Khan 1*, 511 F. Supp. at 227. The Court ruled that Plaintiff's tortious interference claim was similarly barred, finding that Doe's 2018 UWC testimony could not serve as "wrongful conduct" under the "continuing course of conduct" doctrine in order to bring her 2015 conduct within the applicable statute of limitations. *Id.* at 228.

6

Plaintiff appealed, and the Second Circuit certified several questions of state law to the Connecticut Supreme Court, including whether the 2018 UWC hearing was properly recognized as a quasi-judicial proceeding and, if not, whether Doe would be entitled to qualified immunity or no immunity at all with respect to her testimony during the hearing. *See Khan v. Yale Univ.*, 347 Conn. 1, 18 (2023) (*Khan II*). The Supreme Court concluded that "the UWC proceeding was not quasi-judicial because it lacked important procedural safeguards," and further ruled that though "a qualified privilege is available to alleged victims of sexual assault who report their abuse to proper authorities at institutions of higher education, … at this stage of the proceedings, the allegations of malice in Khan's complaint are sufficient to defeat Doe's entitlement to qualified immunity as a matter of law." *Id.* at 57. Accordingly, the Second Circuit reversed in part this Court's decision in *Khan 1*, holding that Plaintiff's defamation and tortious interference claims, "should not have been dismissed insofar as they are based on Doe's 2018 statements at a Yale UWC hearing," and remanding the case for further proceedings. *Khan v. Yale Univ.*, 85 F.4th 86, 102 (2d Cir. 2023) (*Khan III*).[7]

Following remand, on December 27, 2023, Doe filed a sealed Motion for Judgment of Dismissal, ECF No. 74, and an accompanying memorandum of law, in which she claimed and produced evidence that Plaintiff had disclosed her identity on social media, contacted her directly regarding settlement, and potentially disclosed her name to a newspaper reporter. Def. Doe's Mem. in Supp. of Emer. Mot. for J. of Dismissal ("Doe's Dec. 27 Mem. in Supp."), ECF No. 75 (SEALED per Mot. at ECF No. 73, Order at ECF No. 93), at 2–7. Doe argued that the Court should sanction Plaintiff for his actions by dismissing his case. *Id.* at 10–11. Plaintiff objected, *see* Pl.'s

---

[7] The Second Circuit affirmed this Court's dismissal of Plainitff's tortious interference claims insofar as they were based on Doe's 2015 statements. *See Khan III*, 85 F.4th at 102.

7

Obj., ECF No. 77 (SEALED), and the Court scheduled oral argument for March 18, 2024. *See* ECF No. 84.

Prior to oral argument, on March 4, 2024, Doe filed a motion for a protective order, seeking to preclude Plaintiff's access to certain non-public discovery. She argued that the order was necessary based on Plaintiff's prior public statements. *See* Def. Doe's Mot. for Protective Order, ECF No. 81 (Redacted); Mem. in Supp ("Doe's Mar. 4 Mem. in Supp."), ECF No. 81-1 at 5 (Redacted).[8] On March 15, Plaintiff filed his objection to the motion for protective order and filed a separate motion to vacate the Court's order treating Doe Pseudonymously. *See* Pl.'s Obj. to Mot. for Protective Order, ECF No. 90; Pl.'s Motion to Vacate Pseudonymity Order, ECF No. 89. Doe replied to Plaintiff's objection on March 29, 2024. *See* Doe's Reply in Supp. of Protective Order, ECF No. 96 (SEALED per Mot. at ECF 95, Order at ECF No. 117).

At oral argument, the Court preliminarily noted that the only order it had entered regarding Doe's name was that "all pleadings and references to Jane Doe would use that appellation throughout the litigation," and further explained that at the time the Court issued the pseudonymity order "there was no request for a protective order in terms of the use of her name[.]" Mar. 18 Hr'g Tr., ECF No. 94, at 5:10–17. As such, after hearing from counsel for both parties, the Court denied Doe's motion for judgment of dismissal, but also directed Plaintiff "not to publicly identify [Jane Doe] again on social media or elsewhere until [rulings on the pending motions] are issued." *Id.* at 19:17–22; 23:21–24:1; *See also* ECF No. 91. Though it denied Doe's motion to dismiss, the Court expressed its concern that Plaintiff's conduct on social media gave "a sense of an intent to intimidate" or harass by "mobilizing the internet." *Id.* at 9:5–9. The Court cautioned the parties that it did not "want the case litigated on [social media]," and further ordered Plaintiff to take down

---

[8] The Court cites to the publicly available, redacted versions of Doe's motion and memorandum in support. Doe also filed sealed versions at ECF Nos. 82 and 82-1.

8

Doe's name on any social media account "under which he ha[d] the ability to do so." *Id.* at 14:10–19; 25:7–20.

Following oral argument, Doe filed a "Motion to Continue Anonymity" with an accompanying memorandum in support, and incorporated by reference her arguments raised therein into her objection to Plaintiff's motion to vacate the pseudonymity order. *See* Doe's Mot. to Continue Anonymity, ECF No. 103 (SEALED per Mot. at ECF No. 101, order at ECF No. 117); Doe's Mem. in Supp. of Mot. to Continue Anonymity ("Doe's Apr. 5 Mem. in Supp."), ECF No. 103-1 (SEALED); Doe's Obj. to Pl.'s Mot. to Vacate, ECF No. 104. On May 13, 2024, the Court referred, *inter alia*, Doe's motion for a protective order (ECF No. 81), Khan's motion to vacate the pseudonymity order (ECF No. 89), and Doe's motion to continue anonymity (ECF No. 103 (SEALED)) to Magistrate Judge Garcia for a decision. *See* ECF No. 110. On June 14, 2024, Doe moved for permission to file a sur-reply in support of her Motion for Protective Order, to bring to the court's attention several of Plaintiff's emails that Doe obtained via discovery on May 19, 2024. *See* Doe's Mot. for Sur-Reply, ECF No. 114 (SEALED per Mot. at ECF No. 113, Order at ECF No. 117). Judge Garcia granted Doe's motion on June 18, 2024. *See* Order at ECF No. 118; Doe's Sur-Reply in Supp. of Protective Order, ECF No. 114-1 (SEALED).[9]

On June 19, 2024, Judge Garcia issued her ruling and order denying Plaintiff's motion to vacate the Court's pseudonymity order and granting Doe's motion to continue anonymity. *See* Ruling and Order, ECF No. 119 at 15. The court once again evaluated the facts of this case under the *Sealed Plaintiff* balancing test. Judge Garcia determined that, with one exception that did not change her conclusion, "none of the facts relevant to the factors considered by [the undersigned

---

[9] Judge Garcia considered the exhibits that Doe included in her sur-reply when deciding the referred motions, concluding that they "evince[ed] Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly." Ruling and Order, ECF No. 119 at 14.

upon granting Plaintiff's motion] have changed," and that Doe's anonymity should be continued. *Id.* at 7–11.

Judge Garcia also determined that "Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her."[10] *Id.* at 11. The Court therefore issued the following order:

> I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration. Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language. If the parties agree, they may jointly file a Proposed Order. If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

*Id.* at 15.[11]

*Allegations Following the June 19 Order*

On June 24, 2024, Doe filed one of the instant motions, her Second Emergency Motion for Judgment of Dismissal. *See* Doe Mot., ECF No. 123 (SEALED). In her supporting memorandum of law, Doe cited Plaintiff's social media posts from "only two hours" after the June 19 Order was issued, which she included in her memorandum as screenshots. Def. Doe's. Mem. in Supp. ("Doe's June 24 Mem. in Supp."), ECF No. 123-1 (SEALED) at 1, 7–12.

The screenshots show that Plaintiff posted "i [sic] have been officially gagged by the federal court system of the United States for my speech on this platform," and posted a picture of

---

[10] In crafting this order, Judge Garcia acknowledged the unique procedural posture concerning Doe's anonymity, determined that a Rule 26(c) protective order was inapplicable, and found that an order restricting Plaintiff and his counsel from publicly identifying Doe would not run afoul of the First Amendment as a prior restraint on speech. *See* Ruling and Order at 11–15. In a separate filing, Plaintiff has challenged Judge Garcia's reasoning via objection and request for *de novo* review under Local Rule 72.2. *See* Pl.'s Local Rule 72.2 Obj., ECF No. 152. Plaintiff's objection will be taken up in a separate decision.

[11] In her instant motion and memorandum in support, Doe refers to the June 19 Order as the "Third Anonymity Order." *See* Doe's June 24 Mem. in Supp. at 1 (SEALED).

10

the June 19 Order with the relevant portion highlighted. *Id.* at 7, 9. He then posted "my actions are limited. I am going to 100% obey this ruling. I can't directly or indirectly tell anyone what to do. In no way shape or form should my [posts] here be interpreted in any way to construe anything beyond the limited scope of 'this ruling applies to me.'" *Id.* at 8. Doe argues that this message "instigated his followers to post Jane's identity." *Id.* at 9. Other individuals on the platform responded to Plaintiff's posts. One wrote "Sorry to hear about this. It's a damn shame someone can make false accusations and remain anonymous. A huge flaw in the system. Hoping one day her name can be revealed so that her and others like her are shamed. It's only right." *Id.* at 10. Plaintiff responded, "c'est la vie. i'm [sic] doing my part. hopefully [sic] others contribute in their own way." *Id.* To another user, who posted "others can still say her name tho [sic] Sir," Plaintiff wrote, "I can not [sic] instruct anyone on their personal actions. I must fully adhere, abide, and be obedient to the courts and the rule of law." *Id.* at 11. Plaintiff went on to specifically "tag" another user, writing to this person "[other user]; this gag order only applies to me." *Id.* at 11. That individual then "posted a photo of Jane from when she was in high school and her real name," which the same user had also done following Plaintiff's disclosure of Doe's name on Christmas in 2023. *Id.* at 12.

Doe argues that the Court should sanction Plaintiff for these posts, which she asserts violate the June 19th Order, by dismissing his case with prejudice pursuant to the Court's inherent authority and Fed. R. Civ. P. 41(b). *Id.* at 13–14, 20. She contends that his "prior misconduct," his personal violation of the June 19 Order, his incitement of others to violate the Court's orders, and his violation of the "spirit and objective" of the Court's orders collectively warrant dismissal as a sanction. *Id.* at 20–26.

11

On June 28, 2024, the Yale Defendant's filed the second instant motion—their emergency motion for judgment of dismissal—and its accompanying memorandum in support. *See* Yale Mot., ECF No. 130; Yale Mem. in Supp, ECF No. 130-1.[12] Therein, they recite the procedural history detailed above, reiterate some of Doe's arguments with respect to dismissal, and address in more detail two of the five factors that district courts in this circuit must consider when adjudicating dismissal of a plaintiff's claims under Rule 41(b), citing *Pena v. Zazzle Inc.,* 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022). *Id*. at 5–6. Specifically, they detail the harm that Plaintiff's violation caused to all Defendants through its effect on Yale's confidentiality policies with respect to sexual assault reporting, and argue that any sanction less than dismissal with prejudice would be inadequate and futile. *Id.* at 6–8

Plaintiff's opposition, filed with an accompanying memorandum of law on July 6, 2024, addresses both Doe's and Yale's arguments. Pl.'s Opp'n at 1 (SEALED). The bulk of his memorandum focuses on Constitutional issues and whether the June 19 Order was valid, which is irrelevant to the pending motions and which the Court does not address herein. *See* Note 3, *supra*. He also challenges and denies the accusation that he violated the June 19 Order, in that he did not directly or indirectly disclose Doe's identity. Pl.'s Mem. in Opp'n, ECF No. 157-1 (SEALED) at 11–12. Plaintiff posits that all of his public social media posts that Defendants rely upon were "objectively compliant;" that his public disclosure of Doe's name and certain other conduct, cited by Doe, predate the June 19 Order; and that Khan's intent, as opposed to his actual words, "has nothing to do with whether the Plaintiff made a statement that violated the order." *Id.* at 12–13. Plaintiff also argues that the avenues for dismissal advanced by Defendants—the Court's inherent authority or Fed. R. Civ. P. 41(b)—are inapplicable to the current facts, and that criminal contempt

---

[12] The Yale Defendants incorporate by reference Doe's Emergency Motion for Judgment of Dismissal and its memorandum in support into their own motion. *See* Yale Mot. at 1.

12

proceedings would be required. *Id* at 14–16. Finally, he argues in the alternative that Plaintiff's conduct does not warrant dismissal under either standard.

Doe filed her reply on July 9, 2024. Within, she argues that Plaintiff's attacks on the validity of the June 19 Order are immaterial to whether the order was violated, contests Plaintiff's arguments regarding the order's constitutionality, and highlights Plaintiff's allegedly "bad-faith" conduct in tagging other users who he knew would disclose Doe's identity. Doe's Reply in Supp. of Dismissal ("Doe's Reply"), ECF No. 166 (SEALED per Mot. at ECF No. 165, Order at ECF No. 182), at 2–9. Doe also again asserts that dismissal is the only appropriate remedy, as Plaintiff has "repeatedly been warned of the prospect of dismissal," but continues to violate the Court's orders. *Id.* at 10. Further, she claims that through his repeated violations, Plaintiff has created a situation in which the Court must adjudicate motions that require it to disclose confidential information, which will result in additional harm to Doe if her motion is not granted and the case is allowed to continue. *Id*.

For the reasons that follow, although finding Plaintiff's conduct egregious, the Court nonetheless concludes that dismissal of this case is not warranted.

**Discussion**

Preliminarily, the Court concludes that its inherent authority and Rule 41(b) provide a basis upon which to dismiss the case. While there may be no case on all fours with this one as a factual matter, the case law, cited above, demonstrates the breadth and scope of the Court's authority to cover a variety of different factual scenarios. The Court therefore analyzes the motion within this framework.

Prior to the June 19 Order, Plaintiff, through a series of posts, in some kind of bizarre suspense building exercise, previously identified Doe to the world writ large through his social

media account. Doe's Dec. 27 Mem. in Supp at 5–7 (SEALED). It was this conduct, *inter alia,* that occasioned the first motion to dismiss and which this Court found very troubling. As the Court observed on March 18, 2024, Plaintiff's conduct appeared less about vindicating his legal rights through the litigation, and more about seeking retribution against Doe by mobilizing his "followers" on social media. Mar. 18 Hr'g Tr at 9:1–9. The potential for genuine harm to Doe as a result of Plaintiff's conduct, once his claims and accusations were broadcast, is easy to recognize. The Court did not dismiss this case in March 2024 because it had only entered an order regarding the use of Doe's pseudonym in relation to this litigation and had not otherwise issued broader protections for Doe.[13] But Plaintiff was warned that his conduct was not an appropriate adjunct to this litigation.

Judge Garcia then resolved the outstanding issues regarding Doe's anonymity when she issued the June 19, 2024, Order. Almost immediately, Plaintiff took again to his social media account; posted the Court's order; declared himself "gagged" by the federal courts; clarified that the order only applied to him, not to others; espoused that perhaps "others would do their part;" and tagged a specific individual who, on cue, then revealed Doe's name and photograph. Doe's June 24 Mem. in Supp. at 7–12 (SEALED). Having already revealed Doe's identity via the same account seven months earlier, Plaintiff knew that his audience could (and likely would) easily share this information.

Plaintiff's argument that his intent is "irrelevant" and that his conduct did not actually violate the letter of the June 19 Order is utterly specious. The June 19 Order precluded Plaintiff from "directly or indirectly" disclosing Doe's name on social media. "Indirect," means *inter alia,* "deviating from a direct line or course: ROUNDABOUT" and "not straight forward and open:

---

[13] Notably Plaintiff's then-counsel acknowledged that it was his view that public disclosure of Doe's identity was prohibited. Plaintiff himself has publicly acknowledged as much as well. Doe's June 24 Mem. in Supp. at 3.

14

DECEITFUL." Merriam-Webster's Collegiate Dictionary 634–35 (Frederick C. Mish et al. eds., 11th ed. 2009). "Indirectly" is defined as "[i]n a way that is complicated or not obvious" or "without clearly mentioning or saying something." *Indirectly*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/indirectly (last visited January 24, 2025). And it is axiomatic that one method of acting "indirectly" is through the conduct of others. Plaintiff's posts were designed to and did in fact cause others to act in a fashion that violated the June 19 Order. He was the impetus behind the disclosure, and through his words and deeds, manipulated his "followers" to achieve his desired result. His protestations to the contrary are belied by the entirety of the record before the Court and are otherwise not credible.

The more difficult question is the appropriate remedy. Defendants seek dismissal for what they view as an egregious and arrogant affront to the Court's orders, which they argue continues to do real harm, not just to Doe but to all Defendants. Plaintiff argues, in the alternative, that dismissal is not warranted for his misstep—even if found to be a violation of the Court's Order (which he in no way concedes). After consideration of the factors, identified above, the Court agrees with Plaintiff.

It is well-established that there is a clear and significant preference for cases to be decided on their merits. *See Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023). As such, dismissal is considered the least-favored sanction, and the sanction of last resort. *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2024 WL 2044696, at *4 (D. Conn. May 7, 2024) (citing *Shcherbakovskiy*, 490 F.3d at 140). And if the Court can fashion lesser sanctions to address the party's conduct, lesser sanctions should be chosen. *Id.*

Weighing in favor of dismissal is the fact that Plaintiff's conduct comes on the heels of similar conduct for which Defendants sought dismissal. Although no sanction was imposed,

15

Plaintiff was clearly advised that his conduct was both troubling and inappropriate. *See, e.g.,* Mar. 18 Hr'g Tr. at 8:23–9:9. However, while the Court has concluded that Plaintiff's conduct violated the Court's orders, it has not recurred over the ensuing seven plus months. And subsequent events reduce the prejudice to Doe which can be *attributed to* Plaintiff's conduct. Specifically, in November 2024, the Superior Court for the state of Connecticut certified the official transcript of Plaintiff's criminal trial. *See* Emergency Suppl. to Rule 72.2 Obj., ECF No. 226 at 14–15; Def. Doe's Resp. to Court's Order, ECF No. 230 at 1. Therein, Doe is identified by name.[14] *Id.* The parties have been working closely with Judge Garcia to complete discovery and the case is proceeding towards an adjudication on the merits, whether by motion practice or a trial.

Further, Plaintiff's conduct throughout the litigation is an appropriate subject for his cross-examination at trial. The defendants will have the opportunity to probe Plaintiff's motives for bringing his claims; whether those motives color his testimony or impact his credibility; and *the extent to which his conduct throughout the litigation otherwise impacts his credibility or the merits of his allegations*. Whether considered a "sanction" or simply a pre-trial ruling, Plaintiff will not be permitted to prevent cross-examination regarding his conduct over the course of the litigation.

Defendants do not, in the alternative, seek any sanction other than dismissal. And the Court is without sufficient information to assess whether other sanctions, to include financial sanctions, would be appropriate. Accordingly, no further assessment of the issue is undertaken.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss, ECF Nos. 123 and 130, are DENIED.

---

[14] Plaintiff, by subsequent order on October 21, 2024, was prohibited from sharing the official transcript beyond the United States immigration authorities. *See* Order, ECF No. 216. That Order was objected to by Plaintiff and will be addressed in a separate decision. *See* Emergency Suppl. to Rule 72.2 Obj., ECF No. 226 at 1.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January 2025.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE