# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | APRIL 5, 2024 |

## MEMORANDUM OF LAW IN SUPPORT OF
## JANE DOE'S MOTION TO CONTINUE ANONYMITY

Defendant Jane Doe respectfully submits this Memorandum of Law in Support of Her Motion to Continue Anonymity ("Jane's Motion") (including the Court's recent Order that anonymity precludes Plaintiff from identifying Jane on social media or elsewhere) (ECF 12, 91.) The Court should grant Jane's Motion and continue the orders currently in effect.

## I.        PRELIMINARY STATEMENT

This Court already concluded that Jane is entitled to anonymity.  It did so in significant part because of Plaintiff's arguments that Jane should have anonymity.  This Court also ordered, consistent with its anonymity Order and the Parties' understanding of that Order, that Plaintiff cannot disclose Jane's name (because doing so is inconsistent with her anonymity).

The Court should continue both Orders.  This is a paradigmatic case for anonymity because, among other things, it involves sexual assault in the university context.  Plaintiff's arguments in opposition to continued anonymity are meritless, particularly in light of his prior admissions that Jane should have anonymity in this case.  Courts in this Circuit and District routinely preclude disclosure of a party's name when that party is entitled to anonymity.  The Ninth Circuit has held that Courts should preclude disclosure of the names of anonymous parties.  As those Courts recognize, such an Order is necessary to render anonymity meaningful.

1

For those reasons and the reasons set forth below, the Court should continue its Orders conferring anonymity on Jane and ordering Plaintiff not to disclose Jane's name.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiff's Claims

The facts of this matter involved Plaintiff's alleged sexual misconduct toward Jane when Plaintiff and Jane were students at Yale University.  In short, Plaintiff was expelled from Yale and this lawsuit is Plaintiff's revenge act against Jane.  Plaintiff claims that Jane defamed him by reporting his sexual misconduct and that her report tortiously interfered with Plaintiff's business relationship with Yale.  (Cmplt. (ECF 1).)  Plaintiff also asserts claims against Yale regarding its response to Jane's report of Plaintiff's sexual misconduct.  (Cmplt.)  In other words, this lawsuit concerns extremely sensitive, personal, private, and confidential information about  the victim of a sexual assault and private student records, all of which is protected from disclosure by State and federal laws.

### B.    Plaintiff's Request For Anonymity For Jane

At the outset of this case, Plaintiff acknowledged that Jane is entitled to anonymity.  (ECF 2, 7.)  Plaintiff analyzed the Second Circuit's *Sealed Plaintiff* factors (*see infra*) from his perspective and concluded that they supported anonymity for Jane.  (ECF 2.)

Among other things, Plaintiff acknowledged that:

- "The instant case involves matters of a highly sensitive and personal nature . . . ."

- Anonymity was necessary to protect Jane from a "public pillorying."

(ECF 2 at 5, 8.)  Yale supported anonymity for Jane.  (ECF 9.)

### C.    The Court's Order Conferring Anonymity On Jane

This Court ordered anonymity for Jane:

> Based upon consideration of the <u>inherently sensitive and personal nature</u> of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the <u>risk of harm and the absence of prejudice</u> to the litigants, <u>the lack of an alternative procedure</u> for maintaining Jane Doe's confidentiality, <u>and other relevant factors</u>, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym.

(ECF 12 (underlining emphasis added).)

### D.    Plaintiff's Attacks On Jane And Other Misconduct

Plaintiff has been threatening, harassing, and abusive toward Jane.  His vindictiveness is evident in filings in the case when he launches vile attacks on Jane:

> On Halloween night, 2015, Defendant Jane Doe seduced the Plaintiff, Saifullah Khan, to have consensual sexual intercourse with her.  The next morning, she awoke with her dignity offended and *only her own libidinal urges to blame*.  At least in an honest world, that would have been the case.  Jane Doe, however, could not face the inevitable perception *that she behaved in a trashy manner by having a one-night stand* with Mr. Khan.  Consequently, she manufactured a claim of rape to spread to her friends and then sought contraceptive care at the Yale University Health Center for what she described as consensual unprotected sex.

(ECF 31 at 1 (emphasis added).)

On June 26, 2023, Plaintiff (not his attorney) emailed Jane directly under the guise of a supposed "settlement proposal."  Plaintiff uncovered, and his email identified, Jane's personal home and email addresses and her phone number. (**Exhibit A**.) He obviously intended to intimidate Jane by letting her know he could find her.  Plaintiff's email was not a serious "settlement proposal." Instead, Plaintiff warned Jane of the "potential financial and emotional costs of ongoing litigation" and asked Jane to "sign a legally binding document . . . admitting to falsely accusing [Plaintiff] of rape."  (Exhibit A.)  In 2022, Plaintiff asked his lawyer to ask Jane's lawyer to "recant" her accusation, but she refused.  Thus, when Plaintiff sent his threatening email

to Jane, he already knew that she had refused to recant, but Plaintiff was intent on his vendetta.

In disregard of the anonymity of Jane, in or around September 2023, Plaintiff gave Jane's name and email address to a reporter for *The New York Times*. (*See, e.g.*, **Exhibit B** and ECF 74 at 9 (describing that Plaintiff was working with the reporter on an article (that refers to statements by Plaintiff) and that the reporter then emailed Jane at her personal email address, thereby establishing that Plaintiff gave Jane's name and email address to the reporter); *see also, e.g.*, ECF 79 (noting that Plaintiff has never denied providing Jane's name and email address to the reporter).)

At roughly the same time, Plaintiff acknowledged during two interviews that this Court's anonymity Order precluded him from publicly identifying Jane. Videos of Plaintiff saying that can be accessed here and here.[1] Yet despite that acknowledgment, on October 25, 2023, Plaintiff posted on social media a threat to reveal Jane's name. (**Exhibit C**.) Plaintiff's post used the hashtag "#CountdownToChristmas." (Exhibit C.) Also included in that post was part of the Second Circuit's decision in this case, including the docket number for the appeal in this case and the citation for the Connecticut Supreme Court's opinion in this case. (Exhibit C.)

On December 18, 2023, Plaintiff sent yet another purported "settlement communication" to Jane. This time, Plaintiff sent the email to Jane's attorneys instead of directly to Jane. Plaintiff chose Jane's birthdate to again harass her. Plaintiff warned Jane that discovery would be "gruesome" and he referred to videos of Jane:

> [Jane],
>
> Happy Birthday. Birthdays are milestones that offer us a chance to reflect on our lives, the paths we have walked, and the choices we have made. They also present opportunities to look forward with hope and resolve towards a future we wish to shape. It is in this spirit of reflection and forward-looking hope that I write to you today.

---

[1] A video of Plaintiff claiming that he has received death threats because of this case can be accessed here.

This is my third attempt to settle with you.  Let's sit down and discuss.  I can give you what you seek if you give me what I seek.  Don't turn into a Nikki Yovino and many others that Sconzo has misled.  I hope you learned something from Clark and Crossin.  I hope you sit down with friends that you trust who can help you see the incentive structures around you, and to give you appropriate advice.  I hope Sconzo has made you aware of Nate the Lawyer and other videos about you.  I fully expect discovery to be gruesome for both of us.

We have spent our 20s in this, at least I did.  I am willing to spend my 30s in this.  Will you?

Saif

(**Exhibit D**.)

On Christmas Morning 2023, Plaintiff made good on his threats to disclose Jane's name by posting Jane's name (twice) on one of his public social media accounts.  (**Exhibit E**.)  Plaintiff's posts also identified other personal information about Jane, including her ethnicity.  (Exhibit E.)

Plaintiff's vile plan of revenge resulted in Jane's name and personal information (including about where she works) being posted on an extremist hate group's website



(**Exhibit F**.)

### E.    Jane's Motion To Dismiss And The Court's Ruling On It

Jane moved to dismiss Plaintiff's claims against her as a result of Plaintiff's misconduct. (ECF 74.)  In his Objection to that Motion, Plaintiff admitted (consistent with his prior admissions) that disclosing Jane's name violated this Court's Order:  "This [*i.e.*, the disclosure] was done in violation of a Court order granting a motion [] [Plaintiff] filed [for Jane] to proceed

pseudonymously."  (ECF 77 at 1–2).

On March 15, 2024, Plaintiff filed a Motion to Vacate this Court's anonymity Order.  (ECF 89.)  Plaintiff argued, among other things, that anonymity was no longer warranted because Yale's confidentiality rules do not apply and that Jane's reliance on the Family Educational Rights and Privacy Act ("FERPA") in support of anonymity was misplaced.  (ECF 89.)

On March 18, 2024, the Court held a hearing on Jane's Motion.  (ECF 94.)  The Court did not hear Plaintiff's Motion to Vacate or the Motion for a Protective Order Jane had filed seeking to limit Plaintiff's access to documents in light of his misconduct in this case.  (ECF 82.)

At that hearing, the Court explained its "concern" that Plaintiff was misusing this Court's process for improper purposes, including to "exact retribution" upon Jane:

> What I have seen does give me concern about what's going on here, and some of the things that [Plaintiff] has done [] give me pause.  Because some of the tenor and tone of [Plaintiff's] posts feel less like his plan is to have his rights vindicated as it is to exact retribution, and that is not the purpose of the use of our [C]ourts . . . .
>
> When [Plaintiff] has posted about the litigation and talking about attending depositions, there is a sense of an intent to intimidate.  There is a sense of an intent to harass.  The idea of sort of mobilizing the Internet—I mean, this is borderline doxing, and it's very concerning. . . .

(**Exhibit G** (Excerpts of March 18, 2024 Hearing) 8:23–9:9.)

The Court also stated:

> I think there's certainly language that [Plaintiff used] from which a reasonable inference could be drawn that [Plaintiff] was looking to set the spark or he was looking to visit upon [Jane] something similar to what has been visited upon [him].

(Excerpts of March 18, 2024 Hearing 19:1–5.)

Incredibly, when the Court asked Plaintiff's attorney what Plaintiff's "plan" was, Plaintiff's attorney confirmed the Court's suspicions that Plaintiff's plan is to harass Jane, saying, *inter alia*:

> I think he wants [Jane] to feel what he felt.  What it was to have every publication that reports on things like that, like *Time Magazine* reported him to be a rapist . . .

(Excerpts of March 18, 2024 Hearing 11:8–10.)

Plaintiff's counsel also admitted that his understanding of this Court's anonymity Order was the same as Plaintiff's (*i.e.*, that it precluded disclosure of Jane's name). (*E.g.*, Excerpts of March 18, 2024 Hearing 6:17–8:21 ("I was operating as though the [O]rder applied . . . .").)

This Court "direct[ed] that [Plaintiff] . . . abide by the status quo that was the parties' understanding as to the impact of the pseudonym order." (Excerpts of March 18, 2024 Hearing 23:21–24.) The Court therefore expressly ordered Plaintiff "not to publicly identify [Jane] again" pending resolution of Plaintiff's Motion to Vacate, which Plaintiff had just filed, and Jane's Motion for a Protective Order (ECF 81).[2] (Excerpts of March 18, 2024 Hearing 23:24–24:1.)

This Court subsequently issued a written Order that, "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere." (ECF 91)

## III.    RELEVANT LAW

### A.    The *Sealed Plaintiff v. Sealed Defendant* Factors

The Second Circuit's seminal decision on anonymity is *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). The plaintiff in that case claimed to be a victim of "physical and sexual assault" and sought anonymity. *Id.* at 187. The District Court denied the plaintiff's request and the plaintiff appealed. *Id.* The Second Circuit vacated the denial of anonymity and remanded the case for a determination of anonymity under the standard it articulated. *Id.* at 193. That standard requires Courts to balance "the plaintiff's interest in anonymity" against "the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. The Second Circuit identified ten "non-exhaustive" factors for the Court to make the anonymity decision, which is subject to review only for abuse of discretion:

---

[2] Plaintiff also agreed to take down his posts identifying Jane. (Excerpts of March 18, 2024 Hearing at 25:7–20.)

(1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature" . . . ; (2) "whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties" . . . ; (3) whether identification presents other harms and the likely severity of those harms, . . . including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity" . . . ; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, . . . particularly in light of his age . . . ; (5) whether the suit is challenging the actions of the government or that of private parties . . . ; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court . . . ; (7) whether the plaintiff's identity has thus far been kept confidential . . . ; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity . . . ; (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities" . . . ; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (citations omitted).  No factor is dispositive, they need not all be satisfied, and whether to confer anonymity is committed to the Court's discretion.  *See, e.g.*, *id.*

**B.**    **The First Circuit's Recent Decision In *Doe v. MIT***

The First Circuit recently addressed anonymity in the context of a university sexual misconduct case: *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022) ("*MIT*").

In *MIT*, a plaintiff challenged his expulsion for sexual misconduct.  *Id.* at 64.  He sought anonymity.  *Id.* at 65.  The District Court denied anonymity and the plaintiff appealed.  *Id.*

On appeal, the First Circuit clarified its standard for anonymity.  *Id.* at 70–71.  The First Circuit explained that courts should consider "the totality of the circumstances."  *Id.* at 70; *see also id.* at 72.  The First Circuit identified "four general [non-exhaustive] categories [or "paradigms"] of exceptional cases in which party anonymity ordinarily will be warranted."  *Id.* at 71, 72.

1.  Severe Physical Or Mental Harm:  "The first paradigm involves a would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)."  *Id.* at 71.  The First Circuit cited *Sealed Plaintiff*'s factor assessing the "risk of retaliatory physical or mental harm" and a case involving sexual abuse as supporting anonymity in cases such as this.  *Id.*

2.  Harm To Innocent Non-Parties:  "The second paradigm involves cases in which identifying the would-be Doe would harm 'innocent non-parties.'"  *Id.* (citation omitted).

3.  Where Anonymity Is Necessary To Forestall A Chilling Effect:  "The third paradigm involves cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated."  *Id.*  In articulating that paradigm, the First Circuit noted that a "deterrence concern typically arises in cases involving 'intimate issues *such as sexual activities*.'"  *Id.* (emphasis added) (citation omitted).

4.  Where The Action Is Related To Confidential Proceedings:  "The fourth paradigm involves suits that are bound up with a prior proceeding made confidential by law."  *Id.*  "This concern manifests itself when denying anonymity in the new suit would significantly undermine the interests served by that confidentiality."  *Id.*  The First Circuit cited cases where records were protected by statutes regarding family law or juveniles.  *Id.* at 72.

The First Circuit also addressed the plaintiff's argument that anonymity was "appropriate because the underlying disciplinary proceeding, brought under Title IX . . . was conducted confidentially."  *Id.* at 74.  The First Circuit agreed, explaining:

> We agree that the confidentiality of a Title IX disciplinary proceeding may sometimes—but not always—furnish grounds for finding an exceptional case warranting pseudonymity.  Title IX proceedings are extensively regulated by federal law. . . .  In a nutshell, both Congress and the Executive Branch have given careful thought to the proper conduct of Title IX proceedings.
>
> Confidentiality is an important aspect of that vision.  By enacting the Family Educational Rights and Privacy Act of 1974 (FERPA), . . . Congress sought to prevent educational institutions from unilaterally disclosing "sensitive information about students . . . ."  Under FERPA, a university receiving federal funds generally may not disclose a student's 'educational records.' . . .  Student disciplinary records typically fall under this protective carapace. . . .  So, too, the Department[ of Education]'s *regulations implementing Title IX require universities to 'keep confidential the identity of any individual who has made a report or complaint of sex discrimination*, including . . . any individual who has been reported to be the perpetrator of sex discrimination," subject to a few exceptions . . . .
>
> To be sure, neither FERPA nor Title IX imposes a gag order on individual participants. . . .  [*I*]*t would* [*nevertheless*] *be a mistake to conclude that the confidentiality attending Title IX proceedings is unimportant simply because it is not absolute.  It is evident, we think, that federal law aims to keep such proceedings largely under wraps*. . . .
>
> Of course, FERPA and Title IX govern the conduct of schools — not judicial

9

decisions . . . . But *courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity*. . . .

In federal suits that amount to collateral attacks on Title IX proceedings, *a full appreciation of the public's interest in transparency must factor in the choice by Congress and the Department [of Education] to inhibit a school's disclosure of private information*, such as the name of an accused student. . . . [D]estroying that confidentiality may throw a wrench into other Title IX proceedings. . . . [S]ee also Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 132 Fed. Reg. 41390, 41453 (July 12, 2022) (setting forth Department's "tentative view" that any *unauthorized disclosure of Title IX proceedings "may chill reporting of sex discrimination or participation in the [college']s efforts to address sex discrimination"*). The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks . . . .

*Id.* at 74–76 (emphasis added) (citations omitted).

### C.    Sexual Assault Cases Are The Prototypical Cases For Anonymity

"The Seventh Circuit, which *disfavors* the use of fictitious names, has recognized that sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (emphasis added) (granting anonymity in sexual misconduct case and citing *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses")).

A former Judge of this District and current Judge for the United States Court of Appeals for the Second Circuit recently relied on Seventh Circuit law as adopted in this Circuit to note that "[a]llegations of sexual assault are 'paradigmatic example[s]' of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) (citing *Kolko*, 242 F.R.D. at 195 and collecting other cases); *id.* (denying anonymity where the "case [did] not involve . . . allegations of sexual misconduct").

The presumption in favor of anonymity in sexual assault cases is even stronger when those

cases involve university students: "[C]ourts across the country have allowed plaintiffs alleging []

claims against colleges and universities stemming from investigations of sexual assault to proceed

anonymously." *Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829, at *3

(N.D.N.Y. Apr. 12, 2016) (collecting cases and granting anonymity to accused university student);

*see also, e.g., Doe v. Smith*, No. 119CV1121GLSDJS, 2019 WL 6337305 (N.D.N.Y. Nov. 27,

2019) (granting anonymity in college sexual assault case); *Doe v. Vassar Coll.*, No. 19-CV-09601

(NSR), 2019 WL 5963482 (S.D.N.Y. Nov. 13, 2019) (granting anonymity to student).   As

discussed in more detail below, sexual assault cases arising in the college or university context

involve particularly sensitive considerations that support anonymity under *Sealed Plaintiff*.

## D.  Once Anonymity Is Granted, Courts Prohibit Disclosure Of Names

Courts within this Circuit have explained that anonymity precludes disclosure of the

protected party's name.  In *Baram*, 2021 WL 3423595, at *1, the plaintiff, a victim of sexual

assault, moved "for leave to proceed anonymously and for a protective order" precluding the

defendants from disclosing her name.  *Id.*  The Court granted both requests, explaining that the

prohibition on the disclosure of the plaintiff's name was necessary to achieve anonymity.  *Id.* at

*3.  With respect to the prohibition on the disclosure of the plaintiff's name, the Court ordered:

> [Defendant] shall use [the plaintiff's] identity solely for purposes of preparing for
> and conducting the instant suit, and [Defendant] may disclose, communicate, and
> make [the plaintiff's] identity available to a limited set of individuals.  Because
> these and other related terms in the proposed [protective] order are appropriate for
> the purpose of keeping [the plaintiff's] identity confidential in this proceeding, the
> Court grants [the plaintiff's] request for a protective order. . . .
>
> Any release or deliberate disclosure of [the plaintiff's] identity by [the defendant]
> to anyone other than his legal representatives or agents may be sanctionable.

*Id.*  The Court also issued a protective order, which is attached as **Exhibit H**.  That protective order

precluded the defendants from disclosing the plaintiff's name, subject to strict exceptions:

Defendants and their counsel shall use Jane Doe's identity solely for purposes of preparing for and conducting this litigation . . . and for no other purpose.

Defendants and their counsel may disclose, communicate, or make Jane Doe's identity available in whole or in part only to the following persons, and only to the extent necessary for the proper conduct of this litigation, or as otherwise [ordered]: . . . counsel . . . investigators . . . experts . . . witnesses . . . [etc].

An [authorized] person . . . who receives disclosure of the identity of Jane Doe from Defendants or their counsel shall, prior to receiving such information, execute an Acknowledgment of Protective Order and Agreement to Be Bound . . . .

If any person or entity to whom Jane Doe's identity is disclosed in accordance with this Protective Order in turn disseminates, publishes, shares, uses, or otherwise discloses Jane Doe's identity in any way that does not conform with this order, then that person or entity may be held in contempt and sanctioned by the Court.

(Exhibit H.)

Likewise, in *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020), another sexual misconduct case, the Court also granted anonymity and precluded dissemination of the plaintiffs' names:  "Plaintiffs are permitted to proceed in this litigation under [] pseudonyms . . . .  Any release or deliberate disclosure of Plaintiffs' identities by Defendants, to anyone outside of their legal representatives or agents, may be sanctionable."[3]  *See also, e.g.*, *Kolko*, 242 F.R.D. at 194 (entering a protective order and noting: "[T]his Court ordered plaintiff's counsel to disclose plaintiff's identity to defendants' counsel, with the instruction that counsel should not disseminate plaintiff's name to anyone other than" select individuals).

These Courts and others have recognized that restrictions on the dissemination of a party's name are necessary to effectuate anonymity.  Indeed, the Ninth Circuit has instructed Courts to restrict the disclosure of a party's name when that party is entitled to anonymity:

---

[3] In a PACER Order, the Court instructed the parties to meet and confer on an appropriate protective order.  (*Nygard* ECF 5 (8/20/20).)  It appears that the case was stayed by agreement before such an order was entered.

> In cases where the plaintiffs have demonstrated a need for anonymity, the [D]istrict [C]ourt should use its powers to manage pretrial proceedings, *see* Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name, *see* Fed. R. Civ. P. 26(c) to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case.

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (concluding that District Court abused its discretion by denying anonymity in FLSA collective action).

In *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 278 (E.D.N.Y. 2015), the Court believed that a prohibition on disclosure of the plaintiffs' names was implicit in its order conferring anonymity on the plaintiffs. After granting the plaintiffs' motion for anonymity, the Court said:

> However, in an effort to mitigate the prejudice to the Defendants, the court directs the Plaintiffs to submit a protective order . . . which provides for the limited disclosure of the Plaintiffs' identifies for discovery purposes.

*Id.*; *see also, e.g.*, *Smith*, 2019 WL 6337305, at *2 (noting that the defendant would "hav[e] to take measures to avoid disclosing Plaintiffs identity publicly" given that anonymity was warranted). The Court would not have provided for limited disclosure of the plaintiff's name in discovery unless it understood that its anonymity order precluded defendants from using the plaintiff's name.

In sum, it is commonplace for Courts to prohibit the disclosure of a party's name once anonymity has been granted.

Indeed, the vast majority of Judges in this District have precluded plaintiffs from publicly disclosing defendants' names in two sets of cases: the *Strike 3 / Malibu Media* cases.

Strike 3 and Malibu Media are adult film companies. *E.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-CV-1653-OAW, 2024 WL 230306, at *1 (D. Conn. Jan. 22, 2024); *Malibu Media, LLC v. Doe*, No. 3: 19-CV-00808 (CSH), 2019 WL 2537671, at *1 (D. Conn. June 20, 2019). They claim that Internet users regularly infringe their copyrighted works and they regularly file copyright infringement actions in this District and across the country. *Strike 3 Holdings*, 2024 WL

230306, at \*1 & n.1.  As of January 2024, Strike 3 had filed "at least 173 actions in this [D]istrict." *Id.*  Those actions have been assigned to virtually every Judge in this District.  *Id.*

Because Strike 3 and Malibu Media do not know the names of the Internet users who have allegedly infringed their work and instead have only "IP addresses" for the alleged infringers, Strike 3 and Malibu Media file motions to serve subpoenas on the alleged infringers' Internet Service Providers.  *E.g.*, *id.* at \*1.  Because of privacy concerns, the Judges in this District regularly prohibit the plaintiff from disclosing the name of the defendant identified in response to its subpoena:

> Plaintiff only may use the subscriber's name and address for the purposes of this litigation.  *Plaintiff is ordered not to disclose the subscriber's name or address, or any other identifying information* other than the ISP number.

*Id.* at \*5 (emphasis added) (Williams, *J.*).

The vast majority of Judges in this District have issued orders precluding the disclosure of the names of defendants in such cases.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 3:22-CV-00303 (KAD), 2022 WL 1050340, at \*2 (D. Conn. Mar. 9, 2022) (Dooley, *J.*) ("The Plaintiff may only use the Defendant's name and address . . . for the purposes of this litigation.  The Plaintiff is ordered not to disclose the Defendant's name or address, or any other identifying information other than the Defendant's ISP number."); *Strike 3 Holdings, LLC v. Doe*, No. 3:19-CV-1152 (MPS), 2019 WL 3859514, at \*3 (D. Conn. Aug. 16, 2019) (Shea, *C.J.*) ("Plaintiff may only use the defendant's name and address . . . for the purposes of this litigation.  Plaintiff is ordered not to disclose the defendant's name or address, or any other identifying information other than the defendant's ISP number . . . .  Plaintiff shall not threaten to disclose any of the defendant's identifying information."); *Strike 3 Holdings, LLC v. Doe*, No. 3:21-CV-00938 (CSH), 2021 WL 3795886, at \*3 (D. Conn. Aug. 26, 2021) (Haight, *J.*) ("Plaintiff only may use Defendant's name

and physical address . . . for the purposes of protecting Plaintiff's rights in this litigation.  Plaintiff is ORDERED not to disclose Defendant's name or address, or any other identifying information other than Defendant's IP number . . . absent further order of the Court.  Plaintiff shall not, under any circumstances, threaten to disclose any of Defendant's identifying information."); *Strike 3 Holdings, LLC v. Doe*, No. 3:23-CV-01648 (VDO), 2024 WL 259770, at *4 (D. Conn. Jan. 24, 2024) (Oliver, *J.*) ("Plaintiff only may use the subscriber's name and address for the purposes of this litigation.  Plaintiff is ordered not to disclose the subscriber's name or address, or any other identifying information other than the ISP number."); *Strike 3 Holdings, LLC v. Doe*, No. 3:23-CV-01650 (SVN), 2024 WL 525641, at *6 (D. Conn. Feb. 9, 2024) (Nagala, *J.*) ("Plaintiff may use the information disclosed by the Internet Service Provider pursuant to this Order, namely, the subscriber's name and address, only for the purpose of this litigation . . . ."); *Malibu Media, LLC v. Doe*, No. 3:18-CV-1337-VLB, 2018 WL 4903240, at *2 (D. Conn. Oct. 9, 2018) (Bryant, *J.*) ("Any information ultimately disclosed to plaintiff . . . may be used by plaintiff solely for the purpose of protecting plaintiff's rights as set forth in its complaint."); *Strike 3 Holdings, LLC v. Doe*, No. 3:19 CV 115 (JBA), 2019 WL 2066963, at *4 (D. Conn. May 10, 2019) (Spector, *M.J.*) ("The plaintiff is ordered not to disclose the defendant's name or address, or any other identifying information that plaintiff may subsequently learn, other than the defendant's ISP number.").

## E.    Prohibiting Parties From Disclosing A Name Is Not A Prior Restraint

It is commonplace, and not a "prior restraint," when Courts in this Circuit and District and beyond prohibit the disclosure of party names who have been granted anonymity.  None of the cases cited above, prohibiting disclosure of party names for parties who are granted anonymity analyze their orders under a "prior restraint" standard.

At least one Court has expressly found such an order not to be a prior restraint. *Plaintiff B. v. Francis*, No. 5:08-CV-79 RS-GRJ, 2011 WL 809610, at *1 (N.D. Fla. Mar. 2, 2011). In *Francis*, a group of plaintiffs sued an individual associated with "Girls Gone Wild" claiming that the franchise publicized sexually explicit content of the plaintiffs. *See Plaintiff B v. Francis*, 631 F.3d 1310, 1312–13 (11th Cir. 2011). The District Court denied a motion by plaintiffs to continue their anonymity through trial. *Id.* at 1312. The Eleventh Circuit vacated that decision and remanded for the District Court "to consider whether granting anonymity under the terms the [p]laintiffs ha[d] requested would constitute an impermissible prior restraint." *Id.* at 1319.

On remand, the District Court held that the plaintiffs were entitled to anonymity:

[A]ll [p]laintiffs shall proceed to trial anonymously. They shall be identified at trial only by the letters they have been assigned. No party shall disclose, whether through exhibits, testimony, or questioning of the witnesses, any identifying information about the Plaintiffs, as defined in the protective order. Pursuant to the protective order, any party who violates the protective order shall be liable for damages caused and sanctioned in an amount to be determined by the Court.

*Francis*, 2011 WL 809610, at *1 (citations omitted).

The Court rejected the contention that its order was a "prior restraint:"

The protective order in this case is directed only at the parties and their attorneys, not to the press. Because it contains no threat of sanctions against the press, it does not constitute a prior restraint. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

*Id.*; *see also, e.g.*, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (instructing District Courts to enter protective orders to limit disclosure of names).

The *Francis* Court's decision is consistent with binding Second Circuit precedent that, like *Francis*, distinguishes between judicial orders that preclude the news media from publishing content and orders that merely regulate the conduct of parties. In *Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), the District Court precluded the parties and their agents and

counsel from making "extrajudicial statement[s] concerning [the] case to the media, subject to limited exceptions. *Id.* at 605–06. The news media challenged that order as an impermissible "prior restraint." *Id.* at 604. The Second Circuit rejected the challenge and affirmed the order:

> [T]here is a substantial difference between a restraining order directed against the press—a form of censorship which the First Amendment sought to abolish from these shores—and the order here directed solely against trial participants and challenged only by the press. The distinction is critical.

*Id.* at 608. The Second Circuit concluded that the Court's order "may not . . . be characterized as a prior restraint on the news agencies." *Id.* at 609. The Second Circuit then went on to find that the order was justified and affirmed it, noting that the "the solution" to the concerns about precluding publication by the news media is to "restrict those at the source of the problem: counsel who serve as officers of the court, a body which has a duty to insure that the accused receives an impartial trial." *Id.* at 609–12. The Second Circuit further explained that "focus[ing] on the source of potentially prejudicial statements rather than the publisher of such statements has been endorsed by the courts." *Id.* at 612; *see also id.* (affirming order of District Court).

## IV.    ARGUMENT

### A.    Continued Anonymity Is Warranted Under The *Sealed Plaintiff* Factors

The *Sealed Plaintiff* factors overwhelmingly support anonymity.

Three introductory remarks are in order before addressing those factors individually.

First, this Court previously analyzed the *Sealed Plaintiff* factors and concluded that they supported anonymity. (ECF 12 (concluding that this case is "inherently sensitive and personal," that there is a "risk of harm" and "absence of prejudice," that there are no "alternative procedure[s] for maintaining Jane Doe's confidentiality," and that "other relevant factors" support anonymity).)

Second, Plaintiff has already analyzed the *Sealed Plaintiff* factors and concluded that they support anonymity for Jane. (*See* Plaintiff's Motion for Permission to Litigate Against Jane Doe

Using A Pseudonym (ECF 2).)  Plaintiff cannot now contradict his prior position.

Third, the *Sealed Plaintiff* factors were designed to analyze anonymity requests by and/or for plaintiffs.  *E.g.*, *Sealed Plaintiff*, 537 F.3d at 189 ("[T]he plaintiff's interest in anonymity must be balanced . . . .").  Jane is a defendant.  She is not here voluntarily.  That fact supports anonymity and renders the application of the factors somewhat different than how it was described in *Sealed Plaintiff*.  *See, e.g.*, *Smith*, 2019 WL 6337305, at *2 (noting the fact that plaintiff "availed [herself] to the courts by filing this suit" weighed against anonymity under *Sealed Plaintiff* factor).

*1.    This Litigation Involves Highly Sensitive And Personal Matters*

When Plaintiff sought anonymity for Jane, he acknowledged that "[t]he instant case involves matters of a highly sensitive and personal nature, both to [Plaintiff] and Jane Doe" and that the first *Sealed Plaintiff* factor therefore weighed in favor of anonymity.  (ECF 2 at 5.)

When this Court conferred anonymity on Jane, it concluded that this case is "inherently sensitive and personal."  (ECF 12.)  That conclusion is fully-supported by the record.  (Cmplt.)

Cases such as this are inherently and immensely sensitive and personal.  *E.g.*, *Colgate*, 2016 WL 1448829, at *3 (noting that university sexual misconduct case was "highly sensitive and personal); *Vassar*, 2019 WL 5963482, at *2 (stating in college sexual assault case:  "There is little question that the instant case involves matters that are highly sensitive or of a personal nature.").

Plaintiff admits this factor weighs heavily in favor of anonymity.  (ECF 2.)

*2.    Identification Poses A Risk Of Retaliatory Physical And Mental Harm*

Plaintiff conceded that anonymity was necessary "to protect [Jane] from a [] public pillorying."  (ECF 2 at 8.)  Plaintiff admitted that even he would "suffer the risk of retaliatory physical or mental harm" if Jane's name was revealed.  (ECF 2 at 5.)

This Court also already concluded that there is a "risk of harm" associated with the disclosure of Jane's name. (ECF 12 (specifically referencing the "risk of harm").)

That risk of harm is clear by a hate group posting Jane's name and personal information. Plaintiff admits that Jane will be subject to "public pillorying" if her name is freely associated with this case. *See, e.g.*, *Vassar*, 2019 WL 5963482, at *2 (granting anonymity in part because "[p]ublic disclosure of [the] victim's identity could result in psychological trauma" and because disclosure "may be personally damaging"). In fact, Plaintiff has already ensured that Jane will suffer significant additional emotional distress if her name is openly disseminated because he has shared intimate and, at times, false details about Jane online.[4]

Identifying Jane will cause additional mental harm and creates a high risk of physical or other retaliation that will cause further emotional and/or physical harm.

### 3. Identification Presents Other Harms That Will Be Severe

"'[C]ases stemming from investigations of sexual abuse on college and university campuses have garnered *significant media attention*, posing the risk of further *reputational harm* to both the plaintiffs in these cases *and their accusers*.'" *Smith*, 2019 WL 6337305, at *2 (emphasis added) (quoting *Colgate*, 2016 WL 1448829, at *2); *see also, e.g.*, *Vassar*, 2019 WL 5963482, at *2 ("Public exposure of the incident . . . may be personally damaging.").

This factor thus strongly supports anonymity. That is particularly true because of Plaintiff's misconduct and the extensive media attention that this case has and will continue to garner. Indeed, due to Plaintiff's effort, *The New York Times* contacted Jane. That contact was unwelcome, upsetting and harmful.

---

[4] That includes the baseless accusation about purported sexual activity by Jane above and, as previously noted to this Court, all sorts of other statements that Plaintiff made in extended videos that he has sought to draw Jane's attention to through purported "settlement communications." (*E.g.*, ECF 75-6 (calling Jane's attention to a video).)

4.    *Jane Is Particularly Vulnerable To The Harms Of Disclosure*

Jane is particularly vulnerable.  She is a victim of sexual assault.  *E.g.*, *Kolko*, 242 F.R.D. at 195 (quoting the Seventh Circuit's decision in *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d at 872, for the proposition that "'fictitious names are allowed when necessary to protect the privacy of rape victims, and other particularly vulnerable parties or witnesses'").  And Jane did not initiate this litigation.  In considering this factor, Courts consider whether the party seeking anonymity "availed" him or herself of "the court by filing th[e] suit" or "had no say in deciding whether or not to proceed with th[e] litigation."  *Smith*, 2019 WL 6337305, at *2.  Availing oneself of the Courts by filing suit undermines anonymity while being hauled into Court without a say supports it.  *Id.*  Jane is a defendant.  She is not here by choice.  This factor therefore supports anonymity as well.

5.    *This Lawsuit Challenges Government Activity (Title IX)*

Notably, Courts have conferred immunity in university sexual misconduct cases even when this factor may weigh against anonymity because the plaintiff is not challenging governmental action.  *Jane Doe v. Niagara University*, No. 23-CV-1311-LJV, 2024 WL 1363676, at *2 (W.D.N.Y. Apr. 1, 2024).  It also bear repeating that this factor presupposes that the party seeking anonymity has invoked the Court's process, something Jane did not do.

Regardless, a "plaintiff's interest in proceeding anonymously is considered 'particularly strong'" "[w]hen a plaintiff attacks a governmental activity."  *One Standard of Just., Inc. v. City of Bristol*, No. 3:22-CV-00863 (SVN), 2022 WL 17688053, at *4 (D. Conn. Dec. 9, 2022).

Plaintiff is challenging governmental activity in this case.  He has an issue with rules and regulations promulgated under Title IX and has posted and spoken about using this lawsuit as a means to challenge those governmental policies.  (*E.g.*, Cmplt. ¶¶ 28–34 (alleging that Yale's

UWC Procedures were the result of governmental policies and actions); ECF 75-7 (collecting statements made by Plaintiff noting that his lawsuit is intended to challenge government policy).)

Jane's request for continued anonymity is therefore "particularly strong."

>    6.    *Plaintiff Is Not Prejudiced By Anonymity*

This Court previously held that there was an "absence of prejudice."  (ECF 12.)

Courts have also recognized that there is no prejudice where the opposing party knows the name of the party entitled to anonymity.  *E.g.*, *Colgate*, 2016 WL 1448829, at *3 ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter . . . .") (noting that potential harm to plaintiff from disclosure negates any prejudice to defendants in any event); *Smith*, 2019 WL 6337305, at *2 ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded . . . ."); *Vassar*, 2019 WL 5963482, at *2.

Plaintiff knows Jane's identity and is therefore not prejudiced by anonymity.

Regardless, Plaintiff *sought* anonymity for Jane in this case.  (ECF 2.)  He cannot, and does not, claim that anonymity will somehow prejudice him.  This factor supports anonymity.

>    7.    *Plaintiff's Identity Has Thus Far Been Kept Largely Confidential*

Jane's identity was kept completely confidential except for Plaintiff's disclosure of it.  The discussion of this factor begins and ends with the fact that Plaintiff disclosed Jane's name in violation of an Order from this Court entitling Jane to anonymity that Plaintiff recognized precluded Plaintiff from disclosing Jane's name.  Videos of Plaintiff acknowledging during interviews recorded before Plaintiff disclosed Jane's name that this Court's Order precluded him from disclosing Jane's name or otherwise identifying her can be accessed here and here.  As Plaintiff admits, Jane's name was fully-protected by Connecticut law, Yale's confidentiality policies, and otherwise, up until the time that Plaintiff disclosed her name.  (ECF 2 at 7–8 (citing

21

Conn. Gen. Stat. § 54-86e).)  As Plaintiff has since admitted, Plaintiff's disclosures "[were] done in violation of [this] Court['s] order granting a Motion [] [Plaintiff] filed to proceed pseudonymously."  (ECF 77 at 1–2.)  *See also, e.g.*, March 18, 2024 Hearing Transcript 7–8.

Plaintiff should not be rewarded for disclosing Jane's name in violation of this Court's Order.  Any suggestion that this factor should weigh against Jane because Plaintiff disclosed her name in violation of a Court Order would encourage litigants who are dissatisfied with anonymity orders to violate them so that they can then move to revoke anonymity on the basis that the party's name has been disclosed.  In fact, Jane requests that the Court deny Plaintiff's Motion as a sanction for violating the anonymity order.  At absolute minimum, the Court should not hold Plaintiff's improper disclosure against Jane.

### 8. The Public's Interest Is Not Furthered By Disclosing Jane's Name

The public has a strong interest in ensuring that Jane's name is *not* disclosed.

"[T]he public has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes."  *Baram*, 2021 WL 3423595, at *3 (alterations omitted) (quoting *Kolko*, 242 F.R.D. at 195).  That is particularly true in this case, where Jane's identity was protected by statute during criminal proceedings, by university policy during disciplinary proceedings, and Jane has been hauled into Court as a defendant.  *See, e.g.*, Conn. Gen. Stat. § 54-86e; *see also, e.g.*, ECF 2 at 7–8.  Compelling disclosure of Jane's name would have a devastating effect on efforts to encourage reports of sexual misconduct.

This factor therefore weighs heavily in favor of anonymity.

### 9. There Is An Atypically Weak Public Interest In Knowing Jane's Name

The ninth factor also strongly supports continued anonymity for largely the same reasons as the eighth factor.  In short, the public has an atypically weak interest in Jane's name because

there is  a compelling interest in protecting her name from disclosure  to encourage (or at least not discourage) reports of sexual misconduct and the primary interest in this case concerns issues unrelated to Jane's name.  The only interest in Jane's name seems to be coming from extremist groups, such as the group that equates feminists with Nazis.  (Exhibit F.)

> 10.    *There Are No Alternative Mechanisms To Protect Jane's Confidentiality*

This Court previously found that there were no alternative procedures to protect Jane's confidentiality.  (ECF 12.)  Plaintiff also admits that there are no alternate mechanisms to protect Jane's confidentiality.  (ECF 2 at 9 ("The tenth and final factor examines 'whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality.'  [] There are none.").)

## B.    **The First Circuit's Decision In *MIT* Supports Continued Anonymity**

The *MIT* decision also provides strong persuasive authority for continued anonymity.

This case satisfies at least three of the four paradigmatic categories of cases to which the First Circuit held anonymity presumptively attaches.  *MIT*, 46 F.4th at 71–72.

First, Jane satisfies the "severe physical or mental harm" paradigm.  *Id.* at 71.  As noted above, that paradigm is based on *Sealed Plaintiff's* "risk of retaliatory physical or mental harm" factor.  *Id.*  There is no better example of such a situation than a college sexual assault case that has garnered media attention and polarized views on how or if colleges should handle these cases.

Second, anonymity is necessary to forestall a chilling effect.  *Id.*  The First Circuit noted that this paradigm occurs in sexual misconduct cases.  *Id.*  It is particularly strong where, as here, the party seeking anonymity is the victim of a sexual assault who has been dragged into Court because she reported the sexual assault.  The prospect of being "outed" in a civil lawsuit despite being protected in criminal and disciplinary proceedings would have a chilling effect on reporting.

Third, this case is "bound up with [multiple] prior proceeding[s] made confidential by law." *Id.* at 72. As the First Circuit noted, "courts cannot ignore the background confidentiality regime" mandated by FERPA and Title IX "in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. Connecticut General Statutes § 54-86e, which protected Jane during criminal proceedings, provides an additional layer of confidentiality on this case.

### C.    Public Policy Strongly Supports Continued Anonymity

Plaintiff sexually assaulted Jane. Jane had the courage to report that assault. Her name was protected during criminal and university proceedings by law. For Plaintiff to be able to "out" Jane against her will in a civil proceeding Jane has no choice but to be a part of sets bad policy. It will dissuade future reports and thereby undermine the policies the federal and State laws ensuring Jane's confidentiality seek to support. That is particularly true in this high-profile case.[5]

### D.    Plaintiff's Arguments Against Continued Anonymity Are Meritless

Plaintiff's arguments against anonymity ring hollow in light of his prior support for anonymity. They are meritless and reveal the vindictive motivation behind Plaintiff's Motion.

Plaintiff's principal argument is that Yale's confidentiality requirements do not apply. (Objection.) That argument misses the point. Jane is entitled to anonymity under the well-established law cited above regardless of Yale's policy. As the First Circuit recently noted in *MIT*, Yale's confidentiality requirements, which are dictated by federal law including FERPA and Title IX, "cannot [be] ignore[d]" by this Court and support anonymity. *MIT*, 46 F.4th at 76.

*MIT* also refutes Plaintiff's other primary argument: That Jane's reliance on FERPA "is misplaced." (Objection at 5.) Jane's reliance is not misplaced. Under precedent from the United States Court of Appeals for the First Circuit, FERPA and Title IX's confidentiality provisions, as

---

[5] These issues are in addition to many public policy concerns, such as the federalism concerns associated with this Court effectively undoing anonymity conferred upon the criminal trial in this case by State law.

well as other confidentiality provisions related to this case such as Connecticut General Statutes §

54-86e, presumptively entitle Jane to anonymity.  *MIT*, 46 F.4th at 72.

Plaintiff's arguments against anonymity also rest on a premise this Court just noted was

false.  Plaintiff claims that Jane is not a victim of sexual assault and is therefore not entitled to

anonymity, but the Court just rejected that exact contention.  At the March 18, 2024 hearing, Jane

noted that Plaintiff was not "vindicated" by his acquittal and this Court agreed:

> Mr. Sconzo:  I see an [e]merging notion in this case that [Plaintiff] was vindicated.
> [Plaintiff] was found "not guilty" in a criminal standard, in a criminal court.
> Nothing has been decided in a civil context, and I want to make that clear.
> [Plaintiff] was dismissed from Yale on a standard far different than a criminal
> process for rape, and he has not proven that [Jane] lied . . . .
>
> He's not be[en] vindicated of anything, Judge.  The only charge he's been absolved
> of by a jury is that the State did not prove beyond a reasonable doubt that he raped
> [Jane].  That is it.  The rest is yet to be determined.
>
> The Court:  All right.  *I agree*.  And I think that puts a finer point on the concerns
> that I have . . . .  Mr. Sconzo is correct.  This case is going to be decided on the
> basis of the allegations, presumably [by] a jury who will have to make a
> determination not beyond a reasonable doubt, but by a preponderance of the
> evidence whether or not it was a false accusation.

(Excerpts of March 18, 2024 Hearing 13:11–14:9 (emphasis added).)

Jane *is* a victim of sexual assault as determined by Yale.  Any suggestion that Plaintiff has

proven anything to the contrary is baseless, as just recognized by this Court.

Plaintiff cites no authority for his contention that only parties asserting claims may seek

anonymity (Objection at 7) and, as noted above, the law is contrary:  The case for anonymity is

stronger when the party seeking anonymity has been hauled into Court instead of having chosen

to initiate proceedings.  *E.g.*, *Smith*, 2019 WL 6337305, at *2 (distinguishing between situations

in which the party seeking anonymity "availed" him or herself of "the court by filing th[e] suit" or

"had nothing say in deciding whether or not to proceed with th[e] litigation.").

Plaintiff's argument that "anonymity defeats the purpose of deterring false claims" meanwhile has things backwards. (Objection at 7.) Weaponizing civil lawsuits to abuse victims of sexual assault by, among other things, revealing the names of those victims even though those names have been protected by law in all other proceedings is the appropriate public policy concern because doing that discourages reporting. *E.g.*, *Baram*, 2021 WL 3423595, at *3 ("[T]he public has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." (alterations omitted) (quoting *Kolko*, 242 F.R.D. at 195)). Jane's claim was not false, but if Plaintiff, who seeks $110,000,000, somehow fools a trier into concluding it was, a monetary award and the abuse that Plaintiff has put her through is more than adequate deterrence for future false claims. Jane's real name is besides the point.

One final point regarding Plaintiff's Motion deserves mention. It is motivated by an improper purpose: To abuse Jane. Plaintiff previously acknowledged that Jane was entitled to anonymity. He admitted this case "involves matters of a highly sensitive and personal nature." (ECF 2 at 5.) He admitted that anonymity was necessary to protect Jane from a "public pillorying." He chose to move to revoke Jane's anonymity anyway, knowing full well the harm that it would cause Jane. His own attorney admits that Plaintiff's "plan" is to misuse this case to abuse Jane. (Excerpts of March 18, 2024 Hearing 11:8–10 ("I think he wants [Jane] to feel what he felt. What it was to have every publication that reports on things like that, like *Time Magazine* reported him to be a rapist . . . .").) Plaintiff's Motion should be denied for that reason alone.

Regardless, Plaintiff's arguments are meritless and should be rejected.

### E.    The Court Should Continue Jane's Anonymity

In sum, the *Sealed Plaintiff* factors overwhelmingly support anonymity. Plaintiff previously admitted as much. (ECF 2.) Persuasive authority from the First Circuit strongly

supports anonymity.  Cases such as this are the prototypical case for anonymity.  *E.g.*, *Kolko*, 242 F.R.D. at 195.  The Court should therefore continue Jane's anonymity.

**F.      The Court Should Expressly Preclude Plaintiff From Disclosing Jane's Name**

The Court's Order continuing anonymity should explicitly note—as the Court's recent Order regarding anonymity does (ECF 91) and consistent with the Parties' (including Plaintiff's) understanding of the Court's original Order—that Plaintiff cannot disclose Jane's name.

To be meaningful, Jane's anonymity must preclude Plaintiff from disclosing Jane's name within and outside of this litigation.  The many Courts cited above that have explicitly or implicitly precluded dissemination of the name of a party entitled to anonymity have recognized that fact.

This case demonstrates why.  Plaintiff has already posted on social media an excerpt of the Second Circuit's ruling in this case.  That posting includes the docket number for the appeal in this case and the citation to the Connecticut Supreme Court's published decision in this case:

 Saifullah Khan ✔ @Saif__khan · Oct 25
60 days to Christmas, and the Second Circuit has given us the gift of justice. In the spirit of truth, 'Jane Doe' will soon have a name. 🎁
#TruthPrevails #CountdownToChristmas

 KC Johnson @kcjohnson9 · Oct 25
Just in: In light of CT Supreme Court decision in @Yale acc'd student case, CA2 allows student's defamation and tortious interference claims against accuser to move forward (confined to statements accuser made at expulsion hearing).

our certified questions in this case, *see Khan v. Yale University*, 347 Conn. 1, 295 A.3d 855 (2023), we conclude that Khan's state-law claims against Doe for defamation and tortious interference with contract should not have been dismissed insofar as they are based on Doe's 2018 statements at a Yale UWC hearing because,

a.  that hearing lacked the procedural safeguards necessary to qualify as a quasi-judicial proceeding and, therefore, Doe is not shielded by absolute immunity for her hearing statements; and

b.  although qualified immunity is available to participants in university and college sexual

31

Case 21-95, Document 99-1, 10/25/2023, 3584364, Page32 of 32

assault proceedings, Khan's complaint sufficiently pleads the malice required to defeat such immunity at this stage of the case.

2.  Insofar as Khan bases his tortious interference claim on Doe's 2015 statements, the claim was properly dismissed as untimely because it falls outside the relevant three-year statute of repose and Khan fails adequately to plead a continuing course of conduct by Doe that would toll

If Plaintiff maintained a post containing Jane's real name in the same thread as the docket number for this case, an excerpt of the Second Circuit decision in this case, and the reporter citation for the Connecticut Supreme Court's decision in this case, Jane's anonymity becomes useless. Readers of decisions and filings in this case will know who every reference to "Jane Doe" is in all of those filings and decisions, portions of which are right before their eyes because they have been posted, along with information about how to find more information about this case, next to Jane's real name.  The posting of the docket number and reporter information ensures that readers of posts

28

will have easy means to access the full docket and published decisions in this case. Jane Doe might as well not have anonymity if Plaintiff can post filings and decisions from this case along with her real name and then direct readers of Jane's name to the entire docket.[6]

Plaintiff's own actions establish that anonymity is only worthwhile it if actually protects the disclosure of the party's name. Plaintiff could have sought anonymity in this case. Many of the cases cited above confer anonymity on plaintiffs accused of sexual misconduct who sue colleges or universities. *E.g.*, *Colgate*, 2016 WL 1448829, at *1. Plaintiff did not seek anonymity because there was no point to it: His name was already widely disseminated.[7]

Most importantly, when Plaintiff sought anonymity for Jane, he admitted that anonymity was necessary to protect Jane from a "public pillorying" (*e.g.*, the death threats, abuse, and harassment that Plaintiff claims to have been subjected to because his name is associated with this case). (ECF 2 at 8.) That is one of the primary purposes of anonymity (according to Plaintiff himself). That purpose is frustrated if anonymity is riddled with loopholes allowing dissemination of Jane's name. The other purposes of anonymity in this case include not allowing Plaintiff to misuse this Court's process to abuse and harass Jane by, for example, obtaining highly sensitive and personal information through discovery, putting that information on the docket or elsewhere, and then letting everyone know who that information is about by revealing Jane's name. The Court cannot allow its process to be abused for the improper purpose of attacking Jane. An Order precluding dissemination of Jane's name is necessary to prevent such abuse.

---

[6] That is worse than Jane's actual name appearing on the Court's docket. Individuals must create a PACER account, search out this case, and potentially pay money to see information about Jane if her name only appears on the docket. They don't have to do anything other than check social media if Plaintiff can disseminate her name there.

[7] To the extent that Plaintiff decided to proceed under his own name because he wants his name out there, that is a choice he made that has no bearing on Jane's entitlement to anonymity.

The Court should also preclude Plaintiff from disseminating Jane's name as a sanction for Plaintiff's misconduct and/or in order to ensure that Plaintiff does not misuse this Court's process to abuse and harass Jane.[8]  This Court just expressed its "concern" that Plaintiff's misconduct in this case evidences an intent to misuse this case to "exact retribution" on Jane.  (Excerpts of March 18, 2024 Hearing 8:23–9:9; 19:1–5.)  When this Court asked Plaintiff's counsel what Plaintiff's plan is, counsel admitted the plan is to misuse this case to abuse Jane.  (Excerpts of March 18, 2024 Hearing 11:8–10 ("I think he wants [Jane] to feel what he felt.  What it was to have every publication that reports on things like that, like *Time Magazine* reported him to be a rapist . . . .").)  Plaintiff's actions in this case, including needlessly attacking Jane as "trashy," etc. in an Objection to a Rule 12(b)(6) motion and making similarly abusive comments in other briefing establish that allowing Plaintiff to disclose Jane's name will enable Plaintiff to weaponize his attacks on Jane in this case by associating Jane's real name with his statements in this case.

To have any practical effect, anonymity cannot end at the Court's door.

This Court should therefore issue the following Order:

Plaintiff shall not identify Jane Doe in any social media communication or elsewhere.  Plaintiff's claims will be dismissed with prejudice if he identifies Jane.

That Order is consistent with the Court's most recent anonymity Order.  (ECF 91 ("Plaintiff shall not identify Jane Doe in any social media communication or elsewhere.").)  That Order is also consistent with the Parties' understanding—including Plaintiff's understanding (see the videos of Plaintiff acknowledging he could not reveal Jane's name)—of the Court's original anonymity Order (ECF 12).  Moreover, that Order is consistent with the Ninth Circuit's instruction that District Courts "should use [their] powers to . . . issue protective orders limiting disclosure of

---

[8] As Plaintiff just conceded and as is well-established:  "[T]here is inherent authority for [C]ourts to regulate the conduct of trial participants."  (Excerpts of March 18, 2024 Hearing 15:24–25.)  *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 389 (2d Cir. 1985) (discussing "power to regulate the conduct of the parties").

the party's name . . . to preserve the party's anonymity to the greatest extent possible." *Advanced Textile Corp.*, 214 F.3d at 1069.  It is also consistent with the many cases within this Circuit and District cited above that have precluded disclosure of the Plaintiff's name.  *See supra*.

The warning that Plaintiff's claims will be dismissed if he violates the Court's Order is necessary in light of Plaintiff's prior misconduct and the Court's well-founded concerns that Plaintiff intends to misuse this Court's process to abuse Jane.  (*See supra*.)

The Order Jane requests is not a "prior restraint."  Jane does not seek to prohibit Plaintiff from talking about the substance of the underlying events.  She seeks to prohibit him from disclosing her name.  Plaintiff is free to tell his "story" as he has been doing for many months. Scores of Courts in this Circuit and District and beyond—including the many cases cited above have done exactly what this Court has already done in this case (ECF 91)—preclude Plaintiff from identifying Jane so that her anonymity is meaningful.  *See* case cited *supra*.  The Ninth Circuit has held that Courts should do what Jane is asking this Court to do.  *Advanced Textile Corp.*, 214 F.3d at 1069.  The sole case that Jane is aware of that analyzes whether a request such as Jane's is a "prior restraint" held that it is *not*.  *Francis*, 2011 WL 809610, at *1.  *Francis*' distinction between orders that restrict parties, who the Court has inherent power to regulate, and the press is supported by binding Second Circuit precedent, *Application of Dow Jones & Co. Inc.*, 842 F.2d at 608, 612 (discussing distinction and approving of avoiding "prior restraint" problems by regulating counsel rather than attempting to impose orders upon press).  Notably, *Application of Dow Jones & Co. Inc.* approved a restriction that Jane does not even seek by affirming an order that prohibited the parties from talking substantively about the case.  *Id.* at 605–06.

## V.     CONCLUSION

The Court should grant Jane's Motion and continue Jane's anonymity by ordering that:

Plaintiff shall not identify Jane Doe in any social media communication or elsewhere.  Plaintiff's claims will be dismissed with prejudice if he identifies Jane.

The Court should deny Plaintiff's Motion to Vacate.


                                   DEFENDANT JANE DOE,

                            By:    */s/ Brendan N. Gooley*
                                   James M. Sconzo (ct04571)
                                   Brendan N. Gooley (ct30584)
                                   CARLTON FIELDS, P.A.
                                   One State Street, Suite 1800
                                   Hartford, CT  06103
                                   Tel.: 860-392-5000
                                   Fax: 860-392-5058
                                   Email: jsconzo@carltonfields.com
                                          bgooley@carltonfields.com

                                   Her Attorneys

**<u>CERTIFICATION OF SERVICE</u>**

This is to certify that on this 5th day of April 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.


<u>      /s/Brendan N. Gooley          </u>
Brendan N. Gooley