# **EXHIBIT G**

## Maria L. Laurato

| | |
|---|---|
| **From:** | Giovanna Tiberii Weller |
| **Sent:** | Monday, August 5, 2024 1:59 PM |
| **To:** | Alex Taubes |
| **Cc:** | Patrick M. Noonan; Brendan Gooley (bgooley@carltonfields.com); James M. Sconzo (jsconzo@carltonfields.com); Maria L. Laurato; Barbara D. Flanigan |
| **Subject:** | RE: FW: [EXTERNAL] Re: Yale/Kahn - Meet and Confer Notes |

Alex,

Thank you for your response. I agree that we have strived to work together in a constructive and good faith manner. Based on your response, however, I remain convinced there is no middle ground from your overly broad/unduly burdensome proposal.

Before addressing the substance of your response, it may be helpful to review how we arrived at this juncture. Yale provided interrogatory responses and hundreds of pages of documents in 2020, before this case was stayed. Plaintiff then served additional discovery requests on Yale on May 9, 2024. The written discovery you served Yale on May 9 were, among many other things, more than three months late under the Court's order on pretrial deadlines and brought the interrogatories beyond the 25-interrogatory limit. On June 6, Yale provided its general and specific objections to the written discovery. In response, you framed this as Yale not being amenable to producing a single document, a stance we never took. We agreed to a meet and confer, which was originally scheduled for June 21. At your request, we rescheduled the meeting to July 10. During the meeting, I asked if you would like to discuss the categories of documents you needed instead of going through each/every one of your untimely 83 requests for production. You agreed, and together we decided to exchange ESI proposals and meet again on August 8. You should recall that I specifically asked you to send something reasonable so that we could arrive at a workable solution.

Contrary to your assertion below, at no time has Yale "short-circuited" an agreed-upon process or "failed to fully engage." As I have repeatedly stated, you were expected to provide a reasonable proposal. You did not. No amount of back and forth on each of the 560+ search terms or the 380+ custodians will change that fact. The best analogy I can provide is if we were at a settlement conference on a slip and fall case, and you demanded a billion dollars. Under that scenario, there is no "middle ground" and no obligation to counter. Instead, the settlement conference would come to an abrupt end or you would be asked to come back with a reasonable demand.

Next, there has never been an understanding that we would engage in "proposals and counterproposals to gradually narrow the gaps between our positions." We agreed that you would make a reasonable proposal, I would make a reasonable counter, and we would have a final discussion at the August 8th meet and confer. That's it. We also agreed that Yale was not waiving any of its objections, and that you could move to compel production of your untimely written discovery. Expecting Yale to engage in multiple rounds of counterproposals to gradually narrow the gaps is in itself unreasonable and unduly burdensome, especially given where you have started (i.e., hundreds of terms and custodians). Regardless, engaging in rounds of counterproposals is not something we discussed or agreed-upon.

At your request, I provided you with additional examples of specific concerns I have with your proposal, which is overly broad on its face. While I appreciate your thorough response, you have not conceded the ridiculousness of *any* of the search terms, including beer and Nazi. Instead, you doubled-down and attempted to explain their relevance. This informs me that you will attempt to rationalize each and every other term and custodian. Given this, your request for even more examples of our concerns is unwarranted and will not be accommodated.

Finally, I have searched caselaw for guidance. While not an exhaustive search, I have not found support for such a broad ESI proposal. In *Strauch v. Computer Sciences Corp.*, 3:14 CV 956 (JBA), 2015 WL 7458506 (D. Conn. Nov. 24, 2015), a case involving "1,047 opt-in plaintiffs, potentially hundreds more as class members in the four states of Connecticut, California, North Carolina and Missouri, and a possible verdict in eight or nine digits if plaintiffs are successful . . ." the court rejected the plaintiffs' 103

1

proposed search terms and instead ordered that the defendant's ESI search would consist of the limited search terms proposed by the defendant and be applied to the files of eight custodians. *Id.* at *3.

In *Webasto Thermo & Comfort N.A., Inc. v. BesTop, Inc.*, 326 F.R.D. 465 (E.D. Mich. 2018), a patent case, the court entered a stipulated order governing ESI that limited production to eight custodians, with the parties to propound ten search terms for each individual. In response to the defendant "propounding overly broad search terms in its request for ESI," the plaintiff filed an emergency motion for protective order seeking to "spar[e] [it] from unduly burdensome email discovery, until such time as [defendant] propounds reasonable email search requests containing appropriate narrowing criteria." *Id.*, at 466. The court found that the "majority" of defendant's search terms were overly broad, and with respect to defendant's proposed terms such as "top," "fabric" and "sale", that the overbreadth was "obvious, especially in relation to a company that manufactures and sells convertible tops." The court granted the plaintiff's motion for protective order based upon, among other things, "the obviously impermissible breadth of [defendant's] search terms . . ." and ordered the parties to focus and narrow defendant's search terms to reasonably limit plaintiff's production of ESI to emails relevant (within the meaning of Rule 26) to the issues in the case.

If you would like to continue to work on a possible ESI search in lieu of having the court rule on the objections to your May 8th written discovery, please provide me with a revised, reasonable proposal that is narrowly tailored to comport with the federal rules, the caselaw, the allegations, and our reasonable expectations. If reasonable on its face, I will provide a reasonable counter proposal. I will send in a separate email the production you have acknowledged is owed and outstanding, but still have not produced.

Best, Giovanna


**From:** Alex Taubes <alextt@gmail.com>
**Sent:** Thursday, August 1, 2024 12:43 PM
**To:** Giovanna Tiberii Weller <GWeller@carmodylaw.com>
**Cc:** Patrick M. Noonan <PNoonan@carmodylaw.com>; Brendan Gooley (bgooley@carltonfields.com) <BGooley@carltonfields.com>; James M. Sconzo (jsconzo@carltonfields.com) <JSconzo@carltonfields.com>; Mario Cerame <mcerame@brignole.com>; Maria L. Laurato <MLaurato@carmodylaw.com>; Barbara D. Flanigan <BFlanigan@carmodylaw.com>; Colleen Noonan Davis <CDavis@carmodylaw.com>
**Subject:** Re: FW: [EXTERNAL] Re: Yale/Kahn - Meet and Confer Notes

Dear Giovanna,

Thank you for your thoughtful and detailed response. I appreciate you providing additional concrete examples of your concerns with our ESI proposal. I also want to express my condolences for your loss and understand your unavailability this Friday due to the wake. Given your substantive engagement on these issues and our scheduled meet and confer on August 8, I agree that there is no need to move up the timeline. We can stick with our original plan and use the intervening time productively.

Before addressing the specific issues you raised, I feel compelled to revisit your assertion that there is no middle ground to be found. With all due respect, I still believe this conclusion is premature and unfounded, particularly given Yale's failure to fully engage in the agreed-upon process. The purpose of exchanging proposals and counterproposals is to gradually narrow the gaps between our positions and find a mutually acceptable solution. By refusing to provide a counterproposal, Yale is short-circuiting a process we agreed on and denying us the opportunity to find a reasonable compromise.

I remain confident that if Yale were to offer a good faith counterproposal, as promised, we could make meaningful progress towards resolving our differences. It is only through this iterative process that we can truly assess whether a middle ground exists. I strongly urge Yale to reconsider its stance and engage fully in the collaborative process rather than reneging on its commitments.

Regarding the specific issues you raised, I want to clarify a few points:

The Yale general counsel were directly involved in Mr. Khan's case, including giving directives related to contacting Mr. Khan's parents, directing Yale police actions, discussing the case with Mr. Khan's benefactors, and attempting to convince Mr. Khan to take a voluntary withdrawal. These actions go beyond attorney-client privilege. Counsel also interacted with the BBC. With the general counsel's emails, the goal was to capture any relevant legal discussions or opinions related to Mr. Khan's case that are non-privileged, not to burden Yale or to seek privileged information. Nothing about such a request indicates bad faith.

The ESI request for Jane Doe and her family is aimed at discovering who Jane Doe discussed the case with immediately after reporting, as indicated in her own statements. It is not directed at Yale, but at Jane Doe. Obviously, to the extent that Yale has no control or custody of a custodian's ESI, that simply ends the matter with regard to a request directed at Yale. I doubt that will be a point of contention if we proceed with a process as we previously agreed to seriously meet and confer regarding these issues.

As for the UWC members, many UWC members were directly involved in Mr. Khan's case, and some were not even disclosed as potential panelists. Mr. Khan had contact and friendships with some members, and Jane Doe was close with others. The case was widely discussed at Yale, and we need to understand these communications, especially given the intense campus pressure and a petition against Mr. Khan that garnered over 100,000 signatures. The inclusion of judges, lawyers, and defendants from other lawsuits in the search terms was based on the possibility that their names might have come up in relevant discussions or communications within Yale.

Terms like "Nazi" are relevant because they were used by Yale's counsel in relation to Mr. Khan allegedly opening up to fringe groups. Most of the search terms, such as "Afghan," "beer," and "rum and coke," come directly from the trial transcript and are pertinent to the case.

I understand that you have concerns about overbreadth, proportionality, focus on matters directly involved in Mr. Khan's case, and the likelihood of search terms to generate significant noise, especially across a broad group of custodians. I am open to revisiting the application of certain search terms to certain custodians during certain date ranges to accommodate those concerns. We are willing to work with Yale to tighten the timeline or remove overly broad terms. Yale should provide specific complaints about what is unacceptable and what is not, and we can provide a rationale or adjust accordingly. Alternatively, Yale could provide a substantial portion of documents based on terms it finds acceptable, and we can send refined terms for subsequent rounds, while reserving all rights with regard to our position. Yale's categorical refusal to produce any additional documents beyond what was produced in 2020, unless Mr. Khan unilaterally changes his position without any counterproposal from Yale, is unreasonable.

Our perspective is that the case warrants a comprehensive approach to discovery. I have been responsive to all of your requests in order to keep the ball rolling. I am committed to working with you to find solutions. In preparation for our August 8 discussion, I will carefully consider the points you have raised. Nothing you have raised in any way indicates to me any bad faith. I think you know I have continued to act in good faith throughout these proceedings in my dealings with you and Attorney Gooley.

My aim is to have a productive meeting on August 8 and reach an agreement that addresses your concerns while still ensuring that we can obtain the discovery necessary to fairly represent our client. To do so effectively, however, we request that Yale participate in the process as agreed to during our last meet and confer, instead of standing on a categorical objection to producing any additional documents. We therefore reiterate for a final time that Yale provide a counterproposal, at some point prior to our meeting.

Thank you for your constructive engagement on these issues. I look forward to continuing our good faith efforts to resolve this dispute.

Sincerely,
Alex

On Thu, Aug 1, 2024 at 12:01 PM Giovanna Tiberii Weller <GWeller@carmodylaw.com> wrote:

Dear Alex,

I have already provided in very broad strokes several major issues with your ESI proposal. However, you have not addressed the concerns I raised. You have not addressed why you need to include federal judges (inc. Judge Dooley), state judges (inc. Chief Justice Robinson), and lawyers (inc. Norm Pattis) in the search terms. You have not addressed the impropriety of searching the names of the defendants in other lawsuits you have filed. Here are some additional examples, but this is also a non-exhaustive list. First, I do not understand why an experienced attorney would request a search of the general counsel's emails for any search term, let alone for terms such as "exhibit," "evidence," "lawsuit," "defendant," and "legal opinion." I do not know why you believe that Yale would have access to ESI of Jane Doe's family members. I cannot see the necessity for searching the ESI of numerous UWC members, the majority of whom were not involved in Mr. Khan's UWC case, for terms as broad as "UWC" and "University Wide Committee." And I cannot comprehend the need for many search terms, including "Nazi," "porn," "cigar," and "beer". Even searching the word "beer," particularly across 380+ custodians over a 12 year period on a college campus, is itself absurd. The inclusion of such search terms demonstrates that this proposal is both unworkable and not a serious attempt at reaching a resolution of discovery disputes.

Moreover, you say (below) that my concern about not seeing a middle ground is "premature and unfounded." You respond to my concern about 560+ search terms by saying they are all somehow necessary given what you perceive to be the complexity of the case. You further say that comparisons to high-profile individuals like OJ Simpson and Keven Spacey are "directly relevant" to Mr. Khan's case, and that "each [search] term can be justified individually and collectively." As discussed above, I disagree that each term "can be justified individually and collectively." I disagree that this case is so complex as to warrant hundreds of custodians. My concern that we are unable to find middle ground, therefore, is neither "premature [nor] unfounded." Your request is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Finally, I take my duty to cooperate in discovery seriously. I have worked diligently with you to try to resolve our outstanding discovery disputes. I note that the Yale Defendants responded to discovery in 2020, while the plaintiff did not. I reiterate my offer to consider a more measured, reasonable ESI proposal if you wish to provide one. I further reiterate my willingness to discuss your ESI proposal at the meet and confer we have scheduled for August 8. I do not understand the need to move the meet and confer to this week when my response to your ESI proposal was not due until next week under the deadlines you proposed. Regardless, I am not available for a meet and confer today or Friday. I note, among other commitments, I will be attending the wake on Friday afternoon.

I trust this provides you with the additional information you requested. I look forward to receiving a reasonable ESI proposal from you.

Regards, Giovanna

4

**From:** Alex Taubes <alextt@gmail.com>
**Sent:** Wednesday, July 31, 2024 3:56 PM
**To:** Giovanna Tiberii Weller <GWeller@carmodylaw.com>
**Cc:** Brendan Gooley (bgooley@carltonfields.com) <bgooley@carltonfields.com>; James M. Sconzo (jsconzo@carltonfields.com) <jsconzo@carltonfields.com>; Mario Cerame <mcerame@brignole.com>; Patrick M. Noonan <PNoonan@carmodylaw.com>; Barbara D. Flanigan <BFlanigan@carmodylaw.com>; Colleen Noonan Davis <CDavis@carmodylaw.com>
**Subject:** Re: [EXTERNAL] Re: Yale/Kahn - Meet and Confer Notes

Dear Giovanna,

I appreciate your prompt response, but respectfully disagree with your characterization of our proposal as lacking good faith. The number of custodians and search terms reflects the broad scope and complexity of this case, which involves significant issues and numerous witnesses. It is not unusual for cases of this nature to require extensive discovery. It cannot be that Yale objects to all of the terms, custodians, and dates we propose.

Your assertion that there is no middle ground is premature and unfounded, as you have not engaged in the agreed-upon process. Many of the proposed custodians, such as the Yale Daily News journalists and Yale students, used Yale email addresses during the time period in question and are therefore under Yale's control for discovery purposes.

As for the search terms, while numerous, they are directly relevant to Mr. Khan's case, which was heavily influenced by the #MeToo era and featured many comparisons to high-profile individuals like OJ Simpson and Kevin Spacey. Each term can be justified individually and collectively.

Given the new information you provided about Yale's control over certain records, and our differences of opinion on the scope and breadth of discovery in this case, we are of course willing to review and refine our proposal in good faith. However, we cannot do so effectively without specific feedback from Yale. A counterproposal from Yale, even if not fully acceptable to us, would provide a starting point for further discussion and compromise. At the very least, specific concerns with custodians, groups of custodians, search terms, and a counterproposal regarding dates is required for a discussion to occur.

I reiterate my request for a meet and confer by this **Friday, August 2,** to discuss Yale's specific concerns with our proposal. At a minimum, we expect Yale to provide more detailed objections to custodians (or categories of custodians), a proposed date range, and proposed search terms. If Yale remains unwilling to meaningfully engage in this process, we will have no choice but to seek court intervention by next Monday, based on the concerns I initially raised with you by email on June 6, which I believed were resolved on July 17.

Regarding the discovery efforts so far, as I mentioned, we have produced over 10,000 pages since my appearance in this case, which followed shortly after Yale filed its answer. In contrast, Yale has produced merely 400 pages, and 0 since my appearance. We are happy to discuss our respective production obligations further, but Yale must participate in good faith.

I hope we can engage in the cooperative dialogue required by the rules and work together to resolve this dispute without burdening the court. Please confirm your availability for a meet and confer by this Friday.

Sincerely,

Alex


On Wed, Jul 31, 2024 at 3:35 PM Giovanna Tiberii Weller <GWeller@carmodylaw.com> wrote:

5

Dear Alex,

Your disappointment is a surprise given your acknowledgement that 380+ custodians is a lot. Regardless, my agreement to try to resolve this through a mutually-agreed upon ESI search was premised on receiving a good faith proposal from you. Your proposal is unworkable and, given the hundreds of custodians and the search terms, I question whether it was a good faith effort to resolve any dispute. The proposal allows for no middle ground, and I believe presenting you with a counter-proposal would only be a waste of our time.

The only possible option I see short of standing on our objections is for you to present a revised, reasonable and good faith list within the next week, by **August 7**. Please let me know.

Best, Giovanna

**From:** Alex Taubes <alextt@gmail.com>
**Sent:** Wednesday, July 31, 2024 3:09 PM
**To:** Giovanna Tiberii Weller <GWeller@carmodylaw.com>
**Cc:** Brendan Gooley (bgooley@carltonfields.com) <bgooley@carltonfields.com>; James M. Sconzo (jsconzo@carltonfields.com) <jsconzo@carltonfields.com>; Mario Cerame <mcerame@brignole.com>; Patrick M. Noonan <PNoonan@carmodylaw.com>
**Subject:** Re: [EXTERNAL] Re: Yale/Kahn - Meet and Confer Notes

Dear Giovanna,

I am deeply disappointed by your email indicating that Yale is reneging on our agreed-upon process for resolving the discovery dispute. After much delay on Yale's part, which itself undermines the spirit of a timeliness objection, we finally had a productive meet and confer on July 17 where you explicitly agreed to a proposal for exchanging ESI custodians, search terms, and date ranges. The understanding was that we would send an initial proposal, to which Yale would respond with a counterproposal. It was never expected that Yale would agree to our first proposal in its entirety.

Your claims that our proposed custodians and search terms are unworkable and disproportionate rely on new information about Yale's control over certain individuals' records. We have no ability to properly narrow our requests without a counterproposal from Yale. Simply refusing to engage further and standing on your initial objections is not a good faith effort to meet and confer.

Moreover, the discovery efforts so far have been entirely one-sided, during my short time with an appearance in this case, which came shortly after Yale filed its operative answer in this case. We have produced over 10,000 pages in discovery, while Yale, a large institution with vast records, has produced a mere approximately 400 pages. We cannot agree to another meet and confer that focuses solely on our production obligations while Yale stonewalls on its own.

6

Therefore, I request that we have an immediate meet and confer, no later than August 2, specifically on Yale's refusal to produce any additional discovery. If we cannot reach a resolution, I intend to promptly bring this issue before the court, as I suggested back on June 6th when I first attempted to meet and confer on your client's blanket refusal based on alleged untimeliness, which you agreed to look past during our last meet and confer on July 17.

Please let me know your availability for a meet and confer within the next few days. I hope we can engage in a cooperative dialogue as required by the rules, rather than forcing unnecessary motion practice.

Sincerely,

Attorney Alex Taubes


On Wed, Jul 31, 2024 at 12:26 PM Giovanna Tiberii Weller <GWeller@carmodylaw.com> wrote:

Alex,

I hope you had a restful vacation last week.

I have reviewed your ESI proposal. The idea behind it was an attempt to resolve Yale's objections to your untimely written discovery. At the July 10th meet and confer, I asked you to send an ESI proposal addressing what you saw as essential to the plaintiff's case. I left the meeting hopeful that we would find common ground.

What you sent, however, is unworkable and not proportional to the needs of the case. Your proposal has over 380 custodians, over 560 independent search terms, and covers a twelve-year period. The majority of the "custodians" are not subject to Yale's control because they are students, including student journalists. Some custodians appear to be Jane Doe's family members. The search terms include state and federal court judges, lawyers, and Hollywood actors. You also include as search terms the names of defendants in a lawsuit you filed in state court on behalf of Mr. Khan. There are numerous other improper custodians and search terms. Suffice to say this is not a serious effort to cooperate on discovery. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (finding that the plaintiff's "demand for ESI discovery from 33 custodians is not proportional to the needs of this case" and holding that the plaintiff "may obtain custodial ESI discovery from no more than 10 [of defendant's] custodians").

At this juncture, Yale will stand on its objections to your untimely written discovery. I propose we keep our second meet and confer, which is scheduled for August 8. We can address any remaining discovery issues, such as the status of what you have agreed to produce, including (without limitation), the exhibits from the criminal trial, text messages, updated information on the healthcare providers, that I have yet to receive.

Regards, Giovanna

7

**From:** Alex Taubes <alextt@gmail.com>
**Sent:** Monday, July 22, 2024 5:18 PM
**To:** Giovanna Tiberii Weller <GWeller@carmodylaw.com>
**Cc:** Brendan Gooley (bgooley@carltonfields.com) <bgooley@carltonfields.com>; James M. Sconzo (jsconzo@carltonfields.com) <jsconzo@carltonfields.com>; Mario Cerame <mcerame@brignole.com>; Patrick M. Noonan <PNoonan@carmodylaw.com>
**Subject:** Re: [EXTERNAL] Re: Yale/Kahn - Meet and Confer Notes

Thank you.

Attached is our list of custodians and search terms. We propose a time period of 9/1/2012 to the present.

Regards,

Attorney Alex Taubes

On Fri, Jul 19, 2024 at 2:41 PM Giovanna Tiberii Weller <GWeller@carmodylaw.com> wrote:

Alex, I consent to your adjusted proposal.

Giovanna

**Giovanna Tiberii Weller** | Bio
**Carmody Torrance Sandak & Hennessey LLP**
195 Church Street | New Haven, CT 06510
Direct: 203-575-2651 | Fax: 203-784-3199
GWeller@carmodylaw.com | www.carmodylaw.com
Pronouns: she, her, hers

On Jul 19, 2024, at 2:38 PM, Alex Taubes <alextt@gmail.com> wrote:

Dear Counsel,

8

I am writing to follow up on our meet and confer discussion from July 10, 2024 regarding the ESI protocol. Per our agreement, I was to provide Plaintiff Saifullah Khan's proposed ESI custodians, date ranges, and search terms to Yale and Jane Doe by today, July 19.

In reviewing the matter further with my client, I believe a few additional days would be beneficial to fully develop our ESI proposal. As such, I respectfully request your consent to extend the deadline for Plaintiff to provide his ESI lists from July 19 to Monday, July 22. This brief extension will allow us to thoughtfully consider the relevant custodians, date ranges, and search terms.

If you are amenable to this adjustment, I propose a corresponding extension for Yale and Jane Doe to provide their response, moving that date from August 2 to August 5. We would still plan to meet and confer to discuss any areas of disagreement on August 8 at 2:00pm at the Carmody office in New Haven, as previously scheduled.

Please let me know if you consent to this slight modification of the ESI exchange deadlines. I appreciate your anticipated courtesy and cooperation as we work to find a mutually agreeable approach to ESI discovery in this matter.

Best regards,

Attorney Alexander Taubes

On Wed, Jul 10, 2024 at 5:30 PM Giovanna Tiberii Weller <GWeller@carmodylaw.com> wrote:

All,

Thanks for a productive meet/confer meeting today. I attach a copy of the notes Jennifer has taken to memorialize our discussions. If you see anything that does not comport with your understanding of our discussions, please let me know as soon as possible. Happy to discuss further.

Once again, thanks for coming to our office in New Haven for a productive meeting.

Best, Giovanna

9

**Giovanna Tiberii Weller** | Bio
**Carmody Torrance Sandak & Hennessey LLP**
195 Church Street | New Haven, CT 06510
Direct: 203-575-2651 | Fax: 203-784-3199
GWeller@carmodylaw.com | www.carmodylaw.com
Preferred Pronouns: she, her, hers

This electronic message contains information from Carmody Torrance Sandak & Hennessey LLP, or its attorneys, which may be confidential, privileged or otherwise protected from disclosure. The information is intended to be used solely by the recipient(s) named. If you are not an intended recipient, be aware that any review, disclosure, copying, distribution or use of this transmission or its contents is prohibited. If you have received this transmission in error, please notify us immediately at 203-573-1200 or at the reply email address. For more information about Carmody Torrance Sandak & Hennessey LLP, please go to http://www.carmodylaw.com

--

**Alexander T. Taubes**

470 James Street, Suite 007

New Haven, CT 06513

(203) 909-0048 » **alextt@gmail.com** » taubeslaw.com

*My emails' contents are confidential. If you received this email by accident, please let me know and then delete it. Thank you.*

--

**Alexander T. Taubes**

470 James Street, Suite 007

New Haven, CT 06513

(203) 909-0048 » **alextt@gmail.com** » taubeslaw.com

*My emails' contents are confidential. If you received this email by accident, please let me know and then delete it. Thank you.*

--

**Alexander T. Taubes**

470 James Street, Suite 007

New Haven, CT 06513

(203) 909-0048 » **alextt@gmail.com** » taubeslaw.com

*My emails' contents are confidential. If you received this email by accident, please let me know and then delete it. Thank you.*