UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
|    Defendants. | : | MAY 7, 2025 |

**DEFENDANT JANE DOE'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Jane Doe ("Jane") respectfully objects to Plaintiff's Motion to Compel (ECF 294 ("Motion")). The Court should deny Plaintiff's Motion for the reasons set forth in the Yale Defendants' Objection to Plaintiff's Motion, which Jane adopts, and for the reasons set forth below. Jane objects to Plaintiff's Motion on the ground and to the extent that it unnecessarily infringes on her rights, including her privacy interests. *See, e.g.*, *Chem. Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993) (parties have standing to challenge discovery sought from others that implicates their personal rights or privilege, including but not limited to their privacy interests).

**I.     RELEVANT BACKGROUND**

The Court has previously commented on Plaintiff "misusing and arguably abusing and manipulating our civil justice system to his own ends," (ECF 200 at 7:6–7), engaging in actions where "there is a sense of an intent to intimidate" and "harass" Jane, (ECF 119 at 5 (quoting ECF 94 at 9:1–9), being more interested in "litigat[ing] this case on social media and inflict[ing] harm on Jane Doe outside of the judicial process" than litigating this case in this Court (*e.g.*, ECF 119 at 8 n.4), and otherwise engaging in "egregious" behavior, largely related to Jane, (*e.g.*, ECF 265 at 14). Plaintiff's actions and the Court's conclusions about those actions have important implications for the discovery process. In addition to the Court's normal role of determining relevancy, overbreadth, etc., the Court must also ensure that Plaintiff is not allowed to further

abuse Jane through the discovery process by, for example, obtaining and disseminating sensitive information that is tangentially relevant and not proportional to the claims in this case. These concerns are paramount because the Court has already found that Plaintiff violated the Orders protecting Jane's name. (ECF 265 at 14 (calling Plaintiff's argument to the contrary "utterly specious").) The Court must assume that Plaintiff will disseminate whatever information he gets access to regardless of the Court's Orders. Put differently, given that Plaintiff violated this Court's Orders regarding Jane's name, the Court must assume that Plaintiff will violate the Protective Order by, for example, disclosing information in documents subject to the Protective Order conveyed to him by his attorneys even if he does not have access to the documents. (ECF 197.)

## II. JANE'S COUNSELING RECORDS ARE PRIVILEGED

If the Court decides not to deny Plaintiff's Motion outright (*see* Yale's Objection), it should deny Plaintiff's request for "[a]ll records of Jane Doe's counseling at The Yale Women's Center" (Request No. 24) because those records are privileged, an undue invasion of privacy, and simply a fishing expedition. Plaintiff should not be allowed to rummage-through these highly personal records hoping he may find something to distort and use to harass Jane with.

### A. Plaintiff's Request For Counseling Records Violates The Psychotherapist-Patient Privilege Articulated in *Jaffee v. Redmond*

The Supreme Court recognized a psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). In *Jaffee*, the estate of a man killed by a police officer sued the officer and her department for alleged violations of his civil rights. *Id.* at 4. Discovery revealed that the officer "had participated in about 50 counseling sessions." *Id.* at 5. The plaintiff sought access to the counseling records. *Id.* The Supreme Court held that the records were privileged, explaining that the need for "an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears" justifies the privilege. *Id.* at 10,

2

18 ("[T]he notes taken during their counseling sessions are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."). The Court also held that the privilege was absolute and not subject to a "balancing" test. *Id.* at 17; *see also, e.g.*, *United States v. Ray*, 585 F. Supp. 3d 445 (S.D.N.Y. 2022) ("[T]he psychotherapist-patient relationship is absolute. When the privilege applies, it cannot be overcome by balancing 'the relative importance of the patient's interest in privacy and the evidentiary need for disclosure.'" (quoting *Jaffee*, 518 U.S. at 17); *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192 (D. Conn. 2009) (noting that the privilege affords "strict protection" and "protects communications with licensed psychiatrists, psychologists, and social workers," etc. (citing *Jaffee*, 518 U.S. at 15, 18)).

Plaintiff's request seeks the exact documents the Supreme Court held were privileged in *Jaffee*: Counseling records. *Compare*, Request No. 24 (seeking "records of . . . counseling"), *with, e.g.*, *Jaffee* 518 U.S. at 18 (holding that "the notes taken during [] counseling sessions are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence"). The Court should deny Plaintiff's request under *Jaffee*, 518 U.S. at 18.

**B.    The Counseling Records Are Privileged Under Connecticut Law As Well**

"[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Brewer v. Arnone*, No. 3:11CV19 DFM, 2013 WL 441074, at *1 n.1 (D. Conn. Feb. 5, 2013) (noting that Connecticut privilege law supported federal law).

Connecticut adheres to the psychotherapist-patient privilege. *See, e.g.*, Conn. Gen. Stat. § 52-146d, Conn. Gen. Stat. § 52-146e; *see also, e.g.*, Conn. Gen. Stat. § 52-146s (extending privilege to communications with counselors), Conn. Gen. Stat. § 52-146q (extending privilege to communications with social workers). Connecticut has also created a privilege for communications between sexual assault victims and sexual assault counselors. Conn. Gen. Stat.

3

§ 52-146k. That privilege protects all "information transmitted between . . . a victim of sexual assault and . . . a sexual assault counselor in the course of that relationship and in confidence." *Id.* The victim-sexual assault counselor privilege applies to "all communications, no matter when made." *State v. Magnano*, 204 Conn. 259, 283, 528 A.2d 760, 772 (1987). The victim-sexual assault counselor privilege "was *intended to be akin to the psychiatrist-patient privilege*." *In re Robert H.*, 199 Conn. 693, 706, 509 A.2d 475, 483 (1986) (emphasis added).

Thus, in addition to being privileged under federal law, the documents Plaintiff seeks (Jane's counseling records) are privileged under Connecticut law as well. In fact, the records are doubly privileged as a matter of Connecticut law: They are protected by the Connecticut psychotherapist-patient privilege, which extends to counselors, social workers, etc., and the Connecticut privilege for communications between victims and sexual assault counselors.

The strong policy of comity therefore bolsters the conclusion that the Court should preclude Plaintiff from accessing Jane's counseling records because Connecticut law is consistent with and bolsters federal law establishing that the records are privileged and therefore not discoverable.

        **C.**        **Plaintiff's Request For The Counseling Records Is A Fishing Expedition**

Plaintiff is attempting to invade privileged, highly sensitive documents in the hope that they might contain something that could benefit his case (or something he can use to improperly harass Jane). This is, at best for Plaintiff, a classic fishing expedition. At worst, this is another attempt to harass Jane by obtaining and disseminating sensitive information to "break" Jane.

**III.**    **JOINT DEFENSE AGREEMENTS ARE NOT DISCOVERABLE**

The Court should also deny Plaintiff's request for any Joint Defense Agreements (Request No. 63) because such Agreements are not discoverable and the production of any such Agreements is particularly inappropriate in this case given Plaintiff's efforts to litigate this case on social media in lieu of in this Court. Plaintiff does not want any responsive information for use in this case. He

4

wants it so that he can attempt to rile up the Internet over a routine reality of litigation.

In *United States v. Bicoastal Corp.*, No. 92-CR-261, 1992 WL 693384, at *6 (N.D.N.Y. Sept. 28, 1992), the Court explained that the "disclosure of the existence of [a joint defense] agreement would be an improper intrusion into the preparation of the defendants' case." The Court therefore indicated that it would "deny any motion . . . to be provided with any joint defense agreement should one exist." *Id.* Similarly, in *A.I. Credit Corp. v. Providence Washington Ins. Co.*, No. 96CIV7955AGS AJP, 1997 WL 231127, at *4 (S.D.N.Y. May 7, 1997), the Court explained that "it [was] unlikely that [the plaintiff] will be provided any discovery of or about the joint defense agreement." That is because "joint defense agreements are generally considered privileged." *Id.* More specifically, "a joint defense agreement fits within the broad definition of work product, which embraces documents prepared because of the prospect of litigation." *R.F.M.A.S., Inc. v. So*, No. 06 CIV 13114 VM MHD, 2008 WL 465113 (S.D.N.Y. Feb. 15, 2008).

This Court should therefore deny Plaintiff's request for any joint defense agreements. Whether any joint defense agreements exist is privileged and non-discoverable (not to mention irrelevant). It would be particularly inappropriate for the Court to permit discovery about joint defense agreements given Plaintiff's history in this case. As previously noted, Plaintiff is intent on litigating this case on social media rather than in this Court. Plaintiff would surely love to rile up the Internet with suggestions that a joint defense agreement, which is a common component of litigation, is somehow a nefarious act. The Court should not assist Plaintiff's efforts to litigate this case on social media. It should therefore deny Plaintiff's request.

## IV. THE COURT SHOULD PRECLUDE ACCESS TO OTHER DOCUMENTS THAT INFRINGE ON JANE'S RIGHTS, INCLUDING HER PRIVACY INTERESTS

The Court should also preclude access to any other documents that implicate Jane's privacy rights. Plaintiff's request for additional documents is an improper fishing expedition. Plaintiff

already has the documents relevant to this case because the State, Yale, and/or Jane produced them to him. Plaintiff has, for example, the UWC documents. Plaintiff is attempting to mount a fishing expedition for irrelevant documents as a continuation of his efforts to misuse the Court's process to harass Jane. He seeks to rummage through highly sensitive documents on the off chance that he might find something. That is a classic fishing expedition. Because of that and his harassment of Jane, the Court should preclude Plaintiff from obtaining further documents that relate to Jane.

In the alternative, Jane requests that she be allowed to review any additional documents in Yale's possession that relate to her before those documents are produced to Plaintiff so that she can raise specific arguments about the lack of relevancy, etc. of those documents and the extent to which particular information can be misused to harass her. Such an opportunity is essential to ensure that the Court can balance discovery needs against Plaintiff's efforts to harass Jane.

## V.     CONCLUSION

The Court should deny Plaintiff's Motion for the reasons set forth in Yale's Objection. In the alternative, the Court should deny at least the portion of Plaintiff's Motion that seeks Jane's counseling records or that seeks documents that relate to Jane. If the Court is nevertheless inclined to order the production of documents that relate to Jane, Jane should have an opportunity to review those documents and raise specific arguments about them in advance of their potential production.

> Defendant,
> Jane Doe
>
> By: /s/ *Brendan N. Gooley*
> James M. Sconzo (ct04571)
> Brendan N. Gooley (ct30584)
> CARLTON FIELDS, P.A.
> One State Street, Suite 1800
> Hartford, CT 06103
> Tel.: 860-392-5000
> Fax: 860-392-5058
> Email: jsconzo@carltonfields.com
> Email: bgooley@carltonfields.com

**CERTIFICATION OF SERVICE**

This is to certify that on this 7th day of May 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

                                               */s/ Brendan N. Gooley*
                                                   Brendan N. Gooley