**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | June 10, 2025 |

## MOTION TO COMPEL

Plaintiff Saifullah Khan moves to compel Defendant Jane Doe to produce discovery relevant and material to his claims of wrongful expulsion, defamation, and emotional distress in this civil rights action. Despite years of litigation, Jane Doe has produced fewer than 600 pages of documents – consisting mostly of materials from the criminal case or other public sources – and has failed to produce any of the relevant private communications (texts, emails, social media) from her own files. Jane Doe conducted an overly narrow search (ignoring entire categories of electronically stored information), unilaterally imposed unreasonable date restrictions, and asserted baseless objections of burden, privacy, and harassment to withhold plainly relevant evidence. This stands in stark contrast to Plaintiff's robust production (over 50,000 pages) and obstructs Plaintiff's ability to prove his claims. Plaintiff therefore respectfully requests an order compelling Jane Doe's full compliance with her discovery obligations – including a complete search of all relevant communication channels using reasonable search terms – and requiring her to provide sworn certifications of her efforts. In addition, Plaintiff seeks an award of attorneys' fees incurred in bringing this motion, pursuant to Fed. R. Civ. P. 37(a)(5), after extensive good-faith attempts to resolve these issues without court intervention. This motion was served on May 6. Today, June 9, Jane Doe agreed to supplement two interrogatories only. Those two interrogatories are interrogatories 6 and 10, italicized below.

## I.    <u>CONCISE STATEMENT OF THE NATURE OF THE CASE</u>

This case arises from a false accusation of sexual assault and Yale University's mishandling of the ensuing disciplinary process. In March 2018, after Plaintiff and fellow Yale student Jane Doe testified in a criminal trial, a jury found Plaintiff Not Guilty of Jane's allegation that he raped her. Nevertheless, Yale conducted its own Title IX disciplinary proceeding against Plaintiff that lacked fundamental fairness, ultimately finding him responsible and expelling him despite his acquittal. Plaintiff's Complaint asserts that Yale's disciplinary process was flawed by gender bias and procedural irregularities, in violation of Title IX of the Education Amendments of 1972, and that Yale breached its contractual duties and inflicted emotional distress by failing to follow fair procedures.

Plaintiff also brings claims against Jane Doe herself for defamation, on the basis that her false accusations and subsequent statements about him have caused severe damage to his reputation and emotional well-being. Jane Doe repeated her allegations in multiple fora – including Yale's internal proceedings and, upon information and belief, to other students and third parties – even after Plaintiff's exoneration in criminal court. Plaintiff contends that Jane Doe's actions, including any statements she made to the media or on campus (such as in the Yale Daily News or via social media), were knowingly false or made with reckless disregard for the truth, constituting defamation. Jane has asserted privilege, which the Connecticut Supreme Court has held is a qualified privilege, requiring the plaintiff to show actual malice in this case with regard to Jane's reports to Yale's disciplinary process. Both Yale and Jane Doe have vigorously contested discovery in this case, necessitating the instant motion.

## II. <u>SPECIFIC VERBATIM LISTING OF THE ITEMS OF DISCOVERY SOUGHT AND THE REASONS WHY EACH ITEM SHOULD BE ALLOWED</u>

Pursuant to Local Rule 37(b)(1), Plaintiff provides the following specific verbatim listing of the items of discovery sought, along with the reasons why each such request should be allowed:

### A. Communications Concerning Plaintiff, the Allegations, or the Proceedings

**Request No. 1:** "Produce all written and electronic communications (including emails, text messages, social media posts, and letters) that reference the plaintiff or the incident, from one year prior to the incident to the present."

**Reason to Allow:** These communications are central to Plaintiff's claims of defamation, false accusation, and emotional distress. They may reveal contradictions, animus, motive, or republication, and they go to malice, intent, and credibility.

**Request No. 7:** "Provide all communications (including emails, text messages, and social media messages) you had with the plaintiff after the alleged incident."

**Reason to Allow:** Direct communications with Plaintiff are uniquely probative of the relationship, emotional tone, and Jane Doe's understanding of events—particularly if they contradict her allegations.

***Interrogatory No. 10:*** *"Have you made any public statements, including social media posts, about the plaintiff or the alleged incident? If yes, provide details of each statement and the platform used."*

***Reason to Allow:*** *These are potential republications of defamatory claims and central to Plaintiff's defamation theory.[1]*

**Interrogatory No. 11:** "Have you contacted or been contacted by any witnesses regarding the alleged incident? If yes, provide details of each interaction, including dates, names, and the nature of the communications."

**Reason to Allow:** Relevant to credibility, fabrication, and bias. May reveal coaching, collusion, or inconsistencies in testimony.

**Request No. 15:** "Produce all electronic communications related to the alleged incident, including emails, text messages, social media messages, and any other digital correspondence, along with metadata for these communications."

**Reason to Allow:** Comprehensive coverage of communications that bear on falsity, credibility, motive, and malice. Metadata is needed to detect timing and spoliation.

**Request No. 16:** "Produce all documents and communications that reflect the nature of your relationship with the plaintiff prior to the alleged incident, including emails, text messages, photographs, and social media interactions."

**Reason to Allow:** Relevance to context, consent, and credibility. May contradict Jane Doe's allegations.

**Request No. 24:** "Produce all records of discussions about the alleged incident that took place on online platforms or social media, including posts, messages, comments, and any related metadata."

---

[1] By email of today, June 9, Jane Doe has agreed to supplement this interrogatory.

**Reason to Allow:** Critical for defamation and reputational harm. Captures how widely Jane Doe shared the allegations and in what tone.

**Request No. 32:** "Provide all records of your social media activity related to the alleged incident, including posts, comments, messages, and any related metadata from platforms such as Facebook, Twitter, Instagram, etc."

**Reason to Allow:** May show malice, publication, falsity, and third-party reactions that prove harm.

**Request No. 38:** "Produce all records of direct or indirect communications with the plaintiff since the alleged incident, including emails, text messages, social media messages, and any other forms of correspondence."

**Reason to Allow:** May reflect post-incident conduct inconsistent with Jane Doe's narrative and show lack of fear, trauma, or actual belief in wrongdoing.

### B. Evidence Relating to Credibility, Malice, and Fabrication

**Interrogatory No. 3:** "Have you ever had any disputes, disagreements, or conflicts with the plaintiff prior to the incident? If yes, please provide detailed descriptions of these incidents."

**Reason to Allow:** Relevant to motive, malice, and falsity. May show a preexisting grudge or bias.

**Interrogatory No. 5:** "Were you advised or encouraged by any individuals or groups to pursue legal action against the plaintiff? If yes, please identify these individuals or groups and describe the nature of their advice or encouragement."

**Reason to Allow:** Relevant to bias, improper influence, and fabrication. May support inference that the accusation was encouraged for strategic or ideological reasons.

***Interrogatory No. 6:*** *"Did you report the alleged incident to any law enforcement agency, medical professional, or other authority? If yes, provide details of each report, including dates, agencies, and the nature of the report."*

***Reason to Allow:*** *Though Plaintiff has parts of the criminal record, the details in Jane Doe's own words, under oath, are relevant to inconsistencies or contradictions.*[2]

**Interrogatory No. 13:** "Provide a detailed timeline of your activities and whereabouts on the day of the alleged incident, including interactions with any individuals and the times of those interactions."

**Reason to Allow:** Central to the factual narrative and any inconsistencies in Jane Doe's story.

**Interrogatory No. 18:** "Were you at any point influenced, coerced, or pressured by any individual or group to make or continue with the accusation against the plaintiff? If yes, provide details including the names of those involved and the nature of the influence or coercion."

**Reason to Allow:** Goes directly to truth or falsity, and malice. External pressure may support fabrication. Relevant to Plaintiff's claims against Yale Defendants.

**Request No. 49:** "Produce all documents, communications, or records that detail any prior consensual encounters or interactions you had with the plaintiff before the alleged incident."

**Reason to Allow:** Relevant to context and consent. Can contradict an account that suggests there was no prior relationship.

---

[2] By email of today, June 9, Jane Doe has agreed to supplement this interrogatory.

### C. Evidence of Spoliation, Republication, or Improper Conduct

**Request No. 42:** "Produce any records or logs that show attempts to delete digital communications, social media posts, or other electronic records related to the alleged incident, including recovery efforts."

**Reason to Allow:** Evidence of spoliation may support adverse inferences, malice, and consciousness of guilt.

**Request No. 37:** "Produce all documents and communications related to any disclosures you made to media outlets or journalists about the alleged incident, including emails, interview transcripts, and articles."

**Reason to Allow:** May establish republication and damage. Also relevant to Plaintiff's unclean hands response to Yale's defenses.

**Request No. 46:** "Produce any documents, communications, or records that relate to attempts to influence or intimidate witnesses in this case, including emails, text messages, or recordings."

**Reason to Allow:** Critical if Jane Doe attempted to shape or suppress evidence. Highly relevant to credibility and punitive damages.

### D. Monetary Evidence

**Request No. 9:** "Provide all documents that show financial compensation or benefits you received or sought in connection with the accusation against the plaintiff, including insurance claims, settlements, or awards."

**Reason to Allow:** May show motive or secondary gain. Could undercut credibility and damages if the accusation was incentivized.

**Request No. 19:** "Produce all documents related to any discussions or negotiations about a settlement with the plaintiff or any other party, including emails, letters, meeting notes, and draft agreements."

**Reason to Allow:** May contain admissions or reveal Jane Doe's own views on the credibility or damage of her claims.

### E. Procedural and Coordinated Litigation Issues

**Request No. 29:** "Produce any common defense or joint defense agreement you have entered into with any of the other defendants in this action."

**Reason to Allow:** The existence of such an agreement bears on the independence of Jane Doe's defenses and is relevant to coordination, bias, and discovery strategy. The agreement itself is not privileged, even if its communications are.

### III.    <u>HISTORY OF DISCOVERY DISPUTE</u>

*Plaintiff's Requests and Jane Doe's Objections*

Plaintiff served his Interrogatories and Requests for Production on Jane Doe on May 21, 2024. Jane Doe served written responses on June 20, 2024, consisting almost entirely of objections. She objected on grounds of timeliness (arguing the requests came after a scheduling order deadline), relevance, overbreadth, burden, privacy, privilege, and even "harassment." Notably, Jane Doe did not agree to produce any category of ESI (electronically stored information) in those responses, other than possibly documents already exchanged during the criminal case. For instance, in response to Request No. 15 (all electronic communications regarding the incident), Jane Doe asserted it was irrelevant, overbroad, and privileged, and did not produce a single email or message:

In addition to the Objections above, Jane objects to Request #15 on the grounds that it (1) seeks irrelevant documents, (2) is overly broad and unduly burdensome, and (3) seeks privileged communications, including Jane's communications with her attorneys and, potentially, communications protected by the psychotherapist-patient privilege.

Doe Responses at 15.

In response to Request No. 16 (communications reflecting her prior relationship with Plaintiff), she objected identically, added that it was "harassing" and again refused to produce anything.

Similarly, she objected to requests for her social media posts (Request No. 24, 32, etc.) on grounds of privacy and burden, without producing any social media data. In short, Jane Doe's initial position was a near-total refusal to provide ESI, relying on boilerplate objections and an apparent view that Plaintiff already had enough information from other sources.

*Meet and Confer Efforts*

Over the ensuing months, Plaintiff's counsel conferred with Jane Doe's counsel multiple times to narrow the issues. The parties held telephonic meet-and-confers and exchanged correspondence in an attempt to reach a compromise on ESI searches. Defendant's counsel eventually agreed to run search terms, but with significant unilateral limitations. In an email dated January 17, 2025, Jane Doe's counsel stated that they would exclude several important keywords and curtail the time frame of the search. Specifically, counsel refused to search terms like "drinking," "police," "trial," and "post" (claiming these were too generic), and insisted on an end date of January 22, 2019 – "months after the UWC hearing" – rather than extending to the present.

*Defendant's Self-Limited ESI Search*

Defendant's counsel also revealed that their ESI search would be extremely limited in scope. They indicated they would search Jane Doe's email accounts using a narrowed set of

terms (excluding many terms Plaintiff proposed) and only within the 2015–Jan. 2019 window. With respect to text messages, counsel stated that Jane Doe had "*previously pulled text messages off of her phone*" and claimed she has no additional messages to produce. No indication was made that counsel did any independent confirmation of these representations. Importantly, counsel admitted that Jane Doe did not search any of her social media accounts at all – on the assertion that "*Jane did not communicate about anything related to this case on social media.*" In other words, Defendant Jane Doe <u>unilaterally</u> decided that searching her Facebook, Instagram, or other social platforms was unnecessary and simply refused to do so. This approach was  and is unacceptable – a party cannot decline to search an entire category of likely sources based solely on an unverified belief that nothing will be found.

*Continued Deficiencies and Impasse*

Despite Plaintiff's objections, Jane Doe's counsel maintained these limitations. In a follow-up email on January 29, 2025, counsel confirmed that they had run "most of" Plaintiff's search terms, but they omitted numerous terms because they yielded a "*large number of hits.*" Rather than reviewing those hits or refining the terms, Defendant simply excluded terms such as "Yale Daily News," "expulsion," "suspension," "Title IX," "intoxicated," "YPD," "testimony," "jury," and others– all of which are obviously relevant keywords in this case. No affidavit or detailed explanation of burden was provided to substantiate why retrieving ESI with these terms would be too burdensome; Jane Doe's counsel merely noted that the terms returned a lot of results and thus they chose not to search them. Additionally, it appears Jane Doe did not search certain repositories at all (for example, any devices or accounts from before 2015, or any personal cloud/backups where older messages might reside). She also did not confirm whether other email accounts or messaging platforms were examined.

As of the date of this motion, Jane Doe's production remains paltry: aside from documents that were already available from the criminal case (police investigative materials, transcripts) and a few media articles, she has produced virtually no internal communications of her own. She has not produced a single email or social media post from her accounts referencing Plaintiff or the events, and has provided only a very limited set of text messages (if any at all – none have been identified in the production to Plaintiff). In short, Jane Doe has withheld the very documents most likely to shed light on the truth of Plaintiff's claims.

### III.    LEGAL STANDARD

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, 2017 U.S. Dist. LEXIS 196151, 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)); *see also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989). *Baltas v. Hardy*, No. 3:23-CV-930 (VAB), 2024 U.S. Dist. LEXIS 194830, at *3 (D. Conn. Oct. 25, 2024).

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for a broad scope of discovery in federal litigation. "Discovery under the Federal Rules of Civil Procedure is a conditional and carefully circumscribed process." *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016), as amended (June 15, 2016). The party seeking the discovery has the burden of demonstrating relevance. *Id*. This analysis "requires one to ask: Is the discovery relevant to a party's claim or defense? Which claim? Which defense? At this stage of the litigation, one looks to the parties' pleadings for their claims or defenses." *Id*. Once the requesting party has demonstrated relevance, "[t]he party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D.

Conn. 2009). *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn.
2004). ("Because the Federal Rules are to be construed liberally in favor of discovery, the burden
falls on the party resisting discovery to show why discovery should be denied.").

Rule 26(b)(2)(C) requires the court to consider whether "(1) the discovery sought is
unreasonably cumulative or duplicative, or obtainable from a cheaper and more convenient
source; (2) the party seeking the discovery has had ample opportunity to obtain the sought
information by earlier discovery; or (3) the burden of the discovery outweighs its utility." *U.S. ex
rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 240-41 (D.D.C. 2011) (Facciola, M.J.);
*Willnerd v. Sybase, Inc.*, No. 09 C 500, 2010 WL 4736295, at *3 (D. Idaho Nov. 16, 2010) ("In
employing the proportionality standard of Rule 26(b)(2)(C) . . . , the Court balances [the
requesting party's] interest in the documents requested, against the not-inconsequential burden of
searching for and producing documents."). The third factor requires the court to consider (a) the
needs of the case; (b) the amount in controversy; (c) the parties' resources; (d) the importance of
the issues at stake in the action; and (e) the importance of the discovery in resolving the issues.
Fed. R. Civ. P. 26(b)(2)(C)(iii). Nevertheless, "[t]he party opposing a motion to compel carries a
'heavy' burden of persuasion." *U.S. v. AT&T Inc.*, No. 11-1560, 2011 WL 534178, at *5 (D.D.C.
Nov. 6, 2011). *See also Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 28 (N.D.
Ill. Sep. 28, 2012).

"[T]he selection of custodians is more than a mathematical count. The selection of
custodians must be designed to respond fully to document requests and to produce responsive,
nonduplicative documents during the relevant period." *Kleen Prods.*, *id.* The unilateral selection
of custodians undercuts the discovery process required by the Rules. *See Charvat v. Valente*, 82
F. Supp. 3d 713, 723 (N.D. Ill. 2015) ("[T]he Court is troubled by the unilateral selection of

custodians . . . without Plaintiff's input."). In contrast, an iterative, evidence-based transparent process ensures a fair and efficient result. *See Otto v. Abbott Lab's, Inc*., 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (ordering additional custodians where "plaintiff's counsel has not been sufficiently involved in the selection process to ensure a fulsome production of responsive documents."); *Mann v. City of Chi.*, No. 15 CV 9197, 4 (N.D. Ill. Sep. 8, 2017) (ordering additional custodians). When considering whether to order production from a custodian about whom the parties have not agreed, courts generally consider (1) the likelihood of the custodian to have information relevant to the claims and defenses in the litigation and (2) whether that relevant information is included within the electronically stored information maintained by the other designated custodians. *MariCal, Inc. v. Cooke Aquaculture, Inc*., No. 1:14-CV-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016) (ordering addition of company CEO to custodian list). But simply because a custodian may produce duplicative documents is no reason to exclude them from a list of custodians, where, for example, "it is reasonable to believe that they will have additional, highly relevant materials." *Mt. Hawley Insurance Company v. Felman Production*, 269 F.R.D. 609, 620 (S.D.W. Va. 2010).

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981).

Under Rule 37, a court can impose sanctions where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The sanctions include "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the

order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *Harvin v. Cheney*, No. 3:23cv328 (MPS), 2024 U.S. Dist. LEXIS 82837, at *7 n.3 (D. Conn. May 7, 2024). In addition to the sanctions above, the court must order the disobedient party to pay reasonable expenses, including attorney's fees, caused by the failure to comply with the discovery order. Rule 37(b)(2)(C).

When considering whether to impose sanctions under Rule 37, courts consider four factors: "'(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the . . . noncompliance; and (4) whether the non-compliant party had been warned' that noncompliance would be sanctioned." *Guggenheim Capital, LLC v. Birnbaum*, 722 F. 3d 444, 451 (2d Cir. 2013) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F. 3d 298, 302 (2d Cir. 2009). *See Prudential Ins. Co. of Am. v. Kowalski*, No. 3:21-cv-00541 (VAB), 2024 U.S. Dist. LEXIS 198854, at *20 (D. Conn. Nov. 1, 2024). *See also Vasoli v. Yards Brewing Co.*, 2021 WL 5045920, at **1, 3 (E.D. Pa. Nov. 1, 2021) (imposing sanctions on defendants where it was "clear that there were shortcomings with how Defendants went about searching for documents responsive to Plaintiff's discovery responses.").

In cases involving allegations of defamation or improper motive, such as this Title IX and defamation case, discovery into the defendants' state of mind and communications are especially crucial. The leading case is *Herbert v. Lando*, 441 U.S. 153 (1979), in which the Supreme Court held there is no privilege under the First Amendment barring plaintiffs from inquiring into sensitive editorial processes where the inquiry would produce evidence material to proof of a defamation action. This case stands for the proposition that sensitive internal communications

must be produced in discovery if they are relevant to whether defamation was committed—the plaintiff's right to gather evidence to determine whether a defamation was committed outweighs generalized privacy or burdensomeness claims. Obviously, in today's social media environment, social media evidence is highly relevant and material in a defamation and Title IX action. *See, e.g.*, *Doe v. Princeton*, 30 F.4th 335, 341, 345 (3d Cir. 2022) (in a Title IX case, a student's "liking" an accuser's post was central to the claims).

## IV.    ARGUMENT

### 1.    The Requested Communications and ESI are Directly Relevant to Plaintiff's Claims

Jane Doe's communications about the incident, about Plaintiff, and about the subsequent proceedings are highly relevant. Plaintiff's claims turn on what happened between Jane Doe and Plaintiff, and on what Jane Doe said about what happened – to Yale, to others, and to the world. Her credibility and motives are at the heart of both the Title IX and defamation aspects of this case. The requested ESI is likely to contain evidence critical to these issues:.

#### A.    Evidence of Falsehood or Contradictions

Private text messages or social media chats may reveal Jane Doe recounting the incident in ways that contradict her official story. For instance, she might have told a friend details that undercut her allegation or reflect uncertainty about whether a sexual assault occurred. Such inconsistencies would powerfully support Plaintiff's claim that the accusation was false. Plaintiff is entitled to probe whether Jane told different versions of events in informal settings versus formal proceedings.

#### B.    Evidence of Malice or Bias

Plaintiff will need to show that Jane Doe acted with at least negligence in her false statements about the plaintiff. Jane's communications are relevant and material to her state of

mind. For example, if she expressed animosity towards Plaintiff, discussed wanting to punish him regardless of truth, or coordinated with others to "make an example" of him, that would indicate malice. Emails to friends would potentially be evidence of malice. In the few communications we have received, we have learned that one of Jane Doe's friends received Yale's factfinding report. *See* JANE 360 (Exh. A) (showing Keni Sabath as a recipient of the report). In the criminal trial, it was revealed that she shared information with the University nurse, with family and friends present in the meeting. Additionally, Yale's own investigator noted in an email that Jane's advisor "asked if [Jane] could have a friend attend the interview with her as a support." YALE-08000 (Exh. B). Certainly, if Jane asked the investigator if her friend could attend an official Yale investigatory interview, she likely had some communication with that friend. Similarly, if Jane received information that conflicted with her narrative and chose to ignore it, that too is relevant to malice. Such evidence will not be found in public records; it lives in Jane Doe's private messages.

### C.    Context for the Title IX Procedure

The Title IX claim against Yale requires evidence of external pressure and irregularities. Communications between Jane Doe and Yale officials (or between Jane and third parties about Yale's process) could show, for instance, that Jane was given guidance or coaching by university personnel (e.g., "don't worry, we'll get him at the hearing") or that she coordinated with others to influence the outcome (such as organizing the campus petition for expulsion. While this directly implicates Yale, Jane's involvement in any such efforts is relevant to whether the process was tainted by bias or pre-judgment. Additionally, if Jane discussed the case on social media or with advocacy groups, it might reveal external pressure on Yale (for example, Jane stirring public sentiment that Yale must expel Plaintiff). The Second Circuit has explicitly held

that evidence of outside pressure can support a Title IX bias claim, and communications with and by Jane could show such pressure.

### D.    Damages and Reputational Harm

Jane Doe's public or semi-public statements about Plaintiff (for example, on social media or to classmates) are the very basis of Plaintiff's defamation claim and a significant part of his damages. Each time Jane told someone that Plaintiff is a "rapist" or otherwise maligned him, it potentially constitutes a defamatory publication causing further harm to Plaintiff's reputation. Discovery is necessary to uncover how far and wide she spread these allegations. Even if Jane Doe contends that her statements were mostly within the Yale disciplinary context (which might be subject to qualified privilege), any additional audience she reached – such as posts on Facebook, comments to reporters, or telling mutual friends – would be unprivileged republications actionable as defamation. Plaintiff has a right to obtain any evidence of such statements. Moreover, communications by others in reaction to Jane's allegations (e.g., messages Jane received from friends sympathizing or discussing Plaintiff) could serve as evidence of how Plaintiff's reputation was impacted in the community.

Jane Doe's blanket assertion that she "did not communicate about anything related to this case on social media" strains credulity and, in any event, does not eliminate relevance. If true, that statement would mean there is nothing to produce from social media – so what is the harm in searching to verify it? If false (and Plaintiff has reason to believe Jane did make social media comments, given the widespread campus discussion of the case), then a search is imperative to uncover those. Defendant cannot short-circuit discovery by unilaterally declaring that a whole category of relevant evidence doesn't exist. The only proper way to resolve this is to conduct a good-faith search. In fact, the absence of any social media discussion by Jane, if confirmed,

would itself be notable; but presently it's merely an unsupported claim. Plaintiff is entitled to see the actual data (or at least get a sworn statement detailing what was done to check these accounts).

### 2.    Jane Doe's Objections are Meritless and Should be Overruled

Jane Doe has raised a variety of nonspecific objections – privacy, burden, duplication, harassment, and privilege – none of which withstand scrutiny in light of the governing law and facts of this case. We address each in turn.

### A.    Undue Burden/Overbreadth

Defendant's boilerplate burden objections should be rejected because she has offered no evidence or specifics to substantiate them. Under Rule 26, the party resisting discovery on the basis of undue burden must show specifically how each request is overly broad or burdensome, usually by providing details like volume of data, time or cost estimates, etc. Here, Jane Doe's written objections simply assert that requests are "overly broad and unduly burdensome" without explanation. In meet-and-confer, her counsel did note that some keyword searches returned a "large number of hits," but this actually underscores that the information is likely plentiful and relevant – not that it can be ignored. If anything, a high volume of results indicates that many communications exist on those topics (e.g., "Title IX," "expulsion"), which suggests Jane Doe was frequently discussing these issues. That is all the more reason those results should be reviewed and produced, not swept under the rug. Moreover, counsel's reaction – to drop the search terms entirely – is not a legally sanctioned solution to burden. Narrowing results by using filters, Boolean connectors, or additional search terms.

Indeed, given modern e-discovery tools, reviewing even a few thousand hits is not uncommon or unmanageable, especially in a case of this importance. It bears emphasizing that

proportionality is key: Plaintiff was a Yale student wrongfully expelled and defamed, seeking upwards of $110 million in damages. The stakes are enormous for him, and Jane Doe's communications are among the most probative evidence available. Any burden on Jane Doe (an individual) in searching her messages is far outweighed by the importance of this discovery to resolving the issues. Furthermore, Plaintiff himself has borne significant burdens in discovery – producing tens of thousands of pages – which far exceed anything asked of Jane. Compared to the burden Plaintiff has shouldered, requiring Jane to search her email, phone, and social media is modest and reasonable. Therefore, the Court should overrule the undue burden objections and order the requested searches to proceed. If Jane Doe truly believes the volume of results is unworkable, she should be required to submit a detailed affidavit to that effect; absent that, she must comply with the discovery.

### B.    Privacy and Confidentiality

Jane Doe's objections frequently invoke her "privacy" rights or the sensitive nature of certain information. By this motion, we are not seeking documents that Jane has listed on her psychotherapist privilege log, though we believe that evidence of waiver of that privilege may be unearthed in discovery. This case already has a mechanism in place for legitimate privacy interests – the protective order – which exists for the purpose of not permitting a party to unilaterally withhold relevant documents on privacy grounds. Most of what Plaintiff seeks here are communications with third parties; by definition, those are not private communications with a doctor or attorney – they are statements Jane chose to share with others. For example, if Jane Doe sent a Facebook message to a friend about the case, she has voluntarily shared that information; it is not protected by any privacy privilege. There is no expectation of privacy in social media posts made to one's friends or followers when those posts are relevant to litigation.

### C.    Duplicative / "Plaintiff Already Has It"

At several points, Jane Doe objected that certain requests call for information Plaintiff "already has" or documents that "Plaintiff has in his possession." This objection is a red herring. Plaintiff does not have the vast majority of what he is seeking from Jane. He certainly does not have access to Jane's private communications with third parties. The fact that Plaintiff possesses some materials from the criminal trial (e.g., police reports, transcripts of Jane's testimony) does not render his requests duplicative. Those documents serve different purposes (establishing what was said in official settings). What is at issue here are informal communications that were never part of the official record. Moreover, even where there might be overlap – for instance, emails between Jane and a Yale administrator might be produced by Yale as well – Plaintiff is entitled to production from Jane to verify completeness and authenticity. It is not uncommon in discovery for one party to obtain the same email from multiple sources; sometimes differences (like one party's copy has additional forwards or commentary) can appear. Plaintiff cannot simply trust that Yale's production renders Jane's production unnecessary; each party must produce what is in their possession, responsive and non-privileged.

Additionally, Jane's objection that Plaintiff "already has" certain information is used to avoid answering interrogatories (e.g., she refused to provide a timeline of the incident by saying Plaintiff has her prior testimony). That is improper – a party cannot dodge interrogatory answers by pointing to deposition or trial testimony. Plaintiff is entitled to obtain Jane's account in this civil case, under oath, through the discovery process, to see if it is consistent or if she supplements/changes it. In summary, nothing Plaintiff seeks is truly duplicative of what he has; and to the extent there is any overlap, producing the documents again creates minimal burden

and will ensure a complete record. Thus, duplicative-production objections should not bar discovery.

### D.     "Harassment"

Jane Doe's counsel repeatedly objected that Plaintiff's discovery requests are intended to "harass" or "embarrass" Jane. This appears to be based on the notion that questioning Jane extensively about her allegations (and related communications) is an attempt to retraumatize or badger her. It is not harassment to seek the facts and evidence necessary to defend oneself and prosecute one's claims. Jane Doe chose to make very serious allegations that forced Plaintiff to sue to clear his name. Having made very serious accusations, she cannot refuse to answer questions about them under the guise of being "harassed." The scope of Plaintiff's requests is dictated by the scope of Jane's own allegations and public statements. For example, if Jane Doe made public posts about Plaintiff being a danger, then asking her to produce those posts is not harassment – it is holding her accountable for what she put into the public sphere. Similarly, asking her to identify people she communicated with about the case (Interrogatory No. 2) is standard discovery, not personal harassment. There is a difference between legitimately probing a witness's credibility or bias and unjustified personal attacks.

Plaintiff's discovery has been focused on relevant issues; he has not, for instance, delved into Jane's unrelated personal life or irrelevant sexual history (which could be harassing). He has confined inquiries to the incident, her communications about it, and her credibility. There is nothing improper about that. If anything, Jane's blanket invocation of "harassment" seems calculated to avoid revealing information that might impeach her. The Court should not countenance such a tactic. Particularly where, as here, Plaintiff is the one who arguably suffered harassment (being the subject of what he contends are false and malicious accusations), it would

be perverse to allow the wrongdoer to claim she is being harassed by efforts to obtain the truth. Therefore, the Court should overrule objections premised on alleged harassment or bad faith by Plaintiff. The discovery sought is directly tied to legitimate claims and defenses – it is necessary for the fair resolution of this case.

<strong>E.      Privilege (Attorney-Client and Work Product) / Psychotherapist</strong>

Jane raises privilege objections—plaintiff is not seeking privileged communications with Jane's attorneys. Those materials are rightfully included in a privilege log. (Exh. C) But that does not justify refusing to produce non-privileged communications. Communications with friends are not privileged. Similarly, plaintiff is willing to limit the scope of information sought about treatment and therapy to factual information such as dates of treatment, rather than the substance of conversations that would be protected by privilege. Certain documents may or may not be privileged based on the circumstances.

We have strong reason to believe that the privilege logs are incomplete. For instance, although Jane objects that her common defense agreement with Yale is privileged and work product, it does not appear on her privilege log or on Yale's privilege log. Plaintiff is left to guess what, if anything, is also left off of the log.

Additionally, entries on the log appear to shield documents that are not privileged. Entry #13 on the log is an email from "the Victim Rights Center" to Jane Doe; the description omits mention of any attorney involvement. Entries # 8 and 31 fails to confirm whether underlying factual documents referenced in the entries have been produced. A fully compliant privilege log with only privileged entries should be required.

### 3.     The Discovery Sought is Proportional to the Needs of the Case

Rule 26(b)(1) also requires that discovery be "proportional to the needs of the case." All the proportionality factors weigh in favor of compelling this discovery:

*Importance of Issues at Stake*: This case involves fundamental issues of educational access, due process, and reputation. Plaintiff was expelled from Yale, a life-altering consequence, and branded with a heinous accusation. The litigation addresses important civil rights (gender discrimination under Title IX) and the vindication of an individual's name against false allegations. A wrongful sexual misconduct allegation can be a stain that lasts forever, making thorough discovery to uncover the truth exceptionally important. Thus, the discovery here goes to the heart of clearing Plaintiff's name and examining an alleged injustice, reflecting a high importance.

*Amount in Controversy*: Plaintiff seeks substantial damages (economic and non-economic) for the destruction of his academic and career prospects and the harm to his reputation. As noted, damages claimed exceed $100 million, reflecting the value of a Yale degree and years of lost opportunities, as well as punitive damages for the willful conduct alleged. While that figure is of course subject to proof, it underscores that this is not a trivial dispute – the stakes are extremely high. Broad discovery is warranted in cases with large amounts in controversy because the potential benefit of obtaining evidence outweighs the cost of production.

*Parties' Relative Access to Information*: There is a severe information asymmetry here. Jane Doe holds a monopoly on certain information – only she knows what she told others privately. Plaintiff cannot access that except through discovery. Meanwhile, Plaintiff has already disclosed essentially everything about his side of the story (he has even given testimony in

criminal court, and he produced all his communications, etc.). Jane Doe, by contrast, has kept her communications hidden. This asymmetry means proportionality strongly favors requiring her to open up her files; otherwise, Plaintiff is fighting with one hand tied behind his back. Where one side has very little discoverable information while the other party has vast amounts, broad discovery is needed to level the playing field. Here, Jane Doe's communications are a trove of relevant evidence to which Plaintiff has no other access.

*Parties' Resources*: While Jane Doe is an individual (presumably a former student), it appears she has competent counsel and backing in this litigation (her counsel's firm is a large and well-resourced law firm). We are mindful that an individual might not have the same resources as an institution like Yale, but the requested discovery is not unduly expensive or high-tech. Searching an email account or a phone is routine; these tasks are often handled by counsel or e-discovery vendors at moderate cost. If Jane Doe has handed her devices/emails to her attorneys, they can perform keyword searches and review in a matter of weeks – a feasible undertaking. Moreover, the burden of cost can be mitigated: Plaintiff is not opposed to allowing Jane to utilize electronic search tools to cull data. Given the centrality of the evidence, the expenditure of resources is justified.

*Importance of Discovery in Resolving Issues*: This factor cannot be overstated: the communications and ESI sought are likely to resolve pivotal factual disputes in this case. For instance, there is a factual dispute over whether Plaintiff assaulted Jane or not. While that was resolved in criminal court in Plaintiff's favor, the evidence here (like Jane's private admissions or contradictions) could further illuminate that truth. There is also a dispute over whether Jane acted with malice. Her emails or posts could provide direct evidence of that (resolving the issue one way or the other). Also, in the Title IX claim, whether Yale's process was biased may be

bolstered by evidence of what Jane and others were saying behind the scenes. In short, this discovery could make the difference between Plaintiff's claims succeeding or failing. Plaintiff cannot prove malice, for example, without access to how Jane formulated and spread her story. The alternative – proceeding to trial without this evidence – would risk a miscarriage of justice where the jury hears only a sanitized, one-dimensional version of events. Proportionality strongly favors disclosure to get a complete picture. In balancing these factors, compelling the requested discovery is proportionate. The likely benefit of the evidence far exceeds any minor burden on Jane Doe.

**4.    Jane Doe Should be Compelled to Comply with Discovery**

Plaintiff requests an order:

(1) *Requiring search of all likely sources* -  Jane Doe must search all locations where responsive communications might exist. This means every email account she used during the relevant period (both Yale email and any personal email accounts), her text messages (including retrieving messages from her phone or any backups in the cloud), and all social media or messaging platforms she used (Facebook, Messenger, Instagram, Twitter, Snapchat, WhatsApp, etc.). Jane Doe should not limit the search to only one device or omit platforms. If she had multiple devices (old phones, laptops) that might contain archived messages, those should be searched as well.

(2) *Use of reasonable search terms* – Given Defendant's prior omission of critical terms like "Title IX" and "Yale Daily News" for certain date ranges, we request the Court specifically instruct that those terms (and others Defendant dropped) be included. It is worth noting Plaintiff's terms were quite targeted to this dispute (including names of key individuals like Yale officials, and event-specific words like "Halloween party").

(3) *Expanded date range* – The Court should reject Jane Doe's artificially shortened date range and require searching up to the present date (or at least up to the filing of the lawsuit and its aftermath). Plaintiff originally requested from one year prior to the incident (to capture any lead-up communications) to present. There is every reason to believe relevant communications occurred after that date: for example, Plaintiff filed this lawsuit in late 2019, which likely prompted discussions by Jane or others; media coverage of the case continued; and Jane's own reflections or statements in subsequent years (e.g., if she discussed "the guy who sued me" with anyone) are relevant to ongoing harm and her mindset. Indeed, defamation damages often extend well into the future as reputational harm persists. Unless Defendant can show a specific reason nothing after January 2019 could be relevant (which she has not), the search should include emails and posts in 2019, 2020, and beyond. At minimum, we request extending the end date through the end of 2024 to ensure capture of any pertinent post-litigation commentary. The start date in 2015 is also unreasonable because the Plaintiff was expected to search for emails and documents dating back to the beginning of his time at Yale and there is evidence that the plaintiff and Jane had communications for years prior to the night in question.

(4) *Affidavit describing compliance* –  o instill confidence in the completeness of the production, Plaintiff asks that Jane Doe provide a sworn affidavit (or declaration) detailing the sources she searched (e.g., "searched Gmail account [address] from 2015–present; searched iPhone 12 containing texts from 2018–present; searched Facebook account under name [XYZ], etc."), the search terms used, the date ranges, and any sources that were not searched (with an explanation why not). The affidavit should also state whether any responsive information was deleted or lost (and if so, the circumstances, to address potential spoliation concerns). Requiring this is appropriate given the prior lack of transparency. It will either reassure Plaintiff and the

Court that a diligent search has now been done, or, if deficiencies remain, provide a clear record of what was not done for the Court to evaluate. The Court has discretion to order such measures under Rule 37 to effectuate compliance. In many cases, this Court has ordered parties to submit affidavits about their ESI search to resolve disputes. Here, an affidavit will help close the matter by preventing further "he-said, she-said" about what might have been missed. We emphasize that these requirements are not onerous. They are simply asking Jane Doe to do what Rule 34 requires: search the locations under her control likely to contain responsive documents, and either produce them or properly object/log. To date, she has not done this adequately on a voluntary basis. Therefore, Court intervention is warranted to supervise the process.

Finally, because Plaintiff has been forced to incur expenses to compel what should have been provided in the ordinary course, Plaintiff requests that the Court award the reasonable attorney's fees and costs for this motion, pursuant to Rule 37(a)(5). Jane Doe's failure to produce responsive documents necessitated this motion. There is no substantial justification for her position; indeed, much of what she has done violates clear discovery obligations (e.g., boilerplate objections, self-imposed limits without discussion). Under Rule 37(a)(5)(A), if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, unless an exception applies. Here, no exception applies. Accordingly, a fee award is appropriate to compensate Plaintiff and to encourage compliance by Defendant going forward.

## V.    **CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests that the Court grant his motion to compel and enter an order requiring Jane Doe's compliance with the discovery requests listed in Section II of this memorandum.

Respectfully submitted,

/s/Alexander T. Taubes
470 James St., Ste 007, New Haven, CT 06513
alextt@gmail.com
(203) 909-0048
Ct30100