**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Saifullah Khan, | |
| Plaintiff, | Civ. No. 3:19-cv–01966-KAD |
| v. | |
| Yale University, et al., | |
| Defendants. | June 17, 2025 |

<u>**YALE UNIVERSITY'S MEMORANDUM IN OPPOSITION**</u>
<u>**TO PLAINTIFF'S MOTION TO COMPEL**</u>

Yale University hereby submits its Memorandum of Law in Opposition to the Plaintiff's

Motion to Compel (ECF 327).

**I.     PRELIMINARY STATEMENT**

Subject to appropriate claims of privilege and the work-product doctrine, Yale has

produced to Plaintiff more than 1,600 responsive documents comprising approximately 10,000

pages. Yale has expended significant time and resources to produce these documents, including

undertaking a complicated and extensive ESI search of the files of 16 custodians. Yale has

diligently reviewed these documents for privilege, produced documents with privileged

information redacted where possible, and provided Plaintiff with privilege logs describing the

bases for Yale's privilege assertions.

Yale's scrupulous and judicious approach to privilege stands in stark contrast to

Plaintiff's approach, which has included, among other baseless assertions, claims that a former

friend (who later accused him of sexual assault) was acting as an unpaid "paralegal" and,

therefore, their communications were covered by attorney-client privilege. Despite Yale's

exhaustive discovery efforts, Plaintiff's unreasonable and onerous demands have continued to proliferate.

Indeed, despite the Court's multiple warnings and admonishments, Plaintiff's discovery misuses persist. On June 16, 2025, Plaintiff posted the following message to his X/Twitter page, referencing his Motions to Compel directed to Yale:



This post demonstrates Plaintiff's intent to misuse discovery, harass Defendants, and litigate this case on social media. The Court should reject Plaintiff's attempt to access Yale's privileged information and deny the Motion.

Plaintiff has filed a baseless motion seeking access to Yale's privileged documents. Yale has appropriately asserted privilege over confidential communications with its attorneys that were made to seek or provide legal advice, as well as over those documents properly protected from disclosure by the attorney work-product doctrine. Moreover, the Court need not even consider this Motion because Plaintiff's failure to comply with the Federal and Local Rules, as well as his discovery abuses, provides ample ground to deny the Motion.

## II.    CONCISE NATURE OF THE CASE AS IT RELATES TO THIS MOTION

On January 28, 2025, following the completion of its ESI production, Yale produced its initial privilege log ("Initial Log") that contained a list of the documents withheld on the basis of privilege, along with descriptions for each document sufficient to determine the basis of the privilege. *See* Affidavit of Maria L. Laurato, at ¶ 3. Plaintiff did not raise any issue as to the sufficiency of Yale's Initial Log. *Id.*, at ¶ 4.

Three months later, on April 28, 2025, Yale made a supplemental production that included, among other documents, previously withheld documents which Yale determined it could produce in redacted form. Exhibit A, Email from Attorney Laurato dated April 28, 2025. Yale updated its privilege log to identify by Bates number the previously withheld, but newly produced, redacted documents (the "April 28 Log"). Laurato Aff., at ¶ 5.  The April 28 Log identifies 193 entries corresponding to documents that Yale withheld or redacted for privilege, along with a description of the subject matter of the document. Exhibit B, Yale's April 28 Log. The subject matter descriptions on the April 28 Log are *identical* to those on Yale's Initial Log. Laurato Aff., at ¶ 6.

On April 29, 2025, three months after receiving Yale's Initial Log, Plaintiff raised for the first time a purported issue with the sufficiency of the subject matter descriptions. Exhibit C, Email from Attorney Taubes dated April 29, 2025. According to Plaintiff, there were entries for which he could not "determine from the current descriptions whether [the attorneys included thereon] were providing legal or other advice" and that the parties should discuss this issue at their next meet and confer. *Id.* Plaintiff did not identify any specific entries with which he had issues.

A few days later, on May 4, 2025, Plaintiff's counsel identified twenty-nine (29) "specific entries" that he argued were "improperly withheld" due to purportedly "vague and incomplete justifications . . ." Exhibit D, Email from Attorney Taubes dated May 4, 2025. The 29 entries Plaintiff identified as being improperly withheld were entries: 1, 2, 18, 21, 23, 34, 38, 40, 44–48, 55, 57, 59, 64, 65, 70–71, 96, 100, 112, 114, 116, 118, 132, 183 and 188. Id.[1]

On May 8, 2025, the parties met and conferred on these 29 specific entries on Yale's April 28 Log. Laurato Aff., at ¶ 7.[2] To prepare for that meeting, counsel for Yale reviewed each of the 29 challenged entries. Id., at ¶ 8. Less than a week later, Plaintiff filed this Motion to Compel, which seeks to compel the production of documents corresponding to **fifty-nine (59) entries** on the April 28 Log, despite Plaintiff's identification of only twenty-nine purportedly objectionable entries just days before. Of the 59 entries Plaintiff now challenges, **46 entries were never subject to any meet and confer**.[3] Plaintiff's Motion challenges only 13 of the 29 entries originally identified in Plaintiff's May 4 email and for which the parties have met and conferred.[4]

## III.    LEGAL STANDARDS

"[C]ompelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *Highland Capital Mgmt., L.P.*

---

[1] Plaintiff also challenged "FERPA Claims Generally" without otherwise identifying any specific entry he claimed was being improperly withheld on that basis. *See* Ex. D. Plaintiff did not raise any issues concerning FERPA at the May 8 meet and confer. Laurato Aff., at ¶ 7.

[2] Plaintiff's May 4 email raised issues as to the sufficiency of the descriptions on Yale's April 28 Log. *See* Ex. D. Yale's position at the meet and confer was that the descriptions on the log satisfied Rule 26, but in an attempt to reach a compromise with Plaintiff, it agreed to add additional specificity to the descriptions of the 29 challenged entries. Laurato Aff. at ¶ 9. Counsel for Yale revised the challenged descriptions on its April 28 Log and served Plaintiff with that log on May 8, 2025 ("May 8 Log"). Exhibit E, Email from Attorney Laurato dated May 8, 2025. The revised descriptions should have resolved Plaintiff's concerns. Although the Motion makes reference to certain descriptions on Yale's April 28 Log (*see* Motion, at 3, 5), Plaintiff has not otherwise argued that those descriptions are insufficient and he makes no reference at all to the May 8 Log.

[3] Plaintiff never sought to meet and confer on the following entries on Yale's April 28 Log: 4, 5, 12–14, 16, 31, 32, 36, 37, 39, 50–52, 60, 61, 66– 69, 72–78, 92, 95, 97, 98, 99, 101, 109–11, 113, 115, 117, and 119–25.

[4] The challenged entries on which the parties have met and conferred are found at entry numbers: 2, 38, 40, 55, 70, 71, 96, 100, 112, 114, 116, 118, and 183.

*v. U.S.*, 626 F.App'x 324, 328 (2d Cir. 2015) (citation omitted). "[T]he sanctity of that privilege is established not only by this Court's jurisprudence, but by the Federal Rules of Civil Procedure." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001) (citing Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.")).

## IV.    ARGUMENT

### A.    <u>The Court should deny Plaintiff's Motion based on his failure to comply with Local Rule 37's mandate to meet and confer prior to filing a motion to compel.</u>

For the second time in this case, Plaintiff has disregarded the Federal and Local Rules when filing his Motion to Compel. (*See* ECF 224 and ECF 225). Specifically, Plaintiff has wholly failed to meet and confer on 46 of the 59 privilege log entries for which he now seeks production. As a result, the Court is again burdened with another motion that is noncompliant with the Rules.

Before moving to compel, Rule 37 of the Federal Rules of Civil Procedure requires that a movant first confer in good faith in an effort to resolve all discovery disputes without Court intervention. Fed. R. Civ. P. 37(a)(1). Similarly, Local Rule 37 prohibits a party from filing a motion to compel "unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution." Local Civ. R. 37(a).

As part of the meet-and-confer process, the requesting party must explain what the "party is actually seeking" and "what specific genuine issues" are in dispute. *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997). When a movant fails to provide that information to the opposing party, as Plaintiff has here, the appropriate response is to deny the motion to

compel. *See, e.g., Saliga v. Chemtura Corp.*, No. 3:12cv832, 2015 WL 851849, at *2 (D. Conn. Feb. 26, 2015). To do otherwise would encourage parties to ignore their meet-and-confer obligations and consequently waste the time and resources of both the Court and the parties. *See, e.g., Murphy v. Barberino Bros., Inc.*, 208 F.R.D. 483, 484 (D. Conn. 2001); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CV 7590 (DAB) JCF, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998).

Plaintiff's May 4 email about 29 "specific entries" and the parties' discussions about them at the May 8 meet and confer identified the universe of the information Plaintiff was "actually seeking" and "what specific genuine issues" were in dispute. *See Tri-Star Pictures*, 171 F.R.D. at 99. Only days later, however, Plaintiff filed a Motion to Compel seeking the production of a substantially different group of documents, including nearly four dozen about which the Plaintiff never previously raised a concern and the parties never conferred.

Plaintiff has offered no explanation for why he did not meet and confer on the 46 new privilege log entries he now challenges in the Motion. "The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible." *Excess Ins. Co. Ltd. v. Rochdale Ins. Co.*, No. 05 CV 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007). Indeed, the parties resolved 16 of the 29 specific entries Plaintiff had challenged in the meet-and-confer process; only 13 of the disputed entries were carried over to this Motion.

Plaintiff has clearly failed in his obligations under Local Rule 37(a). The Court should deny his Motion for this reason alone. *See Saliga*, 2015 WL 851849, at *2; *see also Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145–46 (D. Nev. 2015) (where plaintiff certified that a good faith meet and confer had been conducted, but defendants' opposition made clear

"the meet-and-confer process did not include meaningful discussion as to many of the specific objections that Defendants raised in response to the discovery now in dispute," the court concluded that "[t]he propriety of the disputed discovery is not otherwise properly before the Court," and it denied plaintiff's motion to compel). At the very least, the Court should reject Plaintiff's challenges to the 46 entries on which he has failed to meet and confer.

### B. The Court should sanction Plaintiff for bringing another procedurally deficient motion.

Plaintiff's serial failures to comply with Local Rule 37(a) merit sanctions. Plaintiff has not made a detailed, good faith attempt to resolve the majority of the challenges he raises in the Motion, despite his counsel's sworn assertions to the contrary. Plaintiff's "[f]ailure to hold a good faith conference is ground for the award of attorney's fees and other sanctions," *Brown v. Clayton*, No. 3:11CV714, 2013 WL 1409884, at *2 n. 3 (D. Conn. Apr. 8, 2013), and the Court should sanction him under Federal Rule 37(a)(5)(B) for bringing this motion. *See also Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1020 (2d Cir. 1988) ("[F]ailure to confer in good faith over discovery disputes in violation of a local rule clearly multiplies the proceedings . . . unreasonably and vexatiously," and is therefore sanctionable under 28 U.S.C. § 1927).  Yale asks that Plaintiff be ordered to pay Yale's reasonable attorneys' fees expended to oppose this Motion.

### C. The documents sought are protected by the attorney-client privilege.

Should the Court consider Plaintiff's Motion, it should deny it because it seeks confidential communications with Yale attorneys seeking and/or providing legal advice. This is evident from both the redacted communications Yale produced and the descriptions of the documents in Yale's privilege logs, all of which reflect Yale's detailed and thoughtful approach to privilege and its commitment to complying with its discovery obligations.

First, Plaintiff seeks a number of privileged communications involving attorneys from Yale's OGC claiming that the primary purpose of those communications "appears non-legal." Motion, at 3. He is wrong. These communications are protected by the attorney-client privilege because attorneys from Yale's Office of the General Counsel were being asked for and/or providing legal advice to University employees.[5]

"The attorney-client privilege protects communications between an attorney and a client, made in confidence, for the purpose of obtaining legal advice or services from the attorney." *In re Leslie Fay Cos. Inc. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y. 1995). The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable [the lawyer] to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

*Waugh v. Pathmark Stores, Inc.*, is illustrative. 191 F.R.D. 427 (D.N.J. 2000). There, a plaintiff suing for employment discrimination under Title IV sought to compel the deposition of defendant's in-house counsel and the production of certain documents created by counsel related to an internal investigation. *Id.* at 428. The defendant's in-house counsel represented that he was consulted by other employees of the defendant for legal advice in connection with an internal investigation, and that he did not make any decisions as to the discipline imposed or the remedial action to be instituted following the investigation. *Id.* at 429. The court held that counsel's communications with other employees were made "to gather information so that he could render a legal opinion on the issue to the actual decisionmakers." *Id.* at 432. Here, Yale's attorneys from

---

[5] The attorneys in Yale's Office of the General Counsel who appear on the April 28 Log include Caroline Hendel, Susan Sawyer, Alexander Drier, Harold Rose, and Vannesa Martinez Cecchini. *See* Ex. E.

the OGC were similarly consulted by University employees for legal advice in connection with Jane Doe's complaint against Plaintiff, the fact-finding investigation, and the UWC proceedings.

Similarly, in *Roe v. Marshall University Board of Governors*, No. 3:22-cv-00532, 2024 WL 388413 (S.D. W.Va. Jan. 31, 2024), the plaintiff, who claimed the university discriminated and retaliated against her under Title IX, sought to depose the university's general counsel based on the "significant control" the plaintiff alleged he had exercised over the university's Title IX policy and proceedings. *Id.*, at *1, *3. The plaintiff claimed that general counsel "established a direct reporting line from the Title IX Coordinator to himself in response to widespread student outrage regarding problems with Marshall's Title IX administration." *Id.*, at *3. The court, however, concluded that these activities "appear to be entirely consistent with the functions of a university's general counsel, and it is difficult to envision how any of the information that [the general counsel] could possibly provide on those matters falls outside of the attorney client privilege and/or work product doctrine." *Id.*

As in *Waugh* and *Marshall*, members of the UWC panel and other University personnel sought legal advice from Yale's OGC attorneys regarding issues that arose in connection with Plaintiff's UWC Proceeding and, in turn, counsel provided the requested legal advice. Yale's OGC attorneys' communications with members of the UWC and other administrators seeking advice on legal issues that arose in connection with Plaintiff's UWC Proceeding are protected by the attorney-client privilege. Accordingly, of the 13 entries properly before the Court, 10 are properly withheld on claims of attorney-client privilege[6] (the other 3 were not withheld on the basis of attorney-client privilege (*see* entries 70, 71, 96, discussed *infra*, at 12–16)).

---

[6] Those 10 entries are: 2, 38, 40, 55, 100, 112, 114, 116, 118, and 183. Should the Court consider entries that were not subject to a meet a confer, the same is true for all 46 entries.

Next, Plaintiff claims that he is entitled to privileged communications from Yale's OGC

attorneys advising members of the UWC and other Yale employees how to respond to media

inquiries. In *Leber v. Citigroup 401(k) Plan Inv. Comm*, No. 07-CV-09329 (SHS)(DF), 2015 WL

6437475, at *3 (S.D.N.Y. Oct. 16, 2015), the court recognized that communications with counsel

regarding media inquiries are protected by the attorney-client privilege. The plaintiffs in *Leber*

sought to compel the production of the defendant's planned response to a journalist's inquiry on

the grounds that the communications in those documents were not seeking or providing legal

advice. *Id.*, at *1. The court rejected the plaintiffs' request, concluding that the communications

did seek legal advice:

> Fundamentally, legal advice involves the interpretation and
> application of legal principles to guide future conduct or assess past
> conduct and involves the judgment of a lawyer in his capacity as a
> lawyer. Courts have recognized that attorneys who have advised
> their clients on public relations matters continued to render legal
> advice where the legal ramifications and potential adverse use of
> such communications were material factors in the development of
> the communications.

(Internal quotations and citations omitted.) *Id.*, at *3.

Here, Yale received media inquiries posing specific questions on matters such as

Plaintiff's criminal trial, the UWC Proceeding, his expulsion in 2019, and the UWC procedures.

The communications between Yale's counsel and its employees seeking and providing legal

advice as to whether and how to respond to media inquiries are protected by the attorney-client

privilege. *See In re Grand Jury Subpoenas Dated Mar. 24, 2003,* 265 F. Supp. 2d 321, 330

(S.D.N.Y. 2003) ("Questions such as whether the client should speak to the media at all, whether

to do so directly or through representatives, whether and to what extent to comment on specific

allegations, and a host of others can be decided without careful legal input only at the client's

extreme peril."). This Court should also deny Plaintiff's Motion to Compel the production of these documents.

Accordingly, of the entries properly before the Court, the documents corresponding to entries 40 and 55 are properly withheld on claims of attorney-client privilege.[7]

1. Communications between attorneys from Yale's Office of the General Counsel and other Yale employees do not waive the attorney-client privilege.

In an ostensible last-ditch effort to argue that he is entitled to Yale's privileged communications, Plaintiff resorts to a waiver argument. He identifies a single entry on Yale's April 28 Log (entry 50, *and one for which the parties have not met and conferred*) from the 59 he has challenged to argue that the inclusion of other Yale employees on communications with its attorneys from its Office of the General Counsel somehow waives the attorney-client privilege. Motion, at 5. Plaintiff's argument is without merit.

The attorney-client privilege applies not only to individuals, but also to corporate entities. *See Upjohn Co.,* 449 U.S. at 391–92; *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943–44 (2d Cir. 1992). "[T]he distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519–20 (S.D.N.Y. 2001). It is "well settled that [the attorney-client] privilege covers corporate employees and corporate counsel when the communications concerned matter within the scope of the employees' corporate duties, and the employees themselves [are] sufficiently aware that they [are] being questioned in order that the corporation [can] obtain legal advice." *People's United Bank v. PeoplesBank*, No. 3:08cv01858 (PCD), 2009 WL 10689492, at * 1 (D. Conn. Dec. 28, 2009) (quoting *Upjohn Co.*, 449 U.S. at 384).

---

[7] The same is true for the following 15 entries that were not subject to a meet and confer: 32, 36, 37, 39, 50, 51, 92, 95, 109, 111, 113, 122, 123, 124, and 125.

{N6070724}                                           11

Here, Plaintiff baselessly claims that the inclusion of two additional Yale employees on an email with Yale's OGC attorneys waives the privilege because "they are not necessary agents of the legal consultation." *See* Motion, at 5. The purpose of the subject communication, however, was seeking and providing legal advice as to how to respond to a media inquiry. Contrary to Plaintiff's claim, the inclusion of these two employees, whose roles at Yale Plaintiff acknowledges center around communications and public affairs, confirms that the communication is privileged. *See Leber*, 2015 WL 6437475, at *3 ("attorneys who have advised their clients on public relations matters continued to render legal advice where the legal ramifications and potential adverse use of such communications were material factors in the development of the communications"); *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 330. Plaintiff's argument is without merit and Yale's attorney-client privilege has not been waived.

### 2. Yale has not withheld any document solely on the basis of FERPA.

As to Plaintiff's argument concerning FERPA, and as Yale's April 28 Log reflects, Yale has not withheld any documents solely on the basis of FERPA. Instead, Yale has identified on its April 28 Log those communications and documents protected from disclosure by the attorney-client privilege or work-product doctrine that *also* implicate FERPA confidentiality concerns.[8]

Not only does Plaintiff acknowledge that "FERPA is a confidentiality statute" that "protects the privacy of student education records" (Motion, at 8), the cases he relies on confirm these protections. *See Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977) (The purpose of FERPA is to "assure parents of students . . . access to their education records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent."); *see also Ragusa v. Malverne Union Free School Dist.*, 549 F. Supp. 2d

---

[8] *See also* n. 1 to this Opposition, *supra*.

288, 291 (E.D.N.Y. 2008) (underscoring that a party seeking disclosure of education records protected by FERPA bears "a significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.").

Courts consider FERPA and its protections in the litigation context, and there is nothing improper about Yale's identification on its April 28 Log of privileged communications that *also* implicate FERPA confidentiality concerns. *See Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 75 (1st Cir. 2022) ("The privacy concerns animating FERPA continue to have force notwithstanding the litigation, but they become subject to the needs of the judicial process."). Plaintiff's claims are baseless.

> ### 3. The Court should reject Plaintiff's attempt to invade Jane Doe's psychotherapist-patient privilege.

As Plaintiff acknowledges, the psychotherapist-patient "privilege belongs to the patient (Jane Doe), and only she can waive it or authorize disclosure." Motion, at 11. Despite this acknowledgement, Plaintiff claims entitlement to the privileged communications withheld on Yale's April 28 Log at entries 2 and 96, baselessly arguing that *Yale* somehow waived Jane's privilege. Plaintiff is wrong.

Yale has withheld two communications on its April 28 Log implicating Jane's psychotherapist-privilege. *See* Ex. B, at entries 2 and 96. Entry 2 is a confidential communication—independently protected from disclosure by the attorney-client privilege—concerning Jane Doe's privileged communications with her therapist, as is confirmed by the corresponding description on the April 28 Log. Despite the facially privileged nature of this communication, Plaintiff claims that the inclusion of several University administrators and an attorney from Yale's Office of the General Counsel on the email somehow waives what "would ordinarily be privileged as a therapeutic communication." Motion, at 11. But, as Plaintiff

concedes, *only* Jane may waive the privilege or authorize disclosure, and she unequivocally has not. *See United States v. Ray*, 585 F. Supp. 3d 445, 451 (S.D.N.Y. 2022) ("[T]he psychotherapist-patient privilege, like other privileges, may be waived by the privilege holder.") (citation omitted); *see also* Conn. Gen. Stat. § 52-146d(3) (requiring a patient's waiver of the privilege to be in writing); Conn. Gen. Stat. § 52-146c(a)(4) (same). The communication withheld at entry 2 falls squarely within the protections of the psychotherapist-patient privilege (as well as the attorney-client privilege).

The same is true for the communication withheld at entry 96, which is a confidential communication between two Yale mental health providers. The privilege is not destroyed when information is communicated from one mental health provider to another. *See Ray*, 585 F. Supp. 3d at 457 ("the psychotherapist-patient privilege extends to members of a medical team that are ultimately providing mental health care") (internal quotation marks omitted). What's more, Yale produced this email to Plaintiff in redacted form. He thus has the relevant, non-privileged, information to which he is entitled.

Yale also adopts and incorporates the arguments on this issue as set forth in Jane Doe's Opposition. For all these reasons, the Court should deny Plaintiff's request to compel the production of the communications properly withheld on the April 28 Log at entries 2 and 96.[9]

## D. **Plaintiff is not Entitled to Documents Prepared in Anticipation of Litigation.**

The work-product privilege is broader than the attorney-client privilege. *See, e.g.*, *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), and *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). The doctrine

---

[9] Should the Court order, however, that the communication withheld at entry 2 and/or 96 be produced, Yale respectfully requests that Jane Doe be provided an opportunity to review such communication and submit to the Court any argument regarding its disclosure before Yale is required to make a production.

shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). Absent a showing of necessity, documents created in anticipation of litigation are protected under the work-product doctrine and are not subject to disclosure. *Hickman*, 329 U.S. at 508.[10]

Documents are prepared in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citations omitted). Here, the documents and communications withheld as work product were exchanged and/or prepared by Yale's OGC attorneys and other University personnel when the prospect of litigation loomed or while related litigation was pending. Plaintiff's claims to the contrary are wholly lacking for several reasons.

First, without citing to any legal authority, Plaintiff argues that "[u]nless Yale can show a specific, concrete threat of litigation by Mr. Khan as of 2015 . . . it cannot legitimately claim [documents concerning the UWC proceeding] were work product." Motion, at 7. Plaintiff is wrong. "[W]ork product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision." *Adlman*, 134 F.3d at 1199. Rather, it is sufficient that it be "prepared because of the prospect of litigation." *Id.* at 1202. Indeed, "anticipation of litigation" for purposes of Rule 26(b)(3) is not limited to anticipated litigation in court, and also includes anticipated "future adversarial administrative proceedings." *Golden Trade, S.r.L. v. Lee Apparel Co.*, 1992 WL 367070, at *4 (S.D.N.Y. Nov.

---

[10] Of the 13 entries on which the parties met and conferred, entries 38, 40, 55, 70, 71, 112, 116, 118, and 183 are properly withheld on claims of attorney work product. Should the Court consider entries that were not subject to a meet and confer, and those not properly before this Court, Yale was correct to withhold on work product grounds the following: 4, 5, 12, 13, 31, 32, 39, 50, 51, 67, 69, 75, 78, 117, and 119.

20, 1992); *see also Farrell v. U.S. Olympic & Paralympic Comm.*, No. 1:20-CV-01178
(FJS/CFH), 2023 WL 4033290, at *17 (N.D.N.Y. June 15, 2023) (arbitration and adversarial
administrative proceedings can be considered "litigation" within the realm of Fed. R. Civ. P.
26(b)(3).).

Second, to the extent Plaintiff argues there needs to be a "threat" of litigation, Plaintiff
put Yale on such notice as early as 2015. By letter dated November 12, 2015, and in response to
Plaintiff's emergency suspension, Plaintiff's attorneys informed Yale that they "adamantly deny
the allegations against Mr. Khan, [and] find Yale College's treatment of him highly
objectionable, and **susceptible to legal challenge**." (emphasis added.) Exhibit F, at 1, Letter
from The Pattis Law Firm dated November 12, 2015. Plaintiff renewed this threat again in 2018,
when Plaintiff wrote, in response to Jane Doe's revised UWC complaint, that he and his attorney
Margaret Valois "adamantly deny the allegations against me, find Yale College's treatment of me
highly objectionable, and **susceptible to legal challenge**." (emphasis added.) Exhibit G, Letter
from Plaintiff dated July 7, 2018.

Third, Plaintiff not only threatened suit, he followed through, filing an action against Yale
on October 10, 2018, in the Connecticut Superior Court seeking to enjoin Yale from enforcing
Plaintiff's emergency suspension. Exhibit H, Copy of Plaintiff's Verified Complaint dated
October 10, 2018. This is an additional basis on which the documents are protected as work
product doctrine. *See Montesa v. Schwartz*, 12 Civ. 6057, 2016 WL 3476431, at *9 (S.D.N.Y.
June 20, 2016) (document properly withheld under work-product doctrine "despite the fact that
this work product is actually in anticipation of different litigation than the case at bar"); *Ramsey
v. NYP Holding, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055, at *7 n. 6 (S.D.N.Y. 2008) ("[A]
party may withhold in one lawsuit the work product that it has created or caused to be created

because of another lawsuit in which it has been involved or anticipates being involved."); *Cohen v. City of N.Y.*, 255 F.R.D. 110, 124 (S.D.N.Y. 2008) ("[T]he weight of authority now clearly favors protecting work product that was generated as part of an earlier litigation at least where, as here, that litigation is related to the current suit.").

In 2015, communications between Yale's OGC attorneys and other University employees concerning Plaintiff's suspension and UWC Proceeding were prepared "because of the prospect of [Plaintiff's threatened] litigation." *See Adlman*, 134 F.3d at 1202. The same is true of those communications made in 2018, and certainly true for those communications after Plaintiff filed the injunction action on October 10, 2018. Accordingly, these documents fall under the protection of Rule 26(b)(3) and are therefore only discoverable upon a showing that Plaintiff has a substantial need for the materials to prepare his case.

Finally, Plaintiff offers no explanation of his "substantial need" to discover these confidential work-product communications. A party seeking discovery of attorney work-product must show "substantial need" for fact work product. *In re Grand Jury*, 219 F.3d at 190. As for work product which, as in the present case shows "mental impressions, conclusions, opinions, or legal theories of an attorney," Fed. R. Civ. P. 26(b)(3), the Second Circuit has held that, "at a minimum such material is to be protected <u>unless a highly persuasive showing [of need] is made</u>." *Id.* (citations omitted) (emphasis added).

Plaintiff's conclusory and unsupported assertion that Yale's privileged documents "likely contain facts essential to Plaintiff's claims" (Motion, at 7) falls far short of demonstrating a substantial need, much less "a highly persuasive showing." Accordingly, the Court should reject Plaintiff's attempts to force disclosure of Yale's attorneys' protected work product.

## V.    CONCLUSION

The Court should outright deny Plaintiff's Motion without reaching the merits because he violated the Federal and Local Rules' mandate to meet and confer prior to bringing the Motion. At the very least, the Court should reject Plaintiff's challenges to the 46 entries on which the parties have never met and conferred. Alternatively, the Court should reject Plaintiff's baseless attempts to invade Yale's attorney client privilege and destroy its attorneys' protected work product because the communications on Yale's April 28 Log included attorneys from Yale's Office of the General Counsel, who were providing legal advice to University personnel relating to legal issues connected to Plaintiff's UWC Proceeding or were otherwise made with an eye toward possible or pending litigation.[11] For all of these reasons, the Court should deny Plaintiff's Motion and award sanctions in an amount equal to the legal fees incurred by Yale to respond to Plaintiff's motion.[12]

---

[11] In accordance with the Court's Order (ECF 329), Yale will submit for *in camera* review a notebook containing copies of the documents corresponding to the thirteen entries on which the parties have met and conferred. Yale will also submit a notebook containing copies of the documents corresponding to the forty-six entries that have not been subject to any meet and confer. By doing so, Yale seeks to comply with this Court's Order and not waive its argument that these 46 documents are not properly before the Court based on Plaintiff's failure to comply with his obligations under the Federal and Local Rules.

[12] If the Court grants the motion for sanctions, defense counsel will file an affidavit detailing the legal fees.

{N6070724}                                                     18

Respectfully submitted,
Yale University

By: _____
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on June 17, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Maria L. Laurato