## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | June 27, 2025 |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS [ECF No. 332]

Defendants move to dismiss this case based largely on eight accusations leveled at Plaintiff and his counsel that are false, unsubstantiated, and overreaching. Defendants accuse Plaintiff of revealing Ms. Doe's identity in violation of this Court's orders; but Plaintiff has not done so, and Defendants have no proof that he has done so.[1] Defendants then accuse counsel of "intentional" misconduct, by trying to delay this case by giving them too many documents for them to review. This accusation is both false and absurd. In the time the undersigned counsel has been involved in this years-long case, Defendants have been the cause of all delay and any alternative action by the undersigned would have delayed the case more than what I did. Finally, Defendants claim that Plaintiff lies. This is surely not the only case in this Court where one side accuses the other side of lying. Indeed, Plaintiff's *claim* is one of *defamation*. Defendants' motion fails to reveal misconduct but succeeds at distracting from the issues. Having attempted to hit a grand slam by getting this Court to dismiss meritorious claims, the motion strikes out by making serious claims that it fails to back up with evidence. Accordingly, the motion should be denied, and this Court should lift its *sua sponte* stay of discovery, ECF No. 361, immediately.

---

[1] Plaintiff's posting of June 16, 2025, which this Court considered to be a "present intention or thinly veiled threat," ECF No. 354, to disclose Ms. Doe's identity, is not so: it is an expression of Mr. Khan's wish to repair his reputation on an even playing field through the lawful modification of this Court's orders of pseudonymity, which he has sought to do by motion filed in this Court. The Plaintiff did not and does not intend for the referenced post to be considered an intention by him or a threat by him to violate this Court's orders.

1

## I.     LEGAL STANDARD

As this Court held in its January ruling on Defendants' last motion to dismiss, ECF No. 265, a district court should not dismiss a case as a sanction lightly.

The inherent power to sanction bad faith conduct "must be exercised with restraint and discretion," *id.* at 3 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)), and "only where there is clear and convincing evidence of bad faith." *Id.*  "The sanction of dismissal . . . is a drastic remedy," *id.*, citing and quoting *Davis v. Saint Luke's – Roosevelt Hosp. Ctr.*, 771 F. App'x 116 (2d Cir. 2019). It is appropriate in the event of "flagrant bad faith," *NHL v. Metro. Hockey Club,* 427 U.S. 639, 640 (1976), or where "a party abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." ECF No. 265 at 3, citing *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-cv-6279, 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), aff'd sub nom. *Davis*, 771 F. App'x 116.

Under Rule 41(b), a district court may also, in its discretion, dismiss an action as a sanction. ECF No. 265 at 3-4. This Court laid out the five factors courts in the Second Circuit consider:

> (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Spencer v. Doe*, 139 F.3d 107, 112-13 (2d Cir. 1998) (citation omitted). Because a Rule 41(b) dismissal "is one of the harshest sanctions," it must "'be proceeded by particular procedural prerequisites, including notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls v. Cty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017). We do request an evidentiary hearing if this Court believes one is necessary.

## II.    RESPONSE TO FACTUAL ALLEGATIONS

*1.    First Accusation – Disclosure to Blogger – False & Unsupported by Evidence*

The Defendants' first accusation, ECF No. 332 at 7-8, is that Plaintiff gave a blogger "actual images of [Defendant] Jane [Doe] in violation of Judge Garcia's and this Court's orders . . . ." Defendants' evidence for this accusation comes from emails freely produced by Plaintiff, which prove that Plaintiff never sent any evidence or documentation from this case to the blogger.

The blogger knowing who Jane Doe is—Defendants' only evidence and support for this argument—proves nothing. A Connecticut Superior Court Judge has observed that Ms. Doe's identity is "public information" and "common knowledge." *State of Connecticut v. Saifullah Khan*, NNH-CR15-0162194 (Jan. 31, 2025) (Vitale, J.). Plaintiff is obviously not the only possible source for this information.

Defendants also complain that Plaintiff, while being interviewed by the blogger, stated the facts that (1) Mr. Khan, who has been labeled a "rapist" by Defendants, has his name all over the media while his accuser has not; (2) that this fact is arguably more problematic because he was found Not Guilty of her accusations in a court of law; and (3) "If you're going to accuse somebody and ruin their life, your name should be attached to your lies or your truth." ECF No. 332 at 8.

It is not a violation of a court order for Mr. Khan to state his opinions, backed by facts, about this case. It would be a violation of a court order to identify Ms. Doe, directly or indirectly. None of Plaintiff's comments do that at all. If anything, Mr. Khan's third comment is essentially identical to a statement made by Yale University itself in a litigation in this Court just a few days ago. *Doe v. Yale, et al.*, 3:25-cv-00787-OAW, ECF No. 76 (June 24, 2025) ("[Parties] who have

3

been identified by name in the court record may be prejudiced by allowing [another party] to attack them while . . . [she] remains anonymous. . . . The parties to every lawsuit should start on an equal footing."). It would be ironic to sanction Mr. Khan for saying essentially the same thing Yale University said when in a litigation against a pseudonymous party.

Finally, Defendants note that when Mr. Khan republished his interview on social media, that one of the captions for the sharing said "Next, naming the infamous Jane Doe!" and that several third parties who watched his interview with the blogger posted Jane's real name publicly. It is true that Mr. Khan has moved in this court to remove Ms. Doe's pseudonymity. It is not a violation of this Court's orders for him to express his wishes that his motion before this Court be granted. If the motion is granted, Ms. Doe will be named. It is not a violation of this Court's orders for Mr. Khan to share a video where he is interviewed about his case, absent a violation of the Court's orders. Mr. Khan has been labeled a rapist by some of the most powerful and prestigious institutions in the world. He seeks to defend himself and his reputation by putting his side of the story out there. A major component of that story and part of the unfairness is that the person who accused him of rape is still anonymous, while his reputation has been so harmed. He can complain about that unfairness without naming Jane Doe and therefore without violating the Court's orders. That's all he has done here.

Mr. Khan cannot be punished for the fact that Ms. Doe's name is common knowledge and public information that third parties can access and, in exercise of their own rights, share, in outrage at her conduct. That is not Mr. Khan, *directly* or *indirectly*, identifying Ms. Doe. That is just the reality that there exists an unfair, unfortunate situation that many individuals in the public are concerned about.

Defendants say Mr. Khan "apparently" gave the blogger this information because they have no proof—because there is no proof—that he did so. ECF No. 332 at 9. They have no proof because he did not give the blogger the information. They have proof that Mr. Khan was "complaining about the fact that his name is all over the media but Jane's name is not," *id.*, but the Court's order did not restrain Mr. Khan from complaining about the Court's order. They have proof that Mr. Khan had a "desire to name Jane," *id.*, but he is seeking to vindicate that desire lawfully, with a motion to unseal her name legally. He has not done so illegally in violation of this Court's orders, directly or indirectly. Complaints about Jane Doe's anonymity are not disclosures or revelations of Ms. Doe's identity. Mr. Khan did not "solicit . . . help in outing Jane." ECF No. 332 at 10. To conclude that he violated this Court's order preventing the disclosure of Ms. Doe's identity merely because he complained about the restriction, in an interview with the media, and expressed his opinion about what should happen, is wrong. That is not what this Court ordered.

2.    *Second Accusation – "Maintaining" Name – Is False, Unsupported*

Defendants' second accusation, that the Plaintiff is "maintaining" Jane Doe's name "on one of his social media accounts," ECF No. 332 at 10-11, is false, shows a lack of technical awareness on counsel's part, and is unsupported by evidence. Exhibit F shows, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ post is neither under Mr. Khan's control—he cannot remove it—nor subject to this Court's March 18, 2024 order that Mr. Khan remove posts he had made previously that referenced Ms. Doe. This accusation is completely meaningless and

frivolous because nothing Mr. Khan could do himself would remove this post. He did not post it. He is not "maintaining" it. He is not "maintaining" Ms. Doe's name on social media, nor is this "egregious," "particularly stunning," or evidence of contempt. ECF No. 332 at 11.

   3.      *Third Accusation – of Intentional Misconduct by Counsel – is Unsupported*

   Next, Defendants attack counsel, accusing the undersigned of "intentional" misconduct. ECF No. 332 at 15. But far from "overwhelming" evidence, *id.*, Defendants have presented no evidence of any misconduct on counsel's part, let alone intentional misconduct. In fact, Defendants blame Plaintiff for giving them exactly what they asked for—a broad range of documents that were responsive to their numerous search terms, extensive date ranges, and broad discovery requests. Defendants are now complaining about receiving too much, while at the same time *also* complaining that the production was "underinclusive," ECF No. 332 at 14 n.10, too, showing that essentially none of the undersigned's efforts would ever result in Defendants "accept[ing] Plaintiff at his word," ECF No. 332 at 33. Any alternative course of action by the undersigned would have caused even greater delay than any delay that Defendants attribute to the undersigned's conduct described in their motion.

   As an opening bit of context and background for the Defendants' accusation, it should be noted that the Plaintiff cooperated with the Defendants on a very abbreviated agreed schedule to produce ESI from the Plaintiff's email accounts and social media accounts. We used the same vendor as Defendants for their ESI production so that the documents could be provided to them in a format that would allow them to search and filter the documents provided. We erred on the side of being overinclusive, because the Plaintiff has chosen to be forthright and open in this discovery process, providing a multitude of releases to the Defendants as well for them to obtain their own documents. We have sought to avoid conflicts where Defendants accuse us of hiding

documents, because we have no intention to hide anything from them. Where we are accused of being "underinclusive," ECF No. 332 at 14 n.10, Defendants admittedly point to "messages [that] did not include the search terms Defendants asked for," *id.*, which would *necessarily* mean they were not in the universe of documents that the Plaintiff could have reviewed and produced to them. When documents were within the Defendants' many search terms, and contained "hits," and were even arguably responsive to the Defendants' dozens of discovery requests, we produced the documents instead of inviting more conflict later on about what should have been produced earlier. Far from misconduct, this should be the ordinary course in discovery and should be the way that Defendants behave too—instead, as we have noted in our Motions to Compel, the Defendants have been the ones abusing the discovery process, using it to shield documents from disclosure that Plaintiff needs to prove his case.[2]

For example, the Defendants complain about ESI provided to them that shows purchases made by the Plaintiff, ECF No. 332 at 13, which they contend contain irrelevant information. Nothing Plaintiff has produced does not contain Defendants' chosen search terms, as applied to the myriad of sources of data requested by Defendants. Defendants sought a very broad scope of information. For example: because this case involved allegations that Mr. Khan was essentially homeless because of the false rape allegation and wrongful expulsion, Defendants asked in discovery for "all addresses [he has] stayed at and/or resided at since" October 31, 2015. When Plaintiff claimed in his interrogatory responses that he could not remember every address for

_____

[2] The undersigned takes the accusation of intentional misconduct very seriously. None of the counsel who have joined in accusing the undersigned raised any of the concerns in the motion with the undersigned prior to filing the motion. The undersigned has at many times taken issue with the course of action taken by opposing counsel in this litigation and has on many occasions believed that it has caused this case significant undue delay. The undersigned counsel does not benefit from delay in any form and seeks to move the case toward resolution like he does in every case. Instead of impugning improper motives, accusing others of intentional misconduct, or filing for sanctions, the undersigned has sought to keep the case focused on issues that will materially advance the litigation and will continue to do so.

every single night, Defendant Doe sent Plaintiff a deficiency letter in August 2024 stating that Plaintiff should provide all of the information available to him, *e.g.*, "[s]tayed at a hotel in Omaha, Nebraska for two nights in July 2018." Defendants cannot claim that they want to know Mr. Khan's whereabouts for every single night for a ten-year period, including a two-night stay in Omaha, Nebraska in July 2018, but then complain when Mr. Khan provides his financial and personal data that he is doing a "document dump." They instead should be happy they get a large amount of information quickly, so they do not have to fight for years to get the data, like Plaintiff does when seeking information from Defendants.

Defendants complain about being given "[c]redit card payment reminders," ECF No. 332 at 13, while asking for all sorts of financial information about Mr. Khan to test his damages claims regarding emotional and financial stress. They complain about having announcements regarding conferences, or announcements from Yale, *id.*, even though these represent the opportunities he lost when he was falsely branded a rapist and exiled from his education. They even complain about receiving emails related to Mr. Khan's work in Families Advocating for Campus Equality ("FACE"), one of Mr. Khan's most significant activities since this false rape accusation. Defendants concede that some "FACE emails relate to this case," ECF No. 332 at 13, but it is apparently misconduct that the undersigned counsel could not guess in the short time period given to produce the emails which ones of them Defendants would believe are "relevant" and one which they feel are "irrelevant." Of course, that is not the standard—documents are discoverable even if they are irrelevant—documents are discoverable if requesting them is "reasonably calculated to lead to the discovery of admissible evidence,"—and to the extent that they are FACE emails, that Defendants requested FACE emails, that they contain Defendants' search terms, and FACE emails are sometimes according to Defendants relevant, how can

Plaintiff be blamed for being forthcoming and sharing them with Defendants in discovery? They obviously could potentially lead to the discovery of admissible evidence if Defendants believe that at least *some* of them are relevant. It is hard to see how Plaintiff can be punished for being forthcoming and erring on the side of producing the communications.

Out of more than 70,000 pages of documents produced in a short time period, some documents, videos, and photos will of course be inadvertently produced. Our rules even provide for the clawback of *privileged* materials when inadvertent productions happen. Defendants' contention that "tens of thousands of additional unresponsive and entirely irrelevant documents were included," ECF No. 332 at 13-14, is simply incorrect, though, and their accusation that this somehow represents intentional misconduct is baseless. We did not "load" our production with documents to "prejudice Defendants on the eve of depositions in order to force a delay of this case." ECF No. 332 at 14. We gave Defendants what they were asking for, so they can take the depositions they want to take, in a format that allowed for the rapid searching, filtering, sorting of the documents. The only delay in this case is the delay caused by Defendants' *withholding* of documents. This is a delay of the Defendants' causing, not by the Plaintiff, who worked diligently to produce to Defendants everything they could possibly ask for (though they apparently have now discovered "additional categories" of information that they want to still seek, ECF No. 360 at 1-2, and they apparently also believe that our production was "underinclusive," ECF No. 332 at 14 n.10).

It is not clear what "depositions of Yale witnesses were imminent," ECF No. 332 at 14, and the Defendants' accusation that Plaintiff was trying to postpone depositions that were not even scheduled is false. It was not "impossible for Defendants to make an informed and timely evaluation of whether to file a motion to compel," ECF No. 332 at 14, simply because they asked

for and received many documents in response to their requests. Yes, the undersigned did represent to Judge Garcia that it was an enormous undertaking and that we reviewed a large amount of material, ECF No. 332 at 15 n.11, including all of the "hits" to Defendants' terms. Yes, it even ruined the undersigned's vacation, because he had to take several evenings to review thousands of pages of documents overnight in order to make the production complete. I did all of that to ensure that the case would move forward. Defendants' motion portrays my diligent efforts at misconduct in a way that makes the undersigned sick. It was misconduct when we concluded that, given the broad requests, broad search terms, and requests for specific information, it was warranted to produce the documents that Defendants requested? How can that be? Defendants cite no case where this type of inference has been drawn and it would be unreasonable to do so.

In fact, Plaintiff's disclosure of the documents in a forthright matter actually resulted in progress, not delay in this case. It is likely what spurred the Defendants to produce additional documents, as when the undersigned appeared, four years into this case, only 400 pages had been produced.

If Plaintiff had withheld any of the documents he produced, any of the documents that Plaintiff withheld would have been subject to additional motion practice from Defendants contending that Plaintiff was hiding something from them. By giving the documents to the Defendants, in a searchable, sortable, filterable format, using their own technology vendor, Plaintiff actually helped this case move more smoothly and get back on track. That is the undersigned's goal in every case. That has been the undersigned's practice in this case. We have been working closely with Judge Garcia to complete discovery and move this case to adjudication on the merits. Opposing counsel have not once raised their accusation of intentional misconduct by me with me. Although Defendants state that they "do not lightly contend that this

conduct was intentional," they hardly show it, making the accusation without the evidence to support it, because it is false. The third accusation, against counsel, is not only false but outrageous, as the undersigned counsel has dedicated himself diligently for months to advancing this case toward resolution and nothing else. But this is emblematic of all of the accusations in Defendants' meritless motion.

    *4.    Fourth Accusation – "Misleading" Interrogatory Responses – Meritless*

Next, Defendants say Plaintiff "lied and misled" Defendants in his responses to their interrogatories. ECF No. 332 at 16. Plaintiff did not lie, he did not mislead, and Defendants' "evidence" for this accusation is itself misleading. Defendants base this accusation on documents they produced to the Plaintiff <u>after</u> he gave his interrogatory responses, documents they obtained from Plaintiff (negating any intention to deceive), and documents they obtained from Plaintiff's mental health providers. ECF No. 332 at 18-22. Exhibits K, L, O, P, and Q, for example, are <u>all</u> documents that Yale withheld <u>for years</u>, including long after Plaintiff responded to the interrogatories. Far from showing discovery abuse by the Plaintiff, this entire argument shows an abuse by Defendants, while failing to show any sort of "violation" that in prior precedent has led to the dismissal of a case where there are contested issues of material fact. That parties disagree about facts is not a subject of a motion to dismiss.

Defendants' accusations here tend to actually show that Plainiff is being forthcoming, not that he has done anything wrong. For example, Defendants have an email where Plaintiff shared a link many years ago that relates to one of the alleged incidents they now accuse him of omitting from his interrogatory response. ECF No. 332 at 20. If Plaintiff had any motive to testify falsely, hide evidence, or mislead, why would he produce this email to Defendants? All this proves is that Plaintiff did not consider the incident to be an alleged incident of sexual

misconduct or did not remember that incident at the time. This is fodder for a deposition. This is not "proof that Plaintiff lied." The mere fact that a link to an article was shared in an email many (over a decade) years ago is not proof that the Plaintiff lied in his interrogatory response.

Defendants' accusation is misleading because these "allegations of sexual misconduct" are not actually allegations of sexual misconduct by Plaintiff. They say in April 2018 Plaintiff made another student "feel uncomfortable" and "creeped out" because he *looked at* a publicly posted Facebook photo and because he "liked" it. ECF No. 332 at 21. What "sexual misconduct" by Plaintiff is that? How is that "sexual assault . . . rape, groping . . . non-consensual sexual contact . . . sexual harassment, intimate partner violence, stalking, . . . conduct of a sexual nature that is non-consensual, or . . . threatening or intimidating"? ECF No. 332 at 17 (citing Defendants' definition of "sexual misconduct"). Is it non-consensual, threatening, and intimidating to "like" someone's publicly posted Facebook photo, photos which are presumably put on the public social media platform for…likes?

Simply because Defendants disagree with Plaintiff's interrogatory responses does not mean that Plaintiff lied, let alone that Plaintiff's case should be dismissed. Simply because Mr. Khan at one point in his life told a mental health professional about an incident, or mentioned an incident in one of the thousands of emails he has disclosed to Defendants, does not mean that he lied when he did not include it on a requested list of accusations of sexual misconduct against him. It is possible, especially when one has been falsely accused by others, to block out incidents of past trauma, such as other false accusations that have been made. It is possible to forget an incident that occurred more than a decade earlier. It is possible to not consider some of these incidents to be sexual misconduct allegations at all. The Defendants' motion provides no basis for this Court to dismiss this case based on this interrogatory response.

Plaintiff's remark in an interview in 2023 that "there were about twenty different complaints against" him, ECF No. 332 at 23, is not an acknowledgment of complaints of *sexual misconduct*. In context, Mr. Khan was speaking about the immense pressure being placed on Yale University to expel him even from people who had never even met him before. Plaintiff gave a great example, which Defendants strangely use as an example of supposed misconduct: an incident in which he was accused of making someone uncomfortable by his mere presence in an elevator. ECF No. 332 at 23. Contrary to Defendants' contention, none of this is proof that "Plaintiff lied in his response to Jane's interrogatory." *Id.* It's simply the case that—as in essentially every case that is contested in this District—the parties have different opinions about the facts and circumstances. That is what trials are for. Of course, we do not concede in the slightest that Plaintiff has lied. Defendants are of course entitled to their wrong opinion and to test their opinion before the factfinder.

5.    *Fifth Accusation – "Apparent" Misrepresentation – is Also Groundless*

Plaintiff did not lie to Judge Garcia. Plaintiff was told by an attorney in Glenn Formica's office, Rochelle Charnin, that sending modified court transcripts to USCIS would be less advantageous for his immigration case than sending the original official court transcripts. At the hearing Defendants quote from, although Attorney Formica said he had not been Mr. Khan's attorney in years, he was equivocal, noting he was "sort of in the middle." *See* ECF No. 332 at 26 ("I was sort of in the middle"). Part of that has been occasional consultation and advice from Attorney Formica and members of his firm to Mr. Khan. This Court need not venture any further into the confidential communications between Mr. Khan and his immigration counsel.

Defendants' actions have already prejudiced his immigration case enough. Defendant Yale University's revocation of his student visa is the cause of his immigration predicament.

Defendant Jane Doe's false accusation is being used to suggest he is a danger to this country who should be deported. He was right to worry that modification to the official transcripts for his case would cause confusion or a problem with immigration authorities.

Defendants refer to "apparent lies," ECF No. 332 at 27, because they do not have proof of an actual lie. Serious claims require serious proof. Defendants' mere accusation that Plaintiff is lying without evidence is no reason to dismiss a case rather than adjudicate it on its merits.

      *6.*     *Sixth Accusation – Misconduct by Recording the UWC Proceedings*

Next Defendants accuse Plaintiff of misconduct because he recorded the UWC proceedings while he was a student at Yale University. ECF No. 332 at 27-29. Defendants state that Plaintiff did not produce the recordings until February 2025 and did not produce them in May 2024. ECF No. 332 at 28. But Defendants omit that Plaintiff forthrightly disclosed their existence, put them on a log because they contained privileged conversations between Plaintiff and his then-attorney, and negotiated a process whereby transcripts were created, redacted, and produced to counsel. This was a process that Defendants participated in and agreed to. At no time during that process between May and February did Defendants ever express any prejudice.

Defendants attempt to take the existence of Plaintiff's personal recording as some sort of fraud on the courts, because the courts have rightly noted that Plaintiff's "*ability to appeal* [the UWC Hearing] was severely constrained by the absence of any transcript or recording of statements, testimony, or questions raised during the UWC [H]earing." *Khan v. Yale Univ.*, 347 Conn. 1, 46 (2023); *Khan v. Yale Univ.*, 85 F.4th 86, 95 (2d Cir. 2023) (quoting 347 Conn. at 46) (emphasis added). But the courts were not talking about Mr. Khan not having a secret recording of the hearing, they were talking about Yale not having <u>an official</u> recording or transcript of the hearing. Mr. Khan's private recording, which in large part contained private conversations

14

between him and his attorney, could not have formed the basis for an appeal as it was not an official recording or transcript. Mr. Khan, as Defendants acknowledged, "disclosed the existence of those recordings," ECF No. 332 at 27, and put them on a privilege log when he initially declined to turn them over, because they contained privileged communications. He did not hide the recordings, even though he knew it was admitting a violation of the UWC rules at the time, again showing his forthrightness in the discovery process. Ultimately, the recordings were produced, in redacted form. The docket even contains an entry noting this process. ECF No. 262 ("Hearing Transcript: Plaintiff ordered and received unredacted transcripts from the hearing and started the process of redaction."). Defendants have not challenged the redactions.

To be sure, Plaintiff did say to Ms. Demers, at the start of the UWC Hearing, that he was not recording. Given that this statement is on the recording, Plaintiff has disclosed that he made this statement falsely. It would have been misconduct, perhaps worthy of dismissal, if Plaintiff had concealed this fact. Instead, he disclosed it. Accordingly, Defendants can raise this matter at trial, as part of their unclean hands (or after-acquired evidence) defense, or to impeach the Plaintiff. For purposes of this motion, though, Mr. Khan has been forthright in this litigation about the existence of the recordings, and has produced them pursuant to an agreed-upon process. That is not discovery misconduct.

7.     *Seventh Accusation – Improper Privilege Calls*

Finally, Defendants accuse Plaintiff of misconduct because they made privilege calls that they disagree with. What they do not accuse Mr. Khan of is hiding any of these communications—as they were all properly disclosed on a log. And in fact, they have now all been produced to the Defendants. Plaintiff was fully entitled to his legal position regarding these documents, as explained in our opposition to Defendants' motion to compel, ECF No. 349

(which we inadvertently mistitled "Motion to Compel," a scrivener's error, with apologies to the Court and counsel). That position was substantially justified, no sanctions are warranted, and with production of the documents to the Defendants their motion to compel on this issue is now moot. It is not "additional misconduct," ECF No. 332 at 29, warranting the Defendants' desired sanction of dismissal.

An eighth accusation is made without evidence to support it, ECF No. 332 at 29 n.15, and we will not respond to it here, except that Plaintiff did not tell "one of his providers not to release records," *id.;* the only thing Defendants are correct about here is that they "ultimately obtained the records," *id.*

### III.    ARGUMENT

None of the factors "considered in conjunction with dismissal," ECF No. 332 at 30, weigh in favor of dismissing this case. Preliminarily, we reject the Defendants' contention that the Plaintiff has "misled our courts" or has testified falsely or misleadingly in any way, and note that Defendants have offered little to no proof for their allegations. *See, e.g.*, *supra*, § II.4, II.5, II.6.

Additionally, Defendants' case citations misapply the law. Defendants repeatedly cite *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019), *cited at* ECF No. 332 at 4, 27, 28, where the Second Circuit affirmed the dismissal of a prisoner litigation where the plaintiff, who had *seven* "strikes" under the PLRA, intentionally lied to obtain IFP status to not pay the court's filing fee. Given the volume of prisoner litigation, including that particular prisoner's own volume of litigation, dismissal of the case was justified. 921 F.3d at 98. Defendants cite this case for the proposition that Mr. Khan's "apparent lies about the alleged advice from an immigration attorney" and his "actions in leading numerous Courts to believe that he was 'severely

constrained by the [alleged] absence of any . . . recording" warrant dismissal of this case. ECF No. 332 at 27, 28. Neither of these accusations hold any water. First, Defendants say that Mr. Khan "apparently" lied because they have no proof that he did, and in fact he did not. *See, supra*, § II.5. Defendants say Mr. Khan's actions misled the courts, but the courts were not misled—the UWC had no official transcript or recording, and Mr. Khan was not allowed to use his personal recordings to appeal. *See, supra*, § II.6. Neither of these accusations rise to the level of a fraud on the court warranting dismissal.

### A.    Defendants, Not Plaintiff, Have Caused Delay in this Case

Defendants have caused the delay in this case. Plaintiff has produced everything Defendants have asked for, as promptly as possible. Defendants have withheld essentially everything Plaintiff has asked for. Defendants' main complaint of Plaintiff causing delay now, that Plaintiff has dropped "70,000+ pages" of documents on Defendants, is not the cause of delay in this case. It would be a cause of delay if Plaintiff's counsel had (1) requested additional time to review the documents, to go through them with a finer toothed comb to determine which ones Defendants could not later claim were irrelevant and wrong to produce; or (2) withheld the documents, which would have encouraged motion practice over whether they were properly withheld or whether they were responsive to the Defendants' broad requests and should be produced.

Indeed, the cases Defendants cite, as they note, typically involve litigants who "do not do anything," ECF No. 332 at 5. That has not been this Plaintiff since the undersigned has appeared. Every time that Defendants have made a request to the Plaintiff—to sign a release, do an additional search, obtain a quote from a vendor, or meet and confer—Plaintiff has engaged in the process. Although the process has led to disagreements, though counsel on both sides have had

to seek extensions, and though there have been modifications to the discovery schedule, such delays pale in comparison to the delays that occur when a party fails to engage with discovery at all, fails to obey with orders to produce discovery, or engages in uncooperative or unresponsive efforts. *See* ECF No. 332 at 5 (collecting cases where discovery violations were far more egregious than Plaintiff's committed efforts in this case to provide discovery to Defendants).

Defendants acknowledge that they have made broad requests. *E.g.*, ECF No. 332 at 17 ("Jane defined 'sexual misconduct' broadly and in accordance with Yale's definition"); August 2024 Deficiency Letter at 1 (seeking the address of every place Mr. Khan slept from 2015 through the present). Yet their main complaint is not that Plaintiff is withholding information but that at one point they received too much, causing some delay while they reviewed the documents. But if anything was missing from what they requested, that would necessarily cause a delay. Receiving some inadvertently produced emails or documents, especially when they have been produced in a format that allows the emails to be sorted (for example, chronologically); filtered (to exclude certain sources, senders, or recipients, for example); and searched (by keywords or even by excluding certain words), causes far less delay than motion practice. There is simply no basis to conclude that Plaintiff thought it would advantage him and disadvantage an institution of Yale's size, who has several lawyers representing it in this case and the same IT vendor, by giving them 70,000 pages of documents through the vendor. We gave them the documents because we wanted to err on the side of providing responsive materials, in light of Yale's broad requests, and because the compressed timeline for production required us to make these calls quickly. Yale has the ability to quickly review documents. Any alternative course of action by the undersigned counsel—such as taking additional time to review the ESI, or withholding additional documents—would have caused additional delay. This case is simply

incomparable to cases where a party fails to engage with discovery at all and the sanction is dismissal. This factor does not weigh in favor of the Defendants at all and provides no reason to dismiss this case.

**B.    Plaintiff Has Not Violated Any Warnings or Court Orders**

Defendants make much of the warnings of this Court to abide by Court orders or face dismissal. ECF No. 332 at 31-32. But Plaintiff, as discussed above, has abided by those warnings. He has complied with this Court's orders. We agree that if there were evidence that Plaintiff violated a Court order, let alone intentionally violated a Court order, his case would be subject to dismissal. That simply has not happened here. Plaintiff is complying with this Court's orders.

**C.    Defendants Are Not Prejudiced**

Defendants are not prejudiced. Defendants say they are prejudiced by delay. ECF No. 332 at 32-33. Defendants have caused the delay in this case. For approximately four years they produced only 400 pages of documents. Defendants being "uncertain about whether Plaintiff has disclosed all of the . . . allegations against him" is no different from the uncertainty of any party seeking to depose any witness. We have great uncertainty about the troves of information Yale has not produced to us at this point. We hardly think that any interrogatory response from us would result in Yale University or Jane Doe "accept[ing] Plaintiff at his word." ECF No. 332 at 33. Of course they are going to think that Plaintiff is lying—they do not agree with his position that he was falsely accused of rape. This is a defamation case. The parties disagree about many things. If the existence of a party saying that the other party is lying was cause for sanctions, there would be sanctions in every contested case that is litigated to judgment.

### D.    The Waste of Judicial Resources is from Defendants' Unwarranted Filings

Defendants complain about "court congestion." ECF No. 332 at 33. The court congestion here is caused by Defendants' unwillingness to join the issues and have them adjudicated on their merits after full discovery. Defendants' stonewalling of Plaintiff's discovery and complaints of alleged misconduct have a common theme: they misdirect this case away from the important issues and toward satellite issues that have nothing to do with the merits. They delay the case. It is the Defendants' constant accusations of misconduct when in fact Plaintiff has been cooperating in discovery that is the true waste of judicial resources. Defendants "should not be allowed to continue to take enormous amounts of time away from the countless litigants who respect this Court" because their filings are not based in the law or the facts.

### E.    No Sanctions Are Warranted

Defendants say "[l]esser sanctions are inadequate," ECF No. 332 at 33, but in fact no sanctions are warranted. The Court has imposed Orders, and the Plaintiff has taken them seriously, working diligently to produce the documents that Defendants have requested, the releases they have requested, and the information they have requested, while not divulging Ms. Doe's identity and respecting confidentiality. Plaintiff has worked diligently to obtain the discovery he needs from Defendants, as well, but has met resistance at every turn. Rather than sanctioning the Plaintiff again, the Court should take this opportunity to encourage the Defendants to prepare for trial and the resolution of the matters of this case on the merits.

### F.    This Court Should Not Dismiss This Case

Dismissing this case would not only be an abuse of discretion, but a violation of due process. The Plaintiff has not violated this Court's orders, much less has he intentionally done so. To hold him responsible under the first two accusations made by Defendants in their motion

would be to hold him accountable for the actions of third parties he neither solicited, encouraged, or had any control over. This would be inappropriate. The fourth through eighth accusations are accusations that parties could essentially make about each other in every case. "Enough is enough" ECF No. 332 at 34 indeed. Enough complaining about alleged misconduct that is not even misconduct and get on to the important issues in the case.

Defendants' potpourri of additional sanctions requests, ECF No. 332 at 34-35, is all unwarranted:

- First, they request additional discovery, ECF No. 332 at 35. They want more searches. This makes it questionable that Plaintiff would not have had a dispute if he had not "dumped" the 70,000+ pages on Defendants, since Defendants still apparently believe they do not have enough paper discovery;

- Second, they want to block Plaintiff from obtaining discovery. *Id.* How convenient. As motions to compel are pending that could reveal the extent of their own discovery misconduct in this case, Defendants ask that this Court impose a sanction that Plaintiff receive no further discovery. What is left from this ask is any evidence that Plaintiff has ever improperly disseminated discovery material or that counsel has ever shared "not for plaintiff's eyes" material with plaintiff.

- Third, they want to preclude certain damages claims. *Id.* This is based on Defendants apparently being unable to know "whether they are aware of all other allegations against Plaintiff," *id.* In other words, they again ask for more discovery.

- Fourth, they want to preclude Plaintiff from using the documents that we produced to Defendants. This is bizarre and made without any case support for the

request. They also want to preclude Plaintiff from using his recording of the UWC Hearing, which would result in there again being no usable first-hand evidence of what actually happened in that proceeding. They imply that something could be "buried" in the documents we have produced. This is a somewhat laughable accusation given that there are better ways for Plaintiff to hide things from Defendants than by sending it to Defendants' lawyers. This attempt to obscure the truth-finding process of discovery and trial should be rejected.

- Fifth, they ask for a jury instruction. We respectfully submit that because the Plaintiff has not committed misconduct, this would be wholly inappropriate, and that the issue of jury instructions can and should be done in conjunction with the Joint Trial Memorandum, not at this stage.

- Sixth, they ask for "the admission of all accusations of sexual misconduct . . . without the need for any further foundation." ECF No. 332 at 35-36. This additional bizarre request made without case support would pervert the truth-seeking process, the Federal Rules of Evidence, and the Federal Rules of Civil Procedure. Defendants say that Plaintiff "sought to conceal these accusations," *id.*, but Defendants make this case using documents that they withheld from Plaintiff. Plaintiff did not cause any delay in Defendants reaching their opinion because he still disagrees with them, Defendants have reached their opinion about the truthfulness of Plaintiff's answers using their own documents and information and not based on any representation of the Plaintiff.

Defendants state that "nothing short of dismissal will stop Plaintiff's misconduct," ECF No. 332 at 36, but what they really mean is that nothing short of dismissal will allow Defendants

to avoid trial, which is what they truly seek to avoid. But justice requires that this case be adjudicated on its merits, not dismissed on the basis of unsubstantiated allegations and accusations of delay by a party that has delayed discovery at every turn by refusing to turn over documents.

## IV.     CONCLUSION

Defendants claim injury from reviewing documents they requested from Plaintiff. Far from injuring the Defendants, Plaintiff's forthrightness since the undersigned's appearance has helped move this case forward. It is Defendants' refusal to engage with discovery that is delaying this case. Far from sanctioning Plaintiff or his counsel, this Court should sanction Defendants for filing a baseless and frivolous motion. At the very least, the motion should be denied.

Respectfully submitted,

/s/Alexander T. Taubes
470 James St., Ste 007, New Haven, CT 06513
alextt@gmail.com
(203) 909-0048
Ct30100