# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
|    Defendants. | : | JULY 10, 2025 |

**[PROPOSED] SUPPLEMENTAL BRIEF
IN FURTHER SUPPORT OF MOTION FOR JUDGMENT OF DISMISSAL
OR ALTERNATIVE SANCTIONS**

Defendants respectfully submit this Supplemental Brief to apprise the Court of serious additional misconduct by Plaintiff that has occurred or come to light since they filed their Motion for Judgment of Dismissal and/or Other Sanctions, dated May 20, 2025 (ECF 333 ("Motion")).

**I.   PRELIMINARY STATEMENT**

In the seven weeks since Defendants filed their Motion, Plaintiff has engaged in serious additional litigation misconduct and Defendants have learned about additional, prior litigation misconduct by Plaintiff of which Defendants have been previously unaware. This serious new misconduct and newly discovered misconduct should be before the Court when it considers the Motion. Among other things, Defendants learned that Plaintiff:

- Concealed from disclosure communications that undermine his claims or his credibility by baselessly invoking the attorney/client privilege as to those communications;

- Concealed from disclosure the existence of entire categories of information and documents, including the identity of and any records from a mental health professional to whom Plaintiff had told his "deep dark secrets;" and

- Posted about so-called "operation dragonfire," a plan to further harass Jane, violated the Protective Order in this case, and filed sensitive information on the Court's docket.

Dismissal is more than warranted. Plaintiff's actions continue to be egregious, particularly considering his prior misconduct. Indeed, as the Court observed just days ago, Plaintiff posted his

"intent[] or thinly veiled threat to publicly identify Defendant Jane Doe" despite the Court's previous Orders. (ECF 354.) Enough is enough. The Court should dismiss this case.

## II.  ADDITIONAL MISCONDUCT

### A.  Plaintiff's Baseless Invocation Of Privilege

Defendants previously informed the Court that Plaintiff engaged in misconduct by claiming that certain communications he had with Peter Roe, a non-attorney former friend, were protected by the attorney-client privilege and/or attorney work product doctrines. (*E.g.*, ECF 332 at 29.)

After months of back and forth about this issue, Defendants ultimately had to file Motions to Compel production of Plaintiff's communications with Mr. Roe. (ECF 322 & ECF 325.) On June 17, 2025, the day before Plaintiff's Objection to Defendants' Motions to Compel was due, Plaintiff effectively waived any privilege claim by producing purportedly privileged communications. (*See* ECF 349.) Stunningly, Plaintiff's production revealed the communications largely do not relate to legal issues and, therefore, the claim of privilege was not even arguable – it was frivolous. The communications in question are often unhelpful to Plaintiff's case and it is therefore apparent that Plaintiff attempted to gain a litigation advantage by baselessly claiming they were privileged.

Consider the following example. Plaintiff was required to search for communications concerning allegations of sexual misconduct made against Plaintiff by individuals other than Jane. (*See, e.g.*, ECF 332 at 17 & Ex. H.) One such allegation was made by a woman the Parties refer to as "Sophie." (*See, e.g.*, ECF 332 at 21–22 & Ex. R.) Sophie alleged that Plaintiff sexually assaulted her in June 2018 when she, Plaintiff, and Mr. Roe met for a pre-arranged "BDSM" sexual encounter. (*E.g.*, *id.*) On or around January 15, 2025, Plaintiff agreed to search parameters that required him to search for, among other things, "Sophie's" name beginning May 1, 2018. (**Exhibit A**.) Plaintiff's production on June 17 of purportedly privileged, and previously withheld,

communications with Mr. Roe included communications between Plaintiff and Mr. Roe concerning Sophie. On May 23, 2018, for example, Plaintiff and Mr. Roe discussed their prospective sexual encounter with Sophie. (**Exhibit B**.) Among other statements, Plaintiff wrote: "Bitch [*i.e.*, Sophie] is getting con non con." (Exhibit B.) Mr. Roe asked Plaintiff what "con non con" meant. (Exhibit B.) Plaintiff responded: "Non consensual." (Exhibit B.) The conversation regarding Sophie continued, with Plaintiff saying: "Well, I do abuse sluts . . . ." (Exhibit B.). Plaintiff did not want to disclose this communication—which corroborates the existence of the allegedly abusive sexual encounter in highly misogynistic terms—so he fabricated a claim of privilege to hide it from Defendants. That type of bad faith maneuvering must be sanctioned.

Even more stunningly, Plaintiff offered this explanation on his Privilege Log for why this communication was supposedly privileged:

> [Plaintiff] and legal team discuss post-trial logistics, FACE matters, media and related info - work product protection because this discussion was at the direction of attorneys and in preparation for litigation[.]

(**Exhibit C** (Privilege Log Entry For KHAN60985).) That entry fails to mention that the document included numerous statements by Plaintiff about planning a sexual encounter with Sophie.

It was not just those exchanges that Plaintiff tried to hide. Plaintiff also claimed privilege over a litany of other highly damaging and relevant communications for which there was no good-faith basis to assert privilege. Plaintiff made the following statements, among others, in the withheld messages at issue:

- "I want to choke them" with "them" referring to "[b]londe bimbos" (**Exhibit D**);

- "[T]hey should sell rape fantasy books . . . [w]ith stories from reality" (**Exhibit E**);

- "If a faggy girl like that looked at me . . . I'd pounce on her" (**Exhibit F**);

3

- "This [is] plenty huge already . . . we can fill it up with locked up bitches," referring to the room Plaintiff would be staying in. (**Exhibit G**)

The production contains many statements where Plaintiff degrades women. For example, Plaintiff makes derogatory comments about a female attorney apologizing "[o]n her knees" for missing a conference call, with a wink smiley face after his comment. (**Exhibit H**.) Among other sexist comments that Plaintiff attempted to conceal, for example, Plaintiff wrote: "If I had 5 dollars for every gender, I would have 5 dollars coz women are objects" and "If I had $5 for every gender, I would have 10 dollars and a lot of counterfeit money." (**Exhibit I**.)

Plaintiff even wrote a disturbing sexual assault fantasy that was seemingly about a former deputy general counsel for a federal agency. (**Exhibit J**.) The fantasy involved Plaintiff "tak[ing] sugar" and "[p]ut[ting] it in a pill" and then putting it "into [the deputy general counsel's] drink" (apparently with her watching Plaintiff do that) before "fuck[ing] her up" in a situation where it "doesn't matter if she screams." (Exhibit J.)

These statements were withheld, not because they are privileged, but because they are damaging to Plaintiff's case and credibility. (*Compare* Exhibit C (Plaintiff's Privilege Log), *with* Exhibits B, D, E, F, G, H, I, J (examples of non-privileged communications) (comparing the Bates numbers on documents with the Bates numbers on Log entries allows a comparison of Plaintiff's specific privilege rationale with the actual document).)[1]

Moreover, by producing the allegedly privileged communications, Plaintiff affirmatively waived any privilege claim. (*See* Plaintiff's "Motion to Compel" (ECF 349), which is his response to Defendants' Motions to Compel (hereinafter "Response").) However, despite this clear waiver,

---

[1] Other examples of quintessentially unprivileged communications concern Plaintiff and Mr. Roe discussing (1) Mr. Roe's financial affairs, (2) Plaintiff procuring a contractor, and (3) personal matters. (*See, e.g.*, **Exhibit K**.) Of note, Plaintiff's messages also establish that Plaintiff was the genesis of the idea that Mr. Roe serve as Attorney Valois' "paralegal." (**Exhibit L**.) This is further evidence that Plaintiff wanted to hide his communications with Mr. Roe.

4

Plaintiff continues to baselessly claim "that the Roe e-mails are protected under *Kovel* . . ." (Plaintiff's Response (ECF 368), at 11.) *Kovel*, however, confirms that Plaintiff's communications with Mr. Roe were never privileged.

To start, the issue in *Kovel* concerned "the application of the attorney-client privilege to a non-lawyer *employed* by a law firm." *U.S. v. Kovel*, 296 F.2d 918, 919 (2d Cir. 1961) (emphasis added). Mr. Roe's honorary title of "volunteer paralegal", without more, does not shield his communications with Plaintiff. *Kovel*, 296 F.2d at 921 ("Nothing in the policy of the privilege suggests that attorneys, simply by placing [non-lawyer third parties] on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.").

Significantly, *Kovel* explains exactly why Mr. Roe's communications with Plaintiff are not privileged: Attorney Valois did not direct Plaintiff to divulge information to Peter Roe; rather, it was Plaintiff who first communicated with Mr. Roe before ever consulting with Attorney Valois. "Where the client communicates first to his own [non-lawyer agent], no privilege [attaches] to such communications, even though he later consults his lawyer on the same matter . . ." *Id.*, at 922. This is exactly what happened here. It is not the situation where the "lawyer directed the client . . . to tell his story in the first instance to [a non-lawyer agent] engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice", which under *Koval*, would entitle those communications to protection. *Id.*

The Peter Roe documents are not privileged, whether under *Koval* or Plaintiff's creative theory, and Plaintiff had and has no good-faith basis to withhold those documents or continue to claim any privilege. The Court should sanction Plaintiff.

5

### B. Plaintiff's Failure To Disclose Information And Documents

As previously detailed, Defendants served discovery requests on Plaintiff approximately eighteen months ago. (*See* ECF 332-3.)

Defendants' requests required Plaintiff to "identify all counseling . . . , therapy, psychiatric treatment, or other mental health treatment you have had . . . since October 31, 2010." (**Exhibit M**.) Plaintiff identified several treaters in response; however, Plaintiff did *not* identify Dr. Sara Favorite, a psychologist. (Exhibit M.)

As discussed above, on June 17, 2025, approximately fifteen months after Plaintiff's responses to Defendants' discovery requests were due, Plaintiff produced communications he exchanged with Peter Roe that he had previously withheld as privileged. In one such communication, Plaintiff messaged Mr. Roe that Plaintiff had "told some deep dark stuff" to Dr. Favorite, who apparently informed Plaintiff that he was "beyond [expletive] up." (**Exhibit N**.) Before the Court stayed all discovery, Defendants had begun the process of attempting to obtain Dr. Favorite's records by sending Plaintiff an authorization form, which Plaintiff signed and returned. While Plaintiff may claim that he never "treated" with Dr. Favorite, Defendants should have been given this information over a year ago to determine what records, if any, exist.

Plaintiff's production of previously withheld messages with Mr. Roe also revealed the existence of other missing documents. For example, the search protocol that Plaintiff agreed to required Plaintiff to search the messaging applications "Kik" and "Discord" for, among other things, all communications with Sophie's first and/or last name beginning May 1, 2018. (**Exhibit O**.) The recently produced communications Plaintiff had with Mr. Roe indicate that Plaintiff and Mr. Roe engaged in one or more conversations with Sophie on Kik beginning on May 23, 2018, and there are numerous examples where Plaintiff and Mr. Roe continue their communications on Discord. (*See, e.g.*, **Exhibit P**.) Yet Plaintiff did not produce (and has not produced) documents

6

reflecting any of those conversations.

As another example of documents unhelpful to Plaintiff's case that Plaintiff has not produced, the *Yale Daily News* reported on messages Plaintiff had written to Mr. Roe that Mr. Roe then provided to the *News*. (*See* ECF 32-8 at 7.) As the *Yale Daily News* reported, Plaintiff wrote in one such message on March 27, 2018: "I love the fact that whores come seeking your advice . . . ." (*Id.*) Plaintiff *still* has not produced that message in this case. Accordingly, he appears to be withholding that message and perhaps others because they are unhelpful to his case.

Throughout discovery, Defendants continue to learn of documents that were required to be turned over but were either not produced or produced only after much effort by Defendants and delay by Plaintiff. Given this pattern, it is highly probable that these instances do not constitute the universe of Plaintiff's lapses, and that there is likely more discoverable material that has not been turned over. It is sheer luck— *e.g.*, Plaintiff's mention of sharing "deep dark stuff" with Dr. Favorite, his communication with Mr. Roe about talking with Sophie on Kik, and a reference to a text exchange between Mr. Roe and Plaintiff in a *Yale Daily News* article—that Defendants are even aware of Dr. Favorite and these communications. *See Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (affirming district court's sanctions where particular discovery abuse was just "the tip of the iceberg"). Defendants have no way of knowing what other discoverable materials Plaintiff has improperly withheld, and sanctions are warranted.

### C. Plaintiff's Violation Of The Protective Order

On June 10, 2025, Plaintiff violated the Protective Order (ECF 197) by publicly filing two documents Defendants had designated "Confidential," including a private email that Jane had designated as such. (*See* ECF 344.) That violated the Protective Order's requirement that the Parties must move to seal any Designated Material they wish to file with the Court. (ECF 197 at ¶ 12 ("If it becomes necessary to file Designated Material with the Court, a party *must* comply

7

with Local Civil Rule 5 by *moving to file the Designated Material under seal*." (emphasis added)).) Plaintiff was well aware of that requirement because Defendants had repeatedly noted it in their Motions to Seal. (*See, e.g.*, ECF 334 at 1 ("The Protective Order [] requires that Jane move to seal the Exhibits in light of their 'Confidential' designation. (*See* ECF 197.)").) Plaintiff acknowledged this violation of the Protective Order and moved to seal the filings. (ECF 363.)

D.    **Plaintiff's Post**

On June 16, 2025, Plaintiff posted the following:



As the Court subsequently found, "[t]his post is yet another example of Plaintiff's troubling conduct" because it evidences at minimum "a present intention or thinly veiled threat to publicly identify Defendant Jane Doe." (ECF 354.) This post comes shortly after Plaintiff repeatedly posted his interview complaints about Jane's anonymity to followers he knew would be willing to post Jane's name. (*See, e.g.*, ECF 333-3; *see also* ECF 265 at 15.) The ominous sounding "operation dragonfire," these posts, and others (*see, e.g.*, ECF 333-4) are, by Plaintiff's own admission and in his own words, part of Plaintiff's efforts to "do everything [he] can to get [Jane] to break," including "mak[ing] it absolutely sure that her name goes into news articles" and "spend[ing] thousands of dollars to keep those articles circulating on the internet for years to come." (ECF 114 Ex. 3).

8

### E. Plaintiff's Public Filing Of Information The Court Ordered Sealed

On June 27, 2025, Plaintiff filed information that informed readers where to look to learn Jane's name. (*See, e.g.*, ECF 365 (discussing that information); *see also* ECF 367.) (Defendants do not discuss the information specifically to avoid inadvertently permitting others to learn Jane's identity.) Regardless of whether Plaintiff's actions were designed to further "out" Jane or were merely careless, Plaintiff's actions were nonetheless sanctionable for at least two reasons. First, as this Court previously held (*see* ECF 265), the reason the information in question exists is because of Plaintiff's "egregious" actions in violating the Court's Orders. Plaintiff's original violation of the Court's Order was "egregious" enough. The fact that he is now publicly citing to the information that exists because of that violation is far worse. Second, this Court previously determined that the exact information at issue should be sealed. (ECF 317 at 5–6.) Plaintiff's decision to publicly file this information is thus incredulous.

### III. PLAINTIFF'S ADDITIONAL MISCONDUCT WARRANTS DISMISSAL

Plaintiff's latest misconduct warrants dismissal.[2] *See, e.g.*, *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) (dismissal "entirely appropriate" for "fraud upon the court"); *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, 308 F.R.D. 113, 124 (S.D.N.Y. 2015) ("Dismissal of an action is necessary and appropriate where a litigant has acted with willfulness, bad faith, or any fault." (internal quotation marks omitted)); *see also, e.g.*, *Crum v. Dodrill*, 562 F. Supp. 2d 366, 383 (N.D.N.Y. 2008).

Plaintiff's privilege claims are beyond baseless and an abuse of the judicial process. There is no plausible argument that Plaintiff's communications with Mr. Roe about Plaintiff's sexual

---

[2] The conduct discussed above is non-exhaustive. Among other things, Plaintiff has made extremely concerning statements in recent filings, such as representing to the Court that Jane did not search various search terms that she did in fact search. (ECF 344.)

9

encounter with Sophie are privileged. That is just one example of many communications that should not have been withheld, even under Plaintiff's meritless theory of privilege. These documents are highly problematic for Plaintiff. Plaintiff invented a baseless claim of privilege to attempt to shield them from disclosure. That is outrageous. *See, e.g.*, *Diaz v. Devlin*, 327 F.R.D. 26, 29 (D. Mass. 2018) ("[A] party should not be allowed to conceal critical, non-privileged, discoverable information … simply by … attempting to hide behind the work product doctrine." *quoting*, *Xerox Corp. v. IBM*, 64 F.R.D. 367, 381–82 (S.D.N.Y. 1974)); *Xerox Corp. v. IBM*, 64 F.R.D. at 381 (noting that non-privileged facts must be produced).

Plaintiff's decision not to disclose a psychologist to whom he told "deep dark stuff" and who then opined on the Plaintiff's state of mind is equally outrageous. Plaintiff was under an obligation to identify Dr. Favorite some fifteen months ago, but chose not to do so. The fact that he told a psychologist "deep dark stuff" establishes that Plaintiff made a conscious choice to once again fail to disclose information he knew would undermine his case and is directly relevant to his claims of emotional distress, etc. Plaintiff's failure to disclose this psychologist warrants dismissal under Plaintiff's own standard for dismissal. Plaintiff opposed Jane's First Motion to Dismiss on the basis that dismissal is reserved for things like "discovery violations," particularly when violations cause delay. (ECF 77 at 4.) That is exactly what Plaintiff has now done.

Plaintiff's decision not to disclose Dr. Favorite demonstrates a larger and irresolvable problem: Plaintiff failed to properly respond to unobjected to discovery requests and Defendants have no way of knowing what they do not know as a result. It is sheer happenstance that Plaintiff happened to mention telling "deep dark stuff" to Dr. Favorite in a communication with Peter Roe. Defendants have no idea who else Plaintiff may have failed to disclose and have no way of determining that. Nor do they have any way of knowing or determining what else Plaintiff has decided not to disclose. Discovery requires candor. Defendants cannot properly defend

10

themselves with Plaintiff lying in unobjected to sworn interrogatory responses.

Individually, Plaintiff's actions in making baseless privilege claims, failing to reveal the existence of critical information and documents despite not objecting to Defendants' discovery requests, and other misconduct, are more than sufficient to warrant dismissal. But the Court cannot consider Plaintiff's actions individually. It must consider them collectively and in addition to all of Plaintiff's other misconduct, including his prior misconduct. *See, e.g.*, *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 827 (2d Cir. 1983) ("[W]here there is repeated defiance of express court orders dismissal may be an appropriate remedy."). When the Court analyzes this misconduct in that context, it is apparent that Plaintiff is grossly misusing the judicial process, including to harass and intimidate Jane. Dismissal is the only appropriate response.

Indeed, Plaintiff's most recent misconduct is all the more egregious because it comes on the heels of extensive misconduct that lesser sanctions have failed to stop. When the Court denied Defendants' Second Motion to Dismiss, it noted that Plaintiff's misconduct "ha[d] not recurred over [] seven plus months." (ECF 265 at 16.) It turns out that was not in fact the case: Unbeknownst to anyone, Plaintiff was engaging in further misconduct by, among other things, withholding documents under baseless claims of privilege and continuing to encourage the disclosure of Jane's identity. Regardless, the Court determined that a lack of repetitive misconduct weighed against dismissal. (ECF 265 at 16.) The opposite is also true: The extensive and repetitive nature (and egregiousness) of Plaintiff's misconduct more than warrants dismissal. *Plaintiff's misconduct is so extensive that anything other than dismissal sets the bar so inconceivably high that it invites further misconduct in this and other cases by signaling to all litigants that they can engage in a litany of egregious misconduct without fear of dismissal. Enough is enough. The Court should dismiss this case.*

And Plaintiff's most recent and ominous post (regarding "operation dragonfire") is further

11

confirmation that the Court's efforts to end Plaintiff's misconduct short of dismissal have failed. This all started with Plaintiff's efforts to misuse this case to harass Jane. (*E.g.*, ECF 200.) Despite admonishments and lesser sanctions, Plaintiff remains more interested in litigating this case on social media and misusing this case and the discovery he seeks in it to harass Defendants. (*Id.*)

Moreover, Plaintiff's recent filing concerning information that should have been sealed demonstrates just how "egregious" Plaintiff's misconduct in this case is. It also shows how Plaintiff's actions continue to harm Jane and that Plaintiff is either careless with protecting Jane's name to the point of publicly filing information the Court held should be sealed or continues to attempt to disseminate Jane's name to, in Plaintiff's words, get her to "break." (*See* ECF 114 Ex. 3 ("I will break this weakest link. . . . And I am not exaggerating here. I will do everything I can to get her to break. . . . And I will make it absolutely sure that her name goes into news articles. And I will spend thousands of dollars to keep those articles circulating on the internet for years to come. Not only her name, but I will ensure that her mother in [redacted] finds out as well, via mail.").) Plaintiff's repeated violation of this Court's Order led to dissemination of Jane's name. (*E.g.*, ECF 265.) It is bad enough that that information exists. It is infinitely worse that Plaintiff has so little regard for this Court's Orders—including its Orders sealing the exact information at issue—that Plaintiff is pointing to that information in his public filings in this case.

Most importantly, any sanction short of dismissal inadvertently rewards Plaintiff. As discussed in Defendants' Motion and above, Plaintiff has been attempting to delay this case. He has succeeded. Defendants are just beginning the process of obtaining records they should have had over a year ago. The Court has also stayed discovery pending adjudication of Defendants' Motion. (ECF 361.) If the Court does not dismiss this case, it will inadvertently reward Plaintiff

12

for his misconduct by giving him the delay he improperly sought.[3]

## IV.   CONCLUSION

Enough is enough.  The Court should dismiss this case.

                        DEFENDANT JANE DOE

By: */s/ Brendan N. Gooley*
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT  06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
        bgooley@carltonfields.com

Her Attorneys


DEFENDANT YALE UNIVERSITY

By: */s/ Patrick M. Noonan*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

---

[3] If, despite the foregoing, the Court does not dismiss this case, Defendants intend to seek alternate sanctions for Plaintiff's misconduct once the full extent of that misconduct is known, even though such sanctions are inadequate.

13

## CERTIFICATION OF SERVICE

This is to certify that on this 10th day of July 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

        */s/ Brendan N. Gooley*
        Brendan N. Gooley