UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
|    Defendants. | : | JULY 11, 2025 |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION FOR JUDGMENT OF DISMISSAL**

Defendants submit this reply brief in response to Plaintiff's June 27, 2025 Response to Defendant's Motion for Judgment of Dismissal (ECF 364). A few points warrant highlighting before addressing Plaintiff's specific contentions:

- Plaintiff asks this Court to take him at his word that he has not committed any additional misconduct, but Plaintiff chose not to submit any affidavit (or any evidence) in support of his Response. As this Court previously recognized, Plaintiff cannot be taken at his word. (*E.g.*, ECF 200 at 46:11–13 ("You just said that I should take your client at his word. Well, your client sat in that chair three months ago and was dishonest with me."); *see also, e.g.*, ECF 279-4 at 5–6.) Plaintiff's Response admits that he lied to the UWC. (Response (ECF 364) at 15 ("Plaintiff has disclosed that he made this statement falsely.")). To state it bluntly, Plaintiff's "word" cannot be trusted.

- Plaintiff's continued refusal to accept responsibility for his violations of this Court's orders proves that dismissal is the only appropriate remedy. As one example, Plaintiff denies that the Court has already found he engaged in "egregious" misconduct. (*Compare* ECF 265 at 13, *with* Response at 19, 21, 22 ("Plaintiff has not committed misconduct.").)

- Plaintiff concedes that "if there were evidence that Plaintiff violated a Court [O]rder, let alone intentionally violated a Court [O]rder, his case would be subject to dismissal." (Response at 19.) The Court already made that finding. (ECF 265.) Defendants' extensive exhibits in their prior briefs on this Motion provide overwhelming evidence that Plaintiff has violated this Court's Orders yet again.

Plaintiff has had more than enough chances. The Court should dismiss this case.

**I.**  **THE DISCLOSURE TO THE ▮▮▮▮▮▮ AND SUBSEQUENT DISCLOSURE**

The inappropriate disclosure of Jane's name began when Plaintiff ▮▮▮▮▮▮

█████████████. (*E.g.*, ECF 75.) This misbehavior was ramped up when Plaintiff violated this Court's Order by instigating his followers to post Jane's name. (*E.g.*, ECF 265.) The Court admonished Plaintiff and sanctioned him, but did not dismiss the case. (ECF 200; ECF 265.)

Yet, to use the Court's phrase, "here we are again." (ECF 200 at 8:16–18.) Days after this Court sanctioned Plaintiff for goading his followers to post Jane's name and called his actions "egregious," Plaintiff did the same thing. He complained about Jane's name being protected in a ███. He then ████████ (four times), including once with a caption about "naming the infamous Jane Doe." (Response at 4.) Plaintiff knew, as this Court had previously found, that his "followers" would be willing to post Jane's name because they had already done so. (*E.g.*, ECF 265 at 11, 15.) Plaintiff thus did exactly what this Court previously found to be an "egregious" violation of this Court's Orders: He enticed his followers to post Jane's name "through his words and deeds." (ECF 265 at 15.) Plaintiff's "protestations to the contrary are [once again] belied by the entirety of the record [] and are otherwise not credible." (ECF 265 at 15.)

Plaintiff's Response repeats the same argument this Court previously considered and rejected. (*Compare* Response at 3-5, *with* ECF 157-1 at 11–13.) He again shamelessly argues that he "only" complained that Jane's name is protected. That Plaintiff is again making this argument, after the Court found it meritless, reinforces the conclusion that Plaintiff refuses to acknowledge the Court's authority; accordingly, dismissal is the only meaningful sanction. Plaintiff's actions demonstrate continued disdain for this Court's Orders. Any litigant who wanted to abide by the Court's Orders would not make a series of ████████████ enticing others to name Jane. Indeed, Plaintiff posted that he would not be making posts in light of the Court's Orders. (**Exhibit A**.) But he ████████████, and thus encouraged his followers to post Jane's name.

Plaintiff also ignores the fact that Plaintiff gave ████████████████. It is undisputed

2

that, *after* the Court issued its relevant Orders, Plaintiff offered to provide documents about Jane. (ECF 333-1.) It is undisputed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (ECF 333-2.) In light of these facts, the only credible conclusion is that Plaintiff provided ▬▬▬▬▬▬▬▬▬▬▬▬▬▬. That violated this Court's Orders. Plaintiff offers no contrary explanation, and any such explanation would be incredible given the evidence. Plaintiff did not even offer an affidavit denying sending ▬▬▬▬▬▬▬▬, or an affidavit from ▬▬▬▬ denying receiving ▬▬▬▬▬▬▬▬. Even if it could be concluded that all Plaintiff did was indirectly identify Jane by encouraging ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, that would still be a violation of this Court's Orders.

Plaintiff tries to excuse his misconduct by arguing that Jane's name is in ▬▬▬▬▬▬▬▬▬▬▬▬ (Response at 3). That argument in no way excuses Plaintiff's decision to instigate others to identify Jane in violation of this Court's Orders. It also fails to explain how ▬▬▬▬ obtained ▬▬▬▬, which of course were not in the ▬▬▬▬. Plaintiff invites this Court to speculate that the individuals ▬▬▬▬▬▬ obtained it from ordering the ▬▬▬▬ and to ignore the evidence that it was Plaintiff, himself, who disseminated Jane's name, directly and indirectly. That ▬▬▬ costs about $4,000 to procure. (**Exhibit B**.) It is unbelievable that anyone other than Plaintiff would be willing to invest that sum of money to "out" Jane Doe. The bottom line is that Plaintiff is the genesis behind the disclosures of Jane's name and that Plaintiff's arguments about the ▬▬▬▬ do not excuse his misconduct.

Plaintiff's actions in baiting others to post Jane's name and disseminating ▬▬▬▬ are a continuation of the same "egregious" conduct this Court noted would likely lead to dismissal.

II. **PLAINTIFF** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Plaintiff's assertion that he was unable to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3

████████ is baseless because the ████████ website at issue allows users to "hide" replies they do not want to appear on their pages.  **Exhibit C** is a section ████████ (accessible by clicking ████) that explains how users can hide ████████████████████ ████████.  Plaintiff could have hidden the ████████████ if he wanted to, but he chose not to do that.  Plaintiff knows how to remove material he does not want to appear ████████.  **Exhibit D** is a ████ that Plaintiff made, thought better of it, and therefore removed the ████████ ████████.  (*See, e.g.*, ECF 333-6 (showing post in question is no longer on Plaintiff's ████).)  The ████████████ is also a response to ████████████████ instigating others ████ Jane's name.  Plaintiff could easily have removed ████████, which drew attention to the ████████████.  It is astounding that Plaintiff chose not to ████████ after (1) Judge Garcia warned Plaintiff about his actions on social media concerning Jane (*see* ECF 150; *see also, e.g.*, ECF 123-1), (2) this Court admonished Plaintiff for his misconduct (*see* ECF 200), and (3) this Court expressly found that Plaintiff's conduct was an "egregious" violation of this Court's Orders (ECF 265).  This is further evidence that Plaintiff has no respect for this Court's Orders and that dismissal is the only meaningful sanction.

### III.    PLAINTIFF'S PRODUCTION DUMP MISCONDUCT

Notably absent from Plaintiff's Response is any evidence disputing Defendants' declaration that 85% of Plaintiff's 70,000+ page production was irrelevant.  Defendants' evidence is thus uncontroverted.  Indeed, Plaintiff admits that "some documents, videos, and photos [were] of course inadvertently produced."  (Response at 9.)  Plaintiff makes no effort to justify his production of pornography or other blatantly irrelevant documents like advertisements for Walmart's photo center or an email about a poem that someone's son wrote.  (*E.g.*, ECF 333-7.)

Plaintiff's efforts to justify the production of some documents are baseless.  For example,

4

Plaintiff's justification for producing "announcements regarding conferences" or "announcements from Yale" is that these documents "represent the opportunities he lost when" the underlying allegations were made in November 2015. (Response at 8.) But, these documents *predate* the November 2015 allegations and therefore do not represent lost opportunities; they are simply more "dumped" documents. (*See* ECF 333-7.) The sample conference announcement Defendants submitted was for a conference in April *2013*. (ECF 333-7.) One of the sample Yale announcements Defendants submitted was from *2012*. (ECF 333-7.) Others were from *2014*. (ECF 333-7.) And that does not even begin to address the non-Yale documents that predate the underlying events like the advertisement for a concert in *2014*. (ECF 333-7.) These documents have nothing to do with this case, including Plaintiff's claimed damages. The fact that Plaintiff cannot justify their production even in retrospect proves that this was a classic document dump.

More generally, Plaintiff's assertion that effectively every email he received relates to his "damages" is meritless. Plaintiff's claim that he erred on the side of inclusiveness provides no basis for the production of spam emails or announcements that predate the underlying events of this lawsuit. It is apparent Plaintiff did not actually look at all the documents before producing them. Plaintiff's attempt to justify their production is baseless and only reinforces the fact that Plaintiff dumped thousands of documents on Defendants. Plaintiff could have sought additional time to produce these documents if he needed it to make an appropriate review of the documents. Instead, he led the Court and Defendants to believe that his production would be a small one. (*See, e.g.*, ECF 274 (Joint Motion reflecting understanding that Defendants would be able to review the forthcoming production in a weekend).) Plaintiff's supplemental production was more than *five times* his original production.

Plaintiff's assertion that no depositions were imminent at the time Plaintiff produced more

then 70,000 additional pages of documents in late February 2025 (Response at 9) is belied by the Court's own docket. As Judge Garcia noted: "The parties agree[d] to block six dates in March [2025] to conduct approximately 16 depositions: The agreed to dates are: March 13, 17, 18, 19, 21, and 24, 2025." (ECF 262.) The combination of Plaintiff producing countless documents he cannot justify and that Plaintiff did so two to four weeks before depositions—as well as Plaintiff's other efforts to stall this case (*e.g.*, ECF 100)—establish that this was a classic and improper delay tactic.[1]

## IV. PLAINTIFF'S FAILURE TO DISCLOSE OTHER ALLEGATIONS

Plaintiff suggests that he forgot about ("block[ed] out") allegations of sexual misconduct against him. (Response at 12.) That cannot be believed. Plaintiff did not "forget" that the *Yale Daily News* quoted Sophie as stating that Plaintiff had "left some pretty unacceptable marks on [her, including] on [her] face" and reported that Sophie alleged that Plaintiff "approached her from behind, restrained her[,] and began forcing wine down her throat." (ECF 332-8 at 9.) Nor did Plaintiff "forget" that he had to meet with his Dean because of an allegation that he "grabb[ed] [Sally Roe 2] and "forc[ed] himself on her" and emailed an apology for it. (ECF 333-8.) He did not "forget" that he had to meet with administrators and attend counseling (and be hounded to attend counseling) about an allegation that he engaged in improper "forceful" conduct during a sexual encounter with Sally Roe 1. (ECF 333-9.) Plaintiff's unsupported assertions that he "block[ed] out" these allegations is no different than his "dishonest" assertions that he never wanted to harass Jane. (ECF 200 at 46:11–13.) Indeed, Plaintiff was questioned about these and other allegations by a mental health provider. (ECF 333-13.) He has spoken publicly (only a few

---

[1] Plaintiff has further compounded the delays in this case by cancelling depositions scheduled for June 2025. For example, he cancelled the depositions of Peter Salovey (June 6), Sarah Demers (June 24), and Paul Genecin (June 26), without any explanation. *See* **Exhibit E**, emails from Attorney Alex Taubes. These depositions were cancelled before the Court entered a stay of discovery on June 25 (ECF 361).

6

months before his interrogatory responses were due) about having a litany of complaints against him. (ECF 333-23.) Plaintiff's suggestion that he "forgot" about these allegations is not credible.

Plaintiff's assertion that "some" of the incidents may not be sexual misconduct at all (Response at 12) provides no excuse for failing to identify the numerous incidents that are unquestionably allegations of sexual misconduct. Plaintiff's argument also ignores the broad definition of "sexual misconduct" that Jane invoked. Plaintiff was asked to disclose <u>all</u> allegations of sexual harassment, etc. (ECF 332-3 at 3.) He cannot substitute his own definition for "sexual misconduct" to excuse his discovery misconduct.

Plaintiff's assertion that Defendants had certain information regarding this misconduct (Response at 11) misses the point: Defendants have no way of knowing what additional allegations may have been made against Plaintiff beyond those of which they are aware. (*See, e.g.*, **Exhibit F** (plaintiff expressing concern about Yale "profil[ing]" him "to really know what they're dealing with" and saying "[t]rue" in response to Mr. Roe commenting that "[n]ot even [N]orm [Pattis] and Dan [Erwin] knew everything").) Ultimately, Plaintiff does not and cannot dispute that there were a litany of sexual misconduct allegations against him, that he was required to disclose those allegations in or around February 2024 in response to Jane's Interrogatory, and that he failed to satisfy those obligations. That is sanctionable.

## V. PLAINTIFF'S "ADVICE OF COUNSEL" REPRESENTATION

Plaintiff claims that "an attorney in Glenn Formica's office, [Attorney] Rochelle Charnin" advised Plaintiff on what to send in response to USCIS's request for "the official transcript of the court." (Response at 13; *see* ECF 201-1; *see also* ECF 205 (establishing that USCIS asked for the "official transcript" but that Plaintiff was asking to send something other than what had by then been updated to remove ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).) However, if Attorney Charnin was advising

Plaintiff, then Plaintiff should have brought Attorney Charnin to the hearing at which Attorney Charnin's advice was to be discussed. Plaintiff did not bring Attorney Charnin and instead brought Attorney Formica. (ECF 220.) Even then, Plaintiff, through his counsel, confirmed that he was "pro se" for immigration purposes and Attorney Formica noted that he had not represented Plaintiff in years. (ECF 220 at 8, 32:6–7.) Neither Attorney Formica nor Plaintiff said: "Attorney Charnin from this office represents Plaintiff." This is another example of Plaintiff's dishonesty. Now, with this misrepresentation coming to light, Plaintiff claims Attorney Charnin gave him the putative advice at issue despite all the foregoing contrary evidence. Plaintiff even chose not to submit an affidavit from Attorney Charnin averring to the truth of anything Plaintiff says. Plaintiff's representations on this issue, like so many of his representations, simply cannot be believed.

## VI. PLAINTIFF'S MISREPRESENTATIONS TO OUR COURTS REGARDING THE LACK OF A UWC RECORDING

Had Plaintiff been "forthright" in disclosing the existence of his secret UWC recording, as he repeatedly and incorrectly claims (*see* Response at 14–15), he would have produced that recording in response to Yale's written discovery requests in May of 2024. Instead, he responded to Yale's request for relevant transcripts, audio and/or video recordings, stating "[s]ee enclosed production," while producing **no** transcript, audio or video recording. (**Exhibit G**, Plaintiff's Response to Yale's Request for Production No. 22.) Only after Defendants pressed Plaintiff on the issue did he finally disclose the existence of his secret recordings on his July 1, 2024 supplemental privilege log (*see* ECF 332 at 28). For the next six months, Defendants continued to request that Plaintiff produce the recordings and any transcripts with appropriate redactions. (*See* **Exhibit H**, Correspondence regarding production of UWC recording; *see also* ECF 266, at 1-2.) Finally, Plaintiff produced redacted transcripts on February 5, 2025. Eventually disclosing and producing the recordings *months* after Defendants repeatedly requested the information is the

8

antithesis of a "forthright" disclosure.

Moreover, when the Connecticut Supreme Court concluded that Plaintiff's "ability to appeal was severely constrained by the absence of *any* transcript *or recording* of statements, testimony, or questions raised during the UWC [H]earing" (*see Khan v. Yale Univ.*, 347 Conn. 1, 46 (2023), *see also* ECF 332 at 27 (emphasis added)), Plaintiff was sitting on such a "recording." Plaintiff admits that "[i]t would have been misconduct, perhaps worthy of dismissal, if Plaintiff had concealed" the existence of the recording. (Response at 15.) Plaintiff did just that; he concealed it from the Connecticut Supreme Court and the Second Circuit Court of Appeals.

Plaintiff tries to argue that the Courts were "talking about" the lack of an "official" transcript. (Response at 14.) That is not what the Courts said. The Connecticut Supreme Court's opinion expressly addresses the "absence of *any* [] recording". *Khan v. Yale Univ.*, 347 Conn. at 46 (emphasis added). And the Second Circuit noted: "[w]e rely on Khan's complaint in describing the UWC hearing as no transcript of that proceeding is before the court. . . . Khan asserts that his request for *a transcript or recording* at the conclusion of his hearing was denied." *Khan v. Yale Univ.*, 27 F.4th 805, 816 n. 13 (2d Cir. 2022) (emphasis added). These Courts were clear. If there is any ambiguity about what the Courts meant, it is only because of Plaintiff's lack of candor.

Next, the Second Circuit expressly "relied" on Plaintiff's "assertion" that, at the conclusion of the UWC hearing, he had requested, and was denied, a transcript or recording. The transcript of the secret recording shows that Plaintiff made no such request at the conclusion of the UWC hearing. (**Exhibit I**, Secret Transcript, filed under seal). This is yet another false assertion by Plaintiff to the Courts. Moreover, Plaintiff made a public policy argument to the Connecticut Supreme Court based on a hypothetical he premised, in part, on his representation that the UWC record was "unclear" about whether the parties had been sworn in by the UWC panel. Plaintiff's

9

argument about the record being "unclear" is belied by his own secret recording.[2]

At bottom, the secret recording establishes Plaintiff's lack of candor to the Second Circuit and the Connecticut Supreme Court. His duplicity leaves us unable to know how the Courts would have decided the issues had Plaintiff been forthcoming. Plaintiff has engaged in "misconduct, perhaps worthy of dismissal" under his own standard for dismissal. (Response at 15.)

## VII. PLAINTIFF'S PRIVILEGE CLAIMS ARE BASELESS

Defendants have fully discussed Plaintiff's baseless claim that communications he had with Peter Roe were privileged in their Supplemental Brief (ECF 371-1.) In sum, Plaintiff's production of certain communications proves that Plaintiff abused the privilege to try to shield unquestionably unprivileged documents that are unhelpful to Plaintiff's case. That warrants dismissal.

## VIII. ANY SANCTION OTHER THAN DISMISSAL REWARDS PLAINTIFF

As set forth previously and above, Plaintiff sought to delay this case through, among other things, his document dump and cancelling depositions the Parties and the Court worked hard to schedule. Any sanction short of dismissal rewards Plaintiff's misconduct by giving Plaintiff the delay he desired. Plaintiff's protestations that he did not want to delay this case are belied by his actions, including his Motions (*e.g.*, ECF 100), document dump, and cancellation of depositions.

Plaintiff's misconduct is egregious, wide-ranging, and unprecedented. Plaintiff is unrepentant. He is unwilling to acknowledge that he has engaged in misconduct and refuses to stop his harassment. He even used baseless claims of privilege to shield documents unhelpful to his case. The time has come for this Court to dismiss this case with prejudice.

---

[2] Plaintiff claimed that "[t]he record before the Court is unclear as to whether Jane Doe testified under oath or not in the UWC proceeding against Plaintiff." (**Exhibit J**, Excerpt of Plaintiff's Supreme Court Brief, at 25.) However, we know from Plaintiff's secret recording that the witnesses were **not** sworn in and, more importantly, that Plaintiff **knew** that witnesses were not sworn in. (See Exhibit I, Secret Transcript at 138 ("MR. KHAN: Do we have to be sworn? MS. DEMERS: No sir. Not here.").)

DEFENDANT JANE DOE,

By: */s/ Brendan N. Gooley*
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
bgooley@carltonfields.com

Her Attorneys

DEFENDANT YALE UNIVERSITY

By: */s/ Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

**CERTIFICATION OF SERVICE**

This is to certify that on this 11th day of July 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

                                            */s/ Brendan N. Gooley*
                                            Brendan N. Gooley