UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
|     Defendants. | : | JULY 20, 2025 |

**PLAINTIFF'S REPLY TO DEFENDANTS' SUPPLEMENTAL BRIEF**

Saifullah Khan ("Plaintiff") respectfully submits this reply to Defendants' Supplemental Brief (ECF 371-1) which raises new allegations of litigation misconduct. Defendants' latest accusations – ranging from disputed privilege calls to social media commentary – do not come close to the clear and convincing showing of bad faith required to justify the drastic sanction of dismissal. While Plaintiff acknowledges the seriousness of the Court's concerns in staying discovery, the record shows that any missteps have been corrected or are substantially harmless. The appropriate course is to address these issues on their merits, not to terminate this case. Indeed, as this Court recognized in denying Defendants' previous dismissal motion, dismissal as a sanction must be used "with restraint and discretion" and only for truly flagrant, bad-faith abuses that "undermine[] the integrity of the process." No such extreme circumstances are present here. Plaintiff therefore urges the Court to reject Defendants' renewed bid to avoid a trial on the merits and to allow this case to proceed.

### 1. Communications with Peter Roe Were Logged and Produced in Good Faith

Defendants contend that Plaintiff abused the attorney–client privilege by initially withholding certain personal communications with Peter Roe. This allegation is overstated. Plaintiff did not conceal these emails; he identified them on a privilege log and described the basis for the

privilege claim, thereby enabling Defendants to challenge it. Plaintiff, through counsel, asserted privilege only to preserve a colorable claim that Mr. Roe was assisting counsel in post-trial and litigation matters – a position detailed in Plaintiff's opposition to Defendants' motion to compel (ECF 349) and believed in good faith. There was nothing improper about Plaintiff taking a legal position on privilege, especially given the novel context of an informal "volunteer paralegal" like Mr. Roe. Ultimately, to avoid a protracted dispute, Plaintiff voluntarily produced all of the Roe communications on June 17, 2025, before the Court even ruled on the issue. Defendants now have the documents, and their motion to compel is moot.

Crucially, Defendants identify no prejudice from the brief delay in production. Every withheld communication is now in Defendants' hands. At most, Defendants could argue the privilege assertion was unsuccessful – but an unsustained privilege claim is not tantamount to bad-faith suppression of evidence. Parties are entitled to test the boundaries of privilege so long as they log the documents and have a plausible basis, as Plaintiff did here. Indeed, Plaintiff's privilege position was substantially justified even if ultimately not accepted , and no sanction was warranted under Rule 37.

Plaintiff's handling of the Roe communications was a far cry from the kind of deceit or litigation abuse that might warrant terminating sanctions. All of the communications were disclosed (first via log, now in full), and there is no evidence that Plaintiff acted with malice or an intent to hide "smoking gun" documents – only that he advanced a legal theory of privilege in good faith. Defendants themselves concede that the communications were turned over once privilege was withdrawn. This issue, having been resolved through the normal discovery process, provides no basis for the extreme remedy of dismissal.

## 2. The Omission of Dr. Sara Favorite Was Inadvertent and Remedied Without Prejudice

Defendants next argue that Plaintiff failed to disclose the identity of Dr. Sara Favorite, a psychologist, in response to an interrogatory about mental health treatment. It is true that Plaintiff's initial discovery responses did not list Dr. Favorite. But this was a good-faith misunderstanding, not a deliberate concealment. The interrogatory in question asked Plaintiff to identify all mental health counseling or treatment he has had since 2010. Plaintiff did not include Dr. Favorite because, to his understanding, he never formally "treated" with her. In a recently produced message to Mr. Roe, Plaintiff mentioned telling some "deep dark stuff" to Dr. Favorite, who told him he was "beyond [expletive] up." This suggests Dr. Favorite may have been someone with whom Plaintiff had a serious personal conversation, but not necessarily a treating provider. Plaintiff reasonably interpreted the discovery request as calling for professionals who provided him ongoing therapy or treatment. Indeed, even Defendants acknowledge that "Plaintiff may claim that he never 'treated' with Dr. Favorite" – underscoring that the term "treatment" could be subject to interpretation. There is no evidence that Plaintiff intentionally withheld Dr. Favorite's name to gain any advantage; if Plaintiff truly meant to hide this information, he is unlikely to have mentioned her at all in any communication. The more plausible explanation is that Plaintiff simply did not consider an informal or singular conversation with Dr. Favorite to fall within the scope of the interrogatory.

What is critical is that, once this issue came to light via the June 17 document production, Plaintiff immediately cooperated to cure it. Defendants requested a release authorization for Dr. Favorite's records, and Plaintiff promptly signed and returned that authorization. In other words,

as soon as Plaintiff understood Defendants deemed Dr. Favorite potentially relevant, he opened the door to full disclosure of any records. This prompt cooperation is the opposite of stonewalling. It ensured that if Dr. Favorite has any information relevant to Plaintiff's emotional distress or other issues, Defendants will obtain it. Defendants have thus suffered no prejudice: they became aware of Dr. Favorite's identity before the discovery stay and have the means to pursue whatever records exist.

Defendants' suggestion that Plaintiff must be hiding other unspecified "categories" of information is pure speculation. They cite a few fortunate revelations – a reference in an old Daily News article, a snippet in messages about a "Sophie" on certain apps – to surmise that "there is likely more" Plaintiff failed to produce. But sanctioning Plaintiff based on a hypothetical trove of unknown wrongs would turn the clear-and-convincing evidence standard on its head. By Defendants' logic, any time a single document is found late, the Court should assume vast misconduct lurking beneath the surface. The record here does not support such an assumption. To the contrary, Plaintiff's approach to discovery under current counsel has been marked by over-disclosure rather than hiding information. Plaintiff agreed to broad search terms and produced a large volume of ESI – even "overinclusive" productions – precisely to avoid missing anything responsive. As Plaintiff explained in his June 27 response, Defendants' "main complaint is not that Plaintiff is withholding information but that at one point they received too much", whereas "if anything was missing…it would necessarily cause a delay." In sum, there is no pattern of discovery deception here, only an isolated oversight that was promptly corrected, if it is to be considered an oversight at all.

### 3. The June 10 Filing of Confidential Material Was an Isolated Incident

Defendants also point to Plaintiff's filing of two documents on June 10, 2025 that had been designated "Confidential" under the Protective Order (ECF 197). Plaintiff acknowledges that these documents – which included a private email involving Defendant Jane Doe – were not filed under seal. Failing to move to seal them was an oversight by Plaintiff's counsel. We do not agree that this was a violation of the protective order, which we read as requiring a motion to seal only when a party believes that the document should be filed under seal. We also note than no party moved to seal the document, as did this Court after Plaintiff filed a motion to seal and noted we made appropriate redactions. But if this was misconduct, it was a singular lapse of compliance, not a willful flouting of the Court's authority.

Importantly, as soon as it was realized, Plaintiff moved to seal the affected filings. In other words, Plaintiff himself brought the filings into sealing once the issue was raised. This prompt remedial action is evidence of good faith, not bad faith. If Plaintiff had intended to violate the Protective Order to gain some advantage, he would hardly have belatedly sought to seal the documents and cure the violation. Defendants have not identified any tangible harm that resulted from the brief period during which the documents were publicly available on the docket. There is no indication that Jane's identity or other truly sensitive information spread as a result. Thus, it plainly does not rise to the level of "utterly inconsistent with the orderly administration of justice" needed to justify dismissal. The Court can be confident that Plaintiff understands his obligations under the Protective Order and will be exceedingly cautious. This isolated incident, now resolved, provides no basis to end Plaintiff's case.

## 4. Plaintiff's Social Media Posts – Including "Operation Dragonfire" – Do Not Justify Dismissal

Defendants next focus on Plaintiff's social media activity, particularly a June 16, 2025 post alluding to "operation dragonfire," which the Court interpreted as a "thinly veiled threat" to publicly reveal Jane Doe's identity. Plaintiff is mindful of the Court's concern and has heeded the Court's admonition. However, it is critical to distinguish between intemperate rhetoric born of frustration and an actual violation of a court order. Plaintiff's online comments, though in hindsight imprudent, did not divulge Jane Doe's name or any identifying information. They were expressions made on Plaintiff's personal social media, in which he railed against the perceived unfairness of being publicly accused while his accuser remained anonymous. Such comments, standing alone, are not forbidden; indeed, Plaintiff has a First Amendment right to voice his opinions about the case, so long as he does not explicitly or indirectly identify Jane Doe in violation of the Court's rulings. Nothing in the record indicates that Plaintiff has crossed that line.

To be sure, the tone of the "operation dragonfire" post was ominous enough that the Court took notice and issued a warning (ECF 354). Plaintiff regrets that his words gave the impression of a threat. In his response filed June 27, Plaintiff clarified that the post was "not [intended] to be an intention…or a threat…to violate this Court's orders," but rather an expression of his desire to "repair his reputation on an even playing field" by lawful means – specifically, through a motion to modify the pseudonymity order. In fact, Plaintiff had filed a motion with this Court seeking to remove Jane Doe's pseudonym (well before these posts), demonstrating that his real objective was to address the anonymity issue through proper legal channels, not vigilante action. Plaintiff's

explanation of the post rings true: he was venting frustration and rallying support for his cause (to reclaim his good name), not announcing any illicit plan. The phrase "operation dragonfire" was hyperbolic bluster, not a code for unlawful conduct. Significantly, since the Court's warning, Plaintiff has not repeated such rhetoric. He remains in full compliance with the pseudonym order.

Defendants highlight that some third parties, upon seeing Plaintiff's interviews or posts, independently publicized Jane Doe's real name. But Plaintiff cannot be held responsible for the actions of individuals not before this Court. As Plaintiff noted, Jane Doe's identity is unfortunately already public information in certain circles, and common knowledge to those who followed the high-profile criminal trial. The fact that commenters or bloggers unaffiliated with Plaintiff have mentioned Jane's name is not a violation by Plaintiff of any order. Indeed, Plaintiff has never encouraged anyone to flout the Court's rules; at most, he has lamented that his name is public while Jane's is not, and he has openly wished for the playing field to be leveled. Such commentary – even if provocative – does not equate to Plaintiff himself outing Jane Doe. In all of his public statements, Plaintiff has scrupulously avoided naming Jane or providing identifiers.

In short, Plaintiff's social media posts, while regrettably flamboyant, do not constitute a breach of any Court order. The Court's concern and cautionary language in ECF 354 have been noted by Plaintiff and have already served their purpose: Plaintiff is on clear notice that any actual attempt to reveal Jane's identity will result in severe consequences. But to invoke the ultimate sanction of dismissal preemptively, based on a tweet or Facebook post that never materialized into a violation, would be unprecedented and unjust. Federal courts do not dismiss cases for contemplated or rhetorically threatened misconduct; they punish the misconduct that occurs. Here, no contempt or violation has occurred – only words that violated no order. The

Plaintiff fully understands the stakes and has tempered his online commentary. Therefore, the "operation dragonfire" episode, however ill-advised, does not remotely justify terminating Plaintiff's case. The case should proceed on the merits.

### 5. Plaintiff's Filing Was Inadvertent and Harmless

Finally, Defendants cite an incident on June 27, 2025 in which Plaintiff allegedly "filed information that informed readers where to look to learn Jane's name." This appears to refer to a portion of Plaintiff's opposition brief (or associated filing) that, without naming Jane Doe, pointed to a public record or source that could indirectly lead a determined reader to discern her identity. Defendants are understandably circumspect about the details (so as not to compound the disclosure). But the context is important. The information cited was not some new revelation – it was drawn from the public domain and is less likely to lead someone to the same information than the Court's own orders, in referencing public social media posts. Merely alluding to a publicly available source did not violate the letter of any of this Court's sealing orders. Given the Court's clear directive that even indirectly identifying information must be sealed, counsel will be exceedingly cautious going forward. But a legal mistake by counsel is not equivalent to bad faith. Plaintiff did not file this reference with the malicious intent to "out" Jane Doe in defiance of the Court. In fact, the filing did not name Jane or point to her identity at all; at worst, it could have guided those already curious to find her name elsewhere. The situation was swiftly addressed by Defendants and the Court – the docket reflects that Defendants raised the issue (ECF 365) with Plaintiff's cooperation and consent and the Court took prompt action (ECF 367) to seal the information. Thus, any potential harm was quickly neutralized. There is no indication that Jane Doe's name spread further or that she suffered any concrete injury from this fleeting

public reference.

Plaintiff fully acknowledges the Court's authority and the importance of adhering to all sealing and protective orders. Plaintiff's misstep here, if any, was in the course of litigating his case – not a willful publicity stunt – and it was remedied almost immediately. Dismissal is far too blunt an instrument for an infraction that caused no lasting harm and was borne of attorney error. The Second Circuit's standards require willfulness and a pattern of dilatory or contumacious conduct before imposing the ultimate sanction of dismissal. Here, we have an isolated incident of inadvertence, which does not meet that standard. Lesser sanctions (or, given the harmlessness, no sanction) suffice to address this issue and vindicate the Court's authority. There is no justification for punishing Plaintiff and extinguishing his claims entirely. Any other conclusion would unjustly enrich Defendants with a windfall victory unrelated to the merits of the case. Equity and precedent counsel against such a result.

\*\*\*

At bottom, Defendants' supplemental brief strings together a series of disparate events in an effort to portray Plaintiff as incorrigible and this litigation as hopelessly tainted. But the record, viewed with balance and realism, tells a different story. Plaintiff has certainly made mistakes in the course of this hard-fought case, but he has also remedied those mistakes and continued to move forward with the process. Crucially, Defendants have not suffered any irreparable prejudice: they have the documents and information they sought, and the case is ready to proceed once the current motions are resolved. Dismissing the action now would reward Defendants with avoidance of a trial they have long sought to delay, at the expense of Plaintiff's right to have his claims heard on the merits. This Court should not lightly forfeit a litigant's day in court,

especially on a record devoid of the kind of extreme, bad-faith conduct that alone can justify such a sanction. Plaintiff respectfully submits that the proper course is to deny Defendants' motion for dismissal sanctions. The Court's inherent power to sanction must be exercised with prudence. Here, far from demonstrating an "extensive" pattern of abuse, the incidents cited by Defendants have been isolated and manageable with standard remedies. The *Spencer* factors weigh against dismissal: any non-compliance has been of short duration and promptly corrected; Plaintiff was not explicitly on notice that these specific missteps would warrant dismissal (indeed, lesser sanctions had been contemplated); there is minimal, if any, prejudice to Defendants that cannot be cured; the public interest favors resolving claims on their merits; and lesser sanctions remain available to ensure compliance if truly necessary. Plaintiff remains prepared to abide by all Court directives and to participate in an orderly progression toward trial. In sum, Defendants' supplemental brief, like their original motion, fails to reveal misconduct warranting the ultimate penalty and instead succeeds only at distracting from the issues.

     Enough is indeed enough. This case should be decided on the evidence and law, not terminated on the basis of unsubstantiated accusations. Plaintiff therefore respectfully requests that the Court deny Defendants' motion to dismiss. The integrity of the judicial process is best served by holding all parties to their burdens of proof in a court of law – allowing Plaintiff the fair chance to clear his name, and Defendants the opportunity to defend theirs – rather than ending the case prematurely. The Court should lift the stay of discovery and permit this matter to proceed to a resolution on the merits.

Respectfully submitted,

Plaintiff, Saifullah Khan (by his attorney)

>                            By:  /s/ *Alexander T. Taubes*
>                                 Alexander T. Taubes
>                                 Taubes Law
>                                 470 James Street, Suite 007
>                                 New Haven, CT 06513
>                                 Phone: 203-9090048
>                                 Email: alextt@gmail.com