UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | DECEMBER 27, 2023 |

## MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION FOR JUDGMENT OF DISMISSAL

Defendant Jane Doe respectfully submits this Memorandum of Law in Support of her Emergency Motion for Judgment or Dismissal ("Motion"). For the reasons set forth below, the Court should dismiss Plaintiff's claims against Jane with prejudice.

## I.    PRELIMINARY STATEMENT

The Court should dismiss Plaintiff's claims against Jane because Plaintiff has repeatedly violated this Court's Order entitling Jane to anonymity. Most recently, on Christmas Day, Plaintiff posted two "tweets" identifying Jane by her real, full name and commenting on her ethnicity and national origin. Plaintiff has also repeatedly abused this litigation to harass Jane, such as by sending Jane harassing communications under the guise that those communications are "settlement communications." Efforts by Jane's counsel and Plaintiff's own counsel to stop Plaintiff's misconduct have all failed. The only remedy remaining is the sanction of dismissal.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    This Court's Order

At the outset of this litigation, Plaintiff filed a motion to "litigate his . . . claims against Jane Doe using a pseudonym in place of her actual name." (ECF 2 at 1.) In that Motion, Plaintiff acknowledged that the "instant case involves matters of a highly sensitive and personal nature,

both to [Plaintiff] and Jane Doe." (ECF 2 at 5.) Plaintiff also noted that Yale's rules "require [Plaintiff] to maintain [] confidentiality [], including the name of his accuser" and that "the identity of his accuser [] was kept from the public record by Conn. Gen. Stat. § 54-86e." (ECF 2 at 2.)

> This Court granted Plaintiff's Motion, explaining:

> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledge of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

(ECF 12.)

This Court's Order granting Jane anonymity is appropriate because, among other reasons, the issues in this lawsuit are covered by privacy protections, including but not limited to the privacy protections of the Family Educational Rights and Privacy Act ("FERPA), 20 U.S.C. § 1232(g). *See, e.g.*, *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022).

## B.    Plaintiff Directly Emails Jane With A Purported "Settlement Proposal"

On June 26, 2023, Plaintiff (not his attorney) emailed Jane directly – Plaintiff sent the email to Jane's personal email address (he also copied Jane's counsel) a putative "settlement proposal." The purported "settlement proposal" identified Jane's current address, personal email address, and phone number. (**Exhibit A**.) Plaintiff's "settlement proposal" asked Jane to "sign a legally binding document . . . admitting to falsely accusing [Plaintiff] or rape."[1] (Exhibit A.) In exchange, Plaintiff offered to "refrain from pursuing any further legal actions against" Jane and "to cease all contact, either direct or indirect." (Exhibit A.) Plaintiff's "settlement proposal" opined that this was a fair

---

[1] That was not the first time that Plaintiff had offered to "settle" this case in exchange for Jane falsely stating that her allegations were "false." Plaintiff had made the same "offer" in 2022. Jane rejected that offer at that time.

offer in light of the "potential financial and emotional costs of ongoing litigation" and "the mutual benefits of closure." (Exhibit A.)

Plaintiff's counsel called Jane's counsel at around the same time Plaintiff emailed Jane. Plaintiff's counsel was unaware that Plaintiff had contacted Jane directly. (*See* **Exhibit B**.) Jane's counsel informed Plaintiff's counsel of Plaintiff's inappropriate communication (emailing Jane directly) and subsequently sent Plaintiff's counsel a letter noting:

> Our client and we find it distressing that Mr. Khan obtained our client's address and email address. Our client has legal counsel to, at least in part, avoid any contact by Mr. Khan. His uninvited contact with her is concerning.
>
> Please instruct Mr. Khan not to contact Ms. Doe. All communication between the parties should go through legal counsel.
>
> If there is any further contact by Mr. Khan of our client, we will involve the Court.

(Exhibit B.)

Plaintiff's counsel responded to Jane's counsel's letter in an email that stated:

> Please let [Attorney Sconzo] know that I took care of this before his letter arrived.
>
> Please assure [Attorney Sconzo] that I had no role in supplying contact for [Jane Doe].
>
> Norm

(**Exhibit C**.)

### C.  Plaintiff Seemingly Identifies Jane To At Least One Member Of The Media

In or around September 2023, Plaintiff collaborated with *The New York Times* regarding an article the *Times* wrote about this case. *See* Vimal Patel, *How A Yale Student's Rape Accusations Exposed Her to a Defamation Lawsuit*, N.Y. Times, Sept. 17, 2023, *available at* https://www.nytimes.com/2023/09/17/us/yale-rape-case-defamation.html (**Exhibit D**). The article reflects, for example, statements Plaintiff made to the reporter with the *Times*. (*E.g.*, Exhibit D ("For his part, Mr. Khan . . . said that he was pleased with . . . .  But he said . . . .").

On September 14, 2023, Jane received an unsolicited email from the reporter working on the article.  (**Exhibit E**.)  The reporter sent the email to Jane's personal email address and began the email by addressing Jane by her real name.  (Exhibit E.)  The reporter asked Jane about commenting for the story and/or otherwise speaking with the reporter.  (Exhibit E.)

Jane's counsel suspected that Plaintiff, who as noted above had Plaintiff's personal email address and as discussed below has been actively engaging the media surrounding this case, disclosed Jane's real name to the reporter and provided Jane's email address to the reporter.  Jane's counsel therefore raised the issue with Plaintiff's counsel.  Plaintiff's counsel denied disclosing Jane's name or contact information and denied having definitive knowledge of who had disclosed Jane's name and contact information, but agreed with Jane's counsel that the circumstances suggested that Plaintiff had likely disclosed Jane's name and contact information.  At the request of Jane's counsel, Plaintiff's counsel agreed to remind Plaintiff not to disclose Jane's name.

### D.     Plaintiff Sends Another Harassing "Settlement Proposal"

Plaintiff continued and escalated his campaign of harassment on December 18, 2023, when he (not his attorney) emailed counsel for Jane a purported "settlement communication."  Plaintiff's putative "settlement communication," in its entirety, read as follows:

[Jane],

Happy Birthday. Birthdays are milestones that offer us a chance to reflect on our lives, the paths we have walked, and the choices we have made. They also present opportunities to look forward with hope and resolve towards a future we wish to shape. It is in this spirit of reflection and forward-looking hope that I write to you today.

This is my third attempt to settle with you.  Let's sit down and discuss.  I can give you what you seek if you give me what I seek.  Don't turn into a Nikki Yovino and many others that Sconzo has misled.  I hope you learned something from Clark and Crossin.  I hope you sit down with friends that you trust who can help you see the incentive structures around you, and to give you appropriate advice.  I hope Sconzo

has made you aware of Nate the Lawyer and other videos about you. I fully expect discovery to be gruesome for both of us.

We have spent our 20s in this, at least I did. I am willing to spend my 30s in this. Will you?

Saif

(**Exhibit F**.)

### E.    Plaintiff Uses His "X" Account To Discuss And Promote This Case

Plaintiff maintains an active account with "X" (formerly known as "Twitter"). (**Exhibit G**.) Plaintiff has over 3,500 "followers." (Exhibit G.) Plaintiff has largely used his account to discuss this case and promote his version of the "facts." (Exhibit G.) For example, Plaintiff has "retweeted" news articles and posts about this case. (Exhibit G.) Those posts have garnered huge amounts of attention. (Exhibit G.) For example, Elon Musk has responded to "tweets" about this case. (Exhibit G.) Plaintiff then "retweeted" and responded to Mr. Musk's post. (Exhibit G.)

Plaintiff has also otherwise discussed this case in his own posts and posted links to interviews he has given about this case. For example, Plaintiff tweeted that he plans to "show[] up to [Jane's] deposition" in this case. (Exhibit G.) On another occasion, someone asked Plaintiff to "make as much of the discovery [in this] case public as possible." (Exhibit G.) Plaintiff responded to that "tweet" with his own "tweet" that said: "Challenging. I'll have to follow the law, the party agreements, and the judge's orders. Will do my best." (Exhibit G.)

Notably, Plaintiff has also used his "Twitter" account to announce plans to reveal Jane's real name. For example, on October 25, 2023, Plaintiff posted the following "tweet:"

 **Saifullah Khan** ✔ @Saif__khan · Oct 25
60 days to Christmas, and the Second Circuit has given us the gift of justice. In the spirit of truth, 'Jane Doe' will soon have a name. 🎁
#TruthPrevails #CountdownToChristmas

(Exhibit G.[2])

### F.  Plaintiff Publicly Posts Jane's Name On "X" ("Twitter")

On December 25, 2023, Christmas Day, Plaintiff made good on his threat to name Jane Doe in his "#CountdownToChristmas" "tweet."  At 6:34 a.m. Christmas Morning, Plaintiff posted:

most important thread of my life:

[***Jane Doe's Actual Full Name, Including Middle Initial***[3]]

in 2015 the military officer of russian origins falsely accused me of rape

[*Jane Doe's Full Name, Including Full Middle Name*[4]]'s 3 sentence email triggered @Yale's bureaucratic machinery that would make kafka proud and horrified

(**Exhibit H**.)  As of December 27, 2023, Plaintiff's "tweet" naming Jane (twice) and calling out her purported "[R]ussian origins" has been viewed more than 12,700 times.  (Exhibit H.)

At 3:15 p.m. on Christmas Day, Plaintiff followed up on his Christmas Morning "tweet" by again identifying Jane (*twice*) *in conjunction with this case*, writing:

Some people think this is the title of a court case.  [Jane Doe (Plaintiff used Jane Doe's actual first and last name)] is her name.  [Jane Doe (Plaintiff again used Jane Doe's actual first and last name)] is the one who falsely accused me of rape.

(**Exhibit I**.)   As of December 27, 2023, Plaintiff's follow-up "tweet," which also displays Plaintiff's original "tweet" naming Jane, has been viewed more than 2,900 times.  (Exhibit I.)

Both of Plaintiff's "tweets" about Jane were, of course, sent to Plaintiff's more than 3,500 followers, who are familiar with this case due to Plaintiff's "tweets" about it (Exhibit G).

---

[2] On November 28, 2023, Plaintiff posted two "tweets" replying to other "tweets."  (Exhibit G.)  In the "tweets" Plaintiff authored, Plaintiff wrote, among other things:  (1) "Next steps are 1) ending pseudonym" and (2) "[a]part from [] publicly naming Jane [D]oe soon . . . ."  (Exhibit G.)  On November 30, 2023, Plaintiff then posted a "tweet" that included the statement "no pseudonyms.  They will be named and identified thoroughly."  (Exhibit G.)

[3] Plaintiff posted Jane Doe's full name in bold and italics.  (Exhibit H.)

[4] Plaintiff italicized Jane's name.

6

As of December 27, 2023, Plaintiff's "tweets" repeatedly using Jane's full, actual name in conjunction with this case, remain visible to anyone because Plaintiff's "Twitter" is public.[5]

Plaintiff's "tweets" resulted in a December 26, 2023 post on the social media website ███ identifying Jane by her real name as Plaintiff's accuser.  (**Exhibit J**.)  The post was made on a ████████████████████████████ (Exhibit J.)  The post discusses this case and encourages people to ███████████ *i.e.*, to say Jane Doe's real name).  (Exhibit J.)

## III.   RELEVANT LAW

"Courts have inherent authority to sanction bad-faith conduct."  *Vijayanagar v. Krishna*, No. 3:18-CV-00553 (KAD), 2020 WL 2041931, at *1 (D. Conn. Apr. 28, 2020) (quotation marks omitted).  "A court may [] sanction a litigant pursuant to its inherent authority if there is clear evidence that the litigant's conduct was (1) entirely without color and (2) motivated by improper purposes."  *Id.* (quotation marks omitted).  The inherent authority to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.*  (quotation marks omitted); *see also, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44, (1991).  A Court can dismiss claims pursuant to its inherent powers.  *E.g.*, *Carmona v. Wright*, 233 F.R.D. 270, 275 (N.D.N.Y. 2006).

Federal Rule of Civil Procedure 41(b) also provides that "a defendant may move to dismiss the action or any claim against it" if "the plaintiff fails . . . to comply with . . . a court order."  Fed. R. Civ. P. 41(b).  "Under Second Circuit precedent, courts may exercise this power *sua sponte*."  *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022).  "The Second Circuit has articulated a five-factor framework for determining whether a court should dismiss a case under

---

[5] Counsel for Jane accessed the "tweets" without even logging into "X" ("Twitter").  Jane is submitting her Motion and this Memorandum under seal because anyone monitoring the docket in this case could otherwise learn Jane's identity by looking at Plaintiff's account with "X" ("Twitter").  The Court should seal this Motion.

Fed. R. Civ. P. 41(b)." *Id.* Under that test, Courts generally consider:

> (i) the duration of the plaintiff's failure to comply; (ii) whether the plaintiff was on notice that failure to comply would result in dismissal; (iii) whether the defendants are likely to be prejudiced by further delay in the proceedings; (iv) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (v) whether the judge has adequately considered a sanction less drastic than dismissal. No one factor is dispositive, and the determination is based on the record as a whole. The decision to dismiss for failure to prosecute is committed to the district court's discretion.

*Id.* (citations and internal quotation marks omitted); *see also, e.g.*, *Brown v. Despaigne*, 203 F.R.D. 114, 115 (S.D.N.Y. 2001) (dismissing case with prejudice based on willful misconduct).

## IV.    ARGUMENT

Plaintiff is well aware of the sensitive nature of this action. He represented to this Court that the "instant case involves matters of a highly sensitive and personal nature, both to Mr. Khan and Jane Doe." (ECF 2 at 5.) Plaintiff is also well aware of this Court's anonymity Order requiring Plaintiff to protect Jane's name, which resulted from Plaintiff's own Motion. (ECF 12.)

Plaintiff nevertheless deliberately engaged in a protracted and escalating course of conduct to reveal Jane's name. First, Plaintiff seemingly revealed Jane's name and personal email address to a reporter, who then contacted Jane.[6] (Exhibit E.) Second, Plaintiff then formulated a plan to reveal Jane's name and role in this lawsuit to the general public. He spent months talking about this case on his "X" ("Twitter") profile. (Exhibit G.) On October 25, 2023, Plaintiff "tweeted" "60 days to Christmas . . . . In the spirit of truth, 'Jane Doe' will soon have a name." (Exhibit G.) Plaintiff even used the hashtag "#CountdownToChrismas" in that "tweet." (Exhibit G.) Plaintiff followed through with his plan by publicly identifying Jane four times in two "tweets" on Christmas Day. (Exhibits H & I.) Plaintiff's "tweets" identified Jane as the defendant in this

---

[6] Plaintiff's own attorney did not deny that Plaintiff was likely behind this disclosure when confronted by Jane's counsel. The facts also establish that Plaintiff had Jane's personal email address and was in contact with the reporter.

lawsuit despite this Court's Order providing Jane with anonymity.  Plaintiff wrote:  "Some people think this is the title of a court case.  [Jane Doe (using Jane's actual name)] is her name."[7]

Plaintiff's actions are particularly egregious in light of:  (1) his own recognition of the "sensitivity and personal nature" of these matters and the fact that anonymity was warranted; (2) the fact that Plaintiff engaged in a pattern of misconduct over many months that seemingly included identifying Jane to a journalist and then counting down to a series of "tweets" revealing Jane's name to the entire world on "X" ("Twitter") and (3) that Plaintiff chose to reveal Jane's name on Christmas Day.  Plaintiff's actions—particularly in choosing, of all days, Christmas Morning, to "out" Jane—establish that Plaintiff's actions are motivated by improper purposes.  Plaintiff's Christmas Morning "tweet" also called attention to Jane's ethnicity and national origin. (Exhibit H.)  There is no proper reason for any of Plaintiff's actions.  If, despite agreeing that Jane should have anonymity in this action, Plaintiff has changed his mind about that, he should have filed a motion with this Court rather than flout this Court's Order.  Putting that issue aside, there was absolutely no reason for Plaintiff to publicly identify Jane on Christmas Morning and to call out Jane's national origin and ethnicity in that "tweet" other than harassment and retaliation.

Identifying Jane's name and providing her contact information are, moreover, not Plaintiff's only misconduct:  Plaintiff has used this lawsuit for the improper purpose of harassing Jane.  First, Plaintiff sent a purported "settlement offer" directly to Jane (*i.e.*, Plaintiff (not his attorney) literally emailed Jane the "offer" on her personal email account). (Exhibit A.)  Plaintiff's "offer" also unnecessarily highlighted the fact that Plaintiff knew Jane's current address. (Exhibit A.)  The "offer" itself was a demand that Jane falsely state that her allegations were lies. (Exhibit A.)  Second and in addition to the conduct discussed above, Plaintiff (not his attorney) then sent

---

[7] Regardless, Plaintiff's "tweets" made Jane's role apparent.  Plaintiff had spent months talking about this case on his "X" ("Twitter") account and specifically discussed his plans to identify "Jane Doe."

Jane's counsel another purported "settlement communication" that can only be described as disturbing, harassing, and intended to cause distress. (Exhibit F.) For example, that "settlement communication" said: "I hope [your attorney] has made you aware of . . . videos about you." (Exhibit F.) It also said: "I fully expect discovery to be gruesome for both of us." (Exhibit F.)

Plaintiff's misconduct is also particularly problematic and warrants dismissal because lesser attempts to stop Plaintiff's misconduct have failed. When Plaintiff emailed Jane his "settlement offer" in June 2023, Jane's counsel send Plaintiff's counsel a letter asking Plaintiff's counsel to tell Plaintiff to stop his misconduct. (Exhibit B.) Plaintiff's counsel responded that he had done so. (Exhibit C.) In September 2023, when the reporter Plaintiff was working with contacted Jane, Jane's counsel again contacted Plaintiff's counsel to again ask Plaintiff's counsel to tell Plaintiff to stop his misconduct. Plaintiff's counsel agreed to tell Plaintiff to stop. Not only did Plaintiff not stop, he escalated his misconduct, culminating in him intentionally disclosing Jane's real name to thousands of people on Christmas Day. Plaintiff's own attorney's efforts to stop Plaintiff's misconduct have failed. Nothing short of dismissal will stop Plaintiff.

Dismissal is therefore warranted under this Court's inherent authority. This Court cannot allow such disregard for this Court's anonymity Order and the misuse of litigation such as harassing Jane Doe under the guise of purported "settlement communications" to go unchecked.

Dismissal is also warranted under Rule 41(b). Indeed, the Rule 41(b) factors are largely inapplicable to Plaintiff's misconduct in this case because Rule 41(b) dismissals generally result from misconduct far less serious than the misconduct at issue here. For example, several of the Rule 41(b) factors address situations where a party misses a deadline. *See Pena*, 587 F. Supp. 3d at 113 (noting that factors include duration of non-compliance and prejudice associated with further delay). Plaintiff's misconduct in acting in contravention of this Court's anonymity Order

and abusing this case to harass Jane is far more outrageous than missing a deadline. To the extent

that the Rule 41(b) factors have any applicability here, they support dismissal:

- No lesser sanction can stop Plaintiff's improper conduct and harassment. Jane's counsel and Plaintiff's counsel have both tried to curtail Plaintiff's misconduct. Both failed. Plaintiff only escalated his misconduct in response to those efforts.

- Jane will not only be prejudiced by further proceedings, she will be harassed by them. Plaintiff has now repeatedly used purported "settlement communications" to harass Jane. He has posted on "X" ("Twitter") about his plan to "show[] up to [Jane's] deposition" in this case and to attempt to disclose discovery in this case, which is private.

- The prospect of dismissal is not a surprise to Plaintiff. Jane's counsel repeatedly warned Plaintiff's counsel that Jane's counsel would take this matter up with the Court if Plaintiff did not desist. Regardless, it is axiomatic that a plaintiff should expect a severe sanction, which might include dismissal with prejudice, for disregarding a Court Order protecting a party's name in "sensitive and personal" litigation.

- The Court has a strong interest in managing its busy docket. That interest counsels against maintaining the claims against Jane on the docket in light of Plaintiff's misconduct. If the claims remain on the docket, this Court will have to redirect substantial judicial resources to managing continued misconduct by Plaintiff. Those resources are better used elsewhere.

## V.  CONCLUSION

The Court should send a strong message that all litigants must respect its anonymity orders.

The Court should grant Jane's Motion and dismiss the claims against her with prejudice.


                                    DEFENDANT JANE DOE,

                            By:  */s/ Brendan N. Gooley*
                                    James M. Sconzo (ct04571)
                                    Brendan N. Gooley (ct30584)
                                    CARLTON FIELDS, P.A.
                                    One State Street, Suite 1800
                                    Hartford, CT  06103
                                    Tel.: 860-392-5000
                                    Fax: 860-392-5058
                                    Email: jsconzo@carltonfields.com
                                            bgooley@carltonfields.com

                                    Her Attorneys

<u>**CERTIFICATION OF SERVICE**</u>

This is to certify that on this 27th day of December 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.


_____/s/Brendan N. Gooley_____
Brendan N. Gooley